# EXHIBIT A

**Addendum A**

**NONSOLICITATION, NONDISCLOSURE & ASSIGNMENT OF INVENTIONS AGREEMENT**

The undersigned Employee (the "Employee"), executes this Nonsolicitation, Nondisclosure & Assignment of Inventions Agreement (the "Agreement") in consideration of, and a material inducement for, the Company's (as defined below) relationship with Employee, whether by employment, contractor, or in advisory or consulting capacities, or otherwise, and in consideration of receiving any form of compensation or benefit from or in the Company. Employee understands and agrees that this Agreement shall remain in effect and survive any and all changes in Employee's job duties, titles and compensation during Employee's relationship with Company.

**Definitions**

i. "Company" shall mean any entity controlled by, controlling, or under common control with DraftKings Inc., including affiliates and subsidiaries. Control means the direct or indirect possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership, by contract or otherwise.

i. "Competing Business" shall mean any person, firm, association, corporation or any other legal entity that is engaged in a business that is competitive with any aspect of the Business of the Company, including but not limited to: FanDuel, Paddy Power Betfair, William Hill and bet365.

ii. "Business of the Company" shall mean the research, design, development, marketing, sales, operations, maintenance and commercial exploitation pertaining to the operation of, and providing products and services for: (1) fantasy sports contests ("FSC"); (2) Regulated Gaming (defined below); (3) all other products and services that exist, are in development, or are under consideration by the Company during your relationship with the Company ("Other Products and Services"); and (4) all products and services incidentally related to, or which are an extension, development or expansion of, FSC, Regulated Gaming and/or Other Products and Services ("Incidental Products and Services").

ii. "Regulated Gaming" shall mean the operation of games of chance or skill or pari-mutuel or fixed odds games (including, but not limited to, lotteries, pari-mutuel betting, bingo, race tracks, jai alai, legalized bookmaking, off-track betting, casino games, racino, keno, and sports betting or any play for fun (non-wagering) versions of the foregoing) and any type of ancillary service or product related to or connected with the foregoing.

iii. "Confidential Information" shall mean all information or a compilation of information, in any form (tangible or intangible or otherwise), that is not generally known to competitors or the public, which Company considers to be confidential

and/or proprietary, including but not limited to: research and development; techniques; methodologies; strategies; product information, designs, prototypes and technical specifications; algorithms, source codes, object codes, trade secrets or technical data; training materials methods; internal policies and procedures; marketing plans and strategies; pricing and cost policies; customer, supplier, vendor and partner lists and accounts; customer and supplier preferences; contract terms and rates; financial data, information, reports, and forecasts; inventions, improvements and other intellectual property; product plans or proposed product plans; know-how; designs, processes or formulas; software and website applications; computer passwords; market or sales information, plans or strategies; business plans, prospects and opportunities (including, but not limited to, possible acquisitions or dispositions of businesses or facilities); information concerning existing or potential customers, partners or vendors.  Confidential Information shall also mean of or related to Company's current or potential customers, vendors or partners that is considered to be confidential or proprietary to the applicable customer, vendor or partner.

Confidential Information does not include: information in the public domain (other than as a result of disclosure by you); approved in writing for unrestricted release by Company; or produced or disclosed pursuant to a valid court order, provided you have given Company written notice of such request such that Company has an actual, reasonable opportunity to defend, limit or protect such production or disclosure.

1. **Duty of Loyalty**.  During the period of Employee's relationship with the Company, Employee will devote Employee's best efforts on behalf of the Company.  Employee agrees not to provide any services to any Competing Business or engage in any conduct which may create an actual or appear to create a conflict of interest, without the expressed, written permission of the Company.

2. **Nonsolicitation of Customers, Clients or Vendors.**  During the period of Employee's relationship with the Company and for a period of twelve (12) months after termination of such relationship (for any reason), Employee shall not directly or indirectly either for him/herself or for any other person, partnership, legal entity, or enterprise, solicit or transact business, or attempt to solicit or transact business with, any of the Company's customers, clients, vendors or partners, or with any of the Company's prospective customers, clients, vendors or partners about which Employee learned Confidential Information (as defined below) or which Employee had some involvement or knowledge  related to the Business of the Company.

3. **Nonsolicitation of Employees and Contractors.**  During the period of Employee's relationship with the Company and for a period of twelve (12) months after termination of such relationship (for any reason), Employee will not directly or indirectly either for him/herself or for any other person, partnership, legal entity, or enterprise: (i) solicit, in person or through supervision or control of others, an employee, advisor, consultant or contractor of the Company for the purpose of inducing or encouraging the employee, advisor, consultant or contractor to leave his or her relationship with the Company or to change an existing business relationship

    to the detriment of the Company, (ii) hire away an employee, advisor, consultant or contractor of the Company; or (iii) help another person or entity hire away a Company employee, advisor, consultant or contractor.

4. **Nondisclosure of Customer, Partner and Vendor Information**. Employee understands and agrees that it is essential to the Company's success that all nonpublic customer, partner, and vendor information is deemed and treated as Confidential Information and a confidential trade secret. Employee will not directly or indirectly either for him/herself or for any other person, partnership, legal entity, or enterprise use or disclose any such customer, partner, or vendor information except as may be necessary in the normal conduct of the Company's business for the specific customer, partner, or vendor. Employee agrees that at the end of Employee's relationship with the Company, or upon request by the Company, Employee will return to the Company any materials containing such information.

5. **Nondisclosure of Confidential Information**. All such Confidential Information is (and will be) the exclusive property of the Company, and Employee shall not, during or after Employee's employment: (i) use any Confidential Information for any purpose that is not authorized by the Company; (ii) disclose any Confidential Information to any person or entity, except as authorized by the Company in connection with Employee's job duties; or (iii) remove or transfer Confidential Information from the Company's premises or systems except as authorized by the Company.

    Upon termination of Employee's relationship (for any reason), or upon the request of the Company, Employee will immediately surrender to the Company all Company property in Employee's possession, custody, or control, including any and all documents, electronic information, and materials of any nature containing any Confidential Information, without retaining any copies.

    Employee understands that the Company is now and may hereafter be subject to non-disclosure or confidentiality agreements with third persons that require the Company to protect or refrain from use of Confidential Information. Employee agrees to respect and be bound by the terms of such agreements in the event Employee has access to such Confidential Information.

    Notwithstanding the foregoing or anything to the contrary in this Agreement or any other agreement between the Company and the Employee, nothing in this Agreement shall limit the Employee's right to discuss Employee's employment or report possible violations of law or regulation with the Equal Employment Opportunity Commission, United States Department of Labor, the National Labor Relations Board, the Securities and Exchange Commission, or other federal government agency or similar state or local agency or to discuss the terms and conditions of his employment with others to the extent expressly permitted by Section 7 of the National Labor Relations Act or to the extent that such disclosure is protected under the applicable provisions of law or regulation, including but not limited to "whistleblower" statutes or other similar provisions that protect such disclosure. Employee agrees to take all reasonable steps to ensure that the Company's Confidential Information is not made public during any such disclosure. Pursuant to 18 U.S.C. Section 1833(b), the Employee shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a

trade secret that: (1) is made in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law; or (2) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

6. **Assignment of Inventions**.  Employee expressly understands and agrees that any and all right or interest Employee obtains in any designs, trade secrets, technical specifications and technical data, know-how and show-how, customer and vendor lists, marketing plans, pricing policies, inventions, concepts, ideas, expressions, discoveries, improvements and patent or patent rights which are authored, conceived, devised, developed, reduced to practice, or otherwise obtained by him during the term of this Agreement which relate to or arise out of his relationship with the Company and which relate to the business of the Company are expressly regarded as "*works for hire*" or works invented or authored within the scope of employment or engagement, whether as an adviser, consultant, officer, executive, director or other capacity (the "Inventions").  Employee hereby assigns to the Company the sole and exclusive right to such Inventions.  Employee agrees to disclose all Inventions fully and in writing to the Company promptly after development, conception, invention, creation or discovery of the same, and at any time upon request.  Employee will provide all assistance that the Company reasonably requests to secure or enforce its rights throughout the world with respect to Inventions, including signing all necessary documents to memorialize those rights and take any other action which the Company shall deem necessary to assign to and vest completely in the Company, to perfect trademark, copyright and patent protection with respect to, or to otherwise protect the Company's trade secrets and proprietary interest in such Inventions.  The obligations of this Section shall continue beyond the termination of Employee's relationship with respect to such Inventions conceived of, reduced to practice, or developed by the Employee during the term of this Agreement.  The Company agrees to pay any and all copyright, trademark and patent fees and expenses or other costs incurred by Employee for any assistance rendered to the Company pursuant to this Section.

In the event the Company is unable, after reasonable effort, to secure Employee's signature on any patent application, copyright or trademark registration or other analogous protection relating to an Invention, the Employee hereby irrevocably designates and appoints the Company and its duly authorized officer and agent and his agent and attorney-in-fact, to act for and on his behalf and stead to execute and file any such application or applications and to do all other lawfully permitted acts to further the prosecution and issuance of letters patent, copyright or other analogous protection thereon with the same legal force and effect as if executed by the Employee.

In Attachment A to this Agreement, Employee has listed all Inventions that relate to the Business of the Company's that Employee (alone or jointly with others) made, conceived, or first reduced to practice by Employee prior to Employee's execution of this Agreement, and in which Employee has any property interest or claim of ownership.  If no such Inventions are listed in said Attachment, Employee represents that Employee has no such Inventions.

To the extent Employee is a citizen of and subject to law of a state which provides a limitation on invention assignments, then this Agreement's assignment shall not include inventions excluded under such law.

7. **Absence of Conflicting Agreements**.  Employee understands that the Company does not desire to acquire from Employee any trade secrets, know-how or confidential business information that Employee may have acquired from others, and Employee agrees not to disclose any such information to the Company or otherwise utilize any such information in connection with Employee's performance of duties with the Company.  Employee represents that Employee is not bound by any agreement or any other existing or previous business relationship which purports to conflict or impact the full performance of Employee's duties and obligations to the Company.

8. **Remedies Upon Breach**.  Employee agrees that any action that violates this Agreement would cause the Company irreparable harm for which monetary damages are inadequate.  Accordingly, in the event of a breach, or threatened breach, the Company shall be entitled to an injunction restraining such breach or threatened breach, or requiring specific performance, in addition to any and all rights and remedies at law and equity.  The Company shall not be obligated to present additional evidence of irreparable harm or the insufficiency of monetary damages and, to the extent permitted by law or under applicable court rule, does not need to post a bond or other surety.  Nothing herein shall be construed as prohibiting the Company from pursuing any other remedy available to the Company for such breach or threatened breach.  If the Company prevails in any request to have Employee specifically perform his/her obligations under this Agreement (including pursuant to a temporary restraining order or preliminary injunction), the Company shall be entitled to receive from Employee the Company's costs of suit, including reasonable attorney's fees, costs and expenses (in addition to any other relief sought, available or awarded under this Agreement).

9. **Jurisdiction, Venue and Choice of Law** The parties hereby mutually agree to the exclusive jurisdiction of the Superior Court (inclusive of the Business Litigation Session) of the Commonwealth of Massachusetts or the United States District Court for the District of Massachusetts for any dispute arising hereunder.  Accordingly, with respect to any such court action, Employee (a) submits to the personal jurisdiction of such courts; (b) consents to service of process by regular mail to your last known address; and (c) waives any other requirement (whether imposed by statute, rule of court, or otherwise) with respect to personal jurisdiction or service of process.  If Employee commences a legal action or other proceeding against the Company concerning a dispute arising from or relating to this Agreement outside of Massachusetts, Employee shall reimburse the Company for its reasonable attorneys' fees, costs and expenses if Company prevails in staying, transferring, dismissing or otherwise defending such action or proceeding based on the location of the action or proceeding, regardless of whether such fees, costs and expenses are incurred in the forum where you commenced the action or in a Massachusetts forum.  This Agreement shall be governed by the internal substantive laws of Massachusetts, without regard to the doctrine of conflicts of law.

10. **At-Will Employment.**  Employee agrees and acknowledges that Employee is an employee "at will" and nothing in this Agreement is intended to guarantee employment for any period of time.  Even though the nature of Employee's relationship with the Company is as an "at will" employee, the parties enter this Agreement with the understanding that Employee's position, title, duties and responsibilities could change in a material way in the future and, in light of that understanding, the parties intend that this Agreement shall follow Employee throughout the entire course of Employee's employment with the Company, and such subsequent material change shall not affect the enforceability or validity of this Agreement.

11. **Return of Property**.  Employee agrees that, at the time of termination of Employee's employment (for any reason), Employee will return immediately to the Company, in good condition, all property of the Company.  This return of property includes, without limitation, a return of physical property (such as computer, phone or other mobile devices, credit card, promotional materials, etc.) and intangible property (such as computer passwords).

12. **Litigation and Regulatory Cooperation**.  During and after the Employee's relationship with the Company, Employee shall cooperate fully with the Company in the defense or prosecution of any claims or actions now in existence or that may be brought in the future against or on behalf of the Company by/against third parties that relate to events or occurrences that transpired while the Employee was employed by the Company.  Employee's full cooperation in connection with such claims or actions shall include, but not be limited to, being available to meet with counsel to prepare for discovery or trial and to act as a witness at mutually convenient times.  During and after the Employee's employment, Employee also shall cooperate fully with the Company in connection with any investigation or review of any federal, state, or local regulatory authority as any such investigation or review relates to events or occurrences that transpired while the Employee was employed by the Company, unless such claim is brought by Employee.

13. **Communication to Future Employers**.  Employee agrees to communicate the contents of all post-relationship obligations in this Agreement to any Competing Business that you intend to be employed by, associated with, or represent.  Employee understands and agrees that the Company may, in its discretion, also share any post-employment obligation set out in this Agreement with any future employer or potential employer of Employee, or any entity which seeks to be associated with Employee for Employee's services.

14. **Miscellaneous**.  Any waiver by the Company of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach hereof.  If a court determines that one or more of the provisions contained in this Agreement shall be invalid or unenforceable, such court shall construe, reform or otherwise revise such provision(s) and/or sever such provisions from this Agreement so as to render it enforceable to the maximum extent allowed by law.  Any part of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions of this Agreement.  The obligations of Employee under this Agreement shall survive the termination of the Employee's relationship with the Company regardless of the manner of such termination.  All covenants and agreements hereunder shall inure to the benefit of and be enforceable by the successors of the Company.  This Agreement

amends, supplants and supersedes any agreement previously executed between the parties regarding the subject matter of this Agreement.

Employee recognizes and agrees that the enforcement of this Agreement is necessary, among other things, to ensure the preservation, protection and continuity of Confidential Information, trade secrets and goodwill of the Company. Employee agrees that, due to the proprietary nature of the Business of the Company and relationships with others, the post-employment restrictions set forth above are reasonable as to duration and scope.

Employee is advised to consult with an attorney before entering into this Agreement.

PLEASE DO NOT SIGN THIS AGREEMENT IF YOU HAVE INVENTIONS TO DISCLOSE. PLEASE REACH OUT TO YOUR RECRUITER TO COMPLETE A SEPARATE INVENTIONS DOCUMENT (ATTACHMENT A – ON NEXT PAGE FOR REFERENCE) IN THE EVENT THAT YOU HAVE INVENTIONS TO DECLARE.

**IN WITNESS WHEREOF,** the undersigned Employee and the Company have executed this Nonsolicitation, Nondisclosure and Assignment of Inventions Agreement as an instrument under seal as of  8/31/2020                    .

**DraftKings Inc.**                                                **Employee**

*[signature]*

**By:** Jason Robins

**Title:** Chief Executive Officer

*[DocuSigned signature: C58BD7906D874C7...]*

**Signature**

Michael Z. Hermalyn

**Print Name**

# NONSOLICITATION, NONDISCLOSURE & ASSIGNMENT OF INVENTIONS AGREEMENT

### ATTACHMENT A

List of all inventions or improvements (referred to in Section 6 of the Agreement) made by you, alone or jointly with others, prior to joining the Company.

| **Right, Title or Interest** (If none, please write "NONE".) | **Date Acquired** | **Identifying Number or Brief Description of Inventions or Improvements** |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Name of Employee:

_____
Print

_____
Sign

_____
DATE

## Addendum B
## Noncompetition Covenant

(a) During the period of your relationship with Company, you agree to not, anywhere within the Restricted Area (defined below), acting individually, or as an owner, shareholder, partner, employee, contractor, agent or otherwise (other than on behalf of Company): provide services to a Competing Business (defined below). For a period of six (6) months following termination of your relationship with Company (for any reason other than referenced below in section (b)), you agree to not, anywhere within the Restricted Area, acting individually, or as an owner, shareholder, partner, employee, contractor, agent or otherwise (other than on behalf of Company): provide services to a Competing Business that relate to any aspect of the Business of the Company (i.e., FSC, Regulated Gaming, Other Products and Services, and/or Incidental Products and Services) for which you performed services or received confidential information at any time during the six (6) month period prior to such termination. For example, if you performed services for the FSC aspect of the Business of the Company and received confidential information about the Regulated Gaming aspect of the Business of the Company during the six (6) month period prior to the termination of your relationship with the Company (for any reason other than referenced below in section (b)), then for six (6) months after such termination, you shall not, anywhere within the Restricted Area, acting individually, or as an owner, shareholder, partner, employee, contractor, agent or otherwise (other than on behalf of Company), provide services to a Competing Business that relate to FSC or Regulated Gaming). The foregoing shall not be construed to preclude you from owning up to one percent (1%) of the outstanding stock of a publicly held corporation that constitutes or is affiliated with a Competing Business.

As set out in the Massachusetts Noncompetition Act, you and the Company agree that the option constitutes mutually-agreed upon consideration for this Noncompetition Covenant. Such consideration is specifically designated and you acknowledge the receipt and sufficiency of the consideration.

  i. "Company" shall mean any entity controlled by, controlling, or under common control with DraftKings Inc., including affiliates and subsidiaries. Control means the direct or indirect possession of the power to direct or cause the direction of the management and policies of an entity, whether through ownership, by contract or otherwise.

  ii. "Restricted Area" shall mean the entire United States since the Business of the Company encompasses the entire United States, of which you acknowledge and agree.

  iii. "Competing Business" shall mean any person, firm, association, corporation or any other legal entity that is engaged in a business that is competitive with any aspect of the Business of the Company, including but not limited to: FanDuel, Paddy Power Betfair, William Hill and bet365.

iv. "Business of the Company" shall mean the research, design, development, marketing, sales, operations, maintenance and commercial exploitation pertaining to the operation of, and providing products and services for: (1) fantasy sports contests ("FSC"); (2) Regulated Gaming (defined below); (3) all other products and services that exist, are in development, or are under consideration by the Company during your relationship with the Company ("Other Products and Services"); and (4) all products and services incidentally related to, or which are an extension, development or expansion of, FSC, Regulated Gaming and/or Other Products and Services ("Incidental Products and Services").

v. "Regulated Gaming" shall mean the operation of games of chance or skill or pari-mutuel or fixed odds games (including, but not limited to, lotteries, pari-mutuel betting, bingo, race tracks, jai alai, legalized bookmaking, off-track betting, casino games, racino, keno, and sports betting or any play for fun (non-wagering) versions of the foregoing) and any type of ancillary service or product related to or connected with the foregoing.

vi. "Confidential Information" shall mean all information or a compilation of information, in any form (tangible or intangible or otherwise), that is not generally known to competitors or the public, which Company considers to be confidential and/or proprietary, including but not limited to: research and development; techniques; methodologies; strategies; product information, designs, prototypes and technical specifications; algorithms, source codes, object codes, trade secrets or technical data; training materials methods; internal policies and procedures; marketing plans and strategies; pricing and cost policies; customer, supplier, vendor and partner lists and accounts; customer and supplier preferences; contract terms and rates; financial data, information, reports, and forecasts; inventions, improvements and other intellectual property; product plans or proposed product plans; know-how; designs, processes or formulas; software and website applications; computer passwords; market or sales information, plans or strategies; business plans, prospects and opportunities (including, but not limited to, possible acquisitions or dispositions of businesses or facilities); information concerning existing or potential customers, partners or vendors. Confidential Information shall also mean of or related to Company's current or potential customers, vendors or partners that is considered to be confidential or proprietary to the applicable customer, vendor or partner.

Confidential Information does not include: information in the public domain (other than as a result of disclosure by you); approved in writing for unrestricted release by Company; or produced or disclosed pursuant to a valid court order, provided you have given Company written notice of such request such that Company has an actual, reasonable opportunity to defend, limit or protect such production or disclosure.

(b) You and the Company agree that the Noncompetition Covenant shall not be enforceable against you if the Company terminates your employment without Cause or if you are laid off.  In the event of a termination without Cause or layoff, all other agreements with the Company (including without limitation the Award Agreement (as defined in the Stock Option Grant Notice)), shall remain in full force and effect. You and the Company acknowledge and agree that "Cause" shall mean, for the purposes of this Noncompetition Covenant, that there exists either (1) a reasonable basis for the Company's dissatisfaction with you, entertained in good faith, for reasons, including but not limited to, lack of capacity or diligence, failure to conform to usual standards of conduct, or other culpable or inappropriate behavior, or (2) grounds for discharge reasonably related, in the Company's honest judgment, to the needs of the Business of the Company.

(c) You agree to communicate the contents of all post-relationship obligations in this Noncompetition Covenant to any Competing Business that you intend to be employed by, associated with, or represent.  You understand and agree that the Company may, in its discretion, also share any post-relationship obligation in this Noncompetition Covenant with any future (or potential) employer or association that is a Competing Business that seeks to be associated with you or employ you for your services.

(d) You agree that the enforcement of the Noncompetition Covenant is necessary, among other things, to ensure the preservation, protection and continuity of the Company's Confidential Information, trade secrets and goodwill of the Company.  You agree that, due to the proprietary nature of the Business of the Company and relationships with others, the post-employment restrictions set forth above are reasonable as to duration and scope.

(e) You agree that any action that violates this Noncompetition Covenant would cause the Company irreparable harm for which monetary damages are inadequate.  Accordingly, in the event of a breach, or threatened breach, of this Noncompetition Covenant, the Company shall be entitled to an injunction restraining such breach or threatened breach, or requiring specific performance, in addition to any and all rights and remedies at law and equity.  The Company shall not be obligated to present additional evidence of irreparable harm or the insufficiency of monetary damages and, to the extent permitted by law or under applicable court rule, does not need to post a bond or other surety.  Nothing herein shall be construed as prohibiting the Company from pursuing any other remedy available to the Company for such breach or threatened breach.  If the Company prevails in any request to have you specifically perform your obligations under this Noncompetition Covenant (including pursuant to a temporary restraining order or preliminary injunction), the Company shall be entitled to receive from you the Company's costs of suit, including reasonable attorney's fees (in addition to any other relief sought, available or awarded under this Noncompetition Agreement).

(f) You and the Company hereby mutually agree to the exclusive jurisdiction of the Superior Court (inclusive of the Business Litigation Session) of the Commonwealth of Massachusetts or the United States District Court for the District of Massachusetts for any dispute arising hereunder.  Accordingly, with respect to any such court action, you (a)

submit to the personal jurisdiction of such courts; (b) consent to service of process by regular mail to your last known address; and (c) waive any other requirement (whether imposed by statute, rule of court, or otherwise) with respect to personal jurisdiction or service of process.  If you commence a legal action or other proceeding against the Company concerning a dispute arising from or relating to this Noncompetition Covenant outside of Massachusetts you shall reimburse the Company for its reasonable attorneys' fees, costs and expenses if Company prevails in staying, transferring, dismissing or otherwise defending such action or proceeding based on the location of the action or proceeding, regardless of whether such fees, costs and expenses are incurred in the forum where you commenced the action or in a Massachusetts forum. This Noncompetition Covenant shall be governed by the internal substantive laws of Massachusetts, without regard to the doctrine of conflicts of law.

(g) The failure of you or Company to insist upon strict performance of this Noncompetition Covenant irrespective of the length of time for which such failure continues, shall not be a waiver of such party's rights herein.  No term or provision of this Noncompetition Covenant may be waived unless such waiver is in writing.

(h) If a court determines that one or more of the provisions contained in this Noncompetition Covenant shall be invalid or unenforceable, such court shall construe, reform or otherwise revise such provision(s) and/or sever such provisions from this Noncompetition Covenant so as to render it enforceable to the maximum extent allowed by law.  Any part of this Noncompetition Covenant which is prohibited or which is held to be void or unenforceable shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions of this Noncompetition Covenant.

(i) Except as described in Section (b) of this Noncompetition Covenant, your obligations under this Noncompetition Covenant shall survive the termination of your relationship with the Company regardless of the manner of such termination.

(j) The rights granted to the Company under the Noncompetition Covenant shall inure to the benefit of, and be enforceable by, the successors or assigns of Company.

(k) You agree that you received this Noncompetition Covenant by the earlier of the formal offer of employment that you received from the Company or 10 business days before commencement of your employment with the Company.

(l) Before agreeing to this Noncompetition Covenant, you have the right to consult with counsel. The terms and conditions of this Noncompetition Covenant shall supersede all prior noncompetition covenants between you and Company.

(m) In the event that you breach this Noncompetition Covenant, in addition to any other rights and remedies available to the Company, you agree that the Company shall have the right to deem that any and all vested and unvested shares subject to this stock option grant have been forfeited.

(n) The parties agree that you are employed "at will" and nothing in this Noncompetition Covenant is intended to guarantee employment for any period of time. Even though the nature of your relationship with the Company is as an "at will" employee, the parties enter this Noncompetition Covenant with the understanding that your position, title, duties and responsibilities could change in a material way in the future and, in light of that understanding, the parties intend that this Noncompetition Covenant shall follow you throughout the entire course of your employment with the Company, and such subsequent material change shall not affect the enforceability or validity of this Noncompetition Covenant.

**Acknowledged and Agreed:**

*DocuSigned by: [signature] C58BD7906D874C7...*

**Signature**

Michael Z. Hermalyn

**Name**

8/31/2020

**Date**

**DRAFTKINGS INC.:**

[signature]

Jason Robins
CEO