# EXHIBIT B

1   BRAD D. BRIAN (SBN 79001)
    brad.brian@mto.com
2   BETHANY W. KRISTOVICH (SBN 241891)
    bethany.kristovich@mto.com
3   ANNE K. CONLEY (SBN 307952)
    anne.conley@mto.com
4   MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue, 50th Floor
5   Los Angeles, California 90071-3426
    Telephone:     (213) 683-9100
6   Facsimile:     (213) 687-3702

7   *Attorneys for Plaintiff*
    *MICHAEL Z. HERMALYN*

8

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 COUNTY OF LOS ANGELES, CENTRAL DISTRICT

11

12   MICHAEL Z. HERMALYN and         Case No. 24STCV02694
     FVP, LLC,
13                                    **PLAINTIFF MICHAEL Z. HERMALYN'S**
                Plaintiffs,           ***EX PARTE* APPLICATION FOR (1) A**
14                                    **TEMPORARY RESTRAINING ORDER**
          vs.                         **AND (2) AN ORDER TO SHOW CAUSE**
15                                    **REGARDING PRELIMINARY**
     DRAFTKINGS, INC.,                **INJUNCTION**
16
                Defendant.           *[Filed Concurrently: Declaration of Bethany*
17                                    *W. Kristovich; Declaration of Michael Z.*
                                      *Hermalyn; Request for Judicial Notice;*
18                                    *[Proposed] Order]*

19
                                      Hearing Date:   February 2, 2024
20                                    Time:           8:30 a.m.
                                      Dept:           85
21                                    Judge:          Hon. James C. Chalfant

22                                    Action Filed:   February 1, 2024
                                      Trial Date:     N/A
23

24

25

26

27

28

**EX PARTE APPLICATION FOR (1) A TEMPORARY RESTRAINING ORDER AND (2) AN ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION**

On February 2, 2024, at 8:30 a.m., or as soon thereafter as the matter can be heard in Department 85 of the above-entitled court, located at 111 North Hill Street, Los Angeles, CA 90012, before the Honorable James C. Chalfant, Plaintiff Michael Z. Hermalyn will and hereby does apply *ex parte* to the Court for:

1. A temporary restraining order prohibiting Defendant DraftKings, Inc., and its officers, agents, servants, employees, representatives, and all persons acting in concert with them, pending the hearing on the order to show cause, from engaging in, committing, or performing, directly or indirectly, in any and all of the following acts:

    a. attempting to enforce any non-competition or non-solicitation provision in any agreements entered into between DraftKings and Mr. Hermalyn, including but not limited to such provisions contained in Exhibits A and B to the Declaration of Michael Z. Hermalyn; and

    b. interfering with or attempting to disrupt or terminate Mr. Hermalyn's employment relationship with FVP, LLC, including without limitation, enforcing any non-competition provision and non-solicitation provision of any agreement entered into between DraftKings and Mr. Hermalyn, which provisions clearly violate California law.

2. An order to show cause why a preliminary injunction should not be ordered pending trial in this case restraining and enjoining DraftKings and its officers, agents, servants, employees, representatives, and all persons acting in concert with them, from:

    a. attempting to enforce any non-competition or non-solicitation provision in any agreements entered into between DraftKings and Mr. Hermalyn, including but not limited to such provisions contained in Exhibits A and B to the Declaration of Michael Z. Hermalyn; and

    b. interfering with or attempting to disrupt or terminate Mr. Hermalyn's employment relationship with FVP, LLC, including without limitation, enforcing any non-

competition provision and non-solicitation provision of any agreement entered into between DraftKings and Mr. Hermalyn, which provisions clearly violate California law.

This Application is based on the Application itself; the attached Memorandum of Points and Authorities in support thereof; the Declaration of Bethany W. Kristovich; the declaration of Michael Z. Hermalyn; the request for judicial notice; all papers and pleadings on file herein; and such further evidence and argument as may be presented to the Court.

Pursuant to Rules 3.1203 and 3.1204(a)(1) of the California Rules of Court, Plaintiff gave DraftKings notice of this *Ex Parte* Application on February 1, 2024, at 9:45 a.m. and requested that DraftKings advise whether it would appear to oppose the requested relief. (See Declaration of Bethany W. Kristovich ("Kristovich Decl.") ¶ 2.) DraftKings has not stated its position with respect to the relief sought. (*Id.* ¶ 3) DraftKings has objected to the fact that it did not receive the ex parte supporting papers until late in the day. (*Id.*) Because the complaint was filed electronically, a case number was not received until approximately 4 pm. (*Id.*) Counsel gave notice, including a detailed description of the relief sought, at 9:45 am, in accordance with California Rules of Court, and sent Draft Kings a courtesy copy of the complaint shortly after they reached out and will provide a copy of the moving papers after filing. (*Id.*)

Pursuant to Rule 3.1202(a) of the California Rules of Court, Plaintiff states that the following contact information for DraftKings is known to him:

- CT Corporation System (DraftKings's authorized agent in California); 330 N. Brand Blvd. Suite 700, Glendale, CA 91203

- Stanton Dodge – sdodge@draftkings.com

- Andrew Shriro – ashriro@draftkings.com

- Orin Snyder – osnyder@gibsondunn.com

- Katherine V.A. Smith - ksmith@gibsondunn.com

- James P. Fogelman - jfogelman@gibsondunn.com

1    Pursuant to Rules 3.1150(e) and 3.1202(b) of the California Rules of Court, Plaintiff

2  informs the Court that he has not previously applied for relief from the non-competition or non-

3  solicitation provisions in the agreements at issue in this case.

4

5  DATED:  February 1, 2024                    MUNGER, TOLLES & OLSON LLP

6

7                                             By:  _____

8                                                   BRAD D. BRIAN
                                               Attorneys for Plaintiff
9                                              MICHAEL Z. HERMALYN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT..................................................9

II.   STATEMENT OF FACTS...........................................................................................10

    A.   Mr. Hermalyn, a California Resident, Is Employed by Fanatics VIP, a
        Company Formed in California.....................................................................10

    B.   Mr. Hermalyn's Former Employer, DraftKings, Required Mr. Hermalyn to
        Sign Agreements that Are Illegal Under California Law...............................11

III.  ARGUMENT .............................................................................................................13

    A.   Legal Standard for a TRO ............................................................................13

    B.   Mr. Hermalyn Is Likely to Succeed on the Merits ......................................13

        1.   DraftKings' Restrictive Covenants Are Void Under California Law ..........13

        2.   An Injunction Is Necessary to Stop DraftKings' Illegal Efforts to
              Enforce the Restrictive Covenants and Foreign Law/Forum
              Provisions ...........................................................................................15

            (a)   Failure to Enjoin DraftKings' Unlawful Covenants Would
                 Frustrate Fundamental California Policy ...................................16

            (b)   Failure to Enjoin DraftKings' Unlawful Covenants Would
                 Lead to Vexatious and Oppressive Litigation ...................................18

            (c)   Failure to Enjoin DraftKings' Unlawful Covenants Would
                 Threaten This Court's Jurisdiction ....................................................18

            (d)   Enjoining DraftKings' Unlawful Covenants Would Not
                 Create Unwarranted Comity Concerns .............................................19

    C.   Mr. Hermalyn Is Likely to Suffer Harm if DraftKings Is Allowed to Seek to
        Enforce the Restrictive Covenants Before the Court Considers a Preliminary
        Injunction ......................................................................................................19

    D.   The Court Should Exercise Its Discretion to Waive the Bond.................................20

IV.   CONCLUSION ................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*China Trade & Development Corp. v. M.V. Choong Yong*
(2d Cir. 1987) 837 F.2d 33 ........................................................................................18

*Domtar AI Inc. v. J.D. Irving, Ltd.*
(E.D.N.C. 2014) 43 F.Supp.3d 635 ...........................................................................12

*E. & J. Gallo Winery v. Andina Licores S.A.*
(9th Cir. 2006) 446 F.3d 984 ...............................................................................16, 17

*Laker Airways Ltd. v. Sabena Belgian World Airlines*
(D.C. Cir. 1984) 731 F.2d 909 ............................................................................18, 19

*Latona v. Aetna U.S. Healthcare Inc.*
(C.D. Cal. 1999) 82 F.Supp.2d 1089 .........................................................................15

*Microsoft Corp. v. Motorola, Inc.*
(9th Cir. 2012) 696 F.3d 872 .....................................................................................19

*O'Sullivan Films v. Neaves*
(W.D. Va., Oct. 24, 2017, No. 5:17-cv-00031) 2017 WL 4798997 ..........................12

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*
(1st Cir. 2004) 361 F.3d 11 .......................................................................................18

*Roadrunner Intermodal Servs., LLC v. T.G.S. Transportation, Inc.*
(E.D. Cal., Mar. 28, 2019, No. 1:17-cv-01207-DAD-BAM) 2019 WL 1400093......14

*Wellness Group, LLC. v. King Bio, Inc.*
(W.D.N.C., Apr. 30, 2014, No. 1:12-cv-00281-MR-DLH) 2014 WL 1713767 .......12

STATE CASES

*Adv. Bionics Corp. v. Medtronic, Inc.*
(2002) 29 Cal.4th 697................................................................................15, 16, 18

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*
(2018) 28 Cal.App.5th 923 ........................................................................................14

*Application Group, Inc. v. Hunter Group., Inc.*
(1998) 61 Cal.App.4th 881 ........................................................................................15

*Biosense Webster, Inc. v. Super. Ct.*
(2006) 135 Cal.App.4th 827 ......................................................................................16

*Chico Feminist Women's Health Center v. Scully*
    (1989) 208 Cal.App.3d 230 ...........................................................13

*Church of Christ in Hollywood v. Super. Ct.*
    (2002) 99 Cal.App.4th 1244 ........................................................13

*Common Cause v. Bd. of Supervisors*
    (1989) 49 Cal.3d 432 ...................................................................19

*Dowell v. Biosense Webster, Inc.*
    (2009) 179 Cal.App.4th 564 .......................................................14

*Edwards v. Arthur Andersen LLP*
    (2008) 44 Cal.4th 937 .........................................................14, 16

*G Cos. Management, LLC v. LREP Ariz., LLC*
    (2023) 88 Cal.App.5th 342 .........................................................14

*Gray v. Bybee*
    (1943) 60 Cal.App.2d 564 ...........................................................13

*Intershop Communications v. Super. Ct.*
    (2002) 104 Cal.App.4th 191 .......................................................14

*Right Site Coalition v. L.A. Unified School Dist.*
    (2008) 160 Cal.App.4th 336 .......................................................19

*So. Christian Leadership Cong. v. Al Malaikah Auditorium Co.*
    (1991) 230 Cal.App.3d 207 .........................................................13

*TSMC N. Am. v. Semiconductor Manufacturing Internat. Corp.*
    (2008) 161 Cal.App.4th 581 .......................................................15

*Verdugo v. Alliantgroup, L.P.*
    (2015) 237 Cal.App.4th 141 .......................................................14

*Weber, Lipshie & Co. v. Christian*
    (1997) 52 Cal.App.4th 645 .........................................................14

**STATE STATUTES**

Bus. & Prof. Code, § 16600 ........................................................13, 14, 16

Bus. & Prof. Code, § 16600.1 ............................................................13, 17

Bus. & Prof. Code, § 16600.5 ...........................................................*passim*

Bus. & Prof. Code, § 17200 ..................................................................13

*EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

Civ. Code, § 3513.................................................................................................14

Code Civ. Proc., § 529 ..........................................................................................20

**LEGISLATIVE MATERIALS**

Sen. Bill No. 699 (2023–2024 Reg. Sess.) § 1 ..............................................15, 17, 18

I.      <u>**INTRODUCTION AND SUMMARY OF ARGUMENT**</u>

Plaintiff Michael Hermalyn, a California resident, applies *ex parte* for a temporary restraining order and order to show cause as to why a preliminary injunction should not issue to bar his former employer from enforcing restrictive covenants that are unlawful under California law.  Specifically, Mr. Hermalyn requests an order (1) declaring the restrictive covenants in contracts presented to him by his former employer unenforceable, and (2) restraining his former employer from any attempt to enforce those restrictive covenants because they are void under California law.  (See Bus. & Prof. Code, 16600.5, subd. (a) [any contract that is void under this chapter is unenforceable regardless of where and when the contract was signed], (b) [a former employer shall not attempt to enforce a contract that is void under this chapter regardless of whether the contract was signed and the employment was maintained outside of California].)  Under laws that went into effect on January 1, 2024, Mr. Hermalyn has a private right of action for injunctive relief to prohibit his former employer from attempting to enforce restrictive covenants that are illegal under California law.  (*Id.*, subd. (e)(1) [a former employee "may bring a private action to enforce this chapter for injunctive relief"].)

Mr. Hermalyn, an executive in the gaming space, recently accepted a role with co-Plaintiff FVP, LLC ("Fanatics VIP"), a California-based affiliate of the global digital sports platform Fanatics Holdings, Inc. (together with its subsidiaries and affiliates, including Fanatics VIP, "Fanatics"), as the President of Fanatics VIP and the Head of Fanatics' Los Angeles, California, office.  This position requires that Mr. Hermalyn live and work in Los Angeles, where Fanatics already employs approximately 80 individuals.  He has moved to California for this role.

Prior to moving to California and accepting employment with Fanatics, Mr. Hermalyn worked for DraftKings, Inc. ("DraftKings").  Contrary to California's long-standing law and public policy promoting employee mobility, pursuit of lawful profession, entrepreneurship, and innovation, DraftKings required that Mr. Hermalyn, when he was residing in New Jersey and working for DraftKings in New York, sign several non-compete, customer non-solicitation, employee non-solicitation, and foreign Massachusetts law/forum agreements as a condition of his employment.  But the California Legislature, with the passage of recent legislation, stated that it

1  would preclude enforcement of restrictive covenants against its residents *regardless of where and*

2  *when the contract was signed.*  (Bus. & Prof. Code, § 16600.5.)

3        Absent immediate relief, DraftKings will drag not only Mr. Hermalyn, but also his new

4  employer, to court, likely in Massachusetts.  Allowing such enforcement action with respect to a

5  contract that the California Legislature has said cannot be enforced against its residents would

6  frustrate public policy and violate Mr. Hermalyn's rights.  Because Mr. Hermalyn can show a

7  likelihood of success on the merits and that the balance of harms weighs in his favor, a Temporary

8  Restraining Order  (and injunction) should issue.  To the extent the Court has concerns about

9  issuing an injunction that prevents DraftKings from filing suit – it should not – the test for antisuit

10  injunctions also is satisfied here.

11  **II.**      <u>**STATEMENT OF FACTS**</u>

12        **A.**     <u>**Mr. Hermalyn, a California Resident, Is Employed by Fanatics VIP, a**</u>
<u>**Company Formed in California**</u>

13

14        On February 1, 2024, Mr. Hermalyn accepted an offer from Fanatics VIP, which is a

15  limited liability company formed in California, with headquarters in Los Angeles, California, to

16  join as President of Fanatics VIP and the Head of Fanatics' Los Angeles office.  (Declaration of

17  Michael Z. Hermalyn ("Hermalyn Decl.") ¶ 3.)  Fanatics VIP is a California-based affiliate of the

18  global digital sports platform Fanatics Holdings, Inc.  Fanatics VIP has conveyed to Mr. Hermalyn

19  that he is a noteworthy and valuable addition to its business, as his substantial experience will

20  facilitate the expansion of its preexisting California operations and provide additional leadership at

21  the senior level on the West Coast.  (*Id.* ¶ 6.)

22        Mr. Hermalyn has moved to California for this opportunity.  (*Id.* ¶¶ 2, 5.)  He has leased an

23  apartment in California with the intention of buying a home later this year.  (*Id.* ¶ 2.)  He has taken

24  and passed the California driver's exam, obtaining a California driver's license.  (*Ibid.*)  He has

25  purchased a car in California, has registered to vote in California, and is in the process of

26  obtaining a physician in California.  (*Ibid.*)  His wife and children are also joining him in

27  California following the completion of the current academic school year.  (*Ibid.*)  He and his wife

28  have taken affirmative steps to enroll their daughters – ages 6 and 3 – in schools and camps in Los

Angeles for the upcoming summer and school year.  (*Ibid.*)  Mr. Hermalyn's position with Fanatics VIP requires that he live and work in person in Los Angeles, where Fanatics already employes approximately 80 people.  (*Id.* ¶ 5.)

Prior to resigning, Mr. Hermalyn took steps to ensure he was no longer in possession of any of his former employer's property or confidential information.  (*Id.* ¶ 11.)  He turned over any DraftKings-issued devices to his counsel.  (*Ibid.*)  He worked with his counsel to ensure that any DraftKings-issued documents and information were no longer on his personal accounts and devices.  (*Ibid.*)  And he even sent his personal phone to his counsel and bought a new phone, to ensure that it did not contain any DraftKings information.  (*Ibid.*)  He confirmed to DraftKings in his resignation notice that he had taken steps to ensure that he was not in possession of any confidential or proprietary information.  (*Ibid.*)

**B.    Mr. Hermalyn's Former Employer, DraftKings, Required Mr. Hermalyn to Sign Agreements that Are Illegal Under California Law**

Before joining Fanatics VIP in California, Mr. Hermalyn worked for DraftKings, from September 2020 to January 2024.  (*Id.* ¶¶ 8, 10)  His internal title was vice-president.  (*Id.* ¶ 8.)  DraftKings is a daily fantasy sports contest and sports betting company that operates throughout the United States (including in California, where it is registered to do business as an out-of-state corporation) and in at least six other countries.

Before his move to Los Angeles, and during his employment with DraftKings, Mr. Hermalyn was a New Jersey resident who worked out of DraftKings' New York City office when he was not working remotely.  (*Id.* ¶ 9.)  Although he never resided in Massachusetts, was never employed in Massachusetts, and never worked out of DraftKings' Massachusetts office, DraftKings demanded that Mr. Hermalyn—as a condition of employment—execute multiple Restricted Stock Unit Grant Notice and Non-Competition Covenants, as well as a Nonsolicitation, Nondisclosure & Assignment of Inventions Agreement (collectively, the "Agreements").  (*Id.* ¶¶ 12–14 & Exs. A & B thereto.)

The Agreements purport to severely curtail Mr. Hermalyn's employee rights and mobility in several respects:

- First, the Agreements purport to prohibit Mr. Hermalyn from providing services that "relate to any aspect" of DraftKings' far-reaching global empire (which purports to include fantasy sports, broadcasting, gaming, marketplace, media, and any other "incidentally related products and services") to any broadly-defined "Competing Business" for "twelve (12) months" following his departure from DraftKings.  (*Id.*, Ex. B § (a); see also *id.* Ex. B §§ (a)(iv), (vii), (x), (xi).)

- Second, the Agreements purport to prevent Mr. Hermalyn from soliciting any of DraftKings' "customers, clients, vendors or partners" for "twelve (12) months" following his departure from DraftKings.  (*Id.*, Ex. A (Addendum A ¶ 2).)

- Third, the Agreements purport to forbid Mr. Hermalyn from soliciting or hiring any of DraftKings' employees or contractors for "twelve (12) months" following his departure from DraftKings.  (*Id.*, Ex. A (Addendum A ¶ 3).)

- Fourth, the Agreements state that "the internal substantive laws of Massachusetts, without regard to the doctrine of conflicts of law," will always apply to any dispute between Mr. Hermalyn and DraftKings arising under the Agreements.  (*Id.*, Ex. A (Addendum A ¶ 9); see also *id.*, Ex. B § (f).)

- Fifth, the Agreements purport to require Mr. Hermalyn to litigate any dispute with DraftKings in Massachusetts state or federal court irrespective of the inconvenience or impropriety of those venues.  (*Id.*, Ex. A (Addendum A ¶ 9; see also *id.*, Ex. B § (f).)

These sweeping, overbroad restrictions have no geographic limitation at all; instead, they purport to extend to "any place within the United States or anywhere else in the world."  (*Id.*, Ex. B § (a)(vii).)  Nor are they narrowly tailored to protect DraftKings' trade secrets.  (See *id.*, Ex. B § (d).)  The purpose of these provisions is unambiguous and absolute:  DraftKings hopes to prevent Mr. Hermalyn from pursuing his chosen work in any fashion for one year after his departure from DraftKings.

Mr. Hermalyn expects DraftKings to seek to enforce these restrictive covenants to prevent him from working for Fanatics.  (See *id.* ¶ 17.)[1]  To protect his rights, Mr. Hermalyn, together with Fanatics VIP, filed this action for declaratory and injunctive relief, as well as for violation of

---

[1] DraftKings' contractually stated intention to enforce the Agreements is sufficient to trigger a justiciable controversy.  (See, e.g., *O'Sullivan Films v. Neaves* (W.D. Va., Oct. 24, 2017, No. 5:17-cv-00031) 2017 WL 4798997, at *3–4 [threatening breach is sufficient under Declaratory Judgment Act]; *Wellness Group, LLC. v. King Bio, Inc.* (W.D.N.C., Apr. 30, 2014, No. 1:12-cv-00281-MR-DLH) 2014 WL 1713767, at *4 ["intent to enforce" agreement is "sufficient to give rise to actual controversy for the purpose of a declaratory judgment claim"]; *Domtar AI Inc. v. J.D. Irving, Ltd.* (E.D.N.C. 2014) 43 F.Supp.3d 635, 639–640 [finding non-solicitation clause unenforceable and void despite no allegations of breach].)

1   California Business & Professions Code Sections 16600, 16600.1, and 16600.5, and 17200.

2   Mr. Hermalyn submits this application to ensure that his former employer is not permitted to

3   enforce contractual provisions that the California Legislature has declared void.

4   **III.    ARGUMENT**

5       **A.    Legal Standard for a TRO**

6          The Court may issue a temporary restraining order to stop the violation of a plaintiff's

7   rights pending a future hearing on an injunction.  (*Chico Feminist Women's Health Center v.*

8   *Scully* (1989) 208 Cal.App.3d 230, 236–237.)

9          "Trial courts should evaluate two interrelated factors when deciding whether or not to issue

10  a restraining order."  (*Church of Christ in Hollywood v. Super. Ct.* (2002) 99 Cal.App.4th 1244,

11  1251, cleaned up.)  The first factor is "the likelihood that the plaintiff will prevail on the merits at

12  trial."  (*Ibid.*)  The second factor is "the interim harm that the plaintiff is likely to sustain if the

13  restraining order were denied as compared to the harm that the defendant is likely to suffer if the

14  order were issued."  (*Ibid.*)  "The trial court's determination must be guided by a 'mix' of the

15  potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must

16  be shown on the other to support a restraining order."  (*Id.* at pp. 1251–1252.)

17         "The granting or denial of a temporary restraining order is discretionary with the trial

18  judge . . . and amounts to a mere preliminary or interlocutory order to keep the subject of litigation

19  *in status quo* pending the determination of the action on its merits."  (*Gray v. Bybee* (1943) 60

20  Cal.App.2d 564, 571.)  "Plaintiffs are not required to wait until they suffer actual harm, but may

21  seek injunctive relief against threatened infringement of their rights."  (*So. Christian Leadership*

22  *Cong. v. Al Malaikah Auditorium Co.* (1991) 230 Cal.App.3d 207, 223.)

23      **B.    Mr. Hermalyn Is Likely to Succeed on the Merits**

24        **1.    DraftKings' Restrictive Covenants Are Void Under California Law**

25         Under black-letter California law, "*every* contract by which anyone is retrained from

26  engaging in a lawful profession, trade, or business *of any kind* is to that extent *void*."  (Bus. &

27  Prof. Code, § 16600, subd. (a), emphasis added.)  California "void[s] the application of any

28  noncompete agreement in an employment context, or any noncompete in an employment contract,

no matter how narrowly tailored," *id.* § 16600, subd. (b)(1), as the state has a "strong public policy

of protecting the right of its citizens to pursue any lawful employment and enterprise of their

choice." (*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.* (2018) 28 Cal.App.5th 923, 935.)

California courts prohibit exactly the kind of non-compete, client non-solicit, and employee non-

solicit agreements that DraftKings executed with Mr. Hermalyn. (See, e.g., *Edwards v. Arthur*

*Andersen LLP* (2008) 44 Cal.4th 937, 955 (*Edwards*) [voiding non-competition agreement]; *AMN*

*Healthcare*, *supra*, 28 Cal.App.5th at p. 936 [voiding employee non-solicitation agreement];

*Dowell v. Biosense Webster, Inc.* (2009) 179 Cal.App.4th 564, 575 [voiding customer non-

solicitation agreement].)[2]

California courts also decline to enforce foreign state choice-of-law and forum selection

clauses in restrictive covenant cases where those provisions would serve to deprive California

residents of their substantive rights under California law. (See *Intershop Communications v.*

*Super. Ct.* (2002) 104 Cal.App.4th 191, 200 ["[A] forum selection clause will not be enforced if to

do so would bring about a result contrary to the public policy of this state."]; see also *Roadrunner*

*Intermodal Servs., LLC v. T.G.S. Transportation, Inc.* (E.D. Cal., Mar. 28, 2019, No. 1:17-cv-

01207-DAD-BAM) 2019 WL 1400093, at *6 [noting "long developing trend among California

courts of finding that § 16600 represents a fundamental public policy interest in California that

overrides contractual choice of law provisions, at least with respect to such restrictive covenants"];

*G Cos. Management, LLC v. LREP Ariz., LLC* (2023) 88 Cal.App.5th 342, 350–351 [refusing to

enforce forum selection clause where unwaivable rights of California resident and employee might

be diminished]; *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 154 [same].) And

California courts declare post-employment restrictive covenant provisions illegal and

unenforceable under California law, even where the employees at issue ***did not reside in***

***California*** (but were employed by a California company), and the agreements at issue called for

---

[2]   The right to employee mobility recognized in California is so strong that it cannot be waived by
a party via private agreement. (See Civ. Code, § 3513 [any "law established for a public reason
cannot be contravened by a private agreement"]; *Weber, Lipshie & Co. v. Christian* (1997) 52
Cal.App.4th 645, 659 [parties cannot waive benefits of Section 16600 by private agreement].)

application of another state's law (rather than California law).  (See *Application Group, Inc. v. Hunter Group., Inc.* (1998) 61 Cal.App.4th 881, 906.)

There can be no doubt that California's foundational principles—enshrined in statutes and confirmed in decades of caselaw—stand starkly opposed to the restrictive covenants in the DraftKings Agreements.  Nor can there be any legitimate dispute that enforcing those provisions against a California resident and employee like Mr. Hermalyn would frustrate California's strong public policy.  (See *Latona v. Aetna U.S. Healthcare Inc.* (C.D. Cal. 1999) 82 F.Supp.2d 1089, 1093 ["[P]rotection against restraint of employment qualifies as a strong public policy in California."].)

It does not matter to this analysis that Mr. Hermalyn only recently became a California resident.  The statutory language and legislative history are clear that California's public policy protects not only long-term residents of the state but also those, like Mr. Hermalyn, who move to pursue employment opportunities in California.  The California Legislature has expressly declared its "interest in protecting the freedom of movement of persons whom California-based employers wish to employ" and accordingly has extended its protections to all employees seeking employment in California, including those who "signed the contractual restraint ***while living outside of California and working for a non-California employer***."   (Sen. Bill No. 699 (2023–2024 Reg. Sess.) § 1(e), (f); Bus. & Prof. Code, § 16600.5, subd. (a), emphasis added.)

### 2.  An Injunction Is Necessary to Stop DraftKings' Illegal Efforts to Enforce the Restrictive Covenants and Foreign Law/Forum Provisions

To the extent the Court has any qualms about the fact that the requested relief would preclude DraftKings from filing suit, that relief also is appropriate:  "California courts unquestionably have the power under certain circumstances to issue antisuit injunctions to restrain litigants from pursuing lawsuits in other states or foreign nations."  (*TSMC N. Am. v. Semiconductor Manufacturing Internat. Corp.* (2008) 161 Cal.App.4th 581, 589; see also *Adv. Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 704–705 (*Adv. Bionics Corp.*) [same]. California courts recognize the need to enjoin foreign litigation where "exceptional circumstances" indicate that such action is "necessary to protect the jurisdiction of the enjoining

court, or to prevent the litigant's evasion of the important public policies of the forum." (*Adv. Bionics Corp., supra*, 29 Cal.4th at p. 708; *id.* at pp. 711, 714 [Conc. Opn. of Moreno, J.]; see also *Biosense Webster, Inc. v. Super. Ct.* (2006) 135 Cal.App.4th 827, 839 [adopting "exceptional circumstance test"].)  Such antisuit injunctions "may be proper" where foreign litigation "would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable considerations."  (*E. & J. Gallo Winery v. Andina Licores S.A.* (9th Cir. 2006) 446 F.3d 984, 990 (*E. & J. Gallo*) [injunction proper "if any of the four elements is present"].)

Exceptional circumstances are present here.  Allowing DraftKings to sue Mr. Hermalyn, a California resident, to enforce the restrictive covenants would satisfy each prong:

> (a)   *Failure to Enjoin DraftKings' Unlawful Covenants Would Frustrate Fundamental California Policy*

Allowing DraftKings to sue to enforce unlawful covenants would frustrate California policy.  While the California Supreme Court concluded back in 2002 that California's policy against noncompetition agreements under Section 16600 was not—standing alone—an "exceptional circumstance" sufficient to justify the issuance of an antisuit injunction or bar parallel litigation in a foreign proceeding, see *Adv. Bionics Corp.*, *supra*, 29 Cal.4th at pp. 706–707, intervening developments have significantly altered the antisuit-injunction calculus.  These material changes have greatly expanded California courts' wide-ranging authority to enforce the state's laws and promote its strong public policy in favor of employee mobility.

At the time *Advanced Bionics* was issued 22 years ago, the California Supreme Court had yet to decide that noncompetition agreements in the employment context are *per se* invalid.  Nor had it determined that no "narrow restraint" exception exists to the general rule voiding them. (See *Edwards*, *supra*, 44 Cal.4th at pp. 948–950.)  Nor had scores of California courts invalidated employee or customer non-solicitation provisions.  Nor had the Legislature explicitly incorporated these "broad" rules (as well as the *Edwards* decision itself) into California Business & Professions Code Section 16600, as it has now.  (See Bus. & Prof. Code, § 16600, subd. (b)(1).)  And the

1    California Legislature had not yet enacted California Business & Professions Code Sections

2    16600.5 and 16600.1.  These two new laws, passed last year and effective January 1, 2024,

3    materially extend California's prohibition on post-employment restrictive covenants.

4         These recent amendments explicitly recognize the "exceptional circumstances" involved

5    when the right  freely to pursue employment in California is at stake.  As the Legislature

6    emphasized during their passage, "as the market for talent has become national and remote work

7    has grown, California employers increasingly face the challenge of employers outside California

8    attempting to prevent the hiring of former employees."  (Sen Bill No. 699 (2023–2024 Reg. Sess.)

9    § 1(d).)  Because such anticompetitive conduct threatens to "stifle economic development" in

10   California, limits its "firms' ability to hire," and "depress[es] innovation and growth," California's

11   Legislature and courts "have been clear that California's public policy against restraint of trade

12   law ***trumps other state laws*** when an employee seeks employment in California, ***even if the***

13   ***employee has signed the contractual restraint while living outside of California and working for***

14   ***a non-California employer***"—as happened here when Mr. Hermalyn was working for DraftKings

15   in New Jersey and New York.  (*Id.* §§ 1(c), (e), emphasis added.)  According to the Legislature,

16   the state's "interest in protecting the freedom of movement of persons whom California-based

17   employers wish to employ to provide services in California, regardless of the person's state of

18   residence," is so "strong" as to be "paramount to competitive business interests."  (*Id.* § 1(f).)

19        But Sections 16600.5 and 16600.1 do more than simply expand the already significant scope

20   of California's employee mobility laws or reinforce the extraordinary circumstances implicated by

21   their underlying policies.  These momentous amendments also allow a "former employee" to "bring

22   a private action to enforce this chapter ***for injunctive relief*** or the recovery of actual damages, or

23   both," as Mr. Hermalyn has done through this litigation.  (Bus. & Prof. Code, § 16600.5,

24   subd. (e)(1), emphasis added.)  The Legislature's creation of a statutory injunctive relief remedy

25   necessarily includes antisuit injunctions, as it would defeat the purpose of new amendments if they

26   did not prevent California residents like Mr. Hermalyn from being hauled against their will to

27   distant foreign jurisdictions (like Massachusetts, where Mr. Hermalyn has ***never*** lived or worked)

28   to defend their fundamental free enterprise rights.  (See *E. & J. Gallo*, *supra*, 446 F.3d at p. 992

1  [recognizing that "foreign litigation may be enjoined when it would . . . frustrate a policy of the

2  forum issuing the injunction"].)  Indeed, Section 16600.5's legislative history makes plain that it is

3  meant to "prohibit any employer from attempting to enforce a void contract, ***including seeking***

4  ***enforcement in a non-California court***."  (See Req. for Jud. Not., Ex. A at AP1-2, emphasis

5  added.)  In short, the law has changed; antisuit injunctions are now proper in precisely this

6  situation.

7          *(b)*      *Failure to Enjoin DraftKings' Unlawful Covenants Would Lead to*
                        *Vexatious and Oppressive Litigation*

8

9      Allowing DraftKings to initiate litigation would be "vexatious [and] oppressive":  Given

10  the Legislature's stated concern over the "chilling effect" of "noncompete litigation," Sen. Bill

11  No. 699 (2023–2024 Reg. Sess.) § 1(a), it would defeat the purpose of the Legislature's new

12  amendments if courts did not protect California residents from being hauled against their will to

13  foreign jurisdictions to defend their right to work freely in California.

14          *(c)*      *Failure to Enjoin DraftKings' Unlawful Covenants Would Threaten*
                        *This Court's Jurisdiction*

15

16      An injunction is necessary to protect the Court's jurisdiction.  The California Legislature,

17  in the recent amendments, evinced a clear intent for California courts to void unlawful restrictive

18  covenants.  If DraftKings were allowed to obtain an order to the contrary, that would thwart the

19  Court's jurisdiction.  (See *Adv. Bionics, supra*, 29 Cal.4th at p. 715 (conc. opn. of Moreno, J.) ["an

20  injunction may . . . also be necessary to protect the enjoining court's jurisdiction" where "a foreign

21  court in an in personam action was attempting to carve out exclusive jurisdiction over the

22  matter"]; *China Trade & Development Corp. v. M.V. Choong Yong* (2d Cir. 1987) 837 F.2d 33,

23  36–37; see also *Laker Airways Ltd. v. Sabena Belgian World Airlines* (D.C. Cir. 1984) 731 F.2d

24  909, 927 (*Laker Airways*) ["Courts have a duty to protect their legitimately conferred jurisdiction

25  to the extent necessary to provide full justice to litigants."]; *Quaak v. Klynveld Peat Marwick*

26  *Goerdeler Bedrijfsrevisoren* (1st Cir. 2004) 361 F.3d 11, 20 ["the need for an antisuit injunction

27  crests" where "a frontal assault on the . . . court's jurisdiction" or a threat to "its ability to do

28  justice between the parties in cases that are legitimately before it" is present].)

*(d)  Enjoining DraftKings' Unlawful Covenants Would Not Create Unwarranted Comity Concerns*

The impact of Mr. Hermalyn's requested antisuit injunction on comity is appropriate. No jurisdiction "is under an unremitting obligation to enforce foreign interests which are fundamentally prejudicial to those of the domestic forum," *Laker Airways, supra*, 731 F.2d at p. 937, as would be the case here if Massachusetts were not to recognize California's strong policy in favor of employee mobility and vigorous competition. Indeed, "the obligation of comity expires when the strong public policies of the forum are vitiated by the foreign act." (*Ibid.*) Comity is "less likely to be threatened" by a private commercial dispute, such as is present in this case, as opposed to a dispute "implicating public international law or government litigants." (See *Microsoft Corp. v. Motorola, Inc.* (9th Cir. 2012) 696 F.3d 872, 887.) And the fact that Mr. Hermalyn's action before this Court was the first one filed, "although not dispositive, may be relevant" to the comity determination. (*Ibid.*) That factor is relevant here as it promotes California's public policy for efficient adjudication of cases.

In fact, given the reasonable impact on comity and the fact that it is supported by pertinent equitable considerations, the other relevant factors typically considered by courts—including the need to preserve this Court's rightful jurisdiction over Mr. Hermalyn's California law claims, promote California's policy in favor of legal efficiency, and minimize inequitable hardship—all counsel strongly in favor of Mr. Hermalyn's requested antisuit injunction.

**C.  <u>Mr. Hermalyn Is Likely to Suffer Harm if DraftKings Is Allowed to Seek to Enforce the Restrictive Covenants Before the Court Considers a Preliminary Injunction</u>**

In situations like this one in which the moving party can show strong chance of success on the merits, injunctive relief can be granted regardless of whether the balance of hardships tips in his favor. (See *Common Cause v. Bd. of Supervisors* (1989) 49 Cal.3d 432, 447; *Right Site Coalition v. L.A. Unified School Dist.* (2008) 160 Cal.App.4th 336, 339.) Here, it is essentially beyond dispute that the anti-competitive provisions of the Agreements are invalid under California law, and as discussed above, the California Legislature has recently recognized that threats to enforce them constitute extraordinary circumstances that warrant the injunctive relief

1  Mr. Hermalyn seeks.  The high likelihood that Mr. Hermalyn will succeed on the merits alone is

2  therefore sufficient to justify the temporary restraining order.

3        Even if Mr. Hermalyn did not have such a strong case, however, the balance of harms

4  would still clearly favor the requested relief.  There is no harm whatever for DraftKings waiting a

5  few weeks until the Court can consider a preliminary injunction.  DraftKings cannot demonstrate

6  that the hiring of Mr. Hermalyn poses any risk of impermissible trade secret theft (it does not).

7  With no threat of trade secret violations, DraftKings cannot justify enforcement of its restrictive

8  covenants, and the balancing of harms clearly favors the requested relief.  Mr. Hermalyn, on the

9  other hand, would be greatly prejudiced if DraftKings were allowed to take action to enforce the

10 restrictive covenants in Massachusetts.  Being forced to defend against an action, in a forum that is

11 unfamiliar with California law, would harm Mr. Hermalyn's ability to do exactly what the

12 California Legislature has suggested it wants to encourage, which is move freely and take on new

13 roles.

14      **D.**    **The Court Should Exercise Its Discretion to Waive the Bond**

15       In general, the party seeking an injunction must post a bond sufficient to pay to the party

16 enjoined "such damages . . . as the party may sustain by reason of the injunction."  (Code Civ.

17 Proc., § 529, subd. (a).)  DraftKings will not be monetarily harmed by this injunction, and so no

18 bond is needed.

19 **IV.**   **CONCLUSION**

20       For the foregoing reasons, Mr. Hermalyn respectfully asks that Court issue the requested

21 temporary restraining order as well as an order to show cause as to why a preliminary injunction

22 should not issue.

23

24

25

26

27

28

1  DATED:  February 1, 2024                     MUNGER, TOLLES & OLSON LLP

2

3                                               By:

4                                                      BRAD D. BRIAN
                                                Attorneys for Plaintiff
5                                               MICHAEL Z. HERMALYN

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION