# EXHIBIT D

BRAD D. BRIAN (SBN 79001)
brad.brian@mto.com
BETHANY W. KRISTOVICH (SBN 241891)
bethany.kristovich@mto.com
ANNE K. CONLEY (SBN 307952)
anne.conley@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

*Attorneys for Plaintiff*
*MICHAEL Z. HERMALYN*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| MICHAEL Z. HERMALYN and FVP, LLC,<br><br>         Plaintiffs,<br><br>    vs.<br><br>DRAFTKINGS, INC.,<br><br>         Defendant. | Case No. 24STCV02694<br><br>**PLAINTIFF MICHAEL Z. HERMALYN'S *EX PARTE* APPLICATION FOR (1) A TEMPORARY RESTRAINING ORDER AND (2) AN ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION**<br><br>*[Filed Concurrently: Declaration of Anne K. Conley; Declaration of Michael Z. Hermalyn; Request for Judicial Notice; [Proposed] Order]*<br><br>Hearing Date:   February 7, 2024<br>Time:           8:30 a.m.<br>Dept:           86<br>Judge:          Hon. Mitchell L. Beckloff<br><br>Action Filed:   February 1, 2024<br>Trial Date:     N/A |

**<u>EX PARTE APPLICATION FOR (1) A TEMPORARY RESTRAINING ORDER AND</u>**

**<u>(2) AN ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION</u>**

On February 7, 2024, at 8:30 a.m., or as soon thereafter as the matter can be heard in Department 86 of the above-entitled court, located at 111 North Hill Street, Los Angeles, CA 90012, before the Honorable Mitchell L. Beckloff, Plaintiff Michael Z. Hermalyn will and hereby does apply *ex parte* to the Court for:

1. A temporary restraining order prohibiting Defendant DraftKings, Inc., and its officers, agents, servants, employees, representatives, and all persons acting in concert with them, pending the hearing on the order to show cause, from engaging in, committing, or performing, directly or indirectly, in any and all of the following acts:

   a. attempting to enforce any non-competition or non-solicitation provision in any agreements entered into between DraftKings and Mr. Hermalyn, including but not limited to such provisions contained in Exhibits A and B to the Declaration of Michael Z. Hermalyn; and

   b. interfering with or attempting to disrupt or terminate Mr. Hermalyn's employment relationship with FVP, LLC, including without limitation, enforcing any non-competition provision and non-solicitation provision of any agreement entered into by DraftKings and Mr. Hermalyn, which provisions clearly violate California law.

2. An order to show cause why a preliminary injunction should not be ordered pending trial in this case restraining and enjoining DraftKings and its officers, agents, servants, employees, representatives, and all persons acting in concert with them, from:

   a. attempting to enforce any non-competition or non-solicitation provision in any agreements entered into between DraftKings and Mr. Hermalyn, including but not limited to such provisions contained in Exhibits A and B to the Declaration of Michael Z. Hermalyn; and

   b. interfering with or attempting to disrupt or terminate Mr. Hermalyn's employment relationship with FVP, LLC, including without limitation, enforcing any non-competition provision and non-solicitation provision of any agreement entered into

between DraftKings and Mr. Hermalyn, which provisions clearly violate California law.

This Application is based on the Application itself; the attached Memorandum of Points and Authorities in support thereof; the Declaration of Anne K. Conley; the Declaration of Michael Z. Hermalyn; the request for judicial notice; all papers and pleadings on file herein; and such further evidence and argument as may be presented to the Court.

Pursuant to Rules 3.1203 and 3.1204(a)(1) of the California Rules of Court, Plaintiff gave DraftKings notice of this *Ex Parte* Application on February 5, 2024, at 8:41 p.m. and requested that DraftKings advise whether it would appear to oppose the requested relief.  (See Declaration of Anne K. Conley ("Conley Decl.") ¶ 2.)  At the time of this filing Plaintiff has not received a response.  (*Id.* ¶ 3.)

Pursuant to Rule 3.1202(a) of the California Rules of Court, Plaintiff states that the following contact information for DraftKings counsel is known to him:

GIBSON, DUNN & CRUTCHER LLP

JAMES P. FOGELMAN, SBN 161584

jfogelman@gibsondunn.com

ALAYNA MONROE, SBN 329061

amonroe@gibsondunn.com

2029 Century Park East, Ste. 4000

Los Angeles, CA 90067

Telephone: 310.552.8500

Facsimile: 310.551.8741


KATHERINE V.A. SMITH, SBN 247866

ksmith@gibsondunn.com

333 South Grand Avenue

Los Angeles, CA 90071

Tel.: 213.229.7000

1    Fac.: 213.229.7520

2    Pursuant to Rules 3.1150(b) of the California Rules of Court, Plaintiff requests that the

3    court file be made available to the Judge hearing this application.

4    Pursuant to Rules 3.1150(e) and 3.1202(b) of the California Rules of Court, Plaintiff

5    informs the Court that he previously submitted for filing an ex parte application the same day as

6    he filed his complaint seeking the same relief as sought herein.  Defendant DraftKings removed

7    this case to federal court the same day that the complaint was filed, before ex parte relief could be

8    sought in this court.  (Conley Decl. ¶ 4.)  The day after removal, Plaintiff also received notice that

9    his initial ex parte filing had been rejected by the court clerk office for being submitted after 10:00

10   a.m.  (*Id.*)  The United States District Court subsequently summarily rejected DraftKings'

11   removal, remanded the case, and set a briefing schedule on a motion for fees.  No Court has ruled

12   on the relief requested or the substance of this application.

13

14   DATED:  February 5, 2024                    MUNGER, TOLLES & OLSON LLP

15

16                                                                    By:  _____

17                                                                          BRAD D. BRIAN

18                                                                          Attorneys for Plaintiff
                                                                             MICHAEL Z. HERMALYN

19

20

21

22

23

24

25

26

27

28

*EX PARTE* APPLICATION FOR TRO AND OSC RE PRELIMINARY INJUNCTION

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT.........................................9

II.   STATEMENT OF FACTS.......................................................................................10

    A.    Mr. Hermalyn, a California Resident, Is Employed by Fanatics VIP, a
        California Company ...................................................................................10

    B.    Mr. Hermalyn's Former Employer, DraftKings, Required Mr. Hermalyn to
        Sign Agreements that Are Illegal Under California Law................................11

    C.    Mr. Hermalyn Files Suit to Obtain Speedy Relief From These Unlawful
        Covenants ...................................................................................................13

III.  ARGUMENT .........................................................................................................14

    A.    Legal Standard for a TRO .........................................................................14

    B.    Mr. Hermalyn Is Likely to Succeed on the Merits .....................................14

        1.    DraftKings' Restrictive Covenants Are Void Under California Law ..........14

        2.    An Injunction Is Necessary to Stop DraftKings' Illegal Efforts to
            Enforce the Restrictive Covenants and Foreign Law/Forum
            Provisions ..................................................................................17

            (a)    Failure to Enjoin DraftKings' Unlawful Covenants Would
                Frustrate Fundamental California Policy .........................................18

            (b)    Failure to Enjoin DraftKings' Unlawful Covenants Would
                Lead to Vexatious and Oppressive Litigation ..................................20

            (c)    Failure to Enjoin DraftKings' Unlawful Covenants Would
                Threaten This Court's Jurisdiction ..................................................20

            (d)    Enjoining DraftKings' Unlawful Covenants Would Not
                Create Unwarranted Comity Concerns .............................................21

    C.    Mr. Hermalyn Will Suffer Harm if DraftKings Is Allowed to Seek to
        Enforce the Restrictive Covenants Before the Court Considers a Preliminary
        Injunction ..................................................................................................21

    D.    The Court Should Exercise Its Discretion to Waive the Bond................................22

IV.   CONCLUSION .....................................................................................................22

# **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**FEDERAL CASES**

*China Trade & Development Corp. v. M.V. Choong Yong*
    (2d Cir. 1987) 837 F.2d 33 ....................................................................................18

*Domtar AI Inc. v. J.D. Irving, Ltd.*
    (E.D.N.C. 2014) 43 F.Supp.3d 635 .......................................................................12

*E. & J. Gallo Winery v. Andina Licores S.A.*
    (9th Cir. 2006) 446 F.3d 984.........................................................................16, 17

*Laker Airways Ltd. v. Sabena Belgian World Airlines*
    (D.C. Cir. 1984) 731 F.2d 909 .........................................................................18, 19

*Latona v. Aetna U.S. Healthcare Inc.*
    (C.D. Cal. 1999) 82 F.Supp.2d 1089......................................................................15

*Microsoft Corp. v. Motorola, Inc.*
    (9th Cir. 2012) 696 F.3d 872 ................................................................................19

*O'Sullivan Films v. Neaves*
    (W.D. Va., Oct. 24, 2017, No. 5:17-cv-00031) 2017 WL 4798997 ..........................12

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren*
    (1st Cir. 2004) 361 F.3d 11 ..................................................................................18

*Roadrunner Intermodal Servs., LLC v. T.G.S. Transportation, Inc.*
    (E.D. Cal., Mar. 28, 2019, No. 1:17-cv-01207-DAD-BAM) 2019 WL 1400093.....................14

*Wellness Group, LLC. v. King Bio, Inc.*
    (W.D.N.C., Apr. 30, 2014, No. 1:12-cv-00281-MR-DLH) 2014 WL 1713767 .......................12

**STATE CASES**

*Adv. Bionics Corp. v. Medtronic, Inc.*
    (2002) 29 Cal.4th 697............................................................................15, 16, 18

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*
    (2018) 28 Cal.App.5th 923 .....................................................................................14

*Application Group, Inc. v. Hunter Group., Inc.*
    (1998) 61 Cal.App.4th 881 .....................................................................................15

*Biosense Webster, Inc. v. Super. Ct.*
    (2006) 135 Cal.App.4th 827 ...................................................................................16

*Chico Feminist Women's Health Center v. Scully*
 (1989) 208 Cal.App.3d 230 ...............................................................13

*Church of Christ in Hollywood v. Super. Ct.*
 (2002) 99 Cal.App.4th 1244 .............................................................13

*Common Cause v. Bd. of Supervisors*
 (1989) 49 Cal.3d 432 .......................................................................19

*Dowell v. Biosense Webster, Inc.*
 (2009) 179 Cal.App.4th 564 ............................................................14

*Edwards v. Arthur Andersen LLP*
 (2008) 44 Cal.4th 937 ................................................................14, 16

*G Cos. Management, LLC v. LREP Ariz., LLC*
 (2023) 88 Cal.App.5th 342 ..............................................................14

*Gray v. Bybee*
 (1943) 60 Cal.App.2d 564 ...............................................................13

*Intershop Communications v. Super. Ct.*
 (2002) 104 Cal.App.4th 191 ............................................................14

*Right Site Coalition v. L.A. Unified School Dist.*
 (2008) 160 Cal.App.4th 336 ............................................................19

*So. Christian Leadership Cong. v. Al Malaikah Auditorium Co.*
 (1991) 230 Cal.App.3d 207 ..............................................................13

*TSMC N. Am. v. Semiconductor Manufacturing Internat. Corp.*
 (2008) 161 Cal.App.4th 581 ............................................................15

*Verdugo v. Alliantgroup, L.P.*
 (2015) 237 Cal.App.4th 141 ............................................................14

*Weber, Lipshie & Co. v. Christian*
 (1997) 52 Cal.App.4th 645 ..............................................................14

**STATE STATUTES**

Bus. & Prof. Code, § 16600 .............................................................13, 14, 16

Bus. & Prof. Code, § 16600.1 ................................................................13, 17

Bus. & Prof. Code, § 16600.5 .....................................................................*passim*

Bus. & Prof. Code, § 17200 ...........................................................................13

Civ. Code, § 3513................................................................................................................14

Code Civ. Proc., § 529 ........................................................................................................20

**LEGISLATIVE MATERIALS**

Sen. Bill No. 699 (2023–2024 Reg. Sess.) § 1 ..............................................................15, 17, 18

# I.     <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiff Michael Hermalyn, a California resident, applies *ex parte* for a temporary restraining order and order to show cause as to why a preliminary injunction should not issue to bar his former employer, Defendant DraftKings, Inc., from enforcing restrictive noncompete and nonsolicit covenants that are unlawful under a very recent California law that applies even to contracts entered into outside of California.  (See Bus. & Prof. Code, §§ 16600, 16600.5.)  **Just this evening, DraftKings has told Plaintiff that it plans to file suit against him in Massachusetts in order to enforce these unlawful covenants.**  (Conley Decl. ¶ 6.)

The need for Court intervention is urgent:  Since the filing of the complaint in this case on Thursday, February 1, 2024, DraftKings has repeatedly refused to commit that it will not seek to enforce these illegal contracts against Mr. Hermalyn and his new employer and co-Plaintiff, FVP, LLC ("Fanatics VIP"), including by filing a lawsuit against Plaintiffs in Massachusetts.[1]  Mr. Hermalyn is being unlawfully hampered from working at his new position in Fanatics VIP's Los Angeles office.  California's long-standing public policy favoring employee mobility, innovation, and entrepreneurship mandates that Mr. Hermalyn be allowed to fully commence his new job and represent his chosen employer.  DraftKings' attempts to thwart Mr. Hermalyn's ability to obtain speedy relief from DraftKings' illegal contracts should be restrained.

Specifically, Mr. Hermalyn requests an order (1) declaring unenforceable the restrictive covenants in contracts presented to him by DraftKings, his former employer, and (2) restraining DraftKings from any attempt to enforce those restrictive covenants because they are void under California law.  (See Bus. & Prof. Code, 16600.5, subd. (a) ["[a]ny contract that is void under this chapter is unenforceable regardless of where and when the contract was signed"], (b) [a "former employer shall not attempt to enforce a contract that is void under this chapter regardless of whether the contract was signed and the employment was maintained outside of California"], (d)

---

[1] After Mr. Hermalyn filed his complaint last week, DraftKings filed an improper removal.  On February 5, the Federal Court remanded the case to the Los Angeles Superior Court and set a briefing schedule for fees for the improper removal.  (See Conley Decl. ¶ 4.)  Plaintiffs are promptly seeking a temporary restraining order.

["[a]n employer that enters into a contract that is void under this chapter or attempts to enforce a contract that is void under this chapter commits a civil violation"].)  Under significant new laws that went into effect on January 1, 2024, the California Legislature has specifically afforded Mr. Hermalyn has a private right of action for injunctive relief to prohibit DraftKings from enforcing or attempting to enforce restrictive covenants that are illegal under California law.  (*Id.*, subd. (e)(1) [a former employee "may bring a private action to enforce this chapter for injunctive relief"].)  Mr. Hermalyn is exercising this right in this action.

Absent immediate relief, DraftKings will drag not only Mr. Hermalyn but also his new employer across the country to court, likely in Massachusetts in an effort to prevent a California resident from working for a California company in California.  Allowing such an enforcement action with respect to a contract that the California Legislature has said cannot be enforced against its residents would frustrate the state's strong public policy and violate Mr. Hermalyn's unwaivable rights, and courts have repeatedly refused to enforce choice of law and forum provisions for exactly those reasons.  (See *Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 902; *G Cos. Management, LLC v. LREP Ariz., LLC* (2023) 808 Cal.App.5th 342, 350-351.)  Because Mr. Hermalyn can show a likelihood of success on the merits and that the balance of harms weighs in his favor, a Temporary Restraining Order (and injunction) should issue.  To the extent the Court has concerns about issuing an injunction that prevents DraftKings from filing suit – it should not – the test for antisuit injunctions also is plainly satisfied here.

## II.    STATEMENT OF FACTS

### A.    Mr. Hermalyn, a California Resident, Is Employed by Fanatics VIP, a California Company

On February 1, 2024, Mr. Hermalyn accepted an offer from Fanatics VIP, which is a limited liability company formed in California, with headquarters in Los Angeles, California, to join as President of Fanatics VIP and the Head of Fanatics' Los Angeles office.  (Hermalyn Decl. ¶ 3.)  Fanatics VIP is a California-based affiliate of the global digital sports platform Fanatics Holdings, Inc. (together with its subsidiaries and affiliates, including Fanatics VIP, "Fanatics").

Mr. Hermalyn's substantial experience will facilitate the expansion of its preexisting California operations and provide additional leadership at the senior level on the West Coast.  (See *id.* ¶ 6.)

Mr. Hermalyn's position with Fanatics VIP requires that he live and work in person in Los Angeles, where Fanatics already employes approximately 80 people.  (*Id.* ¶ 5.)  Mr. Hermalyn has moved to California for this employment opportunity.  (*Id.* ¶¶ 2, 5.)  He has leased an apartment in California and he and his family are planning to move into a home when his wife and children join him in California after the conclusion of the academic school year this spring.  (*Id.* ¶ 2.)  He has taken and passed the California driver's exam, obtaining a California driver's license.  (*Ibid.*)  He has purchased a car in California, has registered to vote in California, and is in the process of obtaining a physician in California.  (*Ibid.*)  His wife and children are also joining him in California following the completion of the current academic school year.  (*Ibid.*)  He and his wife have taken affirmative steps to enroll their daughters, ages 6 and 3, in schools and camps in Los Angeles for the upcoming summer and school year.  (*Ibid.*)

Before resigning from DraftKings and accepting his new position with Fanatics VIP, Mr. Hermalyn took steps to ensure he was no longer in possession of any of his former employer's property or confidential information.  (*Id.* ¶ 11.)  He turned over DraftKings-issued devices to his counsel.  (*Ibid.*)  He worked with his counsel to ensure that DraftKings-issued documents and information were no longer on his personal accounts and devices.  (*Ibid.*)  And he even sent his personal phone to his counsel and bought a new phone, to ensure that it did not contain any DraftKings information.  (*Ibid.*)  He confirmed to DraftKings in his resignation notice steps he had taken to ensure that he was not in possession of any confidential or proprietary information.  (*Ibid.*)

**B.**     <u>**Mr. Hermalyn's Former Employer, DraftKings, Required Mr. Hermalyn to Sign Agreements that Are Illegal Under California Law**</u>

Before joining Fanatics VIP in California, Mr. Hermalyn worked for DraftKings, from September 2020 to January 2024.  (*Id.* ¶¶ 8, 10.)  His internal title was vice-president.  (*Id.* ¶ 8.)  DraftKings is a daily fantasy sports contest and sports betting company that operates throughout

the United States (including in California, where it is registered to do business as an out-of-state corporation) and in at least six other countries.

Before his move to Los Angeles, and during his employment with DraftKings, Mr. Hermalyn was a New Jersey resident who worked out of DraftKings' New York City office when he was not working remotely. (*Id.* ¶ 9.) Although he never resided in Massachusetts, was never employed in Massachusetts, and never worked out of DraftKings' Massachusetts office, DraftKings demanded that Mr. Hermalyn—as a condition of employment—execute multiple Restricted Stock Unit Grant Notice and Non-Competition Covenants, as well as a Nonsolicitation, Nondisclosure & Assignment of Inventions Agreement (collectively, the "Agreements"). (*Id.* ¶¶ 12–14 & Exs. A & B thereto.)

The Agreements purport to severely curtail Mr. Hermalyn's employee rights and mobility in several respects:

- First, the Agreements purport to prohibit Mr. Hermalyn from providing services that "relate to any aspect" of DraftKings' far-reaching business (which purports to include fantasy sports, broadcasting, gaming, marketplace, media, and any other "incidentally related products and services") to any broadly-defined "Competing Business" for "twelve (12) months" following his departure from DraftKings. (*Id.*, Ex. B § (a); see also *id.* Ex. B §§ (a)(iv), (vii), (x), (xi).)

- Second, the Agreements purport to prevent Mr. Hermalyn from soliciting any of DraftKings' "customers, clients, vendors or partners" for a year following his departure from DraftKings. (*Id.*, Ex. A (Addendum A ¶ 2).)

- Third, the Agreements purport to forbid Mr. Hermalyn from soliciting or hiring any of DraftKings' employees or contractors for a year following his departure from DraftKings. (*Id.*, Ex. A (Addendum A ¶ 3).)

- Fourth, the Agreements state that "the internal substantive laws of Massachusetts, without regard to the doctrine of conflicts of law," will apply to any dispute between Mr. Hermalyn and DraftKings arising under the Agreements. (*Id.*, Ex. A (Addendum A ¶ 9); see also *id.*, Ex. B § (f).)

- Fifth, the Agreements purport to require Mr. Hermalyn to litigate any dispute with DraftKings in Massachusetts state or federal court regardless of the inconvenience or impropriety of those venues. (*Id.*, Ex. A (Addendum A ¶ 9; see also *id.*, Ex. B § (f).)

These sweeping, overbroad restrictions have no geographic limitation at all; instead, they purport to extend to "any place within the United States or anywhere else in the world." (*Id.*, Ex. B § (a)(vii).) Nor are they narrowly tailored to protect DraftKings' trade secrets. (See *id.*, Ex. B

§ (d).)  The purpose of these provisions is unambiguous and absolute:  DraftKings hopes to prevent Mr. Hermalyn from pursuing his chosen work in any fashion for one year after his departure from DraftKings.

Mr. Hermalyn expects DraftKings to seek to enforce these restrictive covenants to prevent him from working for Fanatics.  (See *id*. ¶ 17.)[2]

### C.   Mr. Hermalyn Files Suit to Obtain Speedy Relief From These Unlawful Covenants

To protect his rights, on Thursday, February 1, 2024, Mr. Hermalyn, together with Fanatics VIP, filed this action for declaratory and injunctive relief, as well as for violation of California Business & Professions Code Sections 16600, 16600.1, and 16600.5, and 17200.  Since Plaintiffs filed the complaint and served it on DraftKings, DraftKings has rebuffed repeated requests for assurances that DraftKings will not attempt to enforce these illegal contracts.  (Conley Decl. ¶ , Ex. B.)  Instead, shortly before midnight on Thursday, DraftKings filed a notice removing the case to federal court, even though no basis for federal jurisdiction appeared on the face of the pleadings.[3]  Following removal, Plaintiffs immediately sought relief from the federal court by filing that same day (Friday, February 2) amotion to remand the case to this Court and an ex parte application to be heard as soon as possible.  This morning (Monday, February 5), the federal court remanded the case, finding removal improper, and set a briefing schedule on fees for the improper removal.

---

[2] DraftKings' contractually stated intention to enforce the Agreements is sufficient to trigger a justiciable controversy.  (See, e.g., *O'Sullivan Films v. Neaves* (W.D. Va., Oct. 24, 2017, No. 5:17-cv-00031) 2017 WL 4798997, at *3–4 [threatening breach is sufficient under Declaratory Judgment Act]; *Wellness Group, LLC. v. King Bio, Inc.* (W.D.N.C., Apr. 30, 2014, No. 1:12-cv-00281-MR-DLH) 2014 WL 1713767, at *4 ["intent to enforce" agreement is "sufficient to give rise to actual controversy for the purpose of a declaratory judgment claim"]; *Domtar AI Inc. v. J.D. Irving, Ltd.* (E.D.N.C. 2014) 43 F.Supp.3d 635, 639–640 [finding non-solicitation clause unenforceable and void despite no allegations of breach].)

[3] See *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) (removability determined by face of pleading); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (citizenship of LLC determined by its members).

1   Mr. Hermalyn now returns to this Court and seeks urgent and immediate relief.  Because

2   the federal court's remand order issued after 10 a.m. today, Plaintiffs are seeking to be heard at the

3   next available time:  Wednesday, February 7, 2024, at 8:30 a.m.  DraftKings has now had several

4   days' notice of Plaintiffs' complaint and Mr. Hermalyn's request for ex parte relief.

5   **III.**   **ARGUMENT**

6       **A.**   **Legal Standard for a TRO**

7       The Court may issue a temporary restraining order to stop the violation of a plaintiff's

8   rights pending a future hearing on an injunction.  (*Chico Feminist Women's Health Center v.*

9   *Scully* (1989) 208 Cal.App.3d 230, 236–237.)

10       "Trial courts should evaluate two interrelated factors when deciding whether or not to issue

11   a restraining order."  (*Church of Christ in Hollywood v. Super. Ct.* (2002) 99 Cal.App.4th 1244,

12   1251, cleaned up.)  The first factor is "the likelihood that the plaintiff will prevail on the merits at

13   trial."  (*Ibid.*)  The second factor is "the interim harm that the plaintiff is likely to sustain if the

14   restraining order were denied as compared to the harm that the defendant is likely to suffer if the

15   order were issued."  (*Ibid.*)  "The trial court's determination must be guided by a 'mix' of the

16   potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must

17   be shown on the other to support a restraining order."  (*Id.* at pp. 1251–1252.)

18       "The granting or denial of a temporary restraining order is discretionary with the trial

19   judge . . . and amounts to a mere preliminary or interlocutory order to keep the subject of litigation

20   *in status quo* pending the determination of the action on its merits."  (*Gray v. Bybee* (1943) 60

21   Cal.App.2d 564, 571.)  "Plaintiffs are not required to wait until they suffer actual harm, but may

22   seek injunctive relief against threatened infringement of their rights."  (*So. Christian Leadership*

23   *Cong. v. Al Malaikah Auditorium Co.* (1991) 230 Cal.App.3d 207, 223.)

24       **B.**   **Mr. Hermalyn Is Likely to Succeed on the Merits**

25           **1.**   **DraftKings' Restrictive Covenants Are Void Under California Law**

26       Under black-letter California law, "*every* contract by which anyone is retrained from

27   engaging in a lawful profession, trade, or business *of any kind* is to that extent *void*."  (Bus. &

28   Prof. Code, § 16600, subd. (a), emphasis added.)  California "void[s] the application of any

noncompete agreement in an employment context, or any noncompete in an employment contract, no matter how narrowly tailored," *id.* § 16600, subd. (b)(1), as the state has a "strong public policy of protecting the right of its citizens to pursue any lawful employment and enterprise of their choice." (*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.* (2018) 28 Cal.App.5th 923, 935.) California courts prohibit exactly the kind of non-compete, client non-solicit, and employee non-solicit agreements that DraftKings executed with Mr. Hermalyn. (See, e.g., *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 955 (*Edwards*) [voiding non-competition agreement]; *AMN Healthcare*, *supra*, 28 Cal.App.5th at p. 936 [voiding employee non-solicitation agreement]; *Dowell v. Biosense Webster, Inc.* (2009) 179 Cal.App.4th 564, 575 [voiding customer non-solicitation agreement].).)[4]

California courts also decline to enforce foreign state choice-of-law and forum selection clauses in restrictive covenant cases where those provisions would deprive California residents of their substantive rights under California law. (See *Intershop Communications v. Super. Ct.* (2002) 104 Cal.App.4th 191, 200 ["[A] forum selection clause will not be enforced if to do so would bring about a result contrary to the public policy of this state."]; *G Cos. Management, LLC v. LREP Ariz., LLC* (2023) 88 Cal.App.5th 342, 350–351 [refusing to enforce forum selection clause where unwaivable rights of California resident and employee might be diminished]; *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 154 [same].; see also *Roadrunner Intermodal Servs., LLC v. T.G.S. Transportation, Inc.* (E.D. Cal., Mar. 28, 2019, No. 1:17-cv-01207-DAD-BAM) 2019 WL 1400093, at *6 [noting "long developing trend among California courts of finding that § 16600 represents a fundamental public policy interest in California that overrides contractual choice of law provisions, at least with respect to such restrictive covenants"].) And California courts declare post-employment restrictive covenant provisions illegal and unenforceable under California law, even where the employees at issue did not reside in California

---

[4]The right to employee mobility recognized in California is so strong that it cannot be waived by a party via private agreement. (See Civ. Code, § 3513 [any "law established for a public reason cannot be contravened by a private agreement"]; *Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 659 [parties cannot waive benefits of Section 16600 by private agreement].)

(but were employed by a California company), and the agreements at issue called for application of another state's law (rather than California law).  (See *Application Group, Inc. v. Hunter Group., Inc.* (1998) 61 Cal.App.4th 881, 906.)

There can be no doubt that California's foundational principles—enshrined in statutes and confirmed in decades of caselaw—stand starkly opposed to the restrictive covenants in DraftKings' agreements with Mr. Hermalyn.  Nor can there be any legitimate dispute that enforcing those provisions against a California resident and employee like Mr. Hermalyn would frustrate California's strong public policy.  (*Application Group*, *supra*, 61 Cal.App.4th at p. 900 [holding section 16600 "reflects 'strong public policy' of the State of California"], citations omitted; see also *Latona v. Aetna U.S. Healthcare Inc.* (C.D. Cal. 1999) 82 F.Supp.2d 1089, 1093 ["[P]rotection against restraint of employment qualifies as a strong public policy in California."].) "California courts have consistently declared this provision an expression of public policy to ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice."  (*Application Group*, *supra*, 61 Cal.App.4th at p. 900.)

It does not matter to this analysis that Mr. Hermalyn only recently became a California resident.  The statutory language and legislative history are clear that California's public policy protects not only long-term residents of the state but also those, like Mr. Hermalyn, who move to pursue employment opportunities in California.  (*Application Group*, *supra*, 61 Cal.App.4th at pp. 900-901 ["It follows that California has a strong interest in protecting the freedom of movement of persons whom California-based employers … wish to employ to provide services in California, regardless of the person's state of residence or precise degree of involvement in California projects, and we see no reason why these employees' interests should not be 'deemed paramount to the competitive business interests' of out-of-state as well as in-state employers."].)

As DraftKings counsel confirmed in a recent client alert, even employees from outside California may sue in California to obtain relief from restrictive covenants, including those signed

outside California.[5]  The California Legislature has expressly declared its "interest in protecting the freedom of movement of persons whom California-based employers wish to employ" and accordingly has extended its protections to all employees seeking employment in California, including those who "signed the contractual restraint *while living outside of California and working for a non-California employer*."  (Sen. Bill No. 699 (2023–2024 Reg. Sess.) § 1(e), (f); Bus. & Prof. Code, § 16600.5, subd. (a), emphasis added.)  Because "the exploitative practice of including noncompete agreements deprives workers of fair compensation, stifles innovation, and deters entrepreneurism," California law "ensures that *no employee* is faced with signing away their rights as a condition of employment."  (Request for Judicial Notice ("RJN") at Ex. B.)  The recent amendments "put[] an end to the use of non-compete agreements in California once and for all, giving employees the protection they deserve."  (RJN at Ex. D.)

**2.  An Injunction Is Necessary to Stop DraftKings' Illegal Efforts to Enforce the Restrictive Covenants and Foreign Law/Forum Provisions**

DraftKings has refused to commit that it will not seek to enforce the unlawful restraints, even though any attempt to do so is a civil violation under California law.  (Bus. & Prof. Code, § 16600.5, subd.(d).)  To the extent the Court has any qualms about the fact that the requested relief would preclude DraftKings from filing suit, that relief also is appropriate:  "California courts unquestionably have the power under certain circumstances to issue antisuit injunctions to restrain litigants from pursuing lawsuits in other states or foreign nations."  (*TSMC N. Am. v. Semiconductor Manufacturing Internat. Corp.* (2008) 161 Cal.App.4th 581, 589; see also *Adv. Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 704–705 (*Adv. Bionics Corp.*) [same].)

California courts recognize the need to enjoin foreign litigation where "exceptional circumstances" indicate that such action is "necessary to protect the jurisdiction of the enjoining court, or to prevent the litigant's evasion of the important public policies of the forum."  (*Adv. Bionics Corp., supra*, 29 Cal.4th at p. 708; *id.* at pp. 711, 714 [Conc. Opn. of Moreno, J.]; see also

---

[5] Katherine Smith, et al., Gibson, Dunn, & Crutcher, "California Broadens Restrictions on Employee Non-Competes," September 20, 2023, available at https://www.gibsondunn.com/california-broadens-restrictions-on-employee-non-competes/.

1  *Biosense Webster, Inc. v. Super. Ct.* (2006) 135 Cal.App.4th 827, 839 [adopting "exceptional

2  circumstance test"].)  Such antisuit injunctions "may be proper" where foreign litigation would

3  (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive;

4  (3) threaten the issuing court's jurisdiction; or (4) where the proceedings prejudice other equitable

5  considerations.  (*E. & J. Gallo Winery v. Andina Licores S.A.* (9th Cir. 2006) 446 F.3d 984, 990

6  (*E. & J. Gallo*) [injunction proper "if any of the four elements is present"].)

7        Exceptional circumstances are present here.  Indeed, courts have granted exactly this type

8  of relief to enjoin an employer from enforcing unlawful restrictive covenants in a foreign court

9  and thereby preventing a California employee from pursuing her chosen profession.  (See *Eller v.*

10 *Automatic Data Processing, Inc.* (S.D. Cal. June 5, 2023) 2023 WL 3829723, at  pp. *4-9.)

11 Allowing DraftKings to sue Mr. Hermalyn, a California resident, to enforce the restrictive

12 covenants would cause the very problems the requested injunction and California's statutory

13 framework is specifically designed to prevent:

14         (a)    *Failure to Enjoin DraftKings' Unlawful Covenants Would Frustrate*
               *Fundamental California Policy*
15

16        Allowing DraftKings to sue to enforce unlawful covenants would frustrate California

17 policy.  While the California Supreme Court concluded back in 2002 that California's policy

18 against noncompetition agreements under Section 16600 was not—standing alone—an

19 "exceptional circumstance" sufficient to justify the issuance of an antisuit injunction or bar

20 parallel litigation in a foreign proceeding, see *Adv. Bionics Corp.*, *supra*, 29 Cal.4th at pp. 706–

21 707, intervening developments have changed that calculus.  The Legislature's recent amendments

22 have greatly expanded California courts' wide-ranging authority to enforce the state's laws and

23 promote its strong public policy in favor of employee mobility.

24        At the time *Advanced Bionics* was issued 22 years ago, the California Supreme Court had

25 yet to decide that noncompetition agreements in the employment context are *per se* invalid.  Nor

26 had it determined that no "narrow restraint" exception exists to the general rule voiding them.

27 (See *Edwards*, *supra*, 44 Cal.4th at pp. 948–950.)  Nor had scores of California courts invalidated

28 employee or customer non-solicitation provisions.  Nor had the Legislature explicitly incorporated

these "broad" rules (as well as the *Edwards* decision itself) into California Business & Professions Code Section 16600, as it has now.  (See Bus. & Prof. Code, § 16600, subd. (b)(1).)  And the California Legislature had not yet enacted California Business & Professions Code Sections 16600.5 and 16600.1.  These two new laws, passed last year and effective January 1, 2024, materially extend California's prohibition on post-employment restrictive covenants.

These recent amendments explicitly recognize the "exceptional circumstances" involved when the right freely to pursue employment in California is at stake.  As the Legislature emphasized during their passage, "as the market for talent has become national and remote work has grown, California employers increasingly face the challenge of employers outside California attempting to prevent the hiring of former employees."  (Sen Bill No. 699 (2023–2024 Reg. Sess.) § 1(d).)  Because such anticompetitive conduct threatens to "stifle economic development" in California, limits its "firms' ability to hire," and "depress[es] innovation and growth," California's Legislature and courts "have been clear that California's public policy against restraint of trade law ***trumps other state laws*** when an employee seeks employment in California, ***even if the employee has signed the contractual restraint while living outside of California and working for a non-California employer***"—as happened here when Mr. Hermalyn was working for DraftKings in New Jersey and New York.  (*Id.* §§ 1(c), (e), emphasis added.)  According to the Legislature, the state's "interest in protecting the freedom of movement of persons whom California-based employers wish to employ to provide services in California, regardless of the person's state of residence," is so "strong" as to be "paramount to competitive business interests."  (*Id.* § 1(f).)

But Sections 16600.5 and 16600.1 do more than simply expand the already significant scope of California's employee mobility laws or reinforce the extraordinary circumstances implicated by their underlying policies.  These amendments also allow a "former employee" to "bring a private action to enforce this chapter ***for injunctive relief*** or the recovery of actual damages, or both," as Mr. Hermalyn has done through this litigation.  (Bus. & Prof. Code, § 16600.5, subd. (e)(1), emphasis added.)  The Legislature's creation of a statutory injunctive relief remedy necessarily includes antisuit injunctions, as it would defeat the purpose of new amendments if they did not prevent California residents like Mr. Hermalyn from being hauled against their will to distant

foreign jurisdictions (like Massachusetts, where Mr. Hermalyn has **never** lived or worked) to defend their fundamental free enterprise rights.  (See *E. & J. Gallo*, *supra*, 446 F.3d at p. 992 [recognizing that "foreign litigation may be enjoined when it would . . . frustrate a policy of the forum issuing the injunction"].)  Indeed, Section 16600.5's legislative history makes plain that it is meant to "prohibit any employer from attempting to enforce a void contract, ***including seeking enforcement in a non-California court***."  (See RJN at Ex. A at AP1-2, emphasis added.)  In short, the law has changed; antisuit injunctions are now proper in precisely this situation.

> *(b)     Failure to Enjoin DraftKings' Unlawful Covenants Would Lead to Vexatious and Oppressive Litigation*

Allowing DraftKings to initiate litigation would be "vexatious [and] oppressive":  Given the Legislature's stated concern over the "chilling effect" of "noncompete litigation," Sen. Bill No. 699 (2023–2024 Reg. Sess.) § 1(a), it would defeat the purpose of the Legislature's new amendments if courts did not protect California residents from being haled against their will to foreign jurisdictions to defend their right to work freely in California.

> *(c)     Failure to Enjoin DraftKings' Unlawful Covenants Would Threaten This Court's Jurisdiction*

An injunction is necessary to protect the Court's jurisdiction.  The California Legislature, in the recent amendments, evinced a clear intent for California courts to void unlawful restrictive covenants.  If DraftKings were allowed to obtain an order to the contrary, that would thwart the Court's jurisdiction.  (See *Adv. Bionics, supra*, 29 Cal.4th at p. 715 (conc. opn. of Moreno, J.) ["an injunction may . . . also be necessary to protect the enjoining court's jurisdiction" where "a foreign court in an in personam action was attempting to carve out exclusive jurisdiction over the matter"]; *China Trade & Development Corp. v. M.V. Choong Yong* (2d Cir. 1987) 837 F.2d 33, 36–37; see also *Laker Airways Ltd. v. Sabena Belgian World Airlines* (D.C. Cir. 1984) 731 F.2d 909, 927 (*Laker Airways*) ["Courts have a duty to protect their legitimately conferred jurisdiction to the extent necessary to provide full justice to litigants."]; *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren* (1st Cir. 2004) 361 F.3d 11, 20 ["the need for an antisuit injunction crests" where "a frontal assault on the . . . court's jurisdiction" or a threat to "its ability to do

1    justice between the parties in cases that are legitimately before it" is present].)

2                  *(d)    Enjoining DraftKings' Unlawful Covenants Would Not Create
                          Unwarranted Comity Concerns*

3

4           The impact of Mr. Hermalyn's requested antisuit injunction on comity is appropriate.  No

5    jurisdiction "is under an unremitting obligation to enforce foreign interests which are

6    fundamentally prejudicial to those of the domestic forum," *Laker Airways, supra*, 731 F.2d at

7    p. 937, as would be the case here if Massachusetts were not to recognize California's strong policy

8    in favor of employee mobility and vigorous competition.  Indeed, "the obligation of comity

9    expires when the strong public policies of the forum are vitiated by the foreign act."  (*Ibid.*)

10   Comity is "less likely to be threatened" by a private commercial dispute, such as is present in this

11   case, as opposed to a dispute "implicating public international law or government litigants."  (See

12   *Microsoft Corp. v. Motorola, Inc.* (9th Cir. 2012) 696 F.3d 872, 887.)  And the fact that

13   Mr. Hermalyn's action before this Court was the first one filed, "although not dispositive, may be

14   relevant" to the comity determination.  (*Ibid.*)  That factor is relevant here as it promotes

15   California's public policy for efficient adjudication of cases.

16          In fact, given the reasonable impact on comity and the fact that it is supported by pertinent

17   equitable considerations, the other relevant factors typically considered by courts—including the

18   need to preserve this Court's rightful jurisdiction over Mr. Hermalyn's California law claims,

19   promote California's policy in favor of legal efficiency, and minimize inequitable hardship—all

20   counsel strongly in favor of Mr. Hermalyn's requested antisuit injunction.

21          **C.    Mr. Hermalyn Will Suffer Harm if DraftKings Is Allowed to Seek to Enforce
                the Restrictive Covenants Before the Court Considers a Preliminary
22              Injunction**

23          In situations like this one in which the moving party can show strong chance of success on

24   the merits, injunctive relief can be granted regardless of whether the balance of hardships tips in

25   his favor.  (See *Common Cause v. Bd. of Supervisors* (1989) 49 Cal.3d 432, 447; *Right Site*

26   *Coalition v. L.A. Unified School Dist.* (2008) 160 Cal.App.4th 336, 339.)  Here, it is essentially

27   beyond dispute that the restrictive covenants in the Agreements are invalid under California law,

28   and as discussed above, the California Legislature has recently recognized that threats to enforce

them constitute extraordinary circumstances that warrant the injunctive relief Mr. Hermalyn seeks. The high likelihood that Mr. Hermalyn will succeed on the merits alone is therefore sufficient to justify the temporary restraining order.

Even if Mr. Hermalyn did not have such a strong case, however, the balance of harms would still clearly favor the requested relief.  There is no harm whatever for DraftKings waiting a few weeks until the Court can consider a preliminary injunction.  DraftKings cannot demonstrate that the hiring of Mr. Hermalyn poses any risk of impermissible trade secret theft (it does not). With no threat of trade secret violations, DraftKings cannot justify enforcement of its unlawful restrictive covenants, and the balancing of harms clearly favors the requested relief.  Mr. Hermalyn, on the other hand, would be greatly prejudiced if DraftKings were allowed to take action to enforce the restrictive covenants in Massachusetts.  Being forced to defend against an action, in a forum that is unfamiliar with California law, would harm Mr. Hermalyn's ability to do exactly what the California Legislature has suggested it wants to encourage, which is move freely and take on new roles.  (See *Eller*, *supra*, 2023 WL 3829723, at  p. *8 [collecting cases in which courts "have found irreparable harm" facing an employee "when an employee seeks to enjoin a former employer from enforcing restrictive covenants"].)

> ### D.      <u>The Court Should Exercise Its Discretion to Waive the Bond</u>

In general, the party seeking an injunction must post a bond sufficient to pay to the party enjoined "such damages . . . as the party may sustain by reason of the injunction."  (Code Civ. Proc., § 529, subd. (a).)  DraftKings will not be monetarily harmed by this injunction, and so no bond is needed.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Mr. Hermalyn respectfully asks that Court issue the requested temporary restraining order as well as an order to show cause as to why a preliminary injunction should not issue.

DATED:  February 5, 2024          MUNGER, TOLLES & OLSON LLP


By: _____
          BRAD D. BRIAN
    Attorneys for Plaintiff
    MICHAEL Z. HERMALYN