UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DRAFTKINGS, INC., *Plaintiff*, v. MICHAEL Z. HERMALYN, *Defendant.* | Civil Action No. 1:24-cv-10299-JEK **Oral Argument Requested** |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR EXPEDITED DISCOVERY**

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ...................................................................................................................1

LEGAL STANDARD............................................................................................................2

ARGUMENT.........................................................................................................................3

    A.    DraftKings Cannot Establish a Need for Expedited Discovery................................3

    B.    DraftKings Cannot Show a Likelihood of Success on the Merits or That the Threat of Irreparable Harm Necessitates Expedited Discovery.........................7

    C.    DraftKings Cannot Demonstrate That Its Requested Discovery Is Reasonable and Narrowly Tailored to the Issues in Its Expected Motion for a Preliminary Injunction...................................................................................7

        1.    DraftKings' Requests for Documents, Information, and a Deposition Are Overbroad............................................................................8

        2.    DraftKings' Request for Inspection and Forensic Imaging Is Invasive and Unreasonable. .....................................................................10

CONCLUSION....................................................................................................................12

# **TABLE OF AUTHORITIES**

Page(s)

### **Cases**

*Allstate Ins. Co. v. Zeefe*,
  Civ. A. No. 5:15-159-KKC, 2015 WL 4661530 (E.D. Ky. July 13, 2015) ..............................7

*Am. Equip Sys., LLC. v. Chester*,
  No. 2:23-cv-00680-DBB-DBP, 2023 WL 8261427 (D. Utah Nov. 29, 2023) .........................7

*Am. LegalNet, Inc. v. Davis*,
  673 F. Supp. 2d 1063 (C.D. Cal. 2009) .......................................................................3, 9, 10

*Boggs Contracting, Inc. v. Freismuth,*
  No. 6:21-cv-2088-CEM-EJK, 2021 WL 6755466 (M.D. Fla. Dec. 27, 2021) .........................6

*Brown v. TSG Mgmt. Co.,*
  57 Cal. App. 5th 303 (2020) ......................................................................................................4

*Castillo v. Whitmer*,
  No. 1:20-cv-751, 2020 WL 11036303 (W.D. Mich. Aug. 21, 2020) ...................................7, 9

*Dimension Data N. Am., Inc. v. NetStar-1, Inc.*,
  226 F.R.D. 528 (E.D.N.C. 2005) .........................................................................................4, 10

*Guttenberg v. Emery*,
  26 F. Supp. 3d 88 (D.D.C. 2014) ...............................................................................................8

*Hardy v. UPS Ground Freight, Inc.*,
  Civ. A. No. 3:17-cv-30162-MGM, 2019 WL 3290346 (D. Mass. July 22,
  2019) ........................................................................................................................................10

*Herley Indus., Inc. v. R Cubed Eng'g, LLC*,
  No. 5:20-cv-02888, 2020 WL 6504588 (E.D. Pa. Nov. 5, 2020) ............................................7

*John B. v. Goetz*,
  531 F.3d 448 (6th Cir. 2008) ...................................................................................................11

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ...................................................................................................................3

*Laughlin v. Orthofix Int'l, N.V.*,
  293 F.R.D. 40 (D. Mass. 2013) ..................................................................................................3

*Mercado Salinas v. Bart Enters. Int'l, Ltd.*,
  Civ. A. No. 07-1113, 2007 WL 9702172 (D.PR. Apr. 4, 2007) ...........................................3, 4

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*,
  194 F.R.D. 618 (N.D. Ill. 2000) .................................................................................... 2

*Momenta Pharm., Inc. v. Teva Pharm. Indus. Ltd.*,
  765 F. Supp. 2d 87 (D. Mass. 2011) ............................................................................ 4

*NobelBiz, Inc. v. Wesson*,
  No. 14cv0832 W(JLB), 2014 WL 1588715 (S.D. Cal. Apr. 18, 2014) ........................ 6

*Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*,
  213 F.R.D. 418 (D. Colo. 2003) ................................................................................ 10

*Scotts Co. LLC v. Liberty Mut. Ins. Co.*,
  Civ. A. No. 2:06-CV-899, 2007 WL 1723509 (S.D. Ohio June 12, 2007) .............. 10

*Spark Orthodontics v. ORMCO Corp.*,
  Civ. A. No. 21-2841, 2021 WL 7908194 (E.D. Pa. Oct. 25, 2021) ............................ 8

*Squeo v. Norwalk Hosp. Ass'n*,
  No. CV095012548, 2010 WL 5573755 (Conn. Super. Ct. Dec. 14, 2010) .............. 11

*St. Louis Grp., Inc. v. Metals & Additives Corp.*,
  275 F.R.D. 236 (S.D. Tex. 2011) ................................................................................ 2

*WeRide Corp. v. Kun Huang*,
  379 F. Supp. 3d 834 (N.D. Cal. Apr. 1, 2019) ............................................................ 6

*Wheeler v. HXI, LLC*,
  Civ. No. 10-cv-145-JD, 2010 WL 3023518 (D.N.H. July 28, 2010) ........................ 12

*Wilcox Indus. Corp. v. Hansen*,
  279 F.R.D. 64 (D.N.H. 2012) ...................................................................................... 9

*Williams v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 144 (D. Mass. 2005) ............................................................................... 11

## Other Authorities

Cal. Bus. & Prof. Code § 16600 ............................................................................................ 4

Cal. Bus. & Prof. Code § 16600.1 ......................................................................................... 4

Cal. Bus. & Prof. Code § 16600.5 ......................................................................................... 4

Fed. R. Civ. P. 16(b) .............................................................................................................. 8

Fed. R. Civ. P. 26(d) .............................................................................................................. 3

Fed. R. Civ. P. 26(f) .............................................................................................................. 3

iii

**INTRODUCTION**

Plaintiff DraftKings, Inc. ("DraftKings"), has ginned up this action to punish a well-regarded former employee for seeking a new professional opportunity with a perceived competitor—FVP, LLC ("Fanatics VIP"), a California-based affiliate of Fanatics Holdings, Inc. (together, with its subsidiaries and affiliates, including Fanatics VIP, "Fanatics"). Stitching together a Complaint out of rampant speculation, factual misinterpretation, retaliatory allegations designed to vilify Defendant Michael Z. Hermalyn ("Hermalyn"), and exaggerated claims of harm, DraftKings has taken a page out of the playbook often used by spurned employers: it has cast a simple California employee mobility case as a complicated "trade secret" misappropriation matter so that it may disrupt Mr. Hermalyn's new employment, competitively undermine Fanatics, and send a clear and threatening message to any of its other employees who may be considering departing for greener pastures. Along with a factually unsupportable and legally meritless Motion for a Temporary Restraining Order ("TRO"), DraftKings has filed a motion demanding immediate and far-reaching "expedited discovery" (the "Motion"). DraftKings' requested discovery is entirely unwarranted given the relevant facts, controlling law, and status of the cross-jurisdictional litigation involving these same parties. Simply put, DraftKings' Motion is an anti-competitive fishing expedition intended to further harass Mr. Hermalyn and his new employer.

Expedited discovery is both unusual and disfavored. DraftKings must show both a need and good cause for it. It cannot do so. It has not yet filed a motion for a preliminary injunction, which renders its request premature. Both DraftKings' Motion and the specific discovery it seeks also make plain that its entire case is a speculative theory engaged in a vain search for actual supporting facts. That the parties are involved in an overlapping legal proceeding in California, which forbids actions to enforce restrictive covenants against California residents, also counsels against early discovery, as much of the material sought may end up being irrelevant. Further, as

established in Mr. Hermalyn's concurrently filed opposition to DraftKings' motion for a TRO, DraftKings cannot show either a likelihood of success on the merits or irreparable harm—two critical elements needed to support its discovery requests.  Moreover, there is also a substantial likelihood that this action will be dismissed on *forum non conveniens* grounds—further justifying denial of the Motion, as discussed in Mr. Hermalyn's TRO opposition.

Despite all the inflammatory rhetoric and baseless accusations, this is a non-compete case. Even if the restrictive covenants at issue are deemed valid under applicable law (they are not), DraftKings already has the information it needs with respect to Mr. Hermalyn's role at Fanatics VIP.  There is no basis for DraftKings' allegations that Mr. Hermalyn has misappropriated its confidential information: Mr. Hermalyn went to great lengths to comply with his Confidentiality Agreement with DraftKings, and engaged in meticulous and proactive measures to ensure that he was no longer in possession of any DraftKings property or confidential material following his resignation.  Finally, DraftKings document requests and interrogatories are blatantly overbroad; they seek "any" and "all documents" that bear any relation to the claims and defenses at issue over a period of more than three-and-a-half years, and DraftKings further demands that Mr. Hermalyn soon sit for a full deposition on any topic.  And, in the face of hostile precedent, DraftKings seeks invasive imaging of Mr. Hermalyn's devices without any justification.

None of this is appropriate.  There is no emergency, and there is no basis to circumvent the normal Federal Rules governing the production of information between party litigants.  Under well-settled law, DraftKings' Motion should be denied.

## LEGAL STANDARD

"[E]xpedited discovery is not the norm." *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 241 (S.D. Tex. 2011) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000)).  A party "may not seek discovery from any

source" before a Rule 26(f) conference unless authorized under the rules, a court order, or by agreement of the parties, Fed. R. Civ. P. 26(d), and a court has broad discretion to stay discovery pending resolution of any motion to dismiss. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Where a party takes the unusual step of seeking expedited discovery in advance of the Rule 26(f) conference, it bears the burden of showing both a need for early discovery and "good cause." *Laughlin v. Orthofix Int'l, N.V.*, 293 F.R.D. 40, 41 (D. Mass. 2013).

Courts analyzing motions for expedited discovery under Rule 26(d)(1) in this Circuit have applied two standards in determining whether good cause exists: a four-part test similar to the preliminary injunction standard, and the "reasonableness" standard. *Id.*

> Under the preliminary injunction test, the court analyzes whether the party seeking discovery has shown: (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the requested discovery and the avoidance of irreparable harm; and (4) some evidence that the injury that will result without expedited discovery is greater than the injury the party would suffer if expedited discovery were available. Under the "reasonableness" test, the factors courts consider include: the purpose for the discovery; the need for the discovery to prevent irreparable harm; the plaintiff's likelihood of success on the merits; the burden of discovery on the defendant; and the degree of prematurity.

*Id.* at 41-42 (internal citations omitted). While there are differences between the preliminary injunction standard and the less-stringent reasonableness standard, both require a showing of likelihood of success on the merits and irreparable harm.

## ARGUMENT

### A. DraftKings Cannot Establish a Need for Expedited Discovery.

DraftKings' Motion is largely predicated upon its assumption that it necessarily meets the showing required for expedited discovery because it plans to move for a preliminary injunction. (*See* Mem. ISO Mot. for Expedited Disc. ("Mem.") at 2-4.) Not so. "[E]xpedited discovery is not automatically granted because a party seeks a preliminary injunction." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, (C.D. Cal. 2009); *see also Mercado Salinas v. Bart Enters. Int'l,*

3

*Ltd.*, Civ. A. No. 07-1113, 2007 WL 9702172, at *3 (D.PR. Apr. 4, 2007) (explaining that a scheduled preliminary injunction hearing is relevant for purposes of evaluating an expedited discovery request but does not, by itself, automatically entitle a party to conduct expedited discovery). Indeed, DraftKings has not even sought a motion for a preliminary injunction. Its premature discovery request, filed before there is a "pending preliminary injunction motion," "weigh[s] against allowing plaintiff's motion for expedited discovery." *Momenta Pharm., Inc. v. Teva Pharm. Indus. Ltd.*, 765 F. Supp. 2d 87, 89 (D. Mass. 2011) (concluding that plaintiff "has failed to demonstrate an urgent and compelling need for the requested discovery" and there was "no reason to deviate from the normal course of discovery"); *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531-32 (E.D.N.C. 2005) (same). Moreover, two critical factors undermine the purported "need" for DraftKings' demanded expedited discovery.

*First*, there already exists an earlier-filed action pending in California that will resolve most—if not all—of the issues at stake in this litigation. That action will determine, *inter alia*, whether Mr. Hermalyn, a California resident, is entitled to an order voiding the post-employment restrictive covenants imposed by DraftKings on Mr. Hermalyn (which include a global, 12-month noncompete, client non-solicitation and no-service, and employee non-solicitation and no-hire prohibitions). It makes sense for the California court to determine these issues given its strong public policy in favor of employee mobility, which is an "unwaivable statutory right" under California law, *see Brown v. TSG Mgmt. Co., LLC*, 57 Cal. App. 5th 303, 313-16 (2020) (citing Cal. Bus. & Prof. Code § 16600), and because this matter raises critical issues of first impression under two newly enacted California statutes, California Business & Professions Code sections 16600.1 and 16600.5, each of which came into effect on January 1, 2024. The results of Mr. Hermalyn's motion for a TRO in the California action, which will likely be resolved within a

4

matter of days, will further determine whether DraftKings is enjoined from enforcing void restrictive covenants against Mr. Hermalyn. The California action thus will affect whether the onerous and far-reaching discovery that DraftKings immediately seeks in these areas is even relevant. (*See, e.g.*, Mot. for Expedited Disc., Ex. A (ROG Nos. 3, 4, 6, 7, 9-10) & Ex. B (RFP Nos. 4-6, 8, 9).)

*Second*, there is no need for discovery here because DraftKings already has the information it is seeking. DraftKings' Massachusetts action is fundamentally a non-compete case. Mr. Hermalyn and Fanatics VIP have already confirmed his role at Fanatics VIP, his start date, and his responsibilities at Fanatics VIP. There is no reasonable dispute concerning these subjects. DraftKings' allegations of solicitation are nothing more than speculation. Its anticipated preliminary injunction motion will rise and fall on the *legal* questions regarding the proper forum and the applicable law. Mr. Hermalyn's position (as well as that of Fanatics VIP) is that these issues should be heard in California and, at a minimum, decided under California law. If—contrary to Mr. Hermalyn's understanding—California law does not void the restrictive covenants at issue, DraftKings may be able to obtain discovery into alleged violations, but that concern is neither present nor significant during the current the TRO/preliminary injunction phase.

Despite DraftKings' best efforts, this is not a trade secrets case. Prior to resigning from DraftKings, Mr. Hermalyn was responsible and scrupulous. He took good-faith steps to ensure that he was no longer in possession of any DraftKings property or confidential material. (Hermalyn Decl. ¶¶ 44-47.) Mr. Hermalyn provided his DraftKings-issued devices to his lawyers, including both an old laptop and his most current laptop, as well as his corporate credit card and portable WiFi, and those materials have since been delivered via messenger to DraftKings' counsel in a manner consistent with the instructions of DraftKings' counsel. (*Id.* ¶¶ 45, 47.) He even sent

5

his personal phone to his counsel, bought a new phone to ensure it did not contain any DraftKings information, and disabled iCloud on it—thereby separating himself from his business and personal contacts on that device in the process. (*Id.* ¶ 45.) Mr. Hermalyn also confirmed this handover to DraftKings in his resignation notice. (*Id.* ¶ 46.) DraftKings has not alleged a single instance of purported misappropriation of alleged "trade secrets" following Mr. Hermalyn's resignation (*see* Compl. ¶¶ 59-73), nor has it been able to identify any single instance of specific misuse of purported "trade secrets" by Mr. Hermalyn since that time (*see id.* ¶¶ 84-87). Indeed, Mr. Hermalyn has repeatedly pledged since his departure that he will continue to adhere to his Confidentiality Agreement with DraftKings and not use or share its trade secrets or confidential information. DraftKings does not need discovery in these areas because Mr. Hermalyn is willing to sign an affidavit stating that he does not possess any of its information, documents, or property and has not shared them with or used them at Fanatics VIP.

Mr. Hermalyn's diligence and transparency renders this case far different than the misappropriation-related cases that DraftKings cites in its Motion to justify expedited discovery. (*See* Mem. at 3-5.) In *NobelBiz, Inc. v. Wesson*, No. 14cv0832 W(JLB), 2014 WL 1588715, at *2 (S.D. Cal. Apr. 18, 2014)—unlike here—the "Defendant accessed, *subsequent* to his resignation, a laptop computer and a number of confidential reports and files belonging to [the plaintiff]." *Id.* at *2 (emphasis added). In *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834 (N.D. Cal. Apr. 1, 2019)—unlike here—the defendant "never actually denie[d] taking or using [plaintiff's] identified trade secrets," and evidence showed that he "delet[ed] files from the computers allegedly used to misappropriate trade secrets." *Id.* at 848. Similar facts were also present in *Boggs Contracting, Inc. v. Freismuth*. *See* No. 6:21-cv-2088-CEM-EJK, 2021 WL 6755466, at *6 (M.D. Fla. Dec. 27, 2021) (ordering discovery due to defendant's "behavior in deleting data from the laptop and

6

retaining confidential information"). Continued misuse also occurred—unlike here—in *Am. Equip Sys., LLC. v. Chester*, No. 2:23-cv-00680-DBB-DBP, 2023 WL 8261427, at *1 (D. Utah Nov. 29, 2023), as well as in *Allstate Ins. Co. v. Zeefe*, Civ. A. No. 5:15-159-KKC, 2015 WL 4661530, at *2 (E.D. Ky. July 13, 2015), in which there was also a "history of non-cooperation and obstructionism" by the defendants. *Id.* Accordingly, without the strong urgency and demonstrated continual misuse that supported expedited discovery in the cases it cites, DraftKings cannot show the good cause required to justify its requested early discovery.

  **B.** **DraftKings Cannot Show a Likelihood of Success on the Merits or That the Threat of Irreparable Harm Necessitates Expedited Discovery.**

For the reasons set forth in Mr. Hermalyn's contemporaneously filed memorandum in opposition to DraftKings' motion for a TRO, DraftKings cannot show a likelihood of success on the merits on any of its claims. (*See* Def.'s TRO Opp'n at 7-18.) Nor can it make the required showing that a threat of irreparable harm exists sufficient to warrant expedited injunctive relief. (*See id.* at 18-19.) Rather than repeat those arguments in this filing, Mr. Hermalyn incorporates them by reference herein.

  **C.** **DraftKings Cannot Demonstrate That Its Requested Discovery Is Reasonable and Narrowly Tailored to the Issues in Its Expected Motion for a Preliminary Injunction.**

DraftKings' Motion also independently fails because the far-reaching discovery it seeks is not narrowly tailored to obtain information relevant to a preliminary injunction determination. Expedited discovery requests must be "narrowly tailored to address the issues raised in the preliminary injunction." *Castillo v. Whitmer*, No. 1:20-cv-751, 2020 WL 11036303, at *1 (W.D. Mich. Aug. 21, 2020). Such demands are improper as a matter of law where the plaintiff's "request . . . reaches most of the merits of [a] case." *Herley Indus., Inc. v. R Cubed Eng'g, LLC*, No. 5:20-cv-02888, 2020 WL 6504588, at *9 (E.D. Pa. Nov. 5, 2020) (denying plaintiff's motion

for expedited discovery because, although it "claims its request is narrow, it reaches most of the merits of this case"); *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014) (rejecting expedited discovery as unreasonable where it was focused on "the central issue in this case: proving a breach").

1. DraftKings' Requests for Documents, Information, and a Deposition Are Overbroad

"Instead of narrowly tailoring" its requests, as required, DraftKings improperly seeks "documents and interrogatory responses on nearly every matter relating to [the] case." *See Spark Orthodontics v. ORMCO Corp.*, Civ. A. No. 21-2841, 2021 WL 7908194, at *2 (E.D. Pa. Oct. 25, 2021) (denying motion for expedited discovery where plaintiff failed to limit scope of discovery to preliminary injunction issues in unfair competition action).

DraftKings' sprawling requests stretch across at least six general categories, including: (1) all communications between Mr. Hermalyn and DraftKings' employees, current or former (whether inbound or outbound, and regardless of subject matter) (Mot. for Expedited Disc., Ex. A (ROG Nos. 4, 9-10) & Ex. B (RFP Nos. 6-7)); (2) all communications between Mr. Hermalyn and DraftKings' VIP clients (whether inbound or outbound, and regardless of subject matter) (*id.*, Ex. A (ROG Nos. 6-7) & Ex. B (RFP Nos. 3, 8-9)); (3) all communications between Mr. Hermalyn and Fanatics (whether inbound or outbound, and regardless of subject matter) (*id.*, Ex. B (RFP Nos. 4)); (4) all communications between Mr. Hermalyn and Fanatics VIP's clients (whether inbound or outbound, and regardless of subject matter) (*id.*, Ex. A (ROG Nos. 6-7)); (5) all documents pertaining to Mr. Hermalyn's new residency in California (*id.*, Ex. B (RFP No. 5)); and (6) all documents Mr. Hermalyn ever "received" or "generated" during his three-and-a-half year "employment at DraftKings" (*id.*, Ex. B (RFP Nos. 1-2)). DraftKings further demands that Mr. Hermalyn undertake an immense feat of memory; he must describe in extensive detail "all

8

documents" (and their characteristics) he ever "downloaded, printed, or otherwise obtained" from DraftKings "since January 1, 2024." (*Id.*, Ex. A (ROG No. 1).) DraftKings is clearly seeking ***full-blown merits discovery*** on an expedited basis.

Such requests are wholly inappropriate in the context of a motion for expedited discovery. Using terms like "any," as DraftKings does, "does not typically denote narrow tailoring." *Wilcox Indus. Corp. v. Hansen*, 279 F.R.D. 64, 71 (D.N.H. 2012) (denying expedited request for production of "any schematics, [and] user or operating manuals" in misappropriation/trade secrets action). Similarly, requests to produce "all documents . . ." relating to a topic, as DraftKings does with its first nine Requests for Production (Mot. for Expedited Disc., Ex. B (RFP Nos. 1-9)), is another clear indication that the discovery sought is overbroad and unduly burdensome at this stage of the litigation. *See Castillo*, 2020 WL 11036303, at *2. DraftKings' extensive requests touch on virtually every issue relevant to its claims, and represent exactly the kind of "broad discovery" that "should be pursued more properly within the structure and supervision afforded by a court-approved scheduling order under Fed. R. Civ. P. 16(b)." *Am. LegalNet*, 673 F. Supp. 2d at 1071.

DraftKings' overreaching extends into yet another aspect of its expedited discovery demand. Prior to any motion to dismiss or production of documents by the parties in the ordinary course of litigation, DraftKings demands "this Court to order" Mr. Hermalyn to make himself "available for a deposition by a date to be set by the Court." (Mem. at 1, 7.) DraftKings sets no time limit or topic guidelines for this deposition. (*See id.*) Courts have rejected such premature depositions as overly broad where—as here—the plaintiff "has made no effort to limit the topics on which it seeks to depose" a witness and "does not even identify the topics on which it seeks to examine" a defendant. *Am. LegalNet*, 673 F. Supp. 2d at 1069.

The broad, anti-competitive "fishing expedition" sought by DraftKings into the full merits of the parties' underlying dispute is wholly improper at this stage, and courts have regularly rejected similar efforts. *See, e.g.*, *id.* (denying motion for expedited discovery seeking deposition of defendant accused of misappropriation of trade secrets, conversion, and breach of fiduciary duty as overbroad); *Dimension Data N. Am.*, 226 F.R.D. at 532 (denying expedited discovery because it was "not narrowly tailored to a preliminary injunction determination and instead goes to the merits of the plaintiff's claims"); *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 420 (D. Colo. 2003) (denying motion for expedited discovery because the relief requested "belies the reference to 'limited discovery'"). DraftKings has provided no basis, nor is there one, for its attempted end-run around the normal discovery process under the Federal Rules.

        2.        <u>DraftKings' Request for Inspection and Forensic Imaging Is Invasive and Unreasonable.</u>

Consistent with its tactical overkill, DraftKings' Request for Production No. 10 is overly invasive and entirely unwarranted. RFP No. 10 demands that Mr. Hermalyn "[p]roduce for inspection and forensic imaging any personal computer, laptop, tablet, phone, Communications Accounts, Storage Accounts, or any other device that You have used at any time since October 1, 2023." (Mot. for Expedited Disc., Ex. B (RFP No. 10).) This request raises a host of issues regarding discoverability, confidentiality, and privilege. "Generally, a court will deny a motion to compel forensic imaging" if the moving party fails to show that discovery will not be produced in the ordinary course, or "if an alternative, less invasive means of obtaining the evidence exists." *Hardy v. UPS Ground Freight, Inc.*, Civ. A. No. 3:17-cv-30162-MGM, 2019 WL 3290346, at *3 (D. Mass. July 22, 2019) (collecting cases). Here, DraftKings cannot make the required showing.

Courts are "loathe to sanction intrusive examination of an opponent's computer as a matter of course, or on the mere suspicion that the opponent may be withholding discoverable

10

information." *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, Civ. A. No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007) (citation omitted). Accordingly, the default rule is "forensic examination of an adversary's computer is generally disallowed at least in the absence of any showing that the adversary would not search the computer for relevant documents and produce them in" the regular course of discovery. *Squeo v. Norwalk Hosp. Ass'n,* No. CV095012548, 2010 WL 5573755, at *2 (Conn. Super. Ct. Dec. 14, 2010) ("Federal and state courts outside Connecticut are in accord") (collecting cases); *see also Williams v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144, 146 (D. Mass. 2005) (denying motion to appoint computer forensics expert where movant failed to present "credible evidence that Defendants are unwilling to produce computer-generated documents").

DraftKings, in its Motion, produced no credible evidence indicating that Mr. Hermalyn is unwilling to search for and produce computer-generated documents and information. Nor can it. As set forth above (*supra* Section A), Mr. Hermalyn proactively took substantial steps to ensure that no DraftKings-related material remained in his possession following his resignation, Mr. Hermalyn's counsel is providing all such material to DraftKings' counsel, and Mr. Hermalyn's counsel has given no indication that it would not produce any responsive, relevant information from his devices at the appropriate time. "Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity." *John B. v. Goetz,* 531 F.3d 448, 460 (6th Cir. 2008) (citing The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 2d ed. 11, 34 (The Sedona Conference Working Group Series, 2007)). Given that the contents of Mr. Hermalyn's devices will be the subject of discovery during the ordinary course, the availability of

11

less invasive means, and "the significant privacy and confidentiality concerns present," *id.*, the intrusive and unwarranted forensic imaging sought by DraftKings should be categorically denied.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's Motion. However, should the Motion be granted, the Court should permit Mr. Hermalyn to take expedited discovery from DraftKings, so that neither side has an unfair advantage, and grant Mr. Hermalyn short leave to file his proposed expedited discovery requests. *See, e.g.*, *Wheeler v. HXI, LLC*, Civ. No. 10-cv-145-JD, 2010 WL 3023518, at *2 (D.N.H. July 28, 2010) (granting expedited discovery to a party so it could prepare its opposition to request for preliminary injunction).

Dated: February 7, 2024

Respectfully submitted,

*Attorneys for Defendant Michael Z. Hermalyn*

/s/ __Russell Beck__
Russell Beck (BBO# 561031)
Stephen Riden (BBO# 644451)
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, MA 02110
Tel.: (617) 500-8660
Fax: (617) 500-8665
rbeck@beckreed.com
sriden@beckreed.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was filed on February 7, 2024, through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: February 7, 2024             /s/ *Russell Beck*
                                            Russell Beck