UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DRAFTKINGS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> MICHAEL Z. HERMALYN, <br><br> *Defendant.* | Civil Action No. 1:24-cv-10299 |

**DECLARATION OF ROBERT FERRARA
IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER**

1

DocuSign Envelope ID: EEB2D7C3-EAC5-498E-8FDF-E58B1B22B7A3

## DECLARATION OF ROBERT J. FERRARA

I, Robert Ferrara, hereby declare, under penalty of perjury, the following:

1. I am over the age of 18 and have personal knowledge of the facts set forth in this Declaration. If called upon to do so, I could and would testify competently thereto.

2. I worked for DraftKings, Inc. ("DraftKings") from approximately January 21, 2019 to August 4, 2023. At the time I left DraftKings, my title was Director of Player Development. My role included developing clients for DraftKings' gaming business.

3. In the summer of 2023, I left DraftKings to join what is now Fanatics Loyalty Co. ("FLC," together with other Fanatics entities, "Fanatics"). I now work in Fanatics' collectibles and commerce business, which does not compete with DraftKings' gaming business.

4. When I decided to leave DraftKings, I informed my supervisor, Michael Hermalyn, with whom I had worked extensively and whom I hold in the highest regard. In my experience, Mr. Hermalyn has always been ethical and loyal to DraftKings, and a true family man.

5. Mr. Hermalyn in no way ever encouraged me to leave DraftKings or to join Fanatics or put me in contact with Fanatics' CEO or any other Fanatics executives or representatives. To the contrary, in the summer of 2023, he fought tooth and nail to try to get me to stay at DraftKings, although I ultimately decided to leave.

6. In the two weeks before I left, Mr. Hermalyn worked with me to provide me with direction on closing out my responsibilities at DraftKings, especially as it relates to clients for which I was the exclusive point of contact.

7. For example, there was DraftKings gaming client that Mr. Hermalyn ran into at a Fanatics 2023 Super Bowl party. I was the primary point of contact for that person. So, when I was leaving, Mr. Hermalyn provided me with talking points for the client (1) to explain that I was

leaving the gaming industry and (2) to connect the client with Mr. Hermalyn, so Mr. Hermalyn could jump in to ensure a smooth transition of the client relationship for DraftKings.

8.  In connection with that effort, Mike and I, as well as others, worked to carefully craft the message to the client.

9.  On July 20, 2023, once the language was final, Mr. Hermalyn sent me an email with the wording for my reference, writing it as if it was coming from me: therefore, the "I" in the email refers to me and the "Mike" in the email refers to Mr. Hermalyn.  Mr. Hermalyn provided that language to me in a text as well.

10.  I saw that DraftKings accuses Mr. Hermalyn of other wrongful conduct as well. Knowing Mr. Hermalyn as I do, I do not believe the accusations for a minute.

I declare under penalty of perjury that the foregoing is true and correct.

Executed February 7, 2024

By: _____
      59CCA0A8DCF1402
Robert Ferrara

3

## CERTIFICATE OF SERVICE

      I hereby certify that a true copy of the above document was served on Plaintiff's counsel on the date below via email and will be filed through the ECF System and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: February 7, 2024

                                                  /s/ *Russell Beck*
                                                Russell Beck