UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DRAFTKINGS, INC.,<br><br>      *Plaintiff,*<br><br>v.<br><br>MICHAEL Z. HERMALYN,<br><br>      *Defendant.* | Civil Action No. 1:24-cv-10299-JEK |

## DEFENDANT MICHAEL Z. HERMALYN'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR CLARIFICATION AND REFINEMENT

Defendant Michael Z. Hermalyn respectfully moves for a limited clarification and refinement of the Court's February 8, 2024 Temporary Restraining Order (the "Order"), ECF No. 44.[1] Certain provisions of the Order, as entered, expand and directly conflict with the Court's oral ruling during the February 8, 2024 hearing, and threaten to impose upon Hermalyn the non-competition restraint, which Plaintiff DraftKings, Inc. ("DraftKings") requested, but which this Court denied. Accordingly, Hermalyn requests that the Court clarify and refine the Order to address this conflict, as proposed in **Exhibit A**.

## RELEVANT PROCEDURAL BACKGROUND

At the conclusion of the February 8, 2024 hearing, the Court did "***not*** temporarily . . . restrain Mr. Hermalyn from working for Fanatics," as DraftKings requested. **Ex. B**, February 8,

---

[1] Defendant notes that, in accordance with the Court's Order ¶ (f), he timely served Plaintiff with a Certification of Compliance on February 12, 2024. Additionally, Defendant reserves all rights, claims and defenses with regard to the restrictions in the Temporary Restraining Order and contracts at issue, which are not the subject of this Motion, including for the reasons stated in Defendant's Opposition to Plaintiff's Motion for Temporary Restraining Order, ECF. No. 33.

1

2024, Hearing Transcript ("Tr.") 57:1-2 (emphasis added). Rather, the Court *only* restrained Hermalyn from "making any use of DraftKings' confidential information and trade secrets, as well as from soliciting DraftKings' clients and employees." *See id.* at 56:7-57:6. The Court found that the restrictions relating to Confidential Information and non-solicitation were sufficient to "adequately protect DraftKings from loss of its trade secrets and confidential information." *Id.* at 56:7-14; *see also id.* at 19:25-20:4.

Consistent with this ruling, following the hearing, the Court excised Paragraph (c) of DraftKings' broad proposed order, which would have restrained Hermalyn from "directly or indirectly providing any services to" Fanatics relating to sports betting or any other aspect of DraftKings' business "for which [Hermalyn] performed services or received Confidential Information" in the previous six months. *See* [Proposed] Temporary Restraining Order, ECF No. 3-1, ¶ (c). Also consistent with this ruling, the Court entered DraftKings' proposed restraints with respect to using or disclosing Confidential Information (¶¶ (a), (b), and (f)) and soliciting clients and employees (¶¶ d and e). However, the Court went beyond the restraints regarding Confidential Information and non-solicitation by leaving intact DK's proposed text with respect to "transacting business" with DraftKings' customers, clients, vendors, and partners (or prospects) (¶ d) and with respect to hiring DraftKings' employees (¶ e). *See* ECF No. 44. These aspects of the Order go beyond, and directly conflict with, the Court's ruling at the February 8 hearing.

In particular, the "transacting business" language in Paragraph (d)—which was not the focus of DraftKings' briefing or argument at the hearing—threatens to effectively impose the very non-competition restraint that the Court expressly rejected at the hearing. In addition, the language in Paragraph (d) regarding vendors, partners, and prospects is vague and beyond the scope of the Court's ruling during the hearing. These restrictions—which go beyond confidentiality and non-

2

solicitation—are not warranted here, including because, at the February 8 hearing, DraftKings conceded that it has **no evidence** that Hermalyn has solicited any of its clients or employees, and DraftKings has not even **alleged** that Hermalyn has solicited or transacted business with DraftKings' customers, clients, vendors, partners, or prospects or hired DraftKings' employees. **Ex. B**, Tr. 16:16-17:4; *see also id*. 23:10-24:12.

Hermalyn thus respectfully seeks a limited clarification and refinement as to these issues that go beyond the scope of and conflict with the Court's ruling at the hearing. *See, e.g.*, *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, 578 F. Supp. 3d 101, 105 (D. Mass. 2021) ("Clarifications of orders previously issued ... add certainty to an implicated party's efforts to comply with the order and provide a fair warning as to what future conduct may be found contemptuous") (internal citation omitted). Specifically, as set forth further below and reflected in **Exhibit A**, Hermalyn requests an order clarifying and refining the restraints imposed on him by the Order as follows:

(1) Striking the phrases "transacting business" or "transact business with" in ¶ (d);

(2) Striking the terms "vendors or partners" in ¶ (d);

(3) Clarifying that Hermalyn may respond to unsolicited outreach about Fanatics from DraftKings' customers, clients, and employees; and

(4) Clarifying that the phrase "prospective customers, clients, vendors or partners" in ¶ (d) applies only to actual DraftKings prospects that DraftKings is actively pursuing and that Hermalyn previously worked with or had confidential information about from his work at DraftKings.

## **ARGUMENT**

Hermalyn seeks clarification and refinement of the following three, limited aspects of the Order as entered:

***First***, the Order restrains Hermalyn from not only "soliciting" but also "*transacting business*" or "attempting to . . . *transact business*" with "any of DraftKings' customers, clients, vendors or partners, or with any of DraftKings' prospective customers, clients, vendors or partners about which [he] learned confidential information or . . . had some involvement or knowledge" relating to DraftKings' business, including "any aspect of the Business of the Company (as defined in the Noncompetition Covenant)." Order, ECF No. 44, ¶ (d). The term "transacting business" is undefined and vague; this language was not the focus of DraftKings' briefing, and the term "transacting business" was not at all referenced at the February 8, 2024 hearing. Read broadly, this restriction is in direct tension with other aspects of this Court's ruling, which allows Hermalyn to work for and provide services to Fanatics—*i.e.*, striking the non-competition restriction.

Hermalyn is concerned that DraftKings may argue that the phrase "transacting business," as written, could prevent Hermalyn from working or interacting with *any* of DraftKings' customers, clients, vendors, or partners in his new role at Fanatics, ***even if*** Hermalyn took no part in soliciting or bringing them over to Fanatics and ***even if*** Hermalyn did not make use of any DraftKings' confidential information or trade secrets. Such a restriction would not be justified and would unfairly prevent Hermalyn from working with clients who made their own choices to provide business to Fanatics, independent of any solicitation or misuse of any confidential information by Hermalyn. *See Townsend Oil Co., Inc. v. Tuccinardi*, 1984CV04024BLS2, 2020 WL 958520, at *4 (Mass. Super. Jan. 16, 2020) (customer's choice to switch their business to another servicer is not solicitation).

Relatedly, Hermalyn is concerned that DraftKings may argue that the phrase "transacting business" restrains Hermalyn from even *responding* to DraftKings' clients, customers, partners, or vendors (or employees) who may affirmatively reach out *to him* about Fanatics—without any

4

affirmative actions or outbound solicitation on his part to prompt such outreach and without any use of DraftKings' confidential information or trade secrets. DraftKings made no argument in its motion or at the hearing as to why such a restriction would be necessary here. And for good reason. Massachusetts law does <u>not</u> consider merely responding to outreach to be "solicitation," and the "transacting business" language likewise should not be read so broadly. *See Townsend Oil Co., Inc.*, 2020 WL 958520, at *4 (former employee would not violate non-solicitation prohibition by "tak[ing] or return[ing] a call" from former employer's customer or by "accepting that business or explaining [new employer's] current offer to new customers").

In addition, Hermalyn is concerned that the "transacting business" phrase could be read to prevent him from working with someone who was *already* a Fanatics customer, client, vendor, or partner when Hermalyn began working at Fanatics on February 1, 2024, if that customer, client, vendor, or partner also happens to be associated with DraftKings. This is an important issue because the client relationships as between DraftKings and other service providers, like Fanatics, are <u>not</u> exclusive. In other words, the same client (and customer, partner, or vendor) could do business (*e.g.*, bet) with *both* DraftKings and Fanatics (as well as others). Such a restriction would not be justified and would unfairly prevent Hermalyn from working with pre-existing mutual clients that he did not solicit to Fanatics and that he did not misuse any confidential information about.

Moreover, Hermalyn is concerned that the phrase "transacting business" could be read to stretch even more broadly, to prohibit him from providing *internal* services at Fanatics with respect to DraftKings' customers, clients, vendors, or partners, because the Order also covers "*<u>indirectly</u>* ... transacting business." Order, ECF No. 44, ¶ (d) (emphasis added). It is not clear what "indirectly ... transacting business" means, but read broadly, DraftKings could argue that it

bars Hermalyn from providing any services at all that might in some way relate to Fanatics transacting business with a DraftKings customer, client, vendor, or partner (*e.g.*, general, non-targeted initiatives that could possibly reach a DraftKings customer)—even if he did not solicit such customer or misuse any related confidential information. Again, such a restriction would not be justified, would unfairly prevent Hermalyn from providing services to Fanatics, and would undo much of the Court's denial of the non-compete restriction.

DraftKings made no evidentiary showing that this "transacting business" restriction is necessary to prevent irreparable harm. Especially given the nonexclusive nature of the customer, client, vendor, and partner relationships, prohibiting Hermalyn from transacting business with or responding to a Fanatics client, customer, partner, or vendor that he did not solicit (including an existing, mutual client) and that he did not misuse confidential information about is not necessary to protect any legitimate interests of DraftKings. Hermalyn's ability to do so, without soliciting and without disclosing or using DraftKings' confidential information or trade secrets (which, as he attested, he has not done and will not do), does not threaten to harm DraftKings. *See JL Powell Clothing LLC v.* Powell, 590 F. App'x 3, 6 (1st Cir. 2014) (requiring district court to "tailor" preliminary injunction "to meet [enjoined party's] legitimate concerns" about overbreadth); *E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 746 (1st Cir. 1996) (vacating a portion of the injunction because moving party "made no showing that it will suffer irreparable harm in the absence of [that] portion of the injunction," and so it was more burdensome to the defendant than necessary to provide complete relief to the plaintiffs).

Therefore, the "transacting business" restriction unnecessarily threatens to turn a restriction against solicitation—which is what Hermalyn understands the Court intended to order, *see* **Ex. B**, Tr., at 57:3-6—into a backdoor non-compete. This is especially so to the extent that it prevents

Hermalyn from (i) responding to outreach from, or providing services to, DraftKings customers, clients, vendors, and partners that he did not solicit, and (ii) providing services to Fanatics that could possibly end up involving a covered DraftKings customer, client, vendor, or partner. If the Order were to enjoin Hermalyn this broadly, it would effectively prevent Hermalyn from working for Fanatics in any competing area of the business. The Court explicitly struck such a restriction. *See* ECF No. 44. Therefore, Hermalyn respectfully requests that the Court modify the Order to remove the term "transacting business" from the client non-solicitation restriction.

***Second***, the Order restrains Hermalyn from soliciting or "transacting business" with not only DraftKings' customers and clients, but also with DraftKings' "vendors or partners." Order, ECF No. 44, ¶ (d). This language as to "vendors or partners" goes beyond the Court's ruling on the record, which was limited to a restraint on "soliciting DraftKings' customers and employees." *See* **Ex. B**, Tr. 57:3-6. The terms "vendors" and "partners" are not defined, and could extend to a potentially *unlimited and unknowable* group of entities and individuals. Such broad terms could be read to cover virtually anyone. DraftKings would likely contend that it includes everyone from restaurant maître d's and other personnel that provided reservations, to those fashion labels that provided DraftKings with merchandise, to every other service provider. DraftKings made no evidentiary showing that this "vendors or partners" restriction—which was not a focus of DraftKings' briefing or argument—is necessary to prevent irreparable harm to it. There is no reason that Mr. Hermalyn should not be able to interact with this category of individuals and companies on behalf of his new employer. Thus, this prohibition, too, unnecessarily threatens to impose a *de facto* non-compete upon Hermalyn. Therefore, Hermalyn respectfully requests that the Court modify the Order to remove the terms "vendors or partners" from the client non-solicitation restriction.

7

***Third***, the Order restrains Hermalyn from soliciting or transacting business with not only current but also DraftKings' "*prospective* customers, clients, vendors or partners." Order, ECF No. 44, ¶ (d) (emphasis added). Hermalyn can only assume that DraftKings will claim, incorrectly, that <u>everyone</u> in the industry that purportedly has been on DraftKings' radar is a "prospective" customer, client, vendor, or partner of DraftKings, even if DraftKings has nothing to do with that individual or entity or has failed to secure or even seek their business so far. Again, this language was not the focus of DraftKings' briefing or argument, and DraftKings made no evidentiary showing that a limitation on "prospective" customers (much less "prospective" business vendors and partners) is necessary to prevent irreparable harm; it is not. *See Robert Half Int'l, Inc. v. Simon*, No. 2084CV00060BLS2, 2020 WL 1218988, at *7 (Mass. Super. Jan. 29, 2020) (plaintiff had no legitimate interest in protecting goodwill as to clients and prospective clients that defendant did not support while working for plaintiff). And again, Hermalyn is concerned that DraftKings may argue that, construed broadly, this language could effectively constrain Hermalyn from working for Fanatics in any competitive aspect of its business, which would be directly contrary to the Court's Order.

Therefore, Hermalyn respectfully requests that the Court modify the Order to clarify that the term "prospective" in the client non-solicitation restriction in Paragraph (d) applies only to prospective DraftKings clients and customers that DraftKings is actively pursuing as a potential client or customer and that Hermalyn worked with or had confidential information about during the six months prior to February 1, 2024. Such a refinement of this restriction would protect what this Court has found to be DraftKings' legitimate business interest in its confidential information while avoiding an overbroad restriction on his ability to work at Fanatics.

* * *

Accordingly, to address these issues, Hermalyn proposes clarifications and refinements to the Court's Order as detailed in **<u>Exhibit A</u>**. Hermalyn believes the limited proposed changes to the Order reflected in **<u>Exhibit A</u>** will clarify and refine his obligations for both Hermalyn and DraftKings, while maintaining sufficient protection for DraftKings and carrying out the intent of this Court.

DraftKings may respond that some of the language discussed in this motion is in Hermalyn's Non-Solicitation Agreement. *See* ECF No. 1-1, ¶¶ 2-3. However, for the reasons explained above, applying the Non-Solicitation Agreement as written (which DraftKings simply incorporated into its proposed order) does not make sense given that it is overbroad on its face and directly contrary to the Court's ruling that Hermalyn is permitted to work for and provide competitive services to Fanatics.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Hermalyn respectfully requests that the Court grant this motion and enter his proposed clarifications and refinements to the Court's February 8, 2024 Order, as attached here as **<u>Exhibit A</u>**.

In addition, because this motion seeks clarification and refinement of a temporary restraining order to which Hermalyn is presently subject and due to the expedited nature of these proceedings, Hermalyn respectfully requests that this Court shorten the time for DraftKings to file any response, from fourteen days to **<u>two (2) business days</u>**, pursuant to Local Rule 7.1(b)(2), which allows for a shorter period than fourteen days to file an opposition to a motion "by order of the court."

Dated: February 14, 2024

Respectfully submitted,

*Attorneys for Defendant Michael Z. Hermalyn*

/s/  *Russell Beck*
Russell Beck (BBO# 561031)
Stephen Riden (BBO# 644451)
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, MA 02110
Tel.: (617) 500-8660
Fax: (617) 500-8665
rbeck@beckreed.com
sriden@beckreed.com

## CERTIFICATE OF SERVICE

       I hereby certify that a true copy of the above document was filed on February 14, 2024, through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: February 14, 2024                     /s/ *Russell Beck*
                                                                     Russell Beck