**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

DRAFTKINGS, INC.,

      *Plaintiff,*

 v.

MICHAEL Z. HERMALYN,

      *Defendant.*

Civil Action No. 1:24-cv-10299-JEK

**[PROPOSED] DEFENDANT'S FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF DRAFTKINGS, INC.**

Pursuant to the Court's February 8, 2024 Order (Dkt. No. 42) (the "Discovery Order") and Federal Rules of Civil Procedure 26 and 33, Defendant Michael Z. Hermalyn ("Defendant" or "Hermalyn") submits this First Set of Interrogatories (Nos. 1-10) to Plaintiff DraftKings, Inc. ("Plaintiff" or "DraftKings").  These interrogatories are to be answered separately and fully, in writing and under oath, in accordance with the Definitions and Instructions contained herein, and pursuant to the Discovery Order (Dkt. No. 42), within eight (8) days of the date of service.

## DEFINITIONS

The terms used herein shall be given the broadest meaning allowed under the Federal Rules of Civil Procedure and the Local Rules, and the uniform definitions set forth in Local Rule 26.5 shall apply, including the definitions provided in Local Rule 26.5 for the terms "Communication," "Document," "Identify (With Respect to Persons)," "Identify (With Respect to Documents)," "Parties," "Person," "Concerning," and "State the Basis."  Additionally, as used herein, the terms set forth below shall have the following meanings:

1.      "Action" means the case referenced in the caption above, Civil Action No. 1:24-cv-10299, pending in the United States District Court for the District of Massachusetts.

2.      "Agreements" means the Nonsolicitation, Nondisclosure & Assignment of Inventions Agreement dated August 31, 2020 attached as Exhibit A to the Complaint (Dkt. No. 1-1), the Noncompetition Covenant dated August 16, 2023, attached as Exhibit B to the Complaint (Dkt. No. 1-2), and any other agreements between DraftKings and Hermalyn that DraftKings contends were breached by Hermalyn.

3.      "Complaint" means the complaint filed by DraftKings against Hermalyn in this Action on February 5, 2024 (Dkt. No. 1).

4.      "Confidential Information" shall have the meaning ascribed to it in the Agreements. This meaning includes "trade secrets" and encompasses the alleged trade secrets DraftKings

1

identified in its Complaint (Dkt. No. 1), temporary restraining order briefing (Dkt. Nos. 3, 4), and the Declaration of Gregory Karamitis (Dkt. No. 5).

5.    "DraftKings" means DraftKings, Inc. and includes any predecessors or successors in interest, divisions, departments, and any present or former officers, directors, employees, partners, corporate parents, subsidiaries, affiliates, representatives, agents, attorneys, and any person or entity acting, purporting to act, or having acted or purported to act, directly or indirectly, on behalf of DraftKings, Inc.

6.    "ESI" means electronically stored information, electronically stored data, or electronic data, and is to be interpreted broadly to include all types of  information, regardless of the storage media (*e.g.*, hard drive, CD-ROM, DVD, disc, tape, thumb drive, etc.), that requires a computer or other machine to read or process it.

7.    "Facts" shall have its ordinary meaning and, pursuant to Federal Rule of Civil Procedure 33(c), also shall mean related opinions, related contentions, and the application of law to fact.

8.    "Fanatics" means FVP, LLC and/or Fanatics Holdings, Inc, as well as their corporate parents, subsidiaries, affiliates, employees, and representatives.

9.    "Harris Affidavit" means the Affidavit of Brian Harris filed on February 5, 2024 in support of DraftKings' motion for a temporary restraining order (Dkt. No. 6).

10.    "Order" means the temporary restraining order entered by the Court in this Action on February 8, 2024 (Dkt. No. 44).

11.    "The singular includes the plural and vice versa, except as the context may otherwise require; reference to any gender includes the other gender; the words "and" and "or" shall be construed as either conjunctive or disjunctive in such manner as will broaden as widely as possible

the scope of any request for production; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including but not limited to"; the use of defined terms apply whether or not they are capitalized; and wherever applicable, a verb in a tense includes any and all other tenses.

## **INSTRUCTIONS**

1.      Pursuant to Federal Rule of Civil Procedure 26(e) and Local Rule 116.7, DraftKings' obligation to respond to these interrogatories is continuing in nature such that, if after answering or responding DraftKings subsequently discovers or obtains possession, custody, or control of any information previously requested, DraftKings shall supplement the interrogatory responses to which such subsequently-discovered information relates.

2.      All interrogatories are to be understood as requiring information in DraftKings' possession, custody, or control.

3.      Each interrogatory shall be answered separately and fully and, unless otherwise indicated, no interrogatory limits the scope of any other interrogatory.

4.      In answering the following interrogatories, DraftKings shall furnish all available information, including information in the possession, custody, or control of any of its attorneys, directors, officers, agents, employees, representatives, associates, investigators, or division affiliates, partnerships, parents, subsidiaries, and Persons under its control. If DraftKings cannot fully respond to the following interrogatories after exercising due diligence to secure the information requested thereby, so state and specify the portion of each interrogatory that cannot be responded to fully and completely. In the later event, state what efforts were made to obtain the requested information and the facts relied upon that support any contention that the interrogatories cannot be answered fully and completely, and state what knowledge, information, or belief DraftKings has Concerning the unanswered portion of any such interrogatories.

5.      Where knowledge or information in DraftKings' possession is requested, the request extends to knowledge or information in the possession or DraftKings' predecessors and/or successors, as well as to information in the possession of DraftKings' officers, directors, agents, employees, servants, representatives, and unless privileged, attorneys. Whenever an answer to these interrogatories contains information that is not based upon DraftKings' personal knowledge, state the source and nature of such information.

6.      If in answering any interrogatory, DraftKings seeks to invoke the procedures of Federal Rule of Civil Procedure 33(d), it shall state fully all facts which support its contention that the burden of ascertaining the answer to the interrogatory is substantially the same for Hermalyn as it is for DraftKings, and identify by Bates/production number those business records from which DraftKings contends Hermalyn may ascertain or derive the answer.  Pursuant to Local Rule 33.1(b)(4), and the Discovery Order (Dkt. No. 42) granting expedited discovery, any Document referred to in an interrogatory answer invoking Federal Rule of Civil Procedure 33(d) must be produced at the time of service of the interrogatory answers.

7.      If any objection is made to any interrogatory herein, the objection shall state with particularity the basis therefore, and the interrogatory shall be answered to the extent not objected to.

8.      If DraftKings otherwise declines to set forth in its response any of the information requested by any interrogatory, it shall state the exact grounds upon which it relies for its refusal, and provide all other responsive information.

9.      If any identified Document and/or information was, but no longer is, in DraftKings' possession or under its control, state precisely what disposition was made of it and identify the Person who ordered or authorized such disposition.

10.     If DraftKings withholds any information on the basis of privilege, immunity, or any similar claim, DraftKings shall provide all information falling within the scope of the interrogatory which is not privileged, and, for each item of information to which a claim of privilege is made, identify such information item with sufficient particularity to enable Hermalyn to assess, and the Court to adjudicate, the applicability of privilege or immunity for purposes of a motion to compel, in a manner consistent with applicable federal and local rules.

11.     If, in response to an interrogatory, DraftKings does not know all the facts necessary to provide a complete and specific answer, DraftKings must provide answers to any portions of the interrogatory it can answer, and provide such facts as are known to it and any estimates, approximations, or beliefs that it consider reliable. Any such estimates, approximations, or beliefs should be clearly denoted as such, and the bases for DraftKings' belief in their reliability should be explained.

12.     If, in answering any of these interrogatories, DraftKings encounters any ambiguity in construing the interrogatory or any definition or instruction relevant to the interrogatory, set forth the matter deemed ambiguous and the construction selected or used in answering the interrogatory.

## INTERROGATORIES

**INTERROGATORY NO. 1**:

Identify with specificity each Document, tangible thing, ESI, and Confidential Information that DraftKings contends Hermalyn misappropriated (*i.e.*, improperly acquired, used, or disclosed) from DraftKings.

**INTERROGATORY NO. 2**:

As to each Document, tangible thing, ESI, and Confidential Information identified in response to Interrogatory No. 1, State the Basis for DraftKings' contentions that it constitutes a trade secret and that Hermalyn misappropriated (*i.e.*, improperly acquired, used, or disclosed) it, including, as to each, the alleged date(s) and manner(s) of misappropriation.

**INTERROGATORY NO. 3**:

State the Basis for the contentions in Paragraphs 16 through 25 of the Harris Affidavit regarding Hermalyn's access to Google Workspace and his DraftKings' email account, including the file access, downloads, views, and prints activity recorded in Hermalyn's Google Workspace report(s) from January 1, 2024 to February 1, 2024, the names of all files recorded in Hermalyn's Google Workspace report(s) from January 1, 2024 to February 1, 2024, the meaning of the terms "access," "download," "view," "print," and any other technical terms used in the Harris Affidavit and Hermalyn's Google Workspace report(s), and each step taken to "test[]" Hermalyn's Google Workspace report(s) "to ensure their reliability, and cross-check[] the data to confirm its accuracy" (Harris Affidavit Paragraph 16).

**INTERROGATORY NO. 4**:

Identify with specificity each of DraftKings' actual or prospective customers, clients, vendors, and partners that DraftKings contends Hermalyn is restricted from soliciting or transacting business with pursuant to the Agreements and Order, including, as to each, the location(s) in which they are based and, as to each, the factual basis for DraftKings' contention.

**INTERROGATORY NO. 5**:

Identify with specificity each of DraftKings' actual or prospective customers, clients, vendors, and partners that DraftKings contends Hermalyn has solicited or transacted business with on behalf of Fanatics or since resigning from DraftKings, including, as to each, the location(s) in which they are based.

**INTERROGATORY NO. 6**:

As to each of DraftKings' actual or prospective customers, clients, vendors, and partners identified in response to Interrogatory No. 5, State the Basis for DraftKings' contentions that they

6

are restricted Person(s) under the Agreements and Order and that Hermalyn has solicited or

transacted business with them on behalf of Fanatics or since resigning from DraftKings, including,

as to each, the alleged date(s) and manner(s) of solicitation and/or business transaction(s).

**INTERROGATORY NO. 7**:

Identify with specificity each of DraftKings' employees, advisors, consultants, or

contractors that DraftKings contends Hermalyn has solicited or hired on behalf of Fanatics or since

resigning from DraftKings, including, as to each, the location(s) in which they are based.

**INTERROGATORY NO. 8**:

As to each of DraftKings' employees, advisors, consultants, or contractors identified in

response to Interrogatory No. 7, State the Basis for DraftKings' contentions that they are restricted

Person(s) under the Agreements and Order and that Hermalyn has solicited or hired them on behalf

of Fanatics or since resigning from DraftKings, including, as to each, the alleged date(s) and

manner(s) of solicitation and/or hiring.

**INTERROGATORY NO. 9**:

State the Basis for DraftKings' contentions in Paragraphs 93-95 of the Complaint regarding

Hermalyn's purported July 20, 2023 email "encouraging members of his team to explore

employment opportunities with a direct competitor [in] a breach of his duty of loyalty and

contractual non-solicitation obligations to DraftKings," including all Persons and in-house and

external counsel that participated in preparing and/or approving this email on behalf of DraftKings

and all steps taken to investigate the allegations concerning this email prior to filing suit.

**INTERROGATORY NO. 10**:

Identify with specificity each contact or connection that DraftKings alleges Hermalyn had

with the Commonwealth of Massachusetts while employed by and concerning his work for

DraftKings, including a description of each of Hermalyn's alleged business travels to Massachusetts as alleged in Paragraph 78 of the Complaint.

Dated: February ___, 2024

Respectfully submitted,

/s/ ___*Russell Beck*___
Russell Beck (BBO# 561031)
Stephen Riden (BBO# 644451)
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, MA 02110
Tel.: (617) 500-8660
Fax: (617) 500-8665
rbeck@beckreed.com
sriden@beckreed.com

*Attorneys for Defendant Michael Hermalyn*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served upon counsel of record for Plaintiff DraftKings through electronic mail, this __ day of February 2024.

/s/ _____