# EXHIBIT B

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
gibsondunn.com

Harris M. Mufson
Direct: +1 212.351.3805
Fax: +1 212.817.9505
HMufson@gibsondunn.com

February 15, 2024

Via E-Mail

Russell Beck
Stephen Riden
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, MA 02110
rbeck@beckreed.com

Re:   *DraftKings Inc. v. Michael Hermalyn*, Civil Action No. 1:24-cv-10299

Dear Russell:

We write concerning Mr. Hermalyn's failure to comply with his legal obligations under the Court's Temporary Restraining Order entered on February 8, 2024 (Dkt. No. 44, hereinafter the "Order"), in at least the following responses: (1) the glaring deficiencies in his February 12, 2024 document production purporting to represent the return of DraftKings' Confidential Information, (2) the improper limitation on the scope of his Certification, and (3) the preservation of his devices.

**Failure to return all DraftKings' Confidential Information.** In violation of the Order and contravention of his sworn representations, Mr. Hermalyn failed to "return to DraftKings *all* DraftKings' Confidential Information" in his possession, custody, or control. Order § (f) (emphasis added).[1] By Mr. Hermalyn's own admission, he "***regularly*** accessed DraftKings' documents" on his personal phone. Dkt. No. 36 ¶¶ 48-49 (emphasis added). Mr. Hermalyn also affirmed that the entire reason he provided his personal devices, Gmail account, and iCloud to counsel prior to his resignation was to "ensure to the best of [his] ability that [he] was no longer in possession of any DraftKings property or confidential information." *Id*. ¶ 45. And both you and Mr. Hermalyn's California counsel have made similar representations—that DraftKings' material is located on Mr. Hermalyn's personal devices and is potentially located in his personal email and iCloud accounts, if not elsewhere as well. *See, e.g.*, Feb. 8, 2024 Hr'g Tr. 38:11–19.

---

[1] "Confidential Information" is defined in the Nonsolicitation, Nondisclosure & Assignment of Inventions Agreement dated August 31, 2020 as "all information or compilation of information in any form . . . that is not generally known to competitors or the public, which [DraftKings] considers to be confidential and/or proprietary, including but not limited to . . . marketing plans and strategies; pricing and cost policies; customer, supplier, vendor and partner lists and accounts; customer and supplier preferences; contract terms and rates . . . market or sales information, plans or strategies; business plans, prospects and opportunities (including, but not limited to, possible acquisitions or dispositions of businesses or facilities); [and] information concerning existing or potential customers, partners or vendors." *See* Dkt. No. 1-1, § (iii).

**GIBSON DUNN**

Russell Beck
Beck Reed Riden LLP
February 15, 2024
Page 2

Despite these representations, Mr. Hermalyn has returned only the partial contact information for various DraftKings employees, a mere eleven DraftKings customers, and no business contacts or partners. *None* of the other Confidential Information stored on Mr. Hermalyn's phone, in his personal email, and in his iCloud account was returned. That is a plain violation of the Order. It is no excuse that Mr. Hermalyn believes a "protocol" is necessary for his counsel to review the materials on his personal devices. Hermalyn Cert. ¶ 5. The Order requires no such "protocol." Rather, the Order is clear that by February 12, 2024, Mr. Hermalyn was required to return *all* DraftKings' Confidential Information in his possession, custody, or control.

Even as to Mr. Hermalyn's DraftKings' customer contacts, producing partial contact information for a mere eleven customers does not come close to compliance with the Order. Mr. Hermalyn admits in his sworn certification that there are business contacts in his possession that have *not* been provided to DraftKings. *Id.* ¶ 4. Moreover, under oath in the California action, Mr. Hermalyn stated that the Order's restriction barring Mr. Hermalyn from doing business with any current DraftKings customer, client, vendor, or partner results in a "severe" effect on his "ability" to do his job at Fanatics. Feb. 13, 2024 Hermalyn Decl. ¶ 22. Mr. Hermalyn's characterization of the restriction as "severe" amounts to a concession that Mr. Hermalyn possesses contact information for far more than eleven DraftKings customers and business partners. To the extent Mr. Hermalyn is unsure whether such business contacts are DraftKings' property, he must promptly return them to DraftKings so that our client can consider whether they are, in fact, DraftKings' property.

**Inadequate Certification.** Because Mr. Hermalyn admits that he has not provided to DraftKings certain business contacts and documents that remain within his possession, custody, or control, Hermalyn Cert. ¶¶ 4–5, his sworn certification that "none of DraftKings' Confidential Information is in [his] possession, custody, or control" is "subject to" these substantial caveats. *Id.* ¶ 7. But the Order provides no room for "conditional" certifications. Mr. Hermalyn was obligated to provide a sworn certification that no DraftKings' Confidential Information remains within his possession, custody, or control. His failure to provide such an unconditional sworn certification also constitutes a violation of the Order.

**Device Preservation.** Mr. Hermalyn seems to believe that he will have his devices returned to him "as soon as possible." *Id.* ¶ 5. As you know, the Court's denial of a forensic examination of Mr. Hermalyn's devices was predicated on the fact that he no longer possessed those devices. *See, e.g.*, Feb. 8, 2024 Hr'g Tr. 51:7–13 (issuing Order "primarily to preserve the status quo"); 58:3–8 (holding that "forensic audit of all of Mr. Hermalyn's devices" would be burdensome "particularly where Mr. Hermalyn bought a new device after turning over his devices to DraftKings or counsel"). Given that the Court presumed that Mr. Hermalyn would

**GIBSON DUNN**

Russell Beck
Beck Reed Riden LLP
February 15, 2024
Page 3

not have access to his devices until this case is resolved, such devices cannot be returned to him. If Mr. Hermalyn's devices are returned to him, DraftKings will take all appropriate action, which may include a motion to compel a forensic examination of those devices and a request for an adverse inference that Mr. Hermalyn has spoliated evidence.

**Accordingly, DraftKings demands that Mr. Hermalyn supplement his deficient production of documents from February 12, 2024 with any and all additional DraftKings' Confidential Information within his possession, custody, or control and provide a supplemental certification to cure the above violations immediately, but <u>no later than February 23, 2024</u>. If he does not plan to supplement his production and certification, please advise immediately, but no later than the close of business <u>on February 21, 2024</u>. Please also confirm immediately, but no later than close-of-business on <u>February 21, 2024</u>, that Mr. Hermalyn's personal devices remain preserved and out of his control.**

We look forward to your cooperation. DraftKings reserves all rights, claims, and defenses, and waives none.

Sincerely,

*[signature]*

Harris M. Mufson

cc: Brad Brian
Bethany Kristovich
Anne Conley
Munger, Tolles & Olson LLP