# EXHIBIT D

1   BRAD D. BRIAN (SBN 79001)
    brad.brian@mto.com
2   BETHANY W. KRISTOVICH (SBN 241891)
    bethany.kristovich@mto.com
3   ANNE K. CONLEY (SBN 307952)
    anne.conley@mto.com
4   MUNGER, TOLLES & OLSON LLP
    350 South Grand Avenue, 50th Floor
5   Los Angeles, California 90071-3426
    Telephone:     (213) 683-9100
6   Facsimile:     (213) 687-3702

7   *Attorneys for Plaintiff*
    *MICHAEL Z. HERMALYN*

8

9               SUPERIOR COURT OF THE STATE OF CALIFORNIA

10               COUNTY OF LOS ANGELES, CENTRAL DISTRICT

11

12  MICHAEL Z. HERMALYN and          Case No. 24STCV02694
    FVP, LLC,
13                                    **PLAINTIFF MICHAEL Z. HERMALYN'S**
                 Plaintiffs,          ***EX PARTE* APPLICATION FOR (1) A**
14                                    **TEMPORARY RESTRAINING ORDER**
          vs.                         **AND (2) AN ORDER TO SHOW CAUSE**
15                                    **REGARDING PRELIMINARY**
    DRAFTKINGS, INC.,                 **INJUNCTION; MEMORANDUM OF**
16                                    **POINTS AND AUTHORITIES IN**
                 Defendant.          **SUPPORT THEREOF**
17
                                      *[Filed Concurrently: Declaration of Anne K.*
18                                    *Conley; Declaration of Michael Z. Hermalyn;*
                                      *Request for Judicial Notice; [Proposed]*
19                                    *Order]*

20
                                      Hearing Date:   February 14, 2024
21                                    Time:           8:30 a.m.
                                      Dept:           86
22                                    Judge:          Hon. Mitchell L. Beckloff

23                                    Action Filed:   February 1, 2024
                                      Trial Date:     N/A
24

25

26

27

28

**<u>EX PARTE APPLICATION FOR (1) A TEMPORARY RESTRAINING ORDER AND</u>**

**<u>(2) AN ORDER TO SHOW CAUSE REGARDING PRELIMINARY INJUNCTION</u>**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

 **PLEASE TAKE NOTICE THAT** pursuant to California Rules of Court, rules 3.1200 *et seq.* and Business & Professions Code, section 16600 and 16600.5, that Plaintiff Michael Z. Hermalyn in the above-entitled action will and hereby does apply *ex parte* for a temporary restraining order and order to show cause regarding a preliminary injunction as set forth below, on the grounds that Defendant DraftKings, Inc. is violating California law and causing immediate and irreparable harm to Plaintiff Hermalyn by interfering with Plaintiff Hermalyn's new lawful employment with Plaintiff FVP, LLC ("Fanatics VIP") and by enforcing void restrictive noncompete and nonsolicit covenants with forum selection and choice of law provisions meant to escape California's statutory regime voiding such contracts.  (Bus. & Prof. Code, §§ 16600, 16600.5; *Application Grp., Inc. v. Hunter Grp., Inc.* (1998) 61 Cal.App.4th 881, 902.)

 Plaintiff Hermalyn is and will continue to be immediately and irreparably harmed professionally and in his ability to engage in his new employment if the relief requested herein is not granted.  (Hermalyn Decl. ¶¶ 19-23.)  And while the need for immediate relief is great, given the black-letter California law mandating that these covenants are unenforceable, the showing of balance of harms is a less salient factor in granting in relief in this case.  (*Butt v. California* (1992) 4 Cal.4th 668, 678 ["The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction."].)  Plaintiff Hermalyn has a "reasonable probability of success on the merits" and can show that he "would suffer more harm in the meantime if an injunction were denied than [DraftKings] would suffer if it were granted," which "fully justif[y]" a grant of injunctive relief here.  (*Id.* at 693-694.)

 Due to DraftKings' litigation conduct, it has received almost the amount of notice of Mr. Hermalyn's request for relief as it would have under normal noticed motion procedures.  But because DraftKings has *twice* improperly removed this action to federal court to evade this Court's jurisdiction after receiving prior notice of an *ex parte* application and the complaint seeking

largely the same relief, Plaintiff Hermalyn has been unable to be heard on an *ex parte* basis prior to this application.  Immediate relief is warranted to halt DraftKings' continued violation of California law and harm to Plaintiff Hermalyn, which has indeed only increased since Plaintiff Hermalyn first sought relief.

Therefore, the order Plaintiff Hermalyn will and hereby does apply *ex parte* to the Court to enter is as follows:

1. A temporary restraining order, pending a hearing on the order to show cause, providing that DraftKings and its officers, agents, servants, employees, representatives, and all persons acting in concert with them, are restrained and enjoined from engaging in, committing, or performing, directly or indirectly, any and all of the following acts:

   a. attempting to enforce a contract between you and Plaintiff Hermalyn that is void under the Business & Professions Code, sections 16600, 16600.1, and 16600.5, regardless of whether the contract was signed and the employment was maintained outside of California, in accordance with section 16600.5, subdivision (b); and

   b. interfering with, intimidating, harassing, oppressing, attempting to disrupt or terminate, or otherwise threatening Plaintiff Hermalyn and his employment relationship with Plaintiff FVP, LLC ("Fanatics VIP"), including, without limitation, to any attempt to harm Plaintiff Hermalyn's existing or prospective customer relationships.

2. An order to show cause why a preliminary injunction should not be ordered pending trial in this case as follows:

   a. attempting to enforce a contract between you and Plaintiff Hermalyn that is void under the Business & Professions Code, sections 16600, 16600.1, and 16600.5, regardless of whether the contract was signed and the employment was maintained outside of California, in accordance with section 16600.5, subdivision (b); and

b.   interfering with, intimidating, harassing, oppressing, attempting to disrupt or terminate, or otherwise threatening Plaintiff Hermalyn and his employment relationship with Plaintiff FVP, LLC ("Fanatics VIP"), including, without limitation, to any attempt to harm Plaintiff Hermalyn's existing or prospective customer relationships.

This *ex parte* application is based on this application itself; the attached memorandum of points and authorities in support thereof; the concurrently filed declarations of Anne K. Conley and Michael Z. Hermalyn; the concurrently filed request for judicial notice; all papers and pleadings on file in this action; and such further evidence and argument as may be presented to the Court.

The hearing for this *ex parte* application will take place on February 14, 2024, at 8:30 a.m., or as soon thereafter as the matter can be heard, in Department 86 of the above-entitled court, located at 111 North Hill Street, Los Angeles, CA 90012, before the Honorable Mitchell L. Beckloff.

Pursuant to Rules 3.1203 and 3.1204(a)(1) of the California Rules of Court, Plaintiff Hermalyn gave all parties notice of this *ex parte* application.  On February 13, 2024, at 9:17 a.m., my colleague Anne K. Conley notified counsel for DraftKings and all other parties by e-mail that this *ex parte* application would be presented to this Court on February 14, 2024, at 8:30 a.m., or as soon thereafter as the matter can be heard, in Department 86 of the above-entitled court.  (Conley Decl. ¶ 2.)  As of the time of this filing, counsel for DraftKings has not stated whether they would oppose this application.  (*Id.* ¶ 3.)

Pursuant to Rule 3.1202(a) of the California Rules of Court, Plaintiff states that the following contact information for DraftKings counsel is known to him:

GIBSON, DUNN & CRUTCHER LLP

JAMES P. FOGELMAN, SBN 161584

jfogelman@gibsondunn.com

ALAYNA MONROE, SBN 329061

-4-

amonroe@gibsondunn.com

2029 Century Park East, Ste. 4000

Los Angeles, CA 90067

Telephone: 310.552.8500

Facsimile: 310.551.8741

KATHERINE V.A. SMITH, SBN 247866

ksmith@gibsondunn.com

333 South Grand Avenue

Los Angeles, CA 90071

Tel.: 213.229.7000

Fac.: 213.229.7520

Pursuant to Rule 3.1202(a) of the California Rules of Court, Plaintiff states that the following contact information for co-Plaintiff FVP, LLC's counsel is known to him:

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Michael B. Carlinsky (*pro hac vice forthcoming*)

michaelcarlinsky@quinnemanuel.com

51 Madison Ave, 22nd Floor

New York, New York 10010

Telephone:     (212) 849-7000

Facsimile:     (212) 849-7100

David C. Armillei (SBN 284267)

davidarmillei@quinnemanuel.com

865 South Figueroa Street, 10th Floor

Los Angeles, California 90017-2543

Telephone:     (213) 443-3000

Facsimile:     (213) 443-3100

1        Pursuant to Rules 3.1150(b) of the California Rules of Court, Plaintiff requests that the

2 court file be made available to the Judge hearing this application.

3        Pursuant to Rules 3.1150(e) and 3.1202(b) of the California Rules of Court, Plaintiff

4 Hermalyn informs the Court that he previously sought *ex parte* relief from this Court on

5 substantially similar requests for relief, but was prevented from being heard by the Court due to

6 DraftKings' removal to federal court.[1]

7        No Court has ruled on the relief requested or the substance of this application.

8

9 DATED:  February 13, 2024             MUNGER, TOLLES & OLSON LLP

10

11                By: _____

12                     BRAD D. BRIAN

Attorneys for Plaintiff

13                     MICHAEL Z. HERMALYN

14

15

16

17

18

19

20

21

22

23

24

---

[1] Plaintiff Hermalyn filed an *ex parte* application on Monday February 5, 2024, with the hearing
25 noticed on Wednesday, February 7, due to the filing time after the federal court remand (after
10:00 a.m.).  (Conley Decl. ¶ 4.)  That same night, and before Plaintiff Hermalyn could be heard,
26 DraftKings removed the case to federal court.  (*Id.*)  Plaintiff Hermalyn also served DraftKings
with *ex parte* papers on Thursday, February 1, after filing his complaint, but those papers were not
27 accepted by the Court clerk for being filed after 10:00 a.m.; that same day, DraftKings removed
the case to federal court, depriving the Court of jurisdiction regardless. (*Id.*)
28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................11

I.     INTRODUCTION AND SUMMARY OF ARGUMENT..................................................11

II.    STATEMENT OF FACTS...............................................................................................13

    A.    Mr. Hermalyn Moved to California to Accept Employment with Fanatics VIP, a California Company ...................................................................................13

    B.    Mr. Hermalyn's Former Employer, DraftKings, Required Mr. Hermalyn to Sign Agreements that Are Illegal Under California Law..........................................14

    C.    Mr. Hermalyn Files Suit to Obtain Relief From the Unlawful Covenants .............15

    D.    Proceedings in Federal District Court in Massachusetts .........................................16

III.   ARGUMENT ...................................................................................................................17

    A.    Legal Standard for a Temporary Restraining Order................................................17

    B.    Mr. Hermalyn Is Highly Likely to Succeed on the Merits Because DraftKings' Restrictive Covenants Are Void Under California Law .....................18

        1.    California Law Prohibits the Restrictive Covenants at Issue Here .............18

        2.    California Law Applies to Mr. Hermalyn and Protects Him From DraftKings' Post-Employment Restrictive Covenants ...............................20

    C.    Mr. Hermalyn Is Suffering Immediate and Irreparable Harm.................................23

    D.    The Court Should Exercise Its Discretion to Waive the Bond.................................25

IV.   CONCLUSION ................................................................................................................25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**FEDERAL CASES**

4

*Harris v. Bankers Life & Cas. Co.*,
  425 F.3d 689 (9th Cir. 2005)...................................................................................................15

5

*Johnson v. Columbia Props. Anchorage, LP*,
  437 F.3d 894 (9th Cir. 2006)............................................................................................15, 16

6

7

*Labrys Fund, L.P. v. Anvia Holdings Corp.*,
  No. CV 19-12477-PBS, 2020 WL 1984227 (D. Mass. Apr. 27, 2020) ...................................24

8

*Latona v. Aetna U.S. Healthcare Inc.*
  (C.D. Cal. 1999) 82 F.Supp.2d 1089......................................................................................20

9

10

*Raulinaitis v. Ventura Cnty. Sheriffs Dept.*
  (C.D. Cal. Sept. 30, 2014, No. CV 13-2605-MAN) 2014 WL 12685924 ................................20

11

12

*Roadrunner Intermodal Servs., LLC v. T.G.S. Transportation, Inc.*
  (E.D. Cal., Mar. 28, 2019, No. 1:17-cv-01207-DAD-BAM) 2019 WL 1400093....................19

13

14

**STATE CASES**

15

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*
  (2018) 28 Cal.App.5th 923..............................................................................................18, 19

16

17

*Application Group, Inc. v. Hunter Group, Inc.*
  (1998) 61 Cal.App.4th 881........................................................................................12, 19, 20

18

*Chico Feminist Women's Health Center v. Scully*
  (1989) 208 Cal.App.3d 230......................................................................................................17

19

20

*Church of Christ in Hollywood v. Super. Ct.*
  (2002) 99 Cal.App.4th 1244...............................................................................................17, 18

21

*Common Cause v. Bd. of Supervisors*
  (1989) 49 Cal.3d 432.........................................................................................................18, 23

22

23

*Cypress Semiconductor Corp. v. Maxm Integrated Prods., Inc.*
  (2015) 236 Cal.App.4th 243....................................................................................................21

24

*Dowell v. Biosense Webster, Inc.*
  (2009) 179 Cal.App.4th 564....................................................................................................19

25

26

*Edwards v. Arthur Andersen LLP*
  (2008) 44 Cal.4th 937................................................................................................19, 21, 22

27

28

*G Cos. Management, LLC v. LREP Ariz., LLC*
    (2023) 808 Cal.App.5th 342.................................................................12, 13, 14

*G Cos. Management, LLC v. LREP Ariz., LLC*
    (2023) 88 Cal.App.5th 342............................................................................19

*Intershop Communications v. Super. Ct.*
    (2002) 104 Cal.App.4th 191..........................................................................19

*King v. Meese*
    (1987) 43 Cal.3d 1217............................................................................18, 23

*Millennium Corp. Solutions v. Peckinpaugh*
    (2005) 126 Cal.App.4th 352..........................................................................25

*Oxford Glob. Res., LLC v. Hernandez,*
    480 Mass. 462, 106 N.E.3d 556 (2018).........................................................24

*Right Site Coalition v. L.A. Unified School Dist.*
    (2008) 160 Cal.App.4th 336..........................................................................23

*Verdugo v. Alliantgroup, L.P.*
    (2015) 237 Cal.App.4th 141..........................................................................19

*Weber, Lipshie & Co. v. Christian*
    (1997) 52 Cal.App.4th 645............................................................................19

**STATE STATUTES**

Bus. & Prof. Code, 16600.5, subd. (a) ...................................................................21

Bus. & Prof. Code, 16600.5, subd. (e)(1)...............................................................12

Bus. & Prof. Code, § 16600 ..................................................................... 11, passim

Bus. & Prof. Code, § 16600, subd. (a) ...................................................................18

Bus. & Prof. Code, § 16600, subd. (b)(1) ........................................................18, 22

Bus. & Prof. Code, § 16600.1 ................................................................................15

Bus. & Prof. Code, § 16600.5 ....................................................................11, 15, 23

Bus. & Prof. Code, § 16600.5, subd. (a) ................................................................24

Bus. & Prof. Code, § 16600.5, subd. (e)(1) ...........................................................22

Bus. & Prof. Code, § 17200 ...................................................................................15

Civ. Code, § 3513 ..................................................................................................19

Code Civ. Proc., § 529, subd. (a) ......................................................................25

**LEGISLATIVE MATERIALS**

Sen Bill No. 699 (2023–2024 Reg. Sess.) § 1(d) ..........................................22, 23

Sen. Bill No. 699 (2023–2024 Reg. Sess.) § 1(e), (f) .........................................21

**OTHER AUTHORITIES**

Katherine Smith, et al., Gibson, Dunn, & Crutcher, "California Broadens
   Restrictions on Employee Non-Competes," ..................................................21

September 20, 2023, available at https://www.gibsondunn.com/california-broadens-
   restrictions-on-employee-non-competes/ ......................................................21

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiff Michael Hermalyn, a California resident, applies *ex parte* for a temporary restraining order and order to show cause as to why a preliminary injunction should not issue, to bar his former employer, Defendant DraftKings, Inc., from enforcing restrictive non-compete and non-solicit covenants that are unlawful under a very recent California law that applies *even to contracts entered into outside of California*.  (See Bus. & Prof. Code, §§ 16600, 16600.5.)  Through DraftKings' two successive middle-of-the-night removals to federal district court—both of which were summarily rejected by the district court—DraftKings has attempted to evade this Court's jurisdiction and Mr. Hermalyn's attempts to seek *ex parte* relief.  DraftKings did so in order to escape controlling new California law that voids the restrictive covenants at issue, initiate its own second-filed action in Massachusetts federal court, and secure a TRO in that jurisdiction in contravention of the policy set forth by the California Legislature.  Mr. Hermalyn now seeks the relief to which he is entitled under California law.

The need for quick judicial intervention is great.  While Mr. Hermalyn is technically able to work in the Los Angeles office of his new California-based employer, Fanatics VIP, a federal district court in Massachusetts has issued a far-reaching TRO preventing Mr. Hermalyn from doing any business with current or prospective clients and partners of DraftKings—a restriction that severely handicaps Mr. Hermalyn's ability to do his job, and threatens irreparable harm to his professional reputation upon which his career has been built.  The Massachusetts federal court reached this conclusion on the basis that California had little connection to this dispute, leading the court to apply Massachusetts law which does not share California's public policy against non-competition agreements.  Mr. Hermalyn now seeks a ruling that the California law applies because of its significant interest in the dispute and that these covenants are void.  Such a determination will allow Mr. Hermalyn the freedom to work in California, exactly as the Legislature intended, and it will be useful to the District of Massachusetts court to have a clear statement of California policy interests in unfettered employment when it considers DraftKings' motion for a preliminary injunction on April 2.  A ruling from a California court validating the significance of California

public policy on non-compete and non-solicit agreements will assist the district of Massachusetts in assessing California's interest in this matter and in reaching an equitable decision on provisional relief pending trial.  This request is consistent with the California Legislature's view that California "can influence courts outside of [its] jurisdiction by strengthening [its] long-standing public policy" against restrictive employee covenants, even when it "cannot dictate" to those courts.[2]   (Request for Judicial Notice ("RJN") Ex. C.)

A temporary restraining order against DraftKings will also prevent DraftKings from interfering with Mr. Hermalyn's existing client and partner relationships, which are in jeopardy absent interim relief.  DraftKings has every incentive to interfere with Mr. Hermalyn's existing relationships, and its baseless accusations against Mr. Hermalyn in its Massachusetts lawsuit show how far DraftKings is willing to go to thwart his success at Fanatics VIP.

Under significant new laws that went into effect on January 1, 2024, the California Legislature has specifically afforded Mr. Hermalyn a private right of action for injunctive relief to prohibit DraftKings from enforcing or attempting to enforce restrictive covenants that are illegal under California law.  (See Bus. & Prof. Code, 16600.5, subd. (e)(1).)  Mr. Hermalyn is exercising this right in this action.

Allowing DraftKings to violate California law through enforcing its illegal contracts against Mr. Hermalyn, a California resident who moved here specifically for California-based employment, would frustrate the strong public policy the California Legislature has codified in section 16600 *et seq.*  It also would violate Mr. Hermalyn's unwaivable rights, and courts have repeatedly refused to enforce choice of law and forum provisions for exactly those reasons.  (See *Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 902; *G Cos. Management, LLC v. LREP Ariz., LLC* (2023) 808 Cal.App.5th 342, 350-351.)  Absent intervention by the Court, employers in future actions will use the same tactics attempted by DraftKings—a foreign choice-of-law provision, a second-filed action in another forum, and bogus

---

[2] Mr. Hermalyn seeks relief that will enable him to ask the Massachusetts district court to revise the scope of its TRO against Mr. Hermalyn, with the benefit of this Court's ruling on the interests of California, when it considers DraftKings' motion for a preliminary injunction on April 2.

removals to stall a California state-court action—to frustrate California's new protections for its residents and effectively undermine its laws.  To avoid this result, and because Mr. Hermalyn can show a likelihood of success on the merits and the balance of harms weighs in his favor, a Temporary Restraining Order should issue.

## II.    STATEMENT OF FACTS

### A.    Mr. Hermalyn Moved to California to Accept Employment with Fanatics VIP, a California Company

On February 1, 2024, Mr. Hermalyn accepted an offer from Fanatics VIP, which is a limited liability company formed in California, with headquarters in Los Angeles, California, to join as President of Fanatics VIP and the Head of Fanatics' Los Angeles office.  (Hermalyn Decl. ¶ 3.)  Fanatics VIP is a California-based affiliate of the global digital sports platform Fanatics Holdings, Inc. (together with Fanatics VIP, "Fanatics").  Mr. Hermalyn's substantial experience will facilitate the expansion of its preexisting California operations and provide additional leadership at the senior level on the West Coast.  (See *id.* ¶ 6.)

Mr. Hermalyn's position with Fanatics VIP requires that he live and work in Los Angeles, where Fanatics already employes approximately 80 people.  (*Id.* ¶ 5.)  Mr. Hermalyn has moved to California for this employment opportunity.  (*Id.* ¶¶ 2, 5.)  He has leased an apartment in California, and he and his family are planning to move into a home when his wife and children join him in California after the conclusion of the academic school year this spring.  (*Id.* ¶ 2.)  He has taken and passed the California driver's exam, obtaining a California driver's license.  (*Ibid.*)  He has purchased a car in California and has registered to vote in California.  (*Ibid.*)  His wife and children are also joining him in California following the completion of the current academic school year.  (*Ibid.*)  He and his wife have taken affirmative steps to enroll their daughters in schools and camps in Los Angeles for the upcoming summer and school year.  (*Ibid.*)

Before resigning from DraftKings and accepting his new position with Fanatics VIP, Mr. Hermalyn took steps to ensure he was no longer in possession of any of his former employer's property or confidential information.  (*Id.* ¶ 11.)  He turned over DraftKings-issued devices to his counsel.  (*Ibid.*)  He worked with his counsel to ensure that DraftKings-issued documents and

1  information were no longer on his personal accounts and devices.  (*Ibid.*)  And he even sent his

2  personal phone to his counsel and bought a new phone, to ensure that it did not contain any

3  DraftKings information.  (*Ibid.*)  He confirmed to DraftKings in his resignation notice steps he had

4  taken to ensure that he was not in possession of any confidential or proprietary information.

5  (*Ibid.*)

6      **B.   Mr. Hermalyn's Former Employer, DraftKings, Required Mr. Hermalyn to Sign Agreements that Are Illegal Under California Law**

7

8          Before joining Fanatics VIP in California, Mr. Hermalyn worked for DraftKings, from

9  September 2020 to January 2024.  (*Id.* ¶¶ 8, 10.)  His internal title was vice-president.  (*Id.* ¶ 8.)

10  DraftKings is a daily fantasy sports contest and sports betting company that operates throughout

11  the United States (including in California, where it is registered to do business as an out-of-state

12  corporation) and in at least six other countries.

13          Before his move to Los Angeles, and during his employment with DraftKings,

14  Mr. Hermalyn was a New Jersey resident who worked out of DraftKings' New York City office

15  when he was not working remotely.  (*Id.* ¶ 9.)  Although he never resided in Massachusetts, was

16  never employed in Massachusetts, and never worked out of DraftKings' Massachusetts office,

17  DraftKings demanded that Mr. Hermalyn—as a condition of employment—execute multiple

18  Restricted Stock Unit Grant Notice and Non-Competition Covenants, as well as a Nonsolicitation,

19  Nondisclosure & Assignment of Inventions Agreement (collectively, the "Agreements").  (*Id.*

20  ¶¶ 12–14 & Exs. A & B thereto.)

21          The Agreements purport to severely curtail Mr. Hermalyn's employee rights and mobility in

22  several respects:

23      • First, the Agreements purport to prohibit Mr. Hermalyn from providing services that "relate to any aspect" of DraftKings' far-reaching business (which purports to include fantasy sports, broadcasting, gaming, marketplace, media, and any other "incidentally related products and services") to any broadly-defined "Competing Business" for "twelve (12) months" following his departure from DraftKings.  (*Id.*, Ex. B § (a); see also *id.* Ex. B §§ (a)(iv), (vii), (x), (xi).)

24

25

26

27      • Second, the Agreements purport to prevent Mr. Hermalyn from soliciting any of DraftKings' "customers, clients, vendors or partners" for a year following his departure from DraftKings.  (*Id.*, Ex. A (Addendum A ¶ 2).)

28

- Third, the Agreements purport to forbid Mr. Hermalyn from soliciting or hiring any of DraftKings' employees or contractors for a year following his departure from DraftKings. (*Id.*, Ex. A (Addendum A ¶ 3).)

- Fourth, the Agreements state that "the internal substantive laws of Massachusetts, without regard to the doctrine of conflicts of law," will apply to any dispute between Mr. Hermalyn and DraftKings arising under the Agreements. (*Id.*, Ex. A (Addendum A ¶ 9); see also *id.*, Ex. B § (f).)

- Fifth, the Agreements purport to require Mr. Hermalyn to litigate any dispute with DraftKings in Massachusetts state or federal court regardless of the inconvenience or impropriety of those venues. (*Id.*, Ex. A (Addendum A ¶ 9; see also *id.*, Ex. B § (f).)

These sweeping, overbroad restrictions have no geographic limitation at all; instead, they purport to extend to "any place within the United States or anywhere else in the world." (*Id.*, Ex. B § (a)(vii).)  Nor are they narrowly tailored to protect DraftKings' trade secrets.  (See *id.*, Ex. B § (d).)  The purpose of these provisions is unambiguous and absolute:  DraftKings hopes to prevent Mr. Hermalyn from pursuing his chosen work in any fashion for one year after his departure from DraftKings.

### C.   Mr. Hermalyn Files Suit to Obtain Relief from the Unlawful Covenants

To protect his rights, on Thursday, February 1, 2024, Mr. Hermalyn, together with Fanatics VIP, filed this action for declaratory and injunctive relief, as well as for violation of California Business & Professions Code Sections 16600, 16600.1, 16600.5, and 17200.[3]  (Conley Decl. ¶ 4.)  Shortly before midnight that same day, DraftKings removed the case to federal court, even though no basis for federal jurisdiction appeared on the face of the pleadings.[4]  (*Id.*)  Plaintiffs immediately sought relief from the federal court by filing a motion to remand the case to this Court and an *ex parte* application to have the motion to remand heard as soon as possible.  (*Id.*)

---

[3] Plaintiff Hermalyn also served DraftKings with *ex parte* papers on Thursday, February 1, after filing his complaint, but those papers were not accepted by the Court clerk for being filed after 10:00 a.m.  DraftKings removed the case to federal court, depriving the Court of jurisdiction. (Conley Decl. ¶ 4.)

[4] See *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) (removability determined by face of pleading); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (citizenship of LLC determined by its members).

On Monday, February 5, the federal court remanded the case, finding removal improper, and set a briefing schedule on fees for the improper removal.  (*Id.*)

Immediately upon remand, Mr. Hermalyn sought urgent and immediate relief from this Court, filing an *ex parte* application on February 5.  (*Id.*)  Mr. Hermalyn provided notice and served DraftKings with that *ex parte* application the evening of February 5th.[5]  (*Id.*)  Knowing that it faced clear California law invalidating these contracts and prohibiting actions seeking to enforce them, DraftKings *again* removed the case to federal court.  Following another round of emergency briefing on remand, the federal court again summarily rejected DraftKings' second removal, and set a schedule for briefing fees and costs associated with the improper removal.  (*Id.*)  Notice of this remand has be filed in this Court and served on all parties.  (*Id.*)

### D.   Proceedings in Federal District Court in Massachusetts

The same day it effected a second improper removal, DraftKings sued Mr. Hermalyn in the U.S. District Court for the District of Massachusetts.  (*Id.*)  DraftKings simultaneously sought from the district court a TRO to enforce its restrictive covenants against Mr. Hermalyn.  (*Id.*)

The district court declined to enjoin Mr. Hermalyn from working at Fanatics VIP, but based on its understanding of California's interest in the case—which it determined based on a TRO posture (with a cursory record and quick review) to be limited—the district court adopted the non-solicitation portions of DraftKings' proposed temporary restraining order.  (*Id.*, Ex. B.)  In doing so, the district court's order runs counter to California's laws and public policy, as it can be read very broadly to restrain Mr. Hermalyn from "*transacting business*" or "attempting to . . . *transact business*" with "any of DraftKings' customers, clients, vendors or partners, or with any of DraftKings' prospective customers, clients, vendors or partners about which [he] learned confidential information or . . . had some involvement or knowledge" relating to DraftKings' business, including "any aspect of the Business of the Company (as defined in the Noncompetition Covenant)."  (*Id.*, Ex. A.)  The term "transacting business" is undefined and vague; read broadly, it

---

[5] Because the remand order from the federal court came after 10:00 a.m. on Monday, February 5, the earliest date for which Mr. Hermalyn could notice his application  was Wednesday, February 7.  (*Id.*)

could be construed as a noncompete, preventing Mr. Hermalyn from working or interacting with

*any* DraftKings' customers, clients, vendors, or partners in his new role at Fanatics VIP—even if

Mr. Hermalyn took no part in soliciting or bringing them over to Fanatics.  It could also be read to

prevent him from working with someone who was *already* a Fanatics customer, client, vendor, or

partner when Mr. Hermalyn began working at Fanatics VIP if that customer, client, vendor, or

partner also happens to be associated with DraftKings (a real danger because client relationships

as between DraftKings and other service providers, like Fanatics, are not exclusive).  Finally,

because the order also restrains Mr. Hermalyn from soliciting or transacting business with

DraftKings' "*prospective* customers, clients, vendors or partners" (essentially everyone in the

industry that has ever been on DraftKings' radar), it could be read as prohibiting Mr. Hermalyn

from engaging with persons or entities with whom DraftKings has nothing to do or from whom

DraftKings has failed to secure or even seek business to date.

    To reach this result, the district court enforced a Massachusetts choice-of-law provision,

applied Massachusetts law to the restrictive covenants, and concluded that Massachusetts law

enforces such covenants as a matter of public policy.  (*Id.*, Ex. B at 54-55.)  In deciding whether to

enforce the choice-of-law provision in the face of California public policy against non-compete

agreements, the district court analyzed whether California has a "materially greater interest than

[Massachusetts] in the determination of the particular issue . . . ."  (*Id.* at 54.)  Without the benefit

of a California court having weighed in on California's interest, the district court stated that

California has "little connection" to the dispute because Mr. Hermalyn had lived in California for

only one week.  (*Id.* at 55.)  It did not have before it the California interest in encouraging

individuals like Mr. Hermalyn to move to California or the interest of California entities such as

Fanatics VIP to employee the best individuals.  The district court set a preliminary injunction

hearing for April 2.  (*Id.*)

## III.    ARGUMENT

### A.    Legal Standard for a Temporary Restraining Order

    The Court may issue a temporary restraining order to stop the violation of a plaintiff's

rights pending a future hearing on an injunction.  (See *Chico Feminist Women's Health Center v.*

*Scully* (1989) 208 Cal.App.3d 230, 236–237.)  As with preliminary injunctions, on a TRO posture "courts should evaluate two interrelated factors when deciding whether or not to issue a restraining order." (*Church of Christ in Hollywood v. Super. Ct.* (2002) 99 Cal.App.4th 1244, 1251, cleaned up.)  The first factor is "the likelihood that the plaintiff will prevail on the merits at trial." (*Ibid.*)

In evaluating a TRO application, "[t]he trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support a restraining order." (*Church of Christ*, *supra*, 99 Cal.App.4th at pp. 1251–1252.)  "[T]he more likely it is that plaintiffs will ultimately prevail, the less severe must be the harm that they allege will occur if the injunction does not issue." (*King v. Meese* (1987) 43 Cal.3d 1217, 1227.)  "[I]f the party seeking the injunction can make a sufficiently strong showing of likelihood of success on the merits, the trial court has discretion to issue the injunction *notwithstanding that party's inability to show that the balance of harms tips in his favor*." (*Common Cause v. Bd. of Supervisors* (1989) 49 Cal.3d 432, 447 [emphasis added].) In other words, "if it appears fairly clear that the plaintiff will prevail on the merits, a trial court might legitimately decide that an injunction should issue even though the plaintiff is unable to prevail in a balancing of the probable harms." (*IT Corp.*, *supra*, 35 Cal.3d at pp. 72-73.)  Interim relief "may be affirmed if either the balance-of-hardships analysis or plaintiffs' likelihood of success considerations would alone support the ruling." (*King*, *supra*, 43 Cal.3d at p. 1227.)

**B.**   **Mr. Hermalyn Is Highly Likely to Succeed on the Merits Because DraftKings' Restrictive Covenants Are Void Under California Law**

**1.**   **California Law Prohibits the Restrictive Covenants at Issue Here**

Under black-letter California law, "*every* contract by which anyone is retrained from engaging in a lawful profession, trade, or business *of any kind* is to that extent *void*." (Bus. & Prof. Code, § 16600, subd. (a), emphasis added.)  California "void[s] the application of any noncompete agreement in an employment context, or any noncompete in an employment contract, no matter how narrowly tailored," *id.* § 16600, subd. (b)(1), as the state has a "strong public policy of protecting the right of its citizens to pursue any lawful employment and enterprise of their choice." (*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.* (2018) 28 Cal.App.5th 923, 935.)

California courts prohibit exactly the kind of non-compete, client non-solicit, and employee non-solicit agreements that DraftKings executed with Mr. Hermalyn.  (See, e.g., *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 955 (*Edwards*) [voiding non-competition agreement]; *AMN Healthcare*, *supra*, 28 Cal.App.5th at p. 936 [voiding employee non-solicitation agreement]; *Dowell v. Biosense Webster, Inc.* (2009) 179 Cal.App.4th 564, 575 [voiding customer non-solicitation agreement].)  The right to employee mobility recognized in California is so strong that it cannot be waived by a party via private agreement.  (See Civ. Code, § 3513 [any "law established for a public reason cannot be contravened by a private agreement"]; *Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 659 [parties cannot waive benefits of Section 16600 by private agreement].)

California courts decline to enforce foreign state choice-of-law and forum selection clauses in restrictive covenant cases where those provisions would deprive California residents of their substantive rights under California law.  (See *Intershop Communications v. Super. Ct.* (2002) 104 Cal.App.4th 191, 200 ["[A] forum selection clause will not be enforced if to do so would bring about a result contrary to the public policy of this state."]; *G Cos. Management, LLC v. LREP Ariz., LLC* (2023) 88 Cal.App.5th 342, 350–351 [refusing to enforce forum selection clause where unwaivable rights of California resident and employee might be diminished]; *Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 154 [same]; see also *Roadrunner Intermodal Servs., LLC v. T.G.S. Transportation, Inc.* (E.D. Cal., Mar. 28, 2019, No. 1:17-cv-01207-DAD-BAM) 2019 WL 1400093, at *6 [noting "long developing trend among California courts of finding that § 16600 represents a fundamental public policy interest in California that overrides contractual choice of law provisions, at least with respect to such restrictive covenants"].)

California courts hold that post-employment restrictive covenant provisions are illegal and unenforceable under California law, even where the employees at issue did not reside in California (but were employed by a California company), and the agreements at issue called for application of another state's law (rather than California law).  (See *Application Group, Inc.*, *supra*, 61 Cal.App.4th at p. 906.)

There can be no doubt that California's foundational principles—enshrined in statutes and

confirmed in decades of caselaw—stand starkly opposed to the restrictive covenants in

DraftKings' agreements with Mr. Hermalyn.  Nor can there be any legitimate dispute that

enforcing those provisions against a California resident and employee like Mr. Hermalyn would

frustrate California's strong public policy.  (*Application Group*, *supra*, 61 Cal.App.4th at p. 900

[holding section 16600 "reflects 'strong public policy' of the State of California"], citations

omitted; see also *Latona v. Aetna U.S. Healthcare Inc.* (C.D. Cal. 1999) 82 F.Supp.2d 1089, 1093

["[P]rotection against restraint of employment qualifies as a strong public policy in California."].)

"California courts have consistently declared this provision an expression of public policy to

ensure that every citizen shall retain the right to pursue any lawful employment and enterprise of

their choice."  (*Application Group*, *supra*, 61 Cal.App.4th at p. 900.)

### 2.  California Law Applies to Mr. Hermalyn and Protects Him from DraftKings' Post-Employment Restrictive Covenants

Mr. Hermalyn is a California resident.  He has started a position in the Los Angeles office

of his California employer, Fanatics VIP, moved across the country to commence this new

employment opportunity, established a primary domicile in and numerous connections to this

state, and evinced a strong intent to live hereafter in California.  (*See Raulinaitis v. Ventura Cnty.

Sheriffs Dept.* (C.D. Cal. Sept. 30, 2014, No. CV 13-2605-MAN) 2014 WL 12685924, at *11-16.)

Contrary to the statements of the district court in Massachusetts, it does not matter to this

analysis that Mr. Hermalyn only recently moved to this state.  The statutory language and

legislative history are clear that California's public policy protects not only long-term residents of

the state but also those, like Mr. Hermalyn, *who move to pursue employment opportunities in

California*.  (*Application Group*, *supra*, 61 Cal.App.4th at pp. 900-901 ["It follows that California

has a strong interest in protecting the freedom of movement of persons whom California-based

employers … wish to employ to provide services in California, regardless of the person's state of

residence or precise degree of involvement in California projects, and we see no reason why these

employees' interests should not be 'deemed paramount to the competitive business interests' of

out-of-state as well as in-state employers."].)

As DraftKings' own counsel confirmed in a recent client alert, even employees from

outside California may sue in California to obtain relief from restrictive covenants, including those signed outside California.[6]  The California Legislature has expressly declared its "interest in protecting the freedom of movement of persons whom California-based employers wish to employ" and accordingly has extended its protections to all employees seeking employment in California, including those who "signed the contractual restraint *while living outside of California and working for a non-California employer*."  (Sen. Bill No. 699 (2023–2024 Reg. Sess.) § 1(e), (f); Bus. & Prof. Code, § 16600.5, subd. (a), emphasis added.)  Because "[t]he exploitative practice of including noncompete agreements deprives workers of fair compensation, stifles innovation, and deters entrepreneurism," California law "ensures that *no employee* is faced with signing away their rights as a condition of employment."  (RJN at Ex. B.)  The recent amendments to California law "put[] an end to the use of non-compete agreements in California once and for all, giving employees the protection they deserve."  (RJN at Ex. D.)

No "narrow restraint" exception exists to the general rule voiding these restrictive covenants.  (See *Edwards*, *supra*, 44 Cal.4th at pp. 948–950.)  Nor is there an "inevitable disclosure doctrine" in California.  Courts hold that the inevitable disclosure doctrine "has been flatly rejected in this state as incompatible with the strong public policy in favor of employee mobility."  *Cypress Semiconductor Corp. v. Maxm Integrated Prods., Inc.* (2015) 236 Cal.App.4th 243, 264.  The doctrine "would contravene this policy by 'permit[ting] an employer to enjoin the former employee without proof of the employee's actual or threatened use of trade secrets based upon an inference (based in turn upon circumstantial evidence) that the employee inevitably will use his or her knowledge of those trade secrets in the new employment," resulting in "not merely an injunction against the use of trade secrets, but an injunction restricting employment."  (*Id.* at pp. 264-25.)  DraftKings' allegations of trade secret and confidential information misappropriation offer no escape hatch from the clear Legislative mandate voiding these restrictive covenants.

Indeed, California has materially extended its prohibition on post-employment restrictive

---

[6] Katherine Smith, et al., Gibson, Dunn, & Crutcher, "California Broadens Restrictions on Employee Non-Competes," September 20, 2023, available at https://www.gibsondunn.com/california-broadens-restrictions-on-employee-non-competes/.

covenants through two new laws, passed last year and effective as of January 1, 2024.  First, the Legislature explicitly codified the "broad" case law (including the *Edwards* decision itself) into California Business & Professions Code Section 16600.  (See Bus. & Prof. Code, § 16600, subd. (b)(1).)  And the California Legislature enacted California Business & Professions Code Sections 16600.5 and 16600.1.  These recent amendments explicitly recognize the "exceptional circumstances" involved when the right freely to pursue employment in California is at stake.  As the Legislature emphasized during their passage, "as the market for talent has become national and remote work has grown, California employers increasingly face the challenge of employers outside California attempting to prevent the hiring of former employees."  (Sen Bill No. 699 (2023–2024 Reg. Sess.) § 1(d).)  Because such anticompetitive conduct threatens to "stifle economic development" in California, limits its "firms' ability to hire," and "depress[es] innovation and growth," California's Legislature and courts "have been clear that California's public policy against restraint of trade law ***trumps other state laws*** when an employee seeks employment in California, ***even if the employee has signed the contractual restraint while living outside of California and working for a non-California employer***"—as happened here when Mr. Hermalyn was working for DraftKings in New Jersey and New York.  (*Id.* § 1(c), (e), emphasis added.)  According to the Legislature, the state's "interest in protecting the freedom of movement of persons whom California-based employers wish to employ to provide services in California, regardless of the person's state of residence," is so "strong" as to be "paramount to competitive business interests."  (*Id.* § 1(f).)

But Sections 16600.5 and 16600.1 do more than simply expand the already significant scope of California's employee mobility laws or reinforce the extraordinary circumstances implicated by their underlying policies.  These amendments also allow a "former employee" to "bring a private action to enforce this chapter ***for injunctive relief*** or the recovery of actual damages, or both," as Mr. Hermalyn has done through this litigation and in this request for a restraining order and preliminary injunction.  (Bus. & Prof. Code, § 16600.5, subd. (e)(1), emphasis added.)  "[A] former employer ***shall not*** attempt to enforce a contract that is void under this chapter regardless of whether the contract was signed and the employment was maintained outside of California."

(*Id.* § 16600.5, subd. (b).)  "An employer that … attempts to enforce a contract that is void under this chapter **commits a civil violation**."  (*Id.* § 16600.5, subd. (d).)  Indeed, Section 16600.5's legislative history makes plain that it is meant to "prohibit any employer from attempting to enforce a void contract, **including seeking enforcement in a non-California court**."  (RJN at Ex. A at AP1-2, emphasis added.)

In sum, the overwhelming weight of authority establishes that Mr. Hermalyn is likely to succeed on the merits of this case.  Under decades of case law, this alone entitles him to injunctive relief.  (See, e.g., *King*, *supra*, 43 Cal.3d at 1227; *Common Cause*, *supra*, 49 Cal.3d at 447; *Butt*, *supra*, 4 Cal.4th at 678; *Hunt*, *supra*, 21 Cal.4th at 999; *IT Corp.*, *supra*, 35 Cal.3d at pp. 72-73.)

## C.     Mr. Hermalyn Is Suffering Immediate and Irreparable Harm

Mr. Hermalyn is highly likely to prevail on the merits, which should be sufficient to justify the temporary restraining order.  (See, e.g., *King*, *supra*, 43 Cal.3d at 1227; *Common Cause*, *supra*, 49 Cal.3d at 447; *Butt*, *supra*, 4 Cal.4th at 678; *Hunt*, *supra*, 21 Cal.4th at 999; *IT Corp.*, *supra*, 35 Cal.3d at pp. 72-73.)  California courts hold that, where the moving party can show a very strong chance of success on the merits, injunctive relief may be appropriate regardless of whether the balance of hardships tips in that party's favor.  (*Common Cause*, *supra*, 49 Cal.3d at 447; *Right Site Coalition v. L.A. Unified School Dist.* (2008) 160 Cal.App.4th 336, 339.)

Nevertheless, the balance of harms favors the requested relief.  As Mr. Hermalyn explains in his declaration, because of the federal TRO temporarily preventing him from working with *any present or prospective* client or partner of DraftKings, every passing day deepens the injury to his professional reputation.  (Hermalyn Decl. ¶ 20.)  Nor can he fully perform his job duties as the head of Fanatics' VIP business, without the ability to access relationships that he personally forged while at DraftKings.  (*Id.* ¶¶ 20-21.)  A ruling from this Court that California has a significant interest in voiding non-compete agreements, *including agreements signed in another state,* would allow Mr. Hermalyn to seek appropriate relief from the District of Massachusetts, which stated that California's interest was minimal (*see* Conley Decl., Ex. B at 54-55.)

The Massachusetts federal court focused on California's specific connection to the individual parties in this case—noting on a TRO posture that California appeared to have "little

connection" because Mr. Hermalyn was such a recent resident—leading the court to conclude that

California likely did not have a "materially greater" interest in the case than Massachusetts, where

DraftKings is headquartered.  (Conley Decl., Ex. B at 34, 54.)  California's interest is not limited

to protecting long-standing residents of the state, but applies "*even if the employee has signed the*

*contractual restraint while living outside of California and working for a non-California*

*employer*."  (Bus. & Prof. Code, § 16600.5, subd. (a), emphasis added.)  As explained, the purpose

of this new law is to encourage employee mobility and attract employees and businesses to

California who are elsewhere shackled by unfair non-compete agreements—brand new residents,

like Mr. Hermalyn, who moved to the state for work are at the heartland of California's policy.

This is precisely the kind of policy interest that would be relevant to the district court in

Massachusetts.  *See, e.g.*, *Labrys Fund, L.P. v. Anvia Holdings Corp.*, No. CV 19-12477-PBS,

2020 WL 1984227, at *3 (D. Mass. Apr. 27, 2020) ("To determine which state has the greatest

interest in the determination of a particular issue, Massachusetts courts balance the interests or

policies of the states.").  Massachusetts, by contrast has "no comparable policy favoring open

competition and employee mobility"; instead "the common-law principles governing the

enforceability of noncompetition agreements are less categorical than the absolute prohibition

under California law." (*Oxford Glob. Res., LLC v. Hernandez*, 480 Mass. 462, 470, 106 N.E.3d

556, 565–66 (2018).)  Mr. Hermalyn submits that a ruling from this Court on the importance of

California public policy and its application to new residents would assist the district court in

Massachusetts in balancing these interests and fashioning an interim order that is appropriate

under the circumstances.  That is consistent with the California Legislature's view that California

"can influence courts outside of [its] jurisdiction by strengthening [its] long-standing public

policy" against restrictive covenants, even when it "cannot dictate" to those courts.  (RJN, Ex. C.)

An injunction preventing DraftKings from interfering with Mr. Hermalyn's clients and

relationships would also forestall further damage to his reputation.  Courts have granted relief

similar to what Mr. Hermalyn seeks here to restrain a former employer from making false

statements about a former employee during an employee mobility suit like this one.  (See, e.g.,

*Millennium Corp. Solutions v. Peckinpaugh* (2005) 126 Cal.App.4th 352, 356.)

1        As for the harm to DraftKings of interim relief, there is no harm in requiring DraftKings to

2   wait a few weeks until the Court can consider a preliminary injunction with full briefing,

3   particularly given that DraftKings' enforcement efforts violate black-letter California law as set

4   forth above.  And allowing Mr. Hermalyn to work with clients whom he knows from his prior

5   employment at DraftKings will have minimal impact on DraftKings' business pending a

6   preliminary injunction hearing, as DraftKings is dominant in this industry with many VIP

7   relationships.  (Herm Decl. ¶¶ 22-23.)  To the extent DraftKings raises trade secret concerns, Mr.

8   Hermalyn has set forth the steps he took when resigning to ensure there was no risk of trade secret

9   theft.  (*Id.* ¶ 11.)  And in any event, there is no exception to California's prohibition on non-

10  compete and non-solicitation agreements, as set forth above.

11        **D.**     **The Court Should Exercise Its Discretion to Waive the Bond**

12        The party seeking an injunction ordinarily must post a bond to pay the party enjoined

13  "such damages . . . as the party may sustain by reason of the injunction."  (Code Civ. Proc., § 529,

14  subd. (a).)  DraftKings will not be monetarily harmed by this TRO, so no bond is needed.

15  **IV.**     **CONCLUSION**

16        For the foregoing reasons, Mr. Hermalyn respectfully asks that the Court issue the

17  requested temporary restraining order and an order to show cause on a preliminary injunction.

18

19  DATED:  February 13, 2024                    MUNGER, TOLLES & OLSON LLP

20

21                                              By: _____

22                                                  BRAD D. BRIAN
                                                    Attorneys for Plaintiff
23                                                  MICHAEL Z. HERMALYN

24

25

26

27

28