## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DRAFTKINGS, INC.,

          *Plaintiff,*

    v.

MICHAEL Z. HERMALYN,

          *Defendant.*

Civil Action No. 1:24-cv-10299-JEK

**ORAL ARGUMENT SCHEDULED FOR APR. 2, 2024 (ECF NO. 43)**

---

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 2

    A.    The Parties' Dispute Arises Out of and Centers on Activity in California ............ 2

    B.    Hermalyn Has Sought the Protections of California Law Via an Action
Pending in California State Court, Which Was Filed First ..................................... 4

    C.    The California Action, Previously Stalled by DraftKings' Gamesmanship,
Is Now Proceeding in California State Court. .......................................................... 6

LEGAL STANDARD ........................................................................................................... 7

DISCUSSION ........................................................................................................................ 9

I.    THE COURT SHOULD DISMISS DRAFTKINGS' CLAIMS UNDER THE
DOCTRINE OF *FORUM NON CONVENIENS* .......................................................... 9

    A.    California Is an Adequate Alternative Forum .......................................................... 9

    B.    The Relevant Public and Private Interest Factors Decisively Weigh in
Favor of Dismissing This Action........................................................................... 10

        1.    The Public Interest Factors Strongly Favor a California Forum .............. 10

        2.    The Private Interest Factors Also Favor a California Forum ................... 16

II.    ALTERNATIVELY, THE COURT SHOULD STAY THIS CASE PENDING
RESOLUTION OF THE FIRST-FILED CALIFORNIA STATE COURT
ACTION ........................................................................................................................ 17

III.    CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alopexx, Inc. v. Xenothera*,
 2023 WL 3182095 (D. Mass. Apr. 28, 2023)...........................................................................9

*AMN Healthcare, Inc. v. Aya Healthcare Servs.*, Inc.,
 239 Cal. Rptr. 3d 577 (Cal. App. Ct. 2018)..................................................................10, 11

*Application Grp., Inc. v. Hunter Grp., Inc.*,
 61 Cal. App. 4th 881 (Cal. App. Ct. 1998)....................................................................11, 12

*Ascension Ins. Holdings, LLC v. Underwood*,
 2015 WL 356002 (Del. Ch. Jan. 28, 2015)..........................................................................15

*Atl. Marine Constr. Co. v. U.S. Dist. Ct.*,
 571 U.S. 49 (2013) ................................................................................................................9

*Aware, Inc. v. Ramirez-Mireles*,
 2001 WL 755822 (Mass. Super. Ct. Apr. 4, 2001)........................................................13, 14

*Big Bob's Flooring Outlet of Am., Inc. v. Elyachar*,
 566 F. Supp. 3d 89 (D. Mass. 2021)....................................................................................17

*Blakey v. Univ. of Toledo*,
 2004 WL 253251 (S.D. Ind. 2004).......................................................................................8

*Brice v. C.R. England, Inc.*,
 278 F. Supp. 2d 487 (E.D. Pa. 2003)....................................................................................8

*Calder v. Jones*,
 465 U.S. 783 (1984) ...........................................................................................................10

*Colo. R. Water Conservation Dist. v. United States*,
 424 U.S. 800 (1976) ........................................................................................................2, 17

*Currie v. Grp. Ins. Comm'n*,
 290 F.3d 1 (1st Cir. 2002).........................................................................................18, 19, 20

*Dart-Barnett Operating Co., LLC v. Esperada Tex.*, LP,
 2008 WL 4056783 (W.D. Mich. 2008) ...............................................................................8

*Digecor, Inc. v. E.Digital Corp.*,
 2009 WL 706888 (D. Utah Mar. 13, 2009)........................................................................15

*Dowell v. Biosense Webster, Inc.*,
   179 Cal. App. 4th 564 (Cal. App. Ct. 2009) ..............................................................11

*Edwards v. Arthur Andersen LLP*,
   44 Cal. 4th 937 (Cal. 2008) .......................................................................................11

*Focus Fin. Partners, LLC v. Holsopple*,
   250 A.3d 939 (Del. Ch. 2020) ....................................................................................13

*G. Cos. Mgmt., LLC v. LREP Ariz., LLC*,
   88 Cal. App. 5th 342 (Cal. App. Ct. 2023) ................................................................16

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947) ...........................................................................................8, 9, 16

*Imamura v. Gen. Elec. Co.*,
   957 F.3d 98 (1st Cir. 2020) .......................................................................................8, 9

*Instant Disposal Serv., Inc. v. Liberty Mut. Ins. Co.*,
   1993 WL 427135 (D. Mass. Oct. 1, 1993) .................................................................19

*Intershop Commc'ns v. Super. Ct.*,
   104 Cal. App. 4th 191 (Cal. App. Ct. 2002) ..............................................................16

*Iragorri v. Int'l Elevator, Inc.*,
   203 F.3d 8 (1st Cir. 2000) .................................................................................8, 9, 13

*Jimenez v. Rodriguez-Pagan*,
   597 F.3d 18 (1st Cir. 2010) ...................................................................................17, 19

*Leiva v. Dep't of Correction*,
   2021 WL 3493713 (D. Mass. Aug. 9, 2021) ..............................................................18

*Lifestyle Impact Ctrs., LLC v. E. Bay Health, LLC*,
   2013 WL 5564144 (S.D. Ohio Oct. 7, 2013) .............................................................15

*Medtronic, Inc. v. Walland*,
   2021 WL 4131657 (S.D.N.Y. Sept. 10, 2021) ...........................................................15

*Nat'l Pork Producers Council v. Ross*,
   598 U.S. 356 (2023) ...................................................................................................11

*Ott v. Kaiser-Georgetown Community Health Plan, Inc.*,
   689 F. Supp. 9 (D.D.C. 1988) ....................................................................................14

*Oxford Glob. Res., LLC v. Hernandez*,
  106 N.E.3d 556 (Mass. 2018) ......................................................................................... 13, 14

*Pactiv LLC v. Perez*,
  2020 WL 7123070 (N.D. Ill. Dec. 4, 2020) .......................................................................... 15

*Power Integrations, Inc. v De Lara*,
  2020 WL 1467406 (S.D. Cal. Mar. 26, 2020) ....................................................................... 12

*Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*,
  2019 WL 1400093 (E.D. Cal. Mar. 28, 2019) ....................................................................... 12

*Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.*,
  906 F.2d 45 (1st Cir. 1990) ....................................................................................................... 9

*Saenz v. Roe*,
  526 U.S. 489 (1999) ................................................................................................................ 11

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) .................................................................................................................. 7

*Taylor-Rush v. Multitech Corp.*,
  217 Cal. App. 3d 103 (Cal. App. Ct. 1990) ........................................................................... 10

*United Rentals, Inc. v. Pruett*,
  296 F. Supp. 2d 220 (D. Conn. 2003) .................................................................................... 13

*Van Cauwenberghe v. Biard*,
  486 U.S. 517 (1988) ........................................................................................................... 8, 13

*Velez v. Turco*,
  2021 WL 3516446 (D. Mass. Aug. 10, 2021) ........................................................................ 17

*Verdugo v. Alliantgroup, LP*,
  237 Cal. App. 4th 141 (Cal. App. Ct. 2015) .......................................................................... 16

## Statutes

Cal. Bus. & Prof. Code § 16600 ..................................................................................................... 10

Cal. Bus. & Prof. Code § 16600.5 .................................................................................................. 15

Cal. Bus. & Prof. Code § 16600.5 (a)-(b) ...................................................................................... 12

**Treatises**

Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3828 (4th ed.) ....................................................7

**Declarations**

Declaration of Stephen D. Riden in Support of Defendant's Motion to Dismiss or, in the Alternative, to Stay

Declaration of Michael Z. Hermalyn in Support of Defendant's Motion to Dismiss or, in the Alternative, to Stay

## INTRODUCTION

This case asks whether Defendant Michael Z. Hermalyn, a California resident working for a California employer, can freely exercise his job duties in California, as California law expressly provides, or whether restrictive covenants imposed by DraftKings, his out-of-state former employer, can reach into California and circumscribe his employment and competitive rights. The resolution of this question belongs in California, not Massachusetts. The events that have occurred since this Court's February 8, 2024 hearing on DraftKings' motion for a temporary restraining order have only confirmed that fact: Hermalyn has continued working for his California employer as the head of Fanatics' Los Angeles office, has spent the majority of his time in his California residence, and has undertaken substantial further steps to move the rest of his family permanently to California. The case that Hermalyn filed in California state court on February 1, 2024—prior to the instant case—to vindicate his express rights under California law to work for the employer of his choice free of illegal and anticompetitive restrictions is also once again proceeding before the state court (the "California Action"), after DraftKings' multiple, improper removal attempts were summarily rejected by a federal court in California.

Under these circumstances, this Court should dismiss this case under the doctrine of *forum non conveniens* in favor of the California Action. California has an exceptionally strong public interest—demonstrated by clear legislative enactments—in encouraging individuals like Hermalyn to relocate to California to accept employment without interference from noncompete and nonsolicitation covenants like those DraftKings is trying to enforce. California will invalidate such contracts even when signed outside of California, or with a non-California employer. In this Motion, Hermalyn is not asking this Court to go so far, but simply to recognize that California's courts are the proper forum to adjudicate the contours of Hermalyn's rights and the proper effect of DraftKings' previous agreements upon them. Massachusetts, a state where Hermalyn never

1

lived or worked, lacks any countervailing interests in this case of similar magnitude.  The *forum non conveniens* factors, which look to the competing interests of the fora in resolving the dispute at issue, thus weigh decisively in favor of California.  Should the Court decline to dismiss DraftKings' claims outright, Hermalyn respectfully requests that the Court stay this case pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), in deference to the first-filed California Action.  Doing so would conserve judicial resources, avoid potentially inconsistent rulings, and allow for the most comprehensive disposition of this dispute.

## BACKGROUND

### A.  The Parties' Dispute Arises Out of and Centers on Activity in California

Hermalyn has *never* lived or worked in the Commonwealth of Massachusetts at any time. Hermalyn's TRO Decl. ¶ 6 (Dkt. No. 36).  As this Court is aware, for three-and-a-half years prior to January 27, 2024, Hermalyn was a New Jersey resident who worked for DraftKings remotely from his home or, when in the office, in New York.  *Id.* ¶¶ 6, 22.  On that date, Hermalyn received an offer to work for FVP, LLC ("Fanatics VIP"), a California-based affiliate of Fanatics Holdings, Inc. (collectively "Fanatics").  *Id.* ¶¶ 3, 7.  The position requires living in California, as it involves serving as the head of Fanatics' 80-person Los Angeles office.  *Id.* ¶¶ 18, 20.  On January 28, 2024, Hermalyn decided he was likely to accept the opportunity to join Fanatics and flew to California and established his residency there.  *Id.* ¶¶ 7, 15.

During the February 8, 2024 TRO hearing, the Court remarked that California's interest did not appear "materially greater" than Massachusetts' interest at that time, as "there was no connection . . . other than the fact that Mr. Hermalyn moved there one week ago today."  TRO Hr'g Tr. 34:7-10 (Feb. 8, 2024) (Dkt. No. 47).  As discussed further below, California's interest is precisely in allowing individuals like Hermalyn to do what he did—to move there or take jobs with its employers and *immediately* to be free from restrictive contracts imposed by prior

2

employers, which California considers of "paramount" importance to its businesses.  But even focusing narrowly on Mr. Hermalyn, nearly a month and a half has passed since the TRO hearing, and Hermalyn's actions have continued to match his original intent to remain in California as a resident and employee.  From February 1, 2024, and since, he has performed work for his California employer and managed its Los Angeles-area offices.  In addition to all that he did before February 8,[1] Hermalyn has taken further steps to prepare for his family to join him in California.  For example, on March 7, his wife and children traveled to California, where his wife remains; during this period, Hermalyn and his wife engaged with a Los Angeles-area real estate broker and toured homes for potential purchase and elementary schools for their young daughters.  Hermalyn MTD Decl. ¶ 3.  From January 28, 2024, to the present, Hermalyn has spent the vast majority of his days in California.  *Id.* ¶ 2.

By contrast, Massachusetts' connections with this dispute are minimal.  In discovery, DraftKings ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ Riden Decl., <u>Ex. A</u> (Pl.'s 1st Am. Interrog. Resp. & Obj.), at 43-45.  DraftKings' showing is insubstantial and also questionable.  For example, DraftKings alleges ████████████████ ████████████████████████████████████████—which is demonstrably false. *Id.* at 45.  DraftKings also concedes that ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ *Id.* at 44.

---

[1]  By the February 8, 2024 hearing, Hermalyn had rented an apartment, obtained a driver's license, purchased a car, registered that car, registered to vote, and obtained appointments with a physician and a dentist all in California. Hermalyn TRO Decl. ¶ 10 (Dkt. No. 36).  He had started making plans for his family to join him there at the end of the school year, including contacting summer camps and joining various waitlists for his two daughters. *Id.* ¶ 9.

Virtually all of DraftKings' claims arise from alleged conduct by Hermalyn in *California*, not Massachusetts.  The purported theft of alleged trade secrets and confidential information that forms the basis of DraftKings' breach of the Confidentiality Agreement, DTSA, MUTSA, misappropriation, duty of loyalty, and conversion claims (Counts I, IV, V, VI, VII, and VIII) allegedly occurred in California and New Jersey.  Compl. ¶¶ 112, 131, 145, 157, 167, 170-71 (Dkt. No. 1).  The purported breach of the Noncompetition Covenant (Count III) allegedly occurred upon Hermalyn's accepting the offer with Fanatics VIP in California. *Id.* ¶ 128. ███████████

████████████████████████████████████████████████████

Riden Decl., <u>Ex. A</u>, at 33-34. ███████████████████████████

█████████████████████████████████████████████████ *Id.*

at 39.[2]

**B.**  **<u>Hermalyn Has Sought the Protections of California Law Via an Action Pending in California State Court, Which Was Filed First</u>**

On February 1, 2024, the same day Hermalyn resigned from DraftKings and accepted Fanatics' offer of employment, he and his California employer, Fanatics VIP, filed the California Action in the Superior Court of the State of California, County of Los Angeles.  *See* Riden Decl., <u>Ex. B</u> (Cal. Compl.).   In their complaint, Hermalyn and Fanatics VIP contend that the nonsolicitation agreement and various noncompetition agreements (collectively, the "Agreements") that DraftKings required Hermalyn to sign as a condition of his employment—the same agreements DraftKings asserts here—are void and unenforceable under California law.  In particular, the Agreements' global, 12-month noncompete, client nonsolicitation and no-service,

---

[2]   Hermalyn denies all of DraftKings' allegations, including of misappropriation of trade secrets and confidential information and of solicitation.

and employee nonsolicitation and no-hire prohibitions are overbroad and illegal under California Business & Professions Code §§ 16600, 16600.1, and 16600.5.

The California Action seeks a declaratory judgment that: (i) Hermalyn may freely compete against DraftKings, including by working as President of Fanatics VIP and Head of Fanatics' Los Angeles office, providing services across Fanatics' businesses (*e.g.*, companies engaged in the collectibles, betting and gaming, licensed merchandise, and media and events business), soliciting and servicing clients on behalf of Fanatics VIP, and recruiting, soliciting, and hiring employees to Fanatics VIP; (ii) Fanatics VIP may continue to employ Hermalyn in this capacity; (iii) Hermalyn's restrictive covenants with DraftKings are void and unenforceable under California law; (iv) the Massachusetts choice-of-law and forum provisions in the Agreements are void and unenforceable under California; and (v) the jury trial waiver in the Agreements is also void under California law. *Id.* ¶¶ 9, 79. Hermalyn also seeks injunctive relief voiding the Agreements and preventing DraftKings from enforcing them under § 16600.5, and both plaintiffs seek all available relief under California's Unfair Competition Law. *Id.* ¶¶ 10-11.

In their California Action complaint, Hermalyn and Fanatics VIP highlight California's long-standing law and public policy against post-employment restrictive covenants and in favor of employee mobility and robust competition. *Id.* ¶¶ 3, 57. For decades, California courts have applied § 16600, which provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void," to prohibit noncompete and client and employee nonsolicit agreements, even with employees who *never resided* in California (but who were employed by a California company) and even when the agreements call for the application of another state's laws. *Id.* ¶¶ 57-58. The California Action also specifically challenges the Massachusetts forum and choice-of-law clauses in the Agreements as void and

unenforceable.  *Id.* ¶¶ 9-10, 58, 74-75, 84.  California courts have declined to enforce foreign state forum selection clauses in restrictive covenant cases, like this one, and recently, the California Legislature further reinforced this policy by passing two new laws, Business & Professions Code §§ 16600.5 and 16600.1, effective January 1, 2024, which codify California's prohibition on restrictive covenants even in ***agreements between employers and employees in other states***.  *Id.* ¶¶ 59-61.  In passing the new laws, the Legislature emphasized that they "would prohibit any employer from attempting to enforce a void contract, ***including seeking enforcement in a non-California court***," *id.* ¶ 64, and stressed: "California has a strong interest in protecting the freedom of movement of persons whom California-based employers wish to employ to provide services in California, regardless of the person's state of residence.   This freedom of employment is ***paramount*** to competitive business interests."  *Id.* ¶ 63 (quoting Cal. Sen. Bill No. 699 (2023-2024 Reg. Sess.) § 1(f) (emphasis added)).

### C.   The California Action, Previously Stalled by DraftKings' Gamesmanship, Is Now Proceeding in California State Court.

To thwart Hermalyn's ability to first and promptly obtain a temporary restraining order, DraftKings twice improperly removed the California Action to the United States District Court for the Central District of California—on February 1 and again on February 5, 2024—claiming "diversity" jurisdiction despite a clear lack of diversity of citizenship between Fanatics VIP and DraftKings.  *See* No. 2:24-cv-00918-MCS-E (C.D. Cal. Feb. 1, 2024); No. 2:24-cv-00997 (C.D. Cal. Feb. 5, 2024).  On February 5, 2024, the federal court "on its own motion remand[ed] the case" finding that diversity of citizenship was lacking.  *See* Riden Decl., Ex. C (1st Remand Order), at 1-2.  In contravention of the court's ruling, DraftKings removed the case again, and the same court promptly remanded the case for a second time and invited Hermalyn to seek fees and costs against DraftKings.  *See* Riden Decl., Ex. D (2nd Remand Order).  But DraftKings' gamesmanship

had its intended effect: the second remand occurred on February 8, 2024, mere hours after DraftKings obtained the Temporary Restraining Order in the instant case.

The California Action is now pending in Los Angeles Superior Court.  On February 22, 2024, the Superior Court finally had the opportunity to hear Hermalyn's motion for a temporary restraining order.  In declining to immediately order injunctive relief, the Superior Court noted the narrow focus of this Court's TRO (Dkt. No. 44), which it understood to restrain Hermalyn only from using DraftKings' trade secrets and confidential information but permit him to otherwise work for Fanatics and compete against DraftKings.  *See* Riden Decl., <u>Ex. E</u> (Cal. TRO Hr'g Tr.), at 13:14-23.  The court noted that it "appreciate[d] that the new [California] statute, on its face, would say that the noncompete clause is unenforceable. . . . the statutes are . . . [v]ery clear, very concise. . . . it's pretty clear about what the legislature did."  *Id.* at 35:10-19.  And, the Superior Court specifically instructed Hermalyn that if circumstances changed following the preliminary injunction hearing before this Court on April 2, 2024, Hermalyn could return to California for expedited relief.  *Id.* at 35:27-28.

The parties remain in active and ongoing litigation in California.  The Superior Court has ordered a case management conference for May 31, 2024.  Hermalyn and Fanatics VIP Hermalyn and Fanatics VIP will seek the earliest possible trial date on their declaratory judgment claim pursuant to the trial precedence mandated for such claims, as set forth in California Code of Civil Procedure section 1062.3.

## <u>LEGAL STANDARD</u>

*Forum non conveniens* allows federal courts to dismiss cases where a state court "serves litigational convenience best."  *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *see* Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3828 (4th ed.) ("Because no mechanism provides for transfer between the courts of different sovereigns, dismissal

under *forum non conveniens* remains the appropriate remedy.").[3]   Dismissal under *forum non conveniens* is appropriate when a defendant shows (1) that an adequate alternative forum is available, and (2) "that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." *Imamura v. Gen. Elec. Co.*, 957 F.3d 98, 106 (1st Cir. 2020).[4]   Under the first prong, "an adequate alternative forum exists when (1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly." *Id.*   For the second prong, the court balances a variety of private and public interest factors, including the alternative forum's interest in adjudicating the lawsuit. *Id.* at 107.

"Factors relevant to the public interest include . . . the general goal of 'having localized controversies decided at home[;]' . . . the trier's relative familiarity with the appropriate rules of decision; and the burdens of jury duty." *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947)).   In evaluating competing forums' "interest[s] in having localized controversies decided at home," the court "consider[s] the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988).   "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gilbert*, 330 U.S. at 509.

Private interest factors include the relative availability and convenience of witnesses and evidence and "all other practical problems that make a trial of a case easy, expeditious and

---

[3]   *See, e.g.*, *Dart-Barnett Operating Co., LLC v. Esperada Tex.*, LP, 2008 WL 4056783, *4 (W.D. Mich. 2008) (dismissing action on *forum non conveniens* grounds to allow litigation in state court); *Blakey v. Univ. of Toledo*, 2004 WL 253251, *1 (S.D. Ind. 2004) (dismissing action for *forum non conveniens* because Ohio state court was more appropriate forum); *Brice v. C.R. England, Inc.*, 278 F. Supp. 2d 487, 490 (E.D. Pa. 2003) (same).

[4]   Unless otherwise noted, all citations and internal quotation marks in citations are omitted and all emphases are added.

inexpensive." *Iragorri*, 203 F.3d at 12 (quoting *Gilbert*, 330 U.S. at 508). "There may also be questions as to the enforceability of a judgment if one is obtained." *Gilbert*, 330 U.S. at 508. Where there is an *enforceable* forum selection provision, the private interests analysis (only) is satisfied in favor of the forum identified in the clause. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 64 (2013). However, even an enforceable forum selection clause "is not given dispositive effect" overall and "is simply one of the factors that should be considered and balanced by the courts in the exercise of sound discretion," including the public interest factors. *Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 51 (1st Cir. 1990); *see also Alopexx, Inc. v. Xenothera*, 2023 WL 3182095, at *4 (D. Mass. Apr. 28, 2023) (similar).

## DISCUSSION

## I.   THE COURT SHOULD DISMISS DRAFTKINGS' CLAIMS UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

All factors pertinent to the *forum non conveniens* analysis support that California state court is the correct forum to hear and decide the dispute between DraftKings and Hermalyn—a California resident—concerning the restrictive covenants that DraftKings contends should restrict Hermalyn's ability to work for his new employer—a California company.

### A.   California Is an Adequate Alternative Forum

There is no colorable argument that California state court is an inadequate forum where the parties would be "deprived of all remedies or treated unfairly." *Imamura*, 957 F.3d at 106. California state court is more than competent to adjudicate this dispute fairly and consistent with due process. Although DraftKings has brought claims in this case beyond those at issue in the California Action, it cannot argue that its claims cannot be heard there.[5]

---

[5] While DraftKings has raised a challenge to the exercise of personal jurisdiction over it in the California Action—despite being registered to do business in California, directing advertising towards and conducting business in California, and describing itself as a global company—this challenge is without merit. *See generally* Riden Decl., Ex. F (Conley Decl.). For example, DraftKings is intentionally reaching into California to prevent a California

**B.**     **The Relevant Public and Private Interest Factors Decisively Weigh in Favor of Dismissing This Action**

**1.**     **The Public Interest Factors Strongly Favor a California Forum**

California is the forum with the strongest interest in this case.  The crux of the parties' dispute is whether Hermalyn, a California resident and employee, can freely exercise his job responsibilities for his California employer, or whether DraftKings can reach into California, curtail Hermalyn's competitive rights there, and punish him for alleged misconduct that took place mainly in that state.  California courts should resolve this question.  Courts in Massachusetts and around the country have deferred to California's strong public policy in similar cases by applying California law, or, as requested here, dismissing in favor of litigation in California.  Compared with Massachusetts, which lacks California's strong interests and has little connection to this dispute beyond DraftKings' headquarters here, a California court is the most appropriate forum to apply California law to DraftKings' claims and determine Hermalyn's rights, all of which ultimately turn on the enforceability of the Agreements.

California's strong public policy interest in enabling workers to move there and work for in-state companies free from anticompetitive restraints is beyond dispute.  Since 1872, California law has considered most post-employment restrictive covenants unenforceable.  *See AMN Healthcare, Inc. v. Aya Healthcare Servs.*, Inc., 239 Cal. Rptr. 3d 577, 587 (Cal. App. Ct. 2018) (noting "strong public policy of protecting the right of [California] citizens to pursue any lawful employment and enterprise of their choice") (citing Cal. Bus. & Prof. Code § 16600).  California

---

resident from working for a California company—a course of action with tremendous effects on Hermalyn's ability to work and live in the state.  *See, e.g.*, Riden Decl., Ex. B (Cal. Compl.) ¶ 14 (Dkt. No. 27).  This alone is sufficient to subject DraftKings to jurisdiction in California.  *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (describing "effects" test for personal jurisdiction related to conduct directed at a California resident); *Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d 103, 112 (Cal. App. Ct. 1990) (noting that in California, "personal jurisdiction may be exercised over a [non-resident] defendant who has caused an effect in the forum state by an act or omission occurring elsewhere").

courts enforce this public policy to void exactly the types of provisions in the Agreements.  *See, e.g.*, *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 955 (Cal. 2008) (noncompete); *AMN*, 239 Cal. Rptr. 3d at 587 (employee nonsolicit); *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (Cal. App. Ct. 2009) (customer nonsolicit).  California courts have also refused to enforce covenants, like the non-disclosure provisions of the Agreements here, that would "restrain[] an employee from engaging in his or her 'profession, trade, or business,' *even if* such an employee uses information that is confidential but not a trade secret."  *AMN*, 239 Cal. Rptr. 3d at 591 (dismissing breach of contract and duty of loyalty claims against former employee based on void employee nonsolicit agreement).

It does not matter that Hermalyn moved to California only shortly before accepting his position with Fanatics VIP.  Companies and individuals routinely avail themselves of favorable laws in particular states, and this is an accepted and indeed positive feature of our federal system.  *See, e.g.*, *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374 (2023) (rejecting challenge to extraterritorial effect of California law and noting that state tax, environmental, and other laws all legitimately influence the decisions of individuals and companies where to locate and conduct business "in our interconnected national marketplace"); *see also Saenz v. Roe*, 526 U.S. 489, 502 (1999) (explaining that the "right to travel" includes "the right of the newly arrived citizen to the same privileges and immunities enjoyed by other citizens of the same State" and striking down state's durational residency requirement for welfare benefits).  There is nothing untoward about a state seeking to ensure the competitiveness of its businesses by enacting various policies—from taxes to social policies—or, as here, policies that ensure California companies can recruit the best talent nationwide.  *See Application Grp., Inc. v. Hunter Grp., Inc.*, 61 Cal. App. 4th 881, 901 (Cal. App. Ct. 1998) (noting that § 16600 represents "a statement of California public policy which

ensures that California employers will be able to compete effectively for the most talented, skilled employees in their industries, wherever they may reside.").  And there is nothing wrong with individuals responding to such policies.

Indeed, California's prohibition on post-employment restrictive covenants is so strong that it applies even to employees (unlike Hermalyn) who **do not live or work in California at all** if they work for a California employer.  *See id.* at 887, 900-02 (affirming invalidation of noncompete agreement between a Maryland corporation and its former employee who had "never set foot in California" before choosing to work for a California competitor); *see also Power Integrations, Inc. v De Lara*, 2020 WL 1467406, at *11 (S.D. Cal. Mar. 26, 2020) ("[A]n out-of-state employee working for a California employer can be considered 'employed in California' to gain the benefit of California's statutory protections against restrictive covenants.").  Section 16600 also "overrides contractual choice-of-law provisions" selecting another state's laws in restrictive covenant cases for the same reason.  *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, 2019 WL 1400093, at *6 (E.D. Cal. Mar. 28, 2019).  Newly enacted § 16600.5 (which went into effect prior to the relevant events at issue), codifies that post-employment restrictive covenants are "void . . . **regardless** of where and when the contract was signed," including with an out-of-state employer. It further provides that "former employer[s]" may not attempt to enforce restrictive covenants "regardless of whether the contract was signed and the employment was maintained outside of California."  Cal. Bus. & Prof. Code § 16600.5 (a)-(b).

California's strong interest in protecting its residents, like Hermalyn, and its companies, like Fanatics VIP, against restrictive employment contracts supports its courts as the most appropriate forum to adjudicate this dispute.  *First*, California courts, subject to appellate review in California, have greater "relative familiarity with the appropriate rules of decision" and are best

equipped to determine the application of California law. *Iragorri*, 203 F.3d at 12. *Second*, whether a former employer can enforce restrictive covenants against an employee who moves to California for a better opportunity with a California employer, thus availing himself of the "freedom of movement" California's laws seek to protect, is a "localized controvers[y]" in California, of substantially more interest to a California court than to an out-of-state court. *Biard*, 486 U.S. at 528. *Third*, California courts should have the opportunity to apply the new § 16600.5, whose application to employment contracts (like the Agreements here) executed out-of-state with a non-California employer is an issue of first impression. These recent laws further evince California's intention that its own courts are the ones to decide the rights of covered California employees.[6]

For these and similar reasons, courts have granted *forum non conveniens* motions in favor of California in restrictive covenant cases involving former employees invoking the protection of California's laws. *See, e.g.*, *United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 233 (D. Conn. 2003); *Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 975 (Del. Ch. 2020); *Oxford Glob. Res., LLC v. Hernandez*, 106 N.E.3d 556, 560, 564-66, 569 (Mass. 2018); *Aware, Inc. v. Ramirez-Mireles*, 2001 WL 755822, at *2 (Mass. Super. Ct. Apr. 4, 2001). In *Aware*, the Massachusetts Superior Court determined that California law applied to a noncompete agreement and granted the former employee's motion to dismiss for *forum non conveniens*. The court concluded that novel questions about the application of Section 16600 were best left for California courts:

> Neither this Court, nor the lawyers in this case . . . have been able to find a single reported opinion in which a California court actually has enforced a non-competition agreement or covenant for the purpose of protecting trade secrets. What is clear, however, is that in a conflict between the policy favoring employee mobility free of encumbering restriction and the policy favoring protection of trade secrets, employee mobility prevails in California. . . . Thus, it seems, the first judge who decides to enter an order that will run squarely contrary to the strong public

---

[6] *See* Beck TRO Decl. Ex. A, (Cal. Legis. Assem. Comm. on Lab. & Employment, Background Information Request for Sen. Bill 699 (2023-2024 Reg. Sess.)) (Dkt. No. 34) ("[Section 16600.5] would prohibit any employer from attempting to enforce a void contract, including seeking enforcement in a non-California court.").

> policy of the State of California, ought to be a California judge, subject to the reversal authority of the California appellate courts. This Court is ill equipped for that role. Further, this Court should not start down the road to a possible judgment against a California resident, that seems contrary to California public policy, but will have to be enforced in some ancillary proceeding in California.

*Id.* at *2.

By contrast, the only interest Massachusetts may have in this dispute is that DraftKings is headquartered here. A party's mere citizenship in a forum does not outweigh other factors favoring dismissal for *forum non conveniens*, particularly here as this case does not involve Massachusetts courts overseeing or adjudicating the conduct of a Massachusetts company. *See Ott v. Kaiser-Georgetown Community Health Plan, Inc.*, 689 F. Supp. 9, 13 (D.D.C. 1988) (forum where party was incorporated had little interest because case had no connection with fact of party's incorporation in forum). Massachusetts' interest is also substantially lessened by the fact that Hermalyn never worked for DraftKings in the Commonwealth and the gravamen of DraftKings' claims do not relate to events here. *See Biard*, 486 U.S. at 528 (considering "locus of the alleged culpable conduct" in analyzing public interest factors).

Moreover, Massachusetts courts have already determined that California's public policy trumps that of Massachusetts in similar circumstances. In *Oxford*, the Supreme Judicial Court recognized that California's "policy favoring open competition and employee mobility" was greater than that of Massachusetts, which has also trended against enforcement of restrictive employment covenants except when "necessary to protect a legitimate business interest, reasonably limited in time and space, and consonant with the public interest."[7] *Oxford*, 106 N.E.3d at 560, 564-66, 569 (granting motion to dismiss for *forum non conveniens* in favor of California

---

[7] For this reason, as Hermalyn will argue in opposition to DraftKings' motion for a preliminary injunction, even if Massachusetts law does apply here, the restrictive covenants are not enforceable.

and refusing to apply a Massachusetts choice-of-law provision).[8]  Courts in many other states have similarly recognized California's strong public policy and applied California law to restrictive covenant cases involving California residents or employers, even when those agreements had non-California choice-of-law provisions.[9]  Hermalyn is not asking this Court to go this far on this Motion; instead, this Court should merely dismiss this action in favor of a superior forum in which the parties' dispute can be litigated.  These cases are indicative, however, of how strongly courts around the country treat California's public policy.

That the parties' dispute here also involves misappropriation claims in no way alters the forum analysis.  California law protects against the misappropriation of trade secrets, but its robust emphasis on the freedom of movement of persons whom California-based employers wish to employ affords its residents free rein to compete against their former employers *even using confidential information*, short of actual trade secrets.  *See AMN*, 239 Cal. Rptr. 3d at 591.  California courts are in the best position to decide where the line is between trade secrets (which former employees may not use to compete) and confidential information (which they can), and to determine the merits of DraftKings' trade secret allegations, as well as the scope of any residual portions of the Agreements that are enforceable against Hermalyn.  *See Oxford*, 106 N.E.3d at 570.

---

[8]    That both *Aware* and *Oxford* involved employees who had worked for a Massachusetts corporation *in California* prior to departing for competitors is irrelevant.  Hermalyn, like the two plaintiffs in *Aware* and *Oxford*, is now a California resident and is now working for a California employer.  By its explicit terms, California law protects him from the restrictive covenants at issue.  *See* Cal. Bus. & Prof. Code § 16600.5.  Moreover, as noted above, California courts have extended protections under § 16600 even to employees who *never* become California residents, so long as they work for a California employer, and Hermalyn, who is now a California resident and is working physically in California, has an even stronger connection to the forum.

[9]    *See, e.g.*, *Medtronic, Inc. v. Walland*, 2021 WL 4131657, at *7 (S.D.N.Y. Sept. 10, 2021) (applying California law and § 16600 to restrictive covenants despite New York choice-of-law provision); *Pactiv LLC v. Perez*, 2020 WL 7123070, at *6 (N.D. Ill. Dec. 4, 2020) (Illinois); *Ascension Ins. Holdings, LLC v. Underwood*, 2015 WL 356002, at *5 (Del. Ch. Jan. 28, 2015) (Delaware); *Lifestyle Impact Ctrs., LLC v. E. Bay Health, LLC*, 2013 WL 5564144, at *9-10 (S.D. Ohio Oct. 7, 2013) (Ohio); *Digecor, Inc. v. E.Digital Corp.*, 2009 WL 706888, at *5 (D. Utah Mar. 13, 2009) (Washington).

15

Other public interest factors weigh in favor of California.  This case has broader implications for the community there, and not in Massachusetts.  Whether out-of-state agreements can be applied and enforced against one of its residents who is working for one of its companies is a controversy which intimately involves California.  Moreover, California jurors—unlike Massachusetts jurors, where Hermalyn has never lived or worked—have the strongest relation to this litigation.  *See Gilbert*, 330 U.S. at 508 (noting that jurors in jurisdiction where defendant worked were best suited to decide controversy).

### 2.    The Private Interest Factors Also Favor a California Forum

The private interest factors also favor California.  Hermalyn is a California resident, and the conduct which is the basis of DraftKings' claims allegedly took place largely there.  The witnesses to Hermalyn's alleged activities (including the alleged misappropriation) will also be in California.  As Hermalyn and his employer Fanatics VIP are in California, and there is no jurisdiction over Fanatics VIP in Massachusetts, there may also be "questions as to the enforceability of a judgment if one is obtained" in this forum.  *Gilbert*, 330 U.S. at 508.

Although DraftKings' Agreements contain a Massachusetts forum selection clause, the California Action brought by Hermalyn and Fanatics VIP expressly challenges the enforceability of that clause.  *See* Cal. Compl. ¶¶  9-10, 58, 74-75, 84.  Indeed, such provisions are void under black-letter California law, as DraftKings has never disputed.  *See Intershop Commc'ns v. Super. Ct.*, 104 Cal. App. 4th 191, 200 (Cal. App. Ct. 2002) ("[A] forum selection clause will not be enforced if to do so would bring about a result contrary to the public policy of this state."); *see also G. Cos. Mgmt., LLC v. LREP Ariz., LLC*, 88 Cal. App. 5th 342, 350-51 (Cal. App. Ct. 2023) (refusing to enforce exclusive jurisdiction clause that might diminish unwaivable rights of California resident and employee); *Verdugo v. Alliantgroup, LP*, 237 Cal. App. 4th 141, 147, 154 (Cal. App. Ct. 2015) (same).  This Court need not resolve this question—it is another issue best

16

left to a California court to decide under California law. But in applying the *forum non conveniens* factors, this Court should not weigh the Massachusetts forum provisions in the Agreements.

## II.   ALTERNATIVELY, THE COURT SHOULD STAY THIS CASE PENDING RESOLUTION OF THE FIRST-FILED CALIFORNIA STATE COURT ACTION

In the alternative, if this Court does not dismiss this action (it should), this Court should use its inherent power to stay the case based on the pendency of the first-filed California Action, to avoid the inefficiency and expense of a parallel litigation that may well result in inconsistent rulings and judgments affecting the same parties. The *Colorado River* abstention doctrine allows federal courts to stay cases in deference to litigation pending in a state forum in the interests of "'wise judicial administration' that counsel against duplicative lawsuits", giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010) (holding that stay was warranted under *Colorado River* based in part on potential implications of parallel proceedings) (quoting *Colo. R. Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).

To determine whether abstention is appropriate, courts consider eight factors: (1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction. *See id*. at 27-28. These factors are not a "mechanical checklist," and courts consider all eight. *See, e.g.*, *Big Bob's Flooring Outlet of Am., Inc. v. Elyachar*, 566 F. Supp. 3d 89, 103 (D. Mass. 2021) (finding, upon weighing the *Colorado River* factors, that abstention was warranted); *Velez v. Turco*, 2021 WL 3516446, at *5 (D. Mass. Aug. 10, 2021) (same); *Leiva v. Dep't of Correction*, 2021 WL 3493713, at *2 (D. Mass. Aug. 9,

2021) (same).

The ***first and fourth factors*** (jurisdiction over a res, the order of obtaining jurisdiction) are relatively neutral.  This Court has not assumed jurisdiction over any res or property.  Although the California Action was filed first, neither court has substantially progressed past the other.  *See Currie v. Grp. Ins. Comm'n*, 290 F.3d 1, 10 (1st Cir. 2002) (granting motion to stay appeal under *Colorado River* where these elements were neutral).[10]

The ***second factor*** (inconvenience of the federal forum) favors abstention because the federal forum in Massachusetts is inconvenient for Hermalyn, while the California forum is not inconvenient for DraftKings.  As noted, Hermalyn has never lived or worked in Massachusetts.  Proceedings here would require him to travel across the country for distant proceedings in Massachusetts.  DraftKings, on the other hand, prides itself in being a global company and has registered to do business in California.  *See* note 5, *supra*.

More substantially, the ***third factor*** (avoidance of piecemeal litigation) weighs heavily in favor of abstention.  Allowing both cases to proceed creates the substantial risk of conflicting results.  Here, both actions are based on identical facts and overlapping legal issues.  Both litigations will turn on the enforceability of the restrictive covenants at issue.  Thus, a stay here will permit those issues to be decided in one forum, the first-filed case in California, while avoiding waste of judicial resources, risk of inconsistent rulings, and duplicative litigation that would result if both courts were to simultaneously hear and address the same matters.  *See Leiva*, 2021 WL 3493713, at *3 (finding there was a "significant concern of piecemeal litigation created by the virtually identical complaint being actively litigated in the State Action concerning issues of state

---

[10]   Of course, if Hermalyn's ability to work for his new employer is analogized to a *res* or piece of property, the California Action obtained jurisdiction of that first, before this Action.  Thus, if anything, these factors weigh slightly in favor of abstention.

law and policy in which the [State] Courts are apparently engaged").  Worse, inconsistent outcomes here as to the enforcement of the Agreements would be highly prejudicial to Hermalyn, as they could leave him in limbo as to his ability to work, and spur further litigation about what he could or could not do under both judgments.  *See Instant Disposal Serv., Inc. v. Liberty Mut. Ins. Co.*, 1993 WL 427135, at *4 (D. Mass. Oct. 1, 1993) ("The most important 'special complication' relating to piecemeal litigation is the potential for parallel proceedings to prejudice severely one of the parties").

The ***fifth and sixth factors*** (whether state or federal law controls, adequacy of state forum) also weigh heavily in favor of abstention because the claims regarding the enforceability of the Agreements' restrictive covenants, forum selection, and choice-of-law provisions all turn on the application of California law, including the two new statutes, §§ 16600.1 and 16600.5.  This dispute thus raises an issue of first impression regarding the validity of restrictive covenant contracts executed outside California's borders under these statutes, which is of particular interest to the California courts.  This strongly weighs in favor of abstention:  *Jiménez*, 597 F.3d at 30 ("[A]bstention may be preferable when the parties' claims present particularly novel, unusual or difficult questions of legal interpretation."); *see also Currie*, 290 F.3d at 10-11 (noting that abstention is appropriate when a case "presents complex questions of state law that would best be resolved by a state court" and "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar" ).  By contrast, there are no substantial or complex federal law issues in this action that weigh against abstention.[11]

---

[11]   Even though this action involves some distinct claims—for example, DraftKings has brought additional claims for misappropriation of confidential information, breach of fiduciary duty, and conversion—these claims are almost entirely based on the same facts underlying the competing claims concerning the enforcement of the Agreements.  Moreover, if a California court decides that the restrictive covenants are unenforceable, that would moot,

Finally, the **seventh and eighth factors** (vexatiousness or contrived nature of federal claim, respect for removal jurisdiction) also favor abstention.  Hermalyn and Fanatics VIP filed the California Action first.  DraftKings intentionally and (as found by the Central District of California) unjustifiably removed the California Action to federal court twice, thereby, delaying a ruling until DraftKings could file its own case in this Court and obtain injunctive relief.  The timing of DraftKings' suit, coupled with DraftKings' obvious efforts to avoid a ruling in California until this Court could rule on its TRO application, raises the reasonable inference that DraftKings filed this action at least in part to avoid a California court applying California's new laws and its longstanding public policy against restrictive covenants.

Because the California Action involves the enforceability of the **same** post-employment restrictive covenants, relating to the **same** parties, and arising from the **same** underlying controversy, facts and legal issues, interstate comity and judicial economy strongly favor staying this litigation pending resolution of the first-filed action in California.

## III.   <u>CONCLUSION</u>

The Court should dismiss the Complaint under the doctrine of *forum non conveniens*.  In the alternative, the court should stay this case in deference to the first-filed California Action, pursuant to the *Colorado River* abstention doctrine.

---

or at least "significantly affect" these claims.  *See Currie*, 290 F.3d at 11 (*Colorado River* factors satisfied where state court's decision on state law could moot or significantly affect issues pending in federal action).  For example, a ruling in the California Action that Hermalyn is permitted to compete and use confidential, non-trade secret information in doing so would moot DraftKings' claims here concerning confidential information misappropriation.

Dated: March 14, 2024

Respectfully submitted,

*Attorneys for Defendant Michael Z. Hermalyn*

/s/  *Russell Beck*
Russell Beck (BBO# 561031)
Stephen D. Riden (BBO# 644451)
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, MA 02110
Tel.: (617) 500-8660
Fax: (617) 500-8665
rbeck@beckreed.com
sriden@beckreed.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was filed on March 14, 2024, through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  March 14, 2024

/s/  *Russell Beck*
Russell Beck

21