# Exhibit E

1            SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              COUNTY OF LOS ANGELES, CENTRAL DISTRICT

3    DEPARTMENT 86          HON. MITCHELL L. BECKLOFF, JUDGE
                                  -oOo-
4    MICHAEL Z. HERMALYN and      )
     FVP, LLC,                     )
5                                  )
               Plaintiffs,         )
6                                  )        No. 24STCV02694
         vs.                       )
7                                  )
     DRAFTKINGS, INC.,             )
8                                  )
               Defendant.          )
9    _____)

10

11

12

13

14

15            REPORTER'S TRANSCRIPT OF PROCEEDINGS

16               THURSDAY, FEBRUARY 22, 2024

17

18

19

20    [PARTIES AND COUNSEL CONTINUE ON THE FOLLOWING PAGE]

21

22

23

24

25

26

27   REPORTED BY:            JEAN KIM, CSR NO. 13555
                             COURT REPORTER PRO TEMPORE
28

**Abrams, Mah & Kahn**

```
 1   APPEARANCES:

 2   FOR PLAINTIFF MICHAEL Z. HERMALYN
              MUNGER, TOLLES & OLSON, LLP
 3            BY:  BRAD D. BRIAN
                   BETHANY W. KRISTOVICH
 4                 ANNE K. CONLEY
                   Attorneys at Law
 5            350 South Grand Avenue
              50th Floor
 6            Los Angeles, California  90071
              213.683.9100
 7

 8
     FOR PLAINTIFF FVP LLC
 9            QUINN EMANUEL
              BY:  DAVID C. ARMILLEI
10                 Attorney at Law
              865 South Figueroa Street
11            10th Floor
              Los Angeles, California  90017
12            213.443.3000

13

14   FOR DEFENDANTS
              GIBSON, DUNN & CRUTCHER, LLP
15            BY:  JAMES FOGELMAN
                   KATHERINE V.A. SMITH
16                 Attorneys at Law
              333 South Grand Avenue
17            Los Angeles, California  90071
              213.229.7000
18

19

20

21

22

23

24

25

26

27

28
```

1                          I N D E X

2

3

4                         SESSIONS

5
                                                     PAGE
6   THURSDAY, FEBRUARY 22, 2024

7          A.M. SESSION                                4

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
 1   CASE NUMBER:                        24STCV02694
 2   CASE NAME:            HERMALYN V DRAFTKINGS, INC.
 3   LOS ANGELES, CALIFORNIA    THURSDAY, FEBRUARY 22, 2024
 4   DEPARTMENT 86        HON. MITCHELL L. BECKLOFF, JUDGE
 5   APPEARANCES:                (AS HERETOFORE NOTED)
 6   REPORTER:                JEAN KIM, CSR NO. 13555
 7   TIME:                    A.M. SESSION - 8:43 A.M.
 8
 9                          --o0o--
10            (The following proceedings were held in
11            open court.  The court reporter
12            appeared in person:)
13            JUDICIAL ASSISTANT:  Remain seated and come to
14   order.  Department 86 is now in session.
15            THE COURT:  You can have a seat.
16            JUDICIAL ASSISTANT:  The Honorable Mitchell L.
17   Beckloff, judge presiding.
18            THE COURT:  Good morning.
19            And, Marissa, the phone's on?
20            JUDICIAL ASSISTANT:  Phone's on.
21            THE COURT:  Okay.  Thank you.
22            Good morning.  Welcome to Department 86.
23   Let's start with Siry Investments.
24            (Unrelated matters were heard.)
25            THE COURT:  Parties on Hermalyn.
26            Okay.  Let me start by getting appearances of
27   the attorneys in the courtroom, please.
28            MR. BRIAN:  Your Honor, Brad Brian of Munger,
```

```
 1   Tolles & Olsen for the plaintiff, Michael Hermalyn.
 2           THE COURT:  Thank you very much.
 3           MS. KRISTOVICH:  Bethany Kristovich, Munger,
 4   Tolles & Olsen, also on behalf of plaintiff, Michael
 5   Hermalyn.
 6           MS. CONLEY:  Anne Conley of Munger, Tolles &
 7   Olsen on behalf of plaintiff, Hermalyn.
 8           MR. ARMILLEI:  David Armillei of Quinn Emanuel
 9   Urquhart & Sullivan on behalf of coplaintiff, FVP LLC.
10           THE COURT:  Thank you very much.
11           MR. FOGELMAN:  Hi.  Good morning, Your Honor.
12   James Fogelman and Katherine Smith of Gibson Dunn,
13   specially appearing for defendant, DraftKings.
14           THE COURT:  Thank you very much.
15           I'm assuming that you all are the parties I
16   need to get appearances from and nobody on the
17   computer.  Is that right?
18           MR. BRIAN:  I think that's right, Your Honor.
19           MR. FOGELMAN:  Correct.
20           THE COURT:  So let me -- I'm really not
21   inclined to make any orders today.  I think that, by
22   looking at what I was given in the opposition, the
23   federal court's order, I think that all that is --
24           I will admit that one of the paragraphs is a
25   bit unclear to me.  That's paragraph D.
26           But, otherwise, what has been restrained is
27   Mr. Hermalyn's use of confidential information.  And
28   the federal court made it clear in the -- well, what
```

1    she believed -- the judge believed to be a

2    reconsideration order or looked at it that way -- that

3    she was preserving the status quo.

4         So my thought was you all should have your

5    hearing on April 2nd and if -- after that hearing, you

6    could come back to court.

7         I just -- I don't see that the agreement --

8    there's no question he can't use trade secrets and

9    confidential information; right?

10        MR. BRIAN:  There's no question under that

11   order that he cannot use confidential information and

12   trade secrets.  Correct.

13        THE COURT:  Okay.  But he can't use it under

14   the terms of his agreement; right?

15        MR. BRIAN:  Well, his agreement -- yes,

16   Your Honor.  That's correct.

17        THE COURT:  And there's a severance clause in

18   the agreement.

19        MR. BRIAN:  Yes, there is.

20        THE COURT:  So, even assuming part of the

21   agreement or some part of the agreement is invalid

22   under the Business and Professions Code and void, all

23   that's happening here is he's restrained from using

24   trade secrets, which there's nothing unique about that.

25        MR. BRIAN:  He's also restrained from

26   contacting any clients or customers or partners of

27   DraftKings.  And that restrictive covenant, we think,

28   violates California law.

1          THE COURT:  About which Mr. Hermalyn learned

2    confidential information.  Right?  So it's really tied

3    to and linked to confidential information.

4          MR. BRIAN:  We would argue that.  I'm not sure

5    that the DraftKings would agree.

6          But I would like, Your Honor, a chance to

7    address your first point because I do think that we do

8    need an order from this Court.  And let me explain why.

9          THE COURT:  Okay.  I have read all of the

10   papers.  I've read the transcript from that

11   February 8th hearing.  So I don't -- and I've read the

12   order from yesterday from the judge.

13         So I don't need you to repeat what's in the

14   papers.

15         MR. BRIAN:  I don't plan to do that,

16   Your Honor.

17         First of all, I would say this.  I don't need

18   to recite, then.

19         The California law, the new California law and

20   the state legislature --

21         THE COURT:  Understood.

22         MR. BRIAN:  -- makes very clear, explicit,

23   that it doesn't matter where a restrictive covenant was

24   signed, whether it's outside of California.  And --

25         THE COURT:  Understood.  I've read the

26   statutes.

27         MR. BRIAN:  I understand.

28         THE COURT:  And I have them printed out.  I've

1  got your judicial notice request.

2      MR. BRIAN:  The Massachusetts judge, in

3  issuing his order, expressly said that California had a

4  limited interest in this matter.

5      THE COURT:  Yes.  She did.

6      MR. BRIAN:  And he cited two things -- she

7  did.  I'm sorry.

8      She said two things.  One, she said that

9  Mr. Hermalyn had only become a recent California

10  resident.  Therefore, that meant California had a

11  limited interest.

12      And, secondly, she cited -- she distinguished

13  a case that Mr. Beck and his colleagues cited, saying

14  that was the case that was signed by California parties

15  in California.

16      Neither of those is correct.  Neither is

17  correct.  The new statute in California and the

18  California legislature -- the legislative history is

19  explicit that one of the purposes of the statute is to

20  encourage California companies to recruit out-of-state

21  employees to come to California to work.  That's

22  exactly what happened here.

23      Now, DraftKings argues that it's a sham, that

24  he's not really a resident.  It doesn't matter.  The

25  California statute --

26      First of all, he is a resident.  He's rented

27  an apartment.  He's got a driver's license.  He's

28  moving to California.  He's working for a California

```
1   company.  But it doesn't even matter whether he's a
2   resident under the --
3            So the judge was wrong on that point.  And,
4   secondly, on the second point, she's also wrong.
5            Now, why do I say that?  Two reasons.
6            Because the order the judge in Massachusetts
7   entered was only an interim order.
8            THE COURT:  Yes.  Until April 2nd.
9            MR. BRIAN:  Until April 2nd.
10           And one of the things that California
11  legislature expressly says is the purpose of the
12  statute is to allow California residents to take this
13  showing, a strong judicial order from Your Honor, to
14  the Court in Massachusetts.
15           We are not seeking to enjoin the proceeding.
16  We are seeking to educate the Court about the strong
17  governmental interest in California.
18           THE COURT:  You are well capable of making
19  that showing in Massachusetts.
20           MR. BRIAN:  Well, but the --
21           THE COURT:  My decision -- you're asking for
22  me to advise a federal judge in Massachusetts that
23  California has a strong interest in this because it's a
24  California employer who recruited someone to move to
25  the state, who's registered to vote, who's leased an
26  apartment --
27           There are all these factual issues raised by
28  the defendant about whether they're sleeping there.  I
```

1    have a declaration that says "my kids are moving here
2    after the term is ended for school" --
3              All of that.  You don't need an order from me.
4              MR. BRIAN:  So I think we do.  I think --
5              Well, we're obviously going to make the
6    argument.  I agree with Your Honor.  We're going to
7    make those arguments.  We're going to make them as
8    forcefully as we can.  But an order from this Court is
9    important.
10             The second reason we need an order, the order
11   in Massachusetts -- they say, well, we lost three
12   times.  No, we didn't.
13             Take a look at that order.  They sought an
14   order to enjoin my client from working for Fanatics.
15   They lost that.
16             THE COURT:  Yes.
17             MR. BRIAN:  That was stricken from the order.
18             THE COURT:  Yes.
19             MR. BRIAN:  So my client is permitted to work
20   for Fanatics.  He attended the Super Bowl, sat in the
21   Fanatics suite, wore a Fanatics jacket, is intending to
22   work for Fanatics.
23             THE COURT:  And is working for Fanatics.
24             MR. BRIAN:  And is.
25             But they are taking steps right now to
26   interfere with that.  They are taking steps to
27   disparage him with his employer; with management; we
28   think, with prospective clients that are not based on

11

1    the use of confidential information.

2           And DraftKings itself is not subject to the

3    order in Massachusetts.  That order was directed to our

4    client.

5           We want an order that's directed to DraftKings

6    that says they cannot enforce those restrictive

7    covenants against Mr. Hermalyn, to the extent that they

8    are inconsistent with the law.

9           THE COURT:  So why can't you go have your

10   hearing in federal court on April 2nd and, if you're

11   aggrieved, come right back here?

12          MS. KRISTOVICH:  So, Your Honor, one thing is

13   that he is allowed to work for Fanatics.  But there are

14   several aspects of his job that are being constrained

15   by some of DraftKings' conduct.

16          For example, he segregated all of his

17   contacts -- people he's met over the last three and a

18   half years -- because he wants to be holier than

19   Caesar's wife on this.

20          So he segregated everything.  And we have been

21   trying to get DraftKings, for three weeks now, to

22   engage in some process by which people who are

23   rightfully his contacts can go to him.

24          So, in other words, even his work that is

25   permitted under the Massachusetts order is being

26   inhibited by DraftKings' conduct.  And so we're not in

27   any way trying to get you to undercut --

28          THE COURT:  How is it being inhibited if it's

1    not within the scope of the federal court's order?

2            MS. KRISTOVICH:  Sure.  So he took certain

3    steps to make sure that he was not --

4            THE COURT:  Yes.  I read that.  Yes.

5            MS. KRISTOVICH:  -- going to be accused of

6    anything.

7            So DraftKings is refusing to engage in conduct

8    that would allow the parties to sort out their

9    respective interests in various contacts.

10           So, in other words, from now until April 2nd,

11   he can't pick up the phone and call someone --

12           Just let me give you a real-life example.

13           On a meet-and-confer call with DraftKings'

14   counsel, the counsel that's handling the Boston action,

15   I said, "What if his grandmother ever contemplated

16   placing a bet on DraftKings' website?  Would that turn

17   her into a potential customer that DraftKings would

18   consider confidential information?"

19           And the lawyer said, "Look.  Don't hold me to

20   this.  But, yes."

21           So that type of stuff is being done, and that

22   is inhibiting his ability to work.  And an order from

23   this Court would allow, actually, the implementation of

24   the Massachusetts Court --

25           THE COURT:  It's an interpretation of the

26   federal court order and the agreement that the parties

27   entered into.  Right?

28           MS. KRISTOVICH:  So not exactly.

1          MR. BRIAN:  But that agreement, Your Honor,

2     under California law, is not valid.

3          THE COURT:  It is as to trade secrets.

4          MR. BRIAN:  No -- as to trade secrets, yes.

5     As to trade secrets.

6          But not as to his ability to pursue his

7     employment with Fanatics.  And what Ms. Kristovich is

8     saying -- they are interfering with that, and that is

9     not permissible under the California law.

10         THE COURT:  Before I got the opposition on

11    your proposed form of order, I wrote a note to myself

12    that it was overbroad and inconsistent with what you

13    professed that you're asking for.

14         So the way I see the federal court order is:

15    "Mr. Hermalyn, you go to California.  Mr. Hermalyn, you

16    work for Fanatics.  You do whatever you want to do for

17    Fanatics, whatever Fanatics wants you to do for them.

18    But you cannot use confidential trade secret

19    information."

20         That's what the federal judge said about

21    status quo; that's what the federal judge said in the

22    February 8th hearing about not restraining him from

23    working for Fanatics.

24         It was all about the trade secret -- you know,

25    the transcript, which is quite lengthy for an ex parte

26    hearing, goes on and on and on about, you know, the

27    downloading of certain documents and the Super Bowl

28    plan and all of that stuff and where the downloading

1   occurred and the IP address and all of that.

2       I don't think -- I'm not inclined to issue any

3   order today because you're not aggrieved.

4       Because no one is disputing that California

5   law would uphold trade secret.  Right?  That this is

6   consistent with California law.  That's what the

7   federal court does.

8       This conversation between advocates about

9   what -- "my grandmother, she wanted to place a bet,"

10  however you do it -- okay.  That's one person's

11  position.  That's one company's position.

12      You have the other position.  Somebody has to

13  litigate that at some point.

14      Yes, sir.

15      MR. BRIAN:  I guess the question,

16  Your Honor -- maybe it's a question that I would ask

17  you to put to DraftKings' counsel -- is:  Do they

18  contend that Mr. Hermalyn, in working for DraftKings,

19  is permitted to go out and solicit customers?  Do they

20  agree with that?

21      THE COURT:  Sure.

22      Would it be your position that Mr. Hermalyn

23  could solicit customers, so long as he doesn't have

24  trade secret information about them?

25      MR. BRIAN:  Yes.

26      THE COURT:  Would you concede that?

27      MR. BRIAN:  Yes.  Yes, he can.

28      THE COURT:  Don't you think that's the way the

1   federal court order reads?

2           MR. BRIAN:  I hope it does.  I'm not sure

3   DraftKings agrees with that.

4           THE COURT:  Okay.  But I started out to give

5   you a tentative about where I am, and I don't know that

6   I've moved from that.  That's the only reason I haven't

7   talked to DraftKings.

8           MR. BRIAN:  But, again, Your Honor, I go back.

9   And two things.

10          One, we're not seeking to enjoin that order.

11  We are seeking to get a ruling from this Court that

12  enforces the restrictive covenants to the extent

13  they're not inconsistent with that because we do think

14  the law --

15          The California legislature said expressly that

16  it's important for the California law to be used to

17  educate a Court in a non-California forum.

18          THE COURT:  So which statute tells me that?

19  I've got the three statutes you all cite in front of

20  me.

21          MR. BRIAN:  We cite that on pages 22 and 23 --

22          THE COURT:  Which Business and Professions --

23          MR. BRIAN:  -- of our opposition.

24          It's in the legislative history, I believe.

25          THE COURT:  Okay.  So I'm not sure I really

26  need to get to the legislative history, given the clear

27  language in the statute.  Right?

28          If you go to federal court on April 2nd and an

1   order is made that would restrict Mr. Hermalyn,

2   wouldn't you then have something to complain about

3   here?

4           I mean -- and I don't know what Mr. Fogelman's

5   statement is going to be.  But if I read the order and

6   the federal judge seems to emphasize in her most recent

7   order and didn't, then, discuss during the hearing

8   about trade secrets, isn't that really the focus of

9   that order?

10          MR. BRIAN:  I think so.  But if the judge

11  there does what you just hypothesized and goes broader

12  than that, I suspect that DraftKings are going to take

13  the position that we're bound by that.

14          And that's exactly why we need an order now so

15  that the Court in Massachusetts has the benefit of a

16  judicial ruling in California that says, "DraftKings,

17  you are restricted in applying the covenants, to the

18  extent you do X, Y, and Z."

19          I thought about the order this morning.  Early

20  this morning, you can imagine.  We got the papers, I

21  think, at 11:38 p.m.  So I was up very early, reading

22  the papers.  And I looked at the order.  And I

23  anticipated that Your Honor might say that the order is

24  too broad.

25          And I would say this:  With all respect,

26  that's not a basis, I would argue, for denying our

27  request.

28          I'm happy to redraft the order.  We can do it

1    now.   We can submit a revised order.

2            THE COURT:   Sure.   I -- of course.   Right.

3            Before I even had the opposition, I knew -- as

4    I said, I noted for myself that the scope of the order

5    is just too broad.   It's not consistent with your

6    papers.

7            So let's say I make the order.   This is really

8    sort of this rush to the courthouse.   Right?   The two

9    redemands, all -- the two removals, all of that.

10           So I make the order.

11           Do you think the federal judge is going to

12   say, you know, "Judge Beckloff in Los Angeles, this

13   nice state court judge, made that order, and I'm not

14   going to make any order because it doesn't matter to a

15   citizen of my state"?

16           MR. BRIAN:   I think the judge in Massachusetts

17   will rule on the preliminary injunction.

18           THE COURT:   Right.

19           MR. BRIAN:   I think the judge, with all

20   respect to her there, was misled, to some extent,

21   because DraftKings' counsel argued, for example, that

22   he was only a resident for six days in California.

23           THE COURT:   Sure.

24           MR. BRIAN:   That is an irrelevant factor in

25   California.

26           In fact, the legislature expressly encourages

27   people to move to California to take advantage of this.

28           And they go so far in their papers to suggest,

1   one, the residence is a sham; the whole thing is a

2   sham --

3          You know, companies decide to reside in states

4   or jurisdictions every day to take advantage of the

5   favorable laws here.  There's nothing wrong with that.

6   People move there because of tax laws.  People make

7   films in Georgia or Canada because it's advantageous.

8   There's nothing wrong if that's what happened here.

9          Mr. Hermalyn doesn't even need to be a

10  resident under the California law.  He can be not a

11  resident, so long as he's working for a

12  California-based employer, which he is.

13         So I think it would be helpful for

14  Your Honor --

15         We're not asking for an advisory opinion.

16  We're asking for a temporary restraining order that

17  restrains DraftKings from enforcing the restrictive

18  covenant to bar him from doing certain things while

19  he's at Fanatics.  Not to use confidential information.

20  We're not saying that.

21         But they are interfering right now with his

22  ability to go out and get clients.  They're calling up

23  his management at Fanatics and telling them he's a bad

24  guy and doing all that kind of stuff.  Why are they

25  doing that?

26         They are trying to undercut his ability to

27  engage in a profession for a California-based employer,

28  which is precisely what the statute is intended to

1    police.

2             THE COURT:  Okay.  Mr. Fogelman.

3             MR. FOGELMAN:  Thank you, Your Honor.  And

4    thank you for reading all the papers, given the limited

5    time we had to give them to you.

6             THE COURT:  Thank you for getting them filed

7    last night.

8             MR. FOGELMAN:  I appreciate that, Your Honor.

9             Let me start by saying, as I think you've read

10   from our papers, that there is no jurisdiction over

11   DraftKings.  The general jurisdiction set up by the

12   supreme court is very clear.  You've got to be

13   registered in California, or you've got to have your

14   principal place of business here.

15            It's not about alleged contacts, and it's not

16   about, you know, some potential effect.  That's well

17   said.  So there's no personal jurisdiction here.

18            We are specially appearing today without

19   waiving the right to file, and we intend to file a

20   motion to quash, which isn't due until March 11th

21   because service didn't take place until February 9th.

22            But we are intending to file a motion to quash

23   based on the lack of personal jurisdiction.  That's

24   where we start.

25            The odd part about today is it's untethered to

26   anything.  It's untethered to the complaint; it's

27   untethered to the application, this order; and it's

28   untethered to the law.  It's untethered to reality.

```
 1              I looked at this proposed order, as you did.
 2    So I'll start there, and I'll work back the argument to
 3    respond to some of the points made.
 4              They claim in the papers that they're not
 5    seeking any kind of injunctive relief against the
 6    federal court in Massachusetts, which they can't, as a
 7    matter of law.  There's a statute expressly on point,
 8    3423 in the Civil Code, prohibiting it, as well as law
 9    prohibiting it.  You can't do it.
10              But, in the order, they're asking for just
11    that.  This order asks for a complete prior restraint.
12              Let's just start from the basis here.
13              The complaint.  The complaint says, for a guy
14    who lives in New Jersey but claims he's going to be
15    here soon -- "I am moving to California, and I want to
16    be able to compete."  And that's it.
17              It doesn't say, "I have trade secrets of
18    DraftKings.  I'm asking the Court to nullify them" or
19    "asking the Court for permission to use them or steal
20    them."
21              And there's evidence in the record, primarily
22    in the Harris declaration, but also in the Karamitis
23    declaration -- and you can see it in the Court's order
24    in Boston -- already found, with Mike Hermalyn's
25    access, that he has actually stolen information.
26              And we will put in evidence that he's deleted
27    evidence and spoliated it, trying to hide his tracks.
28              But there's nothing in the statute which
```

1     governs the right to steal and use trade secrets.  The

2     statute issue, we'll talk about in a moment.

3           And there's nothing in the complaint asking

4     for a ruling from this Court or any Court to make a

5     ruling on the trade secrets of DraftKings.

6           Also, nothing about harassment that they're

7     alleging for the first time in these papers and the

8     declaration.  No claim of harassment or post-filing --

9     literally, that would have to be -- post-filing

10    conduct.

11          It's simply a dec relief, basically.  They

12    want to avoid a statute under a new law which just took

13    effect last month and which is constitutionally suspect

14    when applied to the facts here, at the very least.

15          Look at the order, though.  Okay?  The order

16    says they want a broad bar, attempting to -- barring

17    DraftKings to enforce its contractual rights.  That is,

18    by definition, the anti-injunction or anti-lawsuit

19    injunction they're saying in the papers they're not

20    seeking.

21          Can't have that under the precedent and the

22    statutes we've talked about.  But that's what that is.

23    It's also prior restraint is what that would be.

24          We're in federal court.  We have a federal

25    court order which just preserves the status quo, as you

26    know, allows him, at least for now, to work at

27    "DraftKings."

28          And I would also note it just limits it to not

1  stealing the information; using stolen information,

2  trade secrets, confidential and propriety information;

3  or soliciting employees or customers in the same vein.

4       In the next point I want to make, they also

5  have a part two.  They say no harassing.

6       Not in the complaint.  Don't know what they're

7  talking about.  It seems like a prior restraint, which

8  would be an anti-SLAPP issue if this were

9  jurisdictioned here.

10       But, again, not in the complaint.  Not even in

11 the TRO itself.  Not even tethered to the application.

12 So this order itself is crazy.

13       But, like I said, there's no legal basis for

14 it, even if there were jurisdiction, and there's not.

15       Now let's look at the points that were made

16 just now.

17       Let's start with why we're here.

18       Asking this Court to issue an advisory opinion

19 is not proper.  We cited authority.  I cited a lot of

20 things.

21       The Salazar case, 9 Cal.4th 836, jump cite

22 860.  Can't issue an advisory opinion.

23       And the federal court in Boston is not asking

24 anyone for advice.  The federal court is hearing the

25 same arguments from these counsel that they're putting

26 before Your Honor today.

27       They're arguing that the statute applies and

28 the California law applies, et cetera.  And the Court

1   has made rulings, to date, denying relief.

2          Now, they say that they're unclear of what the

3   order means.  But we put before Your Honor motions to

4   clarify they've also filed, which she found were

5   motions to reconsider.

6          They've had the ability to ask for

7   clarification.  They have done it.  Okay?  They have to

8   comply with the federal court order, or they'll be in

9   contempt.

10         They cannot ask this Court to enjoin that

11  Court or to tell that Court what the right result is.

12         And they cannot ask DraftKings, as they do in

13  the proposed order, not to seek redress in the courts

14  or to mention the lawsuit or talk about things that

15  they're allowed to talk about legally, like their

16  business.

17         But that's what this order would have you do.

18         You can't issue an advisory opinion.  But even

19  if you could, what would the emergency be?

20         As Your Honor said, they're litigating the

21  issue.  The only reason it's being heard on April 2nd

22  is because they themselves, Mr. Hermalyn's counsel,

23  asked for a very lengthy delay, as confirmed yesterday

24  in the order by the Court too.  It was delayed to

25  April 2nd at Mr. Hermalyn's request.

26         If it wasn't an emergency to have the issue

27  resolved in Boston, it isn't an emergency to get an

28  advisory opinion from this Court today.

1          Now, that doesn't make any sense.  There's no

2    emergency and no rights to the relief sought.

3          With regard to the statute, there's

4    substantial reason to doubt that he's a resident.  But

5    we need to resolve the personal jurisdiction issue

6    before we can engage in discovery on that point.

7          Again, he's making those arguments in Boston.

8    Therefore, there's no emergency to have this Court

9    issue an advisory opinion today -- which also isn't

10   allowed.

11         So I could go on and on and on, Your Honor --

12         THE COURT:  So you raise a contract claim

13   issue.  I suspect you'll raise a retroactivity

14   argument.  All kinds of issues about the statute for

15   which there is not yet some appellate authority.

16         Let me ask you a question.

17         Is it DraftKings' position that, if

18   Mr. Hermalyn's mother -- grandmother had at one time

19   considered or contemplated making a bet on DraftKings,

20   however that works, that he could not contact her?

21         That was the hypothetical.  I'm just

22   wondering, Mr. Fogelman, what --

23         Because, to me, I think paragraph D of the

24   federal court's order, presumably prepared by

25   DraftKings, is a little bit unclear because there's the

26   "or" in the language -- "about which Mr. Hermalyn

27   learned confidential information or which Mr. Hermalyn

28   had some involvement or knowledge relating to."

1        That's a little loose.  But is it your

2    position that, somebody who contemplated making a bet

3    on DraftKings at some point in the past, Mr. Hermalyn

4    could not contact without violating this order?

5        MR. FOGELMAN:  Your Honor, I would reserve for

6    the Boston Court what I think the Boston Court's order

7    covers.  With all due respect, I haven't thought

8    through all the hypotheticals.

9        I can tell you the order, to me, appears to be

10   clear on the inability to solicit DraftKings' employees

11   and -- which is also not prohibited by the statute

12   we're talking about.

13       THE COURT:  I agree.

14       MR. FOGELMAN:  It's clear on not using the

15   confidential information.

16       I cannot tell you all the circumstances under

17   which that confidential information could have arisen.

18       But I can tell you, if you look at the Harris

19   declaration, this person has stolen the most sensitive

20   trade secrets this company has, and he's telling you in

21   a declaration today that he can't operate without using

22   those trade secrets.

23       That's not something they can come to any

24   Court, including this Court, and ask for permission to

25   do.

26       So asking DraftKings' counsel on the fly to

27   talk about a conversation I wasn't party to, a

28   grandmother I don't know even exists, facts which I'm

1   not aware of isn't really the point.

2          The point is they do not have the right to

3   seek an order from this Court to advise the Court in

4   Boston -- let alone on a TRO basis -- of what it should

5   do in Boston.

6          They have made these arguments not just in the

7   original TRO; they made them in multiple post-TRO

8   motions that the Court has ruled upon, including as

9   late as yesterday.  They can make the argument if they

10  think there's an exception to the rule.

11         And as the Court said yesterday, all aspects

12  of the order are subject to review on April 2nd.  All

13  aspects.

14         So there's no reason to worry about whether

15  there's some potential reading of it that they think is

16  broader than they would like it to be because they're

17  going to challenge the entirety of the order on

18  April 2nd.  Could have been earlier, but they asked for

19  it to be delayed.

20         THE COURT:  Would you concede that there's a

21  distinction to be drawn about Mr. Hermalyn using

22  confidential trade secret in his position --

23  information in his position with Fanatics and just

24  going out and doing business?

25         I mean, that's the problem.  Right?

26         Because, if you are -- if DraftKings is taking

27  the position that he may not solicit customers, even if

28  they're not related to confidential trade secrets or

1   confidential information, then that's a problem because

2   it prevents him from doing his job.

3            MR. FOGELMAN:  Well, Your Honor, I can only

4   tell you the following.

5            The order in Boston is clear that he cannot do

6   the things outlined in the order as being prohibited,

7   which includes taking the confidential information.

8            It is also clear he can work at Fanatics.

9            So nothing would stop him, for example, from

10  calling someone brand new tomorrow and saying, "Hey" --

11  maybe that's his grandmother, for all I know -- "would

12  you like to place a bet at Fanatics?"

13           Until April 2nd, that issue is decided.  He

14  can work at Fanatics, and he can compete.  But he can't

15  do the things prohibited by the order.

16           The Court in Boston is the one who will decide

17  whether they are violating the order.  The Court in

18  Boston will decide if they're in contempt of that

19  order.

20           It isn't for this Court to start thinking

21  about whether there's an interpretation of that order,

22  which is broad.

23           And I recognize it's of prudent interest to

24  everybody, including Your Honor.  But it's not before

25  the Court.

26           The Court today is being asked to issue this

27  proposed order -- I've got notes.  I'm not holding the

28  order itself up -- which has the prior restraints, both

28

1    a lawsuit and a speech, and an anti-suit injunction of

2    a federal court in Boston.

3            None of which is allowed, period, full stop.

4            And against the defendant, which has no

5    business being in this court because there's no

6    personal jurisdiction over the defendant.

7            That's what we're here on today.  And if you

8    look at the papers alone -- forget the proposed order,

9    which has to be stricken no matter what.

10           If you look at the papers alone, it's asking

11   only for an advisory opinion, which isn't allowed and

12   isn't an emergency and isn't necessary.

13           They can go to court on April 2nd.  They'll

14   file the papers before then.  They've got a right to

15   discovery and a right to make whatever arguments they

16   want to the Court in Boston.

17           This is not the time.  This is not the

18   procedural posture.  And this is not the court for

19   those arguments to be made.

20           THE COURT:  Okay.  Mr. Brian.

21           MR. BRIAN:  Your Honor, that long answer is

22   precisely why we're here today.  Precisely.

23           With all respect to my colleague, he did not

24   answer your question.

25           The clients of DraftKings are not exclusive to

26   DraftKings.  They are not.

27           Mr. Hermalyn has the right to solicit those

28   clients so long as he does not use the confidential

```
 1    information.
 2            You asked counsel that exact question, and he
 3    refused to answer it.
 4            And that is exactly what they're interfering
 5    now.
 6            Now, he says, "Well, the complaint doesn't
 7    argue that."
 8            Because they've taken the steps after we filed
 9    the complaint.
10            The only reason that they had a hearing in
11    Massachusetts before we were here is because they
12    frivolously removed the case twice and it was remanded
13    to this Court twice with an order from the federal
14    court inviting us to file a motion for attorneys' fees.
15            That's why we're now second, so to speak.
16            We acted very promptly.  They acted wrongly in
17    doing that and got an order from a Court who did not
18    have the benefit of the California law.
19            They come in here now and say there's no
20    personal jurisdiction?
21            If they thought -- Your Honor, if they thought
22    there was no personal jurisdiction, they should have
23    filed a motion to dismiss.
24            We filed this complaint on February 1st.
25            We filed a declaration this morning.  I don't
26    know if Your Honor had an opportunity to read it, the
27    supplemental declaration of my colleague Anne Conley.
28            And I'll say this.
```

1       It is very clear that there was personal

2  jurisdiction.  There was specific jurisdiction because

3  DraftKings has acted in a way that has caused negative

4  consequences on California residents.

5       That's the law in Calder versus Jones,

6  465 U.S. 783-789, where the United States Supreme Court

7  said that a nonresident defendant may be hailed into

8  the forum state where its acts or omission caused an

9  effect in that forum state.

10      Same result in Taylor-Rush versus Multitech

11  Corp., 217 Cal.App.3d 103 at 112.  We also filed

12  papers -- their own papers, their 10-K, their filings

13  with the State of California where they concede they

14  can be sued in the State of California.

15      So, this -- I mean, to me, when I read their

16  papers at 3:00 o'clock this morning, it was quite

17  telling that it wasn't until page 18 of their papers

18  that they dealt with the merits of the statute.

19  Because they can't win that argument.

20      So the arguments they make are no personal

21  jurisdiction, which is wrong.  And that, somehow,

22  they're excused from the restrictive covenants because

23  of their contested accusations that Mr. Hermalyn

24  somehow misappropriated trade secrets.

25      First of all, he didn't.  He denies all of

26  that.

27      Secondly, the allegations they make are based

28  on conduct while he was working at DraftKings.  They

1   have no evidence at all of his supposed use of

2   confidential information after he left DraftKings.

3          They submitted an affidavit or declaration

4   from some IT guy at DraftKings, not the employees with

5   who Mr. Hermalyn was working.

6          So, Your Honor, we need an order from

7   Your Honor that addresses exactly the question that

8   Mr. Fogelman refused to answer, which is our client has

9   a right to go out and do business with customers,

10  existing customers of DraftKings, so long as he does

11  not do that under -- with the use of confidential

12  information.

13         And we think they are taking steps right now

14  to interfere with that.

15         They also have the ability to forfeit his

16  equity under that contract.  We need an order that

17  prevents them from doing that.

18         And, again, Your Honor, just to go back to

19  where I started, we would have been here two weeks ago

20  but for the wrongful conduct by DraftKings in removing

21  these actions.

22         Now, I'm not arguing that, because we were

23  first, we necessarily win.  I get that.

24         But it does say, to me, and I hope it says to

25  you, that the fact that the judge did not have the

26  benefit of a judicial order in California restraining

27  them from acting was harmful to us.  And it's harming

28  Mr. Hermalyn now.

1           MR. FOGELMAN:  Your Honor, I appreciate the

2     Court has a tentative.

3           I'm offended by what I've just heard, and I'd

4     like to respond to some of them briefly.

5           First of all, there's been no finding of

6     wrongful removal.  None.  There won't be a finding of

7     wrongful removal.

8           These people created a company in

9     California -- or they claim to have it in Nevada -- the

10    day before they filed.

11          While he was supposedly on bereavement leave,

12    he supposedly -- like, out for a friend.  He's in

13    California, claiming he rented an apartment.  There's

14    no evidence he's ever been to that apartment.

15          There's lots of things going on here, but

16    there's no wrongful conduct on the part of DraftKings.

17          DraftKings removed it.  We'll defend it.

18    We're in federal court defending that claim now, and

19    we'll deal with it in that court.

20          Once again, it's not this Court who is the

21    appropriate forum to hear that.

22          They can ask the federal court to make that

23    ruling.

24          There's been no wrongful conduct by DraftKings

25    or its counsel.

26          There has been absolute proof in the record by

27    the Harris declaration we submitted and the Karamitis

28    declaration that he has stolen the most important

1  documents at DraftKings and then deleted the evidence

2  of it.

3          And there's a finding by a federal court of

4  that wrongful conduct being likely to be proved at

5  trial.

6          So the suggestion of, quote, "no evidence" for

7  it is wrong.

8          And then, finally, there is no complaint

9  alleging wrongful contacts with California, and there's

10  no complaint about harassment.

11          Just so you have it because I'm sure you want

12  to know it just offhand -- the Walden versus Fiore

13  case, 571 U.S. 277 from 2014, says, even if there was

14  an alleged effect in California -- and there's no

15  allegation of that -- it wouldn't be enough for

16  jurisdiction.

17          So there's no jurisdiction.  We'll let you

18  decide that on the hearing of our motion to quash.  But

19  the suggestion that we should have been here earlier

20  with our response --

21          The complaint wasn't served until eight days

22  after the complaint and ex parte were filed on

23  February 9th.

24          Our answer and our motion to quash aren't even

25  due yet, Your Honor.

26          So suggesting that we were the ones who are

27  holding off on that is silly.

28          And just one last thing.  The reason they

1    didn't have an ex parte here in this court is they

2    didn't file the ex parte.  The Court said it wasn't

3    filed.  That's just a misstatement by counsel.  I'm

4    sure inadvertent.

5            MR. BRIAN:  So two final things.

6            One, we e-mailed them within hours of our

7    filling the complaint.  Within hours.

8            Secondly, I was in a hearing in Las Vegas a

9    couple weeks ago.  And counsel stood up and accused

10   somebody of stealing.  And the judge said to counsel,

11   "Before you accuse somebody of stealing, you'd better

12   have proof."

13           And talk about offensive.  There is no proof

14   that Mr. Hermalyn stole confidential information that

15   he is using after he left.  None.  It is speculative,

16   Your Honor.

17           THE COURT:  I don't need to go there.  I don't

18   need to go there in the theft.  Right?  That is all

19   going to be adjudicated on April 2nd, at least for

20   purposes of a preliminary injunction.

21           I'm not going to issue an order today.  You're

22   welcome to come back.

23           As I read the transcript from February 8th and

24   this order from February 21st, Mr. Hermalyn is not

25   restrained from working for Fanatics and doing his job

26   at Fanatics, except to the extent that it uses

27   confidential or trade secret information.

28           And I acknowledge and concede that paragraph D

1    is a little bit unclear.

2         But it seems to me, based on the conversation

3    that counsel had with the federal judge or the argument

4    and the statement made by the judge on 2/21, which

5    emphasizes the line about confidential information,

6    that that's what Mr. Hermalyn is restrained from using

7    in his new position, which we all concede is

8    enforceable in this contract based on the severance

9    clause.

10        I appreciate that the new statute, on its

11   face, would say that the noncompete clause is

12   unenforceable.  Whether there's a contract clause

13   problem, whether there's a jurisdiction problem,

14   whether there's a retroactivity problem is for another

15   day.

16        So I understand the statutes are -- you know,

17   it's not like a government code statute that can go on

18   for pages and pages.  Very clear, very concise.  So

19   it's pretty clear about what the legislature did.

20        When and if Mr. Hermalyn is aggrieved or there

21   is some clarification that he may not solicit random

22   people because they might have thought, like his

23   grandmother, of placing a bet, then that would be a

24   different fact than we have today.

25        So I'm denying the ex parte application today,

26   without prejudice to some change in facts.

27        If you're aggrieved on April 2nd, you're

28   welcome to come back.  All right?

```
1            MR. FOGELMAN:  Thank you, Your Honor.
2            MS. KRISTOVICH:  Thank you, Your Honor.
3            Just one point of clarification.  I just want
4    to make sure that I'm understanding.
5            We will continue to work on sorting out the
6    issue in paragraph D that Your Honor identified.  If we
7    can't, we may seek Your Honor's guidance before
8    April 2nd.  And I just want to make sure that that's --
9            THE COURT:  As long as you file it before
10   10:00 a.m. the day before.
11           MS. KRISTOVICH:  We understand.  And get the
12   filing accepted --
13           THE COURT:  Can I just ask a real practical
14   question.
15           So the scope of the clause is 12 months.
16   Right?  So I suppose, in a lot of ways, the preliminary
17   injunction sort of decides the case, I mean, whether
18   here or there, because you're not going to have it
19   litigated in 12 months.
20           I understand there's a lot of conflict.
21   Right?
22           With a 12-month noncompete clause, doesn't it
23   make sense for them to sit down early on, before all
24   of --
25           I mean, you've been to federal court.  You've
26   got, now, an invitation to file a motion for fees.
27   You've been to a federal court here.  You've been in a
28   federal court in the Commonwealth of Massachusetts.
```

1          You know, it's a 12-month noncompete clause.

2          I think it would behoove the parties to just

3    get it resolved early on.

4          MR. BRIAN:  I appreciate that, Your Honor.

5          THE COURT:  I mean, instead of a constant,

6    consistent clash of the titans.

7          MR. BRIAN:  Thank you, Your Honor.

8          MR. ARMILLEI:  One small point on the 12-month

9    noncompete clause.

10          THE COURT:  Yes.

11          MR. ARMILLEI:  There's a provision in

12    Mr. Hermalyn's contracts that essentially says, for the

13    period between a challenge by Mr. Hermalyn to a final

14    adjudication on the merits -- so, when that period is

15    outstanding, it will extend the period of his

16    restrictive covenant.

17          THE COURT:  Okay.  I didn't see that.

18          MR. ARMILLEI:  So there is a possibility that

19    this is beyond 12 months.

20          THE COURT:  I didn't see that.  Very simple,

21    simplistic view --

22          MR. FOGELMAN:  Your Honor, I want to say the

23    counsel who spoke is not a moving party, should not be

24    speaking on the application at all.  Also --

25          THE COURT:  I do get to call the shots.

26    Right?

27          MR. FOGELMAN:  I understand, Your Honor.

28          And I would also say that I'm not going to

1    argue what it does.

2         We'll be back in the appropriate court at the

3    right time, arguing what it does and whether it's

4    enforceable.  Today is not that day.  This is not the

5    court.

6         THE COURT:  Okay.

7         Waive notice?

8         MR. BRIAN:  Yes, Your Honor.

9         MR. FOGELMAN:  Yes, Your Honor.

10        THE COURT:  Thank you.  Take care.

11        (Proceedings adjourned at 9:24 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                COUNTY OF LOS ANGELES, CENTRAL DISTRICT

 3     DEPARTMENT 86          HON. MITCHELL L. BECKLOFF, JUDGE

 4

 5     MICHAEL Z. HERMALYN and     )
       FVP, LLC,                   )
 6                                 )
               Plaintiffs,         )      SUPERIOR COURT
 7                                 )      No. 24STCV02694
          vs.                      )
 8                                 )
       DRAFTKINGS, INC.,           )
 9                                 )      REPORTER'S
               Defendant.          )      CERTIFICATE
10     _____)

11

12             I, JEAN KIM, Reporter Pro Tempore of the

13     Superior Court of the State of California, for the

14     County of Los Angeles, do hereby certify that I did

15     correctly report the proceedings contained herein and

16     that the foregoing pages 1 through 38, inclusive,

17     comprise a full, true, and correct transcript of the

18     proceedings and testimony taken in the matter of the

19     above-entitled cause on 22nd of February, 2024.

20

21             Dated this 23rd of February, 2024.

22

23

24             _____
               JEAN KIM, CSR NO. 13555
25             COURT REPORTER PRO TEMPORE

26

27

28
```

Abrams, Mah & Kahn