# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| |
|---|
| DRAFTKINGS INC., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL HERMALYN <br><br> Defendant. |

Civil Action No. 1:24-cv-10299-JEK

## [PROPOSED] PRELIMINARY INJUNCTION

Upon Plaintiff DraftKings Inc.'s ("DraftKings" or the "Company") Motion for Preliminary Injunction (the "Motion"), and upon consideration of the Memorandum of Law, Affidavits, and Exhibits in support of the Motion, the Court hereby FINDS that:

1. There is a likelihood of success on the merits for all of DraftKings' claims in the Verified Complaint;

2. DraftKings will be irreparably harmed in the absence of a preliminary injunction restraining and enjoining Mr. Hermalyn as set forth below and monetary damages would provide inadequate relief;

3. The balance of equities favors granting a preliminary injunction restraining and enjoining Mr. Hermalyn as set forth below;

4. A preliminary injunction restraining and enjoining Mr. Hermalyn as set forth below is in the public interest;

5. During the six (6) month period prior to February 1, 2024, Mr. Hermalyn performed services and/or received Confidential Information (as defined below) concerning the following aspects of DraftKings' business: (i) any fantasy or simulated activity or contest where winning outcomes are determined predominantly by accumulated statistical results of the performance of individuals in athletic or other events; the

wining outcome reflects the knowledge and skill of the participant; and a winning outcome is not based solely on the performance of a single team or individual (hereinafter "FSC"); (ii) games of chance or skill, pari-mutuel, fixed odds, pools or otherwise (including, but not limited to, lottery, pari-mutuel betting, bingo, horse and dog racing, simulated racing and sporting events, jai alai, sports betting, online casino games/iGaming, social casino, poker and keno) whether played for real money or cash equivalent, virtual currency, free, or otherwise and any type of ancillary service or product related to the foregoing (hereinafter "Gaming"); (iii) the digital platform facilitating the purchase and sale of nonfungible tokens and other collectibles (hereinafter "Marketplace"); (iv) the sale and distribution of nonfungible tokens, collectibles, clothing, accessories, and other apparel (hereinafter "eCommerce"); (v) the development, distribution, procurement and programming of content offerings in audio and video focused media related to sports and/or any aspects of DraftKings' business, including but not limited to those aspects of DraftKings' business set forth in (i)-(iv) above (hereinafter "Media").

6. Section (g) of the Noncompetition Covenant between Mr. Hermalyn and DraftKings dated August 16, 2023 (ECF 1-2, the "Noncompetition Covenant") extends the duration of Mr. Hermalyn's non-competition obligations as set forth therein.

7. Pursuant to Section (f) of the Noncompetition Covenant and Section 9 of the Confidentiality Agreement between Mr. Hermalyn and DraftKings dated August 31, 2020 (ECF 1-1, the "Confidentiality Agreement"), the internal substantive laws of Massachusetts govern those agreements.

Upon consideration of the Motion, Memorandum of Law, Affidavits, and Exhibits in support of the Motion, as well as the above findings, the Court hereby ORDERS that:

a) **Nondisclosure.** Mr. Hermalyn is hereby restrained and enjoined from using or disclosing any of DraftKings' Confidential Information, which is defined as: information or compilations of information in any form (tangible or intangible or otherwise), that is not generally known to competitors or the public, which DraftKings considers to be confidential and/or proprietary, including but not limited to: research and development; techniques; methodologies; strategies; product information, designs, prototypes and technical specifications; algorithms, source codes, object codes, trade secrets or technical data; training materials methods; internal policies and procedures; marketing plans and strategies; pricing and cost policies; customer, supplier, vendor and partner lists and accounts; customer and supplier preferences; contract terms and rates; financial data, information, reports, and forecasts; inventions, improvements and other intellectual property; product plans or proposed product plans; know-how; designs, processes or formulas; software and website applications; computer passwords; market or sales information, plans or strategies; business plans, prospects and opportunities (including, but not limited to, possible acquisitions or dispositions of businesses or facilities); information concerning existing or potential customers, partners or vendors, as well as information of or related to DraftKings' current or potential customers, vendors or partners that is considered to be confidential or proprietary to the applicable customer, vendor or partner (collectively, "Confidential Information"). For the avoidance of doubt, Mr. Hermalyn is not restrained or enjoined from using or disclosing DraftKings' information: (i) in the public domain (other than as a result of disclosure by Mr. Hermalyn); (ii) approved in writing for unrestricted release by DraftKings; or (iii) produced or disclosed pursuant to a valid court order, provided that Mr. Hermalyn has given DraftKings written notice of

such request such that DraftKings has an actual, reasonable opportunity to defend, limit or protect such production or disclosure.

b) **Preservation.** Mr. Hermalyn is hereby restrained and enjoined from moving, destroying, deleting, altering, or otherwise disposing of any files, documents, and digital media that contain any Confidential Information and/or that are derived from such information.

c) **Noncompetition.** Mr. Hermalyn is hereby restrained and enjoined for a period of twelve (12) months from the date of this Order, acting individually, or as an owner, shareholder, partner, employee, contractor, agent or otherwise, from directly or indirectly: (1) providing any services to Fanatics, Inc. and Fanatics, Inc.'s subsidiaries, affiliates, and joint ventures (individually and together, "Fanatics") relating to FSC, Gaming, Marketplace, eCommerce and/or Media and any type of ancillary service or product related to or connected with the foregoing; and/or (2) providing any services to Fanatics relating to any other aspect of the Business of DraftKings for which Mr. Hermalyn performed services and/or received Confidential Information at any time during the six (6) month period prior to February 1, 2024; and/or (3) committing a Threatened Breach of the obligations set forth in this paragraph.

    i. "Business of DraftKings" shall mean the research, design, development, marketing, broadcasting, streaming, promotion, sales, operations, maintenance and commercial exploitation pertaining to the operation of, and providing products and services for: (1) FSC; (2) Gaming; (3) Marketplace; (4) eCommerce; (5) Media; (6) all other products and services that existed, were in development, or were under consideration by DraftKings during Mr. Hermalyn's employment with DraftKings (hereinafter "Other Products and

Services"); and (7) all products and services incidentally related to, or which were an extension, development, or expansion of FSC, Gaming, Marketplace, eCommerce, Media or Other Products and Services.

    ii. "Threatened Breach" shall mean any attempt be Mr. Hermalyn to engage in conduct that would breach paragraph (c), (d) or (e) of this Order.

d) **Nonsolicitation of Customers, Clients, Vendors or Partners.** Mr. Hermalyn is hereby restrained and enjoined for a period of twelve (12) months from the date of this Order from, directly or indirectly, either for himself or for any other person, partnership, legal entity, or enterprise: (i) soliciting or transacting business, or attempting to solicit or transact business with, any of DraftKings' customers, clients, vendors or partners, or with any of DraftKings' prospective customers, clients, vendors or partners about which Mr. Hermalyn learned Confidential Information or which Mr. Hermalyn had some involvement or knowledge related to any aspect of the Business of DraftKings; and/or (ii) committing a Threatened Breach of the obligations set forth in this paragraph.

e) **Nonsolicitation of Employees.** Mr. Hermalyn is hereby restrained and enjoined for a period of twelve (12) months from the date of this Order from directly or indirectly, either for himself or for any other person, partnership, legal entity, or enterprise: (i) soliciting, in person or through supervision or control of others, an employee, advisor, consultant or contractor of DraftKings for the purpose of inducing or encouraging the employee, advisor, consultant or contractor to leave his or her relationship with DraftKings or to change an existing business relationship to the detriment of DraftKings; (ii) hiring away an employee, advisor, consultant or contractor of DraftKings; (iii) helping another person or entity hire

away a DraftKings employee, advisor, consultant or contractor; and/or (iv) committing a Threatened Breach of the obligations set forth in this paragraph.

**SO ORDERED.**

_____
Judge Julia Kobick

Boston, Massachusetts

Dated: April ___, 2024