# EXHIBIT D

## GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
gibsondunn.com

Harris M. Mufson
Direct: +1 212.351.3805
Fax: +1 212.817.9505
HMufson@gibsondunn.com

February 29, 2024

<u>Via E-Mail</u>

Russell Beck
Stephen Riden
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, MA 02110
rbeck@beckreed.com

Re:   *DraftKings Inc. v. Michael Hermalyn*, Civil Action No. 1:24-cv-10299

Dear Russell:

I write in response to your February 21, 2024 letter (the "Letter"). Although DraftKings respectfully disagrees with all claims and allegations you have made therein, we do not think it would be productive to specifically address each of those claims and allegations here. That said, we do believe it would be productive to point out certain glaring inaccuracies, as well propose a protocol for moving forward.

At the outset, your Letter concedes Mr. Hermalyn remains out of compliance with the Court's February 8 Order (the "Order") because he has not returned and remains in possession of DraftKings' Confidential Information, including contacts "he met [] during the period he worked at DraftKings," which include DraftKings' customers and partners. And the information DraftKings has uncovered through a preliminary forensic evaluation of Mr. Hermalyn's activity on Google Workspace, Dropbox, various websites, and his company-issued laptops (at least the one that was not factory reset prior to returning to DraftKings) shows Mr. Hermalyn has not conducted a thorough search for Confidential Information in his possession, custody, or control.

Although we do not agree with his purported excuse for non-compliance, we remain willing to discuss a reasonable protocol to ensure the prompt return of DraftKings' Confidential Information and address that issue below. Beyond the return of Mr. Hermalyn's DraftKings contacts, we question the veracity of his sworn certification that he is not in possession of any DraftKings' Confidential Information. Mr. Hermalyn admittedly used a personal iPhone and email account to access DraftKings' Confidential Information, yet he has not returned a single document or communication to DraftKings. Nor has he returned any documents or communications from—or even disclosed his use of—additional personal devices and accounts that DraftKings now (through a forensic evaluation) knows he used to access its Confidential Information, including an iPad with suspected serial number DMPXL1P5KD8C.

GIBSON DUNN

Russell Beck
Beck Reed Riden LLP
February 29, 2024
Page 2

DraftKings will not tolerate Mr. Hermalyn's continued misconduct. We demand prompt answers.

**<u>Failure to return *any* DraftKings documents.</u>** By Mr. Hermalyn's own admission, he "*regularly* accessed DraftKings' documents" on his personal phone. Dkt. No. 36 ¶¶ 48-49 (emphasis added). And your Letter acknowledges the existence of DraftKings' documents contained within his personal phone and/or his personal email account. Consistent with his admission, activity logs from DraftKings' Google Workspace confirm Mr. Hermalyn synced his personal phone with DraftKings' Google Drive. ***Yet, Mr. Hermalyn has not returned a single document stored on his personal iPhone or in his personal email account***. Documents accessed, viewed, or downloaded from DraftKings' systems, including Google Workspace, are DraftKings' property. No "protocol" is necessary for counsel to review the documents residing on Mr. Hermalyn's personal devices and accounts (including email and Dropbox) and determine whether they must be returned to DraftKings in accordance with the Order. Similarly, Mr. Hermalyn is required to return all communications (and attachments thereto) containing any DraftKings' Confidential Information. Your Letter indicates neither you nor Mr. Hermalyn has taken any effort to search for DraftKings' documents in the iPhone and email account in your possession. Please further confirm in writing whether this is the case.

DraftKings has also learned that on January 16, 2024, Mr. Hermalyn sent a series of Slack messages to his own Slack user account attaching nearly one dozen confidential DraftKings documents and later viewed or downloaded certain of those documents on a non-DraftKings device. *See* DraftKings' Response to Interrogatory No. 1 (listing the downloaded documents by filename). Mr. Hermalyn has not returned any of the documents that he sent to his own Slack account and then downloaded. Please return these documents and information immediately, and please further confirm in writing whether Mr. Hermalyn has searched for these documents and describe his efforts in detail.

DraftKings' preliminary forensic investigation also indicates Mr. Hermalyn visited the website Dropbox.com and various subpages—including the log in page—on January 16, 2024, and installed the Dropbox application locally on at least one of his Company-issued laptops prior to January 17, 2024. The Dropbox installation was linked to Mr. Hermalyn's personal email account. DraftKings' preliminary forensic review indicates Mr. Hermalyn synced hundreds of DraftKings' documents to his personal Dropbox account. Again, none of those documents have been returned to DraftKings. Please confirm in writing whether Mr. Hermalyn has searched his Dropbox account for DraftKings' Confidential Information and describe his efforts to locate any such documents in detail.

**<u>Failure to disclose additional personal devices and accounts.</u>** Mr. Hermalyn has repeatedly represented to the courts in both the Massachusetts and California actions that he has turned

# GIBSON DUNN

Russell Beck
Beck Reed Riden LLP
February 29, 2024
Page 3

over to counsel access to all devices and accounts that may contain "DraftKings' Confidential Information (as defined by the Confidentiality Agreement)" (Order § (f)).[1]  The Massachusetts Court relied upon Mr. Hermalyn's representations when determining he was not required to turn over his personal phone or accounts for a forensic audit.  *See* Feb. 8, 2024 Hr'g Tr. at 58:3–8 (stating it was the Court's view that "the document requests, and especially the request to conduct a forensic audit of all of Mr. Hermalyn's devices[,] are overbroad and highly . . . burdensome, particularly where Mr. Hermalyn bought a new device after *turning over his devices to DraftKings or counsel*" (emphasis added)).

These representations make no mention of any personal devices and accounts besides the iPhone he returned to counsel, his personal email, and his iCloud account.  Yet, DraftKings' forensic evaluation of the company-issued laptops Mr. Hermalyn returned shows he used additional personal devices and at least one personal Dropbox account to access and download or save DraftKings' Confidential Information.  As detailed in DraftKings' Responses and Objections to Mr. Hermalyn's First Set of Interrogatories, activity logs from DraftKings' Google Workspace confirm that throughout his employment, Mr. Hermalyn synced *several* personal devices to DraftKings' Google Drive, including at least one iPad Pro and multiple iPhones, none of which were company-issued devices.  Because the iPad and at least one of the iPhones have never been disclosed to DraftKings by Mr. Hermalyn or his counsel, we have reason to believe they were never searched or reviewed in connection with Mr. Hermalyn's obligation to return DraftKings' Confidential Information.

Mr. Hermalyn must immediately stop using all personal devices and accounts containing DraftKings' Confidential Information, preserve all information contained therein, and return the Confidential Information on those devices and accounts to DraftKings.  For reference, the non-DraftKings devices and accounts we have identified to date, which have accessed or downloaded DraftKings' documents are identified in **Appendix A.**  Please confirm in writing the status of each device and account.  With respect to the devices, please confirm the phone numbers and/or iCloud accounts associated with each device and whether Mr. Hermalyn continues to have access to those numbers or accounts.  For example, please confirm whether Mr. Hermalyn's new phone has the same phone number as any of the devices he historically used to access DraftKings' Confidential Information, and, if so, whether any information or data associated with that phone number has been transferred to Mr. Hermalyn's new device as

---

[1] *See* Hermalyn Decl., *Hermalyn and FVP, LLC vs. DraftKings, Inc.*, No. 24STCV02694 (Cal. Super. Ct. Feb. 5, 2024);  Hermalyn Decl., *DraftKings Inc. v. Hermalyn*, No. 1:24-cv-10299 (D. Mass. Feb. 7, 2024), ECF No. 36 ¶ 45-51; Hermalyn Decl., *Hermalyn and FVP, LLC vs. DraftKings, Inc.*, No. 24STCV02694 (Cal. Super. Ct. Feb. 13, 2024); Hermalyn Decl., *Hermalyn and FVP, LLC vs. DraftKings, Inc.*, No. 24STCV02694 (Cal. Super. Ct. Feb. 20, 2024); Hermalyn Cert. ¶ 2; Hermalyn Response to Interrogatory No. 1 .

GIBSON DUNN

Russell Beck
Beck Reed Riden LLP
February 29, 2024
Page 4

a result. If Mr. Hermalyn no longer has access to any of these devices, please identify the date on which he disposed of the device.

**Inadequate production of business contacts.** With respect to the Confidential Information Mr. Hermalyn has returned to DraftKings, we continue to believe Mr. Hermalyn's limited production of partial contact information for various DraftKings employees, a mere eleven DraftKings customers, and no business contacts or partners does not come close to compliance with the Order. We have ample reason to believe Mr. Hermalyn has the contact information for many of DraftKings' customers, business contacts and partners (including DraftKings' customers and partners, whom he met through the "Friends of DK" program). We also have evidence that Mr. Hermalyn communicated with numerous VIP clients whose contact information he has not returned. Again, the Order requires Mr. Hermalyn to "return to DraftKings *all* DraftKings' Confidential Information" in his possession, custody, or control. Order § (f) (emphasis added).[2]

It is Mr. Hermalyn's obligation to make a good faith determination about which contacts are DraftKings' property. To the extent Mr. Hermalyn is unsure about particular contacts, he must promptly return them to DraftKings so our client can consider whether they are, in fact, DraftKings' property. The Order does not require DraftKings to provide a "protocol" for you to review the materials on Mr. Hermalyn's personal devices.

Your Letter also mischaracterizes my statements on our February 12 call. I did not assert that Mr. Hermalyn's hairstylist would be "transformed into a DraftKings contact" by virtue of Mr. Hermalyn sharing the hairstylist's contact information with a customer, nor did I assert that Mr. Hermalyn would be forced to delete his grandmother's contact information if she considered placing a bet on DraftKings' platform. I made clear it is not productive to discuss outlandish hypotheticals. And it remains unproductive to do so. The Order is the Order and it governs Mr. Hermalyn's obligations. Let me be crystal clear – DraftKings is not interested in Mr. Hermalyn's personal contacts, including those regarding his family members. As I explained during our call, Mr. Hermalyn is uniquely positioned to know the nature and history of his relationships with the contacts contained in his phone and email account. It is therefore

---

[2] "Confidential Information" is defined in the Nonsolicitation, Nondisclosure & Assignment of Inventions Agreement dated August 31, 2020 as "all information or compilation of information, in any form . . . that is not generally known to competitors or the public, which [DraftKings] considers to be confidential and/or proprietary, including but not limited to . . . marketing plans and strategies; pricing and cost policies; customer, supplier, vendor and partner lists and accounts; customer and supplier preferences; contract terms and rates . . . market or sales information, plans or strategies; business plans, prospects and opportunities (including, but not limited to, possible acquisitions or dispositions of businesses or facilities); [and] information concerning existing or potential customers, partners or vendors." *See* Dkt. No. 1-1, § (iii).

GIBSON DUNN

Russell Beck
Beck Reed Riden LLP
February 29, 2024
Page 5

not possible to construct a protocol to definitively navigate every possible scenario. These determinations must be made on a case-by-case basis by Mr. Hermalyn in good faith, and certainly cannot be made by DraftKings without the knowledge of the contacts to which Mr. Hermalyn believes are his.

Although we maintain that it is Mr. Hermalyn's obligation to review the contacts and information in his possession and make a good faith determination about what he must return to DraftKings pursuant to the Order, for the purposes of expediting the return of at least *some* of DraftKings' Confidential Information, we propose the following as a starting point for his review: Mr. Hermalyn must promptly return any customer, partner, and business contacts that he received and is in possession of due to, and in connection with, his employment during the period that he was employed by DraftKings.[3] If Mr. Hermalyn cannot determine whether a contact satisfies this definition or if he believes that a contact is genuinely both business-related and personal, he must identify the contact to us and explain the specific circumstances, so we may confer about the appropriate approach.

**Forensic Imaging.** Thank you for confirming via email on February 28 that Mr. Hermalyn's devices and accounts in your possession will be forensically imaged and preserved. This is particularly necessary in light of the information DraftKings has uncovered in the forensic evaluation of Mr. Hermalyn's company-issued laptops as described above and in DraftKings' interrogatory responses. We appreciate your prompt attention to this matter.

**With this letter, DraftKings demands that Mr. Hermalyn supplement his deficient February 12, 2024 production of documents with any and all additional DraftKings' Confidential Information within his possession, custody, or control, including any Confidential Information on the devices and accounts in Appendix A and to answer the questions posed in this letter by March 4, 2024. If he does not plan to supplement his production and certification, please advise immediately, but no later than the close of business on <u>March 4, 2024</u>. If Mr. Hermalyn fails to comply with the Order, DraftKings reserves the right to take all appropriate action, which may include a motion for contempt for failure to comply with the Order and to compel a forensic examination of Mr. Hermalyn's devices and accounts.**

---

[3] For example, part of Mr. Hermalyn's job was spending DraftKings resources to deepen relationships with current and prospective customers and partners. All such contacts he encountered and developed during his employment are DraftKings' Confidential Information.

**GIBSON DUNN**

Russell Beck
Beck Reed Riden LLP
February 29, 2024
Page 6

We look forward to your cooperation.  DraftKings reserves all rights, claims, and defenses, and waives none.

Sincerely,

*Harris M. Mufson*

Harris M. Mufson


cc: Brad Brian
Bethany Kristovich
Anne Conley
Munger, Tolles & Olson LLP