# EXHIBIT E



Beck Reed Riden LLP
155 Federal Street | Suite 1302
Boston | Massachusetts 02110
Tel. (617) 500-8660 | Fax (617) 500-8665
BeckReedRiden.com

**Russell Beck**
Direct: (617) 500-8670
rbeck@beckreed.com

March 12, 2024

<u>Via E-Mail</u>

Harris M. Mufson, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
*HMufson@gibsondunn.com*

       Re:    *DraftKings Inc. v. Michael Hermalyn*, Civil Action No. 1:24-cv-10299

Dear Harris:

This letter responds to your February 29, 2024 correspondence. We disagree with all of the claims and allegations made therein, including for the reasons noted below.

**Return of DraftKings' Confidential Information and compliance with the Court's Order.** We disagree with your assertions that Mr. Hermalyn has failed to comply with the Court's February 8 Order (the "Order") and has engaged in misconduct related to the Order or DraftKings' Confidential Information. To the contrary, as explained in our February 21 letter, Mr. Hermalyn took steps before his resignation to ensure that he was no longer in possession of DraftKings' Confidential Information, and since then, he has made every effort to "return to DraftKings all DraftKings' Confidential Information (as defined in the Confidentiality Agreement)" (Dkt. No. 44, Order § (f)). In particular, Mr. Hermalyn returned DraftKings-issued devices to DraftKings, gave his personal devices to counsel, relinquished access to his personal accounts, returned to DraftKings those business contacts that Mr. Hermalyn believes DraftKings would likely contend are its contacts, and segregated other contacts that he believes are his but that he met during the period of his employment with DraftKings. Since taking these steps, Mr. Hermalyn has attempted to work cooperatively with DraftKings to further ensure his compliance with the Court's Order and related discovery obligations.

As Mr. Hermalyn's February 12 Certification makes clear, subject to the explanations provided therein, none of DraftKings' Confidential Information is in Mr. Hermalyn's possession, custody, or control. And, Mr. Hermalyn has not accessed any of the devices or accounts that he turned over to counsel prior to his resignation.

Given Mr. Hermalyn's good faith efforts to engage on these issues—and because there is no dispute that Mr. Hermalyn does not have access to *any* of his old personal devices or accounts (or any information they contain) that could contain DraftKings-related information—DraftKings' threats to move for contempt for noncompliance with the Order are improper.



Harris M. Mufson, Esq.
March 12, 2024
Page 2

**Document discovery from personal accounts and devices.**  As your letter acknowledges, we have already confirmed that Mr. Hermalyn's personal accounts and devices will be forensically imaged and preserved.  We disagree, however, with your assertion that the Court's Order requires Mr. Hermalyn to search for and produce documents and information at this time and without the parties first agreeing to a reasonable search protocol.

While Mr. Hermalyn has agreed to the forensic imaging and preservation of his accounts and devices, the Court did *not* order document discovery and did *not* require Mr. Hermalyn to turn over his personal phone or accounts for forensics to be run on them.  To the contrary, the Court expressly rejected DraftKings' requests for these forms of discovery in advance of the preliminary injunction hearing.  *See* Feb. 8, 2024 Hr'g Tr. at 58:3-8 (stating that "the document requests, and especially the request to conduct a forensic audit of all of Mr. Hermalyn's devices[,] are overbroad and highly . . . burdensome, particularly where Mr. Hermalyn bought a new device after turning over his devices to DraftKings or counsel" and that "[t]he process of searching for a broad range of documents – searching, segregating, reviewing, redacting, compilation of privilege log would take months").  Given that the Court expressly rejected DraftKings' requests for document discovery and a forensic analysis of Mr. Hermalyn's devices and accounts, we fail to see how the Order compels Mr. Hermalyn to conduct the searches described in your letter, which would necessarily require a document review and forensic investigation.

We remain available to meet and confer to discuss a reasonable protocol for reviewing Mr. Hermalyn's devices and accounts—including his personal Dropbox, Google Drive, and Gmail accounts, his iCloud account, and his devices—and identifying and producing responsive documents and information.  The identification of responsive documents and information will require sophisticated searching parameters available only on a review platform, which we can set up once the imaging process is complete.  To the extent DraftKings wishes for copies of certain such documents and information to be deleted, this must be done in a way that preserves evidence.  We are hopeful that you will work with us to develop a reasonable protocol so that we can undertake this review in a timely manner.

**Further information regarding personal accounts and devices.**  As a further show of good faith, we provide additional information in response to your various questions about Mr. Hermalyn's personal accounts and devices.  Again, Mr. Hermalyn has turned over to counsel all personal accounts and devices in his possession that may have any relevance to this action.

Mr. Hermalyn gave counsel his iPhone before resigning from DraftKings, and after learning from DraftKings' interrogatory responses that DraftKings believed he had synced an iPad Pro to DraftKings' Google Drive, Mr. Hermalyn searched for and turned over his iPad.  Mr.



Harris M. Mufson, Esq.
March 12, 2024
Page 3

Hermalyn has not accessed any DraftKings information or documents on this device since resigning.

Mr. Hermalyn created a new iCloud account for purposes of using his new iPhone and has not synced the new iPhone with his old iCloud account (to which he does not have access). Mr. Hermalyn confirms that no data associated with the old iCloud account was transferred to his new iPhone, and that he does not have access to any information that may be stored in that account.

Your letter requests that Mr. Hermalyn confirm that he has searched for any documents and information that he sent to his own Slack account. Mr. Hermalyn does not have his own Slack account, and as he testified at his deposition, he no longer has access to his DraftKings Slack account and did not take or retain any information from that account. *See* Tr. at 119-22, 133-34, 139, 147-49.

Your letter also makes reference to Dropbox. Mr. Hermalyn's counsel have possession of his Dropbox account, he does not have access to any information that may be stored in that account, and he has not accessed any DraftKings information or documents on this account since resigning.

Below is the information you requested for each of the devices listed in Appendix A of your letter:

1. <u>Device 1 – iPhone 15 Pro Max (Serial No. GQMH5WT41F)</u>: On January 31, 2024, Mr. Hermalyn gave this iPhone to counsel before resigning from DraftKings on February 1. He does not have access to this device. This device is associated with Mr. Hermalyn's current phone number, but with his old iCloud account, which we will image and preserve.

2. <u>Device 2 – iPhone 14 Pro Max (Serial No. T0XR477FVK)</u>: In September 2023, Mr. Hermalyn traded in this device for the iPhone 15 Pro Max listed above. Accordingly, Mr. Hermalyn does not have access to this device. The device was associated with Mr. Hermalyn's current phone number, but with his old iCloud account.

3. <u>Device 3 – iPad Pro 11" 3rd Gen Wi-Fi/Cellular – US/CA (Serial No. DMPXL1P5KD8C)</u>: Mr. Hermalyn gave this iPad to counsel on March 4, 2024, shortly after learning from DraftKings' interrogatory responses that DraftKings believed he had synced an iPad Pro to DraftKings' Google Drive. He does not have access to this device and did not access any DraftKings information (if any) on this device between resigning from DraftKings and turning over the iPad to counsel. This iPad was associated with Mr. Hermalyn's old iCloud account.



Harris M. Mufson, Esq.
March 12, 2024
Page 4

4.   <u>Device 4 – iPad Pro 10.5-inch – Wi-Fi (Serial No. DLXV20NFHP83)</u>:  Mr. Hermalyn is not familiar with this device, and to the best of his knowledge, he does not own another iPad.  Please provide additional information that may help him identify it (*e.g.*, when it was last connected to DraftKings' systems).

All devices and accounts that Mr. Hermalyn delivered to his counsel are being imaged, and as noted above, we are available to meet and confer to discuss a reasonable protocol for searching them for any information that may belong to DraftKings.

**Protocol for production of additional business contacts.**  Regarding the category of contacts that Mr. Hermalyn believes are his but that he met during the period of his employment with DraftKings, while Mr. Hermalyn does not concede that contact information constitutes a trade secret or is otherwise Confidential Information, out of an abundance of caution and in the spirit of good faith cooperation, he has agreed to review the disputed category of contacts subject to a reasonable protocol.

You have proposed that Mr. Hermalyn return "any customer, partner, and business contacts that he received and is in possession of due to, and in connection with, his employment during the period that he was employed by DraftKings."  We agree to review the disputed contacts with that guidance, and we will return contacts that Mr. Hermalyn determines fall under that category. Because we believe the terms "partner" and "business contacts" are undefined, we will interpret "partner" to mean individuals or companies with whom DraftKings has a contractual business relationship and "business contacts" to mean any contacts Mr. Hermalyn met at events paid for by DraftKings and with an intent that they could further DraftKings' business.  If Mr. Hermalyn cannot determine whether a contact satisfies the definition or believes that a contact is both business-related and personal, he will identify the contact and explain the circumstances so that we may confer about a path forward.

This process will require our forensics vendor to export a spreadsheet of this segregated category of contacts and disclose those contacts to Mr. Hermalyn for his review pursuant to the protocol described above.  Please confirm that it is acceptable to DraftKings for Mr. Hermalyn to receive and review the contact information for the purposes of undertaking this review.  If you have any concerns about this proposal, we are available to meet and confer.

Mr. Hermalyn reserves all rights, claims, and defenses, and waives none.  We respectfully request that if you file the parties' correspondence on these subjects with the Court, you include a copy of this letter.

We look forward to your response.


**Beck Reed Riden** LLP

Harris M. Mufson, Esq.
March 12, 2024
Page 5


Very truly yours,

Russell Beck


cc:    Stephen D. Riden, Esq.
       Brad D. Brian, Esq.
       Bethany W. Kristovich, Esq.
       Anne K. Conley, Esq.