# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DRAFTKINGS INC.,

       Plaintiff,

  v.

MICHAEL HERMALYN,

       Defendant.

Civil Action No. 1:24-cv-10299

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 3

PROCEDURAL HISTORY .................................................................................................. 5

    A.    Massachusetts Action ................................................................................. 5

    B.    California Action ......................................................................................... 6

ARGUMENT ........................................................................................................................ 9

    I.    DEFENDANT'S MOTION TO DISMISS IS AN IMPROPER MOTION FOR RECONSIDERATION .................................................................................... 9

    II.    DEFENDANT'S FORUM NON CONVENIENS ARGUMENT IS FRIVOLOUS ......... 10

    A.    The Parties' Forum Selection Clauses Bar Defendant's Argument ................ 10

    B.    This Court Correctly Held That Massachusetts Law Applies ........................... 12

    C.    California Is An Inadequate Forum Because It Lacks Jurisdiction Over DK .................................................................................................... 14

    III.    DEFENDANT'S REQUEST FOR A COLORADO RIVER STAY IS FRIVOLOUS ................. 17

CONCLUSION .................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adelson v. Hananel*,
  510 F.3d 43 (1st Cir. 2007) ................................................................14

*Amyndas Pharms., S.A. v. Zealand Pharma A/S*,
  48 F.4th 18 (1st Cir. 2022) ...........................................................10, 11

*Aspect Software, Inc. v. Barnett*,
  787 F. Supp. 2d 118 (D. Mass. 2011) ..........................................13, 14

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
  571 U.S. 49 (2013)..........................................................................2, 12

*Atlas Glass & Mirror, Inc. v. Tri-N. Builders, Inc.*,
  997 F.3d 367 (2021)............................................................................11

*Bankart v. Ho*,
  60 F. Supp. 3d 242 (D. Mass. 2014) ...................................................18

*Barbaro v. United States ex rel. Fed. Bureau of Prisons*,
  2007 WL 9805534 (D. Mass. May 23, 2007) .....................................10

*Biltcliffe v. CitiMortgage, Inc.*,
  772 F.3d 925 (1st Cir. 2014)...............................................................9

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017).............................................................................15

*Bristol-Myers Squibb Co. v. Super. Ct.*,
  582 U.S. 255 (2017).............................................................................16

*Calder v. Jones*,
  465 U.S. 783 (1984).............................................................................16

*Chan v. Wellington Mgmt. Co. LLP*,
  424 F. Supp. 3d 148 (D. Mass. 2019) .................................................14

*Claudio-De Leon v. Sistema Universitario Ana G. Mendez*,
  775 F.3d 41 (1st Cir. 2014)..................................................................11

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)..................................................................2, 17, 18

*Covidien LP v. Esch*,
  280 F. Supp. 3d 284 (D. Mass. 2017) .................................................19

*Elmendorf Grafica, Inc. v. D.S. Am. (E.), Inc.*,
  48 F.3d 46 (1st Cir. 1995)..............................................................19, 20

*EMC Corp. v. Donatelli,*
   2009 WL 1663651 (Mass. Sup. Ct. May 5, 2009) ................................................................14

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.,*
   592 U.S. 351 (2021) ............................................................................................................15

*Glassie v. Doucette,*
   55 F.4th 58 (1st Cir. 2022) .............................................................................................17, 18

*Iragorri v. Int'l Elevator, Inc.,*
   203 F.3d 8 (1st Cir. 2000) ......................................................................................................10

*KPS & Assocs., Inc. v. Designs By FMC, Inc.,*
   318 F.3d 1 (1st Cir. 2003) ......................................................................................................19

*Kurra v. Synergy Comput. Sols., Inc.,*
   2016 WL 5109132 (D. Mass. Sept. 19, 2016) ......................................................................10

*Maldonado-Cabrera v. Angelero-Alfaro,*
   26 F.4th 523 (1st Cir 2022) ................................................................................................6, 17

*In re Mercurio,*
   402 F.3d 62 (1st Cir. 2005) ....................................................................................................12

*Modeski v. Summit Retail Sols., Inc.,*
   470 F. Supp. 3d 93 (D. Mass. 2020) ................................................................................15, 18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983) ..............................................................................................................18, 20

*Nandjou v. Marriott Int'l, Inc.,*
   985 F.3d 135 (1st Cir. 2021) ............................................................................................15, 17

*Neelon v. Krueger,*
   63 F. Supp. 3d 165 (D. Mass. 2014) ..................................................................................2, 15

*Nowak v. Tak How Invs., Ltd.,*
   94 F.3d 708 (1st Cir. 1996) ....................................................................................................14

*Nuance Commc'ns, Inc. v. Kovalenko,*
   2022 WL 2347112 (D. Mass. June 29, 2022) ......................................................................14

*Oxford Glob. Res., Inc. v. Guerriero,*
   2003 WL 23112398 (D. Mass. Dec. 30, 2003) ....................................................................14

*Paul Revere Variable Annuity Ins. Co. v. Thomas,*
   66 F. Supp. 2d 217 (D. Mass. 1999) ................................................................................17, 19

*Roger Edwards, LLC v. Fiddes & Son Ltd.,*
   437 F.3d 140 (1st Cir. 2006) ..................................................................................................10

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,*
   549 U.S. 422 (2007) ................................................................................................................10

*Taylor-Rush v. Multitech Corp.*,
   217 Cal. App. 3d 103 (Ct. App. 1990)............................................................16

*Thorpe v. Excel Inc.*,
   2023 WL 6466370 (D. Mass. Oct. 4, 2023)......................................................2

*United States v. Fairway Cap. Corp.*,
   483 F.3d 34 (1st Cir. 2007)..............................................................................20

*Walden v. Fiore*,
   571 U.S. 277 (2014)..................................................................................16, 17

**Statutes**

28 U.S.C. § 1331..................................................................................................6, 20

28 U.S.C. § 1441......................................................................................................20

18 U.S.C. §§ 1836 *et seq.*...................................................................................5, 18

M.G.L. c. 149, § 24L(b)..........................................................................................14

M.G.L. c. 93, §§42-42G.............................................................................................5

**Rule**

Fed. R. Civ. P. 11.....................................................................................................10

## INTRODUCTION

This Court already rejected—*twice*—Defendant's arguments that this case should be stayed or dismissed in favor of a California court.  This Court specifically held that it had a "'virtually unflagging obligation' to exercise its jurisdiction in this case."  ECF 29 (citation omitted). In rejecting Defendant's arguments to the contrary, this Court observed that Defendant signed a confidentiality agreement and a noncompetition covenant with DraftKings Inc. ("DK"), a *Massachusetts* company.  He submitted to the personal jurisdiction of the United States District Court for the *District of Massachusetts*, agreed to give *Massachusetts courts* "exclusive jurisdiction" over any dispute, and agreed *Massachusetts law* would govern.  ECF 1-1 ("Confidentiality Agreement"), § 9; ECF 1-2 ("Noncompetition Covenant"), § (f); ECF 1 ("Compl."), ¶¶ 50–51.

Defendant made and lost the arguments he recycles now in the days before this Court's February 8 TRO hearing.  On February 6, Defendant sought an "emergency" stay, arguing this Court should pause this case in favor of the state court proceeding he had filed in California (the "California Action").  This Court *summarily rejected* his request without hearing from DK. Among other reasons, the Court relied on the forum selection and choice of law provisions Defendant voluntarily signed, each pointing to *Massachusetts*, not California.  ECF 29.  On February 7, Defendant opposed DK's TRO based on his unfounded beliefs that "this action [would] be dismissed on *forum non conveniens* grounds" and that California law governs this dispute.  ECF 33 at 20.  The Court rejected Defendant's argument and expressly held "*Massachusetts law applies to this dispute*."  ECF 46 ("H'rg Tr.") at 53:17 (emphasis added).

Unhappy with this Court's decisions, Defendant seeks reconsideration in the guise of a motion to dismiss, or in the alternative, to stay.  He makes this motion in the face of a mountain of new and overwhelming evidence against him—including that he *downloaded numerous*

*documents containing his Massachusetts employer's confidential information and trade secrets to his personal devices; solicited two of DK's Massachusetts-based employees; and attempted to cover his tracks by destroying evidence of his misconduct and lying in his sworn declarations*. In arguing this is an inconvenient forum, Defendant dismisses the fact that he traveled to work ***in Massachusetts*** 25 times between May 2021 and November 2023 alone.  Spencer Decl. Ex. A ("DK Third Am. Rog. Resp.") at 7–10.  And he brazenly admits he wants California law to apply because it supposedly "affords its residents ***free rein to compete against their former employers even using confidential information***."  ECF 69 ("MOL") at 15 (emphasis altered).

Defendant ***does not acknowledge this Court's prior adverse rulings*** or credibly dispute the evidence against him, much less present "newly discovered evidence" or argue the Court committed a "manifest error of law."  *Thorpe v. Excel Inc.*, 2023 WL 6466370, at *1 (D. Mass. Oct. 4, 2023).  Defendant's arguments remain just as unpersuasive on a third attempt.

**Reconsideration of Defendant's *Forum Non Conveniens* Argument**.  Defendant's *forum non conveniens* argument fails for two independent reasons.  First, the parties' forum selection clauses bar Defendant's argument: "When parties agree to a forum-selection clause, *they waive the right to challenge the preselected forum as inconvenient or less convenient*."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013) (emphasis added).  Second, California lacks personal jurisdiction over DK, rendering it an inadequate forum.  It is black-letter law that an adequate alternative forum exists only when "*all parties can come within that forum's jurisdiction*."  *Neelon v. Krueger*, 63 F. Supp. 3d 165, 170 (D. Mass. 2014) (emphasis added).

**Reconsideration of Defendant's Failed Emergency Stay Motion**.  *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), precludes a stay here.  The Court has already found that the California Action is not parallel to this suit because DK claims

misappropriation.  ECF 29.  That alone compels denial of Defendant's stay request.  And *none of the eight Colorado River factors weighs in Defendant's favor*.  Defendant chose to litigate in Massachusetts when he consented to the forum selection clauses.  This suit has advanced far beyond the California Action, where the court refused Defendant's request for emergency relief, has issued no other substantive rulings, and has yet to resolve whether it even has personal jurisdiction over DK.  And this Court has already decided that Massachusetts law (or federal law) controls.  Defendant's motion should be denied.

\* \* \*

In light of this Court's rulings and established First Circuit precedent, Defendant's arguments are not warranted by existing law.  And given his failure even to acknowledge his previous defeats, he does not come close to offering a nonfrivolous argument for changing the law.

## STATEMENT OF FACTS

When he was hired, Defendant agreed to nonsolicitation and nondisclosure restrictions, promising not to use or disclose DK's confidential information and, for twelve months following his employment, not to directly or indirectly solicit DK's customers, clients, vendors, partners, or employees.  Compl. ¶¶ 38–39, 42, 46–47.  These restrictions are governed by Massachusetts law and give Massachusetts courts "exclusive jurisdiction" over any dispute.  Confidentiality Agreement § 9.  In August 2023, in exchange for additional equity valued in the millions of dollars, Defendant entered a non-compete covenant (for the thirteenth time).  Compl. ¶¶ 50–51.  These non-compete restrictions are also governed by Massachusetts law and give Massachusetts courts "exclusive jurisdiction" over any dispute.  Noncompetition Covenant § (f).

While at DK, Defendant worked from the East Coast for his entire employment, first from New York and then from New Jersey.  Compl. ¶ 13.  Between May 11, 2021, and November 14,

2023, alone, Defendant traveled to Massachusetts for DK meetings, to meet with DK customers, and to work from DK's Massachusetts office 25 times (on average every six weeks).  *See* DK Third Am. Rog. Resp. at 7–10.

In January 2024, Defendant departed DK to work for one of its chief competitors.  ECF 36 ("Def. Decl.") ¶ 7.  At various points that month, while living and working on the East Coast, Defendant misappropriated DK's trade secrets and violated his contractual obligations to DK.  For example, Defendant reached out to Fanatics CEO Michael Rubin about a job on January 11, ECF 74-2 ("Depo. Tr.") at 106:2–107:7; Def. Decl. ¶ 13, and had meetings with Rubin on the East Coast—at Rubin's New York apartment on January 23, and in Pennsylvania on January 27, Depo. Tr. at 170:8–12; Def. Decl. ¶¶ 12–14.

On January 28, ***the day after conferring with Fanatics' counsel and discussing his non-compete agreement***, Defendant boarded a plane to Los Angeles and drafted an email containing a list of words: "Vote Apt Lease Doctor."  ECF 74-16; Harris 3-21 Aff. ¶ 4 & Ex. A; Depo. Tr. at 177:2–180:12.  These four words laid out the steps Defendant planned to take to set up a sham residency in California to escape his contractual obligations to DK.  *See* MOL at 3 n.1 ("Hermalyn had rented an apartment, obtained a driver's license, purchased a car, registered that car, registered to vote, and obtained appointments with a physician and a dentist all in California.").

On January 29, Defendant informed his Massachusetts-based supervisor and others that he needed time off because his friend had passed away.  ECF 89 ¶ 29.  Defendant was scheduled to be in Boston January 30 through February 2 for DraftKings meetings; the Company had already booked his hotel.  DK Third Am. Rog. Resp. at 9–10.  Instead, Defendant now admits ***he stayed in the personal residence of Fanatics' CEO in Los Angeles, from January 28 through at least February 1, while still employed by DK (and from where he solicited DK's employees and***

4

*misappropriated additional trade secrets)*.

On January 31, Fanatics created FVP, LLC, a California-based affiliate company whose sole purposes are to support Defendant's claim that he would be working in California and defeat federal jurisdiction.

On February 1, Defendant left DK and filed a lawsuit in California seeking to invalidate his contractual obligations to DK. That same day, Defendant solicited two of DK's Massachusetts-based employees—who were in Massachusetts at the time—to join Fanatics. ECF 77 ("Metz Aff.") ¶ 8; ECF 88 ("Larracey Aff.") ¶¶ 4, 9. Since then, Defendant has also solicited multiple DK customers in Nevada and New Jersey. ECF 70; ECF 70-1, at 33–34.

## PROCEDURAL HISTORY

### A.    Massachusetts Action

On February 5, DK filed its complaint, bringing claims for misappropriation of trade secrets (in violation of both the federal Defend Trade Secrets Act ("DTSA") and Massachusetts Uniform Trade Secrets Act), breach of contract (for misappropriation and violation of Defendant's non-solicit and non-compete clauses), misappropriation of confidential business information, breach of duty of loyalty, and conversion. Compl. ¶¶ 105–173. DK moved for a TRO because of, among other things, Defendant's unambiguous misappropriation of trade secrets and breach of his non-compete and non-solicit agreements. ECF 3; ECF 4. Defendant opposed based on his unfounded belief that California law governs this dispute, and that "this action [would] be dismissed on *forum non conveniens* grounds," ECF 33, **the same arguments he now recycles in his motion to dismiss**. MOL at 9–17.

Two days before the TRO hearing, Defendant moved for an emergency stay under the first-filed doctrine, arguing that his California lawsuit "involves the enforceability of the **same** post-employment restrictive covenants, relating to the **same** parties and arising from the **same**

underlying facts and legal issues." ECF 26 at 3; *compare* MOL at 20 (**using nearly identical language**).  Within hours, the Court denied Defendant's motion without waiting for a response from DK.  ECF 29.  The Court explained, "at a minimum," it had "subject matter jurisdiction over this action under 28 U.S.C. § 1331," due to DK's DTSA claim and must exercise its "'virtually unflagging obligation' to exercise jurisdiction in this case."  *Id.* (quoting *Maldonado-Cabrera v. Angelero-Alfaro*, 26 F.4th 523, 527 (1st Cir 2022)).  The Court further relied on the valid and enforceable forum selection and choice of law clauses in Defendant's contracts.  *Id.*

After extensive briefing and oral argument, the Court granted, in part, the TRO, rejecting Defendant's arguments.  ECF 44; Hr'g Tr. 46 at 51:7–8.  The Court explained Massachusetts "has a substantial relationship to the parties or transaction[] because [DK] is headquartered here."  Hr'g Tr. at 54:17–19.  "The contracts were negotiated between a company with its princip[al] place of business in Massachusetts and its employee, who visited Massachusetts on occasion for work, but who worked primarily in New York and lived in New Jersey, not California, when he negotiated the contract and worked for [DK]."  *Id.* at 54:23–55:5.  "Any harm caused by a violation of the agreements will be felt in Massachusetts."  *Id.* at 55:5–6.  "California has little connection to this case … other than the fact that [Defendant] moved to California one week" before the hearing.  *Id.* at 55:7–9.  As to the contract claims, "Massachusetts law applies to this dispute."  *Id.* at 53:15–22.

Defendant next moved for a "clarification" of the TRO.  ECF 48; ECF 49.  This Court denied the motion, informing Defendant that a "motion for clarification is not … an appropriate mechanism for seeking reconsideration of the temporary relief" granted in the TRO.  ECF 59.

## B.    California Action

Defendant and FVP, LLC (sometimes called "Fanatics VIP") (together, "California Plaintiffs") filed a complaint in Los Angeles Superior Court against DK on February 1 (the "California Complaint"), the day Defendant departed DK, seeking "a judicial declaration that … Mr.

Hermalyn may freely compete against DraftKings, including by working as the President of Fa-
natics VIP." ECF 70-2 ("CA Compl.") ¶ 93.  The California Complaint does not include any claim
"for misappropriation of trade secrets in violation of the [DTSA]" or any equivalent California
statute.  ECF 29.  The California Complaint alleged: "Fanatics VIP is a limited liability company
formed in California, with headquarters in Los Angeles, California."  CA Compl. ¶ 13.

DK removed the case to federal court that same night, alleging diversity between the parties
based on that representation.  Spencer Decl. Ex. B.  The next morning, California Plaintiffs moved
to remand the case ex parte.  *Id.*  The court granted remand *sua sponte* the following business day,
Monday, February 5, citing California Plaintiffs' representation that there was not complete diver-
sity because FVP, LLC's sole member (FVP, Inc.) is incorporated in Nevada, as is DK.  *Id.*  DK,
however, learned about FVP, Inc.—for the first time—in California Plaintiffs' remand papers.
After learning about FVP, Inc., DK uncovered records showing ***FVP, LLC and FVP, Inc. were
formed just one day before commencing suit in California state court***, and that Fanatics Hold-
ings, Inc.—which DK believed was the real party in interest—owned FVP, Inc.  *Id.* ¶¶ 22–24.  To
DK, this was a deliberate and improper attempt to defeat federal jurisdiction.[1]  Based on this newly
discovered information, DK removed the case to federal court again the night of February 5, al-
leging fraudulent joinder and sham plaintiff.  *Id.* ¶¶ 33–41.  California Plaintiffs again filed an ex
parte motion to remand.  Spencer Decl. Ex. C.  On its own motion, the court remanded on February
8.  ECF 70-4.

The California Action is now pending in Los Angeles Superior Court.  There, California
Plaintiffs moved for ex parte emergency relief on February 20.  Spencer Decl. Ex. D.  California

---

[1] DK's efforts to remove the California Action to federal court reflected this judgment and were
not, as Defendant gratuitously contends (at 6–7), "gamesmanship."

Plaintiffs principally argued: "a ruling from this Court on the importance of California public policy and its application to new residents **would assist the district court in Massachusetts in balancing these interests and fashioning an interim order** that is appropriate under the circumstances." *Id.* at 25 (emphasis added).

During the February 22 California TRO hearing, California Plaintiffs doubled down, describing this Court's decision issuing the February 8 TRO as not "correct" and "wrong":

> The Massachusetts judge, in issuing his order, expressly said that California had a limited interested in this matter. … And he cited two things -- she did. I'm sorry. She said two things. One, she said that Mr. Hermalyn had only become a recent California resident. Therefore, that meant California had a limited interest. And, secondly, she cited -- she distinguished a case that Mr. Beck and his colleagues cited, saying that was the case that was signed by California parties in California. Neither of those is correct. Neither is correct. … So the judge was wrong on that point. And, secondly, on the second point, she's also wrong.

ECF 70-5 at 8:2–9:4. California Plaintiffs effectively sought an advisory opinion "to educate the [Massachusetts District] Court about the strong governmental interest in California." ECF 70-5 at 9:16–17; 16:14–18 ("And that's exactly why we need an order now so that the Court in Massachusetts has the benefit of a judicial ruling in California.").

The California state court rejected California Plaintiffs' motion. Spencer Decl. Ex. E ("CA Minute Order"). That court found no reason to issue emergency relief given this Court's continued jurisdiction. *See* ECF 70-5 at 11:9–11. And that court explained that this Court could make its own determinations regarding application of the facts and law in this case. *See id.* at 17:11–15.

On March 1, DK moved to quash in the California Action because the California court lacks personal jurisdiction over DK. Spencer Decl. Ex. F. California Plaintiffs have not yet opposed DK's motion. Other than that denial of Defendant's request for emergency relief, the California court has issued no substantive rulings. Discovery has not commenced.

# ARGUMENT

## I.  DEFENDANT'S MOTION TO DISMISS IS AN IMPROPER MOTION FOR RECONSIDERATION

The Court should deny Defendant's motion to dismiss—a barely disguised motion for re-consideration—out of hand.  *Compare, e.g.*, MOL at 20 *with* ECF 26 at 3 (using nearly identical language to summarize argument).[2]  Defendant's motion to dismiss raises two arguments, neither of which are new:  (1) the Court should dismiss this action on *forum non conveniens* grounds; and (2) the Court should stay this action in favor of the first-filed California Action.  Defendant opposed DK's TRO based on his unfounded beliefs that "this action [would] be dismissed on *forum non conveniens* grounds" and that California law governs this dispute.  ECF 33 at 20.  And Defendant sought an "emergency" stay arguing this Court should pause this case in favor of the California Action.  ECF 25.  This Court rejected Defendant's arguments and expressly held "Massachusetts law applies to this dispute."  Hr'g Tr. at 53:17; ECF 29.  This Court relied, in part, on the forum selection and choice of law provisions Defendant voluntarily signed, each pointing to Massachusetts, not California.  ECF 29.

Motions for reconsideration are "granted sparingly, and only when the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations."  *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014) (quotation marks omitted).  "***A motion for reconsideration is not … a mechanism to regurgitate old arguments previously considered and rejected***."  *Id.* (emphasis added and cleaned up).  Defendant does not even mention the Court's previous orders, let alone identify any "manifest error of law" or newly discovered evidence that would warrant reconsideration.  The Court should not allow Defendant to wiggle his way around the Court's previous rulings by recharacterizing his request as one for

---

[2] Defendant already tried to slip a motion for reconsideration past the Court with his earlier motion for "clarification and refinement."  ECF 48.

dismissal under *forum non conveniens* or for a stay under the *Colorado River* doctrine. *Cf. Barbaro v. United States ex rel. Fed. Bureau of Prisons*, 2007 WL 9805534, at *1 (D. Mass. May 23, 2007) ("The court thus construes plaintiff's motion [for clarification] as a Motion for Reconsideration."). The Court should reject Defendant's brazen attempt to bypass its previous rulings.[3]

## II.   DEFENDANT'S *FORUM NON CONVENIENS* ARGUMENT IS FRIVOLOUS

"A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). The defendant must show "both that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum," which requires considering various private and public interests. *Iragorri v. Int'l Elevator, Inc.*, 203 F.3d 8, 12 (1st Cir. 2000). A valid forum selection clause conclusively resolves the private interests in favor of the chosen forum, and the public interest "factors will rarely defeat such a clause." *Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 33 (1st Cir. 2022) (cleaned up). When evaluating a motion to dismiss asserting *forum non conveniens*, a court "may receive evidence outside the pleadings" and "make credibility determinations." *Kurra v. Synergy Comput. Sols., Inc.*, 2016 WL 5109132, at *6 n.6 (D. Mass. Sept. 19, 2016).

### A.   The Parties' Forum Selection Clauses Bar Defendant's Argument

Defendant's *forum non conveniens* argument fails under the forum selection clauses he **repeatedly** signed (thirteen times) directing litigation between the parties to Massachusetts. *See* Compl. ¶¶ 15, 50, 51, 124; Confidentiality Agreement § 9; Noncompetition Covenant § (f). As this Court **already explained**, by agreeing to those clauses, Defendant "'submit[ted]' to the Court's

---

[3] *Cf.* Fed. R. Civ. P. 11(b); *Roger Edwards, LLC v. Fiddes & Son Ltd.*, 437 F.3d 140, 145 (1st Cir. 2006) (affirming Rule 11 sanctions where the sanctioned party's arguments took "a second bite at the apple" and its motion was a "collection of weak or undeveloped arguments that failed to respond to the fatal weaknesses identified" by court rulings).

exercise of personal jurisdiction in this case."  ECF 29.  Defendant ***does not even address*** this Court's prior ruling, because he has nothing to say:  The First Circuit has held unequivocally that a "valid and enforceable" forum selection clause conclusively resolves the private interest factors in favor of the chosen forum—here, Massachusetts.  *E.g.*, *Amyndas Pharms.*, 48 F.4th at 35–36.

Defendant scarcely acknowledges the forum selection clauses he agreed to, and he offers no argument that those clauses are invalid or unenforceable under federal or Massachusetts law. *See Amyndas Pharms.*, 48 F.4th at 30 (question governed by "federal common law"); *Atlas Glass & Mirror, Inc. v. Tri-N. Builders, Inc.*, 997 F.3d 367, 374 (2021) (declining to decide whether federal or forum law governed because "Massachusetts follow[s] the federal common-law standard").  Nor could he:  "A forum selection clause is 'prima facie valid,'" and should be enforced "absent a 'strong showing' by the resisting party that the clause is 'unreasonable.'"  *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 48 (1st Cir. 2014) (citation omitted). "[T]he party arguing that a forum selection clause is inapplicable 'bears a heavy burden of proof'"—which Defendant has not even attempted to satisfy.  *Id.* (citation omitted).

Specifically, Defendant does not argue—and thus has waived any argument—that the forum selection clauses to which he agreed are invalid under the First Circuit's well-established precedent that such a clause is unreasonable and unenforceable only if:  (1) the clause was the product of "fraud or overreaching"; (2) "enforcement would be unreasonable and unjust"; (3) proceedings in the forum would be "so gravely difficult" that they would practically deprive the challenging party of "his day in court"; or (4) "enforcement would contravene a strong public policy" of ***Massachusetts***.  *Claudio-De Leon*, 775 F.3d at 48–49 (citation omitted).  This Court should declare (again) that the forum selection clauses are valid and enforceable.

Contrary to Defendant's suggestion otherwise (at 9), that ends the analysis with respect to

the private interest factors of *forum non conveniens*.  As the Supreme Court has explained, "[w]hen parties agree to a forum-selection clause, ***they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses***."  *Atl. Marine Constr.*, 571 U.S. at 64 (emphasis added).  As a result, Defendant's purported California residency and the supposed inconvenience of litigating in Massachusetts are categorically irrelevant.

In any event, "something ***considerably more than the mere inconvenience of traveling*** to litigate in a different, even faraway foreign jurisdiction, is required to overcome a contractual agreement to do so."  *In re Mercurio*, 402 F.3d 62, 66 (1st Cir. 2005) (emphasis added).  Defendant has identified *no* such hardship, referring (at 16) only to his purported California residence, that of his new California employer, and vague references to California "witnesses," none of which he identifies.  And, of course, Defendant traveled to Massachusetts on average every six weeks in the year-plus leading up to his departure—despite proclaiming that he "has never lived *or worked*" here.  MOL at 16 (emphasis added).

### B.   This Court Correctly Held That Massachusetts Law Applies

Even setting all those problems aside, Defendant's *forum non conveniens* argument fails because, as this Court has repeatedly and correctly held, ***Massachusetts law controls this dispute***. Those holdings, which Defendant refuses even to acknowledge, defeat the entire premise of his argument that this case should be sent to California because it is governed by California law.

As the Court explained when it summarily denied Defendant's emergency stay motion, the parties agreed—in the contracts Defendant is blatantly violating—that "their agreements '***shall be governed by the internal substantive laws of Massachusetts***, without regard to the doctrine of conflicts of laws.'"  ECF 29 (citation omitted; emphasis added).  And at the TRO hearing, the Court was perfectly clear:  "***Massachusetts law applies to this dispute***."  Hr'g Tr. at 53:15–22.

Defendant's contrary arguments are no more persuasive this time around.  As this Court

12

rightly observed, Massachusetts "has a substantial relationship to the parties or transaction because [DK] is headquartered here."  Hr'g Tr. at 54:17–19.  "The contracts were negotiated between a company with its princip[al] place of business in Massachusetts and its employee, who visited Massachusetts on occasion for work"—and ***did not*** live or work in California "when he negotiated the contract and worked for [DK]."  *Id.* at 54:23–55:5; *see* DK Third Am. Rog. Resp. at 7–10. "Any harm caused by a violation of the agreements will be felt in Massachusetts."  Hr'g Tr. at 55:5–6; *see also Aspect Software, Inc. v. Barnett*, 787 F. Supp. 2d 118, 126 (D. Mass. 2011) (a company experiences contract injuries where it has its principal place of business).  In fact, the day Defendant departed DK, he immediately breached his nonsolicitation agreement by soliciting two of DK's most valuable VIP employees, ***who were both located in Massachusetts***.  Metz Aff. ¶¶ 4, 7, 8; Larracey Aff. ¶¶ 7–9.

Against all of this, Defendant can point only to "the fact that [he] moved to California one week" before the TRO hearing.  Hr'g Tr. at 55:8–9.  That is, after discussing his non-compete with Fanatics' Chief Executive Officer and Chief Legal Officer, including "next steps," *see* Depo. Tr. at 152:16–153:24, 178:8–16, 179:8–15, 180:4–12, Defendant drafted an email containing a list of words ("Vote Apt Lease Doctor") that mirror actions he would later allege he took and insist established his California residency, *compare* Harris 3-21 Aff. ¶ 4 & Ex. A *with* Def. Decl. ¶¶ 9, 10. DK has since discovered that Defendant deleted and then attempted to "purge" this email from his DK email account.  Harris 3-21 Aff. ¶¶ 4–7.  If this Court were to endorse that scheme—and allow Defendant to evade so easily contracts with a Massachusetts company selecting Massachusetts as a forum and accepting Massachusetts law, all for the express purpose of "compet[ing] against [his] former employer[] *even using confidential information*," MOL 15—Massachusetts employment contracts would not be worth the paper they are printed on.

Whatever interest California might have, it cannot "outweigh Massachusetts' interest in ensuring that Massachusetts contracts are enforced." *Aspect Software*, 787 F. Supp. 2d at 127. The Massachusetts legislature enacted the Massachusetts Noncompetition Agreement Act just six years ago, adopting as policy for this Commonwealth that non-compete covenants are valid and enforceable within defined limits. *See* M.G.L. c. 149, § 24L(b). Endorsing Defendant's scheme would undermine that policy judgment and "create a massive incentive for employees all over the country to move to California, in breach of noncompetition and nonsolicitation agreements that are otherwise enforceable in every other state across the country." Hr'g Tr. at 37:5–9.

Massachusetts courts regularly enforce non-compete covenants when an employee lacks meaningful connections to California. *E.g.*, *Nuance Commc'ns, Inc. v. Kovalenko*, 2022 WL 2347112, at *5 n.1 (D. Mass. June 29, 2022); *Aspect Software*, 787 F. Supp. 2d at 125–27; *Oxford Glob. Res., Inc. v. Guerriero*, 2003 WL 23112398, at *4–6 (D. Mass. Dec. 30, 2003); *EMC Corp. v. Donatelli*, 2009 WL 1663651, at *2–5 (Mass. Sup. Ct. May 5, 2009). Even Defendant concedes that, in the cases he cites, the employees "had worked for a Massachusetts corporation ***in California*** prior to departing for competitors." MOL at 15 n.8 (emphasis added).[4] The Court should do so here.

### C. California Is An Inadequate Forum Because It Lacks Jurisdiction Over DK

Defendant's *forum non conveniens* argument fails for another independent reason—Defendant does not, or even attempt to, carry his "***heavy burden*** of establishing that an adequate alternative forum exists." *Adelson v. Hananel*, 510 F.3d 43, 52 (1st Cir. 2007) (emphasis added).

---

[4] Even if this Court's prior holdings that Massachusetts law applies were incorrect, ***it would make no difference for this motion*** because "the need to apply foreign law is not in itself reason to apply the doctrine of *forum non conveniens*." *Chan v. Wellington Mgmt. Co. LLP*, 424 F. Supp. 3d 148, 153 (D. Mass. 2019) (quotation marks omitted); *see also Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 721 (1st Cir. 1996) ("[T]he task of deciding foreign law [is] a chore federal courts must often perform." (quotation marks omitted)).

Defendants insists this case should be dismissed in favor of the California Action; and in fact, the only "alternative forum" he offers (at 9) is California state court.

An adequate alternative forum exists only when "***all parties can come within that forum's jurisdiction***." *Neelon*, 63 F. Supp. 3d at 170 (emphasis added). Defendant waived any argument that California would have personal jurisdiction over DK by burying that argument (at 9 n.5) in a cursory footnote. "[A]rguments raised only in a footnote or in a perfunctory manner are waived." *Modeski v. Summit Retail Sols., Inc.*, 470 F. Supp. 3d 93, 110 (D. Mass. 2020) (cleaned up). This Court should reject Defendant's argument for that reason alone. *See Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 141 (1st Cir. 2021).

Even if Defendant had properly presented a personal jurisdiction argument, it would fail. Courts have "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State," over "'any and all claims' brought against a defendant." *Id.* (citation omitted) "Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Id.* at 359. California would lack either type of jurisdiction over DK for the claims involved in this suit.

California lacks general jurisdiction over DK. A court has general jurisdiction over a corporation, absent "exceptional circumstances" not present here, only in its "place of incorporation" or "principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). But DK is a Nevada corporation, headquartered in Massachusetts. Compl. ¶ 12.

California also lacks specific jurisdiction over DK because the claims Defendant has brought there do not "arise out of or relate" to any of DK's "contacts with the forum." *Ford*, 592

U.S. at 359.  For specific jurisdiction, **DK's** "suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  But the *only* connection between California and this case is Defendant's insistence he recently moved there and works for Fanatics there.  And the U.S. Supreme Court has repeatedly held that a plaintiff cannot manufacture specific jurisdiction based on their "unilateral activity" and that "mere injury to a forum resident is not a sufficient connection to the forum" to create jurisdiction.  *Id.* at 289–91 (quotation marks omitted).

In his cursory footnote (at 9 n.5), Hermalyn says DK is "registered to do business in California, direct[s] advertising towards and conduct[s] business in California, and describe[es] itself as a global company."  For specific jurisdiction, however, DK's "general connections with the forum are not enough"; there must be an "adequate link between the State and the … claims." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 264 (2017).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of [DK's] unconnected activities in the State." *Id.* at 264.

Specific jurisdiction also cannot be predicated on Defendant's assertion (at 9 n.5) that DK "is intentionally reaching into California to prevent a California resident from working for a California company."  The Supreme Court made clear in *Walden* that "mere injury to a forum resident is not a sufficient connection to the forum."  571 U.S. at 290.  That decision abrogated the holding of *Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d 103, 112 (Ct. App. 1990), on which Defendant relies, that "personal jurisdiction may be exercised over a defendant who has caused an effect in the forum state by an act or omission occurring elsewhere."  And the claims at issue in *Calder v. Jones*, 465 U.S. 783 (1984), were premised on *the defendants'* contacts with California, including that they "relied on phone calls to 'California sources' for the information in their article" and

"caused reputational injury in California by writing the allegedly libelous article that was widely circulated in the State."  *Walden*, 571 U.S. at 287.  DK did nothing of the sort.

Because California lacks personal jurisdiction over DK, it is not an adequate alternative forum.  And, because Defendant has not provided an "adequate alternative forum, … there is no basis for dismissal under the doctrine."  *Nandjou*, 985 F.3d at 141.

## III.   DEFENDANT'S REQUEST FOR A *COLORADO RIVER* STAY IS FRIVOLOUS

The first time Defendant moved to stay this litigation, this Court summarily denied.  ECF 29.  Defendant now simply ignores this Court's order—**which his brief does not even mention**—and First Circuit jurisprudence making it perfectly clear this case is no exception to the Court's "'virtually unflagging obligation' to exercise its jurisdiction."  *Id.* (quoting *Maldonado-Cabrera*, 26 F.4th at 527).

Defendant requests the same relief, asserting the same factual bases and using the same language.  *Compare* MOL at 20 *with* ECF 26 at 3 (using nearly identical language to summarize argument).  This time, however, Defendant cites the correct legal doctrine.  *Compare* ECF 29 (denying motion to stay under first-filed rule) *with* MOL at 20 (seeking stay under *Colorado River* abstention doctrine).  But *Colorado River* abstention requires a ***more*** demanding showing than the first-filed rule because it "loads the dice with a presumption in favor of assuming jurisdiction, which can be overcome only by ***the clearest of justifications displayed by exceptional circumstances***."  *Maldonado-Cabrera*, 26 F.4th at 528 (cleaned up); *see also Glassie v. Doucette*, 55 F.4th 58, 64 (1st Cir. 2022) ("The crevice in federal jurisdiction that *Colorado River* carved is a narrow one," requiring "the clearest of justifications.").  Defendant has not come close to carrying his "***heavy burden*** of proving the existence of exceptional circumstances."  *Paul Revere Variable Annuity Ins. Co. v. Thomas*, 66 F. Supp. 2d 217, 221 (D. Mass. 1999).

***As the Court has already found***, the California Action is not "actually parallel" to this one.

17

*Bankart v. Ho*, 60 F. Supp. 3d 242, 248 (D. Mass. 2014); *see* ECF 29 ("[T]his case, unlike the California cases, involves a claim for misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836"). To create even "the possibility of abstention under *Colorado River*, … ***the state action must resolve all of the claims in the federal case***." *Glassie*, 55 F.4th at 64 (cleaned up and emphasis added). But this case involves both federal and state statutory claims, as well as common-law claims for breach of duty of loyalty and conversion, *see* Compl. ¶¶ 130–55, 163–73—none of which is at issue in the California Action, CA Compl. ¶¶ 73–92 (involving only non-solicit- and non-compete-related claims). That fact alone is fatal to Defendant's *Colorado River* request: "'It would be a ***serious abuse of discretion*** to grant a stay or dismissal at all if there is any substantial doubt that the parallel state-court litigation will be an adequate vehicle for the ***complete and prompt*** resolution of the issues between the parties.'" *Glassie*, 55 F.4th at 64 (cleaned up and emphases added) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).

Defendant does not even try to satisfy this requirement. He buries his argument in a footnote (at 19 n.11), thus waiving it. *See Modeski*, 470 F. Supp. 3d at 110. And even in that footnote, he simply ignores the federal and state trade secrets claims that this Court has already ruled DK is likely to win. *See* MOL at 20 n.11 (arguing only that the California Action could affect DK's "claims here concerning confidential information misappropriation").

Because the California state action will not and cannot resolve all claims between the parties here, "the case for *Colorado River* abstention does not get to first base." *Glassie*, 55 F.4th at 65. This Court can therefore deny Defendant's frivolous stay request without "consider[ing] the additional factors drawn from *Colorado River* and its progeny." *Id.* at 65 n.4. But even a passing glance at those factors shows Defendant cannot carry his "heavy burden of proving the existence

of exceptional circumstances which justify the surrender of jurisdiction by a federal court." *Paul Revere*, 66 F. Supp. 2d at 221.

Most obviously, "[t]he geographical inconvenience of the federal forum"—**Factor 2**— "does not weigh in [D]efendant's favor because [D]efendant contracted to litigate in Massachusetts." *Covidien LP v. Esch*, 280 F. Supp. 3d 284, 286 (D. Mass. 2017). As this Court has already held, Defendant "'submit[ted]' to the Court's exercise of personal jurisdiction in this case" through the forum selection clauses in his contracts. ECF 29 (alteration in original).

Nor do concerns about piecemeal litigation (**Factor 3**) favor a stay. That factor matters "only if there is some ***exceptional*** basis for dismissing [or staying] one action." *Covidien*, 280 F. Supp. at 286 (emphasis added and cleaned up). Abstention "is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues." *KPS & Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 10 (1st Cir. 2003) (quotation marks omitted). Defendant points to nothing exceptional here. *See* MOL 18. And even if, as Defendant says (at 19), "inconsistent outcomes here as to the enforcement of the Agreements would be highly prejudicial" to him, that does not explain why the California court, as opposed to this Court, should have the final say.

Defendant's remaining arguments fare no better. **Factor 4**—"the order of obtaining jurisdiction"—is *not*, as Defendant claims (at 18), neutral. This case is obviously "more advanced." *Elmendorf Grafica, Inc. v. D.S. Am. (E.), Inc.*, 48 F.3d 46, 52 (1st Cir. 1995) (filing date not dispositive). This Court has ordered a TRO. ECF 44. Defendant has returned a subset of the confidential information he took from DK and certified his compliance with this Court's Order. The parties have responded to interrogatories and deposed witnesses. DraftKings submitted its motion for a preliminary injunction, supported by 9 witness affidavits, among other things. There is a

preliminary injunction hearing set for April 2.  Meanwhile, the California court refused to enter any preliminary injunctive relief, CA Minute Order; it has not decided the threshold question whether DK is subject to personal jurisdiction; and no discovery has begun.

This Court has *already ruled* that "the enforceability of the Agreements' restrictive covenants, forum selection, and choice-of-law provisions" are governed by *Massachusetts* law, rejecting Defendant's argument (at 19) that **Factors 5 and 6**—"whether state or federal law controls, adequacy of state forum"—favor a stay.  Hr'g Tr. at 53:15–55:15. Also, Defendant simply ignores the fact that this case involves a *federal* claim, which federal law obviously controls.

The Court's ruling *that DK is likely to prevail on that claim* defeats any notion that it is vexatious or contrived (**Factor 7**).  Hr'g Tr. 15:21–24.  Defendant's complaints (at 20) about removal in the California Action have nothing to say about that factor—and nothing to do with **Factor 8**, respect for removal jurisdiction.  The latter is relevant where "a plaintiff [is] attempting to evade the policy in 28 U.S.C. § 1441 that only a defendant be able to remove a lawsuit from state court to federal court." *United States v. Fairway Cap. Corp.*, 483 F.3d 34, 44 (1st Cir. 2007). This Court has "subject matter jurisdiction over this action under 28 U.S.C. § 1331."  ECF 29.

Here, *every factor cuts against a stay or is neutral*.  *See* MOL 18 (conceding **Factor 1**). Thus, even if he could clear the threshold hurdle of showing that the California Action would resolve this case, there would still be no basis to justify a *Colorado River* stay.  *Elmendorf Grafica*, 48 F.3d at 50 ("The district court must weigh the important factors 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" (quoting *Moses H. Cone*, 460 U.S. at 16)).  This Court should deny Defendant's frivolous request.

## CONCLUSION

The Court should deny Defendant's motion to dismiss or, in the alternative, to stay.

Dated: March 21, 2024                    Respectfully submitted,

                                         /s/ Andrew S. Dulberg
                                         William F. Lee (BBO #291960)
                                         Andrew S. Dulberg (BBO #675405)
                                         WILMER CUTLER PICKERING
                                             HALE AND DORR LLP
                                         60 State Street
                                         Boston, MA 02109
                                         Telephone: (617) 526-6000
                                         E-mail:  william.lee@wilmerhale.com
                                         E-mail:  andrew.dulberg@wilmerhale.com

                                         GIBSON, DUNN & CRUTCHER LLP
                                         Orin Snyder (*pro hac vice*)
                                         Harris M. Mufson (*pro hac vice*)
                                         Justine M. Goeke (*pro hac vice*)
                                         Christine Demana (*pro hac vice*)
                                         Justin M. DiGennaro (*pro hac vice*)
                                         200 Park Avenue
                                         New York, NY  10166-0193
                                         Tel:  212.351.4000
                                         Fax:  212.351.4035
                                         OSnyder@gibsondunn.com
                                         HMufson@gibsondunn.com
                                         JGoeke@gibsondunn.com
                                         CDemana@gibsondunn.com
                                         JDiGennaro@gibsondunn.com

                                         Jason C. Schwartz (*pro hac vice*)
                                         Jacob T. Spencer (*pro hac vice*)
                                         1050 Connecticut Avenue, N.W.
                                         Washington, D.C. 20036
                                         Tel:  202.955.8500
                                         JSchwartz@gibsondunn.com
                                         JSpencer@gibsondunn.com

                                         *Attorneys for Plaintiff DraftKings, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I, Andrew S. Dulberg, counsel for Plaintiff, hereby certify that this document has been filed through the Court's ECF system on March 21, 2024, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>/s/ Andrew S. Dulberg</u>
Andrew S. Dulberg