## APPENDIX C

### Hermalyn's Requested Revisions to DK's Proposed PI in Event Court Enters Injunctive Relief[1]

| Row No. | Provision of DK Proposed PI With Hermalyn Requested Revisions (In Red)[2] | Hermalyn's Explanation For Proposed Revisions |
|---|---|---|
| 1 | 5. During the six (6) month period prior to February 1, 2024, Mr. Hermalyn performed services and/or received Confidential Information (as defined below) concerning the following aspects of DraftKings' business: <br> ~~(i) any fantasy or simulated activity or contest where winning outcomes are determined predominantly by accumulated statistical results of the performance of individuals in athletic or other events; the wining outcome reflects the knowledge and skill of the participant; and a winning outcome is not based solely on the performance of a single team or individual (hereinafter "FSC");~~ <br> (ii) games of chance or skill, ~~pari-mutuel~~, fixed odds, pools or otherwise (including, but not limited to, ~~lottery, pari-mutuel betting, bingo,~~ horse ~~and dog racing, simulated racing and sporting events~~, ~~jai alai~~, sports betting, online casino games/iGaming, ~~social casino, poker and keno~~) whether played for real money or cash equivalent, virtual currency, free, or otherwise and any type of ancillary service or product related to the foregoing (hereinafter "Gaming"); | The Court should strike the noncompetition provision and this related provision entirely, but if it is inclined to enforce to some extent, it should modify as indicated. <br><br> The Court should limit the restricted department to Gaming and remove the FSC, Marketplace, eCommerce, and Media departments. <br><br> DK describes Hermalyn's role as limited to "developing and maintaining relationships with VIP customers" in its Gaming department, Henley Dec. ¶ 5, and does not contend, much less put forth evidence of, his involvement in other departments. <br><br> The vast majority of Hermalyn's focus during his last six months at DK, both in terms of his time, and in terms of the volume of associated customers and DK business, was Gaming, specifically sports betting and gaming and casino business. MH PI Dec. ¶ 10. With respect to Gaming, Hermalyn did not engage in work at DK related |

---

[1] While Hermalyn objects to DK's proposed PI in its entirety for the reasons set forth in Hermalyn's accompanying Opposition brief, in the event the Court is inclined to enter some form of DK's proposed PI, it should, at minimum, be appropriately narrowed, and Hermalyn respectfully requests that the Court consider his requested revisions herein to address specific scope issues. In submitting this Appendix, Hermalyn reserves all objections, and waives none, to the proposed PI.

[2] Hermalyn proposes additions to DK's proposed PI in red, and deletions to DK's proposed PI in ~~red strikethrough~~.

| Row No. | Provision of DK Proposed PI With Hermalyn Requested Revisions (In Red)[2] | Hermalyn's Explanation For Proposed Revisions |
|---|---|---|
| | ~~(iii) the digital platform facilitating the purchase and sale of nonfungible tokens and other collectibles (hereinafter "Marketplace");~~<br>~~(iv) the sale and distribution of nonfungible tokens, collectibles, clothing, accessories, and other apparel (hereinafter "eCommerce");~~<br>~~(v) the development, distribution, procurement and programming of content offerings in audio and video focused media related to sports and/or any aspects of DraftKings' business, including but not limited to those aspects of DraftKings' business set forth in (i)-(iv) above (hereinafter "Media").~~ | to lottery, pari-mutuel betting, bingo, and dog racing, or simulated racing, so those aspects should be stricken. *Id.*<br><br>Hermalyn devoted relatively little attention during his last six months at DK to any business or work related to FSC. *Id.*<br><br>Hermalyn devoted virtually no attention to any business or work during his last six months at DK related to Marketplace or Ecommerce; indeed, DK generally does not engage in the collectibles business (whereas Fanatics does). *Id.*<br><br>Hermalyn did not perform work related to Media during his last six months at DK. *Id.* |
| 2 | ~~6. Section (g) of the Noncompetition Covenant between Mr. Hermalyn and DraftKings dated August 16, 2023 (ECF 1-2, the "Noncompetition Covenant") extends the duration of Mr. Hermalyn's non-competition obligations as set forth therein.~~ | The Court should strike this provision entirely.<br><br>Section (g) does not just "extend" the duration of the Noncompetition Covenant, it does so for an undetermined period. It extends noncompetition obligations for a period equal "to the later of" (1) the time until any breach, threatened breach, or challenge to the restrictions is terminated, or (2) a "final non-appealable resolution of any [related] litigation or other legal proceeding." Noncompetition Covenant § (g) (Dkt. No. 1-2). This provision thus allows the Noncompetition Covenant to extend far beyond the Massachusetts Noncompetition Agreement Act's permissible limits. *See* M.G.L. c. 149, § 24L(b)(iv). |

| Row No. | Provision of DK Proposed PI With Hermalyn Requested Revisions (In Red)[2] | Hermalyn's Explanation For Proposed Revisions |
|---|---|---|
|  |  | DK has waived enforcing this provision by repeatedly arguing its contractual restrictions are reasonable because they last "no more than twelve months."  PI Mem. 30; *see also id.* at 8, 21, 23.  DK cannot now seek to impose an indefinite period far longer than 12 months. |
| 3 | **c) Noncompetition.** Mr. Hermalyn is hereby restrained and enjoined, for a period of twelve (12) months from the date of ~~this Order~~ his February 1, 2024 resignation from DraftKings, from using or disclosing DraftKings' Confidential Information to do the following: acting individually, or as an owner, shareholder, partner, employee, contractor, agent or otherwise, from directly or indirectly~~: (1)~~ providing any services to Fanatics, Inc. and Fanatics, Inc.'s subsidiaries, affiliates, and joint ventures (individually and together, "Fanatics") relating to ~~FSC,~~ Gaming~~, Marketplace, eCommerce and/or Media and any type of ancillary service or product related to or connected with the foregoing; and/or (2) providing any services to Fanatics relating to any other aspect of the Business of DraftKings for which Mr. Hermalyn performed services and/or received Confidential Information at any time during the six (6) month period prior to February 1, 2024; and/or (3) committing a Threatened Breach of the obligations set forth in this paragraph~~.

~~(i) "Business of DraftKings" shall mean the research, design, development, marketing, broadcasting, streaming, promotion, sales, operations, maintenance and commercial exploitation pertaining to the operation of, and providing products and services for: (1) FSC; (2) Gaming; (3) Marketplace; (4) eCommerce; (5) Media; (6) all other~~ | The Court should strike the noncompetition provision entirely, but if it is inclined to enforce to some extent, it should modify as indicated.

The Court should only limit Hermalyn's ability to engage in competitive activity to the extent he is using or disclosing DK's Confidential Information to do so.

The Court should specify that the period of restriction is 12 months or less from the date of Hermalyn's February 1, 2024 resignation from DK.  *See* Noncompetition Covenant § (a) (Dkt. No. 1-2) ("twelve (12) months following termination of your Relationship with the Company").

The Court should limit the restricted department to "Gaming" and remove the FSC, Marketplace, eCommerce and/or Media departments, as well as the open-ended reference to any other aspect of the "Business of DraftKings," for the reasons stated in Row 1 above.  As written, DK's request is broader than the Noncompetition Covenant, which only applies to departments "for which [Hermalyn] performed services or received Confidential Information [] at any time during the six (6) month period prior to such termination."  *See id.*  Hermalyn's work at DK primarily pertained to Gaming. |

3

| Row No. | Provision of DK Proposed PI With Hermalyn Requested Revisions (In Red)[2] | Hermalyn's Explanation For Proposed Revisions |
|---|---|---|
| | ~~products and services that existed, were in development, or were under consideration by DraftKings during Mr. Hermalyn's employment with DraftKings (hereinafter "Other Products and Services"); and (7) all products and services incidentally related to, or which were an extension, development, or expansion of FSC, Gaming, Marketplace, eCommerce, Media or Other Products and Services.~~<br><br>~~ii. "Threatened Breach" shall mean any attempt be Mr. Hermalyn to engage in conduct that would breach paragraph (c), (d) or (e) of this Order.~~<br><br><span style="color:red">The restrictions in this Paragraph (c) only apply to Mr. Hermalyn to the extent his activities are conducted in the states of New York, New Jersey, or Massachusetts; to the extent his activities are conducted in other states, Mr. Hermalyn will remain subject to the confidentiality and non-disclosure restrictions.</span><br><br><span style="color:red">None of the restrictions in this Paragraph (c) apply to Mr. Hermalyn to the extent his activities are conducted in the state of California; to the extent his activities are conducted in California, Mr. Hermalyn will remain subject to the confidentiality and non-disclosure restrictions.</span> | The Court should limit the geographic scope of the restriction to the geographic regions in which Hermalyn actually worked or, at most, allegedly worked for DK (*i.e.*, New York, New Jersey, and Massachusetts). As drafted, the restriction applies globally, which is patently overbroad, especially given that DK only conducts business in a few select states. *See* Beck Dec., Ex. I. DK has put forth no evidence showing Hermalyn conducted, or was involved in business, outside of New Jersey, New York, and Massachusetts. Hermalyn has confirmed that during his employment at DK, he worked from DK's New York office or his New Jersey home office. MH TRO Dec. ¶ 22.<br><br>Given California's laws on non-competition agreements and Hermalyn's status as a California resident, *see* PI Opp'n at 16, the Court should clarify that none of the restrictions apply to Hermalyn to the extent his activities are conducted in California.<br><br>The Court should strike language regarding "Threatened Breach" as vague and ambiguous. |
| 4 | **d) Nonsolicitation of Customers, Clients, Vendors or Partners.** Mr. Hermalyn is hereby restrained and enjoined, for a period of twelve (12) months from the date of ~~this Order~~ <span style="color:red">his February 1, 2024 resignation from DraftKings</span>, from using | The Court should strike the customer nonsolicitation provision entirely, but if it is inclined to enforce to some extent, it should modify as indicated. |

4

| Row No. | Provision of DK Proposed PI With Hermalyn Requested Revisions (In Red)[2] | Hermalyn's Explanation For Proposed Revisions |
|---|---|---|
| | or disclosing DraftKings' Confidential Information to do the following: from, directly or indirectly, either for himself or for any other person, partnership, legal entity, or enterprise: (i) soliciting or transacting business, or attempting to solicit or transact business with, any of DraftKings' customers, or clients, vendors or partners, or with any of DraftKings' prospective customers, clients, vendors or partners about which that Mr. Hermalyn worked with at DraftKings learned Confidential Information or which Mr. Hermalyn had some involvement or knowledge related to any aspect of the Business of DraftKings; and/or (ii) committing a Threatened Breach of the obligations set forth in this paragraph.

None of the restrictions in this Paragraph (d) apply with respect to persons that are or were current customers, clients, vendors, or partners of Fanatics as of February 1, 2024.

Notwithstanding anything in this Order, Hermalyn is permitted to receive and respond to unsolicited outreach concerning Fanatics from any DraftKings customer, client, vendor, or partner.

The restrictions in this Paragraph (d) only apply to Mr. Hermalyn to the extent his activities are conducted in the states of New York, New Jersey, or Massachusetts; to the extent his activities are conducted in other states, Mr. Hermalyn will remain subject to the confidentiality and non-disclosure restrictions. | The Court should only limit Hermalyn's ability to engage in customer, client, vendor, or partner-related activity to the extent he is using or disclosing DK's Confidential Information to do so.

The Court should specify that the period of restriction is 12 months or less from the date of Hermalyn's February 1, 2024 resignation. *See* Nonsolicit Covenant ¶ 2 (Dkt. No. 1-1) ("twelve (12) months after termination of such Relationship").

The Court should limit the restriction to exclude Fanatics' current customers, clients, vendors, or partners. Given the non-exclusive nature of sports betting, many customers use multiple sports betting applications. PI Opp'n at 14. There is, therefore, significant overlap between DK's customers and Fanatics' customers. *Id*. Hermalyn should not be prohibited from soliciting or doing any type of business with current Fanatics customers simply because they are also current or prospective DK customers, as this would not harm DK's goodwill. Likewise, many major sportsbooks use the same vendors and have the same partners, and Hermalyn should not be restricted from related work for Fanatics just because the vendors and partners also do business with DK. *Id*.

The Court should strike "transacting business" and "transact business with" because the term is vague, ambiguous, and overbroad. Hermalyn should not be prohibited from transacting business with customers (or |

| Row No. | Provision of DK Proposed PI With Hermalyn Requested Revisions (In Red)[2] | Hermalyn's Explanation For Proposed Revisions |
|---|---|---|
| | None of the restrictions in this Paragraph (d) apply to Hermalyn to the extent his activities are conducted in California; to the extent his activities are conducted in California, Mr. Hermalyn will remain subject to the confidentiality and non-disclosure restrictions. | others) that he does not solicit and that he does not use confidential DK information to support. Such a restriction would not be justified.<br><br>The Court should strike the "vendors or partners" language, as these terms are not defined and could extend to a potentially unlimited and unknowable group of entities and individuals.<br><br>The Court should limit the scope of the restriction to customers, clients, vendors, or partners Hermalyn actually worked with at DK. DK's attempt to exclude any actual or even prospective customer about whom Hermalyn "learned Confidential Information" or had "some involvement or knowledge related to any aspect of the Business of DraftKings" is overbroad and vague, especially given the overbroad, unspecified, and subjective nature of these defined terms.<br><br>For the reasons discussed in row 3 above, the Court should limit the geographic scope of the restriction to cover activities conducted in the geographic regions in which Hermalyn worked or allegedly worked for DK (*i.e.*, New York, New Jersey, and Massachusetts).<br><br>For the reasons discussed in Row 3 above, the Court should clarify that none of the restrictions apply to Hermalyn to the extent his activities are conducted in California.<br><br>The Court should strike language regarding Threatened Breach as vague and ambiguous. |

| Row No. | Provision of DK Proposed PI With Hermalyn Requested Revisions (In Red)[2] | Hermalyn's Explanation For Proposed Revisions |
|---|---|---|
| 5 | **e) Nonsolicitation of Employees.** Mr. Hermalyn is hereby restrained and enjoined, for a period of twelve (12) months from the date of ~~this Order~~ his February 1, 2024 resignation from DraftKings, from using or disclosing DraftKings' Confidential Information to do the following: from directly or indirectly, either for himself or for any other person, partnership, legal entity, or enterprise: ~~(i)~~ soliciting, in person or through supervision or control of others, an employee, advisor, consultant or contractor of DraftKings for the purpose of inducing or encouraging the employee, advisor, consultant or contractor to leave his or her relationship with DraftKings or to change an existing business relationship to the detriment of DraftKings; ~~(ii) hiring away an employee, advisor, consultant or contractor of DraftKings; (iii) helping another person or entity hire away a DraftKings employee, advisor, consultant or contractor; and/or (iv) committing a Threatened Breach of the obligations set forth in this paragraph~~.<br><br>Notwithstanding anything in this Order, Hermalyn is permitted to receive and respond to unsolicited outreach from any DraftKings employee, advisor, consultant or contractor.<br><br>Nothing in this Order shall restrain Fanatics from soliciting or hiring any employee, advisor, consultant or contractor, without the involvement of Hermalyn.<br><br>The restrictions in this Paragraph (e) only apply to Mr. Hermalyn to the extent his activities are conducted in the states of New York, New Jersey, or Massachusetts; to the extent his activities are conducted in other states, Mr. | The Court should strike the employee nonsolicitation provision entirely, but if it is inclined to enforce to some extent, it should modify as indicated.<br><br>The Court should only limit Hermalyn's ability to engage in employee, advisor, consultant, or contractor-related activity to the extent he is using or disclosing DK's Confidential Information to do so.<br><br>The Court should specify that the period of restriction is 12 months or less from the date of Hermalyn's February 1, 2024 resignation. *See* Nonsolicit Covenant ¶ 3 (Dkt. No. 1-1) ("twelve (12) months after termination of such Relationship").<br><br>The Court should strike the "hiring away" and "hire away" language as vague and ambiguous. DK does not have a protectible interest in preventing Hermalyn (or Fanatics) from hiring DK employees that Hermalyn was not involved in soliciting.<br><br>For the reasons discussed in Row 3 above, the Court should limit the geographic scope of the restriction to activities conducted in New Jersey, New York, and Massachusetts.<br><br>For the reasons discussed in Row 3 above, the Court should clarify that none of the restrictions apply to Hermalyn to the extent his activities are conducted in California. |

| Row No. | Provision of DK Proposed PI With Hermalyn Requested Revisions (In Red)[2] | Hermalyn's Explanation For Proposed Revisions |
|---|---|---|
| | Hermalyn will remain subject to the confidentiality and non-disclosure restrictions.<br><br>None of the restrictions in this Paragraph (e) apply to Mr. Hermalyn to the extent his activities are conducted in California; to the extent his activities are conducted in California, Mr. Hermalyn will remain subject to the confidentiality and non-disclosure restrictions. | The Court should strike language regarding Threatened Breach as vague and ambiguous. |