# EXHIBIT F
## PUBLIC REDACTED VERSION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

DRAFTKINGS, INC.,

        *Plaintiff*,

v.

MICHAEL Z. HERMALYN,

        *Defendant*.

Civil Action No. 1:24-cv-10299-JEK

**RESPONSES AND OBJECTIONS TO PLAINTIFF DRAFTKINGS, INC.'S**
**AMENDED FIRST SET OF INTERROGATORIES**
**TO DEFENDANT MICHAEL Z. HERMALYN (NOS. 1-10)**

Pursuant to Federal Rules of Civil Procedure 33 and Local Rule 33.1 of the United States District Court for the District of Massachusetts, Defendant Michael Z. Hermalyn, by and through his undersigned counsel, responds to the Amended First Set of Interrogatories (Nos. 1-10) (together, the "Interrogatories" and, individually, "Interrogatory") of Plaintiff DraftKings, Inc. ("DraftKings") as set forth below.

**GENERAL OBJECTIONS**

1.    Mr. Hermalyn objects to the Interrogatories, including the "Definitions" and "Instructions" applicable to the Interrogatories, to the extent they are inconsistent with or seek to impose any differing or additional obligations beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, any other applicable statute, rule, or regulation, any orders issued by the Court in this action, and/or any agreements among the parties regarding discovery.

2.    Mr. Hermalyn objects to the Interrogatories to the extent they seek information protected from disclosure by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection from discovery afforded under the Federal Rules of Civil

Procedure, the Local Rules, or any other applicable statute, rule, regulation, or the common law, including common interest or joint defense privileges and protections. Nothing contained in these responses is intended to be, nor should be considered to be, a waiver of any attorney-client communication privilege, work product protection, or any other applicable privilege or protection.

3.      Mr. Hermalyn objects to the definition of "Fanatics" as overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeking to extend Mr. Hermalyn's obligations beyond the requirements of the Federal Rules of Civil Procedure. Mr. Hermalyn will limit his responses to the Interrogatories using this term as though the term refers to Fanatics Holdings, Inc. and/or FVP, LLC ("Fanatics VIP"), as appropriate. This general objection may not be repeated in all responses to Interrogatories using the term "Fanatics," but it applies to, and is incorporated into, each such response.

4.      Mr. Hermalyn objects to the definition of "DraftKings" as overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeking to extend Mr. Hermalyn's obligations beyond the requirements of the Federal Rules of Civil Procedure. Mr. Hermalyn will limit his responses to the Interrogatories using this term as though the term refers to Plaintiff DraftKings Inc. This general objection may not be repeated in all responses to Interrogatories using the term "DraftKings," but it applies to, and is incorporated into, each such response.

5.      Mr. Hermalyn objects to the Interrogatories to the extent they seek premature expert discovery or pretrial submissions. Mr. Hermalyn will produce expert report(s) and/or pretrial submission(s), if any, at the appropriate time and in accordance with this case's scheduling order.

6.      Mr. Hermalyn objects to these Interrogatories as unduly burdensome, oppressive, and harassing to the extent they seek information already in DraftKings' possession, custody, or

DocuSign Envelope ID: A9C52AFC-0BEF-4BE8-A2F6-C86C121D5901

control, that is equally or more accessible to DraftKings than to Mr. Hermalyn, or information that may be derived or ascertained from publicly available documents.

7.      Mr. Hermalyn objects to these Interrogatories to the extent they are overly broad, unduly burdensome, directed to matters that are not relevant to any party's claims or defenses, not proportional to the needs of the case, and/or would require undue expense to answer.

8.      Mr. Hermalyn objects to these Interrogatories to the extent they are vague, ambiguous, or confusing, *e.g.*, because they fail to adequately define terms, use terms the meanings of which are not readily available or decipherable, and/or use improperly defined terms.

9.      Mr. Hermalyn objects to these Interrogatories to the extent they seek information outside of Mr. Hermalyn's possession, custody, or control, or that is not reasonably available to Mr. Hermalyn, or call for Mr. Hermalyn to prepare/present information, documents, and/or things that do not already exist.

10.     Mr. Hermalyn objects to these Interrogatories to the extent they call for legal conclusions.

11.     Mr. Hermalyn objects to these Interrogatories to the extent they call for the interpretations of documents that speak for themselves.

12.     Mr. Hermalyn objects to these Interrogatories to the extent they are argumentative, based on unsupported assumptions of fact or law, or otherwise lack factual or legal foundation.

13.     Any statement by Mr. Hermalyn that they will produce documents in response to any Interrogatory is not a representation that such documents exist, but rather that any such responsive, relevant, non-privileged documents that are in Mr. Hermalyn's possession, custody, or control and that are located after a reasonable search will be produced, subject to Mr. Hermalyn's objections.

DocuSign Envelope ID: A9C52AFC-0BEF-4BE8-A2F6-C86C121D5901

14.     Mr. Hermalyn's objections and responses to these Interrogatories are based on information known to Mr. Hermalyn through reasonable investigation thus far, and are subject to amendment, supplementation, and/or other modification. Discovery in this matter is ongoing and, during the course of subsequent discovery, Mr. Hermalyn may become aware of additional information that may be responsive to these Interrogatories and could give rise to additional objections. Mr. Hermalyn thus reserves the right to update, amend, supplement, or otherwise modify these objections, as well as Mr. Hermalyn's responses. By providing these responses, Mr. Hermalyn does not, and does not intend to, waive his right to rely on evidence or information that is subsequently discovered through its continuing investigation, and these responses are made without prejudice to Mr. Hermalyn's right to present additional evidence or contentions at trial.

The foregoing objections and qualifications apply to each of the following responses and are incorporated by reference into each of the specific responses set forth below as though fully set forth there. The failure to mention any of the foregoing objections and qualifications in the specific responses set forth below shall not be deemed a waiver of any such objection or qualification.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Describe all documents related to DraftKings' business and operations that you have downloaded, printed, or otherwise obtained since January 1, 2024.  Your answer should include without limitation: the identity of each document; when you came into possession of each document; why you remain in possession of each document; a detailed description of the content of each document; a detailed description of why you downloaded, printed, or otherwise obtained the document; where you were when downloading, printing, or otherwise obtaining the document;

DocuSign Envelope ID: A9C52AFC-0BEF-4BE8-A2F6-C86C121D5901

a detailed description of the present location (other than DraftKings' servers) of each document that you downloaded, printed, or otherwise obtained.

**<u>RESPONSE TO INTERROGATORY NO. 1</u>:**

Mr. Hermalyn incorporates by reference all of his General Objections as if fully set forth herein. Mr. Hermalyn further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, contains multiple subparts, seeks irrelevant information, and is disproportionate to the needs of the case, which at this time are limited to issues concerning preliminary injunctive relief, including without limitation: (1) to the extent it seeks information regarding "all documents related to DraftKings' business and operations" (regardless of ownership or confidentiality status)—which implicates documents for which DraftKings issued no allegations in the Complaint, and for which DraftKings has not identified or designated any trade secrets or confidential information; (2) to the extent that it calls for a "detailed description of the contents of each document"; (3) to the extent it seeks information regarding documents that Mr. Hermalyn downloaded, printed, or otherwise obtained in the ordinary course of working for DraftKings, during his employment with DraftKings, that he has not been in possession of since resigning from DraftKings or prior; and (4) to the extent that it seeks information from outside of the relevant period, as Mr. Hermalyn did not receive a job offer from Fanatics until January 27, 2024, and Mr. Hermalyn had never even thought seriously about leaving DraftKings, much less joining Fanatics, until he reached out to Mr. Rubin on January 11, 2024, and really not until he had meetings with Fanatics starting on January 23, 2024. Mr. Hermalyn further objects to this Interrogatory to the extent that it assumes facts that do not exist, including that he "remain[s] in possession" of any DraftKings documents (he does not). Mr. Hermalyn further objects to this Interrogatory because it is vague and ambiguous, including without limitation in its failure to describe the subject

documents with any specificity, and its use of the terms "business," "operations," "possession," and "otherwise obtained." Mr. Hermalyn further objects to this Interrogatory because it seeks information that is already in the possession of, and more readily available to DraftKings, than Mr. Hermalyn, as DraftKings has information regarding Mr. Hermalyn's DraftKings' file and device access and usage records. Mr. Hermalyn further objects to this Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privileges, doctrines, or immunities.

Subject to the foregoing, Mr. Hermalyn responds that he has not downloaded, printed, or otherwise obtained any DraftKings documents related to DraftKings' business and operations since his resignation from DraftKings on February 1, 2024. To the contrary, prior to his resignation, Mr. Hermalyn undertook in good faith to ensure to the best of his ability that he was no longer in possession of any DraftKings property or confidential information. He gave his DraftKings-issued devices (two laptops) to his counsel, who returned those devices to DraftKings. He also gave his personal phone to his counsel, and he purchased a new personal phone. He returned his corporate credit card and a mifi device to DraftKings. He also ceded access to his personal email to his counsel. He also segregated his personal information from any information he accumulated from his work at DraftKings, which he also gave to his counsel. He informed DraftKings at the time of his resignation that he undertook this process. When he subsequently found an old laptop, he likewise informed DraftKings. He had not used or otherwise accessed this laptop in several months, and certainly not since his resignation from DraftKings. He did not know whether it belonged to DraftKings, and although he had no reason to believe that it did, in an abundance of caution, he turned this additional laptop over to his counsel as well. This third laptop has also been provided to DraftKings.

Mr. Hermalyn further responds that he did not, before or after his departure from DraftKings, provide DraftKings' confidential information or any DraftKings documents to Fanatics or any of its affiliates, including Fanatics VIP.

Mr. Hermalyn further responds that, prior to his resignation from DraftKings, in January 2024, Mr. Hermalyn accessed, downloaded, and/or printed DraftKings documents in the ordinary course of working for DraftKings and in order to carry out his job responsibilities at DraftKings and for no other purpose.

Mr. Hermalyn further responds that, with respect to the January 2024 period, Mr. Hermalyn's DraftKings document access and download practices included the following: The DraftKings team, including Mr. Hermalyn, used GoogleDocs to access documents and share ideas. Mr. Hermalyn's practice would be to have numerous tabs open on his computer at any given time. He would, for example, open documents during a meeting to go over things with his team, and he often would leave those documents open. It is unclear whether that practice would constitute "otherwise obtain[ing]" a document as stated in this Interrogatory, but Mr. Hermalyn provides that context in an abundance of caution. On occasion, he would download or "make an offline version" of documents in advance of travel, but he does not recall downloading specific documents or doing that often, as document downloads sometimes did not work. He also would occasionally print documents to review in hard copy, but his practice was to promptly shred documents after review, and he cannot recall which documents he may have printed. He had no hard copy DraftKings documents at the time of his resignation.

Mr. Hermalyn further responds and addresses the specific documents that DraftKings has contended he accessed, viewed, or downloaded as follows. To be clear, Mr. Hermalyn has not

retained a copy of any of these documents and has shared none of the information with anyone at Fanatics.

- On January 23, 2024, Mr. Hermalyn accessed a "VIP Founders Club" PowerPoint presentation from 2021. He was in New York when he accessed it. Mr. Hermalyn accessed the "VIP Founders Club" presentation to prepare to onboard a new employee who was starting work at DraftKings the following week. This new employee, Chika Chandrashekar, had been hired to work as a Vice President of Loyalty and E-Commerce at DraftKings, and Mr. Hermalyn thought that the presentation might have relevant information for his onboarding. Mr. Hermalyn accessed the "VIP Founders Club" presentation for this sole purpose, not to give it, or the information in it, to Fanatics or any of its affiliates, including Fanatics VIP, or anyone else. As of his resignation from DraftKings on February 1, 2024, he does not have access to, or any copies of, the "VIP Founders Club" presentation.

- On January 30, 2024, Mr. Hermalyn accessed the "(Master) SB 2024" spreadsheet. He was located in Los Angeles. He did so because a DraftKings employee named Brittany Goodman contacted him. Ms. Goodman worked on the DraftKings team that was running the upcoming Super Bowl events. She communicated to him that there were certain VIPs who had not yet been sent invitations to Super Bowl events DraftKings was hosting. Mr. Hermalyn accessed the "(Master) SB 2024" spreadsheet to review the list of VIP customer names and direct Ms. Goodman and other DraftKings employees on which customers still needed invitations and how to contact them, not to give it, or the information in it, to Fanatics or any of its affiliates, including Fanatics VIP, or anyone else. As of his resignation from DraftKings on February 1, he does not have access to, or any copies of, the "(Master) SB 2024" spreadsheet.

- Mr. Hermalyn does not believe that he accessed or downloaded a "BD_Gaming 101" presentation on January 29 or 30, or February 1, when he was located in Los Angeles. If he did access or download the "BD_Gaming 101" presentation, he did it for purposes of his work for DraftKings, not to give it, or the information in it, to Fanatics or any of its affiliates, including Fanatics VIP, or anyone else. As of his resignation from DraftKings on February 1, he does not have access to, or any copies of, the "BD_Gaming 101" presentation.

- Mr. Hermalyn does not believe that he accessed or downloaded the "BD Team Tracker – Weekly Report" on January 24, 2024 (or thereafter). On January 24, 2024, he was located in New Jersey. This report is something he would have regularly reviewed in advance of weekly team calls for the non-casino business development meeting that he attended about once a month. It was his customary practice to review this report in advance of the team calls he planned to attend. Although Mr. Hermalyn believes that he did not access or download the "BD Team Tracker – Weekly Report," if he did, it would have been for something related to his work for DraftKings, not to give it, or the information in it, to Fanatics or any of its affiliates, including Fanatics VIP, or anyone else. As of his resignation from

DraftKings on February 1, he does not have access to, or any copies of, the "BD Team Tracker –Weekly Report."

Mr. Hermalyn further responds, in an abundance of caution, that he may have accessed, viewed, downloaded, or printed (and shredded) in January 2024 the following additional DraftKings documents, all of which occurred in the ordinary course and scope of his work at DraftKings and for no other purpose. To be clear, Mr. Hermalyn has not retained a copy of any of these documents and has shared none of the information with anyone at Fanatics.

- BD101
- Master Super Bowl
- VIP101
- Comp Planning
- 2024 Hiring
- Attributes
- FoDK
- LookBook
- Super Bowl List
- Gifting Master
- SVP Role & Responsibilities
- Brittney Onboarding
- Coordinator Handbook
- VP Loyalty JD
- 1:1 Doc
- Week of
- Remi & Mike List

- Hayden & Mike Doc

- BiWeekly Update

- Loyalty Exec Summary

- Maze Group RFP

- Reactivation Quarterly

- Customer Org All Hands

- Customer Org Off-site agenda

- Numerous screenshots sent through DraftKings email and Slack to work colleagues

**INTERROGATORY NO. 2:**

Describe each circumstance under which you have shared, shown, presented, disclosed, or described DraftKings' documents or information to Fanatics or any agents of Fanatics since January 1, 2023.

**RESPONSE TO INTERROGATORY NO. 2:**

Mr. Hermalyn incorporates by reference all of his General Objections as if fully set forth herein. Mr. Hermalyn further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportionate to the needs of the case, which at this time are limited to issues concerning preliminary injunctive relief, including without limitation: (1) to the extent it seeks information regarding "DraftKings' documents or information" (regardless of ownership or confidentiality status)—which implicates documents for which DraftKings issued no allegations in the Complaint, and for which DraftKings has not identified or designated any trade secrets or confidential information; and (2) to the extent that it seeks information from outside of the relevant period, as Mr. Hermalyn did not receive a job offer from Fanatics until January 27, 2024, and Mr. Hermalyn had never even thought seriously about leaving

DraftKings, much less joining Fanatics, until he reached out to Mr. Rubin on January 11, 2024, and really not until he had meetings with Fanatics starting on January 23, 2024. Mr. Hermalyn further objects to this Interrogatory to the extent that it assumes facts that do not exist, including that he has "shared, shown, presented, disclosed, or described DraftKings' documents or information to Fanatics or any agents of Fanatics" (he has not). Mr. Hermalyn further objects to this Interrogatory because it is vague and ambiguous, including without limitation in its failure to describe the subject documents and information with any specificity, and its use of the terms "each circumstance," "shared, shown, presented, disclosed, or described," and "agents of Fanatics." Mr. Hermalyn further objects to this Interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privileges, doctrines, or immunities.

Subject to and without waiving the foregoing, Mr. Hermalyn responds that he did not, before or after his departure from DraftKings, provide DraftKings' confidential information or any DraftKings documents to Fanatics or any of its affiliates, including Fanatics VIP. Mr. Hermalyn further responds that he has not shared, shown, presented, disclosed, or described any DraftKings documents to Fanatics at any time. With respect to DraftKings "information," Mr. Hermalyn struggles to respond because "information" is such a broad term. Mr. Hermalyn has provided public information about DraftKings to Fanatics. For example, Mr. Hermalyn shared the name of DraftKings' Chief Legal Officer with Fanatics. However, Mr. Hermalyn has not provided any of DraftKings' non-public information to Fanatics at any time.

**INTERROGATORY NO. 3:**

Describe all communications you have had with a Fanatics employee or agent from January 1, 2024 to the present related to DraftKings' business, business partners, customers, and employees.

DocuSign Envelope ID: A9C52AFC-0BEF-4BE8-A2F6-C86C121D5901

**RESPONSE TO INTERROGATORY NO. 3:**

Mr. Hermalyn incorporates by reference all of his General Objections as if fully set forth herein. Mr. Hermalyn further objects to this Interrogatory on the grounds that it is duplicative of Interrogatory No. 2. Mr. Hermalyn further objects to this Interrogatory because it lacks specificity and fails to identify the "communications" and any "business, business partners, customers, and employees" with any specificity. Mr. Hermalyn further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportionate to the needs of the case, which at this time are limited to issues concerning preliminary injunctive relief, including without limitation: (1) to the extent it seeks information regarding "all communications" regarding the subject topics, which are not limited to alleged competition, solicitation, or confidential information misappropriation; and (2) to the extent that it seeks information from outside of the relevant period, as Mr. Hermalyn did not receive a job offer from Fanatics until January 27, 2024, and Mr. Hermalyn had never even thought seriously about leaving DraftKings, much less joining Fanatics, until he reached out to Mr. Rubin on January 11, 2024, and really not until he had meetings with Fanatics starting on January 23, 2024. Mr. Hermalyn further objects to this Interrogatory to the extent that it assumes facts that do not exist, including that he had "communications" with "a Fanatics employee or agent from January 1, 2024 to the present related to DraftKings' business, business partners, customers, and employees." Mr. Hermalyn further objects to this Interrogatory because it is vague and ambiguous, including without limitation in its use of the phrases "communications," "Fanatics employee or agent," and "related to DraftKings' business, business partners, customers, and employees." Mr. Hermalyn further objects to this Interrogatory to the extent that it seeks documents protected from disclosure

by the attorney-client privilege, the attorney work-product doctrine, or any other privileges, doctrines, or immunities.

Subject to and without waiving the foregoing, Mr. Hermalyn incorporates by reference his response to Interrogatory No. 2. Mr. Hermalyn further responds that he has not had any communications with any Fanatics employees or agents about non-public information concerning DraftKings' business, business partners, customers, or employees since January 1, 2024 (nor any time before).

**INTERROGATORY NO. 4:**

Describe all communications you have had with any current or former employees of DraftKings from January 1, 2023 to the present regarding actual or potential employment by Fanatics.

**RESPONSE TO INTERROGATORY NO. 4:**

Mr. Hermalyn incorporates by reference all of his General Objections as if fully set forth herein. Mr. Hermalyn further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportionate to the needs of the case, which at this time are limited to issues concerning preliminary injunctive relief, including without limitation: (1) to the extent it seeks information regarding "all communications" without any subject matter limitation, including communications that have no relation to alleged competition, solicitation, or confidential information misappropriation; (2) to the extent that it refers to communications with DraftKings' "former employees"; (3) to the extent it does not distinguish between communications initiated by Mr. Hermalyn and those received by Mr. Hermalyn; and (4) to the extent that it seeks information from outside of the relevant period, as Mr. Hermalyn did not receive a job offer from Fanatics until January 27, 2024, and Mr. Hermalyn had never even thought

DocuSign Envelope ID: A9C52AFC-0BEF-4BE8-A2F6-C86C121D5901

seriously about leaving DraftKings, much less joining Fanatics, until he reached out to Mr. Rubin on January 11, 2024, and really not until he had meetings with Fanatics starting on January 23, 2024. Mr. Hermalyn further objects to this Interrogatory to the extent that it assumes facts that do not exist. Mr. Hermalyn further objects to this Interrogatory because it is vague and ambiguous, including without limitation in its failure to identify the subject "communications" or "current or former employees of DraftKings" with any specificity, and in its use of the phrase "actual or potential employment" and whether that refers to Mr. Hermalyn's actual or potential employment or the actual or potential employment of others. Mr. Hermalyn further objects to this Interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privileges, doctrines, or immunities.

Subject to and without waiving the foregoing, Mr. Hermalyn responds that from January 1, 2024 to the present (and at all times prior), Mr. Hermalyn has not solicited any current or former DraftKings employees on behalf of Fanatics.

Mr. Hermalyn further responds that he communicated with current DraftKings employees about his plan to accept employment with Fanatics in his resignation letter of February 1, 2024 sent to DraftKings.

Mr. Hermalyn further responds that, last summer, while still employed by DraftKings, after Mr. Hermalyn learned that former DraftKings employee Rob Ferrara was considering employment with Fanatics, Mr. Hermalyn spoke with him and other DraftKings employees on his team in an effort to keep them at DraftKings, including why they should not accept employment at Fanatics. Those discussions occurred during the summer of 2023, long before Mr. Hermalyn ever contemplated working for Fanatics. Specifically, in the summer of 2023, Mr. Ferrara, Shea Barr, and Jordan Whall each informed Mr. Hermalyn that they were leaving DraftKings to work for

Fanatics. Mr. Hermalyn attempted to convince all three of them to stay at DraftKings. Mr. Hermalyn was able to retain Mr. Barr and Mr. Whall, but was unable to retain Mr. Ferrara, who left to support Fanatics' collectibles business. Mr. Hermalyn did not encourage Mr. Ferrara, Mr. Barr, or Mr. Whall to leave DraftKings, whether for employment at Fanatics or elsewhere, nor did he put any of them in contact with any Fanatics executives or representatives. On July 20, 2023, in connection with Mr. Ferrara's departure from DraftKings, Mr. Hermalyn provided Mr. Ferrara with an email script to send to a current DraftKings client. The script was to explain that Mr. Ferrara was leaving the industry, and to encourage the client to meet with Mr. Hermalyn (referenced in the email as "Mike"), so Mr. Hermalyn could further develop the client relationship for DraftKings. This script was prepared by a team that included Mr. Hermalyn, DraftKings' in-house lawyers, and DraftKings' Chief Customer Officer Shawn Henley. Outside counsel at Gibson Dunn—the law firm serving as counsel for DraftKings in this matter—was involved in crafting this script. Mr. Hermalyn took steps to retain Mr. Barr and Mr. Whall and used the experience to bring his entire team closer. Mr. Hermalyn believes that his efforts were a major reason these two employees stayed at DraftKings.

Mr. Hermalyn further responds that, on February 1, 2024, shortly after he resigned, he received a call from ██████████  ████████ was, to the best of Mr. Hermalyn's recollection, in a conference room with ████████. Mr. Hermalyn had worked very closely with both ████████ and ████████ prior to his departure, so it was not a surprise that they would reach out to him given that he had not told them he was leaving. They asked Mr. Hermalyn if he was okay because they had heard that his SalesForce account was being deactivated. He responded that he was fine. He said that he was sorry he had to depart without telling them. He told them he could not talk but they could call him later. Later that night, ████████ and ████████ called

DocuSign Envelope ID: A9C52AFC-0BEF-4BE8-A2F6-C86C121D5901

Mr. Hermalyn, again expressing surprise at his departure. Mr. Hermalyn expressed his remorse for the fact that he had to resign in a way that came as a surprise to them. At no point during either conversation did Mr. Hermalyn hint or encourage ███████ or █████ to leave DraftKings for Fanatics. In responding to questions about his departure from DraftKings, he certainly had no intention that either ███████ or █████ leave DraftKings and was very careful to avoid soliciting—or even appearing to solicit—either of them.

Mr. Hermalyn further responds that he has spoken with his friend, ████████, in general terms, about Mr. Hermalyn working at Fanatics. Mr. Hermalyn has not solicited ████████ (who is a former DraftKings employee) on behalf of Fanatics.

Mr. Hermalyn further responds that he has received a number of missed calls and text messages from numbers that are not in his contacts because he has not synched his phone with his iCloud account. He does not know how many of those messages are from former DraftKings colleagues.

**INTERROGATORY NO. 5:**

Identify all your personal electronic devices, Communications Accounts and Cloud Storage Accounts on which you downloaded or accessed DraftKings' documents or information, including all personal email addresses that you use or have used on those devices since January 1, 2023 to the present.

**RESPONSE TO INTERROGATORY NO. 5:**

Mr. Hermalyn incorporates by reference all of his General Objections as if fully set forth herein. Mr. Hermalyn further objects to this Interrogatory as duplicative of Interrogatory No. 1. Mr. Hermalyn further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportionate to the needs of the case, which

DocuSign Envelope ID: A9C52AFC-0BEF-4BE8-A2F6-C86C121D5901

at this time are limited to issues concerning preliminary injunctive relief, including without limitation: (1) to the extent it seeks information regarding "DraftKings' documents and information" (regardless of ownership or confidentiality)—which implicates documents for which DraftKings issued no allegations in the Complaint, and for which DraftKings has not identified or designated any trade secrets or confidential information; (2) to the extent it seeks information concerning his "personal email addresses" and "personal electronic devices, Communications Accounts and Cloud Storage Accounts;" and (3) to the extent that it seeks information from outside of the relevant period, as Mr. Hermalyn did not receive a job offer from Fanatics until January 27, 2024, and Mr. Hermalyn had never even thought seriously about leaving DraftKings, much less joining Fanatics, until he reached out to Mr. Rubin on January 11, 2024, and really not until he had meetings with Fanatics starting on January 23, 2024. Mr. Hermalyn further objects to this Interrogatory to the extent that it assumes facts that do not exist, including that he "downloaded or accessed DraftKings' documents or information" on "Communications Accounts and Cloud Storage Accounts." Mr. Hermalyn further objects to this Interrogatory because it is vague and ambiguous, including without limitation in its use of the terms "Communications Accounts," "Cloud Storage Accounts," "downloaded or accessed," and "documents or information." Mr. Hermalyn further objects to this Interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privileges, doctrines, or immunities.

Subject to and without waiving the foregoing, Mr. Hermalyn refers to his response to Interrogatory No. 1. Mr. Hermalyn further responds that, prior to resigning from DraftKings, as permitted by DraftKings, he used his personal phone (an Apple iPhone, which he ceased having access to on January 31, 2024) to download or access DraftKings documents or information, and

he stored contacts in his personal Gmail account ([mikehermalyn@gmail.com](mailto:mikehermalyn@gmail.com)), in the course and scope of his work at DraftKings and for no other purpose. To be clear, Mr. Hermalyn has not retained a copy of any of these documents and has shared none of the information with anyone at Fanatics. Mr. Hermalyn further responds that he is unclear what "Communications Accounts" means.

**INTERROGATORY NO. 6:**

Identify all DraftKings' VIP clients with whom you have communicated concerning Fanatics.

**RESPONSE TO INTERROGATORY NO. 6:**

Mr. Hermalyn incorporates by reference all of his General Objections as if fully set forth herein. Mr. Hermalyn further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportionate to the needs of the case, which at this time are limited to issues concerning preliminary injunctive relief, including without limitation: (1) to the extent that it seeks information regarding "all DraftKings' VIP clients with whom you have communicated concerning Fanatics," including communications that have no relation to alleged competition, solicitation, or confidential information misappropriation; (2) to the extent it does not distinguish between communications initiated by Mr. Hermalyn and those received by Mr. Hermalyn; (3) to the extent that it seeks information from outside of the relevant period, as Mr. Hermalyn did not receive a job offer from Fanatics until January 27, 2024, and Mr. Hermalyn had never even thought seriously about leaving DraftKings, much less joining Fanatics, until he reached out to Mr. Rubin on January 11, 2024, and really not until he had meetings with Fanatics starting on January 23, 2024. Mr. Hermalyn further objects to this Interrogatory to the extent that it assumes facts that do not exist, including that he "communicated" with "DraftKings'

VIP clients . . . concerning Fanatics." Mr. Hermalyn further objects to this Interrogatory because it is vague and ambiguous, including without limitation in its failure to identify the subject "DraftKings' VIP clients" with any specificity, and in its use of the phrase "concerning Fanatics." Mr. Hermalyn further objects to this Interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privileges, doctrines, or immunities. Mr. Hermalyn further objects to this Interrogatory as not limited in time. Mr. Hermalyn interprets this Interrogatory as asking for any communications with DraftKings' VIP clients concerning Fanatics since his departure from DraftKings on February 1, 2024.

Subject to and without waiving the foregoing, Mr. Hermalyn responds that from February 1, 2024 to the present (and at all times prior), Mr. Hermalyn has not solicited any DraftKings' VIP clients on behalf of Fanatics. Mr. Hermalyn further responds that, since his resignation from DraftKings, he has not conducted any outreach to DraftKings' clients. To the extent he has run into DraftKings' clients, for example, at the Super Bowl, he has made certain not to solicit their business for Fanatics. Mr. Hermalyn recalls exchanging pleasantries at public venues over Super Bowl weekend with the following DraftKings clients (he uses DraftKings' internal nicknames for some of these individuals to maintain confidentiality, and has not shared any of their identities with Fanatics):

- ▉▉▉▉
- ▉▉▉▉▉
- ▉▉▉▉▉▉
- ▉▉
- ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

- ███
- ████
- ███

In each instance, Mr. Hermalyn's interaction was brief and unplanned, and he was careful to avoid saying anything that could in any way be construed as a solicitation.

Mr. Hermalyn further responds that he has received a number of missed calls and text messages from numbers that are not in his contacts because he has not synched his phone with his iCloud account and he does not know whether some are from DraftKings clients.

**INTERROGATORY NO. 7:**

Identify all DraftKings' VIP clients with whom you have communicated since February 1, 2024.

**RESPONSE TO INTERROGATORY NO. 7:**

Mr. Hermalyn incorporates by reference all of his General Objections as if fully set forth herein. Mr. Hermalyn further objects to this Interrogatory on the grounds that it is duplicative of Interrogatory No. 6. Mr. Hermalyn further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportionate to the needs of the case, which at this time are limited to issues concerning preliminary injunctive relief, including without limitation: (1) to the extent that it seeks information regarding "all DraftKings' VIP clients with whom you have communicated since February 1, 2024," regardless of subject matter, including communications that have no relation to alleged competition, solicitation, or confidential information misappropriation; (2) to the extent it does not distinguish between communications initiated by Mr. Hermalyn and those received by Mr. Hermalyn; (3) to the extent that it seeks information from outside of the relevant period, as Mr. Hermalyn did not receive a job offer from Fanatics until January 27, 2024, and Mr. Hermalyn had never even thought seriously

about leaving DraftKings, much less joining Fanatics, until he reached out to Mr. Rubin on January 11, 2024, and really not until he had meetings with Fanatics starting on January 23, 2024. Mr. Hermalyn further objects to this Interrogatory because it is vague and ambiguous, including without limitation in its failure to identify the subject "DraftKings' VIP clients" with any specificity. Mr. Hermalyn further objects to this Interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privileges, doctrines, or immunities.

Subject to and without waiving the foregoing, Mr. Hermalyn incorporates his response to Interrogatory No. 6.

**INTERROGATORY NO. 8:**

Identify the date when You began working for Fanatics.

**RESPONSE TO INTERROGATORY NO. 8:**

Mr. Hermalyn began working for FVP, LLC on February 1, 2024.

**INTERROGATORY NO. 9:**

Identify all DraftKings' former or current employees with whom you have communicated concerning Fanatics.

**RESPONSE TO INTERROGATORY NO. 9:**

Mr. Hermalyn incorporates by reference all of his General Objections as if fully set forth herein. Mr. Hermalyn further objects to this Interrogatory on the grounds that it is duplicative of Interrogatory No. 4. Mr. Hermalyn further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportionate to the needs of the case, which at this time are limited to issues concerning preliminary injunctive relief, including without limitation: (1) to the extent that it seeks information regarding "all DraftKings' former or current employees with whom you have communicated concerning Fanatics," including

DocuSign Envelope ID: A9C52AFC-0BEF-4BE8-A2F6-C86C121D5901

communications that have no relation to alleged competition, solicitation, or confidential information misappropriation; (2) to the extent that it seeks information regarding communications with DraftKings' "former employees"; (3) to the extent it does not distinguish between communications initiated by Mr. Hermalyn and those received by Mr. Hermalyn; and (3) to the extent that it seeks information from outside of the relevant period, as Mr. Hermalyn did not receive a job offer from Fanatics until January 27, 2024, and Mr. Hermalyn had never even thought seriously about leaving DraftKings, much less joining Fanatics, until he reached out to Mr. Rubin on January 11, 2024, and really not until he had meetings with Fanatics starting on January 23, 2024. Mr. Hermalyn further objects to this Interrogatory to the extent that it assumes facts that do not exist. Mr. Hermalyn further objects to this Interrogatory because it is vague and ambiguous, including without limitation in its failure to identify the subject "DraftKings' former or current employees " with any specificity, and in its use of the phrase "concerning Fanatics." Mr. Hermalyn further objects to this Interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privileges, doctrines, or immunities. Mr. Hermalyn further objects to this Interrogatory as not limited in time. Mr. Hermalyn interprets this Interrogatory as asking for any communications with DraftKings' employees concerning Fanatics since his departure from DraftKings on February 1, 2024.

Subject to and without waiving the foregoing, Mr. Hermalyn incorporates his response to Interrogatory No. 4.

**<u>INTERROGATORY NO. 10</u>:**

Identify all DraftKings' former or current employees with whom you have communicated since February 1, 2024.

DocuSign Envelope ID: A9C52AFC-0BEF-4BE8-A2F6-C86C121D5901

**RESPONSE TO INTERROGATORY NO. 10:**

Mr. Hermalyn incorporates by reference all of his General Objections as if fully set forth herein.  Mr. Hermalyn further objects to this Interrogatory on the grounds that it is duplicative of Interrogatories Nos. 4 and 9.  Mr. Hermalyn further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, seeks irrelevant information, and is disproportionate to the needs of the case, which at this time are limited to issues concerning preliminary injunctive relief, including without limitation: (1) to the extent it seeks information regarding "all DraftKings' former or current employees with whom you have communicated" without any subject matter limitation, including communications that have no relation to alleged competition, solicitation, or confidential information misappropriation; (2) to the extent that it refers to communications with DraftKings' "former employees"; (3) to the extent it does not distinguish between communications initiated by Mr. Hermalyn and those received by Mr. Hermalyn; and (4) to the extent that it seeks information from outside of the relevant period, as Mr. Hermalyn did not receive a job offer from Fanatics until January 27, 2024, and Mr. Hermalyn had never even thought seriously about leaving DraftKings, much less joining Fanatics, until he reached out to Mr. Rubin on January 11, 2024, and really not until he had meetings with Fanatics starting on January 23, 2024.  Mr. Hermalyn further objects to this Interrogatory because it is vague and ambiguous, including without limitation in its failure to identify the subject "communications" or "DraftKings' current or former employees" with any specificity.  Mr. Hermalyn further objects to this Interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege, the attorney work-product doctrine, or any other privileges, doctrines, or immunities.

Subject to and without waiving the foregoing, Mr. Hermalyn incorporates his responses to Interrogatories Nos. 4 and 9.

DocuSign Envelope ID: A9C52AFC-0BEF-4BE8-A2F6-C86C121D5901

Mr. Hermalyn further responds that he has either been on the receiving end of communications with, and/or exchanged pleasantries with, the following additional individuals (he has not solicited any of these individuals on behalf of Fanatics):



As to objections,

/s/   *Russell Beck*
Russell Beck (BBO# 561031)
Stephen Riden (BBO# 644451)
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, MA 02110
Tel.: (617) 500-8660
Fax: (617) 500-8665
rbeck@beckreed.com
sriden@beckreed.com

Dated:  February 20, 2024                    *Attorneys for Michael Hermalyn*

## VERIFICATION OF ANSWERS

I, Michael Z. Hermalyn, am a party to this action. I have read and reviewed the Responses and Objections to Plaintiff DraftKings, Inc.'s Amended First Set of Interrogatories to Defendant Michael Z. Hermalyn (Nos. 1-10), and those responses are true to the best of my knowledge and belief at this time, based on the information available to me.

Dated:  February 20, 2024

_DocuSigned by:_

—7C67DCA0DC30429...

Michael Z. Hermalyn

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served upon counsel of record for Plaintiff DraftKings through electronic mail, this 20th day of February 2024.

*/s/ Russell Beck*