# EXHIBIT H

GIBSON, DUNN & CRUTCHER LLP
JAMES P. FOGELMAN, SBN 161584
jfogelman@gibsondunn.com
ALAYNA MONROE, SBN 329061
amonroe@gibsondunn.com
2029 Century Park East, Ste. 4000
Los Angeles, CA 90067
Telephone: 310.552.8500
Facsimile: 310.551.8741

KATHERINE V.A. SMITH, SBN 247866
ksmith@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Specially Appearing
Defendant DraftKings Inc.*

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/01/2024 3:38 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By K. Hung, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| Michael Z. Hermalyn and FVP, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DraftKings, Inc. <br><br> Defendant. | CASE NO. 24STCV02694 <br><br> **SPECIALLY APPEARING DEFENDANT DRAFTKINGS INC.'S NOTICE OF MOTION AND MOTION TO QUASH SERVICE OF SUMMONS FOR LACK OF PERSONAL JURISDICTION; MEMORANDUM IN SUPPORT** <br><br> **HEARING:** <br> Reservation ID: 888360502014 <br> Date: June 13, 2024 <br> Time: 8:30 a.m. <br> Dept: 39 <br> Judge: Hon. Stephen I. Goorvitch <br><br> Action Filed: February 1, 2024 <br> Trial Date: None set |

**NOTICE OF MOTION TO QUASH SERVICE OF SUMMONS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 13, 2024, at 8:30 a.m., in Department 39 of the Los Angeles Superior Court, the Honorable Stephen I. Goorvitch presiding, specially appearing Defendant DraftKings Inc. will, and hereby does, move the Court for an order quashing service of summons of Plaintiffs' complaint for lack of personal jurisdiction pursuant to Code of Civil Procedure section 418.10.

The Court lacks general personal jurisdiction over DraftKings because the company is not at home in California. The Court lacks specific personal jurisdiction over DraftKings because Plaintiffs' claims do not arise out of or relate to DraftKings' alleged contacts with California.

This motion is based on this notice of motion and motion; the concurrently filed declaration of Katherine V.A. Smith, and the exhibits attached to the declarations; all other matters of which the Court may take judicial notice; all records and pleadings on file with the Court in this matter; and all further evidence and argument that may be presented in briefs or at the hearing on this motion.

DATED: February 29, 2024

GIBSON, DUNN & CRUTCHER LLP

By: /s/ James P. Fogelman

James P. Fogelman

*Attorneys for Specially Appearing Defendant DraftKings Inc.*

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ...................................................................................6

II.   BACKGROUND ....................................................................................8

     A.    DraftKings Is Incorporated in Nevada and Headquartered in Massachusetts .............8

     B.    Hermalyn Executes Several Agreements with DraftKings While in New Jersey ........8

     C.    Hermalyn Joins Fanatics and Races to Court to Escape His Obligations to DraftKings...............................................................................8

     D.    A Federal Court in Massachusetts Exercises Jurisdiction over the Parties' Dispute and Temporarily Restrains Hermalyn from Violating His Agreements with DraftKings ......................................................9

     E.    This Court Denies Hermalyn's Ex Parte TRO Application .......................................11

III.  LEGAL STANDARD ...........................................................................11

IV.  ARGUMENT........................................................................................12

     A.    This Court Lacks General Personal Jurisdiction over DraftKings ...........................12

     B.    This Court Lacks Specific Personal Jurisdiction over DraftKings ...........................13

          1.    Plaintiffs' Claims Do Not Relate to or Arise out of DraftKings' Alleged Contacts with California ..............................................................14

               a.    Plaintiffs' Claims Are Unrelated to DraftKings' California Contacts..................................................................14

               b.    Plaintiffs' Unilateral Conduct Cannot Support Specific Jurisdiction...............................................................15

               c.    Plaintiffs' Claim That They Will Be Harmed in California Is Insufficient.............................................................18

          2.    Exercising Specific Jurisdiction over DraftKings Would Be Unreasonable...................................................................20

V.   CONCLUSION.....................................................................................20

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Briskin v. Shopify, Inc.* (9th Cir. 2023)
    87 F.4th 404 ..................................................................................15, 17, 18

*Bristol-Myers Squibb Co. v. Superior Court* (2017)
    582 U.S. 255 ..................................................................................13, 14, 15

*Burger King Corp. v. Rudzewicz* (1985)
    471 U.S. 462 ..................................................................................11, 16, 17

*Calder v. Jones* (1984)
    465 U.S. 783 ..................................................................................19

*Core-Vent Corp. v. Nobel Indus. AB* (9th Cir. 1993)
    11 F.3d 1482 ..................................................................................20

*Daimler AG v. Bauman* (2014)
    571 U.S. 117 ..................................................................................12, 13

*DVI, Inc. v. Superior Court* (2002)
    104 Cal.App.4th 1080 ..................................................................................12

*Elkman v. National States Ins. Co.* (2009)
    173 Cal.App.4th 1305 ..................................................................................16

*Floveyor Internat., Ltd. v. Superior Court* (1997)
    59 Cal.App.4th 789 ..................................................................................11

*Ford Motor Co. v. Montana Eighth Judicial District Court* (2021)
    592 U.S. 351 ..................................................................................7, 12, 13, 15, 17

*Goodyear Dunlop Tires Ops., S.A. v. Brown* (2011)
    564 U.S. 915 ..................................................................................13, 15

*Greenwell v. Auto-Owners Ins. Co.* (2015)
    233 Cal.App.4th 783 ..................................................................................11

*Halyard Health, Inc. v. Kimberly-Clark Corp.* (2019)
    43 Cal.App.5th 1062 ..................................................................................12, 13

*Hanson v. Denckla* (1958)
    357 U.S. 235 ..................................................................................16

*Helicopteros Nacionales de Colombia, S.A. v. Hall* (1984)
    466 U.S. 408 ..................................................................................16

*LG Chem, Ltd. v. Superior Court* (2022)
    80 Cal.App.5th 348 ..................................................................................12, 13, 14, 15, 20

*Pavlovich v. Superior Court* (2002)
    29 Cal.4th 262 ..................................................................................11, 14, 16

Gibson, Dunn &
Crutcher LLP

*Regents of Univ. of Cal. v. Universal Health Care Grp., Inc.* (C.D.Cal. Apr. 19, 2011)
    2011 WL 13228075 ................................................................................................ 16, 17

*Strasner v. Touchstone Wireless Repair & Logistics, LP* (2016)
    5 Cal.App.5th 215 ....................................................................................................... 12

*Taylor-Rush v. Multitech Corp.* (1990)
    217 Cal.App.3d 103 ............................................................................................... 18, 19

*Vons Cos., Inc. v. Seabest Foods, Inc.* (1996)
    14 Cal.4th 434 ............................................................................................................. 11

*Walden v. Fiore* (2014)
    571 U.S. 277 ................................................................ 7, 13, 14, 15, 16, 17, 18, 19, 20

*World-Wide Volkswagen Corp. v. Woodson* (1980)
    444 U.S. 286 ........................................................................................................... 16, 17

*Zehia v. Superior Court* (2020)
    45 Cal.App.5th 543 ................................................................................................. 19, 20

*Ziller Electronics Lab GmbH v. Superior Court* (1988)
    206 Cal.App.3d 1222 .................................................................................................. 12

**Statutes**

Code Civ. Proc., § 410.10 ................................................................................................. 11

SPECIALLY APPEARING DEFENDANT DRAFTKINGS' NOTICE OF MOTION AND MOTION
TO QUASH SERVICE OF SUMMONS

Gibson, Dunn &
Crutcher LLP

This case cannot be pursued in California because this Court lacks personal jurisdiction over DraftKings.  DraftKings, incorporated in Nevada and headquartered in Massachusetts, is not "at home" in California for purposes of general personal jurisdiction.  Because none of Plaintiffs' claims has any connection to activities in California, this Court does not have specific jurisdiction over DraftKings either.  The Court should quash the service of summons and dismiss the case for lack of jurisdiction.

For years, Michael Hermalyn worked and lived 2,500 miles away from California as a senior executive at DraftKings, a preeminent digital sports entertainment company headquartered in Boston, Massachusetts.  Just before Super Bowl 2024, while taking time off allegedly due to the death of a friend, he left his family in New Jersey and purportedly "moved" to California to accept a job at FVP, LLC, a Fanatics affiliate and DraftKings' competitor.  As he prepared to leave, he stole confidential information about DraftKings' customers, clients, employees, vendors, and partners.

DraftKings promptly filed a complaint in Massachusetts federal court as required by the forum-selection clause in the parties' agreements.  Rejecting Hermalyn's plea that the court stay proceedings in favor of this case, the Honorable Julia Kobick concluded that the exercise of jurisdiction in Massachusetts would "better serve the interests involved," and that "California has little connection" to the parties' disputes "other than the fact that Mr. Hermalyn moved to California" shortly before filing litigation.  As Judge Kobick correctly recognized, this dispute should be adjudicated in Massachusetts and not in California—leading her to conclude that she has a "virtually unflagging obligation to exercise its jurisdiction in this case."  To that end, Judge Kobick has already issued five orders in the Massachusetts action, including a temporary restraining order prohibiting Hermalyn from using DraftKings trade secrets and trying to poach DraftKings customers, vendors, partners and employees.  This TRO is in place until April 2, when the Massachusetts federal court will hear DraftKings' motion for a preliminary injunction.

Hermalyn now comes to this Court with the same arguments that failed in Massachussetts—that he is a brand-new California resident who, under California law, is free to dishonor the many agreements he signed, and received millions for signing, with DraftKings.  But not only did Hermalyn and DraftKings agree to resolve their disputes in Massachusetts (and are in the process of litigating

those disputes there), this Court lacks *power* to adjudicate the claims asserted in this case because it lacks personal jurisdiction over DraftKings. As the U.S. Supreme Court has explained, there are "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." (*Ford Motor Co. v. Montana Eighth Judicial District Court* (2021) 592 U.S. 351, 358.) Neither exists here.

**General jurisdiction.** "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State." (*Ford*, 592 U.S. at p. 358.) A corporate defendant is generally "at home" only at its place of "incorporation and principal place of business." (*Id.* at p. 359.) DraftKings is not at home in California. It is at home only in Nevada, where it is incorporated, and Massachusetts, where it is headquartered. DraftKings does business in California, but that does not mean that it could be sued in California for any reason—any more than it could be sued in Alaska, Oklahoma, or any other state where it is not "at home." DraftKings can be be sued for any reason only in its two home states, and California is not one of them.

**Specific jurisdiction.** A court may exercise specific jurisdiction over a defendant when "[t]he plaintiff's claims . . . arise out of or relate to the defendant's contacts with the forum." (*Ford*, 592 U.S. at p. 359.) In other words, "the defendant's suit-related conduct must create a substantial connection with the forum State." (*Walden v. Fiore* (2014) 571 U.S. 277, 284.) DraftKings has done nothing in California that has any connection to the claims asserted in this case. It employed Hermalyn thousands of miles away, mainly in New Jersey, under employment agreements signed there, not in California. Those agreements call for all disputes to be resolved in Massachusetts, where DraftKings is currently enforcing the agreements. The *only* connection between California and this case is Hermalyn claims to have recently moved here and FVP, LLC hired him. But the U.S. Supreme Court has repeatedly held that plaintiffs cannot manufacture specific jurisdiction based on their "unilateral activity," and that "mere injury to a forum resident is not a sufficient connection to the forum" to create jurisdiction. (*Id.* at pp. 286, 290.) Were it otherwise, the doctrine of personal jurisdiction would be meaningless—easily defeated whenever a plaintiff claims to have moved wherever the law is most favorable to his claims.

The Court should quash the service of summons and dismiss this case for lack of jurisdiction.

**A.    DraftKings Is Incorporated in Nevada and Headquartered in Massachusetts**

DraftKings is a leader in the digital sports entertainment and gaming industry, best known for fantasy sports and mobile sports betting.  (Compl. ¶ 14.)  DraftKings is incorporated in Nevada and is headquartered in Massachusetts.  (*Id.* ¶¶ 14, 20.)

Plaintiffs allege that DraftKings has contracted with California-based companies, and makes certain gaming services "available to residents of California." (Compl. ¶¶ 14-15.)  Plaintiffs also allege that DraftKings has conducted outreach "to lawmakers and voters in this County," and conducted "advocacy efforts and advertising related to a sports-betting ballot measure in California." (*Id.* ¶ 15.)  Plaintiffs do not explain how any of these alleged California activities relate to their claims here.

**B.    Hermalyn Executes Several Agreements with DraftKings While in New Jersey**

From September 2020 to February 1, 2024, Hermalyn was a DraftKings employee who lived and worked out of his home in Bay Head, New Jersey, and occasionally commuted to DraftKings' New York City office.  (Compl. ¶¶ 12, 17, 19; Smith Decl. Ex. F ¶ 4; Feb. 13, 2024 Hermalyn Decl. ¶ 9.)  While employed at DraftKings, he led DraftKings' VIP team as Senior Vice President of Growth.  (Compl. ¶ 18; Smith Decl. Ex. F ¶ 5; Feb. 13, 2024 Hermalyn Decl. ¶ 8.)  The VIP team builds and maintains relationships with DraftKings' most loyal customers, recruiting and retaining the customers responsible for a significant share of DraftKings' business.  (Smith Decl. Ex. F ¶ 6.)

"In connection with his employment by DraftKings," Hermalyn was offered the opportunity to receive valuable equity in the company in exchange for his agreement to abide by certain non-competition agreements, and agreed to non-solicitation, and confidentiality agreements as a condition of employment.  (Compl. ¶¶ 30-32, 42.)  Hermalyn repeatedly accepted this bargain and agreed to these terms "about a dozen" times.  (*Id.* ¶¶ 30, 33.)  In doing so, he repeatedly agreed any disputes between the parties would be resolved in Massachusetts federal court.  (*Id.* ¶¶ 32, 44-45.)  Plaintiffs acknowledge that Hermalyn "signed each of the agreements from his home in New Jersey or remotely via DocuSign" (*Id.* ¶ 31; Feb. 13, 2024 Hermalyn Decl. ¶ 16); he did not sign any agreements in California.

**C.    Hermalyn Joins Fanatics and Races to Court to Escape His Obligations to DraftKings**

Despite his contractual obligations to DraftKings, the unique position of trust he held, and the

significant compensation he received, Hermalyn jumped ship to Fanatics (a competing digital sports platform) on February 1, 2024. He timed his move to Fanatics to occur just before the Super Bowl—the most critical and demanding day for any sports-betting business. (Smith Decl. Ex. F ¶ 9.)

In the week leading up to his resignation, Hermalyn told DraftKings that he needed to take time off to "mourn" the death of a close friend from Pennsylvania. (Smith Decl. Ex. F ¶ 10.) But rather than travel to Pennsylvania, Hermalyn flew to Fanatics' California offices to finalize the terms under which he would defect from DraftKings and begin new employment with Fanatics in the critical days before the Super Bowl. (*Ibid.*) DraftKings' data records, including geolocation information, confirm that Hermalyn accessed and downloaded DraftKings' trade secrets and prized confidential information to a non-DraftKings' device while at Fanatics' California office. (*Id.* ¶ 11.) This included the "(Master) SB 2024" spreadsheet with details about the key partners attending the Super Bowl, such as employment or other affiliation, his or her travel itinerary, and what events he or she will attend. (*Ibid.*)

On February 1, Hermalyn tendered his purported resignation from DraftKings, even though he had already been secretly competing against it. (Compl. ¶ 21.) "He informed DraftKings . . . that he intended to accept employment with Fanatics in California." (*Ibid.*) Minutes later, Plaintiffs filed their complaint, alleging DraftKings "has sought to improperly constrain Mr. Hermalyn from pursing a lawful profession of his choosing with Fanatics VIP in California, and to improperly restrict Fanatics VIP from employing him." (*Id.* ¶ 2.) Plaintiffs seek a judicial declaration that Hermalyn may continue working for Fanatics, and that the non-compete, choice-of-law, and forum-selection provisions are void and unenforceable under California law. (*Id.* ¶ 79.) Plaintiffs also seek an injunction voiding those provisions and enjoining DraftKings from enforcing them in court. (*Id.* ¶¶ 81-86.)

**D.      A Federal Court in Massachusetts Exercises Jurisdiction over the Parties' Dispute and Temporarily Restrains Hermalyn from Violating His Agreements with DraftKings**

On February 5, DraftKings sued Hermalyn in federal district court in Massachusetts. (*DraftKings v. Hermalyn*, No. 1:24-cv-10299 (D. Mass.); Smith Decl. Ex. A.) DraftKings asserts claims for trade-secret misappropriation arising from Hermalyn's theft of DraftKings' information, as well as for breach of Hermalyn's confidentiality, non-solicitation, and non-compete agreements with DraftKings. DraftKings also asserts common-law claims arising out of Hermalyn's deceptive conduct

Gibson, Dunn & Crutcher LLP

and misuse of corporate funds. (Smith Decl. Ex. A.) DraftKings sought a TRO preventing Hermalyn from soliciting its clients and customers and using its confidential information. (*Hermalyn*, Dkts. 3-4.)

Hermalyn moved to stay the Massachusetts case in favor of this one, but the Massachusetts court denied the motion. (*Hermalyn*, Dkts. 25-26.) The court concluded:

> [I]t has a "virtually unflagging obligation" to exercise its jurisdiction in this case. . . . [¶] While the California case was filed before this action and includes both Hermalyn and DraftKings as parties, the Courts [sic] exercise of jurisdiction here would "better serve the interests involved." [¶] Hermalyn signed a confidentiality agreement and a noncompetition covenant with DraftKings expressly stating that he "submit[s] to the personal jurisdiction of" "the United States District Court for the District of Massachusetts for any dispute arising hereunder" and "waive[s] any other requirement . . . with respect to personal jurisdiction or service of process."

(Smith Decl. Ex. B.)

On February 8, the court granted DraftKings' motion for a TRO, prohibiting Hermalyn from, among other things, "using or disclosing any of DraftKings' Confidential Information"; "soliciting or transacting business . . . with any of DraftKings' customers, clients, vendors, or partners . . . about which [he] learned confidential information or which [he] had some involvement or knowledge"; and "hiring away an employee, advisor, consultant, or contractor of DraftKings." (Smith Decl. Ex. C.) The court reasoned that "DraftKings ha[d] shown a likelihood of success on the merits of its trade secrets misappropriation claims" because the evidence shows Hermalyn "used improper means in breach of a confidential relationship to acquire and use [DraftKings'] trade secret[s]." (*Id.* Ex. D at 51:20-52:3.) Specifically, the evidence shows Hermalyn downloaded—and admitted downloading—"three of DraftKings' highly confidential documents, which contained trade secrets, on January 29th and January 30th, 2024, the same days he was linked to an IP address" in a network containing the word "fanatics" "in Los Angeles, California." (*Id.* at 52:11-53:1.) And in connection with the forum-selection clauses in Hermalyn's agreements, the Massachusetts court expressed doubt that "California has a materially greater interest than Massachusetts in this litigation," including because Hermalyn didn't negotiate the contract in California or work in California, but did sometimes work in Massachusetts, where DraftKings is headquartered and where "[a]ny harm caused by a violation of the agreements will be felt." (*Id.* at 54:23-55:6.) As the court saw it, "California has little connection to this case . . . other than the fact that Mr. Hermalyn moved to California one week ago." (*Id.* at 55:7-9.)

On February 14, 2024, Hermalyn moved to clarify the scope of the TRO, but the Massachusetts

court denied the motion. (Smith Decl. Ex. E.) The court ruled that the limitations imposed by the challenged portion of the TRO "prevent Mr. Hermalyn from disclosing any of DraftKings' confidential information and trade secrets in connection with his new role at Fanatics." (*Ibid.*) The court also reiterated that the TRO will remain in effect until April 2, 2024, when the Massachusetts court will hold a hearing on DraftKings' motion for a preliminary injunction. (*Ibid.*; *Hermalyn*, Dkt. 43.)

**E.     This Court Denies Hermalyn's Ex Parte TRO Application**

On February 20, 2024, Hermalyn filed an ex parte application for a TRO and issuance of an order to show cause regarding a preliminary injunction. DraftKings filed its opposition the next day, arguing that Hermalyn was not entitled to such extraordinary relief because, among other reasons, this Court lacks personal jurisdiction over DraftKings. The following morning, Hermalyn's counsel filed a declaration responding to DraftKings' personal jurisdiction arguments. (Feb. 22, 2024 Conley Decl.) After holding a hearing, Judge Beckloff denied Hermalyn's application in full. (Feb. 22, 2024 Order.)

**III.     LEGAL STANDARD**

A court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) Under the California and U.S. Constitutions, all defendants have "a liberty interest in not being subject to the judgments of a forum with which [they have] established no meaningful 'contacts, ties, or relations.'" (*Vons Cos., Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445, quoting *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 471-472.) Thus, a court has personal jurisdiction over only those defendants who have "minimum contacts" with the forum such that the assertion of jurisdiction does not violate "'traditional notions of fair play and substantial justice.'" (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268.)

A defendant may secure dismissal of a case by serving and filing a motion to quash service of summons because California courts lack jurisdiction over it. (Code Civ. Proc., § 418.10, subd. (a)(1); *Floveyor Internat., Ltd. v. Superior Court* (1997) 59 Cal.App.4th 789, 793.) When a nonresident defendant challenges personal jurisdiction, "the plaintiff bears the burden of establishing by a preponderance of the evidence that minimum contacts exist between the defendant and the forum to justify imposition of personal jurisdiction." (*Greenwell v. Auto-Owners Ins. Co.* (2015) 233 Cal.App.4th 783, 789.) A plaintiff must present "competent evidence in affidavits and authenticated

documentary evidence" to meet that burden. (*Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1233.) "An unverified complaint," like Plaintiffs' complaint in this case, "may not be considered as an affidavit supplying necessary facts." (*Ibid.*; see also *DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1091 [unverified complaint has no evidentiary value].)

"There are 'two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction.'" (*LG Chem, Ltd. v. Superior Court* (2022) 80 Cal.App.5th 348, 360, quoting *Ford*, 592 U.S. at p. 358.) If a plaintiff cannot prove either kind exists, his case must be dismissed. (See *Halyard Health, Inc. v. Kimberly-Clark Corp.* (2019) 43 Cal.App.5th 1062, 1070.)

## IV.     ARGUMENT

This Court should quash the service of summons and dismiss the case because it lacks personal jurisdiction over DraftKings. General jurisdiction is lacking because DraftKings is not at home in California. It is incorporated in Nevada and headquartered in Massachusetts. Specific jurisdiction also is lacking, as Plaintiffs' claims do not arise out of or relate to DraftKings' alleged California contacts.

**A.      This Court Lacks General Personal Jurisdiction over DraftKings**

The U.S. Supreme Court has set a high bar for establishing general personal jurisdiction over a corporate defendant. "[A] court may assert [general] jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially *at home* in the forum State.'" (*Daimler AG v. Bauman* (2014) 571 U.S. 117, 122, italics added; see also *Ford*, 592 U.S. at p. 358 ["A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State"].) Outside of "exceptional case[s]" unlike this one, a corporation is "at home" *only* in its State of "incorporation or principal place of business." (*Daimler*, 571 U.S. at p. 139, fn. 19; see also *Strasner v. Touchstone Wireless Repair & Logistics, LP* (2016) 5 Cal.App.5th 215, 222 ["For a corporation, its domicile, place of incorporation, and/or principal place of business within a state constitute the paradigm bases for establishing general jurisdiction"].)

As Plaintiffs admit in their complaint, "Defendant DraftKings is a Nevada corporation that is headquartered in Boston, Massachusetts." (Compl. ¶ 14.) As a result, "[i]t is obvious California courts

Gibson, Dunn & Crutcher LLP

do not have general jurisdiction over" DraftKings. (*Halyard*, 43 Cal.App.5th at p. 1070.)

In connection with Hermalyn's ex parte TRO application, Plaintiffs emphasized that "DraftKings has engaged in substantial contact with the forum for this Court to exercise personal jurisdiction over DraftKings." (Feb. 22, 2024 Conley Decl. ¶ 2.) But the U.S. Supreme Court has expressly declined to "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business," explaining that such a "formulation . . . is unacceptably grasping." (*Daimler*, 571 U.S. at pp. 137-138.) As a result, "[a] corporation's continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." (*Goodyear Dunlop Tires Ops., S.A. v. Brown* (2011) 564 U.S. 915, 927.) That is why, for example, the Court of Appeal in *Halyard* deemed it "obvious" that Kimberly-Clark is not subject to general jurisdiction in California, even though its products (like Kleenex tissues and Huggies diapers) are available throughout the state and generated "6 percent of [Kimberly-Clark's] global net sales." (*Halyard*, 43 Cal.App.5th at p. 1065.) It is also why California courts had no general jurisdiction over Bristol-Myers Squibb, even though it "sold almost 187 million Plavix pills in the State and took in more than $900 million from those sales" (*Bristol-Myers Squibb Co. v. Superior Court* (2017) 582 U.S. 255, 259), or over Daimler, even though it sells "tens of thousands" of cars in California every year (*Daimler*, 517 U.S. at pp. 136-139; *id.* at p. 142 [Sotomayor, J. concurring].) The same is true here. While DraftKings may do business in California, it is not at home here. This Court lacks general jurisdiction over DraftKings.

## B. This Court Lacks Specific Personal Jurisdiction over DraftKings

Plaintiffs also cannot show that this Court has specific jurisdiction over DraftKings. "A court may exercise specific jurisdiction over a nonresident defendant only if: (1) the defendant has purposefully availed itself of forum benefits; (2) the plaintiff's claims are related to or arise out of the defendant's contacts with the forum state; and (3) the forum state's assertion of personal jurisdiction would comport with fair play and substantial justice." (*LG Chem*, 80 Cal.App.5th at p. 361; see also *ibid.* [plaintiff must present "competent evidence" on "first two requirements"].) This inquiry "focuses on the relationship among the defendant, the forum, and the litigation" (*Walden*, 571 U.S. at pp. 283-284), and permits courts to exercise jurisdiction only over "a narrow[] class of claims" (*Ford*, 592 U.S.

at p. 359). Plaintiffs' claims do not fall within that narrow class because they have no connection to DraftKings' limited contacts in California, and thus it would not be "reasonable" or "fair" to compel DraftKings to defend itself in this forum. (*Pavlovich*, 29 Cal.4th at p. 268.)

### 1. Plaintiffs' Claims Do Not Relate to or Arise out of DraftKings' Alleged Contacts with California

"[F]or a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." (*Bristol-Myers*, 582 U.S. at p. 262.) This "element of the minimum contacts test requires a connection between the plaintiff's claims and the nonresident defendant's forum activities." (*LG Chem*, 80 Cal.App.5th at p. 364.) Put another way, "the defendant's suit-related conduct must create a substantial connection with the forum State." (*Walden*, 571 U.S. at p. 284.) "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." (*Bristol-Myers*, 582 U.S. at p. 264.) Here, Plaintiffs cannot demonstrate their claims arise out of or relate to DraftKings' alleged contacts with California. All that connects this case to California is Hermalyn's unilateral conduct and purported harm in California, which cannot satisfy the defendant-centric analysis for specific personal jurisdiction.

### a. Plaintiffs' Claims Are Unrelated to DraftKings' California Contacts

Plaintiffs claim the non-compete provisions in the dozen agreements Hermalyn signed as a DraftKings employee are void and unenforceable, and seek to prevent DraftKings from enforcing those provisions against him. But all of DraftKings' "suit-related conduct" (*Walden*, 571 U.S. at p. 284) occurred on the opposite side of the country, not in California. Plaintiffs admit that Hermalyn executed all the agreements while living and working in New Jersey (and sometimes New York City). (Compl. ¶¶ 12, 19, 31.) And Plaintiffs do not contend that Hermalyn signed any of the agreements in California or that DraftKings sent him those agreements from California. Nor can Plaintiffs dispute that DraftKings is enforcing the non-compete provisions outside of California, in Massachusetts—where Hermalyn repeatedly agreed that all his disputes with DraftKings would be resolved. (*Id.* ¶¶ 2, 32.)

Plaintiffs allege that DraftKings "has multiple licensees and distributors based in California," advertises gaming services "to residents of California," and conducts political activities here. (Compl. ¶¶ 14-15; Feb. 22, 2024 Conley Decl. ¶¶ 7, 10.) But none of these alleged contacts has a "causal

relationship" or "close connection" to Plaintiffs' claims, as required to support specific jurisdiction. (*Briskin v. Shopify, Inc.* (9th Cir. 2023) 87 F.4th 404, 414.) The "bare fact" that DraftKings "contracted with" a few "California distributor[s] is not enough to establish [specific] personal jurisdiction in the State." (*Bristol-Myers*, 582 U.S. at p. 268.) Nor is it enough that DraftKings "'serves a market' for [certain gaming services] in California," since Plaintiffs' claims have nothing to do with those services, much less Hermalyn's involvement with them here. (*LG Chem*, 80 Cal.App.5th at p. 367; see also *Goodyear*, 564 U.S. at p. 930, fn. 6 ["regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales"].) And DraftKings' purported political activities in California are entirely unrelated to Plaintiffs' claims; they are the type of "general connections" that cannot provide the necessary "link between the State and the . . . claims." (*Bristol-Myers*, 582 U.S. at p. 264.)

Plaintiffs also cite DraftKings' acknowledgement that it is subject to the "California Consumer Privacy Act and its implementing regulations," DraftKings' "Privacy Notice" applicable to "California residents" who use DraftKings' services, and DraftKings' "Privacy Notice for California Personnel" applicable to "employees of DraftKings who are in California." (Feb. 22, 2024 Conley Decl. ¶¶ 4, 8-9.) But Plaintiffs' claims do not "arise out of or relate" to California's privacy laws or DraftKings' privacy policies. (*Ford*, 592 U.S. at p. 359.) Plaintiffs are not claiming in this lawsuit that DraftKings violated those privacy laws or breached those privacy policies. As a result, these purported California contacts have no "affiliation . . . [to] the underlying controversy." (*Id.* at pp. 359-360.)

### b. Plaintiffs' Unilateral Conduct Cannot Support Specific Jurisdiction

Plaintiffs cannot make up for the lack of any case-specific allegations tying DraftKings to California with allegations of *their own* California connections. Hermalyn's alleged choice to move to California, FVP, LLC's decision to employ him, and Plaintiffs' decision to sue in California so they could invoke California law in an effort to invalidate the non-compete provisions, does not mean that *DraftKings* has done anything in California that might give rise to specific personal jurisdiction. As the U.S. Supreme Court has held, "contacts between the plaintiff[s] . . . and the forum state" are irrelevant, and "the plaintiff[s] cannot be the only link between the defendant and the forum." (*Walden*, 571 U.S. at pp. 284-285.) The *only* contacts that count are those "that the 'defendant *himself*' creates

with the forum State," as "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." (*Id.* at pp. 284-285.)

Courts have repeatedly held that the "unilateral activity of another party . . . is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." (*Helicopteros Nacionales de Colombia, S.A. v. Hall* (1984) 466 U.S. 408, 417; see, e.g., *Burger King*, 471 U.S. at p. 475 ["a defendant [may] not be haled into a jurisdiction solely as a result of . . . the unilateral activity of another party"]; *Pavlovich*, 29 Cal.4th at p. 276 ["the mere unilateral activity of those who claim some relationship with a nonresident defendant cannot" support specific jurisdiction].) Consider a few cases decided by the U.S. Supreme Court:

- In *Hanson v. Denckla* (1958) 357 U.S. 235, the Court held that Florida courts could not exercise personal jurisdiction over a Delaware trustee to resolve a dispute over the validity of a Delaware trust because Florida's only connection to the case was that the trust's settlor had moved there. (*Id.* at pp. 238-239, 253-254.)

- In *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, the Court held that Oklahoma courts could not exercise personal jurisdiction over an out-of-state automobile distributor based only on an automobile purchaser's unilateral act of driving it on Oklahoma highways. (*Id.* at p. 298.)

- And in *Walden*, the Court held that the plaintiffs' unilateral act of traveling from Georgia (where the alleged constitutional violation occurred) to Nevada (where the plaintiffs lived) was insufficient to support specific jurisdiction. (471 U.S. at pp. 289-291.) In doing so, the Court rejected any approach that would "impermissibly allow[] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." (*Id.* at p. 289.)

Courts in California have reached the same result. In *Elkman v. National States Insurance Co.* (2009) 173 Cal.App.4th 1305, for example, the Court of Appeal held the plaintiff's "unilateral decision[] . . . to relocate to California" could not support the exercise of specific jurisdiction over a Missouri corporation that had contracted with the plaintiff while she was a Florida resident. (*Id.* at p. 1321.) And in *Regents of the University of California v. Universal Health Care Group, Inc.* (C.D.Cal. Apr. 19, 2011) 2011 WL 13228075, an out-of-state corporation could not be sued here as a

result of "the unilateral action[] of [a college student] deciding to travel to California." (*Id.* at *3.)

Here, too, DraftKings may not be sued in California based solely on Plaintiffs' unilateral activity here. DraftKings is a Nevada corporation with its headquarters in Massachusetts. (Compl. ¶ 14.) DraftKings did not send Hermalyn employment agreements from any California office. And Hermalyn executed those agreements while he resided and worked in New Jersey (and sometimes New York). (Compl. ¶ 31; Feb. 13, 2024 Hermalyn Decl. ¶ 16.) The *only* connection to California is Hermalyn's unilateral decision to allegedly move to California for a direct competitor, and FVP, LLC's decision to employ him. But the limits on specific jurisdiction exist to "protect the liberty of the nonresident defendant" (*Walden*, 571 U.S. at 284), and "[t]he contacts" giving rise to specific jurisdiction "must be the defendant's own choice and not random, isolated, or fortuitous" (*Ford*, 592 U.S. at p. 359).

Moreover, "the implication" of exercising specific jurisdiction based on a *plaintiff's* forum-related contacts would be to subject *every* corporation "to specific jurisdiction in *every* state" to which a former employee decides to move and, "[c]ontrary to *Walden*'s clear command, . . . effectively tie personal jurisdiction to the unilateral activity" of former employees. (*Briskin*, 87 F.4th at p. 423, italics added.) That theory would nullify the protections of personal jurisdiction and violate due process, as nothing about DraftKings' decision to execute, and later enforce, the non-compete provisions on the other side of the country provided DraftKings with "fair warning" that it "may [be] subject . . . to the jurisdiction of a foreign sovereign" like California. (*Burger King*, 471 U.S. at p. 472.) "[T]he foreseeability that is critical to [a] due process analysis is not the mere likelihood that [a former employee] will find [their] way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that [it] should reasonably anticipate being haled into court there." (*World-Wide Volkswagen*, 444 U.S. at p. 297.)

These authorities shows why Plaintiffs are wrong that jurisdiction exists because "DraftKings' efforts to interfere with Mr. Hermalyn's fundamental employment rights are intentionally directed at preventing a California resident (Hermalyn) from working for a California company (Fanatics)," and "DraftKings' ongoing efforts to interfere with Mr. Hermalyn's relationships that he has built while in California is sufficient." (Feb. 22, 2024 Conley Decl. ¶ 2.) Nothing about these alleged "efforts" has

anything to do with California other than Hermalyn's decision to purportedly move to California and FVP, LLC's decision to employ him. DraftKings' attempt to halt Hermalyn's theft is occurring entirely in Massachusetts—*not* in California. Plaintiffs have not—and cannot—identify anything DraftKings itself has done in *California* that has any connection to the claims they have asserted here.

### c. Plaintiffs' Claim That They Will Be Harmed in California Is Insufficient

Specific jurisdiction also cannot be predicated on Plaintiffs' allegations that they will be harmed in California as a result of DraftKings' efforts in Massachusetts to enforce the non-compete provisions. Under the U.S. Supreme Court's decision in *Walden*, a plaintiff's claim that he "experienced injury in [the forum State] or that the [defendant] might have known that [its] conduct would produce foreseeable harm there" is "insufficient" to create specific jurisdiction. (*Briskin*, 87 F.4th at p. 416.)

In *Walden*, a Georgia police officer seized nearly $100,000 from two travelers at the Atlanta airport. (571 U.S. at pp. 279-280.) The travelers, residents of California and Nevada, were traveling to Las Vegas, and sued the officer in Nevada for violating their Fourth Amendment rights. (*Id.* at pp. 280-281.) The travelers argued Nevada had specific jurisdiction because the officer "knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada." (*Id.* at p. 279.) The Supreme Court disagreed. "[N]o part of [the officer's] course of conduct occurred in Nevada," and "mere injury to a forum resident is not a sufficient connection to the forum." (*Id.* at pp. 288, 290.) The "question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." (*Id.* at p. 290.)

As in *Walden*, no part of DraftKings' course of conduct occurred in California. To the contrary, DraftKings has taken steps to enforce the non-compete provisions solely in Massachusetts. Those efforts do not "have anything to do with California itself," and DraftKings would have undertaken the same efforts had Hermalyn accepted an offer to work at any other Fanatics office in the country. (*Briskin*, 87 F.4th at p. 416.) And "the mere fact that [DraftKings'] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." (*Walden*, 571 U.S. at 291.)

Ignoring *Walden*, Plaintiffs cited three cases in support of Hermalyn's TRO application, but the propositions for which those cases were cited are either no longer good law or not applicable to the facts here. For instance, Plaintiffs relied on *Taylor-Rush v. Multitech Corp.* (1990) 217 Cal.App.3d

103, 112, for the proposition that "personal jurisdiction may be exercised over a defendant who has caused an effect in the forum state by an act or omission occurring elsewhere." (Feb. 22, 2024 Conley Decl. ¶ 2.) But the U.S. Supreme Court in *Walden* later rejected that proposition when it held personal jurisdiction may *not* be exercised over a nonresident defendant solely because it purportedly caused the plaintiff to "experience[] a particular injury or effect" in the state. (571 U.S. at p. 290.) After all, "mere injury to a forum resident is not a sufficient connection to the forum." (*Ibid.*)

*Taylor-Rush* also is inapposite, as the evidence there "show[ed] that, *while in California*, [the defendant] made fraudulent misrepresentations and nondisclosures which induced [the plaintiff] to execute" certain agreements, and it was those "[mis]representations [and] nondisclosures to the plaintiff which constitute[d] the gravamen of the action." (217 Cal.App.3d at pp. 113-114.) By contrast, DraftKings has done nothing in California relating to Plaintiffs' claims.

Plaintiffs also have cited *Calder v. Jones* (1984) 465 U.S. 783 and *Zehia v. Superior Court* (2020) 45 Cal.App.5th 543 to support the theory that DraftKings' out-of-state conduct causing in-state harm gives rise to jurisdiction. (Feb. 22, 2024 Conley Decl. ¶ 2.) But the claims in those cases arose out of the defendants' intentional contacts with California—which is not the case here.

In *Calder*, the U.S. Supreme Court "focused on the relationship among the defendant, the forum, and the litigation," and upheld the exercise of specific jurisdiction in light of "the various contacts the defendants had created with California (and not just with the plaintiffs) by writing the allegedly libelous story." (*Walden*, 571 U.S. at p. 287 [discussing *Calder*].) Specifically, "[t]he defendants relied on phone calls to 'California sources' for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing the allegedly libelous article that was widely circulated in the State; and the 'brunt' of that injury was suffered by the plaintiff in that State." (*Ibid.*) By contrast, Plaintiffs make no such allegations regarding DraftKings' purported contacts with California—nor could they.

*Zehia* is even further afield, as the court there upheld the exercise of specific jurisdiction over an out-of-state defendant who "sent *private* social media messages aimed exclusively at a California audience." (45 Cal.App.5th at p. 557.) In particular, the defendant "sen[t] direct messages on social media" to the plaintiff, a California resident, "questioning him about his relationship" with the

Gibson, Dunn & Crutcher LLP

19

defendant's relative, also a California resident; "fabricat[ed] direct message and text message conversations that contained allegedly defamatory statements about [the plaintiff] and impersonations of [the plaintiff]"; and "sen[t] the fabricated conversations directly to [the defendant's relative] on social media." (*Id.* at p. 556.) Here, Plaintiffs do not allege that DraftKings sent any private social media message, or any other facts that at all resemble those at issue in *Zehia*. As a result, that case, along with *Calder*, are entirely inapplicable.

### 2. Exercising Specific Jurisdiction over DraftKings Would Be Unreasonable

Because Plaintiffs cannot show that their claims arise out of or relate to DraftKings' forum-related contacts, there is no need to address whether "the forum state's assertion of personal jurisdiction would comport with fair play and substantial justice." (*LG Chem*, 80 Cal.App.4th at p. 361.) But should the Court reach this element, it too would weigh against specific jurisdiction for several reasons.

DraftKings has *no* case-specific contacts with California, and none of its conduct outside the forum provided fair notice that it could be haled into Court in this State. (See *Walden*, 571 U.S. at p. 284 ["[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant"].) In addition, there is a substantial risk of "conflict with the sovereignty of [DraftKings'] state" of Massachusetts should this Court exercise jurisdiction, and thus "the most efficient" course would be to allow the parties to resolve their dispute in the agreed-upon "alternative forum." (*Core-Vent Corp. v. Nobel Indus. AB* (9th Cir. 1993) 11 F.3d 1482, 1487-1488.)

DraftKings and Hermalyn are litigating the same and other issues in Massachusetts federal court, which has determined that the "exercise of jurisdiction [in Massachusetts] would better serve the interests involved" (Smith Decl. Ex. B), and temporarily restrained Hermalyn from, among other things, "using or disclosing any of DraftKings' Confidential Information," "soliciting or transacting business . . . with any of DraftKings' customers," and "hiring away an employee, advisor, consultant, or contractor of DraftKings." (*Id.* Ex. C.) Given the absence of any case-specific contacts, the sovereignty concerns at play, and the existence of an alternative, agreed-upon forum where parties are litigating the same dispute, exercising specific jurisdiction over DraftKings would be unreasonable.

### V. CONCLUSION

The Court should quash the service of summons and dismiss this case.

SPECIALLY APPEARING DEFENDANT DRAFTKINGS' NOTICE OF MOTION AND MOTION
TO QUASH SERVICE OF SUMMONS

Dated: February 29, 2024

Respectfully submitted,

By:     /s/ James P. Fogelman

       James P. Fogelman

       GIBSON, DUNN & CRUTCHER LLP

*Attorneys for Specially Appearing
Defendant DraftKings Inc.*

# Make a Reservation

## MICHAEL Z HERMALYN, et al. vs DRAFTKINGS, INC.

Case Number: 24STCV02694    Case Type: Civil Unlimited    Category: Other Contract Dispute (not breach/insurance/fraud/negligence)
Date Filed: 2024-02-01  Location: Stanley Mosk Courthouse - Department 39

## Reservation

| | |
|---|---|
| Case Name:<br>MICHAEL Z HERMALYN, et al. vs DRAFTKINGS, INC. | Case Number:<br>24STCV02694 |
| Type:<br>Motion to Quash Service of Summons | Status:<br>RESERVED |
| Filing Party:<br>DraftKings, Inc. (Defendant) | Location:<br>Stanley Mosk Courthouse - Department 39 |
| Date/Time:<br>06/13/2024 8:30 AM | Number of Motions:<br>1 |
| Reservation ID:<br>888360502014 | Confirmation Code:<br>CR-YQDJYFVLYVITXFAOA |

## Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Motion to Quash Service of Summons | 0.00 | 1 | 0.00 |
| TOTAL | | | **$0.00** |

## Payment

| | |
|---|---|
| Amount:<br>$0.00 | Type:<br>NOFEE |
| Account Number:<br>n/a | Authorization:<br>n/a |
| Payment Date:<br>1969-12-31 | |

🖶 Print Receipt     ➕ Reserve Another Hearing

Chat

Copyright © Journal Technologies, USA. All rights reserved.