**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DRAFTKINGS, INC.,<br><br>                    *Plaintiff*,<br><br>   v.<br><br>MICHAEL Z. HERMALYN,<br><br>                    *Defendants*. | Civil Action No. 1:24-cv-10299 |

**DECLARATION OF DEFENDANT MICHAEL Z. HERMALYN**
**IN SUPPORT OF HIS OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# DECLARATION OF MICHAEL Z. HERMALYN

I, Michael Z. Hermalyn, hereby declare, under penalty of perjury, the following:

1. I am over the age of 18 and have personal knowledge of the facts set forth in this Declaration. If called upon to do so, I could and would testify competently thereto.

2. I submit this declaration to address a limited number of allegations raised in DraftKings' motion for preliminary injunction that were not raised during my deposition or that warrant reiteration.

3. DraftKings claims that I improperly solicited two of its employees, Andrew Larracey and Hayden Metz. That accusation is false. On February 1, 2024, Mr. Larracey and Mr. Metz reached out to me on their own volition. They first contacted me from a DraftKings conference room, and then later that evening, they called me from Mr. Larracey's wife's cellphone. I did not direct Mr. Larracey to call me from his wife's phone, or from any other phone—that was Mr. Larracey's choice. To my knowledge, Fanatics has not hired any DraftKings employees since I joined and certainly none to work in Fanatics' VIP business.

4. DraftKings also contends that I have solicited its customers. That, too, is false. As for DraftKings' vague accusation that I "met with" unnamed "DK partners," I have no idea who they are referring to, but I do know that I had no such business meetings. To my knowledge, DraftKings has not lost a single customer as a result of my departure, and it does not claim otherwise.

5. DraftKings authorized me to use my personal phone for work and I did so. DraftKings now accuses me of retaining certain personal devices that may contain DraftKings' confidential information. As I have previously testified in both my declaration and in my deposition, this allegation is false. DraftKings' new allegation that I retained "two iPhones" is

1

also incorrect. Like most iPhone users, I periodically upgrade my iPhone to a new model. The "two iPhones" that DraftKings refers to in its briefing are *prior* phones that I used for work that I no longer possess because they were traded in for new phones when I upgraded to a new model. In addition, to the best of my knowledge, I have only ever owned one iPhone 14.

6. In my prior declaration, I addressed DraftKings' allegation that, on January 30, 2024, I downloaded the "(Master) SB 2024" spreadsheet. As I testified, I did not download this document, but I did access it for purposes of my work for DraftKings, and in particular, to address inquiries I received from my former colleague, Brittney Goodman.

7. In her affidavit, Ms. Goodman disputes my version of events primarily on the basis that the "(Master) SB 2024" spreadsheet relates to business partners as opposed to VIP customers. Ms. Goodman is correct that the spreadsheet and her email to me on this issue relate to partners, not customers (both of which I generally refer to as "VIPs"; the references to customers in that paragraph of my prior declaration should, however, be to "partners"). With that correction, my prior declaration is accurate, and the point remains the same: Ms. Goodman asked me for information about VIP invitations, and I looked at the document to provide that information to her.

8. To provide more context about this exchange, on January 24, 2024, Ms. Goodman contacted me by sending an email to my personal Gmail account about Super Bowl invitations for several individuals and other VIP invitees. Believing that Ms. Goodman had emailed my Gmail account by mistake, I replied the next day and added my DraftKings email address and stated, in effect, that I would work on her request. Ms. Goodman's email was focused on last-minute updates to the status of various DraftKings Super Bowl party guests (*i.e.*, whether they would be attending) and whether invitations needed to be sent out to others. Her email also specifically referenced tabs in the "(Master) SB 2024" spreadsheet. I therefore accessed the "(Master) SB 2024" spreadsheet

2

to review the list and direct Ms. Goodman and other DraftKings employees on who needed invitations and how to go about contacting them.

9. As I have repeatedly testified, I did not "steal" or "disclose" any of DraftKings' confidential information, whether before or after my departure from the company. To be clear and unequivocal: I did not take any of DraftKings' confidential information in anticipation of leaving; I did not use or disclose any DraftKings confidential information other than for DraftKings business; and I do not have or have access to any of DraftKings' confidential information.

10. During the last six months of my DraftKings employment, the vast majority of my time was spent on DraftKings' gaming business—specifically, the sports betting and casino lines. My work did not cover every aspect of gaming, as for example, it did not include lottery, pari-mutuel betting, bingo, dog racing, or simulated racing. To a much lesser extent, I worked in the fantasy sports community, or "FSC," line of business during this same period. I had limited involvement with DraftKings' "Marketplace" and "Ecommerce" businesses, and no involvement with the "Media" business during my last six months with the company. Nevertheless, I understand that DraftKings is seeking to broadly prohibit me from working in every line of business at Fanatics that overlaps with any of DraftKings' lines of business, regardless of whether the area was a focus of my work at DraftKings.

11. I fear that if I am prohibited from working for Fanatics for a year, Fanatics will need to hire someone else to fulfill my role as head of its Los Angeles office and member of the executive team, and I will not have this once in a lifetime, career advancing opportunity.

I declare under penalty of perjury that the foregoing is true and correct.

Executed March 21, 2024.

By: _____
Michael Z. Hermalyn

## **CERTIFICATE OF SERVICE**

       I hereby certify that a true copy of the above document was served on Plaintiff's counsel on the date below via email and will be filed through the ECF System and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: March 21, 2024

                                                /s/   *Russell Beck*
                                                   Russell Beck