**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DRAFTKINGS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> MICHAEL Z. HERMALYN, <br><br> *Defendant.* | Civil Action No. 1:24-cv-10299-JEK |

**DEFENDANT MICHAEL Z. HERMALYN'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY**

At its core, this case is a "localized controversy" over whether Hermalyn, a California resident, will be restricted from working for his new employer, Fanatics VIP, in California. California courts should decide it. There is no legitimate dispute that Hermalyn is a resident of California, works for a California employer there (as the head of the Los Angeles office), and has never lived or worked in the Commonwealth of Massachusetts. Virtually every one of DraftKings' claims and allegations arise out of alleged conduct in California, not Massachusetts, and the effects of this litigation will be most pronounced there. And the Massachusetts forum selection clause at issue here is void and unenforceable in California—the state with the strongest interest in this case. Accordingly, this Court should grant Hermalyn's motion.

I. **The Court Should Grant Hermalyn's Motion to Dismiss for *Forum Non Conveniens***

    A. **California's Strong Public Policy and Other Public Interest Concerns Make It the Appropriate Forum, Notwithstanding the Forum Selection Clause.**

DraftKings does not dispute the key premise of Hermalyn's motion: California has a longstanding and fundamental policy interest, manifested in statutes and case law, in ensuring the rights of its residents and companies to compete free of restrictive covenants that impede employee choice and the ability of California employers to access the national talent pool. Mem. (Dkt. 69) 5-6, 10-12; *see, e.g.*, Cal. Bus. & Prof. Code § 16600; *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 239 Cal. Rptr. 3d 577, 587 (Cal. App. Ct. 2018). As Hermalyn requests here, courts in Massachusetts and elsewhere have accordingly transferred or dismissed restrictive covenant cases in favor of adjudication in California, ***despite forum selection clauses selecting a <u>non-California forum</u>***. *See* Mem. 12-13 (citing cases). DraftKings has no response to these authorities; instead, it cites distinguishable cases predating the Supreme Judicial Court's holding in *Oxford*.[1]

---

[1] In two of these cases, the former employee defendants ***never*** moved to California. *See Nuance Commc'ns, Inc. v. Kovalenko*, 2022 WL 2347112, at *5 n.1 (D. Mass. June 29, 2022) (Connecticut resident); *EMC Corp. v. Donatelli*, 2009 WL 1663651, at *2–5 (Mass. Super. Ct. May 5, 2009) (Massachusetts resident). In *Aspect Software, Inc. v.*

1

Given the strong public interest factors at stake—which DraftKings does not meaningfully address—*forum non conveniens* dismissal is warranted even in the face of a forum selection clause. *See* Mem. 10-16. Most of the alleged acts giving rise to DraftKings' claims took place in California, and **none** took place in Massachusetts. Mem. 4.[2] Further, the **impact** of this litigation will be felt in California, as DraftKings seeks enforcement of the restrictive covenants to prevent its former employee—Hermalyn—from working for a California employer—Fanatics VIP. DraftKings cannot escape that California's laws apply "regardless of whether the contract was signed and the employment was maintained outside of California." Cal. Bus. & Prof. Code § 16600.5(b). Those laws protect **both** employers and employees: "[A]s the market for talent has become national and remote work has grown, California employers" like Fanatics VIP "increasingly face the challenge of employers outside of California attempting to prevent the hiring of former employees." Beck Decl., Ex. G (Cal. S. Bill No. 699 § (d) (2023-2024 Reg. Sess.)) (Dkt. 103-7). California also "has a strong interest in protecting the freedom of movement of persons whom California-based employers wish to employ," like Hermalyn, "regardless of the person's state of residence." *Id.* § (f). In short, "California has a[n] . . . interest in protecting its employers and their employees from anti-competitive conduct by out-of-state employers such as [DraftKings]—including litigation based on a covenant not to compete to which the California employer is not a party—who would interfere with or restrict these freedoms." *Application Grp., Inc. v. Hunter Grp., Inc.*, 72 Cal. Rptr. 2d 73, 85 (Cal. Ct. App. 1998). All of this means there are

---

*Barnett*, 787 F. Supp. 2d 118 (D. Mass. 2011), the court found that the noncompete clause was "tailored in such a[] way as to avoid implicating California's fundamental policy against broad non-competition agreements." *Id.* at 126. Finally, *Oxford Glob. Res., Inc. v. Guerriero*, 2003 WL 23112398 (D. Mass. Dec. 30, 2003) did not involve California law at all; the question was whether **Texas** law applied. *Id.* at *5.

[2] While DraftKings contends Hermalyn "solicited" two DraftKings employees who were physically in Massachusetts when they spoke to him (Opp. 5), DraftKings ignores the undisputed facts that these employees **reached out to Hermalyn**, not the other way around, and Hermalyn was not in Massachusetts. Opp. to PI 12-13 (Dkt. 101).

2

strong public policy reasons for a California court to decide the parties' dispute. *See* Mem. 12-13.

The forum selection clause does not alter this conclusion. As DraftKings concedes, such a clause goes ***only*** to private interest considerations, and ***public interest factors can outweigh them***. *See Amyndas Pharms., S.A. v. Zealand Pharma A/S*, 48 F.4th 18, 33 (1st Cir. 2022) ("[P]ublic interest factors under the doctrine of *forum non conveniens* may sometimes provide support for rejecting enforcement of an *otherwise valid* forum-selection clause" (emph. added)). DraftKings' arguments that the clause is valid and enforceable (Opp. 11) is thus a non-sequitur, as courts decline to enforce valid clauses when doing so would infringe California's fundamental public policy. *See, e.g.*, *Oxford Glob. Res., LLC v. Hernandez*, 106 N.E.3d 556, 560, 564-66, 569 (Mass. 2018). *United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220 (D. Conn. 2003) (*see* Mem. 13) is instructive. There, a Connecticut-based employer sought to enforce restrictive covenants—which contained an exclusive Connecticut forum clause—against a former employee in California. *Id.* at 223-24. The court found the clause valid and enforceable, *id.* at 224-228, but nevertheless transferred the case to California. *Id.* at 228-30, 234. The court found that, applying Connecticut choice-of-law rules (which mirror Massachusetts'), California had a "[m]aterially greater interest" because the "case will affect whether [the employee], a California resident, will be permitted to remain with his California employer . . . and whether [the new California employer] is entitled to retain the employee of its choice." *Id.* at 232. The same is true here.

Massachusetts does not have a stronger competing interest in having this case decided here. Hermalyn's DraftKings work was centered in New York and New Jersey. Mem. 4. Massachusetts has no special interest in adjudicating this dispute merely because DraftKings is a citizen company.[3] *Id.* at 14; *see also Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 972 (Del. Ch.

---

[3] As the Court noted at the TRO hearing, "harm" from the alleged contract breaches may in some sense be felt in Massachusetts, as DraftKings is located here. *See* Opp. 13. But that will be true in any restrictive covenant case, and

2020) (granting dismissal in favor of California and noting Delaware lacked interest in dispute despite plaintiff's Delaware citizenship). Massachusetts policy also does not weigh against or prevail over California's, contrary to DraftKings' contention (Opp. 14). While Massachusetts permits certain restrictive covenants, it does so only when they are reasonable and limited (which the agreements here are not, *see* PI Opp. 19-21). *See Oxford*, 106 N.E.3d at 565.[4] And, as *Oxford* and *Aware* show by granting *forum non conveniens* dismissals, Massachusetts courts have determined that California's interests outweigh whatever interests Massachusetts may have in cases like this one. *See id.* ("Massachusetts presently has no comparable legislative policy favoring open competition and employee mobility, and no statute akin to Cal. Bus. & Prof. Code § 16600."); *Aware, Inc.*, 2001 WL 755822, at *2.

    **B.**    **California Has a Real Interest in this Dispute, Which Concerns One of Its Residents and Resident Companies.**

DraftKings' name calling (Opp. 4 ("sham")) does not change the key ***facts***, which DraftKings does not dispute: Hermalyn relocated to California in late January for a job opportunity with a California employer and has continued to reside there since, while serving as the Head of Fanatics' Los Angeles office. Hermalyn has taken various further steps to move his family to California after the end of the school year. Hermalyn MTD Decl. ¶ 3 (Dkt. 71). The ***length*** of Hermalyn's residency is irrelevant to California's interest in protecting him as a resident and deciding his rights. *See Saenz v. Roe*, 526 U.S. 489, 502 (1999) (a "newly arrived citizen" should

---

the impact on Hermalyn (and Fanatics VIP) in California is far more substantial than the theoretical impact of a contract breach on DraftKings where its headquarters are located. Notably, the former employer in *Pruett* was incorporated and headquartered in Connecticut, the forum selected by the forum clause. 296 F. Supp. 2d at 223. The same is true for the employers in *Oxford* and *Aware* (Mem. 13-14), which were Massachusetts-based companies. 106 N.E.3d at 564; *Aware, Inc. v. Ramirez-Mireles*, 2001 WL 755822, at *1 (Mass. Super. Ct. Apr. 4, 2001). In each case, the court still granted *forum non conveniens* dismissal or transferred the case to California.

[4]  Hermalyn is also challenging the enforceability of the forum selection clause in the California Action. As explained previously, California law renders such clauses void when applying them would destroy a California resident's rights. *See* Mem. 16-17. To treat the clause as dispositive of the *forum non conveniens* issue here, as DraftKings argues, is backwards; the California court should first decide whether the clause can be validly enforced against Hermalyn. *Id.*

enjoy "the same privileges and immunities enjoyed by other citizens of the same State"). Residency is established instantly.[5] DraftKings cites no authority to the contrary, and Hermalyn is not aware of any. In any event, Hermalyn has now been a resident of California for **longer** than the thirty-day period of Massachusetts' residency requirement under the MNCA. *See* Mass. Gen. Laws Ann. ch. 149, § 24L(e). California does not impose any corresponding timeline, but even using a Massachusetts lens, Hermalyn is indeed a California resident who is entitled to avail himself of the laws of his home state.

Moreover, both Fanatics VIP's status as a California employer and the fact that Hermalyn is performing services for it in California further bolster California's interest in adjudicating this dispute and thereby regulating competition within its borders. *See Application Grp.*, 72 Cal. Rptr. 2d at 85. DraftKings' arguments about the creation of Fanatics VIP (Opp. 7) were already roundly rejected by the Central District of California, which described them as mere "conjecture and invective," *twice* rejecting DraftKings' (improper) removals. The federal court in California further noted that "[b]eyond speculation, [DraftKings] offers no evidence of fraud" and "offers no evidence of untoward acts by" Fanatics. Riden Decl., Ex. D at 2 (2nd Remand Order) (Dkt. 70-4).

## C. California Is an Appropriate Alternative Forum.

DraftKings raises its challenge to personal jurisdiction in the California Action to argue that the California Superior Court is not an adequate alternative forum. DraftKings' jurisdictional objections are being briefed by the parties in the California Action, and a case management conference is scheduled for May 31. That court is better suited to determine a challenge to its own jurisdiction, with all relevant parties (including Fanatics VIP) before it. Accordingly, this Court

---

[5] *See Brinkman v. Schweizer Aircraft Corp.*, 2011 WL 863499, at *3 (N.D. Cal. Mar. 10, 2011) (citing *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698 (1st Cir. 1979) (noting that "a citizen of the United States can instantly transfer his citizenship from one state to another")); *see also Bank One, Tex., N.A. v. Montle*, 964 F.2d 48, 53 (1st Cir. 1992) ("[The] motive for change in residence is irrelevant").

need not decide the question and can await a ruling in California. In any event, DraftKings' actions, including ***knowingly enforcing contracts to interfere with a California resident's employment with a California employer***, give rise to jurisdiction over it in California—indeed, they are intentionally aimed at California and have substantial effects and consequences there. *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *Lake v. Lake*, 817 F.2d 1416, 1422 (9th Cir. 1987) (jurisdiction proper over non-resident for "acts performed . . . for the very purpose of having their consequences felt in the forum state"); *Quattrone v. Super. Ct.*, 118 Cal. Rptr. 548, 554-56 (Cal. Ct. App. 1975) (jurisdiction proper due commission of act outside state with intention of having effects in state, coupled with California's "special regulations" of subject matter).

### D. Hermalyn Is Not Seeking "Reconsideration."

This is not a motion for reconsideration, and there is no basis for this Court to apply a heightened standard. Opp. 9. <u>First</u>, Hermalyn was transparent about his intention to move to dismiss on this ground before and during the TRO hearing, and the Court allowed him to bring the motion and even set the briefing schedule for it.[6] <u>Second</u>, the Court's rulings at the TRO stage were, as the Court noted, "preliminary" only, and this motion raises Hermalyn's arguments in a different posture and on a more developed record. *See* TRO Hr'g Tr. 57:9-14 (Dkt. 46);[7] *see also Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991) (noting, even in the later PI

---

[6] *See* Mot. to Stay Mem. 10 (Dkt. 26) ("even if not stayed, Defendant anticipates promptly moving to dismiss this action in favor of the First-Filed Action in California"); TRO Opp. 20 (Dkt. 33) ("there is a substantial likelihood that this action will be dismissed on forum non conveniens grounds"); TRO Hr'g. Tr. 51:12-13 (Dkt. 46) ("I understand Mr. Hermalyn might also be moving to dismiss."); *see also id.* at 62:3-7 ("Court: Am I correct that Mr. Hermalyn also plans to move to dismiss or -- Mr. Beck: We expect so, Your honor."). Nor is Hermalyn's alternative request for a stay a reconsideration request, as Hermalyn has not raised the issue previously; in deciding the earlier motion to stay, the Court observed that "Hermalyn makes no argument that any abstention doctrine warrants a stay of this litigation in light of the pending California cases" (Dkt. 29).

[7] *See also id.* ("Again, I want to emphasize, these conclusions are based only on the record before me . . . . So these preliminary determinations are wholly distinct from my consideration of a forthcoming preliminary injunction motion."); *id.* at 53:15-17 ("With respect to the breach of contract claims, and again, ***at this early stage in the proceedings***, my view is that Massachusetts law applies . . . ." (emphasis added)).

6

context, that "conclusions as to the merits of the issues presented . . . are to be understood as statements of probable outcomes"); *Hickey v. Sec'y of Army*, 320 F. Supp. 1241, 1246 (D. Mass. 1971) (granting motion to dismiss action following a grant of TRO); Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.) ("[T]he court's findings on an application for a temporary restraining order do not represent an adjudication on the merits.").[8]

## II. In the Alternative, the Court Should Abstain and Stay This Case

DraftKings incorrectly argues that the two actions are not "actually parallel" because this case includes trade secrets claims. Opp. 17-18. As the First Circuit has held, "perfect identity of issues is *not* a prerequisite" for *Colorado River* abstention, which can apply even when "not all of the federal issues are included within [a state] action." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 947 F.2d 529, 533 (1st Cir. 1991); *see also TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996) (*Colorado River* doctrine applies "case by case" "where the overlap between two suits is less than complete"). Indeed, the First Circuit **has** applied *Colorado River* abstention where, as here, **resolution of the state litigation "could moot or otherwise inform the federal litigation."** *Currie v. Grp. Ins. Comm'n*, 290 F.3d 1, 10 (1st Cir. 2002) (emphasis added). As previously explained, a ruling in the California Action that the restrictive covenants are unenforceable would moot (or at least dramatically limit) DraftKings' misappropriation claims. Mem. 19 n.11.[9]

---

[8] DraftKings cherry-picks statements from the California TRO hearing to suggest that Hermalyn sought an "advisory opinion" there. Opp. 8. Not so. Hermalyn's California counsel asked the court for "a temporary restraining order that restrains DraftKings from enforcing the restrictive covenant." "[W]e're not asking for an advisory opinion." CA TRO Hr'g Tr. 18:15-19 (Dkt. 70-5). Hermalyn's position has been consistent across both actions: California law and public policy applies to this dispute and calls for it to be resolved in California under California law. *See id.* at 8:17-22. The California court expressly invited Hermalyn to return if he is "aggrieved" after the preliminary injunction hearing in this Court. *See id.* at 6:1-6 ("[The Massachusetts Court] was preserving the status quo. So my thought was you all should have your hearing on April 2nd and if -- after that hearing, you could come back to court"); 11:9-11 ("so why can't you go have your hearing in federal court on April 2nd and, if you're aggrieved, come right back here?").

[9] *Glassie v. Doucette*, 55 F.4th 58 (1st Cir. 2022) is inapposite, as there the movant tried to argue that state probate actions would resolve *all eight counts* in a federal action (including RICO and conspiracy claims). *Id.* at 64.

Further, under the unique circumstances of this case, the *Colorado River* factors favor a stay. Mem. 18-20. Contrary to DraftKings' arguments, the fifth and sixth factors **support** a stay, as this case necessarily implicates novel questions of California law.[10] A key aspect of this dispute is whether DraftKings can enforce restrictive covenants against a California employee and employer in the face of ***newly enacted*** California law that renders such restrictions void. Whatever the outcome of the California Action, this dispute indisputably presents "novel" and "unusual" questions of state law, *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 30 (1st Cir. 2010), which "would best be resolved by a state court," *Villa Marina*, 947 F.2d at 513; *Currie*, 290 F.3d at 10-11. And DraftKings is wrong that its one federal claim prevents a stay: as in *Currie*, abstention can apply ***even where*** the action includes a federal claim not asserted in the state case. *Currie*, 290 F.3d at 10 (involving three federal claims). Finally, on the third factor, these actions do not merely involve "related issues," but the ***identical*** question of what restrictions can bind Hermalyn's work in California going forward. Two courts resolving that issue inconsistently would create substantial practical difficulties for Hermalyn and non-party Fanatics VIP, which is a party in California. That is the type of "special complication" that favors allowing the first-filed California Action to resolve first. *KPS Assocs., Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 10 (1st Cir. 2013) ("[C]oncerns about piecemeal litigation should focus on the implications and practical effects of litigation suits deriving from the same transaction in two separate fora." (quotation marks omitted)); *Liberty Mut. Ins. Co. v. Foremost-McKesson*, Inc., 751 F.2d 475, 477 (1st Cir. 1985) (exceptional circumstances justified stay where two actions could interpret insurance policy inconsistently).

For the foregoing reasons, this Court should grant Hermalyn's motion and dismiss this action, or, in the alternative, stay it.

---

[10] For the reasons explained *supra* sec. I.D, this Court's TRO ruling was expressly preliminary.

Dated: March 28, 2024

Respectfully submitted,

*Attorneys for Defendant Michael Z. Hermalyn*

/s/_____Russell Beck_____
Russell Beck (BBO# 561031)
Stephen D. Riden (BBO# 644451)
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, MA 02110
Tel.: (617) 500-8660
Fax: (617) 500-8665
rbeck@beckreed.com
sriden@beckreed.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was filed on March 28, 2024, through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: March 28, 2024

/s/ _Russell Beck_____
Russell Beck

9