## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DRAFTKINGS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-CV-10299-JEK |
| ) | |
| MICHAEL Z. HERMALYN, ) | |
| ) | |
| Defendant. ) | |

---

## DEFENDANT MICHAEL Z. HERMALYN'S
## ANSWER AND AFFIRMATIVE DEFENSES

Defendant Michael Z. Hermalyn submits this Answer and Affirmative Defenses to the Verified Complaint ("Complaint") of Plaintiff DraftKings Inc.  Mr. Hermalyn incorporates the following Introduction to Mr. Hermalyn's Answer and Affirmative Defenses as if fully set forth in each of the numbered paragraphs herein and in each of his Affirmative Defenses below.

## INTRODUCTION TO MR. HERMALYN'S
## ANSWER AND AFFIRMATIVE DEFENSES

Behind the curtain of DraftKings' competitive world of gaming and sports betting is a Machiavellian leadership team that rules with fear and intimidation tactics.  This lawsuit is a vindictive effort by the top echelon at DraftKings to drag its former employee Mr. Hermalyn through the mud and suppress legitimate competition in the market.  DraftKings has a history of acting this way toward employees who leave or seek greener pastures with other employers— threatening them with litigation, trashing them in the press, withholding earned pay and equity, and spreading malicious falsehoods to tarnish their reputations.  DraftKings is not seeking to enforce Mr. Hermalyn's purported post-employment restrictions for a legitimate business purpose.  Rather, DraftKings' inflammatory and false accusations in this lawsuit reveal its true aim:  to make

an example out of Mr. Hermalyn by gratuitously attacking him with alleged wrongdoing—all in an attempt to instill fear throughout its employee ranks and to chill fair competition and lawful recruiting activity by its rival, Fanatics.  Discovery will uncover and establish the full extent of DraftKings' unclean hands, bad faith conduct, and improper purposes and tactics.

This lawsuit is <u>not</u> about Mr. Hermalyn; DraftKings is concerned about the threat posed by Fanatics, an upstart competitor in the online gambling and sports betting space where DraftKings is one of just two dominant market leaders (the other being FanDuel) that control the vast majority of the market.  DraftKings has good reason to worry; in an industry where customers frequently gamble on multiple platforms, the overlap between Fanatics and DraftKings customers is substantial—and nimble upstart Fanatics poses a real threat.  Moreover, since Fanatics announced it was launching an online sportsbook in 2021, approximately ***<u>186</u>*** DraftKings employees have applied for positions with Fanatics.  DraftKings has therefore resorted to fear and intimidation to stop any potential exodus, while also seeking to hostilely delay Fanatics' business expansion into the sports betting and gambling space.  Indeed, this is not the first time that DraftKings and its Co-Founder and CEO Jason Robins have sought to halt Fanatics' business efforts and growth.  For example, it is well-known that just last year, DraftKings' Mr. Robins ***purposely*** initiated a bidding war against Fanatics to acquire the U.S. assets of PointsBet Sportsbook in a concerted effort to ruin the deal for Fanatics, or at least to drive up the costs for Fanatics.  In taking actions to stifle competition, DraftKings not only attempted to prevent Fanatics from competing as a new market entrant, but DraftKings also sought to further entrench its already dominant market position.[1]  Mr.

---

[1] Despite DraftKings' efforts to destroy the deal, Fanatics ultimately started acquiring PointsBet's U.S. business is August 2023 and closed on the final phase of the acquisition in April 2024.

Hermalyn expects that discovery in this case will reveal additional improper activities taken by DraftKings to target Fanatics and throttle legitimate competition.

Contrary to DraftKings' allegations, Mr. Hermalyn came to DraftKings in September 2020 as a Vice President of Business Development after a career in the entertainment industry, bringing with him his ***own*** unique skillset and his ***own*** substantial relationships from both the entertainment and sports worlds.  It was not until May 2022 that Mr. Hermalyn moved from DraftKings' business development team to its VIP group, which he was a part of for ***less than eighteen months***.  It is Mr. Hermalyn's personal talents and skills for developing and maintaining relationships and providing exceptional experiences to customers that have made him an asset in the market.  And over time, Mr. Hermalyn came to be increasingly relied upon by DraftKings' CEO Mr. Robins.  Mr. Robins particularly valued the connections that being specifically associated with Mr. Hermalyn brought to him personally and to DraftKings, including the access to people and events that Mr. Hermalyn uniquely brought to the table.  The bottom line is that the purported customer and partner relationships and associated goodwill that DraftKings alleges in this case ***belong to Mr. Hermalyn***, not to DraftKings.

Despite being a public company, DraftKings is effectively controlled by Mr. Robins, and access to him is important to advancement.  Therefore, Mr. Hermalyn's increasingly close position with Mr. Robins threatened others within the company—most notably Shawn Henley, DraftKings' Chief Customer Officer and Mr. Hermalyn's boss.  Because Mr. Robins would often skip over Mr. Henley and go directly to Mr. Hermalyn, it was an open secret at DraftKings that Mr. Henley felt eclipsed by Mr. Hermalyn and was threatened by his position and success within DraftKings and beyond.  Mr. Henley therefore sought to take Mr. Hermalyn down a peg any chance he got,

including by seeking to undercut his professional rival's position at DraftKings and by repeatedly taking credit for Mr. Hermalyn's work.

DraftKings and its top executives seek to control their employees in other ways as well, including by, upon information and belief, reporting DraftKings' financial results in ways that impacted what employees like Mr. Hermalyn were actually paid pursuant to DraftKings' contracts and long-term incentive plans—a key portion of the purported "consideration" DraftKings alleges was given to Mr. Hermalyn in exchange for signing DraftKings' contracts at issue in this case. Those contracts were signed by DraftKings' CEO Mr. Robins.  DraftKings' conduct, which discovery will expose, also belies any suggestion that DraftKings' financial results are reliable indicators of its performance (or purported damages), or that Mr. Hermalyn's departure and the conduct alleged in DraftKings' lawsuit would actually impact its business.

It was against this backdrop that Mr. Hermalyn decided to explore a job with Fanatics.  He was offered a once in a lifetime, career-advancing opportunity, including reporting directly to Fanatics' CEO, serving as a member of Fanatics' small executive committee, leading Fanatics' VIP business, and being the head of its Los Angeles office.  Mr. Hermalyn relocated to California in connection with his new job, and he and his wife have taken a number of steps to make a long-term relocation to California seamless for their young family, including enrolling their children in schools in Los Angeles for the upcoming academic school year this fall.  Mr. Hermalyn is well into the process of building his life and career in California.

Before submitting his resignation to DraftKings and accepting his employment with Fanatics, Mr. Hermalyn took affirmative steps to ensure that he no longer possessed any of DraftKings' property, confidential information, or so-called "trade secrets," and he took none to his new employer.  But that did not stop DraftKings' campaign of falsity about alleged

"misappropriation" and "deceit" in its crusade to **ruin** Mr. Hermalyn—a directive which, upon information and belief, came from the top ranks of DraftKings, including Mr. Robins.  This is not the first time that DraftKings has engaged in a campaign of personal destruction against a departing employee.  Ironically—and despite DraftKings' blatantly false allegations—Mr. Hermalyn was part of DraftKings' internal efforts last year to **retain** DraftKings employees from leaving for Fanatics.  In that role, Mr. Hermalyn worked with DraftKings' outside lawyers—including **some of the same lawyers from Gibson Dunn now representing DraftKings in this lawsuit**—to prepare the email that DraftKings references in its Complaint, which some of those same lawyers now allege was supposedly part of a year-long "double agent" "scheme" by Mr. Hermalyn to "secretly" recruit employees to Fanatics.  **This is false, and DraftKings and its counsel know it**.  DraftKings also conspicuously omitted an affidavit from the key DraftKings witness involved, Mr. Henley, until after the falsehood was exposed and it was safe for him to submit an affidavit—all further demonstrating that DraftKings and its agents will stop at nothing to smear Mr. Hermalyn.

Mr. Hermalyn is confident that when the full record is revealed, DraftKings' allegations will be shown to be false.  And DraftKings has nothing to worry about with respect to its alleged confidential information:  Mr. Hermalyn did not misappropriate it, disclose it, or use it, and he does not need it to lawfully compete for his new employer.  What DraftKings is really trying to suppress here is lawful competition by a rival, and this lawsuit is a story its lawyers and management have spun to try to do so.

*** 

Except as specifically admitted below, Mr. Hermalyn denies each and every allegation of the Complaint.  To the extent that the opening paragraph or any of the headings of the Complaint require a response, Mr. Hermalyn denies such allegations.

5

## INTRODUCTION

1.      Denied.  Further answering, Mr. Hermalyn incorporates the responses set forth in the preceding paragraphs at pages 1-5 as if fully set forth herein.

2.      With respect to the first sentence of Paragraph 2, denied in the form and manner alleged.  With respect to the second sentence of Paragraph 2, denied in the form and manner alleged, and further denied to the extent the allegations constitute legal conclusions to which no response is required.

3.      With respect to the first, third and fourth sentences of Paragraph 3, denied in the form and manner alleged.  With respect to the second sentence of Paragraph 3, Mr. Hermalyn is without knowledge or information to form a belief as to the truth of the allegations, and therefore denies the same.  Further answering, Mr. Hermalyn states that DraftKings is one of only two dominant market leaders in the online sports betting and gaming industries, and that many of the referenced "loyal and high value potential players" are in fact non-exclusive customers of multiple gaming platforms, including Fanatics.

4.      The allegations in Paragraph 4 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.

5.      Admitted that Mr. Hermalyn "resigned from his position at DraftKings" on February 1, 2024.  The allegations in Paragraph 5 are otherwise denied, and are also denied to the extent the allegations constitute legal conclusions to which no response is required.

6.      Denied.  The referenced January 29, 2024 email speaks for itself.

7.      Denied.  Additionally, the third and fourth sentences of Paragraph 7 constitute legal conclusions and legal argument to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.

8.      With respect to the first sentence of Paragraph 8, denied.  With respect to the second sentence of Paragraph 8, the allegations constitute legal conclusions and legal argument to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.

9.      Admitted that Mr. Hermalyn is a California resident and that on February 1, 2024, Mr. Hermalyn filed an action captioned *Michael Z. Hermalyn et al. v. DraftKings, Inc.*, No. 24STCV02694.  The allegations in Paragraph 9 are otherwise denied.  Additionally, the allegations of Paragraph 9 constitute legal conclusions and legal argument to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.

10.     With respect to the allegations of Paragraph 10, Mr. Hermalyn is without knowledge or information to form a belief as to the truth of the allegations, and therefore denies the same.  Additionally, the second and third sentences of Paragraph 10 constitute legal conclusions and legal argument to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.

11.     The allegations of Paragraph 11 constitute legal conclusions and legal argument to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.

## PARTIES

12.     Admitted.

13.     With respect to the first sentence of Paragraph 13, admitted that Mr. Hermalyn is "a natural person," but otherwise denied.  Admitted as to the second sentence of Paragraph 13, except denied that Mr. Hermalyn continued to reside in New Jersey through February 1, 2024. The third sentence of Paragraph 13 is denied in the form and manner alleged.

## JURISDICTION & VENUE

To the extent a response is required to this heading, denied.

14.     Paragraph 14 constitutes legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.

15.     Paragraph 15 constitutes legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.

16.     Paragraph 16 constitutes legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.

17.     Paragraph 17 constitutes legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.

## STATEMENT OF FACTS

To the extent a response is required to this heading, or to any headings or sub-headings within this section of the Complaint, denied.

18.     Denied.  Further answering, Mr. Hermalyn states that DraftKings is one of only two dominant market leaders in the online sports betting and gaming industries, and that many of the referenced "loyal and high value potential players" are in fact also customers of multiple gaming platforms, including Fanatics.

19.     Admitted that DraftKings is "[h]eadquartered in Boston."  The allegations in Paragraph 19 are otherwise denied in the form and manner alleged.

20.     Denied in the form and manner alleged.

21.     Denied in the form and manner alleged.

22.     Denied.  Additionally, to the extent Paragraph 22 constitutes legal conclusions, no response is required.

23.     Denied.  Additionally, to the extent Paragraph 23 constitutes legal conclusions and legal argument, no response is required.

24.     Denied.

25.     Denied in the form and manner alleged.

26.     Denied in the form and manner alleged.

27.     Denied.  Additionally, to the extent Paragraph 27 constitutes legal conclusions and legal argument, no response is required.

28.     Denied.  Additionally, to the extent Paragraph 28 constitutes legal conclusions and legal argument, no response is required.

29.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 and therefore denies them.

30.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 and therefore denies them.

31.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 and therefore denies them.  Further answering, DraftKings did not append copies of the alleged documents referenced in Paragraph 31 and therefore Mr. Hermalyn denies the allegations on that basis as well.

32.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 and therefore denies them.

33.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 and therefore denies them.

34.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 and therefore denies them.

35.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 and therefore denies them.

36.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 and therefore denies them.

37.     The allegations in Paragraph 37 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.

38.     The allegations in Paragraph 38 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 38 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

39.     The allegations in Paragraph 39 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 39 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

40.     The allegations in Paragraph 40 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 40 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

41.     The allegations in Paragraph 41 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 41 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

42.     The allegations in Paragraph 42 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 42 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

43.     The allegations in Paragraph 43 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 43 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

44.     The allegations in Paragraph 44 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 44 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

45.     The allegations in Paragraph 45 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 45 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

46.     The allegations in Paragraph 46 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 46 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

47.     The allegations in Paragraph 47 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent

Paragraph 47 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

48.     The allegations in Paragraph 48 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 48 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

49.     The allegations in Paragraph 49 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 49 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

50.      The allegations in Paragraph 50 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  Further answering, Mr. Hermalyn had no opportunity to negotiate the restrictions in his DraftKings contracts, which were presented on a take-it-or-leave basis.  In addition, Mr. Hermalyn signed the contracts containing the provisions referenced in this Paragraph in reliance upon the accuracy and reliability of DraftKings' financial reporting, which was, upon information and belief, controlled by Mr. Robins, DraftKings' other top executives, and others within DraftKings.

51.     The allegations in Paragraph 51 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 50 above.

52.     The allegations in Paragraph 52 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 52 purports to quote from or otherwise characterize the document referenced therein,

the document speaks for itself. Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 50 above.

53.     The allegations in Paragraph 53 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same. To the extent Paragraph 53 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself. Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 50 above.

54.     The allegations in Paragraph 54 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same. To the extent Paragraph 54 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself. Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 50 above.

55.     The allegations in Paragraph 55 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same. To the extent Paragraph 55 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself. Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 50 above.

56.     The allegations in Paragraph 56 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same. To the extent Paragraph 56 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself. Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 50 above.

57.     The allegations in Paragraph 57 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 57 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.  Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 50 above.

58.     The allegations in Paragraph 58 constitute legal conclusions to which no response is required; to the extent a response is required, Mr. Hermalyn denies the same.  To the extent Paragraph 58 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.  Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 50 above.

59.     Denied.

60.     Admitted that on "January 23, 2024, [Mr.] Hermalyn accessed a 'VIP Founders Club'" document.  Further answering, Mr. Hermalyn accessed that document in connection with onboarding a new DraftKings employee at the time, and Mr. Hermalyn did not use, disclose, or provide the document or the information therein to anyone outside DraftKings and has not had access to either the document or its contents since resigning from DraftKings on February 1, 2024. Further answering, Mr. Hermalyn states that DraftKings did not append a copy of the alleged document referenced in Paragraph 60 to the Complaint or any of its filings in this case, and so Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the alleged document.  The allegations in Paragraph 60 are otherwise denied.

61.     Denied.

62.     Denied.  Further answering, Mr. Hermalyn states that DraftKings did not append a copy of the alleged document referenced in Paragraph 62 to the Complaint or any of its filings in this case, and so Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the alleged document.

63.     Denied.

64.     Denied.

65.     Denied in the form and manner alleged.  To the extent Paragraph 65 purports to characterize the alleged document referenced therein, the document speaks for itself.  Further answering, Mr. Hermalyn states that DraftKings did not append a complete copy of the alleged document referenced in Paragraph 65 to the Complaint or any of its filings in this case.

66.     Denied in the form and manner alleged.

67.     With respect to the first sentence of Paragraph 67, Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning purported "[g]eolocation data, call logs, and other activity on Hermalyn's DraftKings' account," and therefore denies them.  The allegations in the first sentence of Paragraph 67 are otherwise denied. With respect to the second sentence of Paragraph 67, admitted that on January 30, 2024, Mr. Hermalyn accessed a "(Master) SB 2024" document on the phone he used for his work at DraftKings.  Further answering, Mr. Hermalyn accessed that document in connection with responding to a work-related question from a DraftKings' employee, Brittney Goodman; Mr. Hermalyn did not use, disclose, or provide the document or the information therein to anyone outside DraftKings and has not had access to either the document or its contents since resigning from DraftKings on February 1, 2024.  Further answering, Mr. Hermalyn states that DraftKings did not append a copy of the alleged document referenced in Paragraph 67 to the Complaint or any

of its filings in this case.  The allegations in the second sentence of Paragraph 67 are otherwise denied.

68.     With respect to the first sentence of Paragraph 68, denied.  With respect to the remaining sentences of Paragraph 68, denied in the form and manner alleged.  Further answering, Mr. Hermalyn states that DraftKings did not append a copy of the alleged document referenced in Paragraph 68 to the Complaint or any of its filings in this case.

69.     Denied.

70.     Denied.  Further answering, Mr. Hermalyn states that DraftKings did not append a copy of the alleged document referenced in Paragraph 70 to the Complaint or any of its filings in this case.

71.     Denied.

72.     Admitted that Mr. Hermalyn "informed DraftKings on February 1 that he was resigning from DraftKings" and that he accepted a position on February 1, 2024 as the "head" of Fanatics' Los Angeles office.  The allegations in Paragraph 72 are otherwise denied.

73.     Denied.

74.     Admitted that the Super Bowl was scheduled to occur on February 11, 2024.  The allegations in Paragraph 74 are otherwise denied.

75.     Admitted that on February 1, 2024 certain materials were filed in the case captioned *Michael Z. Hermalyn et al. v. DraftKings, Inc.*, No. 24STCV02694 on behalf of the Plaintiffs in the case, Mr. Hermalyn and FVP, LLC; those filings speak for themselves.  The allegations in Paragraph 75 are otherwise denied in the form and manner alleged.

76.     Denied.

77.     Denied.

78.     Denied.  Further answering, Mr. Hermalyn previously resided in Bay Head, New Jersey, including during his DraftKings employment; Mr. Hermalyn became a California resident prior to his resignation from DraftKings, and he remains a California resident through present.  Mr. Hermalyn never resided in Massachusetts, was never based out of DraftKings' Massachusetts office, and Mr. Hermalyn did not "routinely" travel to Massachusetts for DraftKings business during his DraftKings employment.

79.     Admitted with respect to the first sentence of Paragraph 79, however, further answering, Mr. Hermalyn is not a resident of New Jersey.  Mr. Hermalyn also incorporates the response set forth in Paragraph 78 above.  The second sentence of Paragraph 79 is denied in the form and manner alleged.

80.     Denied.  Further answering, Mr. Hermalyn is registered to vote in the State of California.

81.     Denied in the form and manner alleged.  Further answering, Mr. Hermalyn's young children are attending schools in New Jersey until the end of the academic year this Spring 2024; Mr. Hermalyn's children have been accepted into schools in Los Angeles—where Mr. Hermalyn resides—for the upcoming school year, beginning in the Fall of 2024; and Mr. Hermalyn's wife's current employer is Tory Burch.

82.     Denied.

83.     With respect to the first sentence of Paragraph 83, denied in the form and manner alleged.  With respect to the second sentence of Paragraph 83, denied in the form and manner alleged; further answering, on February 1, 2024 certain materials were filed in the case captioned *Michael Z. Hermalyn et al. v. DraftKings, Inc.*, No. 24STCV02694 on behalf of the Plaintiffs in

that case, Mr. Hermalyn and FVP, LLC—those filings speak for themselves.  With respect to the third sentence of Paragraph 83, denied.

84.     Paragraph 84 states a legal conclusion to which no response is required; to the extent a response is required, denied.

85.     Denied.

86.     Denied.

87.     With respect to the first sentence of Paragraph 87, denied in the form and manner alleged.  Further answering, Mr. Hermalyn accepted an offer for employment with FVP, LLC, a subsidiary of Fanatics which is headquartered in Los Angeles, to join as its President and to be the Head of Fanatics Los Angeles office.  The allegations in Paragraph 87 are otherwise denied.

88.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' purported actions and "preliminary investigation," and therefore denies them.  Additionally, the second sentence of Paragraph 88 states a legal conclusion to which no response is required; to the extent a response is required, denied.

89.     Denied.

90.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Fanatics' purported actions, and therefore denies them.  Additionally, Paragraph 90 states a legal conclusion to which no response is required; to the extent a response is required, denied.  The allegations in Paragraph 90 are otherwise denied.

91.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Fanatics' purported actions, and therefore denies them.

92.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Rob Ferrara's purported actions, and therefore denies them.

93.     Denied.  Additionally, Paragraph 93 states a legal conclusion to which no response is required; to the extent a response is required, denied.  Further answering, in the referenced correspondence, Mr. Hermalyn was providing an email script to a departing employee to send to a current customer, the purpose of which was to encourage the customer to meet with Mr. Hermalyn ("Mike") so that Mr. Hermalyn could further develop the client relationship for DraftKings.  Mr. Hermalyn had previously met the client at a Super Bowl party, which the script notes.  The script was prepared by a team that included Mr. Hermalyn, DraftKings' in-house lawyers, and DraftKings' Chief Customer Officer Shawn Henley.  Outside counsel at Gibson Dunn—including some of the same counsel for DraftKings in this matter—was also involved.  Mr. Hermalyn did not encourage members of DraftKings' VIP team to join Fanatics, but rather worked assiduously to help DraftKings retain its VIP employees and their clients.  Further answering, Mr. Hermalyn states that DraftKings did not append a complete copy of the alleged document referenced in Paragraph 93 to the Complaint or any of its filings in this case.

94.     Denied.  Additionally, Paragraph 94 states a legal conclusion to which no response is required; to the extent a response is required, denied.  Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 93 above.

95.     Denied.  Additionally, Paragraph 95 states a legal conclusion to which no response is required; to the extent a response is required, denied.  Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 93 above.

96.     Denied.  Additionally, Paragraph 96 states a legal conclusion to which no response is required; to the extent a response is required, denied.  Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 93 above.

97.     Denied.  Additionally, Paragraph 97 states a legal conclusion to which no response is required; to the extent a response is required, denied.  Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 93 above.

98.     Denied.  Additionally, Paragraph 98 states a legal conclusion to which no response is required; to the extent a response is required, denied.  Further answering, Mr. Hermalyn also incorporates the response set forth in Paragraph 93 above.

99.     Denied.  Additionally, Paragraph 99 states a legal conclusion to which no response is required; to the extent a response is required, denied.

100.     Denied.  Additionally, Paragraph 100 states a legal conclusion to which no response is required; to the extent a response is required, denied.

101.     Denied.  Additionally, with respect to the fourth sentence of Paragraph 101, Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' purported actions, and therefore denies them.

102.     Denied.  Further answering, DraftKings' own representative told Mr. Hermalyn in January 2024, in sum and substance, that the so-called investigation was nothing to worry about, that it was normal course at a public company like DraftKings, and that there were numerous such investigations ongoing in the normal course at that same time.

103.     Denied.  Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning what DraftKings employees did or said, or what DraftKings purportedly "learned," and therefore denies them.  Further answering, a different DraftKings representative told Mr. Hermalyn on January 26, 2024 that the investigation was closed, and Mr. Hermalyn's employment was never terminated or even suspended, either during or after the so-called investigation.

104.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' purported "ongoing" actions, and therefore denies them.  To the extent any further response to Paragraph 104 is required, denied.

**COUNT I – Breach of Contract by Misappropriation (Confidentiality Agreement)**

To the extent a response is required to this heading, denied.

105.     Mr. Hermalyn incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.  Paragraph 105 states a legal conclusion to which no response is required; to the extent a response is required, denied.

106.     Paragraph 106 states a legal conclusion to which no response is required; to the extent a response is required, denied.

107.     Paragraph 107 states a legal conclusion to which no response is required; to the extent a response is required, denied.

108.     Paragraph 108 states a legal conclusion to which no response is required; to the extent a response is required, denied.

109.     The allegations in Paragraph 109 constitute legal conclusions to which no response is required; to the extent a response is required, denied.  To the extent Paragraph 109 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

110.     The allegations in Paragraph 110 constitute legal conclusions to which no response is required; to the extent a response is required, denied.  To the extent Paragraph 110 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

111.     The allegations in Paragraph 111 constitute legal conclusions to which no response is required; to the extent a response is required, denied.  To the extent Paragraph 111 purports to

quote from or otherwise characterize the document referenced therein, the document speaks for itself.

112.    Denied.  Additionally, the allegations in Paragraph 112 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

113.    Denied.  Additionally, the allegations in Paragraph 113 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

### COUNT II – Breach of Contract by Employee Solicitation (Confidentiality Agreement)

To the extent a response is required to this heading, denied.

114.    Mr. Hermalyn incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.  Paragraph 114 states a legal conclusion to which no response is required; to the extent a response is required, denied.

115.    Paragraph 115 states a legal conclusion to which no response is required; to the extent a response is required, denied.

116.    Paragraph 116 states a legal conclusion to which no response is required; to the extent a response is required, denied.

117.    Paragraph 117 states a legal conclusion to which no response is required; to the extent a response is required, denied.

118.    The allegations in Paragraph 118 constitute legal conclusions to which no response is required; to the extent a response is required, denied.  To the extent Paragraph 118 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

119.    The allegations in Paragraph 119 constitute legal conclusions to which no response is required; to the extent a response is required, denied.  To the extent Paragraph 119 purports to

quote from or otherwise characterize the document referenced therein, the document speaks for itself.

120.    Denied.  Additionally, the allegations in Paragraph 120 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

121.    Denied.  Additionally, Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' alleged actions, and therefore denies them.  Further, the allegations in Paragraph 121 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

122.    Denied.  Additionally, the allegations in Paragraph 122 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

### COUNT III – Breach of Contract by Competition (Noncompetition Covenant)

To the extent a response is required to this heading, denied.

123.    Mr. Hermalyn incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.  Paragraph 123 states a legal conclusion to which no response is required; to the extent a response is required, denied.

124.    Paragraph 124 states a legal conclusion to which no response is required; to the extent a response is required, denied.

125.    Paragraph 125 states a legal conclusion to which no response is required; to the extent a response is required, denied.

126.    The allegations in Paragraph 126 constitute legal conclusions to which no response is required; to the extent a response is required, denied.  To the extent Paragraph 126 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

127.    The allegations in Paragraph 127 constitute legal conclusions to which no response is required; to the extent a response is required, denied.  To the extent Paragraph 127 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

128.    Denied.  Additionally, the allegations in Paragraph 128 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

129.    Denied.  Additionally, the allegations in Paragraph 129 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

### COUNT IV – Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act (DTSA) (18 U.S.C. § 1836)

To the extent a response is required to this heading, denied.

130.    Mr. Hermalyn incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.  Paragraph 130 states a legal conclusion to which no response is required; to the extent a response is required, denied.

131.    Denied.  Additionally, the allegations in Paragraph 131 constitute legal conclusions to which no response is required; to the extent a response is required, denied.  Further answering, Mr. Hermalyn states that DraftKings did not append a copy of the alleged documents referenced in Paragraph 131 to the Complaint or any of its filings in this case.

132.    Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' alleged actions, and therefore denies them. Further, the allegations in Paragraph 132 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

133.    Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' alleged actions, and therefore denies them.

Further, the allegations in Paragraph 133 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

134.    Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' alleged actions, and therefore denies them. Further, the allegations in Paragraph 134 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

135.    Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' alleged actions, and therefore denies them. Further, the allegations in Paragraph 135 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

136.    The allegations in Paragraph 136 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

137.    Denied.  Additionally, the allegations in Paragraph 137 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

138.    Denied.  Additionally, the allegations in Paragraph 138 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

139.    The allegations in Paragraph 139 constitute legal conclusions to which no response is required; to the extent a response is required, denied.  To the extent Paragraph 139 purports to quote from or otherwise characterize the document referenced therein, the document speaks for itself.

140.    Denied in the form and manner alleged.  Paragraph 140 states a legal conclusion to which no response is required; to the extent a response is required, denied.

141.    Denied.  Additionally, the allegations in Paragraph 141 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

142.    Paragraph 142 states a legal conclusion to which no response is required; to the extent a response is required, denied.

143.    Paragraph 143 states a legal conclusion to which no response is required; to the extent a response is required, denied.

**COUNT V – Misappropriation of Trade Secrets in Violation of the Massachusetts Uniform Trade Secrets Act (MUTSA) (M.G.L. c. 93, §§ 42 to 42G)**

To the extent a response is required to this heading, denied.

144.    Mr. Hermalyn incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.  Paragraph 144 states a legal conclusion to which no response is required; to the extent a response is required, denied.

145.    Denied.  Additionally, the allegations in Paragraph 145 constitute legal conclusions to which no response is required; to the extent a response is required, denied.  Further answering, Mr. Hermalyn states that DraftKings did not append a copy of the alleged documents referenced in Paragraph 145 to the Complaint or any of its filings in this case.

146.    Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' alleged actions, and therefore denies them.  Further, the allegations in Paragraph 146 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

147.    Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' alleged actions, and therefore denies them.  Further, the allegations in Paragraph 147 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

148.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' alleged actions, and therefore denies them. Further, the allegations in Paragraph 148 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

149.     The allegations in Paragraph 149 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

150.     Denied.  Additionally, the allegations in Paragraph 150 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

151.     Denied.  Additionally, the allegations in Paragraph 151 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

152.     Denied in the form and manner alleged.  Paragraph 152 states a legal conclusion to which no response is required; to the extent a response is required, denied.

153.     Denied.  Additionally, the allegations in Paragraph 153 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

154.     Paragraph 154 states a legal conclusion to which no response is required; to the extent a response is required, denied.

155.     Paragraph 155 states a legal conclusion to which no response is required; to the extent a response is required, denied.

### COUNT VI – Misappropriation of Confidential Business Information

To the extent a response is required to this heading, denied.

156.     Mr. Hermalyn incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.  Paragraph 156 states a legal conclusion to which no response is required; to the extent a response is required, denied.

157.    Denied.  Additionally, the allegations in Paragraph 157 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

158.    Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' alleged actions, and therefore denies them. Further, the allegations in Paragraph 158 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

159.    Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' alleged actions, and therefore denies them. Further, the allegations in Paragraph 159 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

160.    The allegations in Paragraph 160 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

161.    Denied.  Additionally, the allegations in Paragraph 161 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

162.    Denied.  Additionally, the allegations in Paragraph 162 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

### COUNT VII – Breach of Duty of Loyalty

To the extent a response is required to this heading, denied.

163.    Mr. Hermalyn incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.  Paragraph 163 states a legal conclusion to which no response is required; to the extent a response is required, denied.

164.    Denied in the form and manner alleged.

165.     Denied in the form and manner alleged.  Additionally, the allegations in Paragraph 165 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

166.     Denied in the form and manner alleged.  Additionally, the allegations in Paragraph 166 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

167.     Denied.  Additionally, the allegations in Paragraph 167 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

168.     Denied.  Additionally, the allegations in Paragraph 168 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

## COUNT VIII – Conversion

To the extent a response is required to this heading, denied.

169.     Mr. Hermalyn incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.  Paragraph 169 states a legal conclusion to which no response is required; to the extent a response is required, denied.

170.     Denied.  Additionally, the allegations in Paragraph 170 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

171.     Denied.  Additionally, the allegations in Paragraph 171 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

172.     Mr. Hermalyn lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning DraftKings' alleged actions, and therefore denies them.  Further, the allegations in Paragraph 172 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

173.     Denied.  Additionally, the allegations in Paragraph 173 constitute legal conclusions to which no response is required; to the extent a response is required, denied.

## PRAYER FOR RELIEF

Mr. Hermalyn incorporates the responses set forth in the preceding paragraphs as if fully set forth herein.  Mr. Hermalyn denies that DraftKings is entitled to a judgment and/or any relief, including but not limited to all relief requested in the Prayer for Relief set forth in the Complaint.

## JURY TRIAL DEMAND

174.     Paragraph 174 constitutes legal conclusions to which no response is required; to the extent a response is required, denied.

## AFFIRMATIVE AND OTHER DEFENSES

Without admitting or acknowledging that Mr. Hermalyn bears any burden as to any of them, Mr. Hermalyn hereby asserts the following affirmative and other defenses.  Mr. Hermalyn incorporates the facts and allegations in his Answer and Affirmative Defenses into each of his affirmative and other defenses.  Mr. Hermalyn reserves the right to assert additional affirmative and other defenses and/or amend or modify the existing defenses, as warranted or may become available or apparent through discovery and pretrial proceedings in this case.

## FIRST DEFENSE

DraftKings' Complaint fails to state a claim upon which relief can be granted for each and every count.

## SECOND DEFENSE

DraftKings' claims are barred entirely because they were brought and are being maintained in bad faith and for anticompetitive and other improper purposes.

## THIRD DEFENSE

DraftKings' Complaint, and each purported cause of action contained therein, is barred in whole or in part by the doctrines of waiver, estoppel, consent, privilege, unclean hands, and/or other equitable doctrines.

## FOURTH DEFENSE

Specifically, and without limitation of the foregoing, DraftKings' Complaint, and each purported cause of action contained therein, is barred in whole or in part because DraftKings does not come to this Court with clean hands, and thus it is not entitled to any equitable relief, for at least the following reasons, among others:

 a. DraftKings' bringing the present claims in bad faith and for improper and anticompetitive purposes;

 b. DraftKings' requirement that its employees enter into restrictive covenants, including non-compete, customer non-solicitation, and employee non-solicitation and no-hire provisions, as a condition of their employment and compensation, in order to unreasonably and improperly restrain competition and not for a legitimate business purpose;

 c. DraftKings' bad faith attempts to prevent market entry by Fanatics, by, among other things, attempting to derail Fanatics' acquisition of PointsBet Sportsbook's U.S. assets;

 d. DraftKings' other acts, included those targeted at Fanatics, intended to restrain lawful competition in markets in which it is a dominant player and/or market leader;

 e. DraftKings' intentional and knowing violations of California law in enforcing the contract provisions at issue against Mr. Hermalyn, a California resident and employee of a California company; and

 f. DraftKings' improper conduct in connection with its financials and associated payments, or failure to pay, earned compensation to Mr. Hermalyn.

## FIFTH DEFENSE

DraftKings' claims are barred because they are frivolous and were brought in bad faith, for an improper purpose, and/or without reasonable inquiry, including for at least the following

reasons, among others:

    a.  DraftKings' bringing the present claims in bad faith and for improper and anticompetitive purposes;

    b.  DraftKings' requirement that its employees enter into restrictive covenants, including non-compete, customer non-solicitation and employee non-solicitation and no-hire provisions, as a condition of their employment and compensation, in order to unreasonably and improperly restrain competition and not for a legitimate business purpose;

    c.  DraftKings' bad faith attempts to prevent market entry by Fanatics, by, among other things, attempting to derail Fanatics' acquisition of PointsBet Sportsbook's U.S. assets;

    d.  DraftKings' other acts, included those targeted at Fanatics, intended to restrain lawful competition in markets in which it is a dominant player and/or market leader;

    e.  DraftKings' intentional and knowing violations of California law in enforcing the contract provisions at issue against Mr. Hermalyn, a California resident and employee of a California company; and

    f.  DraftKings' improper conduct in connection with its financials and associated payments, or failure to pay, earned compensation to Mr. Hermalyn.

### SIXTH DEFENSE

DraftKings' claims are barred, in whole or in part, because Mr. Hermalyn has not used or disclosed and is not using or disclosing any of DraftKings's confidential, proprietary, and/or alleged trade secret information.

### SEVENTH DEFENSE

Because Mr. Hermalyn has not used or disclosed and is not using or disclosing any of DraftKings's confidential, proprietary, and/or alleged trade secret information, DraftKings' claims are barred, in whole or in part, because DraftKings lacks any protectable interest.

### EIGHTH DEFENSE

DraftKings' claims are barred, in whole or in part, on the grounds that DraftKings has not defined its purported trade secrets under any applicable law.

## NINTH DEFENSE

DraftKings' claims are barred, in whole or in part, because the information on which its claims for misappropriation are based was readily ascertainable by proper means and is not confidential, proprietary, or trade secret information.

## TENTH DEFENSE

DraftKings claims alleging misappropriation are barred, in whole or in part, because DraftKings did not take reasonable steps to protect its alleged trade secrets or confidential information.

## ELEVENTH DEFENSE

DraftKings' claims alleging misappropriation are barred, in whole or in part, because Mr. Hermalyn did not obtain any alleged trade secrets or confidential or proprietary information by improper means.

## TWELFTH DEFENSE

DraftKings' claims alleging misappropriation are barred, in whole or in part, because the alleged trade secrets or confidential information lack independent economic value.

## THIRTEENTH DEFENSE

DraftKings' conversion claim is barred, in whole or in part, because Mr. Hermalyn did not deprive DraftKings of any of its tangible property.

## FOURTEENTH DEFENSE

DraftKings' claims are barred, in whole or in part, because they are preempted by the Defend Trade Secrets Act and the Massachusetts Uniform Trade Secrets Act.

### FIFTEENTH DEFENSE

DraftKings' claims are barred, in whole or in part, because the contract provisions at issue are unenforceable as against public policy, because they are overly broad, and because they are unduly restrictive.

### SIXTEENTH DEFENSE

DraftKings' claims are barred, in whole or in part, because the contract provisions at issue are void under Cal. Bus. & Prof. Code §§ 16600 et seq., and violate fundamental California public policy in favor of employee mobility and fair competition, and DraftKings' efforts to enforce those provisions constitutes a violation of California law and an unfair business practice.

### SEVENTEENTH DEFENSE

DraftKings is not seeking to protect legitimate business interests and thus its breach of contract claims are not viable, and its requested relief should be denied.

### EIGHTEENTH DEFENSE

The contractual prohibitions that DraftKings is seeking to enforce are unenforceable because such prohibitions are not narrowly drawn to protect DraftKings' legitimate business interests.

### NINETEENTH DEFENSE

DraftKings' claims are barred, in whole or in part, because the contract provisions at issue are not reasonably limited in geographic reach in relation to the interests protected, and are not reasonable in the scope of the proscribed activities in relation to the DraftKings interests protected.

### TWENTIETH DEFENSE

DraftKings' claims are barred, in whole or in part, because they are against public policy.

### TWENTY-FIRST DEFENSE

DraftKings' claims for breach of contract are barred, in who or in part, by the material change doctrine.

### TWENTY-SECOND DEFENSE

To the extent any purported liability of Mr. Hermalyn is premised on alleged breaches of contract, Mr. Hermalyn's performance was excused by virtue of DraftKings' breach of the implied covenant of good faith and fair dealing inherent in those contracts and/or other wrongs.

### TWENTY-THIRD DEFENSE

DraftKings' causes of action are barred to the extent that DraftKings has failed to fulfill any contractual conditions precedent, or that any other contractual conditions precedent were not fulfilled.

### TWENTY-FOURTH DEFENSE

DraftKings' causes of action are barred to the extent that DraftKings has materially breached and repudiated the terms and conditions of the relevant contract(s) and/or covenant(s), thereby excusing Mr. Hermalyn's purported obligation to perform.

### TWENTY-FIFTH DEFENSE

DraftKings's breach of fiduciary duty claim against Mr. Hermalyn is barred, in whole or in part, because Mr. Hermalyn owed no duty, fiduciary or otherwise, to DraftKings.

### TWENTY-SIXTH DEFENSE

DraftKings's breach of fiduciary duty claim against Mr. Hermalyn is barred, in whole or in part, because it is entirely duplicative of DraftKings' breach of contract claims.

### TWENTY-SEVENTH DEFENSE

DraftKings' claims are barred because it has not suffered any damages as a result of the allegations in the Complaint.

## TWENTY-EIGHTH DEFENSE

In the alternative, if DraftKings has been harmed as alleged (and denied), the harm was caused in whole or in part by DraftKings's own actions or inactions and DraftKings, therefore, is not entitled to relief.

## TWENTY-NINTH DEFENSE

DraftKings claim for damages, if any, is barred because the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such damages.

## THIRTIETH DEFENSE

DraftKings failed to take proper steps to mitigate its damages, if any.

## THIRTY-FIRST DEFENSE

DraftKings is not entitled to any injunctive relief because any injury to DraftKings is not irreparable, DraftKings has an adequate remedy at law, the balance of hardships does not warrant a remedy in equity, and the public interest would be disserved by an injunction.

## THIRTY-SECOND DEFENSE

DraftKings is not entitled to injunctive relief because an injunction enforcing the purported contract provisions at issue would be an unreasonable and illegal restraint of trade, as it would have the effect of restraining ordinary, lawful competition, as opposed to unlawful competition.

## MR. HERMALYN'S JURY DEMAND

Mr. Hermalyn demands a trial by jury on all issues so triable.

Dated: May 24, 2024
Respectfully submitted:

/s/ *Russell Beck*
Russell Beck (BBO# 561031)
Stephen D. Riden (BBO# 644451)
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, MA 02110
Tel.: (617) 500-8660
Fax: (617) 500-8665
rbeck@beckreed.com
sriden@beckreed.com

/s/ *Aliki Sofis*
Aliki Sofis (BBO #675777)
Alexander S. del Nido (BBO #711857)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA  02199-3600
Tel.:  (617) 712-7100
Fax:  (617) 712-7200
alikisofis@quinnemanuel.com
alexdelnido@quinnemanuel.com

Kimberly E. Carson (*pro hac vice*)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-7100
kimberlycarson@quinnemanuel.com

Christopher G. Michel (*pro hac vice*)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel: (202) 538-8000
Fax: (202) 538-8100
christophermichel@quinnemanuel.com

*Attorneys for Defendant Michael Z. Hermalyn*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was filed on May 24, 2024, through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  May 24, 2024                                    /s/ *Aliki Sofis*
                                                       Aliki Sofis