# EXHIBIT 3

1    SUPERIOR COURT OF THE STATE OF CALIFORNIA

2      FOR THE COUNTY OF LOS ANGELES

3

4

5  Michael Z. Hermalyn and FVP, LLC, )

                )

6        Plaintiffs,   )

                )

7        VS.     ) CASE NO. 24STCV02694

                )

8  DraftKings, Inc.,     )

                )

9        Defendant.    )

   _____)

10

11

12

13

14

15   VIDEOTAPED REMOTE DEPOSITION OF ORLANDO ASHFORD

16        MAY 22, 2024

17

18        --ooOoo--

19

20

21

22

23

24  JOB NO.: 6719784

25  REPORTED BY: MICHELLE MEDEL SABADO, RPR, CRR, CSR #7423

                    Page 1

1              VIDEOTAPED REMOTE DEPOSITION OF ORLANDO

2    ASHFORD, TAKEN ON BEHALF OF DEFENDANT, COMMENCING AT 3:08

3    P.M., WEDNESDAY, MAY 22, 2024, AT 2029 CENTURY PARK EAST,

4    LOS ANGELES, CALIFORNIA, BEFORE MICHELLE MEDEL SABADO,

5    RPR, CRR, CSR #7423.

6

7

8

9    APPEARANCES OF COUNSEL:

10

11   FOR PLAINTIFFS:

12   FOR PLAINTIFF MICHAEL Z. HERMALYN:

13                   MUNGER, TOLLES & OLSON, LLP

                     BY: ANNE K. CONLEY, ESQ.

14                   350 South Grand Avenue, 50th Floor

                     Los Angeles, California 90071

15                   213.683.9100

                     anne.conley@mto.com

16

17   FOR PLAINTIFF FVP, LLC:

18                   QUINN EMANUEL URQUHART & SULLIVAN, LLP

                     BY: JAMES ASPERGER, ESQ.

19                   865 South Figueroa Street, 10th Floor

                     Los Angeles, California 90017

20                   213.443.3000

                     jimasperger@quinnemanuel.com

21

22

23

24

25

                                              Page  2

```
 1

 2   APPEARANCES OF COUNSEL (CONTINUED):

 3

 4   FOR DEFENDANT:

 5                    GIBSON, DUNN & CRUTCHER, LLP
                      BY: JAMES P. FOGELMAN, ESQ.
 6                    2029 Century Park East, Suite 4000
                      Los Angeles, California 90067
 7                    310.552.8500
                      jfogelman@gibsondunn.com

 8

 9

10   Also Present:

11   ELAINE ZEMBRANO - THE VIDEOGRAPHER

12   ALAYNA MONROE - GIBSON DUNN

13   KATHERINE V.A. SMITH - GIBSON DUNN

14   BRADLEY HAMBURGER - GIBSON DUNN

15   DAVID ARMILLEI - QUINN EMANUEL

16

17   VIA ZOOM:

18   JUSTINE GOEKE - GIBSON DUNN

19   KELLY GREGG - GIBSON DUNN

20   RUSSELL BECK - BECK REED

21   STEPHEN RIDEN - BECK REED

22   STANTON DODGE - DRAFTKINGS REP

23   ANDREW SHRIRO - DRAFTKINGS GENERAL COUNSEL

24

25
```

Page 3

```
 1                      I N D E X
 2    WITNESS           EXAMINATION BY              PAGE
 3    ORLANDO ASHFORD
 4                      (BY MR. FOGELMAN)        6, 104
 5                      (BY MR. ASPERGER)           102
 6
 7
 8
 9
10
11                    E X H I B I T S
12    NUMBER           PAGE               DESCRIPTION
13    EXHIBIT 1        30                 SWIPE CARD DATA
14
15
16    Questions Instructed not to Answer:
17    Page 36, Line 18
18    Page 39, Line 11
19
20
21
22
23
24
25
                                          Page  4
```

```
 1                    LOS ANGELES, CALIFORNIA

 2              Wednesday, May 22, 2024; 3:08 p.m.

 3

 4

 5        THE VIDEOGRAPHER:  All right.  Good morning -- I      03:08

 6   mean, sorry.  Good afternoon, everyone.  We're on the

 7   record.  The time is 3:08 p.m. Pacific Time.  Today is

 8   May 20 -- 22, 2024.  My name is Elaine Zembrano.  I'm a

 9   video technician with Veritext Legal Solutions located in

10   Los Angeles, California.                                   03:08

11             We are recording these proceedings at 2029

12   Century Park East, Los Angeles.  This is the video

13   deposition of Orlando Ashford in the action entitled

14   Michael Z. Herm -- Herma -- Hermay -- I'm sorry.  I can't

15   pronounce it.                                              03:08

16        MS. CONLEY:  Hermalyn.

17        THE VIDEOGRAPHER:  Hermalyn, thank you, and FVP,

18   LLC versus DraftKings, Inc.  This deposition is being

19   taken on behalf of defendants.  The case number is

20   24STCV02694.                                               03:08

21             Now would you all please identify yourself

22   and who you represent, starting with the noticing

23   attorney.

24        MR. FOGELMAN:  James Fogelman of Gibson Dunn

25   specially appearing for defendant DraftKings.  With me     03:09
```

Page 5

| | | |
|---|---|---|
| 1 | are my colleagues, Alayna Monroe, Katherine Smith, Brad | 03:09 |
| 2 | Hamburger and on the line, Kelly Gregg and -- and Justine | |
| 3 | Goeke. | |
| 4 | MR. ASPERGER:  Jim Asperger of Quinn Emanuel | |
| 5 | appearing on behalf of FVP, LLP -- I'm sorry, LLC and | 03:09 |
| 6 | with me from Quinn Emanuel is David Armillei. | |
| 7 | MS. CONLEY:  Anne Conley of Munger Tolles and Olson | |
| 8 | on behalf of plaintiff Michael Z. Hermalyn. | |
| 9 | THE VIDEOGRAPHER:  All right.  If that's everyone, | |
| 10 | now will the court reporter please administer the oath. | 03:09 |
| 11 | | |
| 12 | ORLANDO ASHFORD, | |
| 13 | having been first duly sworn by the Reporter, was | |
| 14 | examined and testified as follows: | |
| 15 | | 03:09 |
| 16 | EXAMINATION | |
| 17 | BY MR. FOGELMAN: | |
| 18 | Q      Thank you. | |
| 19 | You understand the oath you've just taken is | |
| 20 | the same oath you've taken in a court of law, right? | 03:10 |
| 21 | A      Um-hum. | |
| 22 | Q      Yes? | |
| 23 | A      Yes. | |
| 24 | Q      Have you been deposed before? | |
| 25 | A      Yes. | 03:10 |

Page 6

```
1          Q     Okay.  So I'm not going to go through the      03:10

2     rules.  If you have any questions, ask me.  Let's just

3     get right to it.

4                You were hired by Fanatics in 2022; is that

5     right?                                                   03:10

6          A     I was hired by Fanatics on October 16th,

7     2022.

8          Q     Okay.  And originally you were based in New

9     York; is that right?

10         A     Yeah, I split time between Florida and New     03:10

11    York.

12         Q     Is that still true?

13         A     Yes.

14         Q     Okay.  Were you in involved in any way in the

15    decision to form FVP?                                    03:10

16         A     I was not involved in the decision, no.  I'm

17    a member of the executive team so I sit in on discussions

18    but the decision to form FVP or Fanatics VIP as -- as we

19    like to call it was made by -- by Michael primarily.

20         Q     Michael Rubin?                                03:10

21         A     Yes.

22         Q     Okay.  But you were part of the discussions

23    that led to its creation?

24         A     I sit on the executive team so I've been

25    in -- I'm in the room but I'm not -- I -- I run HR so I'm  03:11
```

Page 7

```
 1    not part of the decision making body --              03:11

 2         Q    Got it.

 3         A    -- if that makes sense.

 4         Q    Do you -- can you tell us what you understand

 5    the reason for forming FVP was?                       03:11

 6         A    Sure.

 7              If -- if it's okay, I'll refer to it as

 8    Fanatics VIP.  That's just how -- how we talk about it.

 9    And so the strategy for Fanatics is -- is one around

10    we've got three distinct businesses, betting and gaming,  03:11

11    commerce, collectables and then corporate.  I sit as part

12    of the corporate office and we have a -- a base of

13    customers and there's a subset of that customer base that

14    we refer to as VIP and so those are people that tend to

15    be higher spenders, have a larger wallet and so it's     03:11

16    about 1 percent of the customer base that drives let's

17    say 50 percent of the -- of the business.  And so the VIP

18    business was formed to create relationships with those

19    specialized customers to help enable and drive the

20    Fanatics business.  The belief being that if we get more  03:12

21    of those customers to understand our product and have a

22    relationship with Fanatics, it'll be a boost to the

23    business.

24         Q    Well, the VIP business, as you described it,

25    existed before FNV was created, right?                 03:12
```

                                                        Page 8

1          A      They were VIP's, so -- but the business and      03:12

2     the concept of a business and formalizing, that's the

3     part that's -- that's new.  So there are VIP's for sure.

4     There were VIPs that existed as a part of Fanatics but

5     our ambition was to -- to grow that.                      03:12

6          Q      And -- and there was a VIP program at

7     Fanatics before FVP was born, right?

8          A      There were -- there were -- so the word I

9     would use, I'd put it in different context.  I wouldn't

10    call at a program.  We were beginning -- we had VIP's and  03:12

11    we wanted to formalize it and so the reason that we were

12    creating the Fanatics VIP business was to formalize that

13    in a different way so that there'd be more focus and so

14    that we could do a better job of growing it.

15         Q      Was Stewart Huntley involved in the VIP        03:13

16    business at Fanatics before FVP was formed?

17         A      Stewart Huntley was -- yeah, was brought as

18    part of the betting and gaming business and has a -- has

19    a remit that touches VIP's, yes.

20         Q      Okay.  And -- and he was doing that work       03:13

21    before FVP was formed in the very end of January of 2024,

22    correct?

23         A      Yes.

24         MR. ASPERGER:  Jim, Jim, I'm going to interpose an

25    objection here.  This is for the purpose of irreparable    03:13

                                                          Page 9

```
 1   harm and you're not connecting it up to irreparable harm.    03:13

 2        MR. FOGELMAN:  It's -- it's going to --

 3        MR. ASPERGER:  I've given you leeway but I want to

 4   hear a connection.

 5        MR. FOGELMAN:  The connection will become evident    03:13

 6   when the questions are asked.

 7        Q    Mr. Huntley, has he changed his role at all

 8   from what he was doing before FVP was formed?

 9        MR. ASPERGER:  Jim, I'm going to interpose the same

10   objection.  You haven't connected it at all.    03:13

11        MS. CONLEY:  And I'm just going to jump in here and

12   I -- I realize that we are different -- representing

13   different plaintiffs so I'm going to join in that

14   objection and maybe we could have a stipulation on the

15   record that an objection from one plaintiff is an    03:14

16   objection for both so we don't --

17        MR. FOGELMAN:  Stipulated.

18        MS. CONLEY:  Thank you.

19        MR. FOGELMAN:  And I'll stipulate to a form

20   objection, accounting for whatever form objections you    03:14

21   want so we save time.

22        MS. CONLEY:  This is a scope objection.

23        MR. ASPERGER:  Scope is -- we're going to instruct

24   him not to answer if you venture too far.

25        MR. FOGELMAN:  Okay.  Well, we're not going to    03:14
```

Page 10

1    agree to instructions not to answer other than privilege.    03:14

2    But I don't think anything I'm going to ask him today is

3    intended to get past the scope.  We just may have this

4    disagreement as to what matches up.  I don't want to have

5    to take my 90 minutes or 120 minutes to argue with you,    03:14

6    so let's just go back to the questions.

7         Q    Had -- is Mr. Huntley still employed by the

8    same entity that he was employed before FVP was created?

9         A    So Mr. Huntley is -- is a member of or -- by

10   betting and gaming.    03:14

11        Q    Right.

12        A    So yes.

13        Q    And the --

14        A    And as a part of that role, he does touch VIP

15   clients.    03:15

16        Q    Okay.  And he continues to do that at the

17   Fanatics office in New York, right?

18        A    Yes.

19        Q    Okay.

20        A    That is -- that's yes.    03:15

21        MR. ASPERGER:  And I'm going to interpose one other

22   comment for the court reporter.  Can you slow down in

23   your answers?

24        THE WITNESS:  Okay.

25        MR. ASPERGER:  And your questions, Jim.    03:15

Page 11

```
1          THE WITNESS:  Okay.                              03:15

2          MS. CONLEY:  She's taking this down.

3          THE WITNESS:  Oh, sorry.  Sorry.  All right.

4          MS. CONLEY:  I know this isn't easy --

5          THE WITNESS:  Yeah, this is new.  You guys do this   03:15

6  every day.

7          MR. ASPERGER:  It's natural to speak quickly.  I

8  mean, especially your first time.

9  BY MR. FOGELMAN:

10         Q    Is there anything being done at FVP that's    03:15

11 different than what was being done at Fanatics before FVP

12 was formed?

13         A    Okay.  So --

14         MR. ASPERGER:  Objection.  Vague.

15         THE WITNESS:  Okay.                              03:15

16         MR. ASPERGER:  You can answer, though, if you

17 understand the question.

18         THE WITNESS:  Yeah, yeah, yeah, I do.  And so I

19 think context is important here.  So the decision was

20 made to form Fanatics VIP in an effort to create        03:15

21 incremental focus on the VIP customer for the reasons

22 that I talked about before, so that top 1 percent that

23 drives 50 percent of the value or more for our gaming

24 business and our collectables business in particular, but

25 it also can touch our commerce business.  And so there   03:15
```

```
 1    were people -- you mentioned Mr. Huntley -- that was          03:16

 2    hired earlier on to touch VIP.

 3              Well, Fanatics made a strategic decision that

 4    they wanted to get more focused on that and therefore,

 5    Fanatics VIP was formed with the intent to enable that        03:16

 6    and a decision was made to hire Mike Hermalyn to be the

 7    leader.  A lot of the other activity that was planned has

 8    been ceased based on some of the proceedings that -- you

 9    know, that you're more aware of than me.

10    BY MR. FOGELMAN:                                              03:16

11         Q    Has anyone at Fanatics, Inc. moved over from

12    Fanatics, Inc. to FVP who was handling VIP's before FVP

13    was born?

14         A    So that work all stopped.  So Mike Hermalyn

15    was hired and then when the injunction came about, in an      03:16

16    effort to not run afoul of the injunction, all of the

17    plans that we had had in place we're -- we're going to

18    do, so the intention was new leader, based in California

19    and we were going to bring our VIP entities or resources.

20    Some were in betting and gaming, some were in -- in our       03:17

21    -- in our hold co and then others that we were going to

22    go hire were intended to come together.  All of that work

23    has stopped and -- and has -- has -- has not happened.

24    So hopefully that --

25         Q    I'm going to get --                                 03:17

                                                          Page 13
```

```
 1        A     -- answers your question.                    03:17

 2        Q     -- I'm going to ask you followup questions

 3    about what you just said but I want to go back to my

 4    question.  Whether it's Mr. Huntley or anyone else that

 5    was touching on VIP's at Fanatics before FVP was formed,  03:17

 6    were any of those employees or officers transferred over

 7    to FVP after FVP was formed?

 8        MR. ASPERGER:  Objection.  Asked and answered.

 9        THE WITNESS:  Yeah, asked and answered.  I'm making

10    the same comment.  They -- we -- Mike was hired.  The     03:17

11    injunction happened.  We didn't do any of the execution

12    of any of the plans that would have brought those people

13    over into Fanatics VIP.

14    BY MR. FOGELMAN:

15        Q     Okay.  Did Mr. Huntley or anybody else who     03:17

16    was working on VIP's from Fanatics, Inc. stop working on

17    VIP issues at any point in time after FVP was formed?

18        A     So yeah, Mr. Huntley continues to -- to touch

19    on VIP's in the capacity in which he was originally hired

20    as a part of betting and gaming.                         03:18

21        Q     Okay.  Now in California, betting isn't

22    allowed, right?

23        A     Yes.

24        Q     So none of the betting work takes place in

25    California for Fanatics or FVP, right?                    03:18
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1        MR. ASPERGER:  Objection.  Form.  Vague.                03:18

2        THE WITNESS:  Okay.  So -- so here's the context in

3   which I have tried to answer your question.  So your

4   statement about betting in California is true.  The

5   reason that California is -- is strategic --                03:18

6   strategically exciting for us, for anchoring this

7   business is a few fold.  So one, two of our three CEO's

8   reside in California and like I said, the V -- the

9   Fanatics VIP business is intended to be a growth engine

10  for the entire corporation.  You have two of your three   03:18

11  CEO's based here.  There are a number of people that

12  qualify for or would be looked at as potential VIP

13  customers that are based here in California that travel

14  and work and spend in other parts of the United States.

15          The VIP business is a relationship business       03:19

16  and so the thought was that this was a great place to

17  connect with, anchor and form relationships with some of

18  those potential VIP's out of this office, but to do that

19  on a national level.

20       Q    Okay.  But just -- let me take it a step back   03:19

21  a second.  FVP, does it have any employees at all?

22       A    It has -- it had -- well, it had one.

23       Q    It had one?

24       A    Yeah.  Well, I mean -- we -- we -- Mike

25  Hermalyn is -- is the one we had -- he -- and he has not  03:19

                                                    Page 15

1    been allowed to do his work.                          03:19

2         Q    So Mike Hermalyn was the sole employee of the

3    FVP?

4         A    Mike Hermalyn was the first employee with the

5    intention to hire and grow that significantly beyond    03:19

6    that.

7         Q    Just to clarify that, is he the only employee

8    who's ever been hired by FVP?  Yes or no?

9         MR. ASPERGER:  Objection.  Vague as to time.

10        THE WITNESS:  So the way I would answer your        03:19

11   question -- I think I answered it but I'll answer it

12   again.  So Mike Hermalyn was the first employee hired by

13   Fanatics VIP with the intention of moving other employees

14   over and adding to that here in California.  When the

15   injunction took place, that work all ceased so none of   03:20

16   that has happened.

17   BY MR. FOGELMAN:

18        Q    Okay.  Is Mr. Hermalyn still employed by

19   Fanatics?

20        A    He is.  We are in the process of trying to     03:20

21   think through how we can leverage Mr. Hermalyn's skills

22   and experience and background without being in violation

23   of the -- of the injunction and so that's something we're

24   working through.

25        Q    So you're in the process of working through    03:20

Page 16

1    what Mr. Hermalyn can do with the company while the          03:20

2    federal injunction from Massachusetts is in place; is

3    that right?

4         A    That is correct.

5         Q    And you haven't completed that work; is that      03:20

6    right?

7         A    We're -- yeah, we're working that through so

8    there's different options on the table but nothing that

9    -- that -- that has sort of satisfactorily leverages his

10   skills, talents and abilities.                               03:20

11        Q    Who's working on this idea of what

12   Mr. Hermalyn can do while there is an injunction by the

13   Federal Court in Massachusetts?

14        A    So there's a number of people that -- if I

15   understand your question that -- thinking that through,      03:21

16   Mr. Hermalyn himself and then other members of the

17   executive team, including Michael Rubin.

18        Q    Anybody else besides Mr. Hermalyn and

19   Mr. Rubin still thinking through the issue of what

20   Mr. Hermalyn can do while the Federal Court injunction       03:21

21   from Massachusetts is in place?

22        A    So the other person that would be

23   participating in that would be -- would be Tucker Kain.

24        Q    Okay.  And when did they start?  To your

25   knowledge, when did Mr. Rubin, Mr. Hermalyn and Mr. Kain     03:21

Page 17

1    start thinking about what Mr. Hermalyn could do for          03:21

2    Fanatics while there's a Federal Court injunction in

3    Massachusetts?

4         MS. CONLEY:  Objection.  Compound.

5         THE WITNESS:  Okay.  Because I'd -- I'd be          03:21

6    speculating.  I couldn't give you -- it's after the

7    injunction came into place but I wouldn't know when.

8    BY MR. FOGELMAN:

9         Q    Now the injunction you're talking about, is

10   that the April 30th injunction issued by the Federal       03:21

11   Court in --

12        A    Yes.

13        Q    -- Massachusetts?

14        A    Yes.

15        Q    Okay.  And before the Federal Court          03:22

16   injunction was issued on April 30th --

17        A    You lost your mike.

18        Q    Hold on one second.  My microphone.  The

19   technology.  You get it all right and then you -- they

20   knock it right out of you.                                  03:22

21        A    Right.

22        Q    Okay.  Before the April 30th Federal Court

23   injunction from Massachusetts was issued, FNV did not

24   believe it was being harmed in any way, right?

25        MR. ASPERGER:  Objection.  Form.  Vague.          03:22

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1          MS. CONLEY:  Objection.  Argumentative.           03:22

 2          THE WITNESS:  You want to restructure the -- the

 3     question?

 4     BY MR. FOGELMAN:

 5          Q    Well, I -- if you can answer the question.    03:22

 6          A    I'd like you to restructure it so I can

 7     answer it.

 8          Q    Okay.  Before the April 30th injunction

 9     issued by the Federal Court, is it true that FVP was not

10     claiming to be harmed in any way?                       03:22

11          MR. ASPERGER:  Objection.

12          MS. CONLEY:  Objection.  Misquotes a witness.

13          MR. ASPERGER:  Yeah.

14     BY MR. FOGELMAN:

15          Q    You may answer.                               03:23

16          A    So --

17          MR. ASPERGER:  Do you understand the question?

18          THE WITNESS:  I'm not sure.  No.

19     BY MR. FOGELMAN:

20          Q    Do you believe that FVP is being harmed by    03:23

21     the Federal Court injunction in Massachusetts in some

22     way?

23          A    That's why we're here.  So -- so by not

24     allowing Mike Hermalyn to come and do what we hired him

25     to do and what we feel he is specifically and specially 03:23
```

Page 19

| | | |
|---|---|---|
| 1 | capable of doing, then the answer is yes.  We spent a lot | 03:23 |
| 2 | of time looking -- we worked with a search firm, an | |
| 3 | external search firm.  They talked to or looked at or | |
| 4 | assessed 124 candidates.  Of that 124 candidates, they | |
| 5 | spoke to directly I think it's 15 candidates.  Of those | 03:23 |
| 6 | 15, I believe there were seven or eight that were | |
| 7 | identified for consideration by Fanatics and out of all | |
| 8 | of those, the person that we deemed to be uniquely | |
| 9 | qualified for the role was -- was -- was Mike Hermalyn. | |
| 10 | But once the injunction came about, we ceased all of that | 03:23 |
| 11 | activity that we were planning to do to point the VIP | |
| 12 | business -- to grow and sort of point the VIP business | |
| 13 | towards Fanatics. | |
| 14 | Q    Okay.  So just to clarify, the harm that you | |
| 15 | think whatever it might be -- | 03:24 |
| 16 | A    Sure. | |
| 17 | Q    -- that Fanatics is claiming you suffered | |
| 18 | comes from the issuance by the Federal Court on | |
| 19 | April 30th of an injunction, right? | |
| 20 | MS. CONLEY:  Objection. | 03:24 |
| 21 | MR. ASPERGER:  Objection. | |
| 22 | MS. CONLEY:  Argumentative. | |
| 23 | MR. ASPERGER:  And compound. | |
| 24 | THE WITNESS:  Yeah, the harm comes from not -- | |
| 25 | Michael Hermalyn not being allowed to leverage his skills | 03:24 |

Page 20

```
 1    experience that we deem to be uniquely -- uniquely          03:24

 2    qualifying him to grow and enable our VIP business.  When

 3    the injunction came about, we stopped all that work and

 4    in addition to that, because he had two roles, so those

 5    were part CEO president of VIP and then also leading the    03:24

 6    LA office and he's not really been able to do a lot of

 7    that activity because we -- in an effort to not run afoul

 8    of the injunction, we don't want him having inappropriate

 9    conversations or bumping into other VIP people that are

10    doing similar work.  So to avoid that, we -- we keep him    03:25

11    from doing a lot of that work as well.

12    BY MR. FOGELMAN:

13         Q    Other than obtaining an injunction from a

14    court in Boston, Massachusetts, what else, if anything,

15    do you believe DraftKings has done that in any way          03:25

16    impairs FM -- sorry, FVP?

17         MR. ASPERGER:  Objection.  Asked and answered.

18         MS. CONLEY:  And objection, asks for a legal

19    conclusion and calls for speculation.

20         THE WITNESS:  So here's what -- here's what I'll        03:25

21    say and I'll -- I'll be repeating myself.  When the

22    injunction came about and in an effort to uphold what we

23    were tasked to do, we stopped all that energy and

24    activity and so the fact that we hired a talented and --

25    you know, resource, we surfed a lot of people to find him   03:25
```

Page 21

```
 1    and we were trying to execute our strategy and not being      03:26

 2    allowed to execute our strategy causes harm to our

 3    company.

 4         MR. FOGELMAN:  Move to strike as nonresponsive.

 5              I'm asking something very specific.            03:26

 6         MR. ASPERGER:  It was responsive, Jim.

 7         MR. FOGELMAN:  This is not an argument.  This is a

 8    motion for the Court and the Court will decide it at the

 9    right time.

10         MR. ASPERGER:  Yeah, but if you're going to say    03:26

11    it's nonresponsive, I'm going to correct the record and

12    say it is.

13    BY MR. FOGELMAN:

14         Q    Sir, I'm asking very specific questions and

15    I'd like to use this time wisely.  Other than seeking a   03:26

16    injunction in a court in Massachusetts, what else, if

17    anything, do you personally believe DraftKings has done

18    that in any way impairs FVP or Mr. Hermalyn?

19         MR. ASPERGER:  Objection.  Asked and answered.

20         THE WITNESS:  Yeah, so I'm -- I'm not sure what     03:26

21    else you want me to say.  I keep telling you kind of the

22    issue and the reason why we're here.  So we're tying to

23    launch our VIP business.  The person that we've asked to

24    launch it is not allowed to work on it, so then we've

25    stopped all that work and therefore, that puts the VIP    03:26
```

Page 22

```
 1    business and some of the other elements of our business      03:26

 2    at risk.

 3    BY MR. FOGELMAN:

 4         Q     Did you stop working -- you claim you stopped

 5    working on some kind of programs for any reason other        03:27

 6    than the issuance of a injunction by a Federal Court?

 7         MR. ASPERGER:  Objection.  Vague and -- and calls

 8    for speculation.

 9         MS. CONLEY:  And objection, argumentative.

10    BY MR. FOGELMAN:                                             03:27

11         Q     You may answer the question.

12         MR. ASPERGER:  Do you understand the question?

13         THE WITNESS:  Yeah, I -- I feel like I've answered

14    it four times, so I can say the same thing --

15    BY MR. FOGELMAN:                                             03:27

16         Q     I -- I -- I just want the answer to my

17    question and I don't think I'm getting it.  I -- I don't

18    want to ask the reporter to read -- read it because

19    it's --

20         MR. ASPERGER:  Let's not argue with the witness.       03:27

21    BY MR. FOGELMAN:

22         Q     -- it's on the video -- it's on the video so

23    let me just try it again.

24         MR. ASPERGER:  Jim, let's not argue with the

25    witness.                                                     03:27
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1    BY MR. FOGELMAN:                                      03:27

2         Q     Other than an injunction, is there anything

3    else you think DraftKings has done other than getting an

4    injunction that impairs, according to you --

5         A     Right.                                     03:27

6         Q     -- anything that FVN --

7         A     So based on --

8         Q     -- or FVP is doing?

9         A     -- based on my knowledge --

10        MS. CONLEY:  Hold on.  Hold on. sorry.           03:27

11        THE WITNESS:  Yeah.

12        MS. CONLEY:  Give us a chance to interpose an

13   objection.

14        THE WITNESS:  Okay.  Sure, sure.  Sorry.

15        MS. CONLEY:  I'm going to object to the fact that 03:27

16   this is a witness that's appearing as a PMQ and you're

17   calling for his personal -- I think you said through his

18   personal knowledge or, you know, just to clarify, this is

19   a -- you have not noticed it as a personal deposition as

20   well and to interpose an argumentative objection.       03:28

21        MR. ASPERGER:  I'll also ask you to keep --

22   remember to keep slowing down, too.

23        THE WITNESS:  Okay.

24        MR. ASPERGER:  You'll make it a lot easier for the

25   court reporter.                                         03:28

                                                    Page 24

1         THE WITNESS:  All right.  All right.  Okay.  Can I        03:28

2    talk now?

3         MR. ASPERGER:  Let's first -- do you understand the

4    question?

5         THE WITNESS:  Yeah, I -- I think so.  I'm going to        03:28

6    ask him to say it again, just so -- so -- so I make sure

7    I'm trying to be responsive because I don't think I am.

8    BY MR. FOGELMAN:

9         Q    Other than obtaining an injunction from a

10   Federal Court in Boston, Massachusetts, what else, if        03:28

11   anything, do you contend that DraftKings has done that in

12   any way impairs FVP or Mr. Hermalyn?

13        MS. CONLEY:  The same objections.

14        MR. ASPERGER:  Yeah, same objection.  It calls for

15   a legal conclusion.                                          03:28

16        THE WITNESS:  So basically you're asking for my

17   personal perspective on what DraftKings has done?  I

18   don't -- I don't know what DraftKings has done.  What I'm

19   -- I keep repeating myself and it's not what you want to

20   hear but I keep repeating myself but that's what I'm here    03:28

21   responding to the fact that Mike Hermalyn can't do his

22   job is what's impacting our business.

23   BY MR. FOGELMAN:

24        Q    Okay.  I'm not asking just in your personal

25   capacity.  You're here as a -- you're here as a witness      03:29

Page 25

```
 1   designated by the company?                          03:29

 2        A    Understood.

 3        Q    Right?

 4        A    Understood.

 5        Q    I'm asking you as the witness designated by   03:29

 6   the company what else, if anything, besides obtaining a

 7   federal -- a Federal Court object -- injunction, do you

 8   contend DraftKings has done that in any way impairs FVP

 9   or Mr. Hermalyn?

10        MR. ASPERGER:  Same objections.                 03:29

11        MS. CONLEY:  Same objections.

12        THE WITNESS:  Saying it louder doesn't change my

13   understanding.

14        MS. CONLEY:  Let's not harass the witness, please.

15   BY MR. FOGELMAN:                                     03:29

16        Q    You may answer.

17        A    Asked and answered.  I -- I -- I've repeated

18   it -- I've repeated it five -- five -- yeah, five times.

19   I'm telling you what -- okay.

20        MS. CONLEY:  Do you need to take a break?        03:29

21        MR. ASPERGER:  Yeah, let's not go in circles on

22   this.

23        MR. FOGELMAN:  Okay.  You guys --

24        MR. ASPERGER:  He's asked and answered your

25   question.                                            03:29
```

                                                      Page 26

1    MR. FOGELMAN:  -- you probably should address a    03:29

2    little professional conduct because right now telling me

3    to take a break is outside the scope of a form objection

4    and that's all you're limited to.

5        Q    Sir --    03:29

6        MS. CONLEY:  There's no need to be disrespectful.

7        MR. FOGELMAN:  And there's no need to argue or take

8    time off the record from my questioning.  That's rude and

9    unprofessional.

10       Q    Sir, I'm asking you to list if you can --    03:29

11       MR. ASPERGER:  Jim, Jim, hold -- hold on.  No,

12   we're not going to go down -- down that road of you

13   accusing my co-counsel of being rude and unprofessional.

14   She's not.  She's interposing legitimate objections as am

15   I.    03:30

16       MR. FOGELMAN:  I don't want a debate, counsel.

17   We've tried to limit this deposition to waive time.  So

18   you speechifying about you're not being unprofessional by

19   asking to take a break, we're going to disagree on that.

20   Let's just disagree.    03:30

21       Q    Sir, let me go back to my questions.  Take

22   injunction by Federal Court off the table.  Just list

23   them out, whatever they are.  What other actions do you

24   contend DraftKings has taken, besides that injunction?

25   Just list them out one through whatever other than the    03:30

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1    injunction that you believe has impaired FVP or          03:30

 2    Mr. Hermalyn in any way?

 3         MR. ASPERGER:  Objection.  It's beyond the scope.

 4    To get into what's done -- been done to cause the harm is

 5    not the scope of the deposition.  The harm is the scope   03:30

 6    of the deposition.  He doesn't know everything that

 7    DraftKings has done as he has said, Jim.

 8         MR. FOGELMAN:  You're -- you're not allowed to give

 9    speeches about what the witness knows and doesn't know.

10    The witness can tell me what he knows.                    03:30

11         Q    Put the injunction aside.  Besides the

12    injunction, can you list out for me, one through

13    whatever, any other action you claim DraftKings has taken

14    that in any way impairs FVP or Mr. Hermalyn?

15         MS. CONLEY:  Objection.                              03:31

16         MR. ASPERGER:  Objection.  Beyond his knowledge and

17    beyond the scope.

18         MS. CONLEY:  Objection.  Argumentative.  Compound.

19    Asked and answered.

20         THE WITNESS:  So you're clearly -- clearly looking   03:31

21    for a list and the list of the one item that I'm talking

22    about is what's at hand.

23    BY MR. FOGELMAN:

24         Q    The injunction?

25         A    The injunction.                                 03:31
```

Page 28

```
 1          Q    Okay.  So the only thing you're aware of that    03:31

 2     DraftKings has done -- to date that you're aware of is to

 3     obtain a Federal Court injunction, correct?

 4          MR. ASPERGER:  Objection.  Beyond the scope.  Calls

 5     for speculation and asked and answered.                     03:31

 6     BY MR. FOGELMAN:

 7          Q    You may answer the question.

 8          MS. CONLEY:  Objection.

 9          THE WITNESS:  And the answer is I don't know.

10          MS. CONLEY:  Hold on.  Objection.  Calls for a         03:31

11     legal opinion, legal conclusion.

12     BY MR. FOGELMAN:

13          Q    Okay.  You're not aware of anything else

14     besides the injunction as you sit here today, correct?

15          A    As I sit here today, I'm not going to repeat      03:31

16     the -- the same sentence again and -- and --

17          MR. ASPERGER:  And I'd just interpose the same

18     objections.

19          THE WITNESS:  So the -- the list of one through

20     whatever that you're looking for, I'll keep going to        03:32

21     the -- to the first one and so that's --

22     BY MR. FOGELMAN:

23          Q    The injunction?

24          A    -- the injunction.  That's what I have.

25          Q    Okay.                                             03:32
```

Page 29

```
1          A    That's what I have.                        03:32

2          MR. FOGELMAN:  I'm going to mark this as Exhibit 1.

3    It's a swipe record, card swipe record.  We don't have a

4    court reporter in the room so just going to put number 1

5    on it, Counsel, if that's okay in the bottom right hand    03:32

6    corner.  I'm going to hand that to the witness of that

7    exhibit.  I've got some copies for counsel.

8                (Whereupon Defendant's Exhibit 1 was

9                 marked for identification by the Court

10                Reporter.)                                03:32

11         THE WITNESS:  What is this?

12   BY MR. FOGELMAN:

13         Q    I'm going to ask you questions about it in a

14   second.

15              Have you seen Exhibit 1 before today?       03:32

16         A    I have not.

17         Q    Okay.  Exhibit 1 appears to be a swipe card

18   record from the Los Angeles office of Fanatics on

19   Wilshire Boulevard --

20         MR. ASPERGER:  So let me --                      03:32

21   BY MR. FOGELMAN:

22         Q    -- have you seen a form like Exhibit 1 before

23   today?

24         MR. ASPERGER:  Yeah.  So let me interpose an

25   objection first.  This is beyond the scope and beyond the    03:32
```

Page 30

```
 1    -- the -- the subject matter for which he's testifying.      03:32

 2    We produced this because it was responsive to other

 3    requests that you made but it's beyond his knowledge and

 4    beyond the scope.

 5         MR. FOGELMAN:  I don't believe it's beyond scope in     03:32

 6    any way.  It goes to the claim of irreparable harm and

 7    the injunction you're seeking.  As far as his knowledge,

 8    I have to ask the witness the questions.  I can't take

 9    your representations.

10    BY MR. FOGELMAN:                                              03:33

11         Q    Have you seen a form like Exhibit 1 before

12    today?

13         A    I have not seen this form or -- or -- or a

14    version of this, no.

15         Q    Okay.  Well, this was produced by counsel for      03:33

16    FVP and on its face, it appears to be a swipe card record

17    of the times that Mr. Hermalyn has swiped his building

18    pass at the Fanatics offices in Los Angeles.  And you can

19    see that from the period of December -- February 1st of

20    2024 until today which is May -- what is it today, 22nd?     03:33

21         A    Twenty-second.

22         Q    May 22nd --

23         A    Twenty-second.

24         Q    -- 2024, so about 121 days.  It looks to me

25    that Mr. Hermalyn has been in the Los Angeles office of      03:33
```

Page 31

```
 1    FVP or of Fanatics depending on what is there about 11          03:33
 2    days out of 121.  Is that consistent with your
 3    understanding of the number of times Mr. Hermalyn has
 4    been in the Los Angeles office of Fanatics?
 5          MR. ASPERGER:  Objection.  Beyond the scope.             03:34
 6    Beyond his knowledge.  Calls for speculation.  He's never
 7    seen this before.  He can't answer.
 8          MS. CONLEY:  Objection.  Compound.
 9          THE WITNESS:  Yeah.
10          MS. CONLEY:  And so this document speaks for             03:34
11    itself.  It's the best evidence.
12          THE WITNESS:  And I don't keep track of individual
13    employee's days in the office.  We have 22,000 employees
14    and I -- I'm based in New York and he's based here in --
15    in LA.                                                         03:34
16    BY MR. FOGELMAN:
17          Q    But -- but I think you said that Mr. Hermalyn
18    is literally the only employee of FVP.  Is that still
19    true?
20          A    But there are 80 employees in the LA office.       03:34
21          Q    Of what, the LA office of what?
22          A    So there's -- we have other businesses.  Our
23    collectables business is here in Los Angeles.  The CEO of
24    the collectables business is in the -- is in the building
25    and there are employees of collectables.  Mike Hermalyn       03:34
```

Page 32

| | |
|---|---|
| 1 | is the -- is the only -- the first employee of VIP which | 03:34 |
| 2 | was going to be based in that building of which we were |
| 3 | expanding. |
| 4 |     Q    Just -- just back up for a second. |
| 5 | Mr. Hermalyn is the only employee who's ever worked for | 03:35 |
| 6 | FVP, correct? |
| 7 |     MS. CONLEY:  Objection. |
| 8 |     MR. ASPERGER:  Objection to the -- Objection. |
| 9 | Asked and answered. |
| 10 |     THE WITNESS:  He's -- | 03:35 |
| 11 |     MR. ASPERGER:  Mischaracterizes his testimony. |
| 12 | BY MR. FOGELMAN: |
| 13 |     Q    You may answer the question. |
| 14 |     A    He was the first hire for -- for Fanatics -- |
| 15 | Fanatics VIP. | 03:35 |
| 16 |     Q    And to this day, he remains the only employee |
| 17 | of Fanatics VIP? |
| 18 |     A    Yes. |
| 19 |     Q    Or -- or FVP? |
| 20 |     A    Yes. | 03:35 |
| 21 |     Q    Right? |
| 22 |     A    Yes. |
| 23 |     Q    Does FVP have any office space of its own? |
| 24 |     A    So at -- just to -- to give context.  So this |
| 25 | office is -- was initially a collectables office, | 03:35 |

Page 33

```
 1    primarily a collectables office and so when we were --        03:35

 2    when we hired Mike, we were incubating VIP in this office

 3    and we're making expansion plans so we've just taken

 4    over -- I think we're on the 11th floor.  We've taken

 5    over the fourth floor.  We've taken over the 23rd floor     03:35

 6    and we're having conversations about other space to

 7    accommodate the expansion.

 8         Q    I'm just asking whether FVP has office space

 9    of its own?

10         A    I just said yes.                                  03:36

11         MS. CONLEY:  Objection.

12         MR. ASPERGER:  Objection.

13         MR. FOGELMAN:  Okay.

14         MR. ASPERGER:  Argumentative.

15         MR. FOGELMAN:  Just to clarify --                      03:36

16         MR. ASPERGER:  He's answered these questions and

17    this beyond the scope of irreparable harm --

18         MR. FOGELMAN:  Just to clarify --

19         MR. ASPERGER:  -- that he's designated for.

20    BY MR. FOGELMAN:                                            03:36

21         Q    Just to clarify, is there any office space of

22    FVP that is different from the office space used by any

23    other Fanatics employees of any other Fanatics entity in

24    Los Angeles?

25         MR. ASPERGER:  Objection.                              03:36
```

Page 34

```
 1          MS. CONLEY:  Objection.  Vague.  Argumentative.        03:36

 2          THE WITNESS:  Yeah, I'll ask you to repeat that

 3     question.

 4     BY MR. FOGELMAN:

 5          Q    Okay.  Is there any designated office space       03:36

 6     in the Los Angeles office of Fanatics that is dedicated

 7     exclusively for FVP?

 8          MS. CONLEY:  Objection.  Calls for speculation.

 9     Vague.

10          THE WITNESS:  So the answer to your question is        03:36

11     that's not how -- to give context -- so I'm trying to

12     answer your questions.  And general -- generally

13     speaking, you know, our businesses interact and so the

14     answer -- you know, there's no VIP only office.  There's

15     Fanatics office in which we house the different entities     03:36

16     that come under Fanatics.

17     BY MR. FOGELMAN:

18          Q    Okay.  But to be clear, there's no office

19     space that is just for FVP, correct?

20          MS. CONLEY:  Objection.                                03:37

21          MR. ASPERGER:  Objection.  He just answered your

22     question.

23          MS. CONLEY:  Outside the scope that was agreed upon

24     for this deposition.

25          ///                                                    03:37
```

Page 35

```
 1   BY MR. FOGELMAN:                                          03:37

 2        Q    Sir, is it true there's no office space just

 3   for FVP?

 4        MR. ASPERGER:  Objection.  Asked and answered and

 5   mischaracterizes his testimony.                           03:37

 6   BY MR. FOGELMAN:

 7        Q    You may answer the question,sir.

 8        A    So there is no office space that is just for

 9   VIP for this business as -- or any of our businesses.  We

10   have Fanatics office space that houses all of our          03:37

11   different entities.

12        Q    Now FVP doesn't have a website, right?

13        MS. CONLEY:  Objection.  Outside the scope of this

14   irreparable harm deposition.

15   BY MR. FOGELMAN:                                          03:37

16        Q    Does FVP have a website, sir?

17        A    I don't know the answer to that question.

18        Q    Does FVP have a -- a lease?

19        MS. CONLEY:  Objection.

20        MR. ASPERGER:  Objection.                            03:37

21        MS. CONLEY:  Outside the scope of this deposition.

22   Also calls for speculation and is assuming facts not in

23   evidence.

24        MR. ASPERGER:  Yeah.  And at this point, I'm going

25   to instruct him not to answer.  It's clearly beyond the   03:37
```

Page 36

```
 1   scope of irreparable harm.                              03:38

 2        MR. FOGELMAN:  All right.  Just so it's clear,

 3   under California law to instruct a witness on that ground

 4   other than privilege is sanctionable but I'm not going to

 5   argue with you.  You're going to get what you're going to  03:38

 6   get.

 7        MR. ASPERGER:  No, that's not true in this case.

 8   We stipulated that this was a limited purpose deposition

 9   so that normal rule doesn't apply.

10        MR. FOGELMAN:  That's incorrect.                   03:38

11        MR. ASPERGER:  And that was the terms of the

12   stipulation entered.

13        MR. FOGELMAN:  That is incorrect.

14        MR. ASPERGER:  That was what we agreed to, Jim.

15        MR. FOGELMAN:  If you look at the e-mails, you will  03:38

16   see we never agreed that you can instruct him on grounds

17   other than privilege.  I'm not going to argue with you

18   because you're taking my time.

19        Q    Is there a separate lease --

20        MR. ASPERGER:  Jim, wait a minute.  We -- were very  03:38

21   clear we were only putting him up as the person most

22   knowledgable on irreparable harm.

23        MR. FOGELMAN:  That's --

24        MR. ASPERGER:  That's the limitation of the

25   deposition.                                             03:38
```

1          MR. FOGELMAN:  That's all we're asking questions          03:38

2      about.  You may disagree with the scope, but that doesn't

3      give you a license to instruct him on the question.

4          Q    Sir, is FVP is there -- is FVP a party to a

5      lease?  Yes or no?                                            03:38

6          A    I don't know the answer to that.  You have to

7      talk to somebody in our real estate department.

8          Q    If I search the website at Fanatics, I'm not

9      going to find any reference to FVP anywhere on the

10     Fanatics website, right?                                      03:38

11         MR. ASPERGER:  Objection.

12         MS. CONLEY:  Objection.  Outside the scope of this

13     deposition.  Vague.  Argumentative.

14         THE WITNESS:  So here's how I would answer your

15     question.  You don't like all my context but I -- I keep      03:39

16     having to give it to you because I think it's important.

17     So VIP business was -- it was structured as an intent to

18     enable our other businesses.  As I mentioned, it only

19     touches 1 percent of our customer base.  And so the other

20     99 percent touch our other core businesses.  So it's not      03:39

21     something that we advertise.  It's something that we have

22     in place to -- it's a relationship business to have

23     connection with those VIP's and so it's not something

24     that you advertise in the way you're suggesting.

25       ///                                                         03:39

                                                          Page 38

```
 1   BY MR. FOGELMAN:                                   03:39

 2        Q    Okay.  But just to be clear whether you think

 3   it's good advertising or bad advertising, the word "FVP"

 4   isn't mentioned anywhere?

 5        A    FVP is not, no.  You keep using FVP.  I -- I   03:39

 6   -- we call it Fanatics VIP so the answer to your question

 7   is no.

 8        Q    No, it's not --

 9        A    FVP is -- is not on a website or any of those

10   places.                                            03:39

11        Q    Okay.  Does FVP have a board?

12        MS. CONLEY:  Objection.  Outside the scope of this

13   deposition.  Calls for speculation.  Vague.

14        MR. ASPERGER:  Yeah, and I'm going to instruct him

15   not to answer.  We're going beyond the scope.     03:40

16        MR. FOGELMAN:  You're going to instruct him whether

17   FVP has a board, sir?  Whether it has a board?

18        MR. ASPERGER:  It doesn't have anything to do with

19   irreparable harm.

20   BY MR. FOGELMAN:                                   03:40

21        Q    That -- FVP is a plaintiff in this case.  You

22   understand at that, right?  Yes?

23        A    Yes.

24        Q    Okay.  Does FVP, the plaintiff in this case,

25   have a board?                                      03:40
```

Page 39

```
 1          MR. ASPERGER:  Do you know the answer?              03:40

 2          THE WITNESS:  I -- I'd be speculating.

 3          MS. CONLEY:  Same objections.

 4          THE WITNESS:  I'd be speculating.  I -- I think my

 5      speculation would be pretty accurate but I'd be          03:40

 6      speculating.

 7          MR. ASPERGER:  We don't want you to speculate.

 8      BY MR. FOGELMAN:

 9          Q    The answer is you don't know if it has a

10      board, right?                                            03:40

11          A    I don't know if it has a board.

12          Q    Okay.  On the website, Mr. Hermalyn is still

13      listed as the head of the LA office.  Do you know that?

14          A    Yes.

15          Q    What does that mean?  What's the head of the    03:40

16      LA office?

17          A    So as I said, we have 80 employees in the --

18      in the LA office and so similar to a -- you know,

19      administrative duties, leadership as the office grows,

20      being sort of the single point of contact or leadership  03:40

21      around -- talent people culture is something that is --

22      is -- is important at Fanatics and so you need a point

23      person to short of be the steward and shepherd around

24      those types of events and decisions around the type of

25      culture that you want in the LA office.  And so those are 03:41
```

Page 40

```
 1   some of the things that we've asked him to lead on our        03:41

 2   behalf.

 3        Q    Well, you would agree that he doesn't have to

 4   be in the Los Angeles office to do what you just

 5   described, isn't that right, sir?                             03:41

 6        MS. CONLEY:  Objection.

 7        MR. ASPERGER:  Objection.

 8        MS. CONLEY:  Go ahead.

 9        MR. ASPERGER:  Yeah, it calls for speculation.

10        MS. CONLEY:  And objection.  Vague.  Argumentative.      03:41

11   Assumes facts not in evidence and outside the scope of

12   this deposition.

13        THE WITNESS:  In -- in my opinion, to do the best

14   job at that, it's best served when you're live in the

15   office.                                                       03:41

16   BY MR. FOGELMAN:

17        Q    Well, I'm looking at this swipe card form

18   that was produced by FVP's counsel and it says that of

19   121 days during the period of February 1st to March 22nd,

20   2024, he's been in the office a grand total of 11 times       03:41

21   and those 11 times were all within a 30-day period of

22   February 13th to March 13th.

23        MR. ASPERGER:  Objection.  Calls --

24   BY MR. FOGELMAN:

25        Q    Where has Mr. Hermalyn been for the rest of         03:42
```

Page 41

```
 1    that time?                                              03:42

 2          MR. ASPERGER:  Objection.  Calls for speculation.

 3    Beyond the scope.  You're talking -- you're deposing

 4    Mr. Hermalyn tomorrow.  You can ask him your questions.

 5          MS. CONLEY:  Objection.  The document speaks for    03:42

 6    itself and also, you've misstated the document.  It does

 7    not say that.

 8    BY MR. FOGELMAN:

 9          Q     Where has Mr. Hermalyn been for the other --

10          A     I - I do not --                              03:42

11          Q     -- 111 days.

12          A     I would not know specifically where he had

13    been.  He does not report to me and I don't track his --

14    his day-to-day activities.

15          Q     How much does Mr. Hermalyn work out of the    03:42

16    New York office of the Fanatics?

17          MS. CONLEY:  Objection.  Outside the scope of this

18    deposition.  Argumentative.  Vague.

19          MR. ASPERGER:  And it calls for speculation.

20          THE WITNESS:  And my answer would be similar, I     03:42

21    don't know how many days he's been in -- in the New York

22    office.  I don't track him.

23    BY MR. FOGELMAN:

24          Q     Where's Mr. Hermalyn today?

25          MS. CONLEY:  Objection.  Outside the scope of this  03:42
```

Page 42

```
 1   deposition.  Argumentative.  Vague.  Calls for              03:42
 2   speculation.
 3        THE WITNESS:  Yeah, and I don't know where he is
 4   today.  He doesn't -- he doesn't report to me.
 5   BY MR. FOGELMAN:                                            03:43
 6        Q    Why hasn't Mr. Hermalyn been in the Los
 7   Angeles office since March 13th?
 8        MS. CONLEY:  Objection.  Outside the scope of this
 9   deposition.  Argumentative.  Vague.  Calls for
10   speculation.                                                03:43
11        MR. ASPERGER:  Join.
12        THE WITNESS:  Okay.  So we've intentionally been
13   conservative about his time and his time in the office
14   in -- in response to the injunction.  So like I said,
15   there -- there's the primary role, president of VIP and     03:43
16   then a secondary role is leading the LA office but we
17   don't want to run afoul of the injunction and there are
18   persons that do some VIP type work in that office and so
19   in an effort to not run afoul and have conversations that
20   could be misconstrued, we've been conservative and          03:43
21   encouraged Mike to -- to limit his time in the office.
22   BY MR. FOGELMAN:
23        Q    So the injunction that you claim has caused
24   some kind of harm to FVP was issued on April 30th, right?
25        A    Um-hum.                                           03:43
```

Page 43

```
 1         MR. ASPERGER:  Objection.                    03:44

 2    BY MR. FOGELMAN:

 3         Q    Yes?

 4         MR. ASPERGER:  Objection.  You're going beyond the

 5    scope of his knowledge.                           03:44

 6    BY MR. FOGELMAN:

 7         Q    Just to be clear, when I ask you a question,

 8    I need you to give a yes or no because the court reporter

 9    can't write down --

10         A    Yeah.  Understood.  Understood.  Understood.  03:44

11         MR. ASPERGER:  If you know the answer.  If you

12    don't, you can say --

13         THE WITNESS:  Yeah.  Say -- say your question

14    again, sir.

15    BY MR. FOGELMAN:                                  03:44

16         Q    The injunction that you believe has caused

17    some kind of harm to Fanatics or FVP --

18         A    Um-hum.

19         Q    -- that was issued on April 30th, right?

20         MR. ASPERGER:  Objection.  Mischaracterizes his  03:44

21    prior testimony.

22         THE WITNESS:  But the injunction was issued on

23    April 30th.

24    BY MR. FOGELMAN:

25         Q    Right.  So Mr. Hermalyn had not been in the  03:44
```

Page 44

```
 1    Los Angeles office for over six weeks before that        03:44
 2    injunction was issued.
 3            MR. ASPERGER:  Objection.
 4    BY MR. FOGELMAN:
 5        Q    Where was he during that time?               03:44
 6            MR. ASPERGER:  Objection.  We've been through this.
 7    Calls for speculation.  Beyond the witness' knowledge.
 8            THE WITNESS:  Yeah, I -- I would have no idea.  I
 9    do not track Mr. Hermalyn day-to-day.  He does not report
10    to me, so I do not -- I do not know where -- where he's    03:44
11    been but we --
12            MS. CONLEY:  And I'm going to interpose a late
13    objection.  Just give me a second to sometimes join in.
14    My objection was that it assumes facts that are not in
15    evidence.                                                 03:45
16    BY MR. FOGELMAN:
17        Q    But -- okay.  Sir, was Mr. Hermalyn working
18    at the company between March 13th and April 30th?
19            MR. ASPERGER:  Objection.  Same objections.  Calls
20    for speculation.  It's beyond his knowledge.             03:45
21            MS. CONLEY:  And same objection that it assumes
22    facts that are not in evidence.
23    BY MR. FOGELMAN:
24        Q    Was Mr. Hermalyn working at the company after
25    March 13th, sir?                                          03:45
```

Page 45

1      A    So he was in --                                    03:45

2      MR. ASPERGER:  Same -- same objection as he's

3  answered the question already and your question is

4  misleading.

5      THE WITNESS:  So he was an employee.  I don't know      03:45

6  what he was doing if that's what you're asking specifics

7  in terms of his work activity but he was an employee,

8  he's been an employee.

9  BY MR. FOGELMAN:

10     Q    By the time -- okay.  Strike that.               03:45

11          From the period of February 1st until

12  March 13th at least, Mr. Hermalyn was working at Fanatics

13  and your opinion, not impaired in any way, right?

14     MS. CONLEY:  Objection.

15     MR. ASPERGER:  Objection.                             03:45

16     MS. CONLEY:  Argumentative.  Vague.  Assumes facts

17  not in evidence.  Calls for speculation.

18     THE WITNESS:  He was an employee and he was engaged

19  in working as -- as we liked and then at the time of the

20  injunction is when we shut most of that activity down and  03:46

21  it -- and it shifted.  Where he was day-to-day, I do not

22  track him or manage him.  He does not work for me so I do

23  not know where he's been day-to-day.

24  BY MR. FOGELMAN:

25     Q    But he was working as intended at least until      03:46

Page 46

```
 1    March 13th, right?                                      03:46

 2          MS. CONLEY:  Objection.

 3          MR. ASPERGER:  Objection.  Vague.

 4          MS. CONLEY:  And assumes facts not in evidence.

 5    Argumentative.  Misquotes the evidence and misstates the  03:46

 6    facts.

 7          THE WITNESS:  Yeah, so -- so what I can say is he's

 8    an employee of the company.  Exactly what he's working

 9    on, I can't -- I can't answer that.

10    BY MR. FOGELMAN:                                        03:46

11          Q    Okay.  As you sit here today, you're not

12    aware of any impairment over Mr. Hermalyn's ability to

13    work at the company before the injunction was issued on

14    April 30th, right?

15          MR. ASPERGER:  Objection.  Beyond the witness'     03:46

16    knowledge.  Calls for speculation.

17          MS. CONLEY:  And asks for a legal conclusion.

18    Assumes facts not in evidence.

19          THE WITNESS:  Yeah, so I'll -- I'll end up

20    repeating myself.  He was employed and was engaged in    03:46

21    Fanatics activity.  The specifics on what he was doing

22    and to -- to what -- to what level I do not know.

23    BY MR. FOGELMAN:

24          Q    Did -- what activities was Mr. Hermalyn

25    doing -- regardless of where he was, what activities was  03:47
```

Page 47

1    he doing between let's say March 13th and the issuance of    03:47

2    the injunction six weeks later on April 30th?

3        MR. ASPERGER:  Same objections.  Beyond his

4    knowledge.  Calls for speculation.

5        THE WITNESS:  Yeah, I'm not in a position to tell    03:47

6    you exactly what he was doing and -- at the task level.

7    I don't manage him.

8    BY MR. FOGELMAN:

9        Q    Can you tell me what he has done since

10   April 30th that is different than what he was doing    03:47

11   before April 30th?

12       MR. ASPERGER:  Same objections.

13           But if you know, you can answer.

14       THE WITNESS:  Yeah, I don't -- what I do know is

15   we've limited -- so we've cut him off from -- you know,    03:47

16   we talked about Stewart and other people that were doing

17   VIP and the intention was he was going to come in, be the

18   leader of our VIP business, integrate those people and

19   bring that together to execute the strategy.  We've put

20   that on hold as it relates to -- to Mike.  We've taken    03:48

21   his job, divvied it up amongst several people and so

22   people that already have full-time jobs are now doing

23   pieces of what Mike was intended to do off the side of

24   their desk.  That's -- that's not very efficient and, you

25   know, out -- so the harm is that we would like to have    03:48

```
 1    the person that was intended to be pointed at the VIP      03:48

 2    business be appointed at it --

 3    BY MR. FOGELMAN:

 4         Q     But to --

 5         A     And we're not able to do is that.                03:48

 6         Q     But just to clarify what you just said, the

 7    tasks that you want Mr. Hermalyn to do, you've assigned

 8    to other people at Fanatics to do in the meantime,

 9    including Mr. Huntley, right?

10         MR. ASPERGER:  Objection.  Mischaracterizes his        03:48

11    testimony.

12         MS. CONLEY:  And objection.  Assumes facts not in

13    evidence.  Calls for speculation.  And vague and

14    ambiguous.

15         THE WITNESS:  Yeah, so the way I'd answer your         03:48

16    question is -- is as -- like I said, when he was hired,

17    Mr. Hunt -- Huntley and others that were going to come

18    together underneath Mike Hermalyn, that has not happened.

19    They are all -- the people are distributed and working

20    for other people and so people that have full-time jobs    03:49

21    are also doing a little piece of some of the work that

22    Mike Hermalyn was intended to do.

23    BY MR. FOGELMAN:

24         Q     Okay.

25         A     That's how it's kind of playing out.             03:49
```

Page 49

```
 1        Q    Can you -- can you identify anything that        03:49

 2   Mr. Hermalyn was doing before April 30th that hasn't yet

 3   been assigned to someone else in the meantime?

 4        MR. ASPERGER:  Objection.  Vague.

 5        MS. CONLEY:  Objection.  Assumes facts not in         03:49

 6   evidence.  Calls for speculation.  You've already asked

 7   this witness and he said he didn't know what he does.

 8        THE WITNESS:  Yeah, I'll make the same statement.

 9   I'm not -- I'm not --

10   BY MR. FOGELMAN:                                           03:49

11        Q    I've just gotta make a point before you make

12   a statement.

13        A    Okay.

14        MR. FOGELMAN:  You cannot testify for the witness,

15   counsel.  You cannot start telling the witness what you    03:49

16   think he's testified to.  That is outrageous.

17        Q    Do you remember the question, sir?

18        MR. ASPERGER:  Okay.  Just to correct the record

19   that's not what she's done.  Under California law, she

20   can state the grounds for her objection and that's        03:49

21   exactly what she's doing.

22        MR. FOGELMAN:  Counsel, you are going to have to

23   explain to the Court what she did.  Okay.  That's coming

24   before the Court.  If you think that was acceptable, you

25   can explain that to the Court.                             03:50
```

Page 50

1        Q    Sir, I just want you to answer my questions.          03:50

2   I know that's difficult when people are objecting but

3   unless you're instructed not to answer a question, the

4   objection is just for the Court for a later date.  It

5   doesn't impact your ability to answer.          03:50

6              As long as you heard the question and

7   understood it, go ahead and answer the question, okay?

8   Okay.

9              Let me ask my question.  Is there any task

10  you can identify today that you would hope Mr. Hermalyn          03:50

11  would do which hasn't been assigned to someone else in

12  the meantime?

13        MS. CONLEY:  Objection.

14        MR. ASPERGER:  Object.  Go ahead.

15        MS. CONLEY:  Objection.  Ambiguous.  Argumentative.          03:50

16  Assumes facts not in evidence.  Calls for speculation.

17  Asked and answered.

18        THE WITNESS:  So the answer's I -- I don't know the

19  answer to that question.  I'm not managing him.  He does

20  not report to me and so I'm -- I'm not engaged with him          03:50

21  at the task level to be able to I think answer the

22  question in the granularity that you're looking for.

23  BY MR. FOGELMAN:

24        Q    Okay.  Earlier, you said that Mr. Hermalyn

25  along with Mr. Rubin and one other person --          03:50

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1        A     Tucker Kain.                                    03:50

 2        Q     -- were talking -- Tucker Kain, were talking

 3   about what tasks Mr. Hermalyn should continue to engage

 4   in, in light of the injunction.

 5             Do you recall that testimony?                    03:51

 6        A     Yes.

 7        MS. CONLEY:  Objection.  I believe that

 8   mischaracterizes his testimony but if it's accurate, you

 9   can say so.  If not, put it in your own words.

10        THE WITNESS:  Yeah, I mean, so just to repeat to      03:51

11   make sure we're clear.  So Mike Rubin and Mike

12   Hermalyn -- Michael Rubin, Michael Hermalyn, Tucker Kain

13   as -- post injunction have had conversations about things

14   that Mike could do, how do we kind of leverage his

15   experience background without running afoul of the         03:51

16   injunction.  So they've had those conversations.

17   BY MR. FOGELMAN:

18        Q     There's a belief that it could be done, they

19   just haven't figured it out; is that correct, sir?

20        MR. ASPERGER:  Objection.  Calls for speculation.     03:51

21   Mischaracterizes his testimony.

22        THE WITNESS:  So the reason they're having the

23   conversations is because they're hopeful that they can

24   find something for him -- for him to do.

25    ///                                                       03:51
```

```
 1    BY MR. FOGELMAN:                                        03:51

 2         Q    Okay.  And other than having those

 3    discussions with Mr. Rubin and Mr. Kain about what he

 4    should do in the future in light of the injunction, what

 5    else is Mr. Hermalyn currently doing at the company?     03:51

 6         A    So --

 7         MR. ASPERGER:  Objection.  Calls for speculation.

 8              But to the extent you know, you can answer.

 9         THE WITNESS:  Yeah, I don't -- I don't know.

10    He's -- so I'd be speculating.  I don't know day-to-day  03:52

11    the things that he's doing.

12    BY MR. FOGELMAN:

13         Q    Okay.  So you're not aware of what he's doing

14    or what he's not doing currently, correct?

15         A    Right.                                         03:52

16         MR. ASPERGER:  Well, he -- he answered a lot of the

17    things he's not doing.

18         MR. FOGELMAN:  Counsel, you've gotta --

19         MR. ASPERGER:  So it mischaracterizes his

20    testimony.                                               03:52

21         MR. FOGELMAN:  -- you gotta stop testifying for the

22    witness.

23         MR. ASPERGER:  I'm not.

24         MR. FOGELMAN:  The witness can testify for himself.

25         MR. ASPERGER:  When you --                          03:52
```

Page 53

```
 1          MR. FOGELMAN:  It's quite insulting.              03:52

 2          MR. ASPERGER:  When -- when you mischaracterize his

 3     testimony in what -- what he's clearly said, I'm going to

 4     correct the witness.

 5          MR. FOGELMAN:  You cannot -- okay.  We're going to   03:52

 6     bring this to the Court's attention.  If you think

 7     correcting the record by putting your own testimony is

 8     acceptable, clearly we disagree on that.  We're going to

 9     have to agree to disagree til the Court decides that.

10     Let me go back to the question.                        03:52

11          MR. ASPERGER:  Wait.  I -- I'm not putting my own

12     testimony in.  I'm raising my objections and that's all I

13     intend to do.

14          MR. FOGELMAN:  That's not what you just did.

15          Q    Okay.  Let's go back to my questions.  What   03:52

16     is Mr. Hermalyn's salary currently?

17          MR. ASPERGER:  Objection.

18          MS. CONLEY:  Objection.  Outside the scope of this

19     deposition.  Assumes facts not in evidence.  Calls for

20     speculation.                                           03:52

21          THE WITNESS:  Yeah, and I -- I don't know his

22     salary off the top of my head.

23     BY MR. FOGELMAN:

24          Q    Is it true Mr. Hermalyn is still receiving

25     his salary?                                            03:53
```

Page 54

1          A     Yes, it's true he's still -- he's still on          03:53

2     payroll.

3          Q     And -- and he hasn't been demoted in any way,

4     correct?

5          MS. CONLEY:  Same objections.          03:53

6     BY MR. FOGELMAN:

7          Q     Like no title change has happened, correct?

8          MS. CONLEY:  Same objections.

9          THE WITNESS:  Yeah, he's -- he has not been

10    formally demoted or his title has not been changed.  He's          03:53

11    just not executing the duties that he was hired to do.

12    BY MR. FOGELMAN:

13         Q     He still has access to e-mail, right?

14         A     He does have access to e-mail.

15         Q     Are -- are you paying for his cell phone?          03:53

16         MS. CONLEY:  Objection.

17    BY MR. FOGELMAN:

18         Q     Not you personally, sir.  I -- I meant the

19    company.

20         MS. CONLEY:  Objection.  It's outside the scope of          03:53

21    this deposition.

22         THE WITNESS:  I honestly -- he -- he's on the same

23    program as any other employee as it relates to his e-mail

24    and -- and cell phone and things like that.  I don't know

25    what plan he's under or how much is being paid and that          03:53

Page 55

```
 1    sort of thing --                                        03:53

 2         Q    Okay.

 3         A    -- so yeah.

 4         Q    But he has access to the same cell phone he

 5    uses for work currently that he had before this         03:53

 6    injunction was issued on April 30th there, right?

 7         A    Yes.

 8         MR. ASPERGER:  Objection.  Beyond the scope.

 9    BY MR. FOGELMAN:

10         Q    And have -- have you communicated with        03:54

11    Mr. Hermalyn in the last six weeks?

12         A    Yes.

13         Q    Okay.  And just describe generally your

14    communications with him.

15         A    My communications -- look, I'm sorry.  I'm    03:54

16    sorry.  I'm sorry.

17         MS. CONLEY:  I know I don't have a mike --

18         THE WITNESS:  I'm sorry.

19         MS. CONLEY:  But I'll try to speak up.  Objection.

20    Vague.  Calls for a narrative.  Calls for speculation.  03:54

21         THE WITNESS:  Yeah, my communications with Mike

22    have just been more self-care, just checking on him.

23    "How are you doing?  I know you were excited to be part

24    of Fanatics and I know you want to do the things you were

25    hired here to do."  And you know, he's not able to do    03:54
```

Page 56

```
 1   that now so most of my conversations have just been        03:54

 2   support and social.

 3   BY MR. FOGELMAN:

 4        Q    Okay.  You've talked about what sounded like

 5   a business plan for FVP.  Is there an actual business       03:54

 6   plan for FVP like a written plan?

 7        MS. CONLEY:  Objection.  Beyond the scope of this

 8   irreparable harm deposition.  Misquotes the witness.

 9   Calls for speculation.  Vague.

10        THE WITNESS:  So there is a plan and kind of a map     03:55

11   for what they -- the company would like to do.  When you

12   say written, I'm not exactly sure what you mean but yeah,

13   Michael Rubin has a strategy.  Tucker Kain has a strategy

14   for what our ambitions were around VIP and that's some of

15   the work that actually, you know, Mike Hermalyn was going   03:55

16   to do.  Come in, be point person, bring the team together

17   and then map out how do you grow our VIP business and

18   attract, you know, that top 1 percent.

19   BY MR. FOGELMAN:

20        Q    Okay.  And when I say writing, I mean it          03:55

21   could be an e-mail.  It could be a memo.  It could be a

22   Powerpoint.  Anything at all.  You've seen some kind of a

23   plan of some sort with regard to the FVP business,

24   correct?

25        MR. ASPERGER:  Objection.  Vague.                      03:55
```

Page 57

```
 1              Do you understand the question?              03:55

 2         THE WITNESS:  I do understand the question and

 3    there -- there --

 4         MS. CONLEY:  I'm going to interpose the same

 5    objections I made before.                              03:55

 6         THE WITNESS:  Okay.  So yeah.  There are elements

 7    of a plan or strategy for what VIP should -- should be.

 8    BY MR. FOGELMAN:

 9         Q    Okay.  And you've seen those, what, over

10    e-mail?  In person?  Where have you seen those plans?   03:55

11         A    I want to make sure I'm accurate as I explain

12    this.  So it'd be -- most of this is conversations that

13    I've sat in.  So I'm on the executive team and so -- and

14    they're conversations about VIP and our ambition and how

15    do we go after the top customer.  So it's mainly in     03:56

16    that -- in that vein.  There is a deck that -- I just

17    don't know who did it.

18         Q    When you say deck, you mean Powerpoint deck?

19         MS. CONLEY:  Same objections.

20         THE WITNESS:  Yeah, just a couple -- couple slides  03:56

21    but I don't know who did it.

22    BY MR. FOGELMAN:

23         Q    Okay.  Has there been any amendment to that

24    business plan Powerpoint deck since the injunction was

25    issued on April 30th?                                   03:56
```

Page 58

```
1          MR. ASPERGER:  Objection.  He's already described      03:56
2     the changes.
3          MS. CONLEY:  Objection.  Beyond the scope of
4     irreparable harm deposition.  Calls for speculation.
5     Vague.                                                      03:56
6          THE WITNESS:  Yeah, so I have not seen any updated
7     deck.  What I have described as the updated strategy
8     or -- or lack thereof because we've put everything on
9     hold and the people that were supposed to come together
10    to form the VIP business have not been allowed to do that  03:57
11    and all the subsequent work that would go with that has
12    not been enabled to happen.
13    BY MR. FOGELMAN:
14         Q     Okay.  But you, yourself, have not been
15    involved in even discussing any potential changes to the   03:57
16    business plan in light of the injunction, correct?
17         MR. ASPERGER:  Objection.  Vague.  Mischaracterizes
18    his testimony.
19         THE WITNESS:  Yeah, so the way I would describe
20    what I just said is -- is a change in the strategy, not    03:57
21    being able to identify the leader, bring people together
22    and put a plan in place before football season.
23    September 1 is -- is -- is when football season starts
24    and that's when the majority of activation in this
25    business takes place and so that's why the timing is so    03:57
```

Page 59

| | | |
|---|---|---|
| 1 | important.  Football's September 1.  Basketball starts in | 03:57 |
| 2 | October.  I want to get this statistic right but I think | |
| 3 | 60 percent of the online sports betting conversion | |
| 4 | happens during that time of year and so that's why the | |
| 5 | timing is so important and that's where the -- the harm | 03:58 |
| 6 | comes into play.  We're not able to go and position | |
| 7 | ourselves to enable that and so the current incumbents | |
| 8 | who have 80 percent of the market, DraftKing and FanDuel, | |
| 9 | it's more time for them to get more entrenched, so that's | |
| 10 | the -- that's the pain. | 03:58 |
| 11 | BY MR. FOGELMAN: | |
| 12 | Q    Okay.  Just let me go back to my question. | |
| 13 | Have you personally been involved in discussions where | |
| 14 | someone has said "let's alter the business plan" or words | |
| 15 | to that effect? | 03:58 |
| 16 | MR. ASPERGER:  Objection.  Vague and | |
| 17 | mischaracterizes his testimony. | |
| 18 | MS. CONLEY:  And asked and answered. | |
| 19 | THE WITNESS:  Yeah, so I -- I think that's what I | |
| 20 | just said is that when the injunction happened and we | 03:58 |
| 21 | could not identify our leader and then put the plans in | |
| 22 | place as it relates to the employees across the company | |
| 23 | we're going to fold under VIP and the subsequent work | |
| 24 | that was going to take place was all put to a halt, I | |
| 25 | would refer to that as a shift in the plan, a shift in | 03:58 |

Page 60

```
 1   the strategy.                                          03:58

 2   BY MR. FOGELMAN:

 3        Q     Now the injunction that was issued by the

 4   Federal Court on April 30th, that expires in February of

 5   2025, right?                                           03:59

 6        A     That's my --

 7        MS. CONLEY:  Objection.  Asks for a legal

 8   conclusion.

 9        THE WITNESS:  That's my understanding but I'm --

10   I'm not an expert.                                     03:59

11   BY MR. FOGELMAN:

12        Q     Okay.  Have you identified -- strike that.

13              Can you identify anything that -- that's

14   specific that you believe will not be accomplished if

15   Mr. Hermalyn does not fully and unencumbered by a federal  03:59

16   injunction work at Fanatics before February of 2025?

17        MR. ASPERGER:  Objection.  Asked and answered and

18   mischaracterizes his prior testimony.

19        MS. CONLEY:  And vague.

20        THE WITNESS:  Yeah, so I'm not an expert in VIP.  03:59

21   That's why we hired -- hired Mike and so my job is to

22   help identify talent that we feel is superior that will

23   allow us to achieve our strategy and so the belief is

24   that Mike was that person and that him being sort of set

25   loose to go do what he does, he would put the things in 04:00
```

Page 61

```
 1   place to allow our VIP business to have its impact, you       04:00
 2   know, starting -- you know, by September 1 and moving
 3   into the fall.  But the specifics of what he was going to
 4   do, he -- you'd have to ask him -- I don't -- I don't --
 5   I don't manage him.                                           04:00
 6   BY MR. FOGELMAN:
 7        Q    Okay.  Are you aware of any tasks that you
 8   believe won't be accomplished by the others who have
 9   taken over his responsibility in the interim like
10   Mr. Huntley?  Any task that you don't think they can          04:00
11   accomplish?
12        MS. CONLEY:  Objection.  Compound and vague.
13        THE WITNESS:  Yeah, so here's my -- my -- my
14   opinion or perspective and this is -- I'll -- I'll answer
15   the question from my perspective as a HR and a OD            04:00
16   professional.  So if you have a job and you have the
17   point person that's a leader and -- and they are intended
18   to then identify the resources, put the strategy in place
19   and the tasks that would then organize that group to --
20   to drive towards an outcome, that is weakened when that      04:01
21   distribution of tasks is spread across four or five
22   different people.  That's what's happening.
23           So you mentioned Mr. Huntley and there's
24   other people that are dispersed across betting and
25   gaming, corporate and other entities that are not coming     04:01
```

Page 62

```
 1    together under one strategy to work in a unified way.        04:01

 2    That is the harm that's being caused.

 3    BY MR. FOGELMAN:

 4         Q    But putting aside efficiency.  I'm just

 5    looking at an actual specific task that you can identify     04:01

 6    --

 7         A    That is a specific task.

 8         Q    Well, let me ask my question.  Is there a

 9    specific task that you can identify that isn't

10    accomplishable by people that are currently working at       04:01

11    Fanatics?

12         MR. ASPERGER:  Objection.  Asked and answered.

13    Vague.

14         THE WITNESS:  So the way I would answer your

15    question this is a -- from an OD professional, if you        04:01

16    don't have teams of people organizing and unified,

17    working together with clear strategy, then that is

18    inefficient and that does not -- that does not work

19    well -- as well.  It is -- we are weakened by having

20    those people and resources distributed across multiple       04:02

21    people that already have full-time jobs.  So that's --

22    that's the point I'm trying to make.  I -- I feel like

23    I'm --

24    BY MR. FOGELMAN:

25         Q    I don't want to argue with you.  I heard           04:02
```

Page 63

```
 1    about efficiency.  I'm just looking for a specific task.    04:02

 2    Is there a specific task, something that is identifiable

 3    that you can say is not capable of being done by the

 4    other people like Mr. Huntley who are currently doing the

 5    work that Mr. Hermalyn is not doing?                        04:02

 6          MR. ASPERGER:  Same objections.  Asked and

 7    answered.  Vague.  Mischaracterizes his testimony.

 8          THE WITNESS:  Yes.

 9          MS. CONLEY:  Calls for a narrative.  Assumes facts

10    in evidence.  Vague and ambiguous.                         04:02

11          THE WITNESS:  I guess my -- if my version of answer

12    is not satisfactory, then I'm -- I'm probably not

13    equipped to answer to the level of detail that you're

14    looking for.

15    BY MR. FOGELMAN:                                           04:02

16          Q    Well, let me ask you this, all the other

17    people like Mr. Huntley who are doing tasks that

18    Mr. Hermalyn previously was doing, to the extent that

19    there are any such tasks, they all work for Fanatics,

20    Inc. or Fanatics Holding, right?                           04:03

21          A    That is -- that is correct.

22          Q    So all the work that was being done by

23    Mr. Hermalyn is either being done by Mr. Hermalyn or by

24    people who currently work at Fanatics Holdings or

25    Fanatics, Inc., correct?                                   04:03
```

Page 64

```
1          MR. ASPERGER:  Objection to the form.  Vague.        04:03

2          THE WITNESS:  Yeah --

3          MS. CONLEY:  Objection.

4          THE WITNESS:  Sorry.  I'm sorry.

5          MS. CONLEY:  That's all right.                       04:03

6               Objection.  Assumes facts not in evidence.

7    Misstates testimony.  Asked and answered.

8          THE WITNESS:  Yeah, I -- I wouldn't form it exactly

9    the way you just did.  So you're trying to work at the

10   task level.  I'm trying to work at the -- explain at the   04:03

11   strategic level and so are there tasks that are happening

12   in a dispersed way across the organization?  Yes.  Is

13   that an efficient -- efficient and effective way to

14   deliver the best impact for our business?  Absolutely

15   not.  And so that's why I keep kind of repeating that.     04:03

16              Are there tasks?  I don't know.  I'm not

17   managing the football people at the task level.  I'm

18   assuming there are VIP-related tasks that are happening

19   but they are not being done in a way that's as impactful

20   because they're dispersed.  They should be together in     04:03

21   one organized function.

22         MR. ASPERGER:  Hey, Jim --

23   BY MR. FOGELMAN:

24         Q    Has anyone at Fanatics --

25         MR. ASPERGER:  We've been --                         04:04
```

Page 65

```
 1    BY MR. FOGELMAN:                                      04:04

 2         Q    -- done any kind of analysis as to what that

 3    efficiency you described is worth?

 4         MR. ASPERGER:  Objection.  Vague.

 5         THE WITNESS:  And the answer to your question is  04:04

 6    I -- I -- not that I'm aware of.

 7         MR. ASPERGER:  So we've been going about an hour.

 8    I think it would be a good time for a break.

 9         MR. FOGELMAN:  I think it's a little less than an

10    hour, but okay.  If -- if you want a break, we'll take a 04:04

11    break.

12         THE VIDEOGRAPHER:  We're going off the record.  The

13    time is 4:04 p.m.

14              (Whereupon a recess was held from 4:04

15               p.m. to 4:23 p.m.)                          04:04

16         THE VIDEOGRAPHER:  All right.  We're going on the

17    record.  The time is 4:23 p.m.

18    BY MR. FOGELMAN:

19         Q    Does FVP have a bank account?

20         MS. CONLEY:  Objection.  Outside the scope of the  04:23

21    irreparable harm deposition.  Calls for speculation.

22         THE WITNESS:  And I -- I do not know the answer to

23    that question.  I'm not in a position to -- to know the

24    answer to that question.

25     ///                                                   04:23
```

Page 66

1    BY MR. FOGELMAN:                                        04:23

2         Q    Does FVP have any books and records?

3         MS. CONLEY:  Same objections.

4         THE WITNESS:  I don't want to speculate so I -- I

5    don't know the answer to that question.                 04:24

6    BY MR. FOGELMAN:

7         Q    Has FVP have ever earned any revenues?

8         MS. CONLEY:  Same objections.

9         THE WITNESS:  And so context here the way I would

10   explain it, again, Fanatics VIP is an enabler of our    04:24

11   overall business and so VIP's are people and so there are

12   people that currently collect, bet, and buy product from

13   Fanatics that we would deem to be VIP's and so have we

14   earned revenue from them?  Yes.  But it's captured inside

15   the business, so --                                     04:24

16   BY MR. FOGELMAN:

17        Q    So to be clear, I'm asking whether FVP has

18   any revenues as opposed to Fanatics, Inc. or Fanatics

19   Holding.  Does FVP itself have any revenues, separate and

20   apart from revenues that are in the books of Fanatics,  04:25

21   Inc. or Fanatics Holdings?

22        A    Yeah.

23        MR. ASPERGER:  Objection.  Vague and he asked -- he

24   answered that question already.

25        THE WITNESS:  Yeah.                                04:25

                                                    Page 67

1        MS. CONLEY:  Outside the scope.                    04:25

2        THE WITNESS:  So I understand your question.  The

3    reason I keep shifting is because it's important to -- to

4    sort of restate we haven't really launched VIP.  There

5    are VIP's that are people and then Mike Hermalyn was --   04:25

6    was hired to build out the VIP business in which the

7    revenues and some of the things that you're suggesting

8    would come.  We haven't been able to -- to go do that

9    because we were stopped.

10   BY MR. FOGELMAN:                                         04:25

11       Q    Just -- just to clarify, though, as you sit

12   here today, you're not aware of any revenues attributable

13   to FVP as distinct from revenues attributable to Fanatics

14   Holdings or Fanatics, Inc., correct?

15       MR. ASPERGER:  Objection.  Misleading question and   04:25

16   he answered it already.

17       THE WITNESS:  Yeah, so I -- I just feel like it's

18   important for me -- to re -- restate the whole thing.

19   It's not as simple as yes or no.  VIP's are people

20   that -- then they buy from the various businesses.  We    04:25

21   were launching a VIP entity and that work stopped.  So we

22   have not been able to create or generate distinct VIP

23   revenues in that new entity because that work has

24   essentially stopped.

25       ///                                                  04:26

                                                       Page 68

1    BY MR. FOGELMAN:                                         04:26

2         Q    Okay.  Has there been any impact on the

3    revenues of Fanatics Holdings or Fanatics, Inc. from the

4    injunction?

5         MR. ASPERGER:  Objection.  Calls for speculation.   04:26

6         THE WITNESS:  It does call for speculation.  I'm

7    not -- even -- I was going to say I'm not the CFO but

8    even the CFO we wouldn't know.  But our belief is,

9    again -- I -- I keep repeating myself.  I apologize, but

10   this business was built to -- to put their arms around    04:26

11   that top 1 percent to drive that business and so that has

12   not happened in the way that we'd like so there's been an

13   impact because we're not doing that.

14   BY MR. FOGELMAN:

15        Q    But you -- you'd have to --                     04:26

16        A    There's a belief.  I'd have to speculate --

17   I'd have to speculate --

18        Q    Okay.

19        A    -- that there's been an impact because we're

20   not doing that.                                           04:26

21        Q    But with respect to the plaintiff in this

22   case, FVP, there had never been any revenues to that

23   entity, correct?

24        MR. ASPERGER:  Objection.

25        MS. CONLEY:  Objection.  Asked and answered.         04:27

                                                      Page 69

1          MR. ASPERGER:  Vague.  Go ahead.  Sorry.          04:27

2          THE WITNESS:  You guys --

3          MR. ASPERGER:  And I'm violating the court

4    reporter's rule.  I apologize.  I will wait until you

5    finish.                                                  04:27

6          THE WITNESS:  Okay.  And I took a break, okay?  I

7    can't talk.  So yeah.  So the -- the -- the specific

8    distinct revenues for VIP as a separate entity have --

9    excuse me, have not happened for the reasons that I

10   talked about.  We -- we -- we have not engaged in a full  04:27

11   scaling of that piece of our business.

12   BY MR. FOGELMAN:

13         Q    Okay.  Are there any expenses for FVP that

14   are tracked separately from any other Fanatics entity

15   like Fanatics Holdings or Fanatics, Inc.?                04:27

16         MS. CONLEY:  Objection.  Compound.  Calls for

17   speculation.  Vague.

18         THE WITNESS:  But I will make this statement.  So

19   Michael Rubin has said that, he -- you know, we have

20   invested close to a billion dollars in VIP.  I'm not the  04:27

21   CFO.  I have not -- I don't track that but I -- he has

22   made that statement, so I consider that significant.

23   BY MR. FOGELMAN:

24         Q    Okay.  When did he make that statement?

25         MS. CONLEY:  Objection.  Vague.                    04:28

                                                        Page 70

```
 1          THE WITNESS:  I don't know exactly.  In the last      04:28
 2     month.
 3     BY MR. FOGELMAN:
 4          Q    Okay.  And when he made that statement, was
 5     it to you?  Was it a public statement?  Where was that      04:28
 6     statement made by Mr. Rubin?
 7          A    He's made that statement in -- amongst the
 8     executive team, you know, we -- we've put, you know, a
 9     lot of money into this business, into enabling -- you
10     know, sort of en -- enabling our -- the betting and        04:28
11     gaming business and so that's why this is such -- so --
12     so critical.
13          Q    Okay.  But when he said it, you took him to
14     be referring to Fanatics as a whole, like Fanatics
15     Holdings, not expenses attributable to --                   04:28
16          A    No, not expenses attributed --
17          MS. CONLEY:  Hold on.  Objection.
18          THE WITNESS:  Sorry.  Sorry.  Sorry.
19     BY MR. FOGELMAN:
20          Q    Not expenses attributed to --                     04:28
21          MR. ASPERGER:  Even when you know the answer --
22          THE WITNESS:  Yeah.
23          MR. ASPERGER:  -- let him finish.
24          THE WITNESS:  Yeah.
25          MR. ASPERGER:  And then pause so we can interpose      04:29
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
1    objections.                                              04:29

2         THE WITNESS:  Yeah, you're right.  Sorry.

3    BY MR. FOGELMAN:

4         Q    So to be clear, when you heard Mr. Rubin make

5    a statement about the billion dollars, you understood    04:29

6    when he made it in your presence that he is referring to

7    Fanatics as a whole and not -- like Fanatics Holdings or

8    Fanatics, Inc. but not specifically to FVP the entity,

9    correct?

10         MS. CONLEY:  Objection.  Compound.  Misstates the   04:29

11   witness' testimony.  Asked and answered.  Vague.

12         THE WITNESS:  But the answer to your question is --

13   is -- is yes.

14   BY MR. FOGELMAN:

15         Q    So when you say Mr. Hermalyn is the only       04:29

16   employee of FVP, but you're not sure if FVP has a bank

17   account or expenses associated with it, is it possible

18   that Mr. Hermalyn is being paid -- physically paid by

19   Fanatics Holdings or Fanatics, Inc.?

20         MS. CONLEY:  Objection.                             04:29

21         MR. ASPERGER:  Objection.  Compound and calls for

22   speculation.

23         MS. CONLEY:  And objection, misstates the witness'

24   testimony.  Improper hypothetical.

25         THE WITNESS:  So you know, the way to I guess frame  04:30
```

Page 72

```
 1    your question, so he's a -- he's a employee of Fanatics      04:30

 2    Holdings and so Fanatics Holdings pays him.  He was hired

 3    to stand up Fanatics VIP which we haven't been able to

 4    fully do.

 5    BY MR. FOGELMAN:                                              04:30

 6        Q    Okay.  But from your role as head of people

 7    at Fanatics Holdings, you know that Mr. Hermalyn is

 8    actually an employee of Fanatics Holdings and is paid by

 9    Fanatics Holdings, correct?

10        MS. CONLEY:  Objection.  Misstates the witness'          04:30

11    testimony.  Assumes facts not in evidence.  Vague.

12    Argumentative.

13        THE WITNESS:  So he's a -- he's an employee of --

14    of Fanatics Holdings.

15    BY MR. FOGELMAN:                                             04:30

16        Q    Does John Ameche also work on VIP matters for

17    Fanatics?

18        A    John Ameche has -- is employed and works on

19    VIP matters, that'd -- that'd be a fair assessment.

20        Q    And he's in New York like Mr. Huntley, right?      04:31

21        A    He -- I want to --

22        MS. CONLEY:  Objection.  Calls for speculation.

23        THE WITNESS:  Yeah, I -- yeah, I'd be speculating a

24    bit but I'm pretty confident that he's in New York.

25     ///                                                         04:31
```

Page 73

```
1    BY MR. FOGELMAN:                                          04:31

2         Q    Is there any work on the VIP program that

3    can't be done in New York or New Jersey or any other

4    state?

5         A    So --                                           04:31

6         MR. ASPERGER:  Objection.  Vague.

7         THE WITNESS:  Yeah, I -- I think a better way to

8    answer it, we believe that there's a tremendous

9    opportunity to do a better job with VIP by doing the work

10   in California for the reasons I talked about before.  Two  04:31

11   of our three CEO's are based in California.  We have an

12   office in California with 80 employees with room to

13   expand into more places and -- and that's why we made a

14   strategic decision.  Could you do work in other places?

15   You could make that choice but that's not the strategic    04:32

16   choice that we made.

17   BY MR. FOGELMAN:

18        Q    Who -- whose idea was it in discussions with

19   Mr. Hermalyn that he be assigned to the Los Angeles

20   office, as opposed to the New York office or some other    04:32

21   office?

22        MS. CONLEY:  Objection.  Calls for speculation.

23   Vague.  Assumes facts not in evidence.

24        THE WITNESS:  Michael -- Michael Rubin is the

25   person that made the decision to build out VIP in          04:32
```

Page 74

```
 1    California.                                          04:32

 2    BY MR. FOGELMAN:

 3         Q     Okay.  But you've seen the swipe card data.

 4    You're not aware of any reason that Mr. Hermalyn can't do

 5    that job from New York or New Jersey or anywhere else,   04:32

 6    right?

 7         MR. ASPERGER:  Objection to the form and the

 8    interjection of "you've seen swipe card data."  He

 9    doesn't have knowledge of that.

10         THE WITNESS:  So yeah, look, I -- I want to --    04:32

11    could you ask your question again because I -- I want to

12    make sure I --

13    BY MR. FOGELMAN:

14         Q     Yes.

15         A     -- I answer it.                            04:33

16         Q     You're not aware of any reason why

17    Mr. Hermalyn couldn't do the same job he's been doing in

18    New Jersey or New York or some other state, right?

19         MR. ASPERGER:  Objection.  Asked and answered.

20         MS. CONLEY:  And objection.  Argumentative.  Calls  04:33

21    for speculation.  Assumes facts not in evidence.  Vague.

22         THE WITNESS:  Yeah, and the -- the way to answer

23    your -- your question is you're asking could you do work

24    in other places but that would be changing our strategy.

25    And so our strategy was to put the VIP business in a    04:33
```

Page 75

1    place where we thought it made sense to grow it.  There          04:33

2    were a number of VIP's and it's aligned with some of

3    our -- our other businesses which are based here in

4    California, so that was -- it was just -- it's just a

5    strategic decision that we made.                                 04:33

6    BY MR. FOGELMAN:

7         Q    Now the head of collectables is in the Los

8    Angeles office, right?

9         A    Yes.

10        Q    Why couldn't he be the head of the LA office?         04:33

11        MR. ASPERGER:  Objection.  Calls for speculation.

12   Vague.

13        THE WITNESS:  Yeah.  Yeah.  There's 22,000

14   employees.  We chose Mike Hermalyn.  I mean, would you

15   like me to talk about why we like Mike Hermalyn?               04:34

16   BY MR. FOGELMAN:

17        Q    Is there any reason that the head of

18   collectables who's already in the Los Angeles office

19   couldn't be the head of the LA office?

20        A    He's busy with running the collectables           04:34

21   business.  The VIP business is meant to be an enabler of

22   the other three businesses.  So we have CEO's of the --

23   of the -- of the three businesses and we want them

24   pointed exclusively on growing and running those

25   businesses and then myself in a functional area and         04:34

```
1    others are enablers.  And so we see the VIP business or      04:34

2    entity as an enabler and leading the Los Angeles office

3    is going to be -- again, I'll -- I'll say this.  Talent

4    people culture is a big element of how we think about our

5    business and so in my role as chief people officer as       04:34

6    we're bringing on leaders, we're trying to look at them

7    and assess them for their culture or fit, leadership

8    capability and we've seen, you know, Mike Hermalyn being

9    very powerful in -- in -- in --

10        MR. ASPERGER:  It's okay.                               04:35

11   BY MR. FOGELMAN:

12        Q    It's all right.  I -- A little sidebar over

13   here.  I didn't mean to interrupt you with a nod to my

14   colleague.  I apologize.

15        A    No -- no worries.                                  04:35

16             So anyway, we see him as sort of uniquely

17   capable of sort of carrying the torch for culture as we

18   build this office out and that's why we saw him being the

19   right person, the right fit to do that.

20        Q    Is it fair to say that Fanatics hasn't looked      04:35

21   for anyone to take over Mr. Hermalyn's role outside of

22   the company?

23        MS. CONLEY:  Objection.  Misstates prior testimony.

24   Calls for speculation.

25        THE WITNESS:  So I'm going to ask you to reask your     04:35
```

Page 77

1    question because did we -- did we search for other people    04:35

2    before we hired Mike Hermalyn?

3    BY MR. FOGELMAN:

4        Q    Let me clarify.

5        A    Yeah.    04:35

6        Q    At no point since the injunction has Fanatics

7    which employs Mr. Hermalyn looked for a new person

8    outside the company to take over his role; is that

9    correct?

10        MS. CONLEY:  Objection.  Assumes facts not in    04:35

11    evidence.  Misquotes prior testimony.  Asked and

12    answered.

13        THE WITNESS:  Yeah, so we have not looked outside

14    the company.  What we've done is divvied up some of

15    the -- you know, his -- the people that would have been    04:36

16    naturally in VIP to other -- other members of the team.

17    BY MR. FOGELMAN:

18        Q    When Mr. Hermalyn attends a sporting event on

19    behalf of Fanatics, who does he submit his expense report

20    to?    04:36

21        MS. CONLEY:  Objection.  Assumes facts not in

22    evidence.  Improper hypothetical.  Vague.  Compound.

23        THE WITNESS:  Yeah, I -- I don't know the answer to

24    that question formally, but he reports to Michael Rubin.

25    So in theory, Michael Rubin would approve his expenses.    04:36

Page 78

```
 1    BY MR. FOGELMAN:                                       04:36

 2        Q     Okay.  So for example, when Mr. Hermalyn went

 3    to the Super Bowl, he submitted his expenses --

 4        A     So I don't -- I don't know who he submitted

 5    them to.  You keep -- you keep asking -- I would suspect   04:37

 6    it's either -- it's either Michael Rubin or -- or Glen

 7    Schiffman our CFO but I don't know that for a fact.  I do

 8    not approve his expenses.

 9        Q     But your belief based as the head of people

10    and the person designated as the person most            04:37

11    knowledgeable is that those expenses are borne by

12    Fanatics Holdings or Fanatics, Inc., correct?

13        MR. ASPERGER:  Objection.  Calls for speculation.

14    Mischaracterizes his testimony.  He said he didn't know.

15        MS. CONLEY:  Objection.  Outside the scope of this    04:37

16    deposition.  Vague.

17    BY MR. FOGELMAN:

18        Q     You may answer.

19        A     Yes, I -- I -- I don't know the answer to

20    your question to the level of granularity that you're    04:37

21    looking for.

22        Q     But -- but whether you know it to the

23    granularity, it's your belief that those expenses are

24    borne by Fanatics, Inc. --

25        MR. ASPERGER:  Objection.                            04:37
```

Page 79

1          Q       -- or Fanatics Holdings, right?                    04:37

2          MR. ASPERGER:  Objection.  Now you're repeating the

3     same questions and he said he doesn't know.  It doesn't

4     matter what his belief is if he doesn't know.

5     BY MR. FOGELMAN:                                                04:37

6          Q     You may answer that question.

7          A     Yeah, I -- I don't know.

8          Q     Are you aware of -- well, strike that.

9                Are you aware of Mr. Hermalyn's attendance of

10    the F1 Grand Prix in Miami?                                     04:38

11         A     I --

12         MS. CONLEY:  Objection.

13         MR. ASPERGER:  Objection as to time.

14         MS. CONLEY:  Objection.  Assumes facts not in

15    evidence.  Vague.  Calls for speculation.                       04:38

16         THE WITNESS:  Yeah, I -- I don't know about that.

17    BY MR. FOGELMAN:

18         Q     Did you attend the F1?

19         A     I did not.

20         Q     Okay.                                                04:38

21         A     I was in New York.

22         Q     Do you know if Mr. Hermalyn sent his expenses

23    to Mr. Rubin at Fanatics Holdings in connection with his

24    attendance of the Miami F1 Grand Prix?

25         MS. CONLEY:  Objection.  Assumes facts not in              04:38

                                                    Page 80

```
 1   evidence.  Calls for speculation.  Vague.                04:38
 2        THE WITNESS:  Yeah, I don't know who he sent his
 3   expenses to.
 4   BY MR. FOGELMAN:
 5        Q    Since Mr. Hermalyn started as an employee of   04:39
 6   Fanatics Holdings on or about February 1 of 2024, has his
 7   employment status changed in any way?
 8        MR. ASPERGER:  Objection.  Asked and answered and
 9   vague.
10        THE WITNESS:  Yeah, and can I ask for -- when you   04:39
11   say employment status, what do you mean?  He's an
12   employee of the company.  That has not changed.  So is
13   there something else you mean by employment status?
14   BY MR. FOGELMAN:
15        Q    So I don't know if there's any change in any   04:39
16   way but I don't want you to limit it to a title, to which
17   entity he's assigned to, to access to office space,
18   whatever it might be.  I just want to know of any kind
19   you can think of, has there been any change in
20   Mr. Hermalyn's employment status since he became an      04:39
21   employee of Fanatics Holdings on February 1st, 2024?
22        MR. ASPERGER:  Objection.  Vague.  Compound and
23   calls for speculation.
24        THE WITNESS:  Yeah, so his -- he's employed by
25   Fanatics.  That has not changed.  The things that he's   04:40
```

Page 81

1    able to do and -- and we've asked him to do day-to-day        04:40

2    has changed significantly.  That's the whole reason that

3    we're -- we're here, I believe.  And so I'm -- I'm trying

4    to be responsive to your question but he's an employee.

5    That hasn't changed.  But his duties day-to-day clearly        04:40

6    have.

7    BY MR. FOGELMAN:

8        Q    What, if anything, does FVP want the Court in

9    California to do in connection with this injunction in

10   the Federal Court in Boston, Massachusetts?                    04:40

11       MR. ASPERGER:  Objection.  Calls for a legal

12   conclusion and beyond this witness' knowledge.

13       THE WITNESS:  So I -- I can't answer the question

14   as a lawyer.  There's plenty here in the room.  I can

15   answer the question as an executive with Fanatics and our      04:40

16   objective is we've identified Mike Hermalyn as the person

17   with the specialized skills and abilities to create

18   connections with VIP's and to be able to help us attract

19   VIP's to participate in what Fanatics does as a business.

20   And we hired him with that desire and that intent and          04:41

21   that then, you know, between the -- the TRO and then the

22   injunction, you know, his ability to execute in those

23   roles has been limited to the point where he's now not

24   able to do -- do that work and so our ambition is to

25   allow Mike Hermalyn to do the work that we've hired him        04:41

Page 82

```
 1   to do.  So how that relates to the legal part of your        04:41

 2   question, I'll -- I'll ask professionals to manage that

 3   but that's the business outcome.

 4   BY MR. FOGELMAN:

 5        Q     But just to be clear, are you asking the          04:41

 6   Court in California to overrule the Federal Court?

 7        A     I -- I -- I'm -- I can't --

 8        MR. ASPERGER:  Objection.  He -- he can't answer

 9   that.  That calls for a legal conclusion.  He can't

10   answer that.                                                 04:41

11   BY MR. FOGELMAN:

12        Q     Can you carve out activities that

13   Mr. Hermalyn does currently from his home in New Jersey

14   or anywhere else he happens to be that you believe he can

15   continue to do or do for the first time if an order is       04:42

16   issued by the Court in Los Angeles?

17        MR. ASPERGER:  Objection.  Vague and compound.

18   Calls for a legal conclusion.

19        MS. CONLEY:  And objection.  Improper hypothetical.

20   Misstates facts that are not in evidence.                    04:42

21        THE WITNESS:  Yeah, I don't feel like I can answer

22   that question for you because I don't have knowledge at

23   that level of granularity.  So I keep kind of repeating

24   the -- the desired outcome.  We want him to be the leader

25   of that function, to bring those people together, build      04:42
```

Page 83

1    the strategy and execute VIP on behalf of Fanatics.  To        04:42

2    do that out of California, that's our -- that's our

3    objective.

4    BY MR. FOGELMAN:

5        Q    What is it that FVP wants the Court in Los        04:42

6    Angeles to order DraftKings to do or not do?

7        MR. ASPERGER:  Same objections.  Beyond his

8    knowledge.  Calls for a legal conclusion.

9        THE WITNESS:  So I'll repeat the same thing again.

10   I -- I described it kind of the end outcome.  From a        04:42

11   legal perspective, I -- I can't speculate on what we want

12   the Court to do or not to do.  That's what everyone here

13   in the room is here to -- to help enable that.  I'm

14   trying to give the Court an understanding of how we feel

15   like the organization's been harmed by not allowing him        04:43

16   to do the work that he's been tasked to do.  And

17   hopefully, we can come to a conclusion that would

18   allow -- allow him to do his work.

19   BY MR. FOGELMAN:

20       Q    Well, that injunction from Federal Court is        04:43

21   going to exist whether or not a court in Los Angeles

22   issues an order and so I'm asking you what is it, if

23   anything, you at the company want the Court to order

24   DraftKings to do or not do?

25       MR. ASPERGER:  Same objections.  You've repeated        04:43

Page 84

1    this question now about four times.                    04:43

2            You can answer one more time.

3        MS. CONLEY:  So the objection will be also asked

4    and answered.  Argumentative.  Assumes facts not in

5    evidence.  Calls for a legal conclusion.              04:43

6        THE WITNESS:  Yeah, look.  I'm going to go all the

7    way back.  When we began this search, we partnered with

8    True and True talked to 124 people.  They identified 15

9    that they talked to and then there were seven or eight

10   that came, you know, to -- to us at Fanatics and none of   04:44

11   them held a candle to Mike Hermalyn.  People -- well,

12   why?  So one, he's got special skills, understanding,

13   knowledge of the space, understands the digital space,

14   understands the VIP space and has great relationships.

15           How do I know that?  When we -- when we met      04:44

16   when I interviewed him, I met him -- this is going to

17   sound a little bit self-serving.  It's not intended to

18   be, but he had -- he had read my book but not just read

19   it in a cursory way to -- to kind of create a connection

20   with me.  He had read it to a level of depth where he had   04:44

21   embodied it and we ended up having very detailed

22   conversations about the aspects of the book, creating a

23   personal connection and then how he applies that to the

24   way he manages the team and how leverages that to connect

25   and manage with others.                               04:44

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1          My job was to assess his cultural fit and is          04:45

2    this a person that we think can create the kind of energy

3    and connections that would help enable and grow the

4    business?  A term we use inside of Fanatics, you know

5    when you met somebody, how'd you feel about that person?          04:45

6    Did you love him?  And the answer is I loved him -- loved

7    him for the role and he was absolutely the -- the person

8    that would -- would be perfect for the role for us and so

9    my -- my objective, my hope is that we can get to a point

10   where Michael Hermalyn can come and do the work that he's          04:45

11   been tasked to do on behalf of Fanatics VIP to enable

12   Fanatics.  That's -- him not being allowed to do that

13   definitely has a negative impact on the business and so

14   that's what I'm here to tell and explain to the Court.

15   So that's -- I keep repeating myself but I -- I -- I feel          04:45

16   that way so I'm being consistent.

17   BY MR. FOGELMAN:

18       Q    So just to be clear, as you sit here today,

19   you're not able to identify anything specific that you at

20   the company want this court in Los Angeles to order          04:45

21   DraftKings to do or not do, correct?

22       MR. ASPERGER:  Objection.  Mischaracterizes his

23   testimony and asked and answered.

24       MS. CONLEY:  And objection, argumentative.

25       THE WITNESS:  Yeah, sorry.  I -- I feel like I've          04:46

```
 1    asked -- I've answered the question a few times.  So I'm      04:46

 2    not sure that I can give you something different than

 3    what I've already said.

 4    BY MR. FOGELMAN:

 5         Q    Well, I'll give you just random                     04:46

 6    hypotheticals.  We don't want DraftKings to work on

 7    Fridays.  We don't want DraftKings to show up in court

 8    when there's a hearing in Boston.  We don't want

 9    DraftKings to respond to our appeal to the First Circuit

10    Court of Appeals.  Just an actual item, an action item.       04:46

11    What is it that you want, if anything, specifically the

12    Court to order DraftKings to do or not to do?

13         A    Yeah, and I --

14         MR. ASPERGER:  Wait, wait, wait, wait, wait.  Go

15    ahead.  You can start.                                        04:46

16         MS. CONLEY:  Objection.  Improper hypothetical.

17    Assumes facts not in evidence.  Asks for a legal

18    conclusion.  Vague.  Argumentative.

19         MR. ASPERGER:  And calls for speculation on his

20    part.                                                         04:46

21         THE WITNESS:  Yeah, I'm not in a position to -- you

22    know, it's -- it's not about this is what I want

23    DraftKings to do, this is the outcome that we want

24    relative to Fanatics and Mike Hermalyn.  That's the

25    outcome.  And this is what I'm trying to impart on this       04:47
```

1    body and on the Court.  That's -- that's what I'm trying         04:47

2    to do here now.

3    BY MR. FOGELMAN:

4         Q    Has anyone instructed Mr. Hermalyn to your

5    knowledge not to continue to attend sporting events?            04:47

6         MR. ASPERGER:  I want to interpose one objection.

7    To the extent the lawyer's conversations have been

8    involved you shouldn't answer anything that has to do

9    with lawyers.  But from a business standpoint, if there

10   were instructions, you can answer.                              04:47

11        MS. CONLEY:  And objection, vague as to time.

12        THE WITNESS:  So what's your -- your question

13   again, please?

14   BY MR. FOGELMAN:

15        Q    To your knowledge, has anyone instructed        04:47

16   Mr. Hermalyn not to attend sporting events?

17        MS. CONLEY:  Same objections.

18        THE WITNESS:  Not to my knowledge, no.

19   BY MR. FOGELMAN:

20        Q    Has anyone instructed Mr. Hermalyn not to        04:47

21   submit expenses in connection with sporting events he

22   might have been at?

23        MR. ASPERGER:  Same objection.

24        MS. CONLEY:  And objection, outside the scope of

25   this deposition.                                                04:48

Page 88

```
 1          THE WITNESS:  Yeah.  To my knowledge, no.        04:48

 2   BY MR. FOGELMAN:

 3          Q     Has anyone instructed Mr. Hermalyn not to

 4   continue to develop relationships as you described

 5   earlier?                                               04:48

 6          MS. CONLEY:  Objection.  Calls for speculation.

 7   Assumes facts not in evidence.  Vague.  Argumentative and

 8   misstates prior testimony.

 9          THE WITNESS:  Yeah, I've -- I've not been in any

10   conversations where he's been asked to not leverage     04:48

11   relationships or -- or foster.  Is that the word you

12   used?

13   BY MR. FOGELMAN:

14          Q     Has anyone told Mr. Hermalyn that he cannot

15   submit expense reports in connection with his development  04:48

16   of relationships?

17          MS. CONLEY:  Objection.  Calls for speculation.

18   Misstates prior testimony.  Vague and outside the scope

19   of this deposition.

20          THE WITNESS:  So I have not been aware of or part   04:48

21   of any conversation saying that he cannot submit expense

22   reports associated with building relationships.

23   BY MR. FOGELMAN:

24          Q     Is it fair to say that Mr. Hermalyn's job at

25   the company is safe?                                    04:48
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1          MS. CONLEY:  Objection.                          04:48

 2          MR. ASPERGER:  Objection.  Vague.

 3          THE WITNESS:  Yeah, I'm -- I'm not the person to

 4     answer that.  He works for -- for Michael Rubin.  We want

 5     him as a part of the company.  He's a special talent, as   04:49

 6     I said before and I don't use these words lightly.  You

 7     know, we love him and think he's going to -- we know

 8     he'll add a tremendous amount of value when we're allowed

 9     to uncork him and let him do the work that he was

10     originally brought in to do.                             04:49

11     BY MR. FOGELMAN:

12          Q    And it's true to say you're going to love him

13     just as much in February of 2025, right?

14          MS. CONLEY:  Objection.  Argumentative.  Calls for

15     speculation.  Misstates prior testimony.  Improper        04:49

16     hypothetical.

17          THE WITNESS:  I think I'll like him in -- in -- you

18     know, for years and years to come.  That's our ambition.

19     BY MR. FOGELMAN:

20          Q    What's Tucker Kain's title?                    04:49

21          MS. CONLEY:  Objection.  Outside the scope of this

22     deposition.

23          THE WITNESS:  He is the -- Tucker Kain is the chief

24     strategy officer.

25       ///                                                    04:49
```

Page 90

1    BY MR. FOGELMAN:                                            04:50

2         Q    And does he work with VIP's as well?

3         MS. CONLEY:  Objection.  Calls for speculation.

4         THE WITNESS:  Yeah, so the way I would describe it,

5    when there are ideas that we are incubating or thinking    04:50

6    through or oftentimes Tucker, as our chief strategy

7    officer, things will start with him and then when we make

8    the strategic decision to invest, go forward, go bigger,

9    then we'll move him.  So some of the initial VIP

10   resources -- again, that's what I said before they've      04:50

11   been spread out.  Some are in betting and gaming

12   business.  Other pieces sort of sit inside Tucker Kain's

13   world and then when we made the decision we're going to

14   really sort of build out our VIP strategy, the decision

15   was made to hire Mike Hermalyn and then those pieces were  04:50

16   intended to come together under Mike.  So some would have

17   come from Tucker's organization and others would have

18   come from -- from betting and gaming.

19   BY MR. FOGELMAN:

20        Q    Is Tucker in New York?                            04:51

21        MS. CONLEY:  Objection.  Outside the scope of this

22   deposition.  Calls for speculation.

23        THE WITNESS:  Yeah, tucker's based in New York.

24   BY MR. FOGELMAN:

25        Q    And he's handling some of Mr. Hermalyn's          04:51

Page 91

1    responsibilities currently, right?                    04:51

2         MS. CONLEY:  Objection.  Misstates prior testimony.

3    Calls for speculation.  Assumes facts not in evidence.

4         THE WITNESS:  Here's -- here's how I would describe

5    it.  The -- again, when we were incubating some of       04:51

6    this -- what has evolved into VIP, during the incubation

7    process, some of those items reported in to Tucker and

8    then when we made the decision, strategic decision to

9    build out VIP, we hired Mike Hermalyn.  We wanted to do

10   that in California.  It started with the hire of Mike and  04:51

11   then TRO, injunction and that has since stopped.

12   BY MR. FOGELMAN:

13        Q    Of all the tasks that Mr. Hermalyn was hired

14   to do, are you able to carve out tasks that are specific

15   just to California but that don't apply to the other 49   04:51

16   states?

17        MS. CONLEY:  Objection.  Calls for speculation.

18   Assumes facts not in evidence.  Vague.  Improper

19   hypothetical.

20        THE WITNESS:  So from where I sit, I could not do    04:52

21   that for you, but I -- again, I'm -- I'm discussing this

22   from a strategic perspective.  I'm not into the level of

23   detail to be able to answer that question with the

24   granularity -- granularity that you would like.

25    ///                                                       04:52

                                                     Page 92

```
 1    BY MR. FOGELMAN:                                          04:52

 2         Q    Is it the company's intention if it gets some

 3    kind of order in Los Angeles to tell Mr. Hermalyn to

 4    violate the orders of the Court in Boston?

 5         MS. CONLEY:  Objection.  Improper hypothetical.      04:52

 6    Calls for speculation.  Argumentative.  Calls for a legal

 7    conclusion.

 8         THE WITNESS:  We do not want to be afoul of any

 9    court-ordered injunction or anything of that nature.  Our

10    ambition would be to allow Mike Hermalyn to do the job    04:52

11    that he was hired to do, to help build out and grow our

12    VIP business and lead our LA office.  That's our

13    ambition.

14    BY MR. FOGELMAN:

15         Q    When you were discussing hiring Mr. Hermalyn,   04:53

16    you knew there was a possibility that he may have to wait

17    till February of 2025 before starting in full, right?

18         MS. CONLEY:  Ob -- objection.  Argumentative.

19    Assumes facts not in evidence.  Calls for speculation.

20    Compound.                                                 04:53

21         THE WITNESS:  Yeah, I -- I did not know that for

22    sure.  I did not know that for sure.

23    BY MR. FOGELMAN:

24         Q    When you say for sure, though, was it --

25         A    I did not -- I did not know that.  I did not    04:53
```

Page 93

```
 1    know that.                                              04:53

 2         Q    Strike that.  I started to say something.  I

 3    wanted to strike that.

 4            It -- when you say you didn't know that, I

 5    just want to clarify.  Did you discuss with Mr. Hermalyn   04:53

 6    the fact that he had an agreement with his prior

 7    employer, or at that time his current employer, not to do

 8    the same tasks for a competitor?

 9         A    So when I met -- did you -- okay.

10         MR. ASPERGER:  Yeah, I just want to make sure -- I    04:53

11    was going to -- I was not certain it was clarified as to

12    time but I think it's -- you're referring to the first

13    time he met him?

14         MR. FOGELMAN:  Yes, sir.

15         THE WITNESS:  Yeah, so okay.  I was about to talk     04:54

16    about that.  Yeah.  So yeah.  Okay.  So when I met Mike

17    Hermalyn, it was at dinner with Michael Rubin and during

18    that dinner, we had no such discussion about contracts or

19    restrictions or anything like that.  What we did -- my

20    job is again to assess his cultural fit, assess him would  04:54

21    he be a good member of the executive team?  Does he fit

22    sort of the type of person that we would want to have

23    within the company?  We talked about my book and things

24    like that and him as a person.  That was the nature of

25    the conversation, so then when asked, "Orlando, do you     04:54
```

Page 94

```
1    love him?"  My response was -- was yes.              04:54

2    BY MR. FOGELMAN:

3          Q    When was that dinner?

4          A    It was in --

5    MS. CONLEY:  Objection.                               04:54

6    THE WITNESS:  Oh, I'm sorry.

7    MS. CONLEY:  Vague.

8    THE WITNESS:  I don't know the exact date but it

9    was probably January-ish.

10   BY MR. FOGELMAN:                                      04:54

11         Q    Of '24?

12         A    Of '24.

13         Q    What restaurant?

14   MS. CONLEY:  Objection.  Outside the scope of this

15   deposition.                                           04:54

16   BY MR. FOGELMAN:

17         Q    What did you order?  I'm not asking that.  So

18   I was making a joke.  Okay.  We -- we do make jokes

19   occasionally.

20         A    Okay.  Good.                               04:55

21         Q    All right.  Has there been any analysis done

22   at Fanatics on damages it believes it has incurred as a

23   result of the Federal Court injunction?

24   MR. ASPERGER:  Okay.  So I'm going to interpose an

25   objection.  I believe anything along that lines would be  04:55
```

Page 95

```
 1   with attorneys so it would be covered by the            04:55
 2   attorney-client privilege and attorney work product.  But
 3   separate and apart from work with attorneys, are you
 4   aware of any analysis that's been done purely from a
 5   business standpoint so would not be privileged?         04:55
 6       MS. CONLEY:  I'm going to add an objection to
 7   privilege to say it's vague.  Assumes facts not in
 8   evidence.  Calls for speculation.
 9       THE WITNESS:  I'm not aware of any such analysis.
10   BY MR. FOGELMAN:                                        04:55
11       Q    Are you aware of any harm that Fanatics
12   thinks it's incurred or might incur that isn't solvable
13   if you will by damages?
14       MR. ASPERGER:  Objection.  Vague, and he's answered
15   that question multiple times.                           04:56
16       MS. CONLEY:  And objection, calls for a legal
17   conclusion.  Assumes facts not in evidence.
18   Argumentative.  Vague.
19       THE WITNESS:  Yeah, and so I -- I kind of go with
20   the answers that I've already given.  I don't think I -- 04:56
21   I have anything new to add.
22   BY MR. FOGELMAN:
23       Q    Just to be clear, I just need to know if you
24   have an answer to that question or not.  Do you -- are
25   you -- as you sit here today, aware of any harm that     04:56
```

Page 96

1    Fanatics believes it has incurred or might incur that        04:56

2    isn't solvable by damages?

3         MR. ASPERGER:  Objection.  He's answered that

4    question and described significant harms.

5              But if you've got anything to what you've        04:56

6    said.

7         THE WITNESS:  Yeah, I --

8         MR. FOGELMAN:  Counsel, you've got to stop

9    testifying for the witness.

10        MR. ASPERGER:  I'm not testifying.                     04:56

11        MR. FOGELMAN:  If you think something's been asked

12   and answered, you're allowed to say that.  You cannot

13   testify for the witness.  It's really outrageous.

14        Q    Sir, I'm asking you the question.  Can you

15   tell me, as you sit here today, any harm that you believe   04:56

16   the company has suffered or might suffer from this

17   injunction or otherwise that is solvable or -- I should

18   say is not solvable by damages?

19        MR. ASPERGER:  Objection.

20        MS. CONLEY:  Objection.                                04:57

21        MR. ASPERGER:  Go ahead.

22        MS. CONLEY:  Objection.  Calls for speculation.

23   Compound.  Asked and answered.  Calls for a legal

24   conclusion.  Assumes facts not in evidence.

25   Argumentative and improper hypothetical.                    04:57

Page 97

```
 1          THE WITNESS:  I'm not -- I'm not in a position to      04:57

 2     -- to answer.

 3     BY MR. FOGELMAN:

 4          Q     Have you been to Mr. Hermalyn's home in New

 5     Jersey?                                                     04:57

 6          MS. CONLEY:  Objection.  Outside the scope of this

 7     deposition.  Assumes facts.

 8          THE WITNESS:  No -- no, I have not.

 9     BY MR. FOGELMAN:

10          Q     Were you part of the negotiations for his        04:57

11     compensation package if he were to come to the company?

12          MS. CONLEY:  Objection.  Outside the scope of this

13     deposition.

14          THE WITNESS:  So a part -- a short answer a part of

15     but I -- negotiations and involvement in negotiations       04:57

16     would be kind of too strong a word.  So Michael Rubin,

17     Mike Hermalyn came to decisions around compensation and

18     then as the chief people officer, we implement.

19     BY MR. FOGELMAN:

20          Q     What -- is -- was part of the discussion with    04:58

21     Mr. Hermalyn about moving expenses that he might get

22     reimbursed if he ever moves to Los Angeles?

23          MS. CONLEY:  Objection.  Assumes facts not in

24     evidence.  Calls for speculation.  Misstates prior

25     fact -- prior testimony.  Vague.                            04:58
```

Page 98

1      THE WITNESS:  So I was not involved in any of those      04:58

2   conversations but that's standard practice.  If we hire

3   somebody and -- and they move, as a part of the move, we

4   would cover moving expenses.

5   BY MR. FOGELMAN:                                            04:58

6      Q    Okay.  But Mr. Hermalyn hasn't yet asked for

7   any moving expenses to be reimbursed yet, correct?

8      A    No, I -- I --

9      MS. CONLEY:  Objection.  Scope and objection vague.

10  Assumes facts not in evidence.  Calls for speculation.      04:58

11     THE WITNESS:  Yeah, yeah, I have no idea.

12  BY MR. FOGELMAN:

13     Q    Did the company -- strike that.

14          At some point, Mr. Hermalyn stayed at

15  Mr. Rubin's house, right?                                   04:59

16     MS. CONLEY:  Objection.  Vague.  Argumentative.

17  Ambiguous.  Calls for speculation.

18     THE WITNESS:  Yes.

19  BY MR. FOGELMAN:

20     Q    Did you meet him while he was at that house?        04:59

21     MS. CONLEY:  Objection.  Vague.

22     THE WITNESS:  I did not.

23  BY MR. FOGELMAN:

24     Q    Did the company at some point rent an

25  apartment or hotel room for Mr. Hermalyn to stay at?        04:59

Page 99

```
 1        MS. CONLEY:  Objection.  Scope.                    04:59

 2        THE WITNESS:  So again, standard practice if you're

 3   traveling for business, you -- you get a -- a hotel.  I'm

 4   in a hotel for this trip.  So I know he stayed at a hotel

 5   but the details of -- of that or as part of a            04:59

 6   negotiation, I was not a part of.

 7        MS. CONLEY:  How much time do we have on the

 8   record?

 9        THE VIDEOGRAPHER:  One hour and 33 minutes.

10        MS. CONLEY:  Thank you.  I know we had agreed to    05:00

11   best efforts at 90 minutes.

12        MR. FOGELMAN:  We did make an attempt to keep it at

13   90 minutes and I will take a short break to see what I

14   can do to make it go faster but a lot of this has been

15   objections to discussions.  But let's just take two      05:00

16   minutes so I can see how long I have left, okay?

17        THE WITNESS:  Two minutes would be great.

18        MR. FOGELMAN:  Yeah, two minutes.

19        THE WITNESS:  That'd be great.  I do have a flight

20   to catch.                                                05:00

21        THE VIDEOGRAPHER:  We're going off the record.  The

22   time is 5:00 p.m.

23             (Whereupon a recess was held from 5:00

24             p.m to 5:07 p.m.)

25        THE VIDEOGRAPHER:  All right.  We're going on the   05:06
```

Page 100

```
 1    record.  The time is 5:07 p.m.                      05:06

 2         MR. FOGELMAN:  So I did make a promise that I would

 3    do the best I could and I admit a lot of it has been with

 4    objections and instructions.  We have issues with those

 5    objections and instructions.  We're reserving our rights   05:07

 6    but I'm not going to keep his gentlemen from his kid's

 7    graduation so I'm going to stop today, reserving our

 8    rights.  You're free to go.

 9         MR. ASPERGER:  Okay.  I have to clarify two areas

10    but I'll be very brief.                              05:07

11         MR. FOGELMAN:  Well, I don't agree to yield time.

12    If you want to continue, I can go back on the record and

13    ask more questions.  I -- I thought we were -- the 90

14    minutes was at the request of the witness.

15         MR. ASPERGER:  This will take less than five but   05:07

16    it's two things that need to be corrected for the record.

17         MR. FOGELMAN:  I honestly -- I'm dumbfounded by you

18    wanting to ask questions longer than the 90 minutes that

19    he's asked for.  Otherwise, why is there a time limit?

20         MR. ASPERGER:  At least -- my -- at least in the   05:07

21    depositions I participate in, counsel can always redirect

22    and clarify things.  Jim, maybe you do it differently.

23         MR. FOGELMAN:  Yeah, I don't know.  I -- frankly, I

24    can't remember which one of you is admitted and not

25    admitted in California.  But it's not typical to agree to   05:07
```

Page 101

```
1    90 minutes in a deposition.                          05:07

2         MS. CONLEY:  I'm admitted in California.

3         MR. FOGELMAN:  Yeah, okay.  But if you want to do

4    it, go ahead.

5              I'm not keeping you any longer.  It's not my    05:08

6    fault if I have to ask you more questions after he's

7    done.

8         THE WITNESS:  Okay.  Okay.  Okay.

9

10                        EXAMINATION                      05:08

11   BY MR. ASPERGER:

12        Q     So first area, you testified about

13   Mr. Hermalyn's relationship with F -- FVP, correct?

14        A     Right.

15        Q     Which is Fanatics --                       05:08

16        A     Fanatics VIP.

17        Q     Okay.  Do you have knowledge one way or the

18   other that he is employed by Fanatics VIP?

19        A     So I want to make sure I state -- I state

20   this correctly.  So my understanding is that he's an    05:08

21   employee of Fanatics VIP.

22        Q     Do you have knowledge about who cuts the

23   checks?

24        A     That part I do not.  I do not.  Not a hundred

25   percent clear on -- on -- on that.  I can find that out.  05:08
```

                                                    Page 102

```
 1    I can find that out just to be explicitly clear.         05:08
 2         Q    Okay.  So you're not sure whether Fanatics or
 3    Fanatics VIP --
 4         A    VIP cuts the check, right.
 5         Q    Okay.  To your knowledge, is Mr. Hermalyn       05:08
 6    working now in any functional way?
 7         MR. FOGELMAN:  Objection.  Leading and vague.
 8         THE WITNESS:  So the -- the way I describe it is --
 9    is -- is Mike Hermalyn is on the bench.  So the things
10    that he would do in leading VIP, going to events,         05:09
11    organizing and leading the team and building out the
12    strategy, connecting with customers, he is doing none of
13    that.  The other part of his role leading the LA office,
14    extremely limited in that regard, too, because there are
15    VIP resources in the office.  So in an effort to not run  05:09
16    afoul of the injunction, we've been extremely
17    conservative and just had him kind of on the beach.
18    BY MR. ASPERGER:
19         Q    Is he able to perform any of the functions in
20    building out or implementing the strategic plan for       05:09
21    expanding the VIP business?
22         MR. FOGELMAN:  Objection.  Leading.  Lacks
23    foundation.  Vague.
24         THE WITNESS:  Okay.  Can I go now?  So my
25    assessment is -- is -- is no, he's not able to do the job 05:09
```

Page 103

```
 1    in the way we've intended it.  He can't bring the team     05:10

 2    together.  He can't meet with customers.  He can't

 3    execute the strategy.  They can't come in and report to

 4    him so he's not able to do the job in the way we've

 5    intended.                                                  05:10

 6         MR. ASPERGER:  No further questions from me.

 7

 8                      FURTHER EXAMINATION

 9    BY MR. FOGELMAN:

10         Q    Can you identify tasks that Mr. Hermalyn is      05:10

11    performing today for the company?

12         MS. CONLEY:  Objection.  Calls for speculation.

13    Vague.

14         THE WITNESS:  I'd be speculating.  I know the

15    things that he's not doing which I've been clearly         05:10

16    repeating the last -- the last, you know, 90 minutes or

17    whatever the timeline -- the timeline is.  He's --

18    he's -- as we're thinking through other things he can do,

19    but he's not been acting in those -- on those things, so

20    he's essentially on the beach.                             05:10

21    BY MR. FOGELMAN:

22         Q    Are you aware of any events or tasks that

23    were canceled by Mr. Hermalyn because of the April 30th

24    injunction?

25         MS. CONLEY:  Objection.  Vague.  Assumes facts not    05:11
```

Page 104

```
 1    in evidence.  Calls for speculation.                    05:11

 2        THE WITNESS:  I do not have direct -- direct

 3    knowledge of, you know, he canceled this or canceled

 4    that.  I don't have that kind of access to his

 5    calendar -- to his calendar, so I can't say specifically  05:11

 6    this event or that event.  I do know sort of -- we've

 7    sort of -- we've said be conservative, don't go to these

 8    events, don't go to the game but I can't tell you like

 9    specific ones that he canceled out of.

10    BY MR. FOGELMAN:                                         05:11

11        Q     Okay.  And to the extent that Mr. Hermalyn is

12    paid by Fanatics Holdings, he would be no different in

13    that regard than every other employee of Fanatics

14    Holdings, right?

15        MS. CONLEY:  Objection.  Calls for speculation.      05:11

16    Assumes facts not in evidence.  Misstates prior

17    testimony.

18        THE WITNESS:  Yeah --

19        MS. CONLEY:  Argumentative.

20        THE WITNESS:  Sorry.                                 05:11

21            Yeah, so I already -- I'm not a hundred

22    percent on whether it's Fanatics Holdings or Fanatics VIP

23    that cuts his check.  So -- so I can't -- I can't answer

24    your question the way you want as it relates to that I

25    don't believe.                                           05:11
```

Page 105

BY MR. FOGELMAN:                                          05:11

    Q    And other than the name FVP, can you identify

any distinguishing characteristics of FVP that are

different from the company Fanatics Holdings?

    MS. CONLEY:  Objection.  Calls for speculation.          05:12

Vague.  Ambiguous.  Assumes facts not in evidence.

    THE WITNESS:  Yeah, so the answer to your question

in the short term is no, because we haven't built it out.

Fanatics VIP was established, Mike Hermalyn was hired and

then the intention was the work would come to build it        05:12

out and that -- that all stopped, you know.

BY MR. FOGELMAN:

    Q    And your belief is that the only reason that

anything stopped, if anything stopped is because the

Federal Court issued an injunction on April 30th, right?      05:12

    MS. CONLEY:  Objection.  Compound.  Asked and

answered.  Calls for speculation.  Assumes facts not in

evidence.  Argumentative.  Vague.

    THE WITNESS:  Yeah, the first handcuff started

with -- with the TRO and then the -- the next handcuff        05:12

came with the injunction and we've been intentionally

conservative as all this has played out and so we've

limited the things that -- that we've asked Mike Hermalyn

to do to the point where he's not bringing the team

together.  We did not move them under him.  He's not          05:13

                                                    Page 106

```
 1    managing them.  He's not building out the strategy and        05:13

 2    he's not going to events, all the things that you would

 3    do to flush out a VIP program.

 4    BY MR. FOGELMAN:

 5        Q    Well, let me ask you this question.  The            05:13

 6    first time FVP has ever asked any court for relief of any

 7    kind related to DraftKings was last week or earlier this

 8    week when FVP asked the Court for a TRO, right?

 9        MS. CONLEY:  Objection.  Outside the scope of

10    redirect.  Vague.  Calls for a legal conclusion.  Calls      05:13

11    for speculation.  Improper hypothetical.

12        THE WITNESS:  I'm not going to be able to answer

13    that question.

14    BY MR. FOGELMAN:

15        Q    You're not sure?                                    05:13

16        A    I'm not sure.

17        Q    Okay.  Can you -- do you know why -- assume

18    that's correct that this is the first week that FVP's

19    ever asked for any relief from any court, why FVP didn't

20    ask for any relief earlier than this week?                   05:14

21        MS. CONLEY:  Objection.  Improper hypothetical.

22    Vague.  Argumentative.  Assumes facts not in evidence and

23    outside the scope of the redirect.

24        THE WITNESS:  Yes, so my answer would be similar.

25    I -- I don't know.  So the legal strategy and why this       05:14
```

Page 107

```
 1   happened here versus here, that I don't know.          05:14

 2   BY MR. FOGELMAN:

 3        Q     And are you able to identify any differences

 4   at the company that took place after the TRO was issued

 5   by the Federal Court in Boston that are different from    05:14

 6   what the company claims is taking place now after the

 7   injunction was issued on April 30th?

 8        MS. CONLEY:  Objection.  Calls for speculation.

 9   Vague.  Argumentative.  Assumes facts not in evidence and

10   outside the scope of the redirect.                       05:14

11        MR. ASPERGER:  Do you understand the question?

12        THE WITNESS:  Yeah, I understand the question.  I

13   can't answer it because there's -- there's a distinction,

14   you know, of the TRO and I'd have to understand the --

15   the detail.  What I do know is that our response has been  05:14

16   to be conservative which then -- we've then limited the

17   things that Hermalyn has done in terms of events, again,

18   leading and managing members of the would be team that we

19   had intended to come and work for him.  But the exact

20   timeline of -- of how the distinction between TRO and the  05:15

21   injunction, I -- I would -- I'd be speculating to try to

22   weigh in on that.

23   BY MR. FOGELMAN:

24        Q     And who at the company made the decision to

25   be conservative as opposed to being less conservative     05:15
```

Page 108

```
 1    whatever that might mean?                              05:15

 2         MR. ASPERGER:  Just interpose an objection to the

 3    extent it's from lawyers, where there's discussions among

 4    lawyers, that would be privileged.  But to the extent

 5    you've had business discussions, you can answer.       05:15

 6         THE WITNESS:  Yeah, I mean --

 7         MS. CONLEY:  Objection.

 8         THE WITNESS:  I'm sorry.

 9         MS. CONLEY:  Objection.  Calls for speculation and

10    assumes facts not in evidence and outside the scope.   05:15

11         THE WITNESS:  So the response has been -- or the --

12    the standard has been we -- we -- we don't want to do

13    anything that has us run afoul with any court decision

14    and so thus being conservative.

15         MR. FOGELMAN:  Okay.  Reserving our rights as I     05:16

16    described earlier, not repeating them.  We're going to

17    stop for the day.  Thank you, sir.

18         THE WITNESS:  Thank you.  Appreciate it.

19         MR. FOGELMAN:  Take off the microphone.

20         THE VIDEOGRAPHER:  Okay.  This marks the conclusion 05:16

21    --

22         MR. ASPERGER:  Yeah, you can go off the record.

23         THE VIDEOGRAPHER:  This marks the conclusion of

24    today's deposition.  We're going off the record.  The

25    time is 5:16 p.m.                                      05:16
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1                                                                          05:16

2              (Whereupon the deposition proceedings

3          were concluded at 5:16 p.m.)

4

5

6                        -o0o-

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 110

1

2

3          I, THE UNDERSIGNED, DO HEREBY CERTIFY UNDER

4    PENALTY OF PERJURY THAT I HAVE READ THE FOREGOING

5    TRANSCRIPT; THAT I HAVE MADE ANY CORRECTIONS AS APPEAR

6    NOTED, IN INK, INITIALED BY ME, OR ATTACHED HERETO; THAT

7    MY TESTIMONY AS CONTAINED HEREIN, AS CORRECTED, IS TRUE

8    AND CORRECT.

9          EXECUTED THIS _____ DAY OF _____,

10   2023, AT _____, _____.

11              (CITY)                    (STATE)

12

13

14        _____

15                  ORLANDO ASHFORD

16

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1

2      I, MICHELLE MEDEL SABADO, RPR, CRR, CSR NO. 7423, IN

3   AND FOR THE STATE OF CALIFORNIA, HEREBY CERTIFY:

4      THAT PRIOR TO BEING EXAMINED, THE WITNESS NAMED IN

5   THE FOREGOING DEPOSITION WAS DULY SWORN BY ME TO TESTIFY

6   THE TRUTH, THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH;

7      THAT SAID DEPOSITION WAS TAKEN DOWN BY ME IN

8   SHORTHAND AT THE TIME AND PLACE THEREIN NAMED, AND

9   THEREAFTER REDUCED TO TYPEWRITING UNDER MY DIRECTION, AND

10   THE SAME IS A TRUE, CORRECT AND COMPLETE TRANSCRIPT OF

11   SAID PROCEEDINGS;

12      THAT IF THE FOREGOING PERTAINS TO THE ORIGINAL

13   TRANSCRIPT OF AN EXAMINATION IN A FEDERAL CASE, BEFORE

14   COMPLETION OF THE PROCEEDINGS, REVIEW OF THE TRANSCRIPT

15   { } WAS  {  } WAS NOT REQUIRED.

16      I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE

17   EVENT OF THE ACTION.

18      WITNESS MY HAND THIS 23RD DAY OF MAY, 2024.

19

20                    *Michelle M. Sabado*

21                    MICHELLE MEDEL SABADO

                      RPR, CRR, CSR NO. 7423

22

23

24

25

                                        Page 112

```
1    JAMES ASPERGER, ESQ.

2    jimasperger@quinnemanuel.com

3                                May 23, 2024

4    RE: Michael Z. Hermalyn And FVP, LLC  v. Draftkings, Inc.

5    5/22/2024, Orlando Ashford, (#6719784).

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   _X_Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, notating the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20      Contact Veritext when the sealed original is required.

21   __ Waiving the CA Code of Civil Procedure per Stipulation of

22      Counsel - Original transcript to be released for signature

23      as determined at the deposition.

24   __ Signature Waived - Reading & Signature was waived at the

25      time of the deposition.
```

Page 113

1    __ Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2        Transcript - The witness should review the transcript and

3        make any necessary corrections on the errata pages included

4        below, notating the page and line number of the corrections.

5        The witness should then sign and date the errata and penalty

6        of perjury pages and return the completed pages to all

7        appearing counsel within the period of time determined at

8        the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10       requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Michael Z. Hermalyn And FVP, LLC  v. Draftkings, Inc.

Orlando Ashford (#6719784)

E R R A T A   S H E E T

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

_____    _____

    (Orlando Ashford)                                        Date

Page 115

**[& - absolutely]**

| & | 2 | 3 | 7 |
|---|---|---|---|
| **&**  2:13,18 3:5 113:24 114:9 | **20**  5:8<br>**2022**  7:4,7<br>**2023**  111:10<br>**2024**  1:16 2:3 5:2,8 9:21 31:20,24 41:20 81:6,21 112:18 113:3<br>**2025**  61:5,16 90:13 93:17<br>**2025.520**  113:9 113:12<br>**2029**  2:3 3:6 5:11<br>**213.443.3000**  2:20<br>**213.683.9100**  2:15<br>**22**  1:16 2:3 5:2 5:8<br>**22,000**  32:13 76:13<br>**22nd**  31:20,22 41:19<br>**23**  113:3<br>**23rd**  34:5 112:18<br>**24**  95:11,12<br>**24stcv02694**  1:7 5:20<br>**26263**  112:20 | **30**  4:13 41:21 114:1<br>**30th**  18:10,16 18:22 19:8 20:19 43:24 44:19,23 45:18 47:14 48:2,10 48:11 50:2 56:6 58:25 61:4 104:23 106:15 108:7<br>**310.552.8500**  3:7<br>**33**  100:9<br>**350**  2:14<br>**36**  4:17<br>**39**  4:18 | **7423**  1:25 2:5 112:2,21 |

| 1 | | | 8 |
|---|---|---|---|
| **1**  4:13 8:16 12:22 30:2,4,8 30:15,17,22 31:11 38:19 57:18 59:23 60:1 62:2 69:11 81:6 114:1<br>**102**  4:5<br>**104**  4:4<br>**10th**  2:19<br>**11**  4:18 32:1 41:20,21<br>**111**  42:11<br>**11th**  34:4<br>**120**  11:5<br>**121**  31:24 32:2 41:19<br>**124**  20:4,4 85:8<br>**13th**  41:22,22 43:7 45:18,25 46:12 47:1 48:1<br>**15**  20:5,6 85:8<br>**16th**  7:6<br>**18**  4:17<br>**1st**  31:19 41:19 46:11 81:21 | | | **80**  32:20 40:17 60:8 74:12<br>**865**  2:19 |

| | | 4 | 9 |
|---|---|---|---|
| | | **4000**  3:6<br>**49**  92:15<br>**4:23**  66:15,17 | **90**  11:5 100:11 100:13 101:13 101:18 102:1 104:16<br>**90017**  2:19<br>**90067**  3:6<br>**90071**  2:14<br>**99**  38:20 |

| | | 5 | a |
|---|---|---|---|
| | | **5/22/2024**  113:5<br>**50**  8:17 12:23<br>**50th**  2:14<br>**5:07**  100:24 101:1 | **abilities**  17:10 82:17<br>**ability**  47:12 51:5 82:22<br>**able**  21:6 49:5 51:21 56:25 59:21 60:6 68:8,22 73:3 82:1,18,24 86:19 92:14,23 103:19,25 104:4 107:12 108:3<br>**above**  113:6<br>**absolutely**  65:14 86:7 |

| | | 6 | |
|---|---|---|---|
| | | **6**  4:4<br>**60**  60:3<br>**6719784**  1:24 113:5 115:2 | |

**[acceptable - answer]**

| | | | |
|---|---|---|---|
| **acceptable** | **actually** 57:15 | **alayna** 3:12 6:1 | 31:18,25 32:4 |
| 50:24 54:8 | 73:8 | **aligned** 76:2 | 32:23 34:24 |
| **access** 55:13,14 | **add** 90:8 96:6 | **allow** 61:23 | 35:6 41:4 43:7 |
| 56:4 81:17 | 96:21 | 62:1 82:25 | 45:1 74:19 |
| 105:4 | **adding** 16:14 | 84:18,18 93:10 | 76:8,18 77:2 |
| **accommodate** | **addition** 21:4 | **allowed** 14:22 | 83:16 84:6,21 |
| 34:7 | **address** 27:1 | 16:1 20:25 | 86:20 93:3 |
| **accomplish** | **administer** | 22:2,24 28:8 | 98:22 |
| 62:11 | 6:10 | 59:10 86:12 | **anne** 2:13 6:7 |
| **accomplishable** | **administrative** | 90:8 97:12 | **anne.conley** |
| 63:10 | 40:19 | **allowing** 19:24 | 2:15 |
| **accomplished** | **admit** 101:3 | 84:15 | **answer** 4:16 |
| 61:14 62:8 | **admitted** | **alter** 60:14 | 10:24 11:1 |
| **account** 66:19 | 101:24,25 | **ambiguous** | 12:16 15:3 |
| 72:17 | 102:2 | 49:14 51:15 | 16:10,11 19:5 |
| **accounting** | **advertise** 38:21 | 64:10 99:17 | 19:7,15 20:1 |
| 10:20 | 38:24 | 106:6 | 23:11,16 26:16 |
| **accurate** 40:5 | **advertising** | **ambition** 9:5 | 29:7,9 32:7 |
| 52:8 58:11 | 39:3,3 | 58:14 82:24 | 33:13 35:10,12 |
| **accusing** 27:13 | **afoul** 13:16 | 90:18 93:10,13 | 35:14 36:7,17 |
| **achieve** 61:23 | 21:7 43:17,19 | **ambitions** | 36:25 38:6,14 |
| **acting** 104:19 | 52:15 93:8 | 57:14 | 39:6,15 40:1,9 |
| **action** 5:13 | 103:16 109:13 | **ameche** 73:16 | 42:20 44:11 |
| 28:13 87:10 | **afternoon** 5:6 | 73:18 | 47:9 48:13 |
| 112:17 | **agree** 11:1 41:3 | **amendment** | 49:15 51:1,3,5 |
| **actions** 27:23 | 54:9 101:11,25 | 58:23 | 51:7,19,21 |
| **activation** | **agreed** 35:23 | **amount** 90:8 | 53:8 62:14 |
| 59:24 | 37:14,16 | **analysis** 66:2 | 63:14 64:11,13 |
| **activities** 42:14 | 100:10 | 95:21 96:4,9 | 66:5,22,24 |
| 47:24,25 83:12 | **agreement** 94:6 | **anchor** 15:17 | 67:5 71:21 |
| **activity** 13:7 | **ahead** 41:8 | **anchoring** 15:6 | 72:12 74:8 |
| 20:11 21:7,24 | 51:7,14 70:1 | **andrew** 3:23 | 75:15,22 78:23 |
| 46:7,20 47:21 | 87:15 97:21 | **angeles** 1:2 2:4 | 79:18,19 80:6 |
| **actual** 57:5 | 102:4 | 2:14,19 3:6 5:1 | 82:13,15 83:8 |
| 63:5 87:10 | | 5:10,12 30:18 | 83:10,21 85:2 |

**[answer - asperger]**

86:6 88:8,10
90:4 92:23
96:24 98:2,14
105:23 106:7
107:12,24
108:13 109:5
**answer's** 51:18
**answered** 14:8
14:9 16:11
21:17 22:19
23:13 26:17,24
28:19 29:5
33:9 34:16
35:21 36:4
46:3 51:17
53:16 60:18
61:17 63:12
64:7 65:7
67:24 68:16
69:25 72:11
75:19 78:12
81:8 85:4
86:23 87:1
96:14 97:3,12
97:23 106:17
**answers** 11:23
14:1 96:20
**anybody** 14:15
17:18
**anyway** 77:16
**apart** 67:20
96:3
**apartment**
99:25

**apologize** 69:9
70:4 77:14
**appeal** 87:9
**appeals** 87:10
**appear** 111:5
**appearances**
2:9 3:2
**appearing** 5:25
6:5 24:16
113:18 114:7
**appears** 30:17
31:16
**applies** 85:23
**apply** 37:9
92:15
**appointed** 49:2
**appreciate**
109:18
**approve** 78:25
79:8
**april** 18:10,16
18:22 19:8
20:19 43:24
44:19,23 45:18
47:14 48:2,10
48:11 50:2
56:6 58:25
61:4 104:23
106:15 108:7
**area** 76:25
102:12
**areas** 101:9
**argue** 11:5
23:20,24 27:7
37:5,17 63:25

**argument** 22:7
**argumentative**
19:1 20:22
23:9 24:20
28:18 34:14
35:1 38:13
41:10 42:18
43:1,9 46:16
47:5 51:15
73:12 75:20
85:4 86:24
87:18 89:7
90:14 93:6,18
96:18 97:25
99:16 105:19
106:18 107:22
108:9
**armillei** 3:15
6:6
**arms** 69:10
**ashford** 1:15
2:2 4:3 5:13
6:12 111:15
113:5 115:2,24
**aside** 28:11
63:4
**asked** 10:6 14:8
14:9 21:17
22:19,23 26:17
26:24 28:19
29:5 33:9 36:4
41:1 50:6
51:17 60:18
61:17 63:12
64:6 65:7

67:23 69:25
72:11 75:19
78:11 81:8
82:1 85:3
86:23 87:1
89:10 94:25
97:11,23 99:6
101:19 106:16
106:23 107:6,8
107:19
**asking** 22:5,14
25:16,24 26:5
27:10,19 34:8
38:1 46:6
67:17 75:23
79:5 83:5
84:22 95:17
97:14
**asks** 21:18
47:17 61:7
87:17
**aspects** 85:22
**asperger** 2:18
4:5 6:4,4 9:24
10:3,9,23
11:21,25 12:7
12:14,16 14:8
15:1 16:9
18:25 19:11,13
19:17 20:21,23
21:17 22:6,10
22:19 23:7,12
23:20,24 24:21
24:24 25:3,14
26:10,21,24

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[asperger - belief]**

27:11 28:3,16
29:4,17 30:20
30:24 32:5
33:8,11 34:12
34:14,16,19,25
35:21 36:4,20
36:24 37:7,11
37:14,20,24
38:11 39:14,18
40:1,7 41:7,9
41:23 42:2,19
43:11 44:1,4
44:11,20 45:3
45:6,19 46:2
46:15 47:3,15
48:3,12 49:10
50:4,18 51:14
52:20 53:7,16
53:19,23,25
54:2,11,17
56:8 57:25
59:1,17 60:16
61:17 63:12
64:6 65:1,22
65:25 66:4,7
67:23 68:15
69:5,24 70:1,3
71:21,23,25
72:21 74:6
75:7,19 76:11
77:10 79:13,25
80:2,13 81:8
81:22 82:11
83:8,17 84:7
84:25 86:22

87:14,19 88:6
88:23 90:2
94:10 95:24
96:14 97:3,10
97:19,21 101:9
101:15,20
102:11 103:18
104:6 108:11
109:2,22 113:1
**assess**  77:7
86:1 94:20,20
**assessed**  20:4
**assessment**
73:19 103:25
**assigned**  49:7
50:3 51:11
74:19 81:17
**associated**
72:17 89:22
**assume**  107:17
**assumes**  41:11
45:14,21 46:16
47:4,18 49:12
50:5 51:16
54:19 64:9
65:6 73:11
74:23 75:21
78:10,21 80:14
80:25 85:4
87:17 89:7
92:3,18 93:19
96:7,17 97:24
98:7,23 99:10
104:25 105:16
106:6,17

107:22 108:9
109:10
**assuming**  36:22
65:18
**attached**  111:6
**attempt**  100:12
**attend**  80:18
88:5,16
**attendance**
80:9,24
**attends**  78:18
**attention**  54:6
**attorney**  5:23
96:2,2
**attorneys**  96:1
96:3
**attract**  57:18
82:18
**attributable**
68:12,13 71:15
**attributed**
71:16,20
**avenue**  2:14
**avoid**  21:10
**aware**  13:9
29:1,2,13
47:12 53:13
62:7 66:6
68:12 75:4,16
80:8,9 89:20
96:4,9,11,25
104:22

**b**

**b**  4:11 114:1
**back**  11:6 14:3
15:20 27:21
33:4 54:10,15
60:12 85:7
101:12
**background**
16:22 52:15
**bad**  39:3
**bank**  66:19
72:16
**base**  8:12,13,16
38:19
**based**  7:8 13:8
13:18 15:11,13
24:7,9 32:14
32:14 33:2
74:11 76:3
79:9 91:23
**basically**  25:16
**basketball**  60:1
**beach**  103:17
104:20
**beck**  3:20,20,21
**began**  85:7
**beginning**  9:10
**behalf**  2:2 5:19
6:5,8 41:2
78:19 84:1
86:11
**belief**  8:20
52:18 61:23
69:8,16 79:9
79:23 80:4

Page 4

[belief - calls]

106:13
**believe** 18:24
19:20 20:6
21:15 22:17
28:1 31:5
44:16 52:7
61:14 62:8
74:8 82:3
83:14 95:25
97:15 105:25
**believes** 95:22
97:1
**bench** 103:9
**best** 32:11
41:13,14 65:14
100:11 101:3
**bet** 67:12
**better** 9:14
74:7,9
**betting** 8:10
9:18 11:10
13:20 14:20,21
14:24 15:4
60:3 62:24
71:10 91:11,18
**beyond** 16:5
28:3,16,17
29:4 30:25,25
31:3,4,5 32:5,6
34:17 36:25
39:15 42:3
44:4 45:7,20
47:15 48:3
56:8 57:7 59:3
82:12 84:7

**big** 77:4
**bigger** 91:8
**billion** 70:20
72:5
**bit** 73:24 85:17
**board** 39:11,17
39:17,25 40:10
40:11
**body** 8:1 88:1
**book** 85:18,22
94:23
**books** 67:2,20
**boost** 8:22
**born** 9:7 13:13
**borne** 79:11,24
**boston** 21:14
25:10 82:10
87:8 93:4
108:5
**bottom** 30:5
**boulevard**
30:19
**bowl** 79:3
**brad** 6:1
**bradley** 3:14
**break** 26:20
27:3,19 66:8
66:10,11 70:6
100:13
**brief** 101:10
**bring** 13:19
48:19 54:6
57:16 59:21
83:25 104:1

**bringing** 77:6
106:24
**brought** 9:17
14:12 90:10
**build** 68:6
74:25 77:18
83:25 91:14
92:9 93:11
106:10
**building** 31:17
32:24 33:2
89:22 103:11
103:20 107:1
**built** 69:10
106:8
**bumping** 21:9
**business** 8:17
8:18,20,23,24
9:1,2,12,16,18
12:24,24,25
15:7,9,15,15
20:12,12 21:2
22:23 23:1,1
25:22 32:23,24
36:9 38:17,22
48:18 49:2
57:5,5,17,23
58:24 59:10,16
59:25 60:14
62:1 65:14
67:11,15 68:6
69:10,11 70:11
71:9,11 75:25
76:21,21 77:1
77:5 82:19

83:3 86:4,13
88:9 91:12
93:12 96:5
100:3 103:21
109:5
**businesses** 8:10
32:22 35:13
36:9 38:18,20
68:20 76:3,22
76:23,25
**busy** 76:20
**buy** 67:12
68:20

**c**

**ca** 113:9,12,21
**calendar** 105:5
105:5
**california** 1:1
2:4,14,19 3:6
5:1,10 13:18
14:21,25 15:4
15:5,8,13
16:14 37:3
50:19 74:10,11
74:12 75:1
76:4 82:9 83:6
84:2 92:10,15
101:25 102:2
112:3
**call** 7:19 9:10
39:6 69:6
**calling** 24:17
**calls** 21:19 23:7
25:14 29:4,10
32:6 35:8

**[calls - come]**

36:22 39:13
41:9,23 42:2
42:19 43:1,9
45:7,19 46:17
47:16 48:4
49:13 50:6
51:16 52:20
53:7 54:19
56:20,20 57:9
59:4 64:9
66:21 69:5
70:16 72:21
73:22 74:22
75:20 76:11
77:24 79:13
80:15 81:1,23
82:11 83:9,18
84:8 85:5
87:19 89:6,17
90:14 91:3,22
92:3,17 93:6,6
93:19 96:8,16
97:22,23 98:24
99:10,17
104:12 105:1
105:15 106:5
106:17 107:10
107:10 108:8
109:9
**canceled**
104:23 105:3,3
105:9
**candidates**
20:4,4,5

**candle**  85:11
**capability**  77:8
**capable**  20:1
64:3 77:17
**capacity**  14:19
25:25
**captured**  67:14
**card**  4:13 30:3
30:17 31:16
41:17 75:3,8
**care**  56:22
**carrying**  77:17
**carve**  83:12
92:14
**case**  1:7 5:19
37:7 39:21,24
69:22 112:13
**catch**  100:20
**cause**  28:4
**caused**  43:23
44:16 63:2
**causes**  22:2
**ccp**  113:9,12
**ceased**  13:8
16:15 20:10
**cell**  55:15,24
56:4
**century**  2:3 3:6
5:12
**ceo**  21:5 32:23
**ceo's**  15:7,11
74:11 76:22
**certain**  94:11
**certify**  111:3
112:3,16

**cfo**  69:7,8
70:21 79:7
**chance**  24:12
**change**  26:12
55:7 59:20
81:15,19 115:4
115:7,10,13,16
115:19
**changed**  10:7
55:10 81:7,12
81:25 82:2,5
**changes**  59:2
59:15
**changing**  75:24
**characteristics**
106:3
**check**  103:4
105:23
**checking**  56:22
**checks**  102:23
**chief**  77:5
90:23 91:6
98:18
**choice**  74:15,16
**chose**  76:14
**circles**  26:21
**circuit**  87:9
**city**  111:11
**civil**  113:19,21
**claim**  23:4
28:13 31:6
43:23
**claiming**  19:10
20:17

**claims**  108:6
**clarified**  94:11
**clarify**  16:7
20:14 24:18
34:15,18,21
49:6 68:11
78:4 94:5
101:9,22
**clear**  35:18
37:2,21 39:2
44:7 52:11
63:17 67:17
72:4 83:5
86:18 96:23
102:25 103:1
**clearly**  28:20
28:20 36:25
54:3,8 82:5
104:15
**client**  96:2
**clients**  11:15
**close**  70:20
**code**  113:9,12
113:19,21
**colleague**  77:14
**colleagues**  6:1
**collect**  67:12
**collectables**
8:11 12:24
32:23,24,25
33:25 34:1
76:7,18,20
**come**  13:22
19:24 35:16
48:17 49:17

**[come - conservative]**

| | | | |
|---|---|---|---|
| 57:16 59:9 | **compensation** | 12:2,4 18:4 | 87:16 88:11,17 |
| 68:8 84:17 | 98:11,17 | 19:1,12 20:20 | 88:24 89:6,17 |
| 86:10 90:18 | **competitor** | 20:22 21:18 | 90:1,14,21 |
| 91:16,17,18 | 94:8 | 23:9 24:10,12 | 91:3,21 92:2 |
| 98:11 104:3 | **complete** | 24:15 25:13 | 92:17 93:5,18 |
| 106:10 108:19 | 112:10 | 26:11,14,20 | 95:5,7,14 96:6 |
| **comes** 20:18,24 | **completed** 17:5 | 27:6 28:15,18 | 96:16 97:20,22 |
| 60:6 | 113:7,17 114:6 | 29:8,10 32:8 | 98:6,12,23 |
| **coming** 50:23 | **completion** | 32:10 33:7 | 99:9,16,21 |
| 62:25 | 112:14 114:10 | 34:11 35:1,8 | 100:1,7,10 |
| **commencing** | **compound** 18:4 | 35:20,23 36:13 | 102:2 104:12 |
| 2:2 | 20:23 28:18 | 36:19,21 38:12 | 104:25 105:15 |
| **comment** 11:22 | 32:8 62:12 | 39:12 40:3 | 105:19 106:5 |
| 14:10 | 70:16 72:10,21 | 41:6,8,10 42:5 | 106:16 107:9 |
| **commerce** 8:11 | 78:22 81:22 | 42:17,25 43:8 | 107:21 108:8 |
| 12:25 | 83:17 93:20 | 45:12,21 46:14 | 109:7,9 |
| **communicated** | 97:23 106:16 | 46:16 47:2,4 | **connect** 15:17 |
| 56:10 | **concept** 9:2 | 47:17 49:12 | 85:24 |
| **communicati...** | **concluded** | 50:5 51:13,15 | **connected** |
| 56:14,15,21 | 110:3 | 52:7 54:18 | 10:10 |
| **company** 17:1 | **conclusion** | 55:5,8,16,20 | **connecting** |
| 22:3 26:1,6 | 21:19 25:15 | 56:17,19 57:7 | 10:1 103:12 |
| 45:18,24 47:8 | 29:11 47:17 | 58:4,19 59:3 | **connection** |
| 47:13 53:5 | 61:8 82:12 | 60:18 61:7,19 | 10:4,5 38:23 |
| 55:19 57:11 | 83:9,18 84:8 | 62:12 64:9 | 80:23 82:9 |
| 60:22 77:22 | 84:17 85:5 | 65:3,5 66:20 | 85:19,23 88:21 |
| 78:8,14 81:12 | 87:18 93:7 | 67:3,8 68:1 | 89:15 |
| 84:23 86:20 | 96:17 97:24 | 69:25 70:16,25 | **connections** |
| 89:25 90:5 | 107:10 109:20 | 71:17 72:10,20 | 82:18 86:3 |
| 94:23 97:16 | 109:23 | 72:23 73:10,22 | **conservative** |
| 98:11 99:13,24 | **conduct** 27:2 | 74:22 75:20 | 43:13,20 |
| 104:11 106:4 | **confident** 73:24 | 77:23 78:10,21 | 103:17 105:7 |
| 108:4,6,24 | **conley** 2:13 | 79:15 80:12,14 | 106:22 108:16 |
| **company's** | 5:16 6:7,7 | 80:25 83:19 | 108:25,25 |
| 93:2 | 10:11,18,22 | 85:3 86:24 | 109:14 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[consider - data]**

| | | | |
|---|---|---|---|
| consider 70:22 | core 38:20 | county 1:2 | creation 7:23 |
| consideration | corner 30:6 | couple 58:20,20 | critical 71:12 |
| 20:7 | corporate 8:11 | court 1:1 6:10 | crr 1:25 2:5 |
| consistent 32:2 | 8:12 62:25 | 6:20 11:22 | 112:2,21 |
| 86:16 | corporation | 17:13,20 18:2 | crutcher 3:5 |
| contact 40:20 | 15:10 | 18:11,15,22 | csr 1:25 2:5 |
| 113:9,20 | correct 9:22 | 19:9,21 20:18 | 112:2,21 |
| contained | 17:4 22:11 | 21:14 22:8,8 | cultural 86:1 |
| 111:7 | 29:3,14 33:6 | 22:16 23:6 | 94:20 |
| contend 25:11 | 35:19 50:18 | 24:25 25:10 | culture 40:21 |
| 26:8 27:24 | 52:19 53:14 | 26:7 27:22 | 40:25 77:4,7 |
| context 9:9 | 54:4 55:4,7 | 29:3 30:4,9 | 77:17 |
| 12:19 15:2 | 57:24 59:16 | 44:8 50:23,24 | current 60:7 |
| 33:24 35:11 | 64:21,25 68:14 | 50:25 51:4 | 94:7 |
| 38:15 67:9 | 69:23 72:9 | 54:9 61:4 70:3 | currently 53:5 |
| continue 52:3 | 73:9 78:9 | 82:8,10 83:6,6 | 53:14 54:16 |
| 83:15 88:5 | 79:12 86:21 | 83:16 84:5,12 | 56:5 63:10 |
| 89:4 101:12 | 99:7 102:13 | 84:14,20,21,23 | 64:4,24 67:12 |
| continued 3:2 | 107:18 111:8 | 86:14,20 87:7 | 83:13 92:1 |
| continues | 112:10 | 87:10,12 88:1 | cursory 85:19 |
| 11:16 14:18 | corrected | 93:4,9 95:23 | customer 8:13 |
| contracts 94:18 | 101:16 111:7 | 106:15 107:6,8 | 8:16 12:21 |
| conversation | correcting 54:7 | 107:19 108:5 | 38:19 58:15 |
| 89:21 94:25 | corrections | 109:13 | customers 8:13 |
| conversations | 111:5 113:14 | court's 54:6 | 8:19,21 15:13 |
| 21:9 34:6 | 113:15 114:3,4 | cover 99:4 | 103:12 104:2 |
| 43:19 52:13,16 | correctly | covered 96:1 | cut 48:15 |
| 52:23 57:1 | 102:20 | create 8:18 | cuts 102:22 |
| 58:12,14 85:22 | counsel 2:9 3:2 | 12:20 68:22 | 103:4 105:23 |
| 88:7 89:10 | 3:23 27:13,16 | 82:17 85:19 | |
| 99:2 | 30:5,7 31:15 | 86:2 | **d** |
| conversion | 41:18 50:15,22 | created 8:25 | d 4:1 |
| 60:3 | 53:18 97:8 | 11:8 | damages 95:22 |
| copies 30:7 | 101:21 113:18 | creating 9:12 | 96:13 97:2,18 |
| | 113:22 114:7 | 85:22 | data 4:13 75:3 |
| | | | 75:8 |

**[date - distinction]**

**date** 29:2 51:4
  95:8 113:16
  114:5 115:24
**david** 3:15 6:6
**day** 12:6 33:16
  41:21 42:14,14
  45:9,9 46:21
  46:21,23,23
  53:10,10 82:1
  82:1,5,5
  109:17 111:9
  112:18
**days** 31:24 32:2
  32:13 41:19
  42:11,21
**debate** 27:16
**december**
  31:19
**decide** 22:8
**decides** 54:9
**decision** 7:15
  7:16,18 8:1
  12:19 13:3,6
  74:14,25 76:5
  91:8,13,14
  92:8,8 108:24
  109:13
**decisions** 40:24
  98:17
**deck** 58:16,18
  58:18,24 59:7
**dedicated** 35:6
**deem** 21:1
  67:13

**deemed** 20:8
**defendant** 1:9
  2:2 3:4 5:25
**defendant's**
  30:8
**defendants**
  5:19
**definitely** 86:13
**deliver** 65:14
**demoted** 55:3
  55:10
**department**
  38:7
**depending** 32:1
**deposed** 6:24
**deposing** 42:3
**deposition** 1:15
  2:1 5:13,18
  24:19 27:17
  28:5,6 35:24
  36:14,21 37:8
  37:25 38:13
  39:13 41:12
  42:18 43:1,9
  54:19 55:21
  57:8 59:4
  66:21 79:16
  88:25 89:19
  90:22 91:22
  95:15 98:7,13
  102:1 109:24
  110:2 112:5,7
  113:19,23,25
  114:8,10

**depositions**
  101:21
**depth** 85:20
**describe** 56:13
  59:19 91:4
  92:4 103:8
**described** 8:24
  41:5 59:1,7
  66:3 84:10
  89:4 97:4
  109:16
**description**
  4:12
**designated**
  26:1,5 34:19
  35:5 79:10
**desire** 82:20
**desired** 83:24
**desk** 48:24
**detail** 64:13
  92:23 108:15
**detailed** 85:21
**details** 100:5
**determined**
  113:18,23
  114:7
**develop** 89:4
**development**
  89:15
**differences**
  108:3
**different** 9:9,13
  10:12,13 12:11
  17:8 34:22
  35:15 36:11

  48:10 62:22
  87:2 105:12
  106:4 108:5
**differently**
  101:22
**difficult** 51:2
**digital** 85:13
**dinner** 94:17
  94:18 95:3
**direct** 105:2,2
**direction** 112:9
**directly** 20:5
**disagree** 27:19
  27:20 38:2
  54:8,9
**disagreement**
  11:4
**discuss** 94:5
**discussing**
  59:15 92:21
  93:15
**discussion**
  94:18 98:20
**discussions**
  7:17,22 53:3
  60:13 74:18
  100:15 109:3,5
**dispersed**
  62:24 65:12,20
**disrespectful**
  27:6
**distinct** 8:10
  68:13,22 70:8
**distinction**
  108:13,20

Page 9

**[distinguishing - entity]**

**distinguishing**
106:3
**distributed**
49:19 63:20
**distribution**
62:21
**divvied** 48:21
78:14
**document**
32:10 42:5,6
**dodge** 3:22
**doing** 9:20 10:8
20:1 21:10,11
24:8 46:6
47:21,25 48:1
48:6,10,16,22
49:21 50:2,21
53:5,11,13,14
53:17 56:23
64:4,5,17,18
69:13,20 74:9
75:17 103:12
104:15
**dollars** 70:20
72:5
**draftking** 60:8
**draftkings** 1:8
3:22,23 5:18
5:25 21:15
22:17 24:3
25:11,17,18
26:8 27:24
28:7,13 29:2
84:6,24 86:21
87:6,7,9,12,23

107:7 113:4
115:1
**drive** 8:19
62:20 69:11
**drives** 8:16
12:23
**duly** 6:13 112:5
**dumbfounded**
101:17
**dunn** 3:5,12,13
3:14,18,19
5:24
**duties** 40:19
55:11 82:5

**e**

**e** 4:1,11 37:15
55:13,14,23
57:21 58:10
113:9,12 114:1
115:3,3,3
**earlier** 13:2
51:24 89:5
107:7,20
109:16
**earned** 67:7,14
**easier** 24:24
**east** 2:3 3:6
5:12
**easy** 12:4
**effect** 60:15
**effective** 65:13
**efficiency** 63:4
64:1 66:3
**efficient** 48:24
65:13,13

**effort** 12:20
13:16 21:7,22
43:19 103:15
**efforts** 100:11
**eight** 20:6 85:9
**either** 64:23
79:6,6
**elaine** 3:11 5:8
**element** 77:4
**elements** 23:1
58:6
**emanuel** 2:18
3:15 6:4,6
**embodied**
85:21
**employed** 11:7
11:8 16:18
47:20 73:18
81:24 102:18
**employee** 16:2
16:4,7,12
32:18 33:1,5
33:16 46:5,7,8
46:18 47:8
55:23 72:16
73:1,8,13 81:5
81:12,21 82:4
102:21 105:13
**employee's**
32:13
**employees** 14:6
15:21 16:13
32:13,20,25
34:23 40:17
60:22 74:12

76:14
**employer** 94:7
94:7
**employment**
81:7,11,13,20
**employs** 78:7
**en** 71:10
**enable** 8:19
13:5 21:2
38:18 60:7
84:13 86:3,11
**enabled** 59:12
**enabler** 67:10
76:21 77:2
**enablers** 77:1
**enabling** 71:9
71:10
**encouraged**
43:21
**ended** 85:21
**energy** 21:23
86:2
**engage** 52:3
**engaged** 46:18
47:20 51:20
70:10
**engine** 15:9
**entered** 37:12
**entire** 15:10
**entities** 13:19
35:15 36:11
62:25
**entitled** 5:13
**entity** 11:8
34:23 68:21,23

**[entity - fanatics]**

69:23 70:8,14
72:8 77:2
81:17
**entrenched**
60:9
**equipped**  64:13
**errata**  113:14
113:16 114:3,5
**especially**  12:8
**esq**  2:13,18 3:5
113:1
**essentially**
68:24 104:20
**established**
106:9
**estate**  38:7
**event**  78:18
105:6,6 112:17
**events**  40:24
88:5,16,21
103:10 104:22
105:8 107:2
108:17
**evidence**  32:11
36:23 41:11
45:15,22 46:17
47:4,5,18
49:13 50:6
51:16 54:19
64:10 65:6
73:11 74:23
75:21 78:11,22
80:15 81:1
83:20 85:5
87:17 89:7

92:3,18 93:19
96:8,17 97:24
98:24 99:10
105:1,16 106:6
106:18 107:22
108:9 109:10
**evident**  10:5
**evolved**  92:6
**exact**  95:8
108:19
**exactly**  47:8
48:6 50:21
57:12 65:8
71:1
**examination**
4:2 6:16
102:10 104:8
112:13
**examined**  6:14
112:4
**example**  79:2
**excited**  56:23
**exciting**  15:6
**exclusively**
35:7 76:24
**excuse**  70:9
**execute**  22:1,2
48:19 82:22
84:1 104:3
**executed**  111:9
**executing**
55:11
**execution**
14:11

**executive**  7:17
7:24 17:17
58:13 71:8
82:15 94:21
**exhibit**  4:13
30:2,7,8,15,17
30:22 31:11
**exist**  84:21
**existed**  8:25 9:4
**expand**  74:13
**expanding**  33:3
103:21
**expansion**  34:3
34:7
**expense**  78:19
89:15,21
**expenses**  70:13
71:15,16,20
72:17 78:25
79:3,8,11,23
80:22 81:3
88:21 98:21
99:4,7
**experience**
16:22 21:1
52:15
**expert**  61:10,20
**expires**  61:4
**explain**  50:23
50:25 58:11
65:10 67:10
86:14
**explicitly**  103:1
**extent**  53:8
64:18 88:7

105:11 109:3,4
**external**  20:3
**extremely**
103:14,16

**f**

**f**  102:13
**f1**  80:10,18,24
**face**  31:16
**fact**  21:24
24:15 25:21
79:7 94:6
98:25
**facts**  36:22
41:11 45:14,22
46:16 47:4,6
47:18 49:12
50:5 51:16
54:19 64:9
65:6 73:11
74:23 75:21
78:10,21 80:14
80:25 83:20
85:4 87:17
89:7 92:3,18
93:19 96:7,17
97:24 98:7,23
99:10 104:25
105:16 106:6
106:17 107:22
108:9 109:10
**fair**  73:19
77:20 89:24
**fall**  62:3
**fanatics**  7:4,6
7:18 8:8,9,20

**[fanatics - fogelman]**

| | | | |
|---|---|---|---|
| 8:22 9:4,7,12 | 102:15,16,18 | **finish**  70:5 | 25:8,23 26:15 |
| 9:16 11:17 | 102:21 103:2,3 | 71:23 | 26:23 27:1,7 |
| 12:11,20 13:3 | 105:12,13,22 | **firm**  20:2,3 | 27:16 28:8,23 |
| 13:5,11,12 | 105:22 106:4,9 | **first**  6:13 12:8 | 29:6,12,22 |
| 14:5,13,16,25 | **fanduel**  60:8 | 16:4,12 25:3 | 30:2,12,21 |
| 15:9 16:13,19 | **far**  10:24 31:7 | 29:21 30:25 | 31:5,10 32:16 |
| 18:2 20:7,13 | **faster**  100:14 | 33:1,14 83:15 | 33:12 34:13,15 |
| 20:17 30:18 | **fault**  102:6 | 87:9 94:12 | 34:18,20 35:4 |
| 31:18 32:1,4 | **february**  31:19 | 102:12 106:19 | 35:17 36:1,6 |
| 33:14,15,17 | 41:19,22 46:11 | 107:6,18 | 36:15 37:2,10 |
| 34:23,23 35:6 | 61:4,16 81:6 | **fit**  77:7,19 86:1 | 37:13,15,23 |
| 35:15,16 36:10 | 81:21 90:13 | 94:20,21 | 38:1 39:1,16 |
| 38:8,10 39:6 | 93:17 | **five**  26:18,18 | 39:20 40:8 |
| 40:22 42:16 | **federal**  17:2,13 | 26:18 62:21 | 41:16,24 42:8 |
| 44:17 46:12 | 17:20 18:2,10 | 101:15 | 42:23 43:5,22 |
| 47:21 49:8 | 18:15,22 19:9 | **flight**  100:19 | 44:2,6,15,24 |
| 56:24 61:16 | 19:21 20:18 | **floor**  2:14,19 | 45:4,16,23 |
| 63:11 64:19,20 | 23:6 25:10 | 34:4,5,5 | 46:9,24 47:10 |
| 64:24,25 65:24 | 26:7,7 27:22 | **florida**  7:10 | 47:23 48:8 |
| 67:10,13,18,18 | 29:3 61:4,15 | **flush**  107:3 | 49:3,23 50:10 |
| 67:20,21 68:13 | 82:10 83:6 | **fm**  21:16 | 50:14,22 51:23 |
| 68:14 69:3,3 | 84:20 95:23 | **fnv**  8:25 18:23 | 52:17 53:1,12 |
| 70:14,15,15 | 106:15 108:5 | **focus**  9:13 | 53:18,21,24 |
| 71:14,14 72:7 | 112:13 114:1,8 | 12:21 | 54:1,5,14,23 |
| 72:7,8,19,19 | 114:9 | **focused**  13:4 | 55:6,12,17 |
| 73:1,2,3,7,8,9 | **feel**  19:25 23:13 | **fogelman**  3:5 | 56:9 57:3,19 |
| 73:14,17 77:20 | 61:22 63:22 | 4:4 5:24,24 | 58:8,22 59:13 |
| 78:6,19 79:12 | 68:17 83:21 | 6:17 10:2,5,17 | 60:11 61:2,11 |
| 79:12,24 80:1 | 84:14 86:5,15 | 10:19,25 12:9 | 62:6 63:3,24 |
| 80:23 81:6,21 | 86:25 | 13:10 14:14 | 64:15 65:23 |
| 81:25 82:15,19 | **figueroa**  2:19 | 16:17 18:8 | 66:1,9,18 67:1 |
| 84:1 85:10 | **figured**  52:19 | 19:4,14,19 | 67:6,16 68:10 |
| 86:4,11,12 | **find**  21:25 38:9 | 21:12 22:4,7 | 69:1,14 70:12 |
| 87:24 95:22 | 52:24 102:25 | 22:13 23:3,10 | 70:23 71:3,19 |
| 96:11 97:1 | 103:1 | 23:15,21 24:1 | 72:3,14 73:5 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[fogelman - given]**

73:15 74:1,17
75:2,13 76:6
76:16 77:11
78:3,17 79:1
79:17 80:5,17
81:4,14 82:7
83:4,11 84:4
84:19 86:17
87:4 88:3,14
88:19 89:2,13
89:23 90:11,19
91:1,19,24
92:12 93:1,14
93:23 94:14
95:2,10,16
96:10,22 97:8
97:11 98:3,9
98:19 99:5,12
99:19,23
100:12,18
101:2,11,17,23
102:3 103:7,22
104:9,21
105:10 106:1
106:12 107:4
107:14 108:2
108:23 109:15
109:19
**fold**   15:7 60:23
**follows**   6:14
113:8
**followup**   14:2
**football**   59:22
59:23 65:17

**football's**   60:1
**foregoing**
111:4 112:5,12
**form**   7:15,18
10:19,20 12:20
15:1,17 18:25
27:3 30:22
31:11,13 41:17
59:10 65:1,8
75:7
**formalize**   9:11
9:12
**formalizing**   9:2
**formally**   55:10
78:24
**formed**   8:18
9:16,21 10:8
12:12 13:5
14:5,7,17
**forming**   8:5
**forward**   91:8
**foster**   89:11
**foundation**
103:23
**four**   23:14
62:21 85:1
**fourth**   34:5
**frame**   72:25
**frankly**   101:23
**frcp**   114:1
**free**   101:8
**fridays**   87:7
**full**   48:22 49:20
63:21 70:10
93:17

**fully**   61:15 73:4
**function**   65:21
83:25
**functional**
76:25 103:6
**functions**
103:19
**further**   104:6,8
112:16
**future**   53:4
**fvn**   24:6
**fvp**   1:5 2:17
5:17 6:5 7:15
7:18 8:5 9:7,16
9:21 10:8 11:8
12:10,11 13:12
13:12 14:5,7,7
14:17,25 15:21
16:3,8 19:9,20
21:16 22:18
24:8 25:12
26:8 28:1,14
31:16 32:1,18
33:6,19,23
34:8,22 35:7
35:19 36:3,12
36:16,18 38:4
38:4,9 39:3,5,5
39:9,11,17,21
39:24 43:24
44:17 57:5,6
57:23 66:19
67:2,7,17,19
68:13 69:22
70:13 72:8,16

72:16 82:8
84:5 102:13
106:2,3 107:6
107:8,19 113:4
115:1
**fvp's**   41:18
107:18

**g**

**game**   105:8
**gaming**   8:10
9:18 11:10
12:23 13:20
14:20 62:25
71:11 91:11,18
**general**   3:23
35:12
**generally**   35:12
56:13
**generate**   68:22
**gentlemen**
101:6
**getting**   23:17
24:3
**gibson**   3:5,12
3:13,14,18,19
5:24
**gibsondunn.c...**
3:7
**give**   18:6 24:12
28:8 33:24
35:11 38:3,16
44:8 45:13
84:14 87:2,5
**given**   10:3
96:20

Page 13

**[glen - hermalyn]**

**glen** 79:6
**go** 7:1 11:6
  13:22 14:3
  26:21 27:12,21
  41:8 51:7,14
  54:10,15 58:15
  59:11 60:6,12
  61:25 68:8
  70:1 85:6
  87:14 91:8,8
  96:19 97:21
  100:14 101:8
  101:12 102:4
  103:24 105:7,8
  109:22
**goeke** 3:18 6:3
**goes** 31:6
**going** 7:1 9:24
  10:2,9,11,13,23
  10:25 11:2,21
  13:17,19,21,25
  14:2 22:10,11
  24:15 25:5
  27:12,19 29:15
  29:20 30:2,4,6
  30:13 33:2
  36:24 37:4,5,5
  37:17 38:9
  39:14,15,16
  44:4 45:12
  48:17 49:17
  50:22 54:3,5,8
  57:15 58:4
  60:23,24 62:3
  66:7,12,16

69:7 77:3,25
  84:21 85:6,16
  90:7,12 91:13
  94:11 95:24
  96:6 100:21,25
  101:6,7 103:10
  107:2,12
  109:16,24
**good** 5:5,6 39:3
  66:8 94:21
  95:20
**gotta** 50:11
  53:18,21
**graduation**
  101:7
**grand** 2:14
  41:20 80:10,24
**granularity**
  51:22 79:20,23
  83:23 92:24,24
**great** 15:16
  85:14 100:17
  100:19
**gregg** 3:19 6:2
**ground** 37:3
**grounds** 37:16
  50:20
**group** 62:19
**grow** 9:5 16:5
  20:12 21:2
  57:17 76:1
  86:3 93:11
**growing** 9:14
  76:24

**grows** 40:19
**growth** 15:9
**guess** 64:11
  72:25
**guys** 12:5 26:23
  70:2

## h

**h** 4:11 115:3
**halt** 60:24
**hamburger**
  3:14 6:2
**hand** 28:22
  30:5,6 112:18
**handcuff**
  106:19,20
**handled** 113:8
**handling** 13:12
  91:25
**happen** 59:12
**happened**
  13:23 14:11
  16:16 49:18
  55:7 60:20
  69:12 70:9
  108:1
**happening**
  62:22 65:11,18
**happens** 60:4
  83:14
**harass** 26:14
**harm** 10:1,1
  20:14,24 22:2
  28:4,5 31:6
  34:17 36:14
  37:1,22 39:19

43:24 44:17
  48:25 57:8
  59:4 60:5 63:2
  66:21 96:11,25
  97:15
**harmed** 18:24
  19:10,20 84:15
**harms** 97:4
**he'll** 90:8
**head** 40:13,15
  54:22 73:6
  76:7,10,17,19
  79:9
**hear** 10:4 25:20
**heard** 51:6
  63:25 72:4
**hearing** 87:8
**held** 66:14
  85:11 100:23
**help** 8:19 61:22
  82:18 84:13
  86:3 93:11
**hereto** 111:6
**herm** 5:14
**herma** 5:14
**hermalyn** 1:5
  2:12 5:16,17
  6:8 13:6,14
  15:25 16:2,4
  16:12,18 17:1
  17:12,16,18,20
  17:25 18:1
  19:24 20:9,25
  22:18 25:12,21
  26:9 28:2,14

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[hermalyn - impairment]**

31:17,25 32:3
32:17,25 33:5
40:12 41:25
42:4,9,15,24
43:6 44:25
45:9,17,24
46:12 47:24
49:7,18,22
50:2 51:10,24
52:3,12,12
53:5 54:24
56:11 57:15
61:15 64:5,18
64:23,23 68:5
72:15,18 73:7
74:19 75:4,17
76:14,15 77:8
78:2,7,18 79:2
80:22 81:5
82:16,25 83:13
85:11 86:10
87:24 88:4,16
88:20 89:3,14
91:15 92:9,13
93:3,10,15
94:5,17 98:17
98:21 99:6,14
99:25 103:5,9
104:10,23
105:11 106:9
106:23 108:17
113:4 115:1
**hermalyn's**
16:21 47:12
54:16 77:21

80:9 81:20
89:24 91:25
98:4 102:13
**hermay** 5:14
**hey** 65:22
**higher** 8:15
**hire** 13:6,22
16:5 33:14
91:15 92:10
99:2
**hired** 7:4,6
13:2,15 14:10
14:19 16:8,12
19:24 21:24
34:2 49:16
55:11 56:25
61:21,21 68:6
73:2 78:2
82:20,25 92:9
92:13 93:11
106:9
**hiring** 93:15
**hold** 13:21
18:18 24:10,10
27:11,11 29:10
48:20 59:9
71:17
**holding** 64:20
67:19
**holdings** 64:24
67:21 68:14
69:3 70:15
71:15 72:7,19
73:2,2,7,8,9,14
79:12 80:1,23

81:6,21 105:12
105:14,22
106:4
**home** 83:13
98:4
**honestly** 55:22
101:17
**hope** 51:10
86:9
**hopeful** 52:23
**hopefully** 13:24
84:17
**hotel** 99:25
100:3,4,4
**hour** 66:7,10
100:9
**house** 35:15
99:15,20
**houses** 36:10
**how'd** 86:5
**hr** 7:25 62:15
**hum** 6:21 43:25
44:18
**hundred**
102:24 105:21
**hunt** 49:17
**huntley** 9:15,17
10:7 11:7,9
13:1 14:4,15
14:18 49:9,17
62:10,23 64:4
64:17 73:20
**hypothetical**
72:24 78:22
83:19 87:16

90:16 92:19
93:5 97:25
107:11,21
**hypotheticals**
87:6

**i**

**idea** 17:11 45:8
74:18 99:11
**ideas** 91:5
**identifiable**
64:2
**identification**
30:9
**identified** 20:7
61:12 82:16
85:8
**identify** 5:21
50:1 51:10
59:21 60:21
61:13,22 62:18
63:5,9 86:19
104:10 106:2
108:3
**impact** 51:5
62:1 65:14
69:2,13,19
86:13
**impactful**
65:19
**impacting**
25:22
**impaired** 28:1
46:13
**impairment**
47:12

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[impairs - issue]**

**impairs** 21:16
22:18 24:4
25:12 26:8
28:14
**impart** 87:25
**implement**
98:18
**implementing**
103:20
**important**
12:19 38:16
40:22 60:1,5
68:3,18
**improper** 72:24
78:22 83:19
87:16 90:15
92:18 93:5
97:25 107:11
107:21
**inappropriate**
21:8
**included**
113:14 114:3
**including** 17:17
49:9
**incorrect** 37:10
37:13
**incremental**
12:21
**incubating**
34:2 91:5 92:5
**incubation**
92:6
**incumbents**
60:7

**incur** 96:12
97:1
**incurred** 95:22
96:12 97:1
**individual**
32:12
**inefficient**
63:18
**initial** 91:9
**initialed** 111:6
**initially** 33:25
**injunction**
13:15,16 14:11
16:15,23 17:2
17:12,20 18:2
18:7,9,10,16,23
19:8,21 20:10
20:19 21:3,8
21:13,22 22:16
23:6 24:2,4
25:9 26:7
27:22,24 28:1
28:11,12,24,25
29:3,14,23,24
31:7 43:14,17
43:23 44:16,22
45:2 46:20
47:13 48:2
52:4,13,16
53:4 56:6
58:24 59:16
60:20 61:3,16
69:4 78:6 82:9
82:22 84:20
92:11 93:9

95:23 97:17
103:16 104:24
106:15,21
108:7,21
**ink** 111:6
**inside** 67:14
86:4 91:12
**instruct** 10:23
36:25 37:3,16
38:3 39:14,16
**instructed** 4:16
51:3 88:4,15
88:20 89:3
**instructions**
11:1 88:10
101:4,5
**insulting** 54:1
**integrate** 48:18
**intend** 54:13
**intended** 11:3
13:22 15:9
46:25 48:23
49:1,22 62:17
85:17 91:16
104:1,5 108:19
**intent** 13:5
38:17 82:20
**intention** 13:18
16:5,13 48:17
93:2 106:10
**intentionally**
43:12 106:21
**interact** 35:13
**interested**
112:16

**interim** 62:9
**interjection**
75:8
**interpose** 9:24
10:9 11:21
24:12,20 29:17
30:24 45:12
58:4 71:25
88:6 95:24
109:2
**interposing**
27:14
**interrupt** 77:13
**interviewed**
85:16
**invest** 91:8
**invested** 70:20
**involved** 7:14
7:16 9:15
59:15 60:13
88:8 99:1
**involvement**
98:15
**irreparable**
9:25 10:1 31:6
34:17 36:14
37:1,22 39:19
57:8 59:4
66:21
**ish** 95:9
**issuance** 20:18
23:6 48:1
**issue** 17:19
22:22

Page 16

**[issued - la]**

**issued** 18:10,16
18:23 19:9
43:24 44:19,22
45:2 47:13
56:6 58:25
61:3 83:16
106:15 108:4,7
**issues** 14:17
84:22 101:4
**it'd** 58:12
**it'll** 8:22
**item** 28:21
87:10,10
**items** 92:7

**j**

**james** 2:18 3:5
5:24 113:1
**january** 9:21
95:9
**jersey** 74:3
75:5,18 83:13
98:5
**jfogelman** 3:7
**jim** 6:4 9:24,24
10:9 11:25
22:6 23:24
27:11,11 28:7
37:14,20 65:22
101:22
**jimasperger**
2:20 113:2
**job** 1:24 9:14
25:22 41:14
48:21 61:21
62:16 74:9

75:5,17 86:1
89:24 93:10
94:20 103:25
104:4
**jobs** 48:22
49:20 63:21
**john** 73:16,18
**join** 10:13
43:11 45:13
**joke** 95:18
**jokes** 95:18
**jump** 10:11
**justine** 3:18 6:2

**k**

**k** 2:13
**kain** 17:23,25
52:1,2,12 53:3
57:13 90:23
**kain's** 90:20
91:12
**katherine** 3:13
6:1
**keep** 21:10
22:21 24:21,22
25:19,20 29:20
32:12 38:15
39:5 65:15
68:3 69:9 79:5
79:5 83:23
86:15 100:12
101:6
**keeping** 102:5
**kelly** 3:19 6:2
**kid's** 101:6

**kind** 22:21 23:5
43:24 44:17
49:25 52:14
57:10,22 65:15
66:2 81:18
83:23 84:10
85:19 86:2
93:3 96:19
98:16 103:17
105:4 107:7
**knew** 93:16
**knock** 18:20
**know** 12:4 13:9
18:7 21:25
24:18 25:18
28:6,9 29:9
35:13,14 36:17
38:6 40:1,9,11
40:13,18 42:12
42:21 43:3
44:11 45:10
46:5,23 47:22
48:13,14,15,25
50:7 51:2,18
53:8,9,10
54:21 55:24
56:17,23,24,25
57:15,18 58:17
58:21 62:2,2
65:16 66:22,23
67:5 69:8
70:19 71:1,8,8
71:10,21 72:25
73:7 77:8
78:15,23 79:4

79:7,14,19,22
80:3,4,7,16,22
81:2,15,18
82:21,22 85:10
85:15 86:4
87:22 90:7,7
90:18 93:21,22
93:25 94:1,4
95:8 96:23
100:4,10
101:23 104:14
104:16 105:3,6
106:11 107:17
107:25 108:1
108:14,15
**knowledgable**
37:22
**knowledge**
17:25 24:9,18
28:16 31:3,7
32:6 44:5 45:7
45:20 47:16
48:4 75:9
82:12 83:22
84:8 85:13
88:5,15,18
89:1 102:17,22
103:5 105:3
**knowledgeable**
79:11
**knows** 28:9,10

**l**

**la** 21:6 32:15
32:20,21 40:13
40:16,18,25

[la - made]

43:16 76:10,19
93:12 103:13
**lack** 59:8
**lacks** 103:22
**larger** 8:15
**late** 45:12
**launch** 22:23
22:24
**launched** 68:4
**launching**
68:21
**law** 6:20 37:3
50:19
**lawyer** 82:14
**lawyer's** 88:7
**lawyers** 88:9
109:3,4
**lead** 41:1 93:12
**leader** 13:7,18
48:18 59:21
60:21 62:17
83:24
**leaders** 77:6
**leadership**
40:19,20 77:7
**leading** 21:5
43:16 77:2
103:7,10,11,13
103:22 108:18
**lease** 36:18
37:19 38:5
**led** 7:23
**leeway** 10:3
**left** 100:16

**legal** 5:9 21:18
25:15 29:11,11
47:17 61:7
82:11 83:1,9
83:18 84:8,11
85:5 87:17
93:6 96:16
97:23 107:10
107:25 113:7
**legitimate**
27:14
**level** 15:19
47:22 48:6
51:21 64:13
65:10,11,17
79:20 83:23
85:20 92:22
**leverage** 16:21
20:25 52:14
89:10
**leverages** 17:9
85:24
**license** 38:3
**light** 52:4 53:4
59:16
**lightly** 90:6
**liked** 46:19
**limit** 27:17
43:21 81:16
101:19
**limitation**
37:24
**limited** 27:4
37:8 48:15
82:23 103:14

106:23 108:16
**line** 4:17,18 6:2
113:15 114:4
115:4,7,10,13
115:16,19
**lines** 95:25
**list** 27:10,22,25
28:12,21,21
29:19
**listed** 40:13
**literally** 32:18
**little** 27:2 49:21
66:9 77:12
85:17
**live** 41:14
**llc** 1:5 2:17
5:18 6:5 113:4
115:1
**llp** 2:13,18 3:5
6:5
**located** 5:9
**locked** 113:12
114:1
**long** 51:6
100:16
**longer** 101:18
102:5
**look** 37:15
56:15 75:10
77:6 85:6
**looked** 15:12
20:3 77:20
78:7,13
**looking** 20:2
28:20 29:20

41:17 51:22
63:5 64:1,14
79:21
**looks** 31:24
**loose** 61:25
**los** 1:2 2:4,14
2:19 3:6 5:1,10
5:12 30:18
31:18,25 32:4
32:23 34:24
35:6 41:4 43:6
45:1 74:19
76:7,18 77:2
83:16 84:5,21
86:20 93:3
98:22
**lost** 18:17
**lot** 13:7 20:1
21:6,11,25
24:24 53:16
71:9 100:14
101:3
**louder** 26:12
**love** 86:6 90:7
90:12 95:1
**loved** 86:6,6

### m

**made** 7:19
12:20 13:3,6
31:3 58:5
70:22 71:4,6,7
72:6 74:13,16
74:25 76:1,5
91:13,15 92:8
108:24 111:5

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[mail - month]**

| | | | |
|---|---|---|---|
| **mail** 55:13,14 | **market** 60:8 | **met** 85:15,16 | 103:9 106:9,23 |
| 55:23 57:21 | **marks** 109:20 | 86:5 94:9,13 | **minute** 37:20 |
| 58:10 | 109:23 | 94:16 | **minutes** 11:5,5 |
| **mails** 37:15 | **massachusetts** | **miami** 80:10,24 | 100:9,11,13,16 |
| **majority** 59:24 | 17:2,13,21 | **michael** 1:5 | 100:17,18 |
| **make** 24:24 | 18:3,13,23 | 2:12 5:14 6:8 | 101:14,18 |
| 25:6 50:8,11 | 19:21 21:14 | 7:19,20 17:17 | 102:1 104:16 |
| 50:11 52:11 | 22:16 25:10 | 20:25 52:12,12 | **mischaracteri...** |
| 58:11 63:22 | 82:10 | 57:13 70:19 | 54:2 |
| 70:18,24 72:4 | **matches** 11:4 | 74:24,24 78:24 | **mischaracteri...** |
| 74:15 75:12 | **matter** 31:1 | 78:25 79:6 | 33:11 36:5 |
| 91:7 94:10 | 80:4 | 86:10 90:4 | 44:20 49:10 |
| 95:18 100:12 | **matters** 73:16 | 94:17 98:16 | 52:8,21 53:19 |
| 100:14 101:2 | 73:19 | 113:4 115:1 | 59:17 60:17 |
| 102:19 113:14 | **mean** 5:6 12:8 | **michelle** 1:25 | 61:18 64:7 |
| 114:3 | 15:24 40:15 | 2:4 112:2,21 | 79:14 86:22 |
| **makes** 8:3 | 52:10 57:12,20 | **microphone** | **misconstrued** |
| **making** 8:1 | 58:18 76:14 | 18:18 109:19 | 43:20 |
| 14:9 34:3 | 77:13 81:11,13 | **mike** 13:6,14 | **misleading** |
| 95:18 | 109:1,6 | 14:10 15:24 | 46:4 68:15 |
| **manage** 46:22 | **meant** 55:18 | 16:2,4,12 | **misquotes** |
| 48:7 62:5 83:2 | 76:21 | 18:17 19:24 | 19:12 47:5 |
| 85:25 | **medel** 1:25 2:4 | 20:9 25:21 | 57:8 78:11 |
| **manages** 85:24 | 112:2,21 | 32:25 34:2 | **misstated** 42:6 |
| **managing** | **meet** 99:20 | 43:21 48:20,23 | **misstates** 47:5 |
| 51:19 65:17 | 104:2 | 49:18,22 52:11 | 65:7 72:10,23 |
| 107:1 108:18 | **member** 7:17 | 52:11,14 56:17 | 73:10 77:23 |
| **map** 57:10,17 | 11:9 94:21 | 56:21 57:15 | 83:20 89:8,18 |
| **march** 41:19,22 | **members** 17:16 | 61:21,24 68:5 | 90:15 92:2 |
| 43:7 45:18,25 | 78:16 108:18 | 76:14,15 77:8 | 98:24 105:16 |
| 46:12 47:1 | **memo** 57:21 | 78:2 82:16,25 | **money** 71:9 |
| 48:1 | **mentioned** 13:1 | 85:11 87:24 | **monroe** 3:12 |
| **mark** 30:2 | 38:18 39:4 | 91:15,16 92:9 | 6:1 |
| **marked** 30:9 | 62:23 | 92:10 93:10 | **month** 71:2 |
| | | 94:16 98:17 | |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[morning - objections]**

morning 5:5
motion 22:8
move 22:4 91:9
  99:3,3 106:25
moved 13:11
moves 98:22
moving 16:13
  62:2 98:21
  99:4,7
mto.com 2:15
multiple 63:20
  96:15
munger 2:13
  6:7

**n**

n 4:1
name 5:8 106:2
named 112:4,8
narrative 56:20
  64:9
national 15:19
natural 12:7
naturally 78:16
nature 93:9
  94:24
necessary
  113:14 114:3
need 26:20 27:6
  27:7 40:22
  44:8 96:23
  101:16
negative 86:13
negotiation
  100:6

negotiations
  98:10,15,15
never 32:6
  37:16 69:22
new 7:8,10 9:3
  11:17 12:5
  13:18 32:14
  42:16,21 68:23
  73:20,24 74:3
  74:3,20 75:5,5
  75:18,18 78:7
  80:21 83:13
  91:20,23 96:21
  98:4
nod 77:13
nonresponsive
  22:4,11
normal 37:9
notating
  113:15 114:4
noted 111:6
noticed 24:19
noticing 5:22
number 4:12
  5:19 15:11
  17:14 30:4
  32:3 76:2
  113:15 114:4

**o**

o0o 110:6
oath 6:10,19,20
ob 93:18
object 24:15
  26:7 51:14

objecting 51:2
objection 9:25
  10:10,14,15,16
  10:20,22 12:14
  14:8 15:1 16:9
  18:4,25 19:1
  19:11,12 20:20
  20:21 21:17,18
  22:19 23:7,9
  24:13,20 25:14
  27:3 28:3,15
  28:16,18 29:4
  29:8,10 30:25
  32:5,8 33:7,8,8
  34:11,12,25
  35:1,8,20,21
  36:4,13,19,20
  38:11,12 39:12
  41:6,7,10,23
  42:2,5,17,25
  43:8 44:1,4,20
  45:3,6,13,14,19
  45:21 46:2,14
  46:15 47:2,3
  47:15 49:10,12
  50:4,5,20 51:4
  51:13,15 52:7
  52:20 53:7
  54:17,18 55:16
  55:20 56:8,19
  57:7,25 59:1,3
  59:17 60:16
  61:7,17 62:12
  63:12 65:1,3,6
  66:4,20 67:23

68:15 69:5,24
69:25 70:16,25
71:17 72:10,20
72:21,23 73:10
73:22 74:6,22
75:7,19,20
76:11 77:23
78:10,21 79:13
79:15,25 80:2
80:12,13,14,25
81:8,22 82:11
83:8,17,19
85:3 86:22,24
87:16 88:6,11
88:23,24 89:6
89:17 90:1,2
90:14,21 91:3
91:21 92:2,17
93:5,18 95:5
95:14,25 96:6
96:14,16 97:3
97:19,20,22
98:6,12,23
99:9,9,16,21
100:1 103:7,22
104:12,25
105:15 106:5
106:16 107:9
107:21 108:8
109:2,7,9
objections
  10:20 25:13
  26:10,11 27:14
  29:18 40:3
  45:19 48:3,12

[objections - own]

54:12 55:5,8
58:5,19 64:6
67:3,8 72:1
84:7,25 88:17
100:15 101:4,5
**objective**  82:16
84:3 86:9
**obtain**  29:3
**obtaining**
21:13 25:9
26:6
**occasionally**
95:19
**october**  7:6
60:2
**od**  62:15 63:15
**office**  8:12
11:17 15:18
21:6 30:18
31:25 32:4,13
32:20,21 33:23
33:25,25 34:1
34:2,8,21,22
35:5,6,14,15,18
36:2,8,10
40:13,16,18,19
40:25 41:4,15
41:20 42:16,22
43:7,13,16,18
43:21 45:1
74:12,20,20,21
76:8,10,18,19
77:2,18 81:17
93:12 103:13
103:15 113:11

**officer**  77:5
90:24 91:7
98:18
**officers**  14:6
**offices**  31:18
**oftentimes**  91:6
**oh**  12:3 95:6
**okay**  7:1,8,14
7:22 8:7 9:20
10:25 11:16,19
11:24 12:1,13
12:15 14:15,21
15:2,20 16:18
17:24 18:5,15
18:22 19:8
20:14 24:14,23
25:1,24 26:19
26:23 29:1,13
29:25 30:5,17
31:15 34:13
35:5,18 39:2
39:11,24 40:12
43:12 45:17
46:10 47:11
49:24 50:13,18
50:23 51:7,8
51:24 53:2,13
54:5,15 56:2
56:13 57:4,20
58:6,9,23
59:14 60:12
61:12 62:7
66:10 69:2,18
70:6,6,13,24
71:4,13 73:6

75:3 77:10
79:2 80:20
94:9,15,16
95:18,20,24
99:6 100:16
101:9 102:3,8
102:8,8,17
103:2,5,24
105:11 107:17
109:15,20
**olson**  2:13 6:7
**once**  20:10
**ones**  105:9
**online**  60:3
**ooooo**  1:18
**opinion**  29:11
41:13 46:13
62:14
**opportunity**
74:9
**opposed**  67:18
74:20 108:25
**options**  17:8
**order**  83:15
84:6,22,23
86:20 87:12
93:3 95:17
**ordered**  93:9
**orders**  93:4
**organization**
65:12 91:17
**organization's**
84:15
**organize**  62:19

**organized**
65:21
**organizing**
63:16 103:11
**original**  112:12
113:10,20,22
**originally**  7:8
14:19 90:10
**orlando**  1:15
2:1 4:3 5:13
6:12 94:25
111:15 113:5
115:2,24
**outcome**  62:20
83:3,24 84:10
87:23,25
**outrageous**
50:16 97:13
**outside**  27:3
35:23 36:13,21
38:12 39:12
41:11 42:17,25
43:8 54:18
55:20 66:20
68:1 77:21
78:8,13 79:15
88:24 89:18
90:21 91:21
95:14 98:6,12
107:9,23
108:10 109:10
**overall**  67:11
**overrule**  83:6
**own**  33:23 34:9
52:9 54:7,11

## [p - playing]

| p | | | |
|---|---|---|---|
| **p**  3:5 | **participating**  17:23 | 60:3,8 69:11  102:25 105:22 | **physically**  72:18 |
| **p.m**  100:24 | **particular**  12:24 | **perfect**  86:8 | **piece**  49:21  70:11 |
| **p.m.**  2:3 5:2,7  66:13,15,15,17  100:22,24  101:1 109:25  110:3 | **partnered**  85:7 | **perform**  103:19 | **pieces**  48:23  91:12,15 |
| | **parts**  15:14 | **performing**  104:11 | **place**  13:17  14:24 15:16  16:15 17:2,21  18:7 38:22  59:22,25 60:22  60:24 62:1,18  76:1 108:4,6  112:8 |
| | **party**  38:4 | **period**  31:19  41:19,21 46:11  113:18 114:7 | |
| | **pass**  31:18 | | |
| **pacific**  5:7 | **past**  11:3 | **perjury**  111:4  113:17 114:6 | |
| **package**  98:11 | **pause**  71:25 | | |
| **page**  4:2,12,17  4:18 113:15  114:4 115:4,7  115:10,13,16  115:19 | **paying**  55:15 | **person**  17:22  20:8 22:23  37:21 40:23  49:1 51:25  57:16 58:10  61:24 62:17  74:25 77:19  78:7 79:10,10  82:16 86:2,5,7  90:3 94:22,24 | |
| | **payroll**  55:2 | | **places**  39:10  74:13,14 75:24 |
| | **pays**  73:2 | | **plaintiff**  2:12  2:17 6:8 10:15  39:21,24 69:21 |
| | **pdf**  113:12  114:1 | | |
| **pages**  113:14  113:17,17  114:3,6,6 | **penalty**  111:4  113:16 114:5 | | **plaintiffs**  1:6  2:11 10:13 |
| | **people**  8:14  13:1 14:12  15:11 17:14  21:9,25 40:21  48:16,18,21,22  49:8,19,20,20  51:2 59:9,21  62:22,24 63:10  63:16,20,21  64:4,17,24  65:17 67:11,12  68:5,19 73:6  77:4,5 78:1,15  79:9 83:25  85:8,11 98:18 | **personal**  24:17  24:18,19 25:17  25:24 85:23 | **plan**  55:25 57:5  57:6,6,10,23  58:7,24 59:16  59:22 60:14,25  103:20 |
| **paid**  55:25  72:18,18 73:8  105:12 | | | |
| | | **personally**  22:17 55:18  60:13 | |
| **pain**  60:10 | | | **planned**  13:7 |
| **park**  2:3 3:6  5:12 | | **persons**  43:18 | **planning**  20:11 |
| | | **perspective**  25:17 62:14,15  84:11 92:22 | **plans**  13:17  14:12 34:3  58:10 60:21 |
| **part**  7:22 8:1  8:11 9:3,4,18  11:14 14:20  21:5 56:23  83:1 87:20  89:20 90:5  98:10,14,14,20  99:3 100:5,6  102:24 103:13 | | | |
| | | **pertains**  112:12 | **play**  60:6 |
| | **percent**  8:16,17  12:22,23 38:19  38:20 57:18 | **phone**  55:15,24  56:4 | **played**  106:22 |
| **participate**  82:19 101:21 | | | **playing**  49:25 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[please - quinn]**

please  5:21
6:10 26:14
88:13
plenty  82:14
pmq  24:16
point  14:17
20:11,12 36:24
40:20,22 50:11
57:16 62:17
63:22 78:6
82:23 86:9
99:14,24
106:24
pointed  49:1
76:24
position  48:5
60:6 66:23
87:21 98:1
possibility
93:16
possible  72:17
post  52:13
potential  15:12
15:18 59:15
powerful  77:9
powerpoint
57:22 58:18,24
practice  99:2
100:2
presence  72:6
present  3:10
president  21:5
43:15
pretty  40:5
73:24

previously
64:18
primarily  7:19
34:1
primary  43:15
prior  44:21
61:18 77:23
78:11 89:8,18
90:15 92:2
94:6 98:24,25
105:16 112:4
privilege  11:1
37:4,17 96:2,7
privileged  96:5
109:4
prix  80:10,24
probably  27:1
64:12 95:9
procedure
113:19,21
proceedings
5:11 13:8
110:2 112:11
112:14
process  16:20
16:25 92:7
produced  31:2
31:15 41:18
product  8:21
67:12 96:2
professional
27:2 62:16
63:15
professionals
83:2

program  9:6,10
55:23 74:2
107:3
programs  23:5
promise  101:2
pronounce
5:15
provided
113:19 114:8
public  71:5
purely  96:4
purpose  9:25
37:8
put  9:9 28:11
30:4 48:19
52:9 59:8,22
60:21,24 61:25
62:18 69:10
71:8 75:25
puts  22:25
putting  37:21
54:7,11 63:4

**q**

qualified  20:9
qualify  15:12
qualifying  21:2
question  12:17
14:1,4 15:3
16:11 17:15
19:3,5,17
23:11,12,17
25:4 26:25
29:7 33:13
35:3,10,22
36:7,17 38:3

38:15 39:6
44:7,13 46:3,3
49:16 50:17
51:3,6,7,9,19
51:22 54:10
58:1,2 60:12
62:15 63:8,15
66:5,23,24
67:5,24 68:2
68:15 72:12
73:1 75:11,23
78:1,24 79:20
80:6 82:4,13
82:15 83:2,22
85:1 87:1
88:12 92:23
96:15,24 97:4
97:14 105:24
106:7 107:5,13
108:11,12
questioning
27:8
questions  4:16
7:2 10:6 11:6
11:25 14:2
22:14 27:21
30:13 31:8
34:16 35:12
38:1 42:4 51:1
54:15 80:3
101:13,18
102:6 104:6
quickly  12:7
quinn  2:18
3:15 6:4,6

Page 23

**[quinnemanuel.com - responsive]**

| | | | |
|---|---|---|---|
| **quinnemanue...** 2:20 113:2 | 31:16 50:18 54:7 66:12,17 | 85:14 89:4,11 89:16,22 | **reporter's** 70:4 **reports** 78:24 |
| **quite** 54:1 | 100:8,21 101:1 | **relative** 87:24 | 89:15,22 |

**r**

**r** 115:3,3
**r&s** 114:1,9
**raising** 54:12
**random** 87:5
**read** 23:18,18
85:18,18,20
111:4
**reading** 113:24
114:9
**real** 38:7
**realize** 10:12
**really** 21:6 68:4
91:14 97:13
**reask** 77:25
**reason** 8:5 9:11
15:5 22:22
23:5 52:22
68:3 75:4,16
76:17 82:2
106:13 115:6,9
115:12,15,18
115:21
**reasons** 12:21
70:9 74:10
**recall** 52:5
**receiving** 54:24
**recess** 66:14
100:23
**record** 5:7
10:15 22:11
27:8 30:3,3,18

101:12,16
109:22,24
**recording** 5:11
**records** 67:2
**redirect** 101:21
107:10,23
108:10
**reduced** 112:9
**reed** 3:20,21
**refer** 8:7,14
60:25
**reference** 38:9
**referenced**
113:6
**referring** 71:14
72:6 94:12
**regard** 57:23
103:14 105:13
**regardless**
47:25
**reimbursed**
98:22 99:7
**related** 65:18
107:7
**relates** 48:20
55:23 60:22
83:1 105:24
**relationship**
8:22 15:15
38:22 102:13
**relationships**
8:18 15:17

**released** 113:22
**relief** 107:6,19
107:20
**remains** 33:16
**remember**
24:22 50:17
101:24
**remit** 9:19
**remote** 1:15 2:1
**rent** 99:24
**rep** 3:22
**repeat** 29:15
35:2 52:10
84:9
**repeated** 26:17
26:18 84:25
**repeating**
21:21 25:19,20
47:20 65:15
69:9 80:2
83:23 86:15
104:16 109:16
**report** 42:13
43:4 45:9
51:20 78:19
104:3
**reported** 1:25
92:7
**reporter** 6:10
6:13 11:22
23:18 24:25
30:4,10 44:8

**represent** 5:22
**representations**
31:9
**representing**
10:12
**request** 101:14
**requested**
114:1,9,10
**requests** 31:3
**required**
112:15 113:20
**reserving** 101:5
101:7 109:15
**reside** 15:8
**resource** 21:25
**resources**
13:19 62:18
63:20 91:10
103:15
**respect** 69:21
**respond** 87:9
**responding**
25:21
**response** 43:14
95:1 108:15
109:11
**responsibilities**
92:1
**responsibility**
62:9
**responsive** 22:6
25:7 31:2 82:4

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[rest - see]**

| | | | |
|---|---|---|---|
| **rest** 41:25 | 53:15 55:13 | 78:24,25 79:6 | **schiffman** 79:7 |
| **restate** 68:4,18 | 56:6 60:2 61:5 | 80:23 90:4 | **scope** 10:22,23 |
| **restaurant** | 64:20 65:5 | 94:17 98:16 | 11:3 27:3 28:3 |
| 95:13 | 66:16 72:2 | **rubin's** 99:15 | 28:5,5,17 29:4 |
| **restrictions** | 73:20 75:6,18 | **rude** 27:8,13 | 30:25 31:4,5 |
| 94:19 | 76:8 77:12,19 | **rule** 37:9 70:4 | 32:5 34:17 |
| **restructure** | 77:19 80:1 | **rules** 7:2 114:8 | 35:23 36:13,21 |
| 19:2,6 | 90:13 92:1 | **run** 7:25 13:16 | 37:1 38:2,12 |
| **result** 95:23 | 93:17 95:21 | 21:7 43:17,19 | 39:12,15 41:11 |
| **return** 113:17 | 99:15 100:25 | 103:15 109:13 | 42:3,17,25 |
| 114:6 | 102:14 103:4 | **running** 52:15 | 43:8 44:5 |
| **revenue** 67:14 | 105:14 106:15 | 76:20,24 | 54:18 55:20 |
| **revenues** 67:7 | 107:8 | **russell** 3:20 | 56:8 57:7 59:3 |
| 67:18,19,20 | **rights** 101:5,8 | **s** | 66:20 68:1 |
| 68:7,12,13,23 | 109:15 | | 79:15 88:24 |
| 69:3,22 70:8 | **risk** 23:2 | **s** 4:11 115:3 | 89:18 90:21 |
| **review** 112:14 | **road** 27:12 | **sabado** 1:25 | 91:21 95:14 |
| 113:8,10,13 | **role** 10:7 11:14 | 2:4 112:2,21 | 98:6,12 99:9 |
| 114:2 | 20:9 43:15,16 | **safe** 89:25 | 100:1 107:9,23 |
| **riden** 3:21 | 73:6 77:5,21 | **salary** 54:16,22 | 108:10 109:10 |
| **right** 5:5 6:9,20 | 78:8 86:7,8 | 54:25 | **sealed** 113:20 |
| 7:3,5,9 8:25 | 103:13 | **sanctionable** | **search** 20:2,3 |
| 9:7 11:11,17 | **roles** 21:4 | 37:4 | 38:8 78:1 85:7 |
| 12:3 14:22,25 | 82:23 | **sat** 58:13 | **season** 59:22 |
| 17:3,6 18:19 | **room** 7:25 30:4 | **satisfactorily** | 59:23 |
| 18:20,21,24 | 74:12 82:14 | 17:9 | **second** 15:21 |
| 20:19 22:9 | 84:13 99:25 | **satisfactory** | 18:18 30:14 |
| 24:5 25:1,1 | **rpr** 1:25 2:5 | 64:12 | 31:21,23 33:4 |
| 26:3 27:2 30:5 | 112:2,21 | **save** 10:21 | 45:13 |
| 33:21 36:12 | **rubin** 7:20 | **saw** 77:18 | **secondary** |
| 37:2 38:10 | 17:17,19,25 | **saying** 26:12 | 43:16 |
| 39:22 40:10 | 51:25 52:11,12 | 89:21 | **see** 31:19 37:16 |
| 41:5 43:24 | 53:3 57:13 | **says** 41:18 | 77:1,16 100:13 |
| 44:19,25 46:13 | 70:19 71:6 | **scaling** 70:11 | 100:16 |
| 47:1,14 49:9 | 72:4 74:24 | **schedule** | |
| | | 113:10 | |

**[seeking - speculating]**

**seeking**  22:15
   31:7
**seen**  30:15,22
   31:11,13 32:7
   57:22 58:9,10
   59:6 75:3,8
   77:8
**self**  56:22 85:17
**sense**  8:3 76:1
**sent**  80:22 81:2
**sentence**  29:16
**separate**  37:19
   67:19 70:8
   96:3
**separately**
   70:14
**september**
   59:23 60:1
   62:2
**served**  41:14
**serving**  85:17
**set**  61:24
**seven**  20:6 85:9
**several**  48:21
**shepherd**  40:23
**shift**  60:25,25
**shifted**  46:21
**shifting**  68:3
**short**  40:23
   98:14 100:13
   106:8
**shorthand**
   112:8
**show**  87:7

**shriro**  3:23
**shut**  46:20
**side**  48:23
**sidebar**  77:12
**sign**  113:16
   114:5
**signature**
   112:20 113:22
   113:24,24
   114:9
**significant**
   70:22 97:4
**significantly**
   16:5 82:2
**similar**  21:10
   40:18 42:20
   107:24
**simple**  68:19
**single**  40:20
**sir**  22:14 27:5
   27:10,21 36:2
   36:7,16 38:4
   39:17 41:5
   44:14 45:17,25
   50:17 51:1
   52:19 55:18
   94:14 97:14
   109:17
**sit**  7:17,24 8:11
   29:14,15 47:11
   68:11 86:18
   91:12 92:20
   96:25 97:15
**six**  45:1 48:2
   56:11

**skills**  16:21
   17:10 20:25
   82:17 85:12
**slides**  58:20
**slow**  11:22
**slowing**  24:22
**smith**  3:13 6:1
**social**  57:2
**sole**  16:2
**solutions**  5:9
   113:7
**solvable**  96:12
   97:2,17,18
**somebody**  38:7
   86:5 99:3
**something's**
   97:11
**sorry**  5:6,14
   6:5 12:3,3
   21:16 24:10,14
   56:15,16,16,18
   65:4,4 70:1
   71:18,18,18
   72:2 86:25
   95:6 105:20
   109:8
**sort**  17:9 20:12
   40:20 56:1
   57:23 61:24
   68:4 71:10
   77:16,17 91:12
   91:14 94:22
   105:6,7
**sound**  85:17

**sounded**  57:4
**south**  2:14,19
**space**  33:23
   34:6,8,21,22
   35:5,19 36:2,8
   36:10 81:17
   85:13,13,14
**speak**  12:7
   56:19
**speaking**  35:13
**speaks**  32:10
   42:5
**special**  85:12
   90:5
**specialized**
   8:19 82:17
**specially**  5:25
   19:25
**specific**  22:5,14
   61:14 63:5,7,9
   64:1,2 70:7
   86:19 92:14
   105:9
**specifically**
   19:25 42:12
   72:8 87:11
   105:5
**specifics**  46:6
   47:21 62:3
**speculate**  40:7
   67:4 69:16,17
   84:11
**speculating**
   18:6 40:2,4,6
   53:10 73:23

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[speculating - superior]**

| | | | |
|---|---|---|---|
| 104:14 108:21 | **spent** 20:1 | **statistic** 60:2 | 57:13,13 58:7 |
| **speculation** | **split** 7:10 | **status** 81:7,11 | 59:7,20 61:1 |
| 21:19 23:8 | **spoke** 20:5 | 81:13,20 | 61:23 62:18 |
| 29:5 32:6 35:8 | **sporting** 78:18 | **stay** 99:25 | 63:1,17 75:24 |
| 36:22 39:13 | 88:5,16,21 | **stayed** 99:14 | 75:25 84:1 |
| 40:5 41:9 42:2 | **sports** 60:3 | 100:4 | 90:24 91:6,14 |
| 42:19 43:2,10 | **spread** 62:21 | **step** 15:20 | 103:12 104:3 |
| 45:7,20 46:17 | 91:11 | **stephen** 3:21 | 107:1,25 |
| 47:16 48:4 | **stand** 73:3 | **steward** 40:23 | **street** 2:19 |
| 49:13 50:6 | **standard** 99:2 | **stewart** 9:15,17 | **strike** 22:4 |
| 51:16 52:20 | 100:2 109:12 | 48:16 | 46:10 61:12 |
| 53:7 54:20 | **standpoint** | **stipulate** 10:19 | 80:8 94:2,3 |
| 56:20 57:9 | 88:9 96:5 | **stipulated** | 99:13 |
| 59:4 66:21 | **stanton** 3:22 | 10:17 37:8 | **strong** 98:16 |
| 69:5,6 70:17 | **start** 17:24 | **stipulation** | **structured** |
| 72:22 73:22 | 18:1 50:15 | 10:14 37:12 | 38:17 |
| 74:22 75:21 | 87:15 91:7 | 113:21 | **subject** 31:1 |
| 76:11 77:24 | **started** 81:5 | **stop** 14:16 23:4 | **submit** 78:19 |
| 79:13 80:15 | 92:10 94:2 | 53:21 97:8 | 88:21 89:15,21 |
| 81:1,23 87:19 | 106:19 | 101:7 109:17 | **submitted** 79:3 |
| 89:6,17 90:15 | **starting** 5:22 | **stopped** 13:14 | 79:4 |
| 91:3,22 92:3 | 62:2 93:17 | 13:23 21:3,23 | **subsequent** |
| 92:17 93:6,19 | **starts** 59:23 | 22:25 23:4 | 59:11 60:23 |
| 96:8 97:22 | 60:1 | 68:9,21,24 | **subset** 8:13 |
| 98:24 99:10,17 | **state** 1:1 50:20 | 92:11 106:11 | **suffer** 97:16 |
| 104:12 105:1 | 74:4 75:18 | 106:14,14 | **suffered** 20:17 |
| 105:15 106:5 | 102:19,19 | **strategic** 13:3 | 97:16 |
| 106:17 107:11 | 111:11 112:3 | 15:5 65:11 | **suggesting** |
| 108:8 109:9 | 113:9,12 | 74:14,15 76:5 | 38:24 68:7 |
| **speeches** 28:9 | **statement** 15:4 | 91:8 92:8,22 | **suite** 3:6 |
| **speechifying** | 50:8,12 70:18 | 103:20 | **sullivan** 2:18 |
| 27:18 | 70:22,24 71:4 | **strategically** | **super** 79:3 |
| **spend** 15:14 | 71:5,6,7 72:5 | 15:6 | **superior** 1:1 |
| **spenders** 8:15 | **states** 15:14 | **strategy** 8:9 | 61:22 |
| | 92:16 | 22:1,2 48:19 | |

**[support - think]**

support  57:2
supposed  59:9
sure  8:6 9:3
    19:18 20:16
    22:20 24:14,14
    25:6 52:11
    57:12 58:11
    72:16 75:12
    87:2 93:22,22
    93:24 94:10
    102:19 103:2
    107:15,16
surfed  21:25
suspect  79:5
swipe  4:13 30:3
    30:3,17 31:16
    41:17 75:3,8
swiped  31:17
sworn  6:13
    112:5

**t**

t  4:11 115:3,3
table  17:8
    27:22
take  11:5 15:20
    26:20 27:3,7
    27:19,21 31:8
    60:24 66:10
    77:21 78:8
    100:13,15
    101:15 109:19
taken  2:2 5:19
    6:19,20 27:24
    28:13 34:3,4,5
    48:20 62:9

112:7
takes  14:24
    59:25
talent  40:21
    61:22 77:3
    90:5
talented  21:24
talents  17:10
talk  8:8 25:2
    38:7 70:7
    76:15 94:15
talked  12:22
    20:3 48:16
    57:4 70:10
    74:10 85:8,9
    94:23
talking  18:9
    28:21 42:3
    52:2,2
task  48:6 51:9
    51:21 62:10
    63:5,7,9 64:1,2
    65:10,17
tasked  21:23
    84:16 86:11
tasks  49:7 52:3
    62:7,19,21
    64:17,19 65:11
    65:16,18 92:13
    92:14 94:8
    104:10,22
team  7:17,24
    17:17 57:16
    58:13 71:8
    78:16 85:24

94:21 103:11
    104:1 106:24
    108:18
teams  63:16
technician  5:9
technology
    18:19
tell  8:4 28:10
    48:5,9 86:14
    93:3 97:15
    105:8
telling  22:21
    26:19 27:2
    50:15
tend  8:14
term  86:4
    106:8
terms  37:11
    46:7 108:17
testified  6:14
    50:16 102:12
testify  50:14
    53:24 97:13
    112:5
testifying  31:1
    53:21 97:9,10
testimony
    33:11 36:5
    44:21 49:11
    52:5,8,21
    53:20 54:3,7
    54:12 59:18
    60:17 61:18
    64:7 65:7
    72:11,24 73:11

77:23 78:11
    79:14 86:23
    89:8,18 90:15
    92:2 98:25
    105:17 111:7
thank  5:17 6:18
    10:18 100:10
    109:17,18
that'd  73:19,19
    100:19
theory  78:25
thereof  59:8
thing  23:14
    29:1 56:1
    68:18 84:9
things  41:1
    52:13 53:11,17
    55:24 56:24
    61:25 68:7
    81:25 91:7
    94:23 101:16
    101:22 103:9
    104:15,18,19
    106:23 107:2
    108:17
think  11:2
    12:19 16:11,21
    20:5,15 23:17
    24:3,17 25:5,7
    32:17 34:4
    38:16 39:2
    40:4 50:16,24
    51:21 54:6
    60:2,19 62:10
    66:8,9 74:7

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[think - um]**

77:4 81:19
86:2 90:7,17
94:12 96:20
97:11
**thinking**  17:15
17:19 18:1
91:5 104:18
**thinks**  96:12
**thought**  15:16
76:1 101:13
**three**  8:10 15:7
15:10 74:11
76:22,23
**till**  93:17
**time**  5:7,7 7:10
10:21 12:8
14:17 16:9
20:2 22:9,15
27:8,17 37:18
42:1 43:13,13
43:21 45:5
46:10,19 48:22
49:20 60:4,9
63:21 66:8,13
66:17 80:13
83:15 85:2
88:11 94:7,12
94:13 100:7,22
101:1,11,19
107:6 109:25
112:8 113:10
113:18,25
114:7
**timeline**  104:17
104:17 108:20

**times**  23:14
26:18 31:17
32:3 41:20,21
85:1 87:1
96:15
**timing**  59:25
60:5
**title**  55:7,10
81:16 90:20
**today**  5:7 11:2
29:14,15 30:15
30:23 31:12,20
31:20 42:24
43:4 47:11
51:10 68:12
86:18 96:25
97:15 101:7
104:11
**today's**  109:24
**together**  13:22
48:19 49:18
57:16 59:9,21
63:1,17 65:20
83:25 91:16
104:2 106:25
**told**  89:14
**tolles**  2:13 6:7
**tomorrow**  42:4
**took**  16:15 70:6
71:13 108:4
**top**  12:22 54:22
57:18 58:15
69:11
**torch**  77:17

**total**  41:20
**touch**  11:14
12:25 13:2
14:18 38:20
**touches**  9:19
38:19
**touching**  14:5
**towards**  20:13
62:20
**track**  32:12
42:13,22 45:9
46:22 70:21
**tracked**  70:14
**transcript**
111:5 112:10
112:13,14
113:6,8,10,13
113:13,22
114:2,2
**transferred**
14:6
**travel**  15:13
**traveling**  100:3
**tremendous**
74:8 90:8
**tried**  15:3
27:17
**trip**  100:4
**tro**  82:21 92:11
106:20 107:8
108:4,14,20
**true**  7:12 15:4
19:9 32:19
36:2 37:7
54:24 55:1

85:8,8 90:12
111:7 112:10
**truth**  112:6,6,6
**try**  23:23 56:19
108:21
**trying**  16:20
22:1 25:7
35:11 63:22
65:9,10 77:6
82:3 84:14
87:25 88:1
**tucker**  17:23
52:1,2,12
57:13 90:20,23
91:6,12,20
92:7
**tucker's**  91:17
91:23
**twenty**  31:21
31:23
**two**  15:7,10
21:4 74:10
100:15,17,18
101:9,16
**tying**  22:22
**type**  40:24
43:18 94:22
**types**  40:24
**typewriting**
112:9
**typical**  101:25

| u |
| --- |

**um**  6:21 43:25
44:18

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[uncork - vip's]**

uncork 90:9
under 35:16
37:3 50:19
55:25 60:23
63:1 91:16
106:25 111:3
112:9
underneath
49:18
undersigned
111:3
understand
6:19 8:4,21
12:17 17:15
19:17 23:12
25:3 39:22
58:1,2 68:2
108:11,12,14
understanding
26:13 32:3
61:9 84:14
85:12 102:20
understands
85:13,14
understood
26:2,4 44:10
44:10,10 51:7
72:5
unencumbered
61:15
unified 63:1,16
uniquely 20:8
21:1,1 77:16
united 15:14

unprofessional
27:9,13,18
updated 59:6,7
uphold 21:22
urquhart 2:18
use 9:9 22:15
86:4 90:6
used 34:22
89:12
uses 56:5
using 39:5

**v**

v 15:8 113:4
115:1
v.a. 3:13
vague 12:14
15:1 16:9
18:25 23:7
35:1,9 38:13
39:13 41:10
42:18 43:1,9
46:16 47:3
49:13 50:4
56:20 57:9,25
59:5,17 60:16
61:19 62:12
63:13 64:7,10
65:1 66:4
67:23 70:1,17
70:25 72:11
73:11 74:6,23
75:21 76:12
78:22 79:16
80:15 81:1,9
81:22 83:17

87:18 88:11
89:7,18 90:2
92:18 95:7
96:7,14,18
98:25 99:9,16
99:21 103:7,23
104:13,25
106:6,18
107:10,22
108:9
value 12:23
90:8
various 68:20
vein 58:16
venture 10:24
veritext 5:9
113:7,9,11,20
version 31:14
64:11
versus 5:18
108:1
video 5:9,12
23:22,22
videographer
3:11 5:5,17 6:9
66:12,16 100:9
100:21,25
109:20,23
videotaped
1:15 2:1
violate 93:4
violating 70:3
violation 16:22
vip 7:18 8:8,14
8:17,24 9:6,12

9:15 11:14
12:20,21 13:2
13:5,19 14:13
14:17 15:9,12
15:15 16:13
20:11,12 21:2
21:5,9 22:23
22:25 33:1,15
33:17 34:2
35:14 36:9
38:17 39:6
43:15,18 48:17
48:18 49:1
57:14,17 58:7
58:14 59:10
60:23 61:20
62:1 65:18
67:10 68:4,6
68:21,22 70:8
70:20 73:3,16
73:19 74:2,9
74:25 75:25
76:21 77:1
78:16 84:1
85:14 86:11
91:9,14 92:6,9
93:12 102:16
102:18,21
103:3,4,10,15
103:21 105:22
106:9 107:3
vip's 9:1,3,10
9:19 13:12
14:5,16,19
15:18 38:23

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[vip's - witness]**

67:11,13 68:5
68:19 76:2
82:18,19 91:2
**vips**  9:4
**vs**  1:7

**w**

**wait**  37:20
54:11 70:4
87:14,14,14,14
87:14 93:16
**waive**  27:17
**waived**  113:24
113:24
**waiving**  113:21
**wallet**  8:15
**want**  10:3,21
11:4 14:3 19:2
21:8 22:21
23:16,18 25:19
27:16 40:7,25
43:17 49:7
51:1 56:24
58:11 60:2
63:25 66:10
67:4 73:21
75:10,11 76:23
81:16,18 82:8
83:24 84:11,23
86:20 87:6,7,8
87:11,22,23
88:6 90:4 93:8
94:5,10,22
101:12 102:3
102:19 105:24
109:12

**wanted**  9:11
13:4 92:9 94:3
**wanting**  101:18
**wants**  84:5
**way**  7:14 9:13
16:10 18:24
19:10,22 21:15
22:18 25:12
26:8 28:2,14
31:6 38:24
46:13 49:15
55:3 59:19
63:1,14 65:9
65:12,13,19
67:9 69:12
72:25 74:7
75:22 81:7,16
85:7,19,24
86:16 91:4
102:17 103:6,8
104:1,4 105:24
**we've**  8:10
22:23,24 27:17
34:3,4,5 41:1
43:12,20 45:6
48:15,15,19,20
59:8 65:25
66:7 71:8 77:8
78:14 82:1,16
82:25 103:16
104:1,4 105:6
105:7 106:21
106:22,23
108:16

**weakened**
62:20 63:19
**website**  36:12
36:16 38:8,10
39:9 40:12
**wednesday**  2:3
5:2
**week**  107:7,8
107:18,20
**weeks**  45:1
48:2 56:11
**weigh**  108:22
**went**  79:2
**wilshire**  30:19
**wisely**  22:15
**witness**  4:2
11:24 12:1,3,5
12:15,18 14:9
15:2 16:10
18:5 19:2,12
19:18 20:24
21:20 22:20
23:13,20,25
24:11,14,16,23
25:1,5,16,25
26:5,12,14
28:9,10,20
29:9,19 30:6
30:11 31:8
32:9,12 33:10
35:2,10 37:3
38:14 40:2,4
41:13 42:20
43:3,12 44:13
44:22 45:7,8

46:5,18 47:7
47:15,19 48:5
48:14 49:15
50:7,8,14,15
51:18 52:10,22
53:9,22,24
54:4,21 55:9
55:22 56:18,21
57:8,10 58:2,6
58:20 59:6,19
60:19 61:9,20
62:13 63:14
64:8,11 65:2,4
65:8 66:5,22
67:4,9,25 68:2
68:17 69:6
70:2,6,18 71:1
71:18,22,24
72:2,11,12,23
72:25 73:10,13
73:23 74:7,24
75:10,22 76:13
77:25 78:13,23
80:16 81:2,10
81:24 82:12,13
83:21 84:9
85:6 86:25
87:21 88:12,18
89:1,9,20 90:3
90:17,23 91:4
91:23 92:4,20
93:8,21 94:15
95:6,8 96:9,19
97:7,9,13 98:1
98:8,14 99:1

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[witness - zoom]**

| | | | |
|---|---|---|---|
| 99:11,18,22 | 96:2,3 106:10 | 47:7,19 48:5 | 73:24 74:3,20 |
| 100:2,17,19 | 108:19 | 48:14 49:15 | 75:5,18 80:21 |
| 101:14 102:8 | **worked** 20:2 | 50:8 52:10 | 91:20,23 |
| 103:8,24 | 33:5 | 53:9 54:21 | **z** |
| 104:14 105:2 | **working** 14:16 | 55:9 56:3,21 | **z** 1:5 2:12 5:14 |
| 105:18,20 | 14:16 16:24,25 | 57:12 58:6,20 | 6:8 113:4 |
| 106:7,19 | 17:7,11 23:4,5 | 59:6,19 60:19 | 115:1 |
| 107:12,24 | 45:17,24 46:12 | 61:20 62:13 | **zembrano** 3:11 |
| 108:12 109:6,8 | 46:19,25 47:8 | 65:2,8 67:22 | 5:8 |
| 109:11,18 | 49:19 63:10,17 | 67:25 68:17 | **zoom** 3:17 |
| 112:4,18 | 103:6 | 70:7 71:22,24 | |
| 113:13,16 | **works** 73:18 | 72:2 73:23,23 | |
| 114:2,5 | 90:4 | 74:7 75:10,22 | |
| **word** 9:8 39:3 | **world** 91:13 | 76:13,13 78:5 | |
| 89:11 98:16 | **worries** 77:15 | 78:13,23 80:7 | |
| **words** 52:9 | **worth** 66:3 | 80:16 81:2,10 | |
| 60:14 90:6 | **write** 44:9 | 81:24 83:21 | |
| **work** 9:20 | **writing** 57:20 | 85:6 86:25 | |
| 13:14,22 14:24 | **written** 57:6,12 | 87:13,21 89:1 | |
| 15:14 16:1,15 | **x** | 89:9 90:3 91:4 | |
| 17:5 21:3,10 | **x** 4:1,11 113:12 | 91:23 93:21 | |
| 21:11 22:24,25 | **y** | 94:10,15,16,16 | |
| 42:15 43:18 | | 96:19 97:7 | |
| 46:7,22 47:13 | **yeah** 7:10 9:17 | 99:11,11 | |
| 49:21 56:5 | 12:5,18,18,18 | 100:18 101:23 | |
| 57:15 59:11 | 14:9,18 15:24 | 102:3 105:18 | |
| 60:23 61:16 | 17:7 19:13 | 105:21 106:7 | |
| 63:1,18 64:5 | 20:24 22:10,20 | 106:19 108:12 | |
| 64:19,22,24 | 23:13 24:11 | 109:6,22 | |
| 65:9,10 68:21 | 25:5,14 26:18 | **year** 60:4 | |
| 68:23 73:16 | 26:21 30:24 | **years** 90:18,18 | |
| 74:2,9,14 | 32:9 35:2 | **yield** 101:11 | |
| 75:23 82:24,25 | 36:24 39:14 | **york** 7:9,11 | |
| 84:16,18 86:10 | 41:9 43:3 | 11:17 32:14 | |
| 87:6 90:9 91:2 | 44:10,13 45:8 | 42:16,21 73:20 | |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

California Code of Civil Procedure

Article 5. Transcript or Recording

Section 2025.520

(a)  If the deposition testimony is
stenographically recorded, the deposition officer
shall send written notice to the deponent and to
all parties attending the deposition when the
Original transcript of the testimony for each
session of the deposition is available for reading,
correcting, and signing, unless the deponent and
the attending parties agree on the record that the
reading, correcting, and signing of the transcript
of the testimony will be waived or that the
reading, correcting, and signing of a transcript of
the testimony will take place after the entire
deposition has been concluded or at some other
specific time.

(b)  For 30 days following each notice under
subdivision (a), unless the attending parties and
the deponent agree on the record or otherwise in
writing to a longer or shorter time period, the
deponent may change the form or the substance of
the answer to a question, and may either approve
the transcript of the deposition by signing it, or

refuse to approve the transcript by not signing it.

(c) Alternatively, within this same period, the deponent may change the form or the substance of the answer to any question and may approve or refuse to approve the transcript by means of a letter to the deposition officer signed by the deponent which is mailed by certified or registered mail with return receipt requested. A copy of that letter shall be sent by first-class mail to all parties attending the deposition.

(d) For good cause shown, the court may shorten the 30-day period for making changes, approving, or refusing to approve the transcript.

(e) The deposition officer shall indicate on the original of the transcript, if the deponent has not already done so at the office of the deposition officer, any action taken by the deponent and indicate on the original of the transcript, the deponent's approval of, or failure or refusal to approve, the transcript. The deposition officer shall also notify in writing the parties attending the deposition of any changes which the deponent timely made in person.

(f) If the deponent fails or refuses to approve the transcript within the allotted period, the

deposition shall be given the same effect as though it had been approved, subject to any changes timely made by the deponent.

(g) Notwithstanding subdivision (f), on a seasonable motion to suppress the deposition, accompanied by a meet and confer declaration under Section 2016.040, the court may determine that the reasons given for the failure or refusal to approve the transcript require rejection of the deposition in whole or in part.

(h) The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to suppress a deposition under this section, unless the court finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust.

DISCLAIMER: THE FOREGOING CIVIL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE STATE RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the deposition officer. Veritext
Legal Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the deposition officer
and/or attorneys in relation to this deposition and
that the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in SSAE 16 certified facilities.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of deposition services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.