**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

DRAFTKINGS INC.,

        Plaintiff,

   v.

MICHAEL HERMALYN,

      Defendant.

Civil Action No. 1:24-cv-10299

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
ACCUSATIONS AND AFFIRMATIVE DEFENSES**

## TABLE OF CONTENTS

**Page**

INTRODUCTION...................................................................................................1

BACKGROUND ....................................................................................................4

LEGAL STANDARD .............................................................................................8

ARGUMENT ........................................................................................................8

   I.     The Accusations in Defendant's Introduction and Affirmative Defenses Unrelated to DraftKings' Claims Should Be Stricken..................8

      A.    Accusations Regarding DraftKings' Alleged Competition with Nonparty Fanatics Have No Bearing on the "Issues in Question" and Are Otherwise Impertinent or Scandalous. .............................................8

      B.    Accusations Regarding DraftKings' "Financials" Are Immaterial. .................10

      C.    The Court Should Strike Impertinent and Scandalous References to DraftKings' CEO...................................................................12

   II.    Defendant's Second and Fifth "Affirmative Defenses" Should Be Stricken Because They Are Not Legitimate Defenses to DraftKings Claims. ........................................................................14

CONCLUSION ...................................................................................................15

i

## TABLE OF AUTHORITIES

### Cases

*Asphaltoss Trade, S.A. v. Bituven Puerto Rico, LLC*,
  2021 WL 965645 (D.P.R. Mar. 15, 2021) ............................................................15

*Bryan Corp. v. Chemwerth, Inc.*,
  2013 WL 6489785 (D. Mass. Dec. 9, 2013) .........................................................11

*Comet Techs. USA Inc. v. XP Power LLC*,
  2022 WL 1131729 (N.D. Cal. Feb. 7, 2022) ........................................................13

*Crow v. Wolpoff & Abramson*,
  2007 WL 1247393 (D. Minn. Apr. 19, 2007).........................................................15

*Doe v. Trustees of Bos. Coll.*,
  2024 WL 816507 (D. Mass. Feb. 27, 2024) ......................................10, 12, 13, 14

*Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*,
  488 F.3d 11 (1st Cir. 2007)......................................................................................9

*Egenera, Inc. v. Cisco Sys., Inc.*,
  547 F. Supp. 3d 112 (D. Mass. 2021) ......................................................................9

*Gauthier v. United States*,
  2011 WL 3902770 (D. Mass. Sept. 2, 2011) ...............................................8, 11, 13

*Int'l Bus. Machines Corp. v. Martson*,
  37 F. Supp. 2d 613 (S.D.N.Y. Feb. 5, 1999)..........................................................12

*J & J Sports Prods., Inc. v. Vizcarra*,
  2012 WL 70359 (N.D. Cal. Jan. 9, 2012) .......................................................10, 15

*Keystone Driller Co. v. Gen. Excavator Co.*,
  290 U.S. 240 (1933)..................................................................................................9

*McLeod v. Fessenden Sch.*,
  626 F. Supp. 3d 220 (D. Mass. 2022) .............................................................8, 9, 13

*Nicholson v. American Hide & Leather Co.*,
  30 N.E. 2d 376 (Mass. 1940) ..................................................................................11

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)..................................................................................................10

*Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden, LLC*,
  823 F. App'x 455 (9th Cir. 2020) .............................................................................10

*Therapeutics MD, Inc. v. Evofem Biosciences, Inc.*,
  2022 WL 1013278 (S.D. Fla. Mar. 30, 2022).........................................................13

*Travers v. Flight Servs. & Sys., Inc.*,
  808 F.3d 525 (1st Cir. 2015).........................................................................9, 11, 13

*Turner v. Rogers*,
  1876 WL 10853 (Mass. 1876) ........................................................................................11

*UARCO Inc. v. Lam*,
  18 F. Supp. 2d 1116 (D. Hawaii 1998) ..........................................................................10

*Zurich Am. Ins. Co. v. Watts Regul. Co.*,
  796 F. Supp. 2d 240 (D. Mass. 2011) ..............................................................................8

**Rules**

Fed. R. Civ. P. 12(f) .........................................................................................................15

## INTRODUCTION

Plaintiff DraftKings Inc. ("DraftKings") respectfully requests that the Court strike immaterial, impertinent, and scandalous accusations from Defendant Michael Hermalyn's Answer and Affirmative Defenses (ECF 149, the "Answer"), as well as Defendant's Second and Fifth so-called "Affirmative Defenses" in their entirety, as highlighted on **Exhibit A** attached to the Declaration of Christine Demana in support of this motion.

Defendant misappropriated DraftKings' trade secrets and blatantly violated his contractual noncompete, nonsolicit, and confidentiality obligations, then attempted to cover up his misconduct by deleting evidence and misleading DraftKings and this Court. This Court already concluded—in a comprehensive, 60-page opinion based on voluminous evidence, live testimony, and credibility determinations—that Defendant "struggled with candor to the Court," and DraftKings is likely to succeed on the merits and would suffer irreparable harm absent preliminary injunctive relief. ECF 132 ("P.I. Opinion") at 36.

In an effort to deflect attention from his proven wrongdoing, Defendant has now filed an Answer that begins with five pages of spurious attacks on DraftKings. His attacks are textbook examples of "immaterial, impertinent, or scandalous" materials that the Court has full discretion to strike under Rule 12(f). They have ***nothing*** to do with the material issues in this case. They are ***designed*** to cast DraftKings and its officers in a negative light. And they are ***highly and unfairly prejudicial*** to DraftKings, a public company with more than 3,000 employees. These irrelevant allegations have no place in this litigation, and if not stricken will needlessly delay this litigation and subject DraftKings to burdensome, unnecessary, and disproportionate discovery.

Defendant's opening five pages of vitriolic and hyperbolic attorney argument are inappropriate and unnecessary in their entirety. In an exercise of moderation, however, DraftKings

specifically moves to strike only three especially egregious and prejudicial categories of accusations.

*First*, this is a suit between DraftKings and Defendant, an individual who misappropriated DraftKings' trade secrets and violated his contractual agreements with DraftKings. Defendant's conspiratorial assertions that DraftKings has engaged in unfair competition with Fanatics, Inc. ("Fanatics")—which is *not* a party to this suit—related to business acquisitions having nothing to do with the issues in this case are entirely immaterial and impertinent. Answer at 2–3.

*Second*, Defendant's vague musings that DraftKings has somehow engaged in "improper conduct" related to its "financials" tied to employee compensation have no bearing on the contracts Defendant breached—or any other issue in this case. *Id.* at 4.

*Third*, Defendant's wild claim that DraftKings' CEO is spearheading a "campaign of falsity about alleged 'misappropriation' and 'deceit' in [a] crusade to ***ruin*** Mr. Hermalyn" and "suppress lawful competition," *id.* at 4–5, are designed solely to defame DraftKings' most senior executive— and are manifestly inconsistent with this Court's findings and credibility determinations at the preliminary injunction stage.

In short, none of those accusations should be in this case because none have any bearing on whether Defendant has done what DraftKings accuses him of doing, or whether DraftKings is entitled to relief from Defendant's misconduct.

Defendant includes those immaterial, impertinent, and scandalous accusations in his Answer for wholly improper purposes: to needlessly delay this litigation, unfairly smear and prejudice DraftKings, and lay the groundwork for countless fishing expeditions during discovery. He has already admitted as much. In the parties' Joint Statement, for example, Defendant listed as a topic for discovery "DraftKings' [allegedly] unlawful attempts to prevent market entry by

Fanatics into the sports betting and gaming industry, by, among other things, attempting to derail Fanatics' acquisition of PointsBet Sportsbook's U.S. assets." *See* ECF 153 at 38. That topic has nothing to do with any dispute between the actual parties to this case. Defendant included a related accusation in his Answer simply as a transparent hook for seeking burdensome and unnecessary discovery.

To be clear, DraftKings would oppose any discovery requests relating to that issue or the other inappropriate assertions Defendants lobbed into his Answer. But the inevitable result would be innumerable meritless discovery disputes on ancillary issues, burdening DraftKings, needlessly delaying this litigation, and wasting this Court's time and resources.

For Defendant, that is precisely the point. Consistent with his strategy to delay this action in the hope that his California state court proceeding can reach a final judgment first, Defendant will undoubtedly use such discovery disputes as a predicate to prolong this proceeding and unfairly prejudice DraftKings by imposing further delays and burdens on both DraftKings and this Court.

Defendant scarcely attempts to pretend his scurrilous accusations are material or pertinent to this case. He purports to incorporate the entire five pages of attorney argument by reference into the first paragraph of the Answer—and then incorporates the entire Answer "into each of his affirmative and other defenses." Answer at 6, 30. But, for twenty-nine of his thirty-two conclusory defenses, Defendant does not even attempt to explain how his inflammatory accusations are relevant. That said, Defendants' Second and Fifth "Affirmative Defenses" variously allege DraftKings' "bad faith" and purported insufficient investigation in bringing this lawsuit, in part based on those accusations. Those defenses are meritless—this Court has already found that DraftKings is likely to prevail on the merits for the majority of its claims to support a preliminary injunction after considering hundreds of pages of evidence in support of DraftKings' well-founded

lawsuit.  Regardless, such "bad faith" accusations are not "defenses" at all, because they would not rebut the merits of DraftKings' claims.  This Court should strike them in their entirety.

The Court can streamline all of this now and obviate the need to resolve future discovery disputes by striking Defendant's improper accusations and meritless "affirmative defenses" at this early stage.  DraftKings respectfully requests the Court do so and grant its Motion to Strike.

## BACKGROUND

Defendant worked at DraftKings as a senior employee overseeing VIP customer acquisition and retention until February 1, 2024.  ECF 1 ("Compl.") ¶¶ 1, 5.  Over the course of his employment, Defendant signed non-disclosure, non-solicitation, and—thirteen times, in return for millions of dollars in compensation—non-competition agreements.  P.I. Opinion at 3–4; Compl. ¶¶ 38–39, 46, 50–51 & Exs. A–B.  After misappropriating DraftKings' trade secrets and confidential information, engaging in a wide-ranging scheme to cover up that misappropriation, and plotting with Fanatics and counsel to dodge his contractual obligations, Defendant departed DraftKings on February 1 to work for Fanatics in a nearly identical role—where he immediately solicited two of his former colleagues to join him and filed a preemptory lawsuit against DraftKings in California to invalidate the restrictive covenants to which he had agreed.  *See* P.I. Opinion at 9–13, 32, 38; Compl. ¶¶ 88–100; ECF 74-2 (Def. Dep. Tr.) at 177:2–180:12; ECF 27-1 (Cal. Compl.).

DraftKings filed its Complaint in this Court on February 5, 2024 to stem the irreparable harm Defendant had already caused, bringing eight claims for breach of contract, misappropriation of trade secrets under both the Defend Trade Secrets Act and the Massachusetts Uniform Trade Secrets Act, breach of duty of loyalty, and conversion.  *See* Compl. ¶¶ 105–173.  That same day, DraftKings moved for a temporary restraining order.  *See* ECF 4.  On February 8, the Court issued

4

a TRO enjoining Defendant from, among other things, using or disclosing DraftKings' confidential information or soliciting DraftKings' customers or employees. *See* ECF 44.

After expedited discovery, DraftKings filed its motion for preliminary injunction on March 14 to further enjoin Defendant's misappropriation of its trade secrets, to protect its confidential information, and to enforce Defendant's noncompete and nonsolicit covenants throughout this litigation. *See* ECF 72, 73. DraftKings' motion for preliminary injunction was supported by nine witness affidavits, four appendices, and twenty-six supporting exhibits. On the same day, Defendant filed a motion to dismiss based on *forum non conveniens* (in favor of his California lawsuit), in which he attempted to dodge the jurisdiction of this Court and his prior agreements that Massachusetts law would govern this dispute. *See* ECF 68, 69. Defendant did not otherwise move to dismiss or challenge DraftKings' Complaint.

After a full-day evidentiary hearing featuring testimony from six witnesses and argument from counsel, this Court issued a 60-page opinion and order granting, in large part, DraftKings' motion for preliminary injunction on April 30, 2024. *See* P.I. Opinion. The Court observed that Defendant did not dispute that "if his noncompetition agreement is enforceable, he breached it by starting work for Fanatics on the same day that he resigned from DraftKings." *Id.* at 32. The Court found that Defendant had likely "used DraftKings's confidential . . . information to solicit [DraftKings employees] to join Fanatics." *Id.* at 38. It found that Defendant's "testimony about his interactions with DraftKings' confidential documents and trade secrets in January 2024 does not bear sufficient hallmarks of credibility to overcome DraftKings's conflicting evidence." *Id.* at 46. And it found that, "taken as a whole, the evidence submitted at this stage in the proceedings suggests that [Defendant] has struggled with candor to the Court." *Id.* at 36.

Based on those findings, the Court concluded that DraftKings was likely to succeed on the

merits on the bulk of its claims and would suffer irreparable harm absent preliminary injunctive relief. *See* ECF 132 at 32, 37–38, 47–48. It enjoined Defendant from, among other things, working for Fanatics in a competitive capacity in the U.S. and soliciting DraftKings' employees until February 1, 2025, and from using, disclosing, or destroying DraftKings' confidential information at any time. *See* ECF 133. The Court also found that Massachusetts law—not California law—applies to Defendant's restrictive covenants. P.I. Opinion at 24–28. And, in that same opinion, the Court denied in full Defendant's motion to dismiss or stay this action. *Id.* at 60.

On May 24, Defendant filed his Answer. ECF 149. Defendant's Answer includes a gratuitous "Introduction" section containing scattershot accusations untethered to the issues and parties in this case—and that Defendant did not even attempt to support with evidence or argument during the temporary restraining order or preliminary injunction stages. *See id.* at 1–5. Among the most egregious are accusations that DraftKings has been seeking to improperly compete with nonparty Fanatics, including by interfering with Fanatics' unrelated acquisition of the U.S. assets of PointsBet Sportsbook; vague and baseless implications DraftKings engaged in "improper conduct" related to its "financials" tied to employee compensation; and that DraftKings and its CEO supposedly brought this litigation in "bad faith" to "ruin" Defendant and "chill" lawful recruiting. *Id.* at 2, 4, 5. Defendant also peppers these accusations throughout his Fourth and Fifth alleged "Affirmative Defenses." *Id.* at 31–32.

Defendant's Answer raises a laundry list (32) of "Affirmative Defenses," as well. In addition to his fourth alleged "unclean hands" defense, Defendant's Second and Fifth "Affirmative Defenses" allege that DraftKings' claims are "frivolous" and brought in "bad faith" for an improper purpose. *Id.* at 30–32, 34.[1]

---

[1] DraftKings disagrees with each and every purported accusation and defense.

In the parties' subsequently filed Joint Statement on June 7, Defendant made clear he will seek discovery on each of his impertinent accusations and meritless "defenses," providing a bulleted list that largely tracks his Answer.  *See* ECF 153 at 38–39 (seeking discovery into, for example, "DraftKings' actions that are intended to restrain lawful competition from Fanatics"; "DraftKings' unlawful attempts to prevent market entry by Fanatics into the sports betting and gaming industry"; "DraftKings' actions that are intended to chill lawful recruiting by Fanatics"; and "DraftKings' improper conduct in connection with its financials").  As the Court knows, Defendant also proposed a protracted discovery schedule in that Joint Statement under which fact discovery will not complete for *an entire year*.  *See id.* at 13–14.  If Defendant gets his way, substantial completion of document discovery would not occur until January 31, 2025 and the final fact discovery deadline would be June 5, 2025.  *Id.* at 13.

Defendant's plan to seek discovery on ancillary accusations and elongated discovery proposal is consistent with his strategy to unnecessarily delay this action so that his California state court proceeding can reach a final judgment first.  As detailed in the Joint Statement, Defendant has sought to fast track the California state proceeding, requesting that trial take place *this summer*. ECF 153 at 4–5.  Defendant will undoubtedly use discovery disputes raised by his immaterial and impertinent requests in the federal action as a predicate for further delays.  But the Court can streamline this process and obviate the need for resolving future discovery disputes by ruling now that these topics are not relevant to this case.

DraftKings now brings this Motion to Strike to strip out immaterial, impertinent, and scandalous accusations from the Introduction and Affirmative Defenses in Defendant's Answer and to strike his so-called Second and Fifth Affirmative Defenses in their entirety, so that this Court can obviate the need for resolving future discovery disputes on these ancillary accusations

and illegitimate defenses.

## LEGAL STANDARD

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A matter is immaterial where it has "no essential or important relationship to the claim for relief or the defenses being pleaded" and impertinent where it "do[es] not pertain, and [is] not necessary, to the issues in question." *McLeod v. Fessenden Sch.*, 626 F. Supp. 3d 220, 222 (D. Mass. 2022). And scandalous matter is that which "improperly casts a derogatory light on someone." *Gauthier v. United States*, 2011 WL 3902770, at *12 (D. Mass. Sept. 2, 2011).

Courts in this district retain "considerable discretion" in resolving motions to strike, particularly where there is "a showing of prejudice to the moving party." *Zurich Am. Ins. Co. v. Watts Regul. Co.*, 796 F. Supp. 2d 240, 246 (D. Mass. 2011).

## ARGUMENT

I.   **The Accusations in Defendant's Introduction and Affirmative Defenses Unrelated to DraftKings' Claims Should Be Stricken.**

The improper accusations in Defendant's Introduction and Affirmative Defenses fall into three general categories: (a) DraftKings' alleged overall competition with nonparty Fanatics; (b) DraftKings' purported "improper conduct" related to its "financials" tied to employee compensation; and (c) references to DraftKings' CEO. None should be in this case.

A.   **Accusations Regarding DraftKings' Alleged Competition with Nonparty Fanatics Have No Bearing on the "Issues in Question" and Are Otherwise Impertinent or Scandalous.**

Defendant insists in his Answer that DraftKings' claims against him are part of some broader effort to forestall competition with nonparty Fanatics—including that DraftKings is "seeking to hostilely delay Fanatics' business expansion" by, among other things, purportedly

trying to sabotage Fanatics' unrelated acquisition of the U.S. assets of PointsBet Sportsbook and is allegedly attempting to "chill fair competition and lawful recruiting."  Answer at 2, 5; *id.* at Affirmative Defenses 4, 5.  But more importantly, they are immaterial and impertinent because they do not address the "issues in question," *McLeod*, 626 F. Supp. 3d at 222—whether *Defendant* stole DraftKings' trade secrets and confidential information, unlawfully commenced competitive employment with Fanatics, and/or solicited DraftKings' customers and employees in violation of his contracts.  *See generally* Compl. ¶¶ 105–73; P.I. Opinion at 32, 37–38, 47–48.

Pretending that his spurious allegations are somehow relevant, Defendant bakes them into his purported "unclean hands" defense.  *See* Answer at 31–32 (Fourth Affirmative Defense pointing to same accusations).[2]  But they cannot support any real defense to the claims at issue in this suit, because DraftKings' purported conduct regarding *Fanatics* has absolutely nothing to do with its equitable claims *against Defendant*.  The "limit[ed]" doctrine providing "he who comes into equity must come with clean hands," *Dr. Jose S. Belaval, Inc. v. Perez-Perdomo*, 488 F.3d 11, 15 (1st Cir. 2007) (*quoting Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 241 (1933)), applies *only* where the conduct asserted "has immediate and necessary relation to the equity that [plaintiff] seeks ***in respect of the matter in litigation***," *Egenera, Inc. v. Cisco Sys., Inc.*, 547 F. Supp. 3d 112, 118 (D. Mass. 2021) (*quoting Keystone Driller Co.*, 290 U.S. at 245) (emphasis added); *see also, e.g.*, *Travers v. Flight Servs. & Sys., Inc.*, 808 F.3d 525, 538 (1st Cir. 2015) (conduct must be "directly related to the merits of the controversy between the parties").

Because immaterial allegations related to nonparty Fanatics have no "immediate and necessary relation" to the equity (injunction) DraftKings seeks from Defendant, this Court should

---

[2] To the extent Defendant relies on such accusations to support his Fifth Affirmative Defense, DraftKings argues that entire defense should be stricken as set forth below.  Otherwise, the accusations therein are independently immaterial for the reasons enumerated here.

strike them.  *See J & J Sports Prods., Inc. v. Vizcarra*, 2012 WL 70359, at *4–5 (N.D. Cal. Jan. 9, 2012) (striking unclean hands defense with prejudice where defendants' allegations concerning nonparty were "irrelevant" to underlying cause of action); *see also Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden, LLC*, 823 F. App'x 455, 457 (9th Cir. 2020) (upholding rejection of unclean hands defense after trial where alleged misconduct affected only a "non-party" and not "the equitable relations between the litigants"); *UARCO Inc. v. Lam*, 18 F. Supp. 2d 1116, 1118, 1124–25 (D. Hawaii 1998) (granting preliminary injunction enforcing restrictive covenants and rejecting unclean hands defense where defendants failed to show that plaintiff's interactions with competitors were illegal or that any harm from those interactions "directly relate[d] to this action").

Make no mistake, DraftKings will be prejudiced if these baseless allegations are not stricken.  Defendant made clear in his portion of the parties' Joint Statement that he hopes to take discovery on "DraftKings' [alleged] unlawful attempts to prevent market entry by Fanatics into the sports betting and gaming industry, by, among other things, attempting to derail Fanatics' acquisition of PointsBet Sportsbook's U.S. assets."  *See* ECF 153 at 38.  Such accusations would "prejudice [DraftKings] by forcing it to defend [itself] against scandalous accusations that are unrelated to the merits," *Doe v. Trustees of Bos. Coll.*, 2024 WL 816507, at *4 (D. Mass. Feb. 27, 2024), miring DraftKings and this Court in extensive discovery disputes far afield from the claims at issue in this case, *cf. Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978) ("[D]iscovery should be denied when a party's aim is to delay bringing a case to trial, or embarrass or harass the person from whom he seeks discovery.").  They should be stricken.

**B.    Accusations Regarding DraftKings' "Financials" Are Immaterial.**

Defendant's accusations about DraftKings' "financials" are likewise immaterial.  To the extent DraftKings can decipher Defendant's vague insinuations, Defendant appears to accuse DraftKings of somehow engaging in "improper conduct" related to its "financials" tied to

employee compensation based on some vague and baseless "information and belief."  *See* Answer at 4, 31–32.

Either way, Defendant's attacks have no bearing on the *enforceability of Defendant's restrictive covenants and other misconduct at issue in this litigation*.  Defendant agreed to reasonable restrictive covenants in agreements providing him a fixed amount of DraftKings equity in the form of "Restricted Stock Units," and further agreed the covenants were given in exchange for "any form of compensation or benefit from or in the Company."  ECF 1-1 at 1; *see also* ECF 1-2 at 1.  Defendant does not dispute—and has *never* disputed, despite his repeated challenges to the validity of his restrictive covenants at the temporary restraining order and preliminary injunction stages—that DraftKings performed under *those* contracts by granting him RSUs, or that DraftKings upheld its end of that bargain.  *Cf. Nicholson v. American Hide & Leather Co.*, 30 N.E. 2d 376, 378 (Mass. 1940) (alleged breach of one contract is not grounds for rescission of another "independent and separate" agreement); *Turner v. Rogers*, 1876 WL 10853 (Mass. 1876) (where two contracts are "distinct, and to be performed at different times, the non-performance of one is no defense to an action on the other").  And to the extent Defendant's Answer asserts some accusation regarding what employees *besides* Defendant were paid, or about DraftKings' "financials" generally, such accusations plainly do not relate to the agreement between Defendant and DraftKings or the subject matter of this dispute.  They are nothing more than fantasy designed to "improperly casts a derogatory light on" DraftKings. *Gauthier*, 2011 WL 3902770, at *12.

Defendant's alleged unclean hands defense again cannot save his accusations.  Vague "information and belief" accusations about DraftKings' compensation or "financials" are not "directly related to the merits of the controversy between" DraftKings and Defendant as required to support such a defense.  *Travers*, 808 F.3d at 538; *see also Bryan Corp. v. Chemwerth, Inc.*,

2013 WL 6489785, at *1 (D. Mass. Dec. 9, 2013) (granting motion to strike unclean hands defense as insufficiently pleaded where defendant's accusations were "made only on information and belief"); *Int'l Bus. Machines Corp. v. Martson*, 37 F. Supp. 2d 613, 619 (S.D.N.Y. Feb. 5, 1999) (finding former employee's unclean hands defense failed as a matter of law in motion for judgment on the pleadings where former employee's allegations that other employees made his employment conditions untenable did "not directly relate[]" to breach of contract action involving restrictive covenants).  They should be stricken for that reason, as well.

Instead, and again, Defendant included his meritless accusations about DraftKings' "financials" to prejudice DraftKings by inventing another basis to seek DraftKings' financials in discovery, "forcing it to defend [itself] against scandalous accusations unrelated to the merits," *Trustees of Bos. Coll.*, 2024 WL 816507, at *4, and unnecessarily delay this litigation by engaging in discovery disputes far afield from the claims at issue in this case.  *See* ECF 153 at 39 (Defendant's Joint Statement disclosure that he will pursue discovery related to "DraftKings' improper conduct in connection with its financials and failure to pay earned compensation to Mr. Hermalyn.").  The Court should strike them.

## C. The Court Should Strike Impertinent and Scandalous References to DraftKings' CEO.

Finally, Defendant's absurd and irrelevant accusations related to DraftKings' CEO do not belong in his Answer.  Such accusations include that DraftKings' CEO allegedly personally sought to "purposefully initiate[] a bidding war against [nonparty] Fanatics" related to its acquisition of PointsBet; that he "controls" DraftKings' employees via compensation (and is involved in some alleged internal jockeying for position involving Defendant); and that he is spearheading a "campaign of falsity about alleged 'misappropriation' and 'deceit' in [a] crusade to ***ruin*** Mr. Hermalyn" and "chill fair competition."  Answer at 2, 4–5 (emphasis in original).

To the extent these accusations relate to DraftKings' CEO's purported involvement in alleged broader competition with nonparty Fanatics or alleged "improper conduct" related to DraftKings' "financials" tied to employee compensation, they are impertinent and scandalous for the reasons explained above.  *See supra* Sections A, B.  Injecting "DraftKings CEO" does not make those accusations about DraftKings' CEO any less harassing and prejudicial, any more proper for (apex) discovery, or any more related to the "merits of the controversy."  *Travers*, 808 F.3d at 538; *see* ECF 153 at 10 (Defendant's gratuitous invocation of DraftKings' CEO, by name, in its portion of the Joint Statement).  And to the extent that Defendant makes accusations about DraftKings' CEO's (or other executives') motivation for bringing or participating in this litigation[3] as part of some "campaign of personal destruction," *see* Answer at 5, or "Machiavellian leadership team," *id.* at 1, such accusations fail for the same reason: they are simply "derogatory," *Gauthier*, 2011 WL 3902770, at *12, and have nothing to do with DraftKings' claims.  *See Trustees of Bos. Coll.*, 2024 WL 816507, at *4 (striking allegations designed to establish a party's motivation which were "not essential or necessary to prove the alleged claims"); *see also McLeod*, 626 F. Supp. 3d at 223 (striking as irrelevant "inappropriate editorial statements" about defendant).

Nor, yet again, does an unclean hands defense open the door to accusations related to DraftKings' alleged motivation for filing this lawsuit.  *See, e.g.*, *Comet Techs. USA Inc. v. XP Power LLC*, 2022 WL 1131729, at *3 (N.D. Cal. Feb. 7, 2022) ("Plaintiffs' motive for filing the suit is not relevant to the unclean hands defense."); *Therapeutics MD, Inc. v. Evofem Biosciences, Inc.*, 2022 WL 1013278, at *15 (S.D. Fla. Mar. 30, 2022) ("[E]ven if the alleged motivation for Plaintiff's acquisition of a competing product is true, it is irrelevant and unrelated to this lawsuit"),

---

[3] This includes Defendant's bizarre accusation that Shawn Henley's affidavit in support of DraftKings' motion for preliminary injunction (which was filed on the date this Court set) was somehow nefariously timed.  *See* Answer at 5.

*report and recommendation adopted sub nom.*, *TherapeuticsMD, Inc. v. Evofem Biosciences, Inc.*, 2022 WL 1262118 (S.D. Fla. Apr. 28, 2022). As with Defendant's other irrelevant accusations, they serve only to "prejudice [DraftKings] by forcing it to defend [its CEO] against scandalous accusations that are unrelated to the merits," *Trustees of Bos. Coll.*, 2024 WL 816507, at *4, and to subject DraftKings to needless delay and extensive discovery disputes.

## II.    Defendant's Second and Fifth "Affirmative Defenses" Should Be Stricken Because They Are Not Legitimate Defenses to DraftKings Claims.

This Court likewise should strike entirely Defendant's Second and Fifth "Affirmative Defenses," in which he pleads (using various formulations) that DraftKings brought this lawsuit in "bad faith" or for some "improper purpose," "without reasonable inquiry." Answer at 30 (Second Affirmative Defense), 31–32 (Fifth Affirmative Defense).

Defendant's "bad faith" allegations at this stage are completely baseless. DraftKings brought this lawsuit to protect legitimate business interests in its intellectual property and confidential, proprietary information in the face of Defendant's misappropriation, and to stop and redress the harm Defendant continued to cause by blatantly violating his legal obligations. *See generally* Compl. The parties have already conducted expedited discovery; and this Court has already heard copious evidence on the majority of those claims during the preliminary injunction phase—including the live testimony from six witnesses. *See* ECF 72–84; P.I. Opinion at 22–23. This Court has already issued a 60-page opinion and order granting, in large part, DraftKings' motion for preliminary injunction—including, for example, because Defendant *does not dispute* that he engaged in the conduct in DraftKings Complaint by breaching his noncompetition covenant if enforceable (the Court found it is). *See* P.I. Opinion. And, again, this Court has already concluded that DraftKings is likely to succeed on the merits on the bulk of its claims. *See id.* at 24, 32, 37, 40, 47. Defendant never moved to dismiss or otherwise based on DraftKings' alleged

14

"motives" during all that time.

Regardless, none of Defendant's Second and Fifth "Affirmative Defenses" constitute valid *defenses* to DraftKings' claims.  *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense . . ."); *see also, e.g.*, *J & J Sports Prods., Inc.*, 2012 WL 70359, at *2 ("A defense is insufficient as a matter of law if it would not, under the facts alleged, constitute a valid defense to the action.  If a defense is legally insufficient, it can and should be stricken.") (citation omitted)).  Purported affirmative defenses claiming that a plaintiff "filed a frivolous . . . Complaint against [defendant] and/or engaged in temerity and/or vexatious litigation," as here, just "create confusion"—they are not actually "affirmative defenses" because, if the plaintiff "proves all elements of its claims, [such] 'defense[s]' would not negate [defendant's] liability." *Asphaltoss Trade, S.A. v. Bituven Puerto Rico, LLC*, 2021 WL 965645, at *8 (D.P.R. Mar. 15, 2021) (granting motion to strike such a "defense").  Courts thus routinely strike them as both substantively and procedurally improper.  *See, e.g.*, *id.*; *Crow v. Wolpoff & Abramson*, 2007 WL 1247393, at *3 (D. Minn. Apr. 19, 2007) (striking bad faith affirmative defense because it "disputes the factual basis of the Complaint, and as such, [] is not an affirmative defense").  DraftKings respectfully requests that this Court do the same.

## CONCLUSION

DraftKings respectfully requests that this Court strike from Defendant's Answer the improper accusations in Defendant's Introduction, along with the related accusations in Defendant's Fourth and Fifth Affirmative Defenses, as well as striking Defendant's Second and Fifth "Affirmative Defenses" in their entirety, as highlighted in **Exhibit A** to the Declaration of Christine Demana.

Dated: June 14, 2024                    Respectfully submitted,

                                        */s/ Andrew S. Dulberg*
                                        William F. Lee (BBO #291960)
                                        Andrew S. Dulberg (BBO #675405)
                                        WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                        60 State Street
                                        Boston, MA 02109
                                        Tel: (617) 526-6000
                                        William.Lee@wilmerhale.com
                                        Andrew.Dulberg@wilmerhale.com

                                        GIBSON, DUNN & CRUTCHER LLP
                                        Orin Snyder (*pro hac vice*)
                                        Harris M. Mufson (*pro hac vice*)
                                        Justine M. Goeke (*pro hac vice*)
                                        Christine Demana (*pro hac vice*)
                                        Justin M. DiGennaro (*pro hac vice*)
                                        200 Park Avenue
                                        New York, NY  10166-0193
                                        Tel:  212.351.4000
                                        Fax:  212.351.4035
                                        OSnyder@gibsondunn.com
                                        HMufson@gibsondunn.com
                                        JGoeke@gibsondunn.com
                                        CDemana@gibsondunn.com
                                        JDiGennaro@gibsondunn.com

                                        Jason C. Schwartz (*pro hac vice*)
                                        Jacob T. Spencer (*pro hac vice*)
                                        1050 Connecticut Avenue, N.W.
                                        Washington, D.C.  20036
                                        Tel:  202.955.8500
                                        JSchwartz@gibsondunn.com
                                        JSpencer@gibsondunn.com

                                        *Attorneys for Plaintiff DraftKings Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I, Andrew S. Dulberg, counsel for Plaintiff, hereby certify that this document has been filed through the Court's ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Andrew S. Dulberg*
Andrew S. Dulberg
