# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DRAFTKINGS, INC.,

                *Plaintiff*,

    v.

MICHAEL Z. HERMALYN,

                *Defendant.*

Civil Action No. 1:24-cv-10299-JEK

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................4

LEGAL STANDARD.............................................................................................................6

ARGUMENT .........................................................................................................................8

    A.    DraftKings Fails To Meet the Standard To Show That Mr. Hermalyn's
           Defenses of Bad Faith and Improper Purpose Are Legally Insufficient.................8

           1.    *DraftKings Misapplies The Applicable Standard.* ......................................9

           2.    *Mr. Hermalyn's 2nd Defense Is Legitimate Because DraftKings'*
               *Improper Anticompetitive Purpose Renders Its Covenants*
               *Unenforceable.* .........................................................................................9

           3.    *Mr. Hermalyn's 5th Defense Is Legitimate Because DraftKings'*
               *Misconduct Defeats Its Claim For Equitable Relief.* ...............................11

    B.    The Challenged Allegations Are Material, Pertinent, and Appropriate to
           Mr. Hermalyn's Defenses. ....................................................................................13

           1.    *DraftKings' and Its CEO's Involvement and View of Mr.*
               *Hermalyn's Relationships and Goodwill Are Material, Pertinent,*
               *and Appropriate.* .....................................................................................13

            2.    *DraftKings' Anticompetitive Conduct Against Mr. Hermalyn's*
               *New Employer Is Also Pertinent.* .............................................................16

            3.    *DraftKings' Misconduct Concerning Financial Reporting and*
               *Employee Compensation Is Material.* .......................................................17

            4.    *Mr. Hermalyn Is Entitled To Respond To DraftKings' False*
               *Allegations.* .............................................................................................19

    C.    DraftKings Fails To Demonstrate Undue Prejudice. .............................................19

CONCLUSION......................................................................................................................20

**Page(s)**

**Cases**

*4MVR, LLC v. Hill*,
    2015 WL 3884054 (D. Mass. June 24, 2015) ............................................................6

*Alvarado Morales v. Digital Equip. Corp.*,
    669 F. Supp. 1173 (D.P.R. 1987), *aff'd*, 843 F.2d 613 (1st Cir. 1988) .................................15

*Autila v. Mass. Bay Transp. Auth.*,
    342 F.R.D. 23 (D. Mass. 2022) ...........................................................7, 8, 15

*Automile Holdings, LLC v. McGovern*,
    136 N.E.3d 1207 (Mass. 2020) ...........................................................10, 14

*Comet Techs. USA Inc. v. XP Power LLC*,
    2022 WL 1131729 (N.D. Cal. Feb. 7, 2022) ..........................................................14

*Deckers Outdoor Corp. v. Primark U.S. Corp.*,
    2023 WL 8477409 (D. Mass. Dec. 7, 2023) ..........................................................8, 9, 19

*Doble v. Standard Brands, Inc.*,
    11 F.R.D. 200 (D. Mass. 1951) ...........................................................7

*Econ. Grocery Stores Corp. v. McMenamy*,
    195 N.E. 747 (Mass. 1935) ...........................................................12

*Egenera, Inc. v. Cisco Sys., Inc.*,
    547 F. Supp. 3d 112 (D. Mass. 2021) ...........................................................16

*Fluid Control Prods., Inc. v. CAS Aeromotive, Inc.*,
    2010 WL 427765 (E.D. Mo. Feb. 1, 2010) ...........................................................18

*Galipault v. Wash Rock Invs., LLC*,
    836 N.E.2d 1123 (Mass. 2005) ...........................................................11

*In re Gitto Global Corp.*,
    422 F.3d 1 (1st Cir. 2005) ...........................................................8

*Harrell v. Backstage Salon & Day Spa, Inc.*,
    2022 WL 618681 (Mass. Super. Ct. Feb. 22, 2022) ..........................................................10, 13

*Hawthorne's, Inc. v. Warrenton Realty, Inc.*,
    606 N.E.2d 908 (Mass. 1993) ...........................................................12

*Iron Mountain Info. Mgmt., Inc. v. Viewpointe Archive Servs., LLC*,
    707 F. Supp. 2d 92 (D. Mass. 2010) .......................................................11

*Lewis v. Shaffer Stores Co.*,
    218 F. Supp. 238 (S.D.N.Y. 1963) .........................................................15

*Me. Pointe, LLC v. Starr*,
    2011 WL 379279 (D. Mass. Feb. 3, 2011) ..............................................10

*Manning v. Bos. Med. Ctr. Corp.*,
    725 F.3d 34 (1st Cir. 2013) ......................................................................6

*McLaughlin v. Amirsaleh*,
    65 Mass. App. Ct. 873 (Mass. App. Ct. 2006) ................................12, 14

*United States ex rel. Metric Elec., Inc. v. CCB, Inc.*,
    2016 WL 4491831 (D. Mass. Aug. 25, 2016) .......................................14

*New England Merchants Nat'l Bank of Bos. v. Kann*,
    294 N.E.2d 390 (Mass. 1973) ...............................................................12

*Park v. Welch Foods, Inc.*,
    2014 WL 1231035 (N.D. Cal. Mar. 20, 2014) .........................................8

*Perella v. United Site Servs. Ne., Inc.*,
    2024 WL 2067293 (Mass. App. Ct. May 9, 2024) ................................11

*PetEdge, Inc. v. Marketfleet Sourcing, Inc.*,
    2017 WL 2983086 (D. Mass. July 12, 2017).............................7, 8, 9, 11

*R.I. Res. Recovery Corp. v. Travelers Cas. & Surety Co. of Am.*,
    2010 WL 11693625 (D.R.I. Oct. 8, 2010) .............................................20

*SEC v. Esposito*,
    2017 WL 5615571 (D. Mass. Nov. 21, 2017) ...................................8, 19

*SEC v. WMDS Inc.*,
    2006 WL 8458288 (D. Mass. May 24, 2006) ..........................................8

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
    630 F. Supp. 2d 395 (D. Del. 2009).........................................................7

*Therapeutics MD, Inc. v. Evofem Biosciences, Inc.*,
    2022 WL 1013278 (S.D. Fla. Mar. 30, 2022).......................................15

*Traincroft, Inc. v. Ins. Co. of Pa.*,
    2014 WL 2865907 (D. Mass. June 23, 2014) ..........................................7

*Travers v. Flight Servs. & Sys., Inc.*,
808 F.3d 525 (1st Cir. 2015) ........................................................................17, 18

*Wash. Mut. Bank v. Am. Home Mortg. Servicing, Inc.*,
2015 WL 7739070 (Mass. App. Ct. Dec. 1, 2015) ...............................................14

## **Statutes**

Defend Trade Secrets Act, 18 U.S.C. § 1836 (b)(3)(D) .................................................13

M.G.L. c. 149, § 24L(b)(iii) ...........................................................................................10

## **Rules**

Fed. R. Civ. P. 12(f) .........................................................................1, 2, 6, 7, 8, 20

## **Other Authorities**

5C Charles Alan Wright, et. al., *Fed. Prac. & Proc. Civ.* § 1381 (3d ed. 2011) ............7

RESTATEMENT 2D OF CONTRACTS, § 357 ......................................................................11

## INTRODUCTION

Plaintiff DraftKings, Inc. ("DraftKings") seeks through this lawsuit to throttle legitimate competition by targeting Defendant Michael Z. Hermalyn, its former employee and new employee of upstart competitor Fanatics. In his Answer, Mr. Hermalyn raised these actions by DraftKings in connection with his affirmative defenses and allegations. DraftKings retaliated with its instant Motion to Strike, nominally under Fed. R. Civ. P. 12(f), but really, a premature motion to prevent Mr. Hermalyn from obtaining tailored discovery tethered to his defenses. DraftKings does not satisfy the ***extremely demanding standard*** to strike portions of Mr. Hermalyn's Answer, and the Court should reject its Motion. Indeed, Mr. Hermalyn's defenses relating to DraftKings' anticompetitive purpose go to the heart of the enforceability of the restrictive covenants at issue in this case. Post-employment restrictions improperly targeted at chilling ordinary competition ***do not*** protect a legitimate business interest and are not enforceable.

DraftKings is part of a duopoly (alongside FanDuel) in the online gambling and sports betting industry in the United States. Fanatics recently entered the sector, bringing an ethos of innovation and competition against DraftKings' dominance. Fanatics valued Mr. Hermalyn's unique skill set and his relationships from the entertainment and sports worlds—many of which were acquired prior to or independently of his position with DraftKings—and offered him ground-level access to the company's VIP business, including its expansion into the online gambling and sports betting VIP market segment. Thus, Mr. Hermalyn left DraftKings on February 1, 2024 to pursue a once-in-a-lifetime career opportunity to join the executive team at Fanatics and lead its VIP business and Los Angeles office.

DraftKings and its Co-Founder and CEO, Jason Robins, were deeply wounded by Mr. Hermalyn's departure for its competitor Fanatics. As detailed in Mr. Hermalyn's Answer, Robins,

who exerts control over DraftKings and its employees, had come to rely on Mr. Hermalyn's business acumen and personal connections (many of which were developed independently of DraftKings), and has a history of retaliating against departing employees. Indeed, Robins has made concerning statements to individuals affiliated with DraftKings and to several third parties about his true goals: to ruin Mr. Hermalyn (personally and professionally), to get his employment terminated by Fanatics, and to take him out of the industry altogether—these not-so-veiled threats and statements have ***nothing to do*** with enforcing DraftKings' post-employment restrictive covenants for ***legitimate*** business purposes. Just the opposite. And DraftKings, at Robins' direction, initiated this lawsuit with a 49-page Verified Complaint, pleading a plethora of smears against Mr. Hermalyn, which have only continued throughout the case. DraftKings' inflammatory accusations are consistent with and indicative of there being much more at play here than enforcement of restrictive covenants for a legitimate business purpose; rather, this case is about improperly seeking to chill legitimate, ordinary competition posed by DraftKings' rival, Fanatics.

DraftKings' Motion is proof positive of its ill intent. In his Answer, Mr. Hermalyn raised traditional affirmative defenses (including his 2nd and 5th Defenses) that DraftKings brought this case in bad faith and for anticompetitive and improper purposes. He also pleaded facts about Robins' and DraftKings' misconduct ***in support of*** those and other unchallenged defenses, including unclean hands (his 4th Defense), specifically forecasting that properly tailored discovery would bear them out. DraftKings—obviously concerned about these negative facts coming to light—filed a Motion to Strike parts of the Answer purportedly under Rule 12(f).

Striking portions of a pleading, however, is a drastic and disfavored remedy, and such motions are granted only in rare and extreme circumstances, even when warranted and filed for legitimate reasons—and DraftKings' Motion is neither. Rather, DraftKings is attempting to

prematurely foreclose specific, targeted, and critical discovery that will be appropriately tethered to Mr. Hermalyn's defenses. Try as DraftKings might, the Federal Rules of Civil Procedure simply do not contemplate only *one-sided* discovery. The Court should reject DraftKings' extraordinary request for at least three, independent reasons.

*First*, Mr. Hermalyn's 2nd and 5th Defenses are valid, legally sufficient, and, indeed, common defenses. They are ***material*** to DraftKings' claims against Mr. Hermalyn and (alleged) entitlement to equitable relief. Mr. Hermalyn is allowed at this stage to preserve broad defenses in his Answer and to develop and refine them through discovery.

*Second*, there is nothing "immaterial, impertinent, or scandalous" about Mr. Hermalyn's counter-allegations. They are ***directly relevant*** to the merits of DraftKings' claims and to Mr. Hermalyn's defenses. His allegations that DraftKings and its CEO recognized that he possessed his own goodwill, and about Robins' involvement and interactions in matters relevant here, go directly to DraftKings' restrictive covenant and trade secrets claims, and are not "scandalous" simply because DraftKings (and Robins) do not want them aired. Similarly, DraftKings' anticompetitive conduct toward Mr. Hermalyn's new employer, Fanatics, goes to the enforceability of the restrictive covenants and DraftKings' pursuit of equitable relief. And DraftKings' reporting of its financials in a manner that distorts employee compensation, namely stock awards, is material to DraftKings' performance under its covenants with Mr. Hermalyn, as well as its damages, which are based on stock awards to Mr. Hermalyn and other employees. These allegations *also* support Mr. Hermalyn's 2nd and 5th Defenses, as well as his 4th Defense (unclean hands) and *several* other defenses which DraftKings did not challenge. The Court set a schedule in this case (Dkt. No. 159), and discovery is now to proceed in the ordinary course. The Motion is nothing more than an improper effort to exercise control over the narrative of this dispute. The

Court should not silence Mr. Hermalyn or hinder his ability to defend this case particularly when Mr. Hermalyn's allegations are pertinent and material to his defenses.

*Third*, DraftKings has not demonstrated <u>any</u> undue prejudice from the inclusion of the challenged allegations or defenses. The Court should therefore reject DraftKings' unfounded effort to impede Mr. Hermalyn's defense, allow Mr. Hermalyn's allegations to be properly developed, and resolve any discovery disputes when and *if* they are ripe.

## BACKGROUND

Mr. Hermalyn addresses only facts relevant to opposing DraftKings' specious Motion while rejecting its mischaracterization of events, Mem. at 4–7 (Dkt. No. 156), which will be resolved through appropriate vehicles during fact and expert discovery, and at trial.

DraftKings filed this action on February 5, 2024, bringing eight separate claims against Mr. Hermalyn, including purported breaches of contract and alleged trade secret misappropriation, and requesting legal and equitable relief. Compl. (Dkt. No. 1). DraftKings purported to support its claims with wide-ranging allegations of misconduct by Mr. Hermalyn—all of which Mr. Hermalyn denied—that cast him in a false, negative light. To date, the litigation has focused on DraftKings' requests for preliminary injunctive relief (Dkt. Nos. 3, 4, 72, 73) and Mr. Hermalyn's motion to dismiss for *forum non conveniens* (Dkt. Nos. 68, 69). On April 30, 2024, the Court entered a Memorandum and Order on Plaintiff's Motion for a Preliminary Injunction and Defendant's Motion to Dismiss or Alternatively to Stay This Action. Mem. & Order (Dkt. No. 132). Mr. Hermalyn has appealed that ruling, in part, while proceedings in this Court continue.

On May 24, 2024, Mr. Hermalyn filed his Answer and Affirmative Defenses ("Answer" or "Ans."). Ans. (Dkt. No. 149). In his Answer, Mr. Hermalyn preserved—***as is his right***—legal and equitable defenses to DraftKings' claims and requested relief. *Id.* at 30–36. These included routine, equitable defenses for bad faith and improper purpose (2nd and 5th Defenses) and unclean

hands (4th Defense), *id.* at 30–32, based on DraftKings' and its CEO Robins' anticompetitive motive against Fanatics in the sports gambling market and Robins' personal animus against Mr. Hermalyn. Mr. Hermalyn raised allegations supporting his affirmative defenses and challenging DraftKings' claims. *Id.* at 1–5. Relevant here, Mr. Hermalyn alleged: (1) that DraftKings' leadership, including Robins, valued Mr. Hermalyn for the goodwill that *Mr. Hermalyn* possessed and now seeks to "ruin" him for reasons that are **not** legitimate or even tethered to DraftKings' claims, *id.* at 1–3, 5, 31–32; (2) that DraftKings is part of a duopoly and is attempting to improperly restrain ordinary competition in the sports gambling market, evinced by its efforts to chill employee mobility and its prior anticompetitive activity (which Robins was involved in) against Mr. Hermalyn's new employer and recent market entrant, Fanatics, *id.* at 1–2, 31–32; and (3) that DraftKings' financials are reported in a way that impacts employee compensation, including in connection with the very contracts at issue in which DraftKings embedded its restrictive covenants and which undermines any damages based on its financial performance that it may claim Mr. Hermalyn caused, *id.* at 4, 31–32. Mr. Hermalyn further alleged that many of DraftKings' prior allegations against him—such as its unfounded assertion that he conspired with Fanatics in 2023, well before joining Fanatics, to purportedly solicit DraftKings' employees—are ***known to be false*** by DraftKings and its counsel of record. *Id.* at 5.

On June 7, 2024, the parties filed their Joint Rule 16.1 statement. Stmt. (Dkt. No. 153). In it, the parties addressed potential discovery topics. Mr. Hermalyn listed topics relevant to his affirmative defenses and supporting allegations, including those DraftKings now targets in its Motion. *Id.* at 38–39. Meanwhile, DraftKings identified broad topics addressing Mr. Hermalyn's residency, his employment with DraftKings and with Fanatics, as well as alleged misconduct by Mr. Hermalyn. *Id.* at 36–37. DraftKings stated it would seek discovery on its alleged damages,

and discovery about and from Fanatics—listing in its Initial Disclosures a substantial number of Fanatics employees, many of whom have no personal knowledge relating to this case—despite now claiming (inaccurately) in its Motion that Fanatics has little to do with this action. *Id.*

On June 14, 2024, DraftKings filed the instant Motion to Strike. Mot. (Dkt. No. 155); *see also* Mem. (Dkt. No. 156). DraftKings moved to strike Mr. Hermalyn's 2nd and 5th Defenses that DraftKings is litigating this case in bad faith and for an improper purpose, but did not challenge any other defenses. Mem. at 14–15 (Dkt. No. 156). In addition, DraftKings moved to strike nearly all factual allegations supporting these, and other *unchallenged* defenses, including Mr. Hermalyn's unclean hands defense (4th Defense). *See id.* at 8–14. The allegations DraftKings seeks to strike appear to have hit a chord, as they concern DraftKings' and Robins' motives to suppress lawful competition by Fanatics, DraftKings' very relevant actions toward Mr. Hermalyn and his new employer, and DraftKings' and Robins' reporting of corporate financial results that relate to and affect Mr. Hermalyn's contracts and compensation and DraftKings' alleged damages, which DraftKings has made an issue in this case. *Id.*

On June 17, 2024, the Court held the Rule 16.1 scheduling conference and entered a Scheduling Order, *inter alia*, setting the schedule for fact discovery. Order (Dkt. No. 159).

## LEGAL STANDARD

Motions to strike under Rule 12(f) are "drastic" and "disfavored," *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (vacating order to strike), and contravene "[t]he general policy" that "pleadings should be treated liberally, and that a party should have the opportunity to support [its] contentions at trial." *4MVR, LLC v. Hill*, 2015 WL 3884054, at *8 (D. Mass. June 24, 2015);[1] *Manning*, 725 F.3d at 59 (motions to strike are "often sought by the movant simply as

---

[1]  Unless noted, all citations and internal quotation marks in citations are omitted and all emphases are added.

a dilatory or harassing tactic" and should be denied).

DraftKings faces a heavy burden—which it has not met—to strike Mr. Hermalyn's 2nd and 5th Defenses of bad faith and improper purpose as legally "insufficient" under Rule 12(f). "[C]ourts do not view motions to strike affirmative defenses for legal insufficiency under Rule 12(f) favorably." *PetEdge, Inc. v. Marketfleet Sourcing, Inc.*, 2017 WL 2983086, at *4 (D. Mass. July 12, 2017) (cleaned up). As with a motion to dismiss, the Court must construe all facts in favor of Mr. Hermalyn as the non-moving party, *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009), <u>except</u> that he need not satisfy *Twombly*'s plausibility standard. *See* 5C Charles Alan Wright, et. al., *Fed. Prac. & Proc. Civ.* § 1381 (3d ed. 2011); *Traincroft, Inc. v. Ins. Co. of Pa.*, 2014 WL 2865907, at *3 (D. Mass. June 23, 2014). DraftKings' Motion to Strike Mr. Hermalyn's 2nd and 5th Defenses "should be granted ***only*** when it is beyond cavil that [Mr. Hermalyn] could not prevail on them." *PetEdge*, 2017 WL 2983086, at *4. "Any doubt should be resolved in favor of [Mr. Hermalyn's] plead[ed]" defenses," *Doble v. Standard Brands, Inc.*, 11 F.R.D. 200, 202 (D. Mass. 1951), and DraftKings can prevail only "where it clearly appears that [it] would succeed despite ***any state of facts*** which could be proved in support of defense." *PetEdge*, 2017 WL 2983086, at *4.

DraftKings faces an equally heavy burden—which, again, it has not met—to strike Mr. Hermalyn's factual allegations as somehow "immaterial, impertinent, or scandalous" under Rule 12(f). "Immaterial" allegations must have "no essential or important relationship" to DraftKings' claims or Mr. Hermalyn's defenses, and "impertinent" allegations "are not necessary [] to the issues in question." *Autila v. Mass. Bay Transp. Auth.*, 342 F.R.D. 23, 31–32 (D. Mass. 2022). A "scandalous" allegation improperly casts another in a derogatory light, but will <u>not</u> be stricken for "offend[ing] the sensibilities of the objecting party" if it "describe[s] acts or events that are relevant

to the action." *Id.* (quoting *In re Gitto Global Corp.*, 422 F.3d 1, 12 (1st Cir. 2005)). Again, any doubts should be resolved in Mr. Hermalyn's favor as the non-moving party. *Park v. Welch Foods, Inc.*, 2014 WL 1231035, at *1 (N.D. Cal. Mar. 20, 2014).

Finally, DraftKings' Motion should be rejected unless it "show[s] prejudice" from Mr. Hermalyn's pleadings. *Deckers Outdoor Corp. v. Primark U.S. Corp.*, 2023 WL 8477409, at *2 (D. Mass. Dec. 7, 2023); *SEC v. Esposito*, 2017 WL 5615571, at *3 (D. Mass. Nov. 21, 2017) (denying motion to strike for no prejudice).

## ARGUMENT

Precedent, the record, and common sense dispel DraftKings' argument that Mr. Hermalyn's 2nd and 5th Defenses concerning DraftKings' improper motive "are not legitimate." Mem. at 14–15. Those defenses and the related allegations in support of those defenses defeat DraftKings' claims and its alleged right to equitable relief, are legitimate (indeed, routine), and Mr. Hermalyn is entitled to seek discovery to support them and his other defenses.

### A. DraftKings Fails To Meet the Standard To Show That Mr. Hermalyn's Defenses of Bad Faith and Improper Purpose Are Legally Insufficient.

DraftKings' argument that Mr. Hermalyn's 2nd and 5th Defenses "are not legitimate," Mem. at 14–15, relies on an improper legal standard and fails on the merits. Mr. Hermalyn satisfied the applicable notice pleading standard in his Answer. DraftKings has <u>not</u> demonstrated, as it must, that Mr. Hermalyn "clearly" would not "succeed" on his 2nd and 5th Defenses "despite ***any state of facts*** which could be proved in support" of them. *PetEdge*, 2017 WL 2983086, at *4. DraftKings' anticompetitive purpose in this action (2nd Defense) renders its restrictive covenants unenforceable, and DraftKings' broader misconduct (5th Defense) defeats its alleged entitlement to equitable relief. Accordingly, DraftKings cannot strike either of them under the Rule 12(f) standard. *See SEC v. WMDS Inc.*, 2006 WL 8458288, at *3 (D. Mass. May 24, 2006) ("While it

may be difficult to know the basis for [a particular] defense, at this very early stage of the litigation it would be premature to strike the defense. Rather, [Mr. Hermalyn] should be given the opportunity to develop the facts necessary to sustain the defense through the discovery process.").

### 1. DraftKings Misapplies The Applicable Standard.

DraftKings first contends that Mr. Hermalyn's 2nd and 5th Defenses "are completely baseless" because "[t]he parties have already conducted expedited discovery." Mem. at 14–15. That is both wrong and a misdirection. What DraftKings raises is a dispute about *the facts* that Mr. Hermalyn alleges. That is not the standard for a Motion to Strike, where all facts are construed in Mr. Hermalyn's favor as the non-moving party, and DraftKings must prove "clearly" that it would prevail "despite any state of facts." *PetEdge*, 2017 WL 2983086, at *4. Nothing in the limited, preliminary discovery briefly conducted in this case satisfies—much less "clearly" satisfies—that high standard, *id.*, and indeed, DraftKings does not argue otherwise, *see* Mem. at 14–15. Nor could it, since that discovery (which did not involve *any* document discovery) did ___**not**___ go to Mr. Hermalyn's Affirmative Defenses or the ultimate merits of the case—it went ___**only**___ to DraftKings' request for preliminary injunctive relief and likelihood of success.[2] The Court's preliminary ruling does not bar Mr. Hermalyn from fully pleading or litigating his defenses. Mr. Hermalyn has pleaded relevant allegations and defenses in his Answer, as he is entitled to do, and he expects that discovery will support them. *See Deckers*, 2023 WL 8477409, at *3.

### 2. Mr. Hermalyn's 2nd Defense Is Legitimate Because DraftKings' Improper Anticompetitive Purpose Renders Its Covenants Unenforceable.

Mr. Hermalyn's 2nd Defense—that DraftKings has an improper anticompetitive purpose in

---

[2] Mr. Hermalyn's preliminary discovery was limited to: (1) a single, 4-hour deposition of a DraftKings' IT employee; and (2) interrogatories of limited scope, June 17, 2024 Conf. Tr. at 6:25-7:5 (Dkt. No. 160) ("I viewed the pre-PI motion discovery as bearing on whether a preliminary injunction should be issued, and we're now at the merits stage where the parties can, you know, develop the evidence necessary to prove their claims and defenses, so I view it as a new round of discovery, so 25 interrogatories a side.").

bringing its claims—is legally sufficient. Massachusetts approaches restrictive covenants with hesitancy and disfavor because they restrain competition, and enforces them only if they are ***reasonable***.[3] *See Automile Holdings, LLC v. McGovern*, 136 N.E.3d 1207, 1218 (Mass. 2020). For DraftKings' covenants to be enforceable, it must establish that they are: "(1) necessary to protect a legitimate business interest, (2) reasonably limited in time and space, and (3) consonant with the public interest." *Id.* The "business interests" recognized as "legitimate" are narrow, and include only the protection of the employer's trade secrets, confidential information, or goodwill. *Id.* at 1219; *see also* M.G.L. c. 149, § 24L(b)(iii). "A covenant not to compete designed to protect a party from 'ordinary competition' does not protect a legitimate business interest and will not be enforced." *Me. Pointe, LLC v. Starr*, 2011 WL 379279, at *3 (D. Mass. Feb. 3, 2011) ("The plaintiff has failed to demonstrate that it seeks to protect its trade secrets, confidential information, or good will. . . . Instead, the evidence suggests that [Plaintiff] seeks to protect itself from ordinary competition."). Further, public policy favors open competition and bars restrictions used to stifle it. *Harrell v. Backstage Salon & Day Spa, Inc.*, 2022 WL 618681, at *5 (Mass. Super. Ct. Feb. 22, 2022) (right "to compete against [] prior employer promotes the public interest in labor mobility and the employee's freedom to practice his profession and in mitigating monopoly.").

Mr. Hermalyn's 2nd Defense, pleading improper anticompetitive purpose, goes directly to the legitimate interest and public policy prongs of the reasonableness inquiry and, ultimately, DraftKings' claims that its covenants are enforceable. Indeed, the 2nd Defense is relevant and related to Mr. Hermalyn's other Affirmative Defenses that DraftKings *does not* challenge here. For example, because DraftKings pleads breach of noncompete and nonsolicit covenants (Compl. Counts II and III), Mr. Hermalyn pleaded that those covenants do not serve any legitimate business

---

[3] Mr. Hermalyn maintains his position that California law, not Massachusetts law, applies to the restrictive covenants at issue and renders them void.

interest (17th Defense) and contravene public policy (15th Defense).  Given that "[t]he reasonableness of a restrictive covenant is judged by the attendant facts and circumstances which include whether the business interests to be protected are legitimate," *Iron Mountain Info. Mgmt., Inc. v. Viewpointe Archive Servs., LLC*, 707 F. Supp. 2d 92, 106 (D. Mass. 2010), Mr. Hermalyn further pleaded in the 2nd Defense that DraftKings illegitimately seeks to prevent ordinary competition rather than protect a legitimate business interest consonant with public policy. *Perella v. United Site Servs. Ne., Inc.*, 2024 WL 2067293, at *2 (Mass. App. Ct. May 9, 2024) ("A former employer is not entitled by contract to restrain ordinary competition.").

Last, while DraftKings may dispute the facts that Mr. Hermalyn pled to support his defense of improper anticompetitive purpose, *infra* Section B, that is not relevant to the ***legal sufficiency*** of the defense for purposes of a motion to strike.  *See PetEdge*, 2017 WL 2983086, at *4. Accordingly, the Court should deny DraftKings' request to strike Mr. Hermalyn's 2nd Defense.

### 3.    *Mr. Hermalyn's 5th Defense Is Legitimate Because DraftKings' Misconduct Defeats Its Claim For Equitable Relief.*

Mr. Hermalyn's 5th Defense of bad faith and improper purpose is a valid equitable defense to DraftKings' requested injunctive relief.  DraftKings' attempt to enforce its restrictive covenants through an injunction is legally considered to be a request for specific performance—that is, an equitable remedy.  *See Galipault v. Wash Rock Invs., LLC*, 836 N.E.2d 1123, 1134 (Mass. 2005) ("As to [a] claim for specific performance, it is axiomatic that one must have behaved equitably in order to obtain equitable remedies."); *see* RESTATEMENT 2D OF CONTRACTS, § 357 cmt. c (specific performance is "equitable relief … regarded as within judicial discretion").

Because DraftKings requests equitable relief, Mr. Hermalyn raised hornbook equitable defenses in his Answer, including his 5th Defense, that DraftKings' claims are frivolous, brought in bad faith, with improper purpose—encompassing both DraftKings' anticompetitive intent and

its CEO's personal animus towards Mr. Hermalyn—and despite failure to investigate. *See New England Merchants Nat'l Bank of Bos. v. Kann*, 294 N.E.2d 390, 393 (Mass. 1973) ("He who seeks equity must do equity."). Under Massachusetts law, courts look to the full conduct of the parties' interaction when exercising their discretion to award equitable relief, which "will not be granted if the conduct of the plaintiff is savored with injustice touching the transaction, even though there is no sufficient ground for the rescission of the contract." *Econ. Grocery Stores Corp. v. McMenamy*, 195 N.E. 747, 748 (Mass. 1935); *Hawthorne's, Inc. v. Warrenton Realty, Inc.*, 606 N.E.2d 908, 913 (Mass. 1993) (specific enforcement correctly denied when party "engaged in unfair conduct, involving delay, misrepresentation and manipulation"); *McLaughlin v. Amirsaleh*, 65 Mass. App. Ct. 873, 885 (Mass. App. Ct. 2006) (refusing, under principles of equity, to enforce an agreement when it violated Massachusetts public policy "as well as other principles of law concerning the enforcement of contracts").

DraftKings does not argue otherwise (nor could it), Mem. at 14–15, and the ***only*** elements of this Defense that it challenges, are that its claims are "frivolous" and brought in "bad faith." *Id.* at 15. The Court should not strike these words, let alone the entire 5th Defense, because they undermine DraftKings' alleged right to *injunctive relief*. The out-of-district decision in *Asphaltos* that DraftKings relies on is inapposite, as it only held that the defendant's frivolity defense was legally insufficient where it would not negate *liability*, and engendered confusion by seeking attorney's fees as sanctions. *See id.* at 15 (citing 2021 WL 965645, at *8 (D.P.R. Mar. 15, 2021)). *Asphaltos* did not address questions of equitable relief. And the out-of-district decision in *Crow* recognized that "affirmative defense[s] alleging bad faith survive[] motion[s] to strike," but struck the one at issue there because it was "simply a refutation of an allegation in the Complaint"— which Mr. Hermalyn's 5th Defense is not. *See id.* (citing 2007 WL 1247393, at *3 (D. Minn. Apr.

19, 2007)).  The Court should deny DraftKings' request to strike Mr. Hermalyn's 5th Defense.

      **B.**      <u>The Challenged Allegations Are Material, Pertinent, and Appropriate to Mr. Hermalyn's Defenses.</u>

        *1.*    *DraftKings' and Its CEO's Involvement and View of Mr. Hermalyn's Relationships and Goodwill Are Material, Pertinent, and Appropriate.*

The Court should also reject DraftKings' request to strike all allegations in Mr. Hermalyn's Answer relating to its CEO Robins' involvement in this dispute, his control of DraftKings, and his related targeted and anticompetitive conduct against Fanatics.  Mem. at 12–14.

*First,* these allegations are material and pertinent to the claims and issues here.  DraftKings alleges that its restrictive covenants are enforceable, in part, because DraftKings purportedly needs them to protect its goodwill.  *E.g.*, Mem. in Supp. of PI at 29–30 (Dkt. No. 73).  Mr. Hermalyn pleads, however, that DraftKings' claimed goodwill is ***actually his***, that he worked closely with Robins, that Robins knew the value Mr. Hermalyn's ***own*** connections offered to DraftKings, and Robins recognized that Mr. Hermalyn possessed his ***own*** goodwill.  Ans. at 3.  A former employer cannot claim protection of its former employee's goodwill as a legitimate business interest to enforce a restrictive covenant.  *Harrell*, 2022 WL 618681, at *5 ("A non-competition agreement is enforceable only to protect the employer's good will, not to appropriate the good will of the employee.").  Thus, whether Mr. Hermalyn possessed his own goodwill and *how and by whom this was recognized* at DraftKings is necessary to defend against DraftKings' restrictive covenant claims.  In addition, allegations going to DraftKings' and its CEO's bad faith and improper motives are *also* material and pertinent to DraftKings' *trade secrets* claims.  The Defend Trade Secrets Act, 18 U.S.C. § 1836 (b)(3)(D), provides that "if a claim of [] misappropriation is made in bad faith, which may be established by circumstantial evidence," as Mr. Hermalyn alleges, then the Court may "award reasonable attorney's fees to" Mr. Hermalyn if he prevails.

      Mr. Hermalyn's allegations about Robins' involvement in DraftKings' anticompetitive

motive behind this lawsuit—and his not-so-secret retaliatory animus against Mr. Hermalyn—are similarly material and pertinent to Mr. Hermalyn's 2nd and 5th Defenses, which allege bad faith, as discussed *supra*. Relatedly, Mr. Hermalyn is entitled to develop facts related to his defenses that DraftKings' claims contravene public policy and that it lacks a legitimate business interest for its restrictive covenants (15th and 17th Defenses), which are also elements of the enforceability test for those covenants. *See Automile Holdings*, 136 N.E.3d at 1218.

These same factual allegations also support Mr. Hermalyn's unchallenged 4th Defense of unclean hands. DraftKings "is not entitled to equitable relief" if it comes to this court with "unclean hands," including inequitable conduct. *Wash. Mut. Bank v. Am. Home Mortg. Servicing, Inc.*, 2015 WL 7739070, at *2 (Mass. App. Ct. Dec. 1, 2015). DraftKings is mistaken in contending that its efforts to suppress competition, Mem. at 13–14, in breach of Massachusetts public policy can have no bearing on Mr. Hermalyn's unclean hands defense. *See, e.g.*, *United States ex rel. Metric Elec., Inc. v. CCB, Inc.,* 2016 WL 4491831, at *3 (D. Mass. Aug. 25, 2016) (plaintiff's equitable claim defeated by its own unlawful conduct and unclean hands); *McLaughlin*, 65 Mass. App. Ct. at 881, 885 (the "clean hands' doctrine rests on grounds of public policy" and is triggered by efforts to "violate the public policy of Massachusetts"). In contrast, DraftKings' out-of-district cases held only that a defendant could not sustain an unclean hands defense with a bare allegation of an improper filing that did not relate to the equitable relations between the parties. That is distinctly ***not*** the case here, where Mr. Hermalyn provided detailed allegations of Robins' and DraftKings' inequitable and anticompetitive conduct against Mr. Hermalyn and Fanatics, *including* filing and aggressively pursuing this lawsuit. *See* Mem. at 13 (citing *Comet Techs. USA Inc. v. XP Power LLC*, 2022 WL 1131729, at *2 (N.D. Cal. Feb. 7, 2022) (("[n]o explanation or factual basis" for "allegation[s] in support of [unclean hands] defense");

*Therapeutics MD, Inc. v. Evofem Biosciences, Inc.*, 2022 WL 1013278, at *15 (S.D. Fla. Mar. 30, 2022) ("Defendant's allegation that this lawsuit was brought for anticompetition purposes … is speculative" <u>without</u> supporting allegations)).

*Second*, that Robins is referenced in the Answer does not convert Mr. Hermalyn's allegations into "scandalous" statements. DraftKings asserts little more than that its "sensibilities" were offended—but, of course, that does not satisfy the high bar to strike a pleading for "scandal." *Autila*, 342 F.R.D. at 31–32. For example, in *Alvarado Morales v. Digital Equip. Corp.*, 669 F. Supp. 1173 (D.P.R. 1987), a*ff'd*, 843 F.2d 613 (1st Cir. 1988), the court struck allegations likening a workplace to a "concentration camp," "torture[,]" and "brainwash[ing] techniques used by Chinese communists in Korea and the North Vietnamese in Vietnam." *Id.* at 1175. And in both *Gauthier* and *Doe*, on which DraftKings improperly relies, the court struck irrelevant material associating individuals with alleged sexual assaults. Mem. at 13 (citing 2011 WL 3902770, at *12 (D. Mass. Sept. 2, 2011); 2024 WL 816507, at *4 (D. Mass. Feb. 27, 2024)). These extreme accusations are a far cry from Mr. Hermalyn's single use of the term "Machiavellian," Mem. at 13, to describe DraftKings' leadership style and conduct.

DraftKings' request is ironic: it was "the first to hurl epithets" and did so gratuitously. *See Lewis v. Shaffer Stores Co.*, 218 F. Supp. 238, 240 (S.D.N.Y. 1963) (denying motion to strike). DraftKings included in its Complaint inflammatory and incendiary allegations which were not relevant to their legal claims: concerning purported accusations by Mr. Hermalyn's female colleagues, Compl. ¶ 103; accusing Mr. Hermalyn of "falsely … mourning" a friend's death, *id.* at ¶ 1; referencing his wife and family, *id.* at ¶ 81; all while subjecting Mr. Hermalyn to wide-spread media smearing;[4] and including ***knowingly*** false allegations that Mr. Hermalyn and

---

[4] *E.g.*, Dylan Svoboda, *Ex-DraftKings exec faked friend's death to steal info for rival: lawsuit*, New York Post (Feb. 6, 2024), *available at* https://tinyurl.com/4ku4sdt7.

Fanatics' CEO had "clandestine[]" meetings and a year-long poaching conspiracy, *e.g., id.* ¶¶ 1, 97, 120. In contrast, Mr. Hermalyn is detailing DraftKings' bad faith conduct, which is directly relevant to whether the covenants are enforceable through equitable remedies.

### 2. DraftKings' Anticompetitive Conduct Against Mr. Hermalyn's New Employer Is Also Pertinent.

DraftKings also requests that this Court strike Mr. Hermalyn's allegations about its anticompetitive conduct against his new employer, Fanatics, on the basis that Fanatics is not a party to this proceeding. Mem. at 8–10. The Court should reject that as well. Mr. Hermalyn's allegations about DraftKings' motives against his current employer go directly to ***Mr. Hermalyn's defenses***. *See* Ans. at 1–5. As discussed *supra*, Massachusetts law <u>prohibits</u> enforcement of restrictive covenants for the illegitimate purpose of restraining ordinary competition. Thus, Mr. Hermalyn's allegations that DraftKings seeks to unlawfully enforce its covenants to restrain fair and ordinary competition by Fanatics is directly relevant—and indeed, pertinent—here.

As DraftKings concedes, these allegations *also* support Mr. Hermalyn's 4th and 5th Defenses relating to unclean hands, *see supra*, yet it claims that the defense somehow cannot apply because DraftKings' conduct with respect to Fanatics has no bearing on "the matter in litigation." Mem. at 9 (quoting *Egenera, Inc. v. Cisco Sys., Inc.*, 547 F. Supp. 3d 112, 118 (D. Mass. 2021)). That is incorrect: DraftKings' restrictive covenant claims target Mr. Hermalyn's ability to work for Fanatics, and thus compete with DraftKings. Further, DraftKings itself brought Fanatics into this case by alleging, *inter alia*, that Fanatics engaged in a year-long conspiracy with Mr. Hermalyn to poach its employees, customers, and confidential information. Compl. ¶¶ 1, 88–100. Since then, DraftKings has repeatedly represented that it will seek discovery from Fanatics and listed <u>***12***</u> individuals from Fanatics on its Initial Disclosures. Indeed, DraftKings has made no secret that it intends to seek sweeping discovery from Fanatics that stretches far beyond its allegations

concerning Mr. Hermalyn, including Fanatics' overall "business operations and business considerations related to competing with DraftKings" stretching back to January of 2023. Stmt. at 36–37 (Dkt. No. 153). Thus, DraftKings' anticompetitive conduct aimed at Fanatics is certainly "before the court for adjudication," *Travers v. Flight Servs. & Sys., Inc.*, 808 F.3d 525, 538 (1st Cir. 2015), and an appropriate ground for Mr. Hermalyn's unclean hands defenses.

### 3. *DraftKings' Misconduct Concerning Financial Reporting and Employee Compensation Is Material.*

The Court should likewise reject DraftKings' request to strike Mr. Hermalyn's allegations relating to its financial reporting and related compensation to employees, including to Mr. Hermalyn. Mem. at 10–12. DraftKings ***does not dispute*** that its financial reporting is relevant to its "purported damages." Ans. at 4. Indeed, DraftKings seeks damages ***specifically related to*** retention packages it awarded to Mr. Hermalyn and "other employees," which included equity awards in the form of restricted stock units ("RSUs"), *see* Compl. ¶¶121, 168, 97, and related equity vests, *id.* at 47. As DraftKings concedes, Mem. at 11, throughout its filings, it has itself ***put at issue*** the RSU agreements with Mr. Hermalyn. *E.g.,* Compl. ¶¶ 50–51; *see also* Compl., Ex. B, at 2 (Dkt. No. 1-2) (awarding RSUs). While the vesting of some RSUs is based on time, *e.g.*, Compl., Ex. B at 4 (Dkt. No. 1-2), Mr. Hermalyn expects that discovery will support that vesting for other RSUs is based on DraftKings' performance, measured by reported financial metrics— making DraftKings' *reported* financial performance directly relevant to those awards. And, for either type of RSU award, the overall value is tied to DraftKings' stock price, which is indisputably affected by its financial reporting. DraftKings' financial information is not only relevant to DraftKings' own damages claims, but it also supports Mr. Hermalyn's general defense and ***unchallenged*** affirmative defenses that DraftKings has not suffered damages (27th Defense) or, alternatively, that damages are speculative and uncertain (29th Defense).

Further, the allegations are relevant to the enforceability of DraftKings' restrictive covenants and Mr. Hermalyn's defenses to them. *See* Ans. 4. The noncompete covenants that DraftKings seeks to enforce against Mr. Hermalyn were appended to and part of his RSU agreements. *E.g.*, Compl. ¶¶ 50–51; *see also* Compl., Ex. B, at 11 (Dkt. No. 1-2). Allegations that DraftKings has *reported* its financial performance to <u>lessen</u> the benefit of any stock unit awards, or to avoid vesting of RSUs, including in DraftKings' awards to its employees, are therefore plainly material to DraftKings' performance under its contracts with Mr. Hermalyn. That, in turn, relates to Mr. Hermalyn's unchallenged defenses of breach of the covenant of good faith and fair dealing (22nd Defense) and conditions precedent (24th Defense).

DraftKings again contends that Mr. Hermalyn's allegations of financial misreporting cannot support his 4th Defense of unclean hands. Mem. at 11–12. That is wrong. These allegations speak to whether DraftKings acted inequitably with respect to Mr. Hermalyn, its restrictive covenants, and its claims. Thus, they may support an unclean hands defense to DraftKings' requested equitable relief, *see Travers*, 808 F.3d at 538, regardless of whether they are pleaded "upon information and belief."[5] *See, e.g.*, *Fluid Control Prods., Inc. v. CAS Aeromotive, Inc.*, 2010 WL 427765, at *1, *5 (E.D. Mo. Feb. 1, 2010) (refusing to strike "unclean hands" defense alleging "upon information and belief Plaintiff has made false and/or misleading statements"). *Bryan,* which DraftKings cites to contend that allegations pleaded on "information and belief" may not support an unclean hands defense, is inapposite because the allegations there were "[c]onclusory allegations of wrongdoing" that did not "relate[] to the conduct at issue in th[at] litigation," unlike DraftKings' financial conduct here. Mem. at 11–12 (citing 2013 WL 6489785, at *3 (D. Mass. Dec. 9, 2013)). Mr. Hermalyn should be permitted to further develop allegations

---

[5] DraftKings qualifies its own allegations as based on "information and belief" **_28_** times in its Verified Complaint. Compl. ¶¶ 5, 7-8, 10, 13, 59, 63-64, 69, 71, 77, 82, 85-88, 95-96, 98, 101-03, 120, 167-68, 170 (Dkt. No. 1).

of DraftKings' financial reporting in tailored discovery.

### 4. Mr. Hermalyn Is Entitled To Respond To DraftKings' False Allegations.

The Court should also reject DraftKings' request (Dkt. No. 157-1 at 5) to strike allegations concerning its false assertions that Mr. Hermalyn was a "double agent" soliciting on behalf of Fanatics since early 2023. *Compare* Compl. ¶¶ 1, 88–100, 102, *with* Demana Decl., Ex. A., at 6 (Dkt. No. 157-1). Despite Mr. Hermalyn demonstrating months ago that DraftKings' assertions were blatantly (and knowingly) false, *e.g.*, Opp'n to TRO at 14 (Dkt. No 33), and DraftKings' concession that Mr. Hermalyn provided an "innocent explanation" for the email on which it bases its claim, TRO Hr'g Tr. at 16:19–22 (Dkt. No. 46), DraftKings has not amended its Complaint to retract its false allegations and has instead represented that it will seek discovery about them. DraftKings does not present any basis or legitimate argument for striking Mr. Hermalyn's consistent counter-allegations—which <u>directly</u> rebut facts that DraftKings pleads in support of its breach of contract (Count II) and breach of fiduciary duty claims (Count VII). Compl. ¶¶ 120, 167–68. Mr. Hermalyn is entitled to rebut the false allegations against him; by the same token, if these allegations are irrelevant to DraftKings' claims, then they have no place in DraftKings' Complaint. And whether DraftKings made these false allegations knowingly is material to the equitable considerations and defenses here, including Mr. Hermalyn's 4th and 5th Defenses.

### C. DraftKings Fails To Demonstrate Undue Prejudice.

Independently, the Court should deny DraftKings' Motion because it has not demonstrated prejudice. *See Deckers*, 2023 WL 8477409, at *2; *Esposito*, 2017 WL 5615571, at *3. DraftKings does not argue that Mr. Hermalyn's 2nd and 5th Defenses would prejudice it (they will not). *See* Mem. at 14–15. Therefore, as to Mr. Hermalyn's *defenses*, DraftKings has waived a prejudice

showing, and the Court should not strike these defenses.[6]

As to all three challenged sets of **_allegations_**, DraftKings claims that it would be prejudiced by having to defend itself from "scandalous accusations that are unrelated to the merits." Mem. at 10, 12, 14 (quoting 2024 WL 816507, at *4 (D. Mass. Feb. 27, 2024)). This argument fails because Mr. Hermalyn's allegations are material and pertinent to the merits, and they are not "scandalous," as detailed _supra_ Section B. They specifically relate to a variety of Mr. Hermalyn's affirmative defenses, most of which DraftKings does not even challenge. _See e.g._, Ans. (4th, 15th, 17th, 18th, 22nd, 24th, 27th, 29th, 32nd Defenses). And to the extent DraftKings' prejudice argument is premised on the alleged burden of discovery,[7] it is not ripe and cannot succeed. _See R.I. Res. Recovery Corp. v. Travelers Cas. & Surety Co. of Am.,_ 2010 WL 11693625, at *2 (D.R.I. Oct. 8, 2010) ("Rule 12(f) motions to strike defenses are rare and the wheat is generally sorted from the chaff through discovery and/or cooperative communications between counsel. … [T]here is not a significant additional burden to a litigant in serving interrogatories asking for the facts supporting … affirmative defenses … which often results in the withdrawal of 'inapplicable' defenses without Court intervention."). Discovery should proceed pursuant to the Court's schedule. DraftKings has failed to demonstrate prejudice from the challenged portions of Mr. Hermalyn's Answer, and the Court should reject its Motion for this independent reason.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion to Strike.

---

[6] Assuming _arguendo_ that these defenses were stricken, Mr. Hermalyn's expected discovery would be unchanged as it would _also_ relate to his unchallenged defenses, including at least his 4th, 5th 15th, 17th, 18th, and 20th Defenses.

[7] DraftKings asserted, in part, that Mr. Hermalyn had included the defenses and allegations that it challenges primarily to lengthen the discovery schedule, which is demonstrably false based upon the schedule Mr. Hermalyn proposed to the Court. Stmt. at 13–14, 20–24 (Dkt. No. 153).

Dated: June 28, 2024

Respectfully submitted:

<table>
<tr><td>/s/ <i>Russell Beck</i></td><td>/s/ <i>Aliki Sofis</i></td></tr>
<tr><td>Russell Beck (BBO# 561031)</td><td>Aliki Sofis (BBO #675777)</td></tr>
<tr><td>Stephen D. Riden (BBO# 644451)</td><td>Alexander S. del Nido (BBO #711857)</td></tr>
<tr><td>BECK REED RIDEN LLP</td><td>Isaac Saidel-Goley (BBO #699659)</td></tr>
<tr><td>155 Federal Street, Suite 1302</td><td>Marla Blum (BBO #708966)</td></tr>
<tr><td>Boston, MA 02110</td><td>QUINN EMANUEL URQUHART</td></tr>
<tr><td>Tel.: (617) 500-8660</td><td> & SULLIVAN, LLP</td></tr>
<tr><td>Fax: (617) 500-8665</td><td>111 Huntington Avenue, Suite 520</td></tr>
<tr><td>rbeck@beckreed.com</td><td>Boston, MA  02199-3600</td></tr>
<tr><td>sriden@beckreed.com</td><td>Tel.:  (617) 712-7100</td></tr>
<tr><td></td><td>Fax:  (617) 712-7200</td></tr>
<tr><td></td><td>alikisofis@quinnemanuel.com</td></tr>
<tr><td></td><td>alexdelnido@quinnemanuel.com</td></tr>
<tr><td></td><td>isaacsaidelgoley@quinnemanuel.com</td></tr>
<tr><td></td><td>marlablum@quinnemanuel.com</td></tr>
</table>

Kimberly E. Carson (*pro hac vice*)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel.: (212) 849-7000
Fax: (212) 849-7100
kimberlycarson@quinnemanuel.com

Christopher G. Michel (*pro hac vice*)
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel.: (202) 538-8000
Fax: (202) 538-8100
christophermichel@quinnemanuel.com

*Attorneys for Defendant Michael Z. Hermalyn*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was filed on June 28, 2024, through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  June 28, 2024                    /s/ *Aliki Sofis*